**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-742-KLM

JAMES COREY GOODE, and
GOODE ENTERPRISE SOLUTIONS INC.,

      Plaintiffs,

v.

GAIA, INC., a Colorado corporation,
JAY WEIDNER,
CLIF HIGH,
BENJAMIN ZAVODNICK, and
ALYSSA MONTALBANO,

      Defendants.

---

**GAIA, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

---

**DAVIS & GILBERT LLP**
Ina B. Scher
Daniel A. Dingerson
1740 Broadway
New York, New York 10019
(212) 468-4800
*Attorneys for Defendant Gaia, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT FACTUAL ALLEGATIONS AGAINST GAIA ...............................................3

I.      THE PARTIES..............................................................................................................3

II.     CONTRACTUAL RELATIONSHIP BETWEEN GAIA AND
        PLAINTIFFS.................................................................................................................4

III.    PLAINTIFFS' ASSERTED INTELLECTUAL PROPERTY RIGHTS.....................6

IV.     ACTIONS OF OTHER DEFENDANTS .....................................................................8

ARGUMENT.............................................................................................................................9

I.      SUMMARY OF REASONS FOR DISMISSAL OF EACH OF
        PLAINTIFFS' CLAIMS ...............................................................................................9

        A.      PLAINTIFFS' RICO CLAIM DOES NOT INCLUDE ANY ALLEGATIONS OF
                "RACKETEERING ACTIVITY" AND THE CLAIM IS BARRED BY THE STATUTE OF
                LIMITATIONS.......................................................................................................10

        B.      PLAINTIFFS' BREACH OF CONTRACT CLAIM CANNOT PROCEED REGARDLESS OF
                WHAT CONTRACT WAS PURPORTEDLY BREACHED..................................................10

        C.      PLAINTIFFS' TRADEMARK CLAIMS INCLUDE ONLY CONCLUSORY ALLEGATIONS
                ABOUT USE .........................................................................................................11

        D.      PLAINTIFFS' OTHER TORT CLAIMS ARE DEFICIENT AND NOT PROPERLY BROUGHT
                AGAINST GAIA.....................................................................................................11

II.     LEGAL STANDARDS APPLICABLE TO ALL CLAIMS .......................................14

        A.      RULE 8 REQUIRES A SHORT AND PLAIN STATEMENT .............................................14

        B.      RULE 12 REQUIRES CLAIMS TO BE PLAUSIBLE.....................................................15

III.    PLAINTIFFS' COMPLAINT FAILS TO MEET BASIC RULE 8
        STANDARDS ................................................................................................................17

        A.      THE COMPLAINT IS NOT A SHORT AND PLAIN STATEMENT ...................................17

        B.      RULE 8 PROHIBITS PLAINTIFFS' "GROUP PLEADING" ............................................18

        C.      RULE 8 PROHIBITS PLAINTIFFS' "SHOTGUN PLEADING" .........................................19

IV.     EACH OF PLAINTIFFS' CLAIMS FAILS TO STATE A CAUSE OF
        ACTION PURSUANT TO RULE 12................................................................................19

        A.      PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW ......................................20

                1.      REQUIRED ELEMENTS OF A RICO CLAIM ...........................................20

2.   SPECIFIC STANDARDS APPLICABLE TO PREDICATE OFFENSES .........................................................................................22

3.   STATUTE OF LIMITATIONS APPLICABLE TO RICO CLAIMS ...........................................................................................23

4.   PLAINTIFFS' ALLEGATIONS DO NOT SUFFICIENTLY PLEAD ELEMENTS OF RICO CLAIM OR PREDICATE OFFENSES AND ARE BARRED BY THE STATUTE OF LIMITATIONS ....................................................................................24

B.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW ..............25

1.   PLAINTIFFS' BREACH OF ORAL CONTRACT CLAIM IS BARRED ...........................................................................................26

2.   PLAINTIFFS' BREACH OF WRITTEN CONTRACT CLAIM IS WHOLLY DEFICIENT ......................................................................29

3.   PLAINTIFFS' BREACH OF THE PURPORTED WEIDNER CONTRACT CANNOT PLAUSIBLY ALLEGE THAT PLAINTIFFS ARE ENTITLED TO ENFORCE THAT CONTRACT .......................................................................................29

C.   PLAINTIFFS' TRADEMARK CLAIMS FAIL AS A MATTER OF LAW .............................30

1.   FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS ....................................................................30

2.   FALSE DESIGNATION OF ORIGIN ...........................................................34

3.   TRADEMARK INFRINGEMENT PURSUANT TO COLORADO COMMON LAW .........................................................................35

4.   DECLARATION OF VALIDITY ................................................................36

D.   PLAINTIFFS' OTHER TORT CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED...39

1.   COLORADO CONSUMER PROTECTION ACT ........................................39

2.   COLORADO COMMON LAW UNFAIR COMPETITION.......................41

3.   FRAUDULENT MISREPRESENTATION ...................................................42

4.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OUTRAGEOUS CONDUCT) ...........................................................43

5.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ......................45

6.   HARASSMENT AT WORK .........................................................................46

7.   LIBEL AND SLANDER .................................................................................48

8.   TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY .......................................................................................50

9.    CYBERSTALKING ........................................................................................51

V.    **PLAINTIFFS DID NOT PROPERLY ALLEGE DIVERSITY JURISDICTION AND CANNOT DO SO** ......................................................52

**CONCLUSION** ..............................................................................................................52

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
   722 F.3d 1229 (10th Cir. 2013) ...........................................................................31

*Am. Furniture Co. v. Am. Furniture Co.*,
   261 P.2d 163 (1953)...........................................................................................41

*Amoco Oil Co. v. Ervin*,
   908 P.2d 493 (Colo. 1995)................................................................................50

*Armstrong v. Wyo. Dep't of Envtl. Quality*,
   674 F. App'x 842 (10th Cir. 2017) ...................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................... 15-16, 19

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*,
   939 F.2d 887 (10th Cir. 1991) ..........................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................15, 16, 19, 26

*Bell v. Magna Times, LLC*,
   No. 2:18CV497DAK, 2019 U.S. Dist. LEXIS 72750 (D. Utah Apr. 29, 2019)...............32, 33

*Boyer v. Karakehian*,
   915 P.2d 1295 (Colo. 1996)..............................................................................28

*Brereton v. Bountiful City Corp.*,
   434 F.3d 1213 (10th Cir. 2006) ........................................................................17

*Bridge v. Phoenix Bond & Indemn. Co.*,
   553 U.S. 639 (2008)...........................................................................................22

*Brodeur v. Am. Home Assurance Co.*,
   169 P.3d 139 (Colo. 2007)................................................................................40

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
   861 F.3d 1081 (10th Cir. 2017) ........................................................................16

*Cardinal Chemical Co. v. Morton Int'l, Inc.*,
   508 U.S. 83 (1993)............................................................................................37

*Cayman Expl. Corp. v. United Gas Pipe Line Co.*,
873 F.2d 1357 (10th Cir. 1989) ........................................20

*Churchey v. Adolph Coors Co.*,
759 P.2d 1336 (Colo. 1988) ..............................................44

*Cleary Bldg. Corp. v. David A. Dame, Inc.*,
674 F. Supp. 2d 1257 (D. Colo. 2009) ..................31, 35, 36, 40

*Colwell v. Mentzer Invs., Inc.*,
973 P.2d 631 (Colo. App. 1998) ........................................45

*In re Continental Resources Corp.*,
799 F.2d 622 (10th Cir. 1986) ..........................................27

*Coors Brewing Co. v. Floyd*,
978 P.2d 663 (Colo. 1999) ................................................44

*Culpepper v. Pearl St. Bldg.*
877 P. 2d 877, 882 (Colo. 1994) ..................................43, 44

*Davison v. Grant Thornton LLP*,
582 F. App'x 773 (10th Cir. 2014) ........................20, 21, 24

*Donchez v. Coors Brewing Co.*,
392 F.3d 1211 (10th Cir. 2004) ........................................35

*Duran v. Carris*,
238 F.3d 1268 (10th Cir. 2001) ........................................21

*Duran v. Clover Club Foods Co.*,
616 F. Supp. 790 (D. Colo. 1985) ....................................40

*Durango Herald, Inc. v. Hugh A. Riddle & Riddle Directories, Inc.*,
719 F. Supp. 941 (D. Colo. 1988) ....................................34

*Erie R.R. v. Tompkins*,
304 U.S. 64 (1938) ..........................................................27

*Espinosa v. Sheridan United Tire*,
655 P.2d 424 (Colo. App. 1982) ......................................44

*Everett v. Dickinson & Co.*,
929 P.2d 10 (Colo. App. 1996) ........................................30

*Fernandez v. Clean House, LLC*,
    883 F.3d 1296 (10th Cir. 2018) ...................................................................................17

*Full Draw Prods. v. Easton Sports*,
    85 F. Supp. 2d 1001 (D. Colo. 2000)...........................................................................35

*GFF Corp. v. Associated Wholesale Grocers*,
    130 F.3d 1381 (10th Cir. 1997) ......................................................................................4

*Go Pro, Ltd. v. River Graphics, Inc.*,
    No. 01-cv-600-JLK, 2006 U.S. Dist. LEXIS 23067 (D. Colo. Apr. 5, 2006) .........................38

*Golan v. Ashcroft*,
    310 F. Supp. 2d 1215 (D. Colo. 2004)...................................................................15, 51

*Green v. Mansour*,
    474 U.S. 64 (1985)......................................................................................................37

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) ..................................................................................17

*Grynberg v. Kinder Morgan Energy, L.P.*,
    805 F.3d 901 (10th Cir. 2015) ....................................................................................52

*Hamon Contrs., Inc. v. Carter & Burgess, Inc.*,
    229 P.3d 282 (Colo. App. 2009)..................................................................................43

*Harmon v. Waugh*,
    414 P.2d 119 (Colo. 1966)..........................................................................................27

*Haynes Trane Serv. Agency v. Am. Standard, Inc.*,
    573 F.3d 947 (10th Cir. 2009) ............................................................................... 42-43

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*,
    805 F. Supp. 2d 1115 (D. Colo. 2011)..........................................................................40

*Hitch Enters. v. Cimarex Energy Co.*,
    859 F. Supp. 2d 1249 (W.D. Okla. 2012) ....................................................................26

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)....................................................................................................21

*Indianapolis Hotel Inv'rs v. Aircoa Equity Interests*,
    733 F. Supp. 1406 (D. Colo. 1990)..............................................................................23

*Jacobs v. Credit Suisse First Bos.*,
No. 11-cv-00042-CMA-KLM,
2011 U.S. Dist. LEXIS 112967 (D. Colo. Sep. 30, 2011) ......................................19

*Keohane v. Stewart*,
882 P.2d 1293 (Colo. 1994) ...............................................................................48

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012) .........................................................................16

*Klein v. Grynberg*,
44 F.3d 1497 (10th Cir.), *cert. denied*, 133 L. Ed. 2d 22, 116 S. Ct. 58 (1995) ...................27

*Knox v. First Sec. Bank of Utah*,
196 F.2d 112 (10th Cir. 1952) ...........................................................................15

*Knuppel v. Moreland*,
366 P.2d 136 (Colo. 1961) ................................................................................27

*Koch v. Koch Indus.*,
203 F.3d 1202 (10th Cir. 2000) .........................................................................23

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004) .........................................................................................33

*Lininger v. Knight*,
226 P.2d 809 (Colo. 1951) ................................................................................49

*Mann v. Boatright*,
477 F.3d 1140 (10th Cir. 2007) ....................................................................14, 15

*McGraw-Hill Pub. Co. v. Am. Aviation Assocs., Inc.*,
117 F.2d 293 (D.C. Cir. 1940)) .........................................................................42

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) .............................................................................14

*Medina v. Geo Grp., Inc.*,
No. 17-cv-00269-CMA-GPG,
2017 U.S. Dist. LEXIS 205466 (D. Colo. Oct. 5, 2017) ......................................44

*Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas*,
891 F.2d 1473 (10th Cir. 1989) .........................................................................14

*Monus v. Colo. Baseball 1993*,
No. 95-1099, 1996 U.S. App. LEXIS 32995 (10th Cir. Dec. 17, 1996)........................... 27-28

*Nasious v. Two Unknown B.I.C.E. Agents*,
492 F.3d 1158 (10th Cir. 2007) ...................................................................................15, 43, 47

*Netquote v. Byrd*,
504 F. Supp. 2d 1126 (D. Colo. 2007).......................................................................................41

*Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*,
874 P.2d 1049 (Colo. 1994)......................................................................................................30

*Pittman v. Larson Distrib. Co.*,
724 P.2d 1379 (Colo. App. 1986)..............................................................................................49

*Prince Lionheart, Inc. v. Halo Innovations, Inc.*,
No. 06-cv-00324-WDM-KLM,
2008 U.S. Dist. LEXIS 25147 (D. Colo. Mar. 28, 2008) ........................................................32

*Public Serv. Comm'n of Utah v. Wycoff Co.*,
344 U.S. 237 (1952)..................................................................................................................37

*Resolution Trust Corp. v. Stone*,
998 F.2d 1534 (10th Cir. 1993) ................................................................................................21

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) ................................................................................................16

*Robbins v. Okla. ex rel. Dep't of Human Servs.*,
519 F.3d 1242 (10th Cir. 2008) ..........................................................................................15, 18

*Robbins v. Wilkie*,
300 F.3d 1208 (10th Cir. 2002) ................................................................................................20

*Robert L. Kroenlein Tr. v. Kirchhefer*,
764 F.3d 1268 (10th Cir. 2014) ................................................................................................23

*Rotella v. Wood*,
528 U.S. 549 (2000)............................................................................................................21, 23

*RV Horizons, Inc. v. Smith*,
No. 1:18-cv-02780-NYW,
2019 U.S. Dist. LEXIS 198424 (D. Colo. Nov. 15, 2019) ................................................31, 40

*Scharrel v. Wal-Mart Stores*,
949 P.2d 89 (Colo. App. 1997).................................................................................................45

*Schwartz v. Celestial Seasonings, Inc.*,
  124 F.3d 1246 (10th Cir. 1997) ...........................................................................40

*Snyder v. Acord Corp.*,
  No. 1:14-cv-01736-JLK,
  2016 U.S. Dist. LEXIS 5314 (D. Colo. Jan. 15, 2016),
  *aff'd*, 684 F. App'x 710 (10th Cir. 2017).........................................................18, 19

*Stump v. Gates*,
  777 F. Supp. 808 (D. Colo. 1991)...................................................................48, 49

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ........................................................21, 22, 23, 24

*Town of Alma v. AZCO Constr., Inc.*,
  10 P.3d 1256 (Colo. 2000).................................................................................42

*TV Communications Network, Inc. v. ESPN, Inc.*,
  767 F. Supp. 1062 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992) ...........................14

*Union Rural Electric Ass'n v. Public Utilities Commission*,
  661 P.2d 247 (Colo. 1983)..................................................................................26

*United States v. Washita Constr. Co.*,
  789 F.2d 809 (10th Cir. 1986) ...........................................................................23

*USA Network v. Gannett Co.*,
  584 F. Supp. 195 (D. Colo. 1984).......................................................................38

*Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*,
  527 F.3d 1045 (10th Cir. 2008) .........................................................................31

*W. Distrib. Co. v. Diodosio*,
  841 P.2d 1053 (Colo. 1992).......................................................................... 25-26

*Weber Luke All., LLC v. Studio 1C Inc.*,
  233 F. Supp. 3d 1245 (D. Utah 2017)............................................................ 31-32

*Williams v. Dist. Court*,
  866 P.2d 908 (Colo. 1993)..................................................................................48

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)......................................................................................37, 38

*Wood v. Wells Fargo Bank, N.A.*,
   No. 13-cv-01731-CMA-KMT,
   2013 U.S. Dist. LEXIS 152196 (D. Colo. Oct. 2, 2013) .......................................................23

**Statutes and Rules**

Fed. R. Civ. P. 8 ................................................................................................ *passim*

Fed. R. Civ. P. 9 ................................................................................................ *passim*

Fed. R. Civ. P. 12 .....................................................................................15, 17, 19, 33, 51

Local Civil Rule 7.2 .................................................................................................4

15 U.S.C. §§1051–1072 .......................................................................................... 36-37

15 U.S.C. § 1115 ..................................................................................................33, 37

15 U.S.C. § 1125 ......................................................................................................34

15 U.S.C. § 1127 .................................................................................................. 38-39

18 U.S.C. § 1961 .................................................................................................. 20-21

18 U.S.C. §§ 1961-1968 ...............................................................................................20

18 U.S.C. § 2261A .....................................................................................................51

28 U.S.C. § 1332 ......................................................................................................52

C.R.S. § 6-1-105 ......................................................................................................41

C.R.S. § 13-17-101 ....................................................................................................47

C.R.S. § 13-80-101 .............................................................................................. 28-29, 35

C.R.S. § 18-9-111 .....................................................................................................51

C.R.S. § 24-34-306 ....................................................................................................47

C.R.S. § 24-34-402 ...............................................................................................13, 46, 47

C.R.S. § 24-34-403 ....................................................................................................47

C.R.S. § 24-34-405 .................................................................................................. 47-48

C.R.S. § 38-10-112 ....................................................................................................28

**Other Authorities**

Restatement (Second) of Torts § 575, comment (b)......................................................................49

Defendant Gaia, Inc. ("Gaia") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint of Plaintiffs James Corey Goode and Goode Enterprise Solutions, Inc. ("GES") pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

## PRELIMINARY STATEMENT

Gaia files this Motion to Dismiss to resolve, at the outset of this action, claims by Plaintiffs that have no basis in the law and are entirely inadequately pleaded.  Plaintiffs, whose activity in the "Conscious Community" focuses on Goode's experiences in a secret space program and with alien beings, bring this action purportedly to protect themselves from a suspected conspiracy to misappropriate their intellectual property and defame Goode.  But Plaintiffs' purported claims are simply not supported by the wild, disjointed, and vague allegations against various, apparently unconnected Defendants.  Indeed, each of Plaintiffs' claims fails to state a cause of action as a matter of law and must be dismissed, certainly as to Gaia, if not against all Defendants.

Plaintiffs' inability to plead legitimate, valid claims is indicative of Plaintiffs' true intent in filing—which is evident upon even a cursory review of the Complaint—to attempt to garner attention and stir controversy.  Such a conclusion is confirmed by Plaintiffs' actions both prior to and since filing, as Plaintiffs have made hundreds of internet and social media posts about their supposed crusade against Gaia and the other Defendants.  However, as this Memorandum explains, Plaintiffs' claims are merely conclusory pronouncements that do not constitute plausible legal causes of action and are nothing more than baseless conspiracy theories and persecution fantasies.

The Complaint includes sixteen separate numbered claims, all of which are brought against all Defendants—some of whom Gaia has never had any contact with—in an undifferentiated fashion, and incorporate by reference all allegations of the Complaint.  This approach furthers the impression that Plaintiffs are not seeking redress for valid claims, but are merely trying to collectively smear the Defendants and gain publicity.  Likewise, the Complaint is rife with allegations that in no way relate to any asserted claim; Plaintiffs apparently believe that every perceived slight is evidence of a grand and far-reaching conspiracy, and have included reference to such slights in the Complaint, regardless of whether any such actions could plausibly constitute a legal claim.  Plaintiffs' scattershot approach is not consistent with the pleading requirements of the Federal Rules of Civil Procedure, and unfairly burdens both Defendants and the Court.

To the extent that anything can be gleaned from the Complaint, it is clear that Plaintiffs' purported claims are deficient as a matter of law.  For example, Plaintiffs assert a RICO conspiracy against the Defendants, but fail to plausibly plead any necessary predicate offenses. Likewise, Plaintiffs bring a claim for breach of oral contract against Gaia, but then admit that the parties subsequently entered into a written contract on the same subject—which contains a merger clause of all prior representations—that did not include the purported oral promises Plaintiffs now seek to enforce.  Plaintiffs also attempt to assert certain trademark claims, but fail to allege how and when the purported trademarks were violated by Gaia.

Beyond just failing to state cognizable claims, the Complaint violates procedural and ethical obligations.  Plaintiffs have brought claims where there can be no good faith basis for doing so, including claims barred by the applicable statute of limitations, a claim that completely

ignores statutory prerequisites to filing, and claims that are not recognized as valid causes of action at all.  Plaintiffs have even alleged that the Court has diversity jurisdiction where it plainly does not, as both Plaintiffs and multiple Defendants are alleged to be citizens of Colorado.

The Complaint is an apparent attempt not to use the Court for the administration of justice but to provide fodder for Goode's online community, a community apparently hungry for content and conflict.  What began as a carefully orchestrated attempt to elicit clicks must end with a complete dismissal of all purported claims, and an imposition of sanctions on Plaintiffs and their counsel.

For all of the foregoing reasons, Plaintiffs' claims and the Complaint should be dismissed in their entirety with prejudice as to Gaia.

## RELEVANT FACTUAL ALLEGATIONS[1] AGAINST GAIA[2]

### I.  THE PARTIES

Gaia is a global conscious media and community company that operates a global digital video subscription service that caters to a unique subscriber base.  Gaia is a rapidly growing company with a digital content library of over 8,000 titles available to subscribers.  Gaia is a Colorado corporation and citizen for purposes of determining diversity jurisdiction.  (Complaint ¶ 4).

---

[1] The allegations set forth in the Complaint are accepted as true solely for purposes of this motion, and are otherwise denied in all respects.

[2] In many instances throughout the Complaint, Plaintiffs fail to distinguish among the Defendants.  This failure is one of the many deficiencies in the Complaint that makes it nearly impossible for Gaia to defend itself.  For purposes of this Memorandum and to assist the Court, Gaia has attempted to determine which allegations pertain to Gaia.

As alleged in the Complaint, James Corey Goode is a media figure and Goode Enterprise Solutions, Inc. ("GES") is a company that was formed by Goode and his wife.  (Complaint ¶¶ 2-3).  Plaintiffs Goode and GES are both Colorado citizens for purposes of determining diversity jurisdiction.  (Complaint ¶¶ 2-3).

Four individuals are named as defendants along with Gaia, two of whom are alleged to be Colorado citizens as well.  (Complaint ¶¶ 5-8).

## II.  CONTRACTUAL RELATIONSHIP BETWEEN GAIA AND PLAINTIFFS

As alleged by Plaintiffs, in June 2015, Goode and Gaia began discussing Goode's appearance on a show called "Cosmic Disclosure".  (Complaint ¶ 19).  Plaintiffs and Gaia thereafter agreed to a contract reflecting the parties' mutual desire for Goode to appear on the show.  (Complaint ¶ 19).

Goode alleges that during oral negotiations prior to signing a written agreement he asked for certain consideration in exchange for agreeing to appear on "Cosmic Disclosure" but admits that much of what he asked for—and now alleges is due—was ultimately not included in the written contract between Plaintiffs and Gaia.  (Complaint ¶¶ 27-28).  Plaintiffs admit that they entered into a written contract dated August 22, 2016 (the "2016 Contract") related to Goode appearing on "Cosmic Disclosure".[3]  (Complaint ¶ 29).  Plaintiffs admit that the 2016 Contract provided for compensation to Plaintiffs for Goode's testimony on "Cosmic Disclosure" as well

---

[3] Plaintiffs did not attach the 2016 Contract to the Complaint but it is referred to therein and is central to Plaintiffs' breach of contract claim, and thus may be considered by the Court on Gaia's Motion to Dismiss.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.").  A copy of the 2016 Contract is attached as Exhibit A, and is being filed as "Restricted – Level 2" pursuant to Local Civil Rule 7.2; a Motion to Restrict explaining the interests to be protected by restriction is forthcoming and will be filed within 14 days pursuant to Local Civil Rule 7.2(e).

as for various speaking engagements.  (Complaint ¶ 29).  Though unclear, Plaintiffs do not appear to allege that Gaia failed to pay to Plaintiffs any of the agreed upon compensation owed pursuant to the 2016 Contract.  (*See* Complaint ¶¶ 26-29, 37).  Instead, Plaintiffs appear to allege that certain purported oral promises made prior to entering into the 2016 Contract—which were not included in the 2016 Contract—were not fulfilled by Gaia.  (*See* Complaint ¶¶ 26-29, 37).  The 2016 Contract contains a section titled "Entire Agreement" which includes a "merger clause", which provides: "[t]his Agreement contains the entire agreement of the parties and all previous agreements, warranties, and representations, if any, are merged herein."  (2016 Contract, ¶ 8).

Plaintiffs allege that Gaia has removed from its digital library materials that feature Goode.  (Complaint ¶ 131).  Plaintiffs also cite to a message appearing on Gaia's webpage explaining the removal of material, which simply states the materials have been removed and expresses Gaia's "disappointment".  (Complaint ¶ 133).  Plaintiffs allege that Gaia's removal of materials and related explanation have caused <u>Gaia</u> to lose subscribers and incur damages, but do not allege that Gaia's actions or statements regarding removal of materials have had any effect on or caused any damages to Plaintiffs.  (Complaint ¶ 132).

Plaintiffs also allege that Gaia also had a contractual relationship with Defendant Jay Weidner, and that Weidner was hostile to Goode when he worked on "Cosmic Disclosure".  (*See* Complaint ¶¶ 30-36).  Plaintiffs do not allege any details of the contractual relationship between Gaia and Weidner nor do they allege any facts relating to Goode being an intended third-party beneficiary of any such contract between Gaia and Weidner.  (*See* Complaint ¶¶ 30-36).

Plaintiffs allege—circularly—that Defendant Weidner was hostile to and retaliated against Goode because Goode complained about Weidner being hostile.  (Complaint ¶ 212).

## III. PLAINTIFFS' ASSERTED INTELLECTUAL PROPERTY RIGHTS

GES asserts rights to certain intellectual property created by Goode.  (Complaint ¶ 17). Such intellectual property may include Plaintiffs' purported rights in the terms "Sphere Being Alliance", "SBA", "Blue Avians", and "20 and Back".  (Complaint ¶¶ 19, 39-40).  Plaintiffs claim that they have registered marks with the U.S. Patent & Trademark Office for "Sphere Being Alliance" and "SBA".  (Complaint ¶¶ 39-40).  Pursuant to copies of the registrations for "Sphere Being Alliance" and "SBA", attached as exhibits to the Complaint, "Sphere Being Alliance" is registered in International Class 25 for "clothing, namely, T-shirts, sweatshirts, pajamas, hats, bandanas, socks, Halloween and masquerade costumes for men, women and children"; "SBA" is registered in International Classes 16 and 41, for "paper goods, namely, comic books" and "eentertainment [sic] services in the field of film and television, namely, the production and distribution of motion picture films".  (Complaint Exs. A, B).  Plaintiffs have also applied for registrations for the marks "Blue Avians", and "20 and Back".  (Complaint ¶ 40).  Plaintiffs do not describe the classes or types of goods for which such registrations were sought, nor do Plaintiffs attach to the Complaint copies of the registration applications for such marks.

Gaia filed oppositions with the Trademark Trial and Appeal Board (the "TTAB") to Plaintiffs' applications for registrations for the marks "Blue Avians" and "20 and Back". (Complaint ¶ 42).  Plaintiffs make various conclusory and vague allegations about the status of the opposition proceedings before the TTAB, including the status of discovery in such

proceedings.[4]  (Complaint ¶¶ 44-45).  Plaintiffs also allege that Gaia was slow to respond to Plaintiffs' requests to settle.  (Complaint ¶ 232).

Plaintiffs allege without specification that Gaia has and continues to use Plaintiffs' "protected phrases and materials on various advertising and promotional materials."  (Complaint ¶ 48).  Plaintiffs allege that other individuals—not named as Defendants—appeared on Gaia shows and "use[d] Goode's protected phrases."  (Complaint ¶¶ 49, 154).  Plaintiffs do not allege which "protected phrases" were supposedly "used", when such "protected phrases" were "used", who "used" the "protected phrases", or in what context the "protected phrases" were "used". (*See* Complaint ¶¶ 49-58).

Plaintiffs allege that they attempted to stop Gaia and other individuals from "using" their "protected phrases", including by sending cease and desist letters to Gaia and others.  (Complaint ¶ 50).[5]  Gaia offered to indemnify and assume the cost of defense for one recipient of Plaintiffs' threatening letters.  (Complaint ¶¶ 52-53).

---

[4] Though Plaintiffs' allegations must be accepted for purposes of this Motion to Dismiss, Plaintiffs' characterizations of the status of discovery in the pending TTAB actions are a gross misstatement.  At the time that Plaintiffs sought to stay the proceedings, Gaia was prepared to file motions to compel discovery responses and documents in response to Plaintiffs' wholesale failure to participate in discovery in good faith.  Plaintiffs' outright false statements in the Complaint—signed by Plaintiffs' counsel who is representing Plaintiffs in the TTAB actions— concerning discovery are sufficient to subject each of them to sanctions.  Regardless, the status of discovery requests in parallel proceedings has no bearing on or relevance to any of Plaintiffs' purported claims.

[5] Plaintiffs admit that the basis for certain allegations and an exhibit to the Complaint were obtained in discovery in the pending TTAB actions (Complaint ¶¶ 52-53, 55); it is unclear whether use of discovery material in other proceedings is prohibited by the Standard Protective Order applicable to all TTAB proceedings, including those at issue.

## IV. ACTIONS OF OTHER DEFENDANTS

Plaintiffs allege that certain individuals—including some of the named Defendants and some who are not—made various purportedly defamatory statements, including by improperly distinguishing between copyright and trademark.  (Complaint ¶¶ 55-56, 58).

Plaintiffs also allege that the individual Defendants—alone or in conjunction with other individuals—made various threats to or regarding Goode, or undertook other actions designed to harass or defame him.  (*See* Complaint ¶¶ 59-105, 117-124).  Plaintiffs do not allege that Gaia made any statements or took any actions to threaten, harass, or defame Goode, his family, or GES.

Plaintiffs allege that Goode ceased being invited to certain conferences sponsored by Gaia.  (Complaint ¶¶ 106-115).  Plaintiffs allege that Goode did not receive invitations because Defendant Weidner requested that he not be invited.  (Complaint ¶ 116).

Plaintiffs attempt to "connect" the individual Defendants to Gaia by alleging that "[t]here is a reasonable **suspicion** there is an underlying motivation to remove Goode from his livelihood by creating a lengthy campaign of innuendo, ***possible presentation of doctored evidence*** and continual rehash of prior statements."  (Complaint ¶ 125) (emphasis added).  Plaintiffs do not allege facts to support, nor do they apparently have a good faith basis for, their "suspicion" or of the "possible presentation of doctored evidence".  Plaintiffs admit that Defendant Weidner is not actually connected to Gaia.  (Complaint ¶ 127).

Plaintiffs allege that Defendants operated as a RICO "enterprise" starting in 2015. (Complaint ¶¶ 138, 140, 142).

Plaintiffs allege that Defendants defrauded "GES out of sales and profits" through "distribution, production, and sales of its inferior knock-off(s)." (Complaint ¶ 142.b). Plaintiffs do not allege details regarding what "knock-off" products were sold, by which Defendants, or to whom or when such products were sold. Plaintiffs also allege that consumers were defrauded. (Complaint ¶ 142.b). Plaintiffs do not allege details regarding how consumers were purportedly defrauded, by which Defendants, or when.

## ARGUMENT

The Complaint is a morass of conclusory pronouncements lacking in any clarity, conciseness, or simplicity. Plaintiffs fail to distinguish among Defendants for any of the claims, and incorporate the entirety of the previous allegations into each claim. Even to file this Motion to Dismiss, Gaia has been forced to attempt to stitch together allegations tying them to purported claims in order to expose their substantive deficiencies.

What emerges, if you strip away Plaintiffs' conclusory allegations and attempt to wade through those that remain, is a Complaint devoid of facts that pertain to Gaia or implicate it in the numerous asserted causes of action. Even if the Court were to accept Plaintiffs' conclusory allegations—which it is not required to, and should not, do—Plaintiffs' claims still fail as a matter of law. Plaintiffs have failed to plausibly plead their claims against Gaia for a variety of reasons, and the claims should be dismissed.

## I.  SUMMARY OF REASONS FOR DISMISSAL OF EACH OF PLAINTIFFS' CLAIMS

Each of Plaintiffs' claims should be dismissed for a variety of reasons. For the convenience of the Court, each of the claims and the respective reasons for dismissal are summarized in this section and discussed in greater detail in the subsequent sections.

A. **PLAINTIFFS' RICO CLAIM DOES NOT INCLUDE ANY ALLEGATIONS OF "RACKETEERING ACTIVITY" AND THE CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS**

Plaintiffs' RICO claim must be dismissed for two primary reasons: first, Plaintiffs have not alleged a pattern of anything that constitutes "racketeering activity" as defined by the relevant statutes. To state a valid RICO claim, Plaintiffs must allege predicate offenses that would bring the Defendants' alleged conduct under the purview of the RICO statutes, such as wire fraud or mail fraud. Although Plaintiffs conclusorily allege such conduct, they do not so with any clarity or particularity, as required by Rule 9(b) for claims that sound in fraud.

Even if Plaintiffs had adequately and plausibly pleaded a pattern of racketeering activity, other of Plaintiffs' allegations establish that any such claim would be barred by the four-year statute of limitations applicable to RICO claims because Plaintiffs allege that the underlying conduct started in 2015, but the claim was not brought until 2020.

B. **PLAINTIFFS' BREACH OF CONTRACT CLAIM CANNOT PROCEED REGARDLESS OF WHAT CONTRACT WAS PURPORTEDLY BREACHED**

Plaintiffs' vague allegations make it difficult to determine whether Plaintiffs' breach of contract claim is intended to be based upon a purported oral contract, the 2016 Contract between Plaintiffs and Gaia, or a contract between Gaia and Weidner (two Defendants). Regardless, Plaintiffs' claim fails as a matter of law.

Plaintiffs admit that subsequent to the alleged oral negotiations that purportedly formed an oral agreement about Goode's participation on a Gaia show, there was a written contract on that topic that contains a merger clause, thus making any claim based on a purported oral agreement entirely implausible. Moreover, Plaintiffs allege that the oral contract preceded

Goode's work on the show in 2015, which would make any breach of oral contract claim barred by a combination of the statute of frauds and the statute of limitations.

Plaintiffs do not appear to allege any breach of the 2016 Contract or any other written agreement between Gaia and Plaintiffs, but may be attempting to allege a claim based on a purported breach of a contract between Gaia and Weidner, another Defendant.  However, Plaintiffs do not, and cannot, allege that they were an intended third-party beneficiary of any such contract, thus making any such claim for breach implausible.

### C.    PLAINTIFFS' TRADEMARK CLAIMS INCLUDE ONLY CONCLUSORY ALLEGATIONS ABOUT USE

Plaintiffs' various trademark and unfair competition claims all fail for the same reasons, namely that they fail to include any factual—as opposed to conclusory—allegations about the alleged use of which Plaintiffs' complain.  Plaintiffs have not identified which of their marks they believe have been infringed, or any information about when such infringement occurred, by whom, and in what context.  Moreover, the limited information that is pleaded fails to establish that Gaia used an infringing mark "in commerce", which is a fundamental element of the asserted claims, but is sufficient to establish that any use that did occur constitutes "fair use" a complete defense to Plaintiffs' claims.

### D.    PLAINTIFFS' OTHER TORT CLAIMS ARE DEFICIENT AND NOT PROPERLY BROUGHT AGAINST GAIA

Plaintiffs have asserted ten other tort claims, most of which appear to be actually directed at other Defendants, and some of which are not actual claims.  Nevertheless, because Plaintiffs have improperly asserted all claims against all Defendants, Gaia is forced to respond.  At least as to Gaia, each claim fails to state a cause of action, and some claims are so deficiently pleaded

that they cannot state a cause of action against anyone. In order, Plaintiffs' claims should be dismissed because:

- Plaintiffs' claim for violation of the Colorado Consumer Protection Act—which must be pleaded with specificity pursuant to Rule 9(b)—must be dismissed because Plaintiffs have not alleged a false representation, the date when that representation was made, the identity of the individual making the purported false representation, any direct consequences of such allegations, or any allegations that Gaia has done anything that constitutes an unfair or deceptive trade practice.

- Plaintiffs' claim for unfair competition must be dismissed because there are no allegations that Plaintiffs' purported marks have acquired a secondary meaning, or that Gaia's purported "use" of the marks was unfair.

- Plaintiffs' claim for fraudulent misrepresentation is barred by the economic loss rule and must be dismissed because the claim is based on allegations that Plaintiffs were to be paid by Gaia for services performed and that they were not, but cannot allege that there was any duty to pay them for the alleged categories of non-payment other than by contract.

- Plaintiffs' claim against Gaia for intentional infliction of emotional distress must be dismissed because there are no allegations that could rise to the level of "outrageous conduct", nor of severe emotional distress, much less any allegations as to either against Gaia specifically.

- Plaintiffs' claim for negligent infliction of emotional distress must be dismissed because there are no allegations that Gaia has done anything negligent, or did

anything that put Plaintiffs in unreasonable risk of physical harm.  Further,
Plaintiffs have not alleged cognizable emotional distress, as there are no
allegations of physical manifestations or mental illness, such as long-continued
nausea, headaches, or repeated hysterical attacks.

- Plaintiffs' claim for "harassment at work" appears to be made pursuant to C.R.S.
  § 24-34-402, covering discriminatory or unfair employment practices, but must be
  dismissed because the alleged actions do not constitute discrimination or
  harassment under the statute, and Plaintiffs failed to exhaust administrative
  remedies prior to bringing the claim.

- Plaintiffs' claims for libel and slander are subject to the same standards and both
  must be dismissed because Plaintiffs have not alleged any defamatory statements
  made by Gaia, nor any special damages.

- Plaintiffs' claim for "tortious interference with a business expectancy" is
  presumably intended to be a claim for intentional interference with prospective
  business relations, a tort that is recognized in Colorado.  But the claim must be
  dismissed as to Gaia because Plaintiffs have not alleged that Gaia did anything to
  interfere with Plaintiffs participation at various conferences, only that another
  Defendant did.  Moreover, Plaintiffs do not allege that any wrongful means were
  used, even by the other Defendant.

- Plaintiffs' claim for "cyberstalking", if intended to be made pursuant to either a
  state or federal statute that governs such behavior, must be dismissed because

13

neither statute provides for a private civil right of action, and there is no common law tort for such behavior.

## II.  LEGAL STANDARDS APPLICABLE TO ALL CLAIMS

Rule 8 requires that Plaintiffs make a short and plain statement of their claims, not that Gaia—or the Court—be forced to do Plaintiffs' job for them.  Plaintiffs' rambling and sometimes incomprehensible allegations disadvantage Gaia and the efficient administration of justice, and require dismissal of the Complaint in its entirety.

### A.    RULE 8 REQUIRES A SHORT AND PLAIN STATEMENT

Rule 8(a) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).  "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted."  *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  Rule 8 requirements are also designed to permit the Court to determine whether the allegations, if proven, show that the plaintiff is entitled to relief.  *See Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989); *see also TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992).

"'Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.'"  *Mann*, 477 F.3d at 1148 (*quoting McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)).  Where a complaint fails to contain a "short and plain statement of the claim showing that the pleader is entitled to relief",

Fed. R. Civ. P. 8(a), it is "sufficient reason to dismiss the complaint." *Mann*, 477 F.3d at 1147-48 (upholding district court's dismissal of all claims and noting "[i]t [is] not the district court's job to stitch together cognizable claims for relief from the wholly deficient pleading that [plaintiff] filed. As we have frequently noted, we are loath to reverse a district court for refusing to do the litigant's job."). The Court has "no duty to conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1252 (10th Cir. 2008) (internal quotation marks and citation omitted).

The Tenth Circuit "has long recognized that defendants are prejudiced by having to respond to . . . wordy and unwieldy . . . pleading[s]." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162-63 (10th Cir. 2007) (*citing Mann*, 477 F.3d at 1148; *Knox v. First Sec. Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952)). Pleadings that are rambling and sometimes incomprehensible cause "disadvantages to the administration of justice" and make it so that "district judges assigned the task of measuring legal  pleadings against certain criteria embodied in Rule 12(b), Rule 56, and the like, have their task made immeasurably more difficult." *Nasious*, 492 F.3d at 1163.

### B.     RULE 12 REQUIRES CLAIMS TO BE PLAUSIBLE

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed unless it alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004) (dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory). A complaint must contain well-pled factual allegations that rise above mere speculation. *Twombly*, 550 U.S. at 570. A facially plausible claim is one where the

pleadings allow the court to draw a reasonable inference of the defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (italics in original).

Although this standard is not akin to probability, it requires more than the mere possibility that a defendant has acted unlawfully and is liable. *Iqbal*, 556 U.S. at 678. Pleading facts that are merely consistent with liability is not sufficient to meet the plausibility standard. *Id*. Nor are mere recitations of the elements of a cause of action or conclusory statements of liability. *Id*; *Twombly*, 550 U.S. at 555 (mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" do not suffice). Accordingly, courts disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). To determine whether a complaint states any plausible claims, the court must use both common sense and judicial experience. *Iqbal*, 556 U.S. at 679. If the facts as pled do not allow an inference stronger than the mere possibility of liability, the complaint is insufficient. *Id*.

In considering a motion to dismiss, the Court may consider a document submitted by the moving party if the document is referenced in the complaint, central to a claim and the parties do not dispute the document's authenticity. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

Courts can properly dismiss claims pursuant to a 12(b) motion when the complaint alleges the factual basis for the elements of defenses such as the statute of limitations.  *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

Finally, where a complaint fails to state a claim, and it cannot be cured by amendment, a dismissal with prejudice is appropriate.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997).

## III. PLAINTIFFS' COMPLAINT FAILS TO MEET BASIC RULE 8 STANDARDS

Plaintiffs' rambling and disjointed pleading does not meet the requirement of a short and plain statement showing that Plaintiffs are entitled to any relief, much less that they are entitled to relief on sixteen different numbered claims, all of which are pleaded against all Defendants and which incorporate the entirety of the Complaint.  Because the Complaint fails to meet Rule 8 standards, it should be dismissed.

### A.    THE COMPLAINT IS NOT A SHORT AND PLAIN STATEMENT

The Complaint is not a "short and plain statement."  Nor does it inform the Defendants of the claims being asserted and the basis for those claims.  Accordingly, rather than make clear that the Plaintiffs are entitled to any relief, it forces Defendants—and the Court, if the claims are not dismissed—to speculate as to whether any set of facts could show that the Plaintiffs are entitled to relief, which, as discussed below, they are not.

Perhaps not surprisingly for someone who purports to have a large internet following and created a video to show him signing "legal papers" (presumably intended to be the Complaint), the Complaint appears to be a show-piece intended to garner attention from Goode's online followers and the "Conscious Community," rather than a formal legal pleading intended to serve

an administrative function.  Especially where parties are represented by counsel—as is true here—and not proceeding *pro se*, it is neither the Defendants' nor the Court's duty to stitch together cognizable claims for relief from a wholly deficient pleading.  Allowing Plaintiffs to proceed on such a Complaint would prejudice Gaia and disadvantage the administration of justice.  Plaintiffs' failure to provide a short and plain statement, alone, is sufficient grounds to dismiss, but it is not the only way in which Plaintiffs violated Rule 8.

### B.    Rule 8 Prohibits Plaintiffs' "Group Pleading"

The Complaint also violates Rule 8 by failing to distinguish among Defendants as to each claim.  A complaint violates Rule 8 when it fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants —so-called "group pleading." *Snyder v. Acord Corp.*, No. 1:14-cv-01736-JLK, 2016 U.S. Dist. LEXIS 5314, at *20-22 (D. Colo. Jan. 15, 2016), *aff'd*, 684 F. App'x 710 (10th Cir. 2017).  "Group pleading" violates Rule 8's "short and plain statement" standard—the complaint must "make clear exactly who is alleged to have done what to whom, to provide each [defendant] with fair notice as to the basis of the claims against [it], as distinguished from collective allegations against [another party]." *Robbins*, 519 F.3d at 1250 (stating "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants" and dismissing claims for, *inter alia*, failing to distinguish among defendants or to attribute alleged acts to specific defendants).

Such "group pleading" is impermissible, fails to provide fair notice to Gaia and the other Defendants of the claims, and puts the entire burden on Defendants and the Court to attempt to determine what Plaintiffs are actually alleging.  To the extent that Plaintiffs intended to assert all claims against all Defendants based on their RICO allegations, as discussed in more detail below,

such notion is easily proven inapplicable and could not have been made in good faith by even a cursory review of the RICO statutes.  Especially combined with the larger failure to provide a short and plain statement, failing to distinguish among Defendants is cause to dismiss the Complaint.

### C.  RULE 8 PROHIBITS PLAINTIFFS' "SHOTGUN PLEADING"

Further burdening Defendants and the Court is Plaintiffs' approach of incorporating by reference the entirety of the Complaint in each claim.  A complaint runs afoul of Rule 8 when it incorporates by reference the entirety of the complaint in each claim when certain paragraphs are clearly inapplicable to that claim—so-called "shotgun pleading."  *Snyder*, 2016 U.S. Dist. LEXIS 5314, at *20-22; *Jacobs v. Credit Suisse First Bos.*, No. 11-cv-00042-CMA-KLM, 2011 U.S. Dist. LEXIS 112967, at *18 (D. Colo. Sep. 30, 2011).

Even on the limited information provided by Plaintiffs it is clear that not all paragraphs could potentially apply to each claim.  If the Complaint were written concisely and clearly, Plaintiffs' "shotgun pleading" may not pose an issue, but when combined with all of the other issues, it makes it virtually impossible for Defendants and the Court to have an idea of exactly what Plaintiffs are alleging, thus making the Complaint subject to dismissal.

### IV. EACH OF PLAINTIFFS' CLAIMS FAILS TO STATE A CAUSE OF ACTION PURSUANT TO RULE 12

Even if the Complaint did not violate Rule 8 standards, wading through the conclusory and disjointed allegations as best as possible on a claim-by-claim basis establishes that Plaintiffs claims fail to state a cause of action as a matter of law and must be dismissed with prejudice.

Even accepting the facts alleged in the Complaint as true, Plaintiffs have failed to plausibly plead their purported claims as required by *Twombly* and *Iqbal*.  Because they cannot

do so in most if not all instances, and amendment would thus be futile, Plaintiffs' claims against Gaia should be dismissed with prejudice.

A.    **PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW**

Plaintiffs' RICO claim fails to include allegations of fundamental elements of such a claim, and wholly fails to plead with particularity any predicate offenses.  Moreover, Plaintiffs' own allegations establish that such a claim is barred by the statute of limitations.  Accordingly, Plaintiffs' RICO claim should be dismissed.

### 1.    *Required Elements of a RICO Claim*

The federal RICO statutes, 18 U.S.C. §§ 1961-1968, outlaw the conduct of an enterprise's affairs through a pattern of racketeering activity.  "To state a private RICO claim, 'a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Davison v. Grant Thornton LLP*, 582 F. App'x 773, 775 (10th Cir. 2014) (*quoting Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (quotation marks omitted in cited source).

A plaintiff alleging a RICO claim must set forth with particularity the predicate acts—the so-called "racketeering activity"—that purportedly give rise to a cause of action.  *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (dismissing RICO claims based on mail and wire fraud).

(a)    Racketeering Activity

"Racketeering activity" is defined by the RICO statute to include: 1) "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under

State law and punishable by imprisonment for more than one year"; and, 2) acts identified in specific federal statutes.  18 U.S.C. § 1961(1); *see also Rotella v. Wood*, 528 U.S. 549, 552 (2000) (racketeering activity is "defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics and bearing specified penalties"); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993) (racketeering activity is "any act in violation of specified state and federal crimes, including wire fraud, bank fraud, and fraud in the sale of securities").

(b)    <u>Pattern of Activity</u>

The RICO statute is not designed to hold liable an isolated offender.  *Resolution Trust Corp.*, 998 F.2d at 1544.  Accordingly, proof of two or more predicate acts alone is not sufficient to prove a pattern, unless there is a relationship between the predicate acts combined with a threat of continuing activity.  *Tal v. Hogan*, 453 F.3d 1244, 1267 (10th Cir. 2006) (*citing H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001)). "Continuity of threat requires both proof of 'a series of related predicates extending over a substantial period of time,' as well as a 'showing that the predicates themselves involve a distinct threat of long-term racketeering activity . . . or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise.'" *Tal*, 453 F.3d at 1268 (*quoting Resolution Trust Corp.*, 998 F.2d at 1543).

Where a plaintiff fails to plead the requisite elements of a RICO claim, such a claim should be dismissed.  *Davison*, 582 F. App'x at 776 (affirming dismissal of RICO claim where "Plaintiff's complaint totally fails to set forth a RICO claim. In particular, it makes no attempt to identify predicate offenses under § 1961(1), and we can discern none.").

### 2.    Specific Standards Applicable to Predicate Offenses

Plaintiffs' deficient allegations do not clearly identify any predicate offenses, which alone is reason to dismiss.  However, the allegations vaguely refer to fraud and use of the internet and U.S. mail, implying that Plaintiffs are seeking to allege that the predicate offenses are mail or wire fraud.

"To establish the predicate act of mail fraud, [plaintiffs] must allege '(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme.'"  *Tal*, 453 F.3d at 1263 (*quoting Bacchus Indus., Inc. v. Arvin Indus.*, Inc., 939 F.2d 887, 892 (10th Cir. 1991)).  "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud."  *Tal*, 453 F.3d at 1263 (quotation marks and citation omitted).

"The common thread among these crimes is the concept of 'fraud.'  Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury."  *Id*. (quotation marks and citation omitted).  "Failure to adequately allege any one of the nine elements is fatal to the fraud claim."  *Id*.; *but see Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639, 648-49 (2008) (holding that reliance is not a necessary element for mail or wire fraud crimes as enumerated in the RICO statute).

The particularity requirement of Rule 9(b) applies to claims of mail and wire fraud, including where such fraud is being used as a predicate offense for a RICO violation.  *Tal*, 453

F.3d at 1263.  "Thus, 'a complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Tal*, 453 F.3d at 1263 (*quoting Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (other quotation marks and citations omitted).  "[A] plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent."  *Wood v. Wells Fargo Bank, N.A.*, No. 13-cv-01731-CMA-KMT, 2013 U.S. Dist. LEXIS 152196, at *18 (D. Colo. Oct. 2, 2013) (quotation marks and citation omitted).  "General allegations that the mails were used in connection and in furtherance of the enterprise are insufficient to meet the particularity requirements of Rule 9(b)."  *Id*. at *20.  A defendant must participate in each instance of alleged fraud with the specific intent to defraud.  *United States v. Washita Constr. Co.*, 789 F.2d 809, 817 (10th Cir. 1986).

### 3.    *Statute of Limitations Applicable to RICO Claims*

A civil RICO claim is subject to a four-year statute of limitations.  *Rotella*, 528 U.S. at 552.  A RICO claim accrues, and the limitations period begins to run, when a plaintiff has a complete cause of action—in the RICO context, a claim accrues when the injury occurs or is discovered.[6]  *Robert L. Kroenlein Tr. v. Kirchhefer*, 764 F.3d 1268, 1275 (10th Cir. 2014).  "A subsequent violation, beyond the four year time period, will not resurrect a RICO cause of action for the previous violations even if in the same pattern of racketeering activity and even if a plaintiff is thereby injured."  *Indianapolis Hotel Inv'rs v. Aircoa Equity Interests*, 733 F. Supp.

---

[6] Plaintiffs have not alleged that they were unaware of the alleged predicate acts or discovered them sometime after they occurred, so here there is no distinction between an analysis pursuant to an "injury-occurrence" rule and an "injury-discovery" rule.

1406, 1409 (D. Colo. 1990); *Armstrong v. Wyo. Dep't of Envtl. Quality*, 674 F. App'x 842, 846 (10th Cir. 2017) (affirming dismissal of claim as time-barred even where plaintiff alleged that conduct was continuing).

        **4.**      **Plaintiffs' Allegations Do Not Sufficiently Plead Elements of RICO Claim or Predicate Offenses and are Barred by the Statute of Limitations**

Plaintiffs fail to allege the necessary elements of a RICO violation, particularly by failing to identify any recognized "racketeering activity" or that there is any pattern of such activity. Accordingly, Plaintiffs' RICO claim must be dismissed.

Plaintiffs do not even hint at the necessary allegations to show a plausible mail or wire fraud claim that could constitute a predicate offense for their RICO claim. Plaintiffs' allegations are exceedingly vague and wholly conclusory, failing to allege at all—much less with particularity as required by Rule 9(b)—any false material representations, any knowledge of the falsity of those false statements, anything about the speaker's intent, or the recipient's knowledge or injury. In short, Plaintiffs have failed to allege every single element of a mail or wire fraud claim, when even failing to allege a single element is grounds for dismissal. *See Tal*, 453 F.3d at 1263. To the extent Plaintiffs' RICO claim is based on wire or mail fraud, it must be dismissed.

It is neither the Court's nor Gaia's obligation to identify any or all other possible predicate offenses for Plaintiffs. Because Plaintiffs have failed to plead a plausible predicate offense—one of the requisite elements of a RICO claim—their claim should be dismissed. *See Davison*, 582 F. App'x at 776.

Plaintiffs have also failed to plausibly plead that there was any pattern of racketeering activity. Plaintiffs seem to be operating under the misimpression that any purported actions

alleged in the Complaint constitute racketeering activity, and thus together they form a pattern to plausibly allege a RICO violation.  But a pattern of activity, in the RICO context, requires more than just a series of actions—Plaintiffs must also plausibly allege that there is a relationship between each of the predicate acts combined with a threat of continuing activity, which they cannot do beyond mere conclusory statements.

Further, because Plaintiffs have already established by their allegations that any RICO claim they could allege would be barred by the statute of limitations, Plaintiffs should not be permitted to amend their claim.  Of particular relevance—and one of the only facts plainly alleged in the Complaint—is that Plaintiffs claim the purported relevant activity started occurring at least by 2015.  Pursuant to a four-year limitations period, such period necessarily passed sometime in 2019.  Because Plaintiffs did not bring their claims until 2020, they are untimely.  Moreover, it is irrelevant if Plaintiffs do—or could—allege that there have been any further acts within the limitations period, as such acts would not revive the expired cause of action.

For all of the above reasons, Plaintiffs' RICO claim is fatally deficiently pleaded and barred as a matter of law.  As such, Plaintiffs' RICO claim should be dismissed with prejudice.

### B. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' breach of contract claim fails to make clear whether it is based on a purported oral contract, the 2016 Contract between Plaintiffs and Gaia, or a contract between Gaia and Weidner (two Defendants).  Regardless of on what breach of which contract Plaintiffs intend to base their claim, such claim fails as a matter of law.

Under any set of allegations, in Colorado, a party claiming breach of contract must prove the following elements: "(1) the existence of a contract; (2) performance by the plaintiff or some

justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).  Contract interpretation is generally a question of law.  *Union Rural Electric Ass'n v. Public Utilities Commission*, 661 P.2d 247, 251 (Colo. 1983).

Even under notice pleading standards, a complaint alleging breach of contract must adequately plead all of the elements of a breach of contract claim.  *Hitch Enters. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1257 (W.D. Okla. 2012) (dismissing breach of contract claim because factually sparse allegations failed to meet *Twombly* standard).

Because Plaintiffs have not pleaded, and cannot plausibly plead, all of the elements of a breach of contract under any purported contract, their claim must be dismissed with prejudice.

### 1.      *Plaintiffs' Breach of Oral Contract Claim is Barred*

Plaintiffs first appear to rely on a purported oral contract between Goode and Gaia, the terms of which were discussed prior to entering into the 2016 Contract and which Plaintiffs **admit** were not included in that contract.  The parties' written contract, which includes a merger clause, effectively bars inconsistent parol evidence of a purported oral contract.  Even if there had been no written contract, Plaintiffs' breach of oral contract claim is barred as a matter of law by the statute of limitations.  For a variety of reasons, Plaintiffs' claim for breach of a purported oral contract must be dismissed with prejudice.

### (a)      The Merger Clause in the Parties' 2016 Contract Precludes any Oral Contract

The merger clause in the parties' written 2016 Contract plainly supersedes and merges all prior negotiations and representations, and thus bars parol evidence of an oral contract

inconsistent with its terms.  In the presence of such a merger clause, Plaintiffs cannot plausibly

state a claim for breach of oral contract based on allegations of pre-contractual oral agreements.

Although Plaintiffs did not attach the 2016 Contract to the Complaint—perhaps to

attempt to avoid having to contend with the merger clause therein—the 2016 Contract may be

considered on this Motion to Dismiss because it is referenced in and integral to the Complaint.

Consideration of the 2016 Contract makes clear that Plaintiffs cannot plausibly plead a breach of

oral contract claim.

The 2016 Contract provides: "[t]his Agreement contains the entire agreement of the

parties and all previous agreements, warranties, and representations, if any, are merged herein."

(2016 Contract, ¶ 8).  Accordingly, the 2016 Contract was an integrated agreement that merged

all of the parties' prior discussions. *See Harmon v. Waugh*, 414 P.2d 119, 121 (Colo. 1966)

("Whether a contract was intended by the parties as an integrated one is . . . a matter of intention"

and is evidenced by the parties' agreement) (quotation marks and citations omitted).[7]

Plaintiffs' allegations—and any evidence in support of them—could not support a breach

of oral contract claim in light of the merger clause in the 2016 Contract.  Parol evidence

contradicting the contract's terms is not admissible where an agreement is integrated.  *See*

*Knuppel v. Moreland*, 366 P.2d 136, 138 (Colo. 1961); *Monus v. Colo. Baseball 1993*, No. 95-

1099, 1996 U.S. App. LEXIS 32995, at *40-44 (10th Cir. Dec. 17, 1996) (affirming decision of

---

[7] Colorado law governs the admissibility of parol evidence in this case.  First, the 2016 Contract
provides that it is to be construed in accordance with Colorado law.  Moreover, the parol
evidence rule is a rule of substantive law.  *In re Continental Resources Corp.*, 799 F.2d 622, 626
(10th Cir. 1986).  Accordingly, the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64, 82 L. Ed.
1188, 58 S. Ct. 817 (1938), requires the application of Colorado law. *See Klein v. Grynberg*, 44
F.3d 1497, 1503 (10th Cir.), *cert. denied*, 133 L. Ed. 2d 22, 116 S. Ct. 58 (1995).

trial court to exclude evidence of alleged oral agreement under Colorado parol evidence rule where written agreement did not contain the same terms and contained a merger clause); *see also Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996) (In Colorado, "[a] court should only admit parol evidence when the contract between the parties is so ambiguous that their intent is unclear. . . . In the absence of allegations of fraud, accident, or mistake in the formation of the contract, parol evidence may not be admitted to add to, subtract from, vary, contradict, change, or modify an unambiguous integrated contract.").

The 2016 Contract plainly and unambiguously merges all prior representations, which therefore would bar the introduction of any parol evidence that contradicts its terms.  Without introducing parol evidence, Plaintiffs cannot plausibly allege the elements of a breach of contract claim, including that there was any oral contract at all, the first element considered in any breach of contract action.  Accordingly, Plaintiffs' claim for breach of oral contract against Gaia must be dismissed with prejudice.

      (b)    <u>A Purported Oral Agreement from 2015 Would Be Barred by the Statute of Limitations</u>

Even if the 2016 Contact did not bar Plaintiffs' claim based on a purported oral contract, the statute of limitations necessarily would.  Plaintiffs allege that Goode started performing on "Cosmic Disclosure" in 2015, and that his negotiations with Gaia and its executives occurred prior to that.  For an oral contract to not be void pursuant to the statute of frauds, it must, by its terms be performed within one year after the making thereof.  C.R.S. § 38-10-112.  Thus, the purported oral contract would have had to be applicable to activities to occur by sometime in 2016, and any breach thereof would have necessarily occurred within the time for completion of the contract (otherwise the contract would be void).  The statute of limitations for a breach of

contract claim is three years.  C.R.S. § 13-80-101.  Accordingly, Plaintiffs could only have four years from the time of contracting—some undefined time in 2015—to bring a breach of contract claim, meaning that such a claim needed to have been brought no later than 2019.  Plaintiffs filed this action in 2020, thus any claim for breach based on the purported oral contract must—from the face of the Complaint—be barred by the statute of limitations, providing another reason why Plaintiffs' claim based on breach of a purported oral contract must be dismissed with prejudice.

### 2.      *Plaintiffs' Breach of Written Contract Claim is Wholly Deficient*

It is not clear whether Plaintiffs are even attempting to bring a breach of contract claim based on the 2016 Contract (because the Complaint is deficient in so many ways discussed above).  In any event, Plaintiffs do not refer to any specific provision of the 2016 Contract or allege that there was any breach of any provisions therein.  Plaintiffs allege that Gaia has removed certain materials from its website, but do not—and cannot—allege that doing so violates any provision in the parties' 2016 Contract or any other agreement.  Accordingly, to the extent that Plaintiffs are trying to bring a claim based on an alleged breach of the 2016 Contract, such a claim fails to allege necessary elements of a claim—and thus to plausibly state a cause of action—and must be dismissed.

### 3.      *Plaintiffs' Breach of the Purported Weidner Contract Cannot Plausibly Allege that Plaintiffs are Entitled to Enforce that Contract*

As a final aspect of their purported breach of contract claim, Plaintiffs seem to imply that they have a claim against Defendants Gaia and/or Weidner based on a purported breach of a contract *between Gaia and Weidner* to which Plaintiffs are not a party.  This claim also fails to plausibly state a claim based on Plaintiffs' deficient allegations.

A person who is not a party to an express contract between other parties may only bring an action on the contract if the parties to the agreement intended to benefit the non-party bringing the claim, and only if the benefit claimed is a direct and not merely incidental benefit of the contract. *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994) (holding that a health-care provider was not an intended beneficiary of an insurance contract, but merely a potential and incidental beneficiary as part of the class of providers who could provide services to the insured); *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996) (affirming decision that third-party could not compel arbitration because it was not an intended third-party beneficiary to the contract with the arbitration provision).

Thus, for Plaintiffs to bring a claim for breach based on a contract between Gaia and Weidner, Plaintiffs would have to allege that they are intended third-party beneficiaries of such contract. Plaintiffs have not done so, and they cannot plausibly allege that they are intended third-party beneficiaries of a contract they have never seen and know nothing about. Because Plaintiffs' allegations fail to plausibly state a breach of contract as a third-party beneficiary, Plaintiffs' claim must be dismissed with prejudice.

### C.   PLAINTIFFS' TRADEMARK CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' various trademark claims all appear to be based on the same conclusory allegations, all of which fail to support any plausible claims. Accordingly, Plaintiffs' trademark claims should be dismissed.

#### 1.   *Federal Trademark Infringement and Unfair Competition Claims*

Plaintiffs' claims for trademark infringement and unfair competition are properly analyzed under the same standards, and fail for the same reasons.

Plaintiffs assert several trademark infringement claims under the Lanham Act, including trademark infringement and unfair competition.  "Courts addressing claims of both trademark infringement and unfair competition, address the claims together because they have virtually identical elements and both require 'commercial use.'"  *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1269 (D. Colo. 2009) (*citing Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)).  The elements of a Lanham Act claim for infringement are: "(1) that the plaintiff has a protectable interest in the mark, (2) that the defendant has used an identical or similar mark in commerce, and (3) that the defendant's use is likely to confuse consumers."  *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013); *see also Utah Lighthouse Ministry*, 527 F.3d at 1050.

"A plausible claim for relief for misappropriating a trademark must allege sufficient facts for the defendants and the court to identify the mark at issue and at least some instances of misuse."  *RV Horizons, Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 U.S. Dist. LEXIS 198424, at *24 (D. Colo. Nov. 15, 2019).  Moreover, "in order to survive a motion to dismiss, a plaintiff must plead facts sufficient to state a plausible claim that Defendant used Plaintiff's mark 'in connection with any goods or services.'"  *Cleary*, 674 F. Supp. 2d at 1267 (*citing Utah Lighthouse*, 527 F.3d at 1051-52).  "This is commonly described as the commercial use requirement."  *Cleary*, 674 F. Supp. 2d at 1267 (*citing Utah Lighthouse*, 527 F.3d at 1051).

As to the purported trademarks not registered with the USPTO, Plaintiffs must allege their marks are inherently distinctive or have acquired distinctiveness through secondary meaning, in order to establish that they have a protectable mark. *RV Horizons*, 2019 U.S. Dist. LEXIS 198424, at *15-16; *see also Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d

1245, 1251 (D. Utah 2017).  Descriptive marks are only entitled to protection if they have acquired secondary meaning.  *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-KLM, 2008 U.S. Dist. LEXIS 25147 at *9 (D. Colo. Mar. 28, 2008).

Plaintiffs' conclusory and vague allegations fail to provide sufficient notice of their claims or to make such claims plausible.  In particular, Plaintiffs have failed to allege that Gaia has used an infringing mark in commerce and that consumers are likely to be confused.  Indeed, Plaintiffs have alleged rights in four separate marks, but have not alleged which mark Gaia purportedly infringed, or any details about when such infringement purportedly occurred, by whom, and in what context.  Likewise, Plaintiffs do not allege that Gaia used an infringing mark "in commerce" as that term is defined and understood.  Further, to the extent Plaintiffs' claims are based on their unregistered marks, they are required to allege that such marks are protectable by alleging facts to show such marks have acquired distinctiveness through secondary meaning, which Plaintiffs have also failed to do.

Plaintiffs have pleaded only conclusory and vague allegations about their purported trademarks and Gaia's alleged infringing use thereof.  Without pleading facts, Plaintiffs' allegations fail to establish a plausible claim for infringement or unfair competition.  As such, Plaintiffs' claims must be dismissed.

        (a)      Fair Use Is a Complete Defense to Plaintiffs' Claims

Plaintiffs' trademark claims are also barred by the doctrine of fair use.

Fair use is an affirmative defense to a trademark infringement claim under the Lanham Act that may be considered on a motion to dismiss—like a statute of limitations defense—when the elements of the defense are apparent from the complaint.  *Bell v. Magna Times, LLC*, No.

2:18CV497DAK, 2019 U.S. Dist. LEXIS 72750, at *5 (D. Utah Apr. 29, 2019) (dismissing infringement claim based on fair use defense); 15 U.S.C. § 1115(b)(4).  Raising fair use—or any affirmative defense—on a motion to dismiss is a way of establishing that a plaintiff has failed to state a claim upon which relief can be granted.  *See id*.; Fed. R. Civ. P. 12(b)(6).  In the context of a trademark infringement claim, the party asserting infringement has the burden of proving likelihood of confusion as part of its *prima facie* case, and the fair use defense calls that element of a claim into question.  *Bell*, 2019 U.S. Dist. LEXIS 72750, at *7 (*citing KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118, 124 (2004)).

Here, Plaintiffs allege that certain individuals orally communicated Plaintiffs' purported marks during a Gaia program.  That is all that is alleged specifically against Gaia with respect to Plaintiffs' marks.  Plaintiffs further allege that, based on the words being spoken during a Gaia program, Google and other search engines included Gaia in a list of results for searches for those terms.

Plaintiffs' allegations establish that Plaintiffs do not have a plausible claim for trademark infringement, including because of the doctrine of fair use.  Plaintiffs do not allege that Gaia did anything other than include in its programming statements made by other individuals.  As described above, there are no allegations that Gaia attached Plaintiffs' purported marks to any goods or services, or attempted in any way to associate Gaia's services with Plaintiffs.

Moreover, Plaintiffs themselves allege that the terms Blue Avians and the 20 and Back program identify factual phenomena.  The mere reporting and commentary by others in the "Conscious Community" about these phenomena and the related use of the terms that describe

such phenomena is nothing more than fair use of terminology and ideas central to that community.

Finally, Plaintiffs' allegations that Google and other search engines somehow associated Gaia content with Plaintiffs' purported terms has no bearing on any allegations against Gaia and is not "use" in any trademark context.

Because Plaintiffs' allegations establish that any alleged "use" by Gaia of Plaintiffs' purported trademarks was nothing more than fair use, Plaintiffs' claims are barred and must be dismissed with prejudice as to Gaia.

### 2.      *False Designation of Origin*

Plaintiffs' claim for false designation of origin is just as deficiently pleaded—and thus implausible—as its infringement and unfair competition claims.

A claim for false designation of origin pursuant to 15 U.S.C. § 1125 may be brought against a party who uses in commerce a designation that falsely identifies or represents the origin, sponsorship, or approval of goods.  *See* 15 U.S.C. § 1125(a)(1).

Among other elements such as likelihood of confusion, "[t]o prevail on a claim of false designation of origin, the moving party must show: (1) defendants' designation of the source of a product was false, (2) defendants caused goods so identified to enter commerce, and (3) defendants' false statement is likely to damage the moving party."  *Durango Herald, Inc. v. Hugh A. Riddle & Riddle Directories, Inc.*, 719 F. Supp. 941, 946 (D. Colo. 1988).

Although the Tenth Circuit does not appear to have ruled on this issue, and other courts are split on the issue, claims for false designation of origin sound in fraud and thus should be

subject to Rule 9(b) pleading standards.  Even if Rule 9(b) does not apply, Plaintiffs' allegations fall short of even basic Rule 8 standards, as they fail to assert a plausible claim against Gaia.

Plaintiffs have not alleged any facts—rather than just conclusory statements—about what designations Gaia used in commerce on any products, or how such designations were false. Without such allegations, Gaia cannot meaningfully respond to the allegations and Plaintiffs' claim.  Accordingly, Plaintiffs' claim for false designation of origin must be dismissed.

Moreover, unfair competition and false designation claims under the Lanham Act are subject to a three-year statute of limitations in Colorado pursuant to  § 13-80-101(c). *See Full Draw Prods. v. Easton Sports*, 85 F. Supp. 2d 1001, 1011 (D. Colo. 2000).  Plaintiffs assert that the complained of conduct started in 2015, but they did not bring their claim until 2020. Accordingly, Plaintiffs' false designation claim is barred by the statute of limitations on its face, and should also be dismissed for that reason.

Plaintiffs' claim for false designation of origin fails to state a plausible claim for numerous reasons and is barred as a matter of law, and therefore should be dismissed with prejudice as to Gaia.

### 3. *Trademark Infringement Pursuant to Colorado Common Law*

Plaintiffs' claim for trademark infringement pursuant to Colorado common law is essentially the same as its claims under federal law.  For the same reasons, Plaintiffs' claims should be dismissed.

An analysis of trademark infringement under Colorado common law is nearly identical to an analysis under the Lanham Act.  *Cleary*, 674 F. Supp. 2d at 1270 (*citing Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004)).  "Among other things, a plaintiff must

establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion." *Cleary*, 674 F. Supp. 2d at 1270.

Because an analysis of trademark infringement pursuant to Colorado common law is essentially the same as that under federal law, Plaintiffs' claim fails for the same reasons as described above.  Namely, Plaintiffs' conclusory and vague allegations fail to provide sufficient notice of their claims or to make such claims plausible because Plaintiffs have not alleged any facts regarding Gaia's purported use in commerce of an infringing mark or anything that would support a likelihood of customer confusion.  Plaintiffs have not even alleged which of their marks was purportedly infringed, or the details of when and how such infringement occurred. Moreover, the allegations in the Complaint establish as a matter of law that any purported use by Gaia constitutes fair use, which is another bar to Plaintiffs' claim.

Accordingly, as with its federal infringement claim, Plaintiffs' claim for trademark infringement pursuant to Colorado common law should be dismissed as to Gaia.

### 4.    *Declaration of Validity*

With respect to Plaintiffs' final claim, seeking a declaration of validity for its purported marks "20 and Back" and "Blue Avians", it is unclear exactly what Plaintiffs are seeking from the Court.  Regardless, any discernible formulation of their request fails to plausibly state a claim that the Court may entertain.  In the alternative, the Court should exercise its discretion to decline to exercise jurisdiction over, and therefore dismiss, Plaintiffs' claim seeking a declaration.

If Plaintiffs are seeking actual registration of their marks on the Principal Register, in lieu of the application process in which they are currently engaged before the TTAB, such a result is outside the jurisdiction of the Court.  Registration of a mark on the Principal Register is

governed by the USPTO.  *See* 15 U.S.C. §§1051–1072.  While registration of a mark on the Principal Register constitutes *prima facie* evidence of the validity of the registered mark, 15 U.S.C. § 1115, registration does much more than that, so a simple declaration of validity would not constitute registration or thereby moot the proceedings before the TTAB.  Because those proceedings would necessarily continue, there really is no ripe dispute regarding validity alone, such that the Court even has jurisdiction to determine validity.

Even if the Court may have jurisdiction, the Court should decline to exercise any such jurisdiction here.  As explained by the Supreme Court, the Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  Accordingly, the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952); *see also Green v. Mansour*, 474 U.S. 64, 72 (1985); *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, n. 17 (1993).

Because federal courts are given such broad discretion, a court is free to exercise such discretion at the outset of a case where in its sound exercise of judgment, "determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton*, 515 U.S. at 288.

Here, a declaration of validity would not moot the TTAB proceedings between Gaia and Plaintiffs.  Further, deference to a parallel concurrent proceeding is within the sound exercise of

a court's judgment for denying a claim for declaratory relief.  *See id*., at 290.  Accordingly, a declaratory judgment as sought by Plaintiffs would have no useful purpose.

Moreover, the basis for Plaintiffs' request is entirely specious.  Plaintiffs assert that they are entitled to a declaration merely because Gaia has not entertained Plaintiffs' settlement demands and because of discovery disputes in the TTAB.  Plaintiffs' claim for a declaratory judgment before this Court thus seems to be nothing more than an attempt to avoid unfavorable rulings in the TTAB.

If Plaintiffs are instead seeking a declaration of validity under common law for the marks "20 and Back" and "Blue Avians", they have not pleaded allegations that plausibly entitle them to relief, and therefore the claim should be dismissed.

A plaintiff, when asserting rights in marks not registered on the Principal Register, must establish the common law validity of such marks to maintain an action for infringement.  *USA Network v. Gannett Co.*, 584 F. Supp. 195, 198 (D. Colo. 1984).  Valid marks are created through use of the designation as a mark.  *Go Pro, Ltd. v. River Graphics, Inc.*, No. 01-cv-600-JLK, 2006 U.S. Dist. LEXIS 23067, at *8 (D. Colo. Apr. 5, 2006).  A designation only constitutes a trademark when it identifies one source and distinguishes it from other sources.  *Id*.  "If the designation does not perform the job of identification, then it is not protectible [sic] as a trademark."  *Id*. at *8-9.

As already discussed above, Plaintiffs have not alleged any facts—rather than conclusions—about their use in commerce of the respective marks.  Plaintiffs have not alleged any facts that could plausibly establish that Plaintiffs have used either "20 and Back" or "Blue Avians" by placing the marks on goods that are sold in commerce, or in the sale or advertising of

*any services rendered in commerce.  See* 15 U.S.C. § 1127 (defining "use in commerce").

Moreover, even allegations of use in commerce alone would not be sufficient to allege plausibly

that a declaration of validity is proper, because Plaintiffs would also need to allege that the

purported marks distinguish Plaintiffs' goods or services from other sources, which they have not

alleged.

As with Plaintiffs' other claims, Plaintiffs' allegations purportedly in support of a claim

for declaratory relief are deficient and fail to plausibly show that Plaintiffs are entitled to relief.

As such, Plaintiffs' claim for a declaration of validity should be dismissed with prejudice.

### D.   PLAINTIFFS' OTHER TORT CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

Plaintiffs other tort claims have little or no connection to Gaia—even viewing Plaintiffs'

allegations in the light most favorable to them.  Nevertheless, as Plaintiffs have improperly used

group pleading to assert all claims against all Defendants, Gaia will address each in turn.  For the

reasons outlined below, each claim fails as a matter of law or fails to plausibly assert a claim

against Gaia and therefore each claim should be dismissed as to Gaia.

#### 1.   *Colorado Consumer Protection Act*

Plaintiffs' claim for violation of the Colorado Consumer Protection Act (the "CCPA")

fails as a matter of law because of the lack of specific pleading and failure to plead necessary

elements of such a claim.  Plaintiffs' claim should be dismissed.

"To state a claim for relief under the []CCPA[], Colo. Rev. Stat. § 6-1-105, a plaintiff

must plead facts sufficient to show that: (1) the defendant engaged in an unfair or deceptive trade

practice; (2) the challenged practice occurred in the course of the defendant's business, vocation,

or occupation; (3) the challenged practice significantly impacts the public as actual or potential

consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury." *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1270 (D. Colo. 2009).

To satisfy the third element and constitute the public impact required by the CCPA, the challenged practice must *significantly* impact the public. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 155-56 (Colo. 2007). It is not sufficient that a business simply be a public one or that the industry may affect the public interest. *See id.*

Courts in the District of Colorado apply the heightened pleading standards of Rule 9(b) to claims under the CCPA. *See, e.g., Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985); *RV Horizons, Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 U.S. Dist. LEXIS 198424, at *31-33 (D. Colo. Nov. 15, 2019) ("The CCPA is designed to protect consumers from fraudulent business practices, and Rule 9(b) is specifically aimed at allegations of fraud."); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011). Rule 9(b) requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quotation marks and citation omitted).

Plaintiffs' vague and conclusory allegations—which do not even meet Rule 8 standards in most instances—are wholly deficient under Rule 9(b)'s heightened standards. Plaintiffs have not alleged what they assert to be the false representation, the date when that representation was made, the identity of the individual making the purported false representation, or any direct consequences of such allegations.

Even ignoring Rule 9 standards and reading the allegations in the light most favorable to Plaintiffs, there are no allegations that Gaia has done anything that constitutes an unfair or deceptive trade practice.  *See* C.R.S. § 6-1-105.  Plaintiffs' claim appears to be based—at least with respect to Gaia—on allegations that certain individuals as part of their personal narratives and opinions mentioned words and phrases on Gaia programs that Plaintiffs assert are trademarks.  Even if that were true, the mere mention or discussion of concepts cannot constitute passing off Plaintiffs' intellectual property as that of Gaia.  Moreover, Plaintiffs have not, and cannot, plausibly plead allegations that the above alleged practice *significantly* impacts the public.  At most, Plaintiffs are alleging that they were damaged in some undefined way, not the public at large.

Plaintiffs' failure to plausibly and adequately plead required elements of a claim for violation of the CCPA warrants dismissal of the claim.

### 2. *Colorado Common Law Unfair Competition*

Plaintiffs' claim for unfair competition does not include allegations that could plausibly state a claim against Gaia, and as such, must be dismissed.

The tort of unfair competition does not encompass any and all alleged improper conduct by competitors, but only a narrow set of conduct regarding use of trademarks or trade names. *Netquote v. Byrd*, 504 F. Supp. 2d 1126, 1133 (D. Colo. 2007).  "To constitute unfair competition in respect to a trade name, two elements must be present. The name must have acquired a secondary meaning or significance that identifies the plaintiff; the defendant must have unfairly used the name or a simulation of it against the plaintiff."  *Am. Furniture Co. v. Am.*

41

*Furniture Co.*, 261 P.2d 163, 166 (1953) (*quoting McGraw-Hill Pub. Co. v. Am. Aviation Assocs., Inc.*, 117 F.2d 293, 296 (D.C. Cir. 1940)).

Plaintiffs have not alleged that their purported marks have acquired a secondary meaning, or even alleged any facts that could support such an allegation.  Further, the only facts alleged about Gaia's purported "use" of Plaintiffs' marks are that certain individuals uttered the marks on a Gaia show.  This type of "use" cannot constitute an action taken by Gaia to "unfairly" use the marks against Plaintiffs.  Moreover, Plaintiffs have not alleged that their purported marks have acquired any secondary meaning.

Because Plaintiffs' allegations do not fit within the narrow scope of the tort of unfair competition, and are insufficient to plausibly state a claim for unfair competition, the claim must be dismissed.

### 3.      *Fraudulent Misrepresentation*

Plaintiffs' claim for fraudulent misrepresentation is barred by the economic loss rule and must be dismissed.  The economic loss rule holds that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).

"Under Colorado law, for a duty to be 'independent' of a contract, and thus actionable in tort notwithstanding the economic-loss rule, two conditions must be met. First, the duty must arise from a source other than the relevant contract.  Second, the duty must not be a duty also imposed by the contract.  That is, even if the duty would be imposed in the absence of a contract, it is not independent of a contract that 'memorialize[s]' it."  *Haynes Trane Serv. Agency v. Am.*

*Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (internal citations omitted); *see also Hamon Contrs., Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 295 (Colo. App. 2009) (affirming that fraud claims were barred by the economic loss doctrine because "whether a party negligently breaches a contractual duty or fraudulently does so, the duty allegedly breached is not independent of the contract.").

Here, Plaintiffs allege as the basis of their fraud claim that they were to be paid by Gaia for services performed, and that they were not. Even disregarding that Plaintiffs have not pleaded the elements of this claim with particularity as required by Rule 9(b), Plaintiffs do not—and cannot—allege that there was any duty to pay them for the alleged categories of non-payment (*i.e.*, stock options and a percentage of revenues earned). Such a duty could only arise by contract. Moreover, payment for Plaintiffs' services is alleged to be—and plainly is—the subject of the 2016 Contract. Plaintiffs therefore cannot avoid application of the economic loss rule, which plainly bars their claim for fraudulent misrepresentation. Accordingly, Plaintiffs' claim should be dismissed with prejudice.

### 4. *Intentional Infliction of Emotional Distress (Outrageous Conduct)*

Plaintiffs' claim against Gaia for intentional infliction of emotional distress fails as a matter of law and must be dismissed. The tort of intentional infliction of emotion distress—also known as "outrageous conduct"—occurs when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Culpepper v. Pearl St. Bldg.*, Inc., 877 P.2d 877, 882 (Colo. 1994). The elements for the tort are: 1) the defendant engaged in extreme and outrageous conduct; 2) the defendant acted recklessly or with the intent

of causing severe emotional distress; and, 3) plaintiff actually incurred severe emotional distress caused by the defendant's conduct.  *Id.*

"Outrageous conduct" must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (quotation marks and citation omitted).  In the first instance, it is the responsibility of the court to determine whether as a matter of law conduct can be deemed outrageous and to determine whether reasonable persons could differ on the question.  *Culpepper*, 877 P.2d at 882-83.

"[T]he level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high."  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999); *see also*, *Medina v. Geo Grp., Inc.*, No. 17-cv-00269-CMA-GPG, 2017 U.S. Dist. LEXIS 205466, at *12 (D. Colo. Oct. 5, 2017) (affirming the magistrate judge's dismissal and determination that plaintiff failed to demonstrate defendant's conduct was sufficiently outrageous to support a claim).  Likewise, the emotional distress or harm experienced must be severe before a plaintiff can recover for the tort of outrageous conduct.  *Espinosa v. Sheridan United Tire*, 655 P.2d 424, 425 (Colo. App. 1982).

Once again, it is unclear what allegations Plaintiffs believe support their claim because of their Rule 8 failures, but at least as to Gaia, there is not a single allegation in the Complaint that rises to the level of "outrageous conduct".  Certainly there is no allegation as to Gaia about any conduct that could be regarded as "atrocious, and utterly intolerable in a civilized community."  Without such conduct, Plaintiffs have no claim.  Moreover, it is not clear that Plaintiffs have

made any allegations of *severe* emotional distress—certainly they have not alleged that any severe emotional distress occurred as a result of actions by Gaia.  Plaintiffs' claim fails to plausibly allege the required elements of a claim for outrageous conduct and therefore must be dismissed with prejudice as to Gaia.

### 5.      *Negligent Infliction of Emotional Distress*

Plaintiffs have also failed to plausibly plead a claim of negligent infliction of emotional distress.  Such a claim requires that a plaintiff plead that a defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought.  *Scharrel v. Wal-Mart Stores*, 949 P.2d 89, 93 (Colo. App. 1997) (upholding directed verdict when no reasonable person could disagree that elements of the claim had not been established).  "Recovery for emotional distress is permitted only if there are physical manifestations or mental illness.  Examples of physical manifestations or mental illness include long-continued nausea or headaches or repeated hysterical attacks or mental aberrations."  *Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 638 (Colo. App. 1998).

Once again Plaintiffs have utterly failed to plead allegations that would plausibly support the elements of the claim as to Gaia.  There are no allegations pleaded that Gaia has done anything negligent, much less that Gaia did anything that put Plaintiffs in unreasonable risk of physical harm.  Even more apparent is that Plaintiffs have not adequately alleged "emotional distress", as there are no allegations of physical manifestations or mental illness, such as long-continued nausea, headaches, or repeated hysterical attacks.

Plaintiffs' allegations do not include any of the elements of the claim as to Gaia. Plaintiffs' claim therefore must be dismissed with prejudice as to Gaia.

### 6.      *Harassment at Work*

Although not entirely clear, it appears that by asserting a claim for "harassment at work", Plaintiffs are trying to make a claim pursuant to C.R.S. § 24-34-402 for a discriminatory or unfair employment practice.  Such a claim necessarily fails as a matter of law based on Plaintiffs' allegations.

First, only certain conduct is prohibited by Colorado law.  Namely, C.R.S. § 24-34-402 prohibits employers from discriminating against or harassing individuals, but only if done so on the basis of certain prohibited characteristics.  Such protected characteristics are "disability, race, creed, color, sex, sexual orientation, religion, age, national origin, or ancestry".  C.R.S. § 24-34-402.

Specifically with respect to harassment—as that seems to be the basis of Plaintiffs' allegations rather than discrimination—the statute provides that "[f]or purposes of this paragraph (a), 'harass' means to create a hostile work environment based upon an individual's *race, national origin, sex, sexual orientation, disability, age, or religion*."  *Id*. (emphasis added). Plaintiffs' claims—even read in the light most favorable to Plaintiffs—clearly do not allege a claim based on any protected characteristic.

Further, even if Plaintiffs could amend their claim to include a protected characteristic— which they clearly could not do in good faith—they could not avoid the fact that Goode failed to pursue administrative remedies and comply with statutory prerequisites for bringing a claim. First, the statute provides that "[n]otwithstanding the provisions of this paragraph [], harassment

is not an illegal act unless a complaint is filed with the appropriate authority at the complainant's workplace and such authority fails to initiate a reasonable investigation of a complaint and take prompt remedial action if appropriate." C.R.S. § 24-34-402. Plaintiffs have not alleged that Goode filed a complaint at Gaia regarding the alleged harassment. Even if he had, even more is required.

An allegedly aggrieved party may not file a civil action without first exhausting the available administrative remedies by filing a charge with the Colorado civil rights commission. C.R.S. § 24-34-306 (14). The statute further provides that "[a]ny charge alleging a violation of this part 4 [Employment Practices] shall be filed with the [Colorado civil rights] commission pursuant to section 24-34-306 within six months after the alleged discriminatory or unfair employment practice occurred, and if not so filed, it shall be barred." C.R.S. § 24-34-403. Plaintiffs do not allege that they ever filed a charge with the Colorado civil right commission, much less within six months of the alleged conduct. Further, because Plaintiffs admit that more than six months have passed since Goode was even arguably "employed" by Gaia, it is now too late for Plaintiffs to ever file a valid charge (*i.e.*, any such filed charge shall be barred).

Plaintiffs' purported claim for "harassment at work" utterly fails in all respects, and is completely frivolous and groundless. The relevant section of the same statute provides that "[i]f the court finds that an action or defense brought pursuant to this part 4 was frivolous, groundless, or vexatious as provided in article 17 of title 13[8], C.R.S., the court may award costs and attorney

---

[8] C.R.S. § 13-17-101 provides that "[t]he general assembly recognizes that courts of record of this state have become increasingly burdened with litigation which is straining the judicial system and interfering with the effective administration of civil justice. In response to this problem, the general assembly hereby sets forth provisions for the recovery of attorney fees in courts of record when the bringing or defense of an action, or part thereof (including any claim

fees to the defendant in the action."  C.R.S. § 24-34-405 (5).  As established above, Plaintiffs'

claim is completely groundless in that it fails to allege a protected characteristic, fails to allege

necessary prerequisites to filing, and was untimely in numerous ways.  Accordingly, not only

must Plaintiffs' claim be dismissed with prejudice, pursuant to Colorado law an award of

attorneys' fees is appropriate and should be granted to Gaia.

### 7.   *Libel and Slander*

Plaintiffs' claims for libel and slander are both subject to the same standards, and must be

dismissed for the same reasons—namely, that Plaintiffs have not alleged any defamatory

statements made by Gaia, nor any special damages.

Colorado recognizes the tort of defamation, which is actionable both as libel (for written

statements) and slander (for oral statements). *See Keohane v. Stewart*, 882 P.2d 1293, 1297

(Colo. 1994); *Williams v. Dist. Court*, 866 P.2d 908, 914 n.1 (Colo. 1993).  "Defamation is a

communication that holds an individual up to contempt or ridicule thereby causing him to incur

injury or damage."  *Keohane*, 882 P.2d at 1297.  The elements of a defamation claim—whether

libel or slander—are: (1) a defamatory statement about the plaintiff; (2) that is published to a

third party; (3) with the publisher's fault amounting to at least negligence; and (4) the existence

of special damages or in certain instances presumed damages.  *Stump v. Gates*, 777 F. Supp. 808,

825 (D. Colo. 1991).

Alleged defamatory statements are characterized either as *per se* or *per quod*.  *Id*.  "A

court decides the legal question whether a writing constitutes [defamation] *per se*."  *Id*.  Only

for exemplary damages), is determined to have been substantially frivolous, substantially
groundless, or substantially vexatious. All courts shall liberally construe the provisions of this
article to effectuate substantial justice and comply with the intent set forth in this section."

defamation *per se* is actionable without an allegation of actual damages.  *Id.*  To be defamatory *per se*, a statement must include "defamatory words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious." *Lininger v. Knight*, 226 P.2d 809, 813 (Colo. 1951); *see also Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1387 (Colo. App. 1986) (to be defamatory per se a statement must "require[] no extrinsic evidence to show how it might be taken as concerning the plaintiff or defaming him in his trade or business.").

Defamatory statements that do not carry a defamatory imputation on their face are *per quod* which are actionable only where special damages are pleaded.  *Stump*, 777 F. Supp. at 825. "'Special damages' are limited to specific monetary losses that a plaintiff incurs because of the defamatory publication." *Id.* at 826.  "They do not include injuries to a plaintiff's reputation or feelings which do not result in monetary loss." *Id.*  "Rather special damages must result 'from conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation.'" *Id.*; *see also* Restatement (Second) of Torts § 575, comment (b).

Here Plaintiffs' claims—whether styled as libel or slander—fail to include allegations of necessary elements, including that Gaia made any defamatory statement about Plaintiffs at all. Plaintiffs cannot point to a single instance of Gaia making a statement about Plaintiffs that holds either of them "up to contempt or ridicule".  Further, in the absence of alleging any statement "on [its] face, and without the aid of intrinsic proof, [can] be unmistakably recognized as injurious", Plaintiffs are required to plead special damages—specific monetary losses, not merely hurt feelings—which they have utterly failed to do.

Plaintiffs' defamation claims against Gaia must be dismissed because Plaintiffs have failed to plead necessary elements of such claims.

### 8.    *Tortious Interference with a Business Expectancy*

Interpreting Plaintiffs' claim for "tortious interference with a business expectancy" in the light most favorable to Plaintiffs, they presumably mean intentional interference with prospective business relations, a tort that is recognized in Colorado.  Such a claim may be brought when the defendant intentionally and improperly interferes with plaintiff's prospective contractual relation, if the interference consists of inducing or otherwise causing a third person not to enter into or continue the prospective relation.  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995).  One key element of such a claim is that any interference was made "improperly" by the use of "wrongful means".  *Id*. at 501.  "Wrongful means" includes the use of physical violence, fraud, civil suits and criminal prosecutions, but not persuasion or economic pressure.  *Id*. at 502 (finding no use of wrongful means where there were no allegations of defendant's use of physical violence, fraud, or civil or criminal prosecution to compete).  A claim for intentional interference with prospective business relations fails when it is brought against a competitor simply for competing.  *Id*.

First, and most critically, Plaintiffs have not alleged that Gaia did anything to interfere with Plaintiffs participation at various conferences; Plaintiffs allege only that Defendant Weidner "spoke to the heads of CLE, CITD and NLE and told them not to invite Goode to their Conferences."  Clearly, there is no "intentional or improper interference" by Gaia if Gaia did not do anything, and as such the claim as to Gaia must be dismissed on that basis alone.

Even considering the allegations against Weidner, the claim is inadequately plead. Plaintiffs do not allege anything more than Weidner speaking to conference heads and making a request—far from the use of physical violence, fraud, or prosecution of a claim—which cannot form the basis of the tort because mere persuasion does not constitute engaging in "wrongful means". Finally, Plaintiffs assert that after Goode and Gaia stopped working together that Gaia was competing with him; that competition is another reason why any alleged actions regarding Goode's participation at conferences cannot rise to the tort of interference.

For all of the above reasons, Plaintiffs' claim for intentional interference with prospective business relations must be dismissed with prejudice as to Gaia.

### 9.  Cyberstalking

Although it is difficult to tell what claim Plaintiffs intend to bring when they assert a claim for "cyberstalking", presumably it is intended to be made pursuant to either a state or federal statute that governs such behavior. *See* C.R.S. § 18-9-111 (1)(e) (providing that a person commits harassment when he or she "[d]irectly or indirectly initiates communication with a person or directs language toward another person . . . by . . . computer, computer network, computer system, or other interactive electronic medium in a manner intended to harass or threaten bodily injury or property damage . . . ."); 18 U.S.C § 2261A ("Stalking"). However, both statutes are criminal and do not provide for a private civil right of action. *Id.* Nor does there appear to be any recognized tort in Colorado for "cyberstalking". Accordingly, Plaintiffs' claim must be dismissed with prejudice. *See Golan*, 310 F. Supp. 2d at 1217 (dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory).

## V.  PLAINTIFFS DID NOT PROPERLY ALLEGE DIVERSITY JURISDICTION AND CANNOT DO SO

Plaintiffs' conclusory allegations that the Court has subject matter jurisdiction based on the diversity of the parties appears to be cumulative and unnecessary because of the alleged claims arising under federal law.  However, because Plaintiffs claims arising under federal law are all deficient and should be dismissed, Gaia is bound to point out that Plaintiffs have pleaded facts that preclude a finding that the Court has diversity jurisdiction.

"Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant."  *Grynberg v. Kinder Morgan Energy, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015).  For diversity purposes "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

Plaintiffs allege that they are both citizens of Colorado, and that Gaia and two individual defendants are also citizens of Colorado.  Plainly, no diversity jurisdiction exists and thus cannot serve as a basis for the Court to exercise jurisdiction over Plaintiffs' claims.

## CONCLUSION

For all of the foregoing reasons, and because the deficiencies of the Complaint cannot be remedied by repleading, Defendant Gaia respectfully requests that the Court dismiss the Complaint and all claims therein with prejudice and without leave to replead.  Pursuant to Colorado law and on its own initiative, the Court should also impose sanctions on Plaintiffs and their counsel for failure to file in good faith the Complaint and certain claim therein.

Dated: June 8, 2020                    DAVIS & GILBERT LLP


By:   /s/ *Ina B. Scher*
         Ina B. Scher
         Daniel A. Dingerson
         ischer@dglaw.com

1740 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant Gaia, Inc.*