IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-KLM

JAMES COREY GOODE, *et al.*,

      Plaintiffs,

vs.

GAIA, INC., *et al.*,

      Defendants.

## DEFENDANT CLIFF HIGH'S MOTION TO DISMISS PURSUANT TO FED. R. CIV P. 12(b)(2) AND 12(b)(6)

General jurisdiction requires proof that an out-of-state defendant maintains continuous and systematic contacts with the forum state even. Here, other than the conclusory allegation that High, who resides in Washington, has "substantial contacts" with Colorado "through business activities and otherwise," Plaintiffs allege no facts at all to support personal jurisdiction over High. In fact, High has no personal contact, systematic or otherwise, with Colorado and this Court lacks personal jurisdiction over him and should dismiss the Amended Complaint (Dkt. No. 36) against him pursuant to Rule 12(b)(2).

Even if jurisdiction did exist over High, Plaintiffs' Amended Complaint fails to state any claims against him. The seventeen-count Amended Complaint against High and seven other defendants (collectively "Co-Defendants") includes a wide array of tort, contract and intellectual property claims, but is primarily based on facts related to Goode's employment with Gaia and certain fallout between Goode, Gaia and Weidner after Goode ceased working with Gaia. Out of 249 paragraphs of allegations spanning 58 pages, only seven factual allegations relate in any way

to High—and most of these are conclusory allegations that do not support the array of purported claims against him. Thus, Plaintiff's claims against High should also be dismissed pursuant to Rule 12(b)(6).

## FACTS

Plaintiffs allege the following facts concerning High in their Amended Complaint, which are taken as true for purposes of this Motion only. High tags Goode in social media posts. Am. Compl., ¶ 61. "High uses social media to attack Goode" and coined the phrase " 'Blue Chicken Cult' to describe Goode and his followers." *Id.* at ¶ 126. High threatened of "bodily harm" to Goode on social media by tweeting "Ack! David Wilcock and Corey Goode STOLE the results of decades of my work! … My offer to fight both of these 'fellows' still stands open." *Id.* at ¶ 127. Although unsupported by any factual support, and thus not taken as true for purposes of this Motion, Plaintiffs also claim, based on "a reasonable suspicion," that High has is somehow part of an "enterprise" with Defendants Zavodnick and Weidner. *Id.* at ¶¶ 128-29.

Based solely on these facts, Plaintiffs assert no claims against High individually, but asserts twelve claims against "all Defendants" that appear to include High:  civil RICO conspiracy (Claim 2), federal trademark infringement (Claim 3), unfair competition (Claim 4), common law trademark and trade name infringement (Claim 5), common law unfair competition (Claim 6), violation of the Colorado Consumer Protection Act ("CCPA") (Claim 7), intentional infliction of emotional distress (Claim 10), negligent infliction of emotional distress (Claim 11), slander *per se* (Claim 13), libel *per se* (Claim 14), tortious interference with business expectancy (Claim 15), and cyberstalking (Claim 16).

# ARGUMENT

**I.      The Amended Complaint should be dismissed as to High for lack of personal jurisdiction pursuant to Rule 12(b)(2).**

**A.      Burden of Proof:**  Plaintiffs must establish personal jurisdiction.[1]

**B.      Rule 12(b)(2) Standard:**  Under the Tenth Circuit's two-part test for personal jurisdiction, the Court determines first "whether any applicable statute authorizes service of process on defendants" and second, "whether the exercise of statutory jurisdiction comports with constitutional due process demands."[2] Where the federal statute in a federal question case does not authorize nationwide service, "personal jurisdiction is determined according to the law of the forum state."[3] Since Colorado's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause,"[4] the Court need only address the constitutional question of whether the exercise of personal jurisdiction over High comports with due process,"[5] "The Due Process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."[6]

General jurisdiction "arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts."[7] Without such continuous and systematic contacts supporting general jurisdiction, the Court may

---

[1] *Cloudpath Networks, Inc. v. SecureW2 B.V.*, 157 F. Supp. 3d 961, 968 (D. Colo. 2016).
[2] *Id.* at 967.
[3] *Id.*
[4] *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).
[5] *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).
[6] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).
[7] *Helicopteros Nacionales de Colombia, S.A. v Hall*, 466 U.S. 408, 416 (1984).

only obtain jurisdiction based on "*specific jurisdiction* over a defendant that purposefully directed its activities at the state's residents, if the cause of action arises out of those activities."[8]

### C. Personal Jurisdiction is Not Supported by the Amended Complaint:

Plaintiffs have failed to meet their burden of establishing personal jurisdiction over High. While most of Plaintiffs claims arise from state law, Plaintiffs allege three claims against High based on federal statutes:  namely, civil RICO conspiracy (Claim 2), federal trademark infringement (Claim 3), and unfair competition (Claim 4). Of these claims, only the civil RICO statute[9] authorizes nationwide service. Because the Federal statutes for trademark infringement, false designation of origin, and unfair competition do not authorize nationwide service,[10] personal jurisdiction is determined according to Colorado law.[11] Nonetheless, as set forth below, the civil RICO conspiracy claim should be dismissed against High pursuant to Rule 12(b)(6). Personal jurisdiction with respect to all other claims, is determined according to Colorado law.[12]

Here, Plaintiffs fail to make a *prima facie* showing of personal jurisdiction over High. Apart from a conclusory statement in Paragraph 15 of the Amended Complaint that High "availed [himself] of the benefits and protections of this District and [has] substantial contacts with this forum through business activities and otherwise," Plaintiffs allege no facts showing that High purposefully established the requisite "minimum contacts" in Colorado.[13] The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another

---

[8] *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, at *4 (10th Cir. 2012).
[9] *See* 18 U.S.C. § 1965.
[10] *See* 15 U.S.C. §§ 1114, 1125(a) et seq.
[11] *Cloudpath Networks*, 157 F. Supp. 3d at 967.
[12] *Id.*
[13] *See Burger King Corp.*, 471 U.S. at 474.

party or a third person. Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state."[14]

Plaintiffs present no facts establishing High's contacts with Colorado, much less facts demonstrating that High himself created a "substantial connection" or otherwise had "continuous and systematic general business contacts" with Colorado sufficient to provide general jurisdiction him.[15] In fact, High has had no contact with Colorado at all. Other than traveling through Colorado as a child and sitting on a plane refueling at DIA, High has not even set foot in Colorado.[16] Nor does this Court have specific jurisdiction over High because Plaintiffs have not shown that High "purposefully directed" his activities at Plaintiffs in Colorado.[17] Indeed, High has never conducted any business in Colorado, been employed by or otherwise affiliated with any Colorado company, negotiated any contracts in Colorado, or directed any activities at anyone in Colorado.[18] Further, Plaintiffs allegations regarding High's use of social media[19] contain no facts showing that such use was to "purposefully avail" himself of benefits and protections in Colorado or that it had anything more than a random, fortuitous, or attenuated contact with Colorado.

Plaintiffs have failed to establish personal jurisdiction over High, and their Amended Complaint against him should be dismissed under Rule 12(b)(2).[20]

---

[14] *Id*. (citations omitted).
[15] *See Helicopteros Nacionales*, 466 U.S. at 416.
[16] *See* Decl. of Clif High, ¶ 2, attached as **<u>Exhibit 1</u>**; *see also, Cloudpath Networks*, 157 F. Supp. 3d at 969 (considering declarations submitted in support of Rule 12(b)(6) motion).
[17] *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, at *4.
[18] Ex. 1 at ¶¶ 3-7.
[19] Am. Compl. at ¶¶ 126-27
[20] *Cloudpath Networks*, 157 F. Supp. 3d at 968.

**II.     The Amended Complaint should also be dismissed pursuant to Rule 12(b)(6) for failure to state any claim against High.**

**A.     Burden of Proof:**  Although burden is generally on the moving party to show that no legally cognizable claim for relief exists, "[t]he burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."[21]

**B.     Rule 12(b)(6) Standard:**  Although it must accept all well-plead allegations as true and "view those allegations in the light most favorable to the non-moving party,"[22] the Court is not bound to accept legal conclusions couched as a factual allegation as true and "must first identify and disregard averments that are no more than conclusions which are not entitled to the assumption of truth."[23] Further, while detailed factual allegations are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recital of the elements of a cause of action" and must have sufficient factual allegations "to raise a right to relief above the speculative level."[24]

In addition, where the alleged deceptive trade practices in a CCPA claim sound in fraud, the allegations as to fraudulent statements must also be pled with particularity under Rule 9(b).[25] Under Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud," which includes the time, place, and

---

[21] *Hastings v. Barbee*, 2011 WL 2610132, at *2 (D. Colo. Apr. 20, 2011), adopted, 2011 WL 2610194 (D. Colo. July 1, 2011) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[22] *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001).
[23] *Elvig v. Ninetendo of America, Inc.*, 696 F. Supp. 2d 1207, 1209-10 (D. Colo. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).
[24] *Twombly*, 550 U.S. at 555.
[25] *See Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012); *HealthONE of Denver, Inc. v. UnitedHealth Group, Inc*., 805 F.Supp.2d 1115, 1120-21 (D. Colo. 2011)

contents of the false representation, as well as the identity of the party making the alleged misrepresentation.[26]

### C.   Claim 2:  Civil RICO Conspiracy

1.   <u>Elements</u>:  The elements of a civil RICO claim are: "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[27]

2.   <u>Elements Not Supported By Amended Complaint</u>:

(a)   **Element 4:**  "Racketeering activity" is defined in 18 U.S.C. § 1961 as, among other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance," or "any act which is indictable" under specific, enumerated sections of Title 18 of the U.S. Code. Plaintiffs allege that Gaia violated the federal wire and mail fraud statutes,[28] which are identified as predicate acts for purposes of RICO.[29] But these bare recitals of predicate acts fall well short of the applicable pleading standards; indeed, Plaintiffs allege no facts whatsoever—much less any facts with sufficient specificity—to support their conclusory assertions of wire or mail fraud.[30] Thus, Plaintiffs have failed to adequately plead this critical predicate element of civil RICO.

(b)   **Elements 1, 2, and 3:**  Even if they had adequately plead that any Defendant engaged in "racketeering activity," Plaintiffs nonetheless fail to adequately plead facts supporting the other elements of civil RICO as to High. Plaintiffs have alleged no facts showing that High was invested in, controlled, or conducted a racketeering enterprise of any kind, or that

---

[26] United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir.2000).
[27] *Tal v. Hogan*, 453 F.3d 1244, 1262 (10th Cir. 2006); *see* 18 U.S.C. § 1962(a)-(c).
[28] 18 U.S.C. §§ 1343 and 1341, respectively.
[29] *See* Am. Compl., ¶ 148.
[30] *See Twombly*, 550 U.S. at 555.

there was any pattern of racketeering activity among High and any of the Co-Defendants, which

are required to state a claim for such a RICO claim:

> In order to [succeed on a RICO claim, a plaintiff] must prove both
> the existence of an 'enterprise' and the connected 'pattern of
> racketeering activity.'. . . The former is proved by evidence of an
> ongoing organization, formal or informal, and by evidence that the
> various associates function as a continuing unit. The latter is
> proved by evidence of the requisite number of acts of racketeering
> committed by the participants in the enterprise.[31]

The only facts Plaintiffs allege with any particularity pertaining to High relate solely to his use of

social media to critique or express opinions about Goode.[32] Because these allegations are wholly

insufficient to state a civil RICO claim against High, this claim should be dismissed.

### D.    Claim 3:  Federal Trademark Infringement

1.    <u>Elements</u>:  Under 15 U.S.C. § 1114, "one party infringes another's trademark

when it uses a similar mark in commerce and "such use is likely to cause confusion."[33]

"Likelihood of confusion forms the gravamen for a trademark infringement action."[34]

2.    <u>No Elements Supported By Amended Complaint</u>:  Plaintiffs' trademark

infringement claim is based on use of GES trademarks in Gaia-produced or Gaia-related

content—none of which was allegedly created by High—and solicitation of Goode's customers

by others using GES trademarks.[35] Plaintiffs provide no factual support whatsoever to suggest

that High was involved with Gaia's content, solicited Goode's customers, or used GES

trademarks in any way. Thus, this claim should also be dismissed as to High.

---

[31] *United States v. Turkette*, 452 U.S. 576, 583 (1981)
[32] Am. Compl., ¶¶ 126-27.
[33] *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005).
[34] *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).
[35] *See* Am. Compl., ¶¶ 168-70.

E. **Claim 4:  False Designation of Origin and Unfair Competition**

1. <u>Elements</u>:  Plaintiffs must establish three elements to prove a claim of trademark infringement under 15 U.S.C. § 1125(a):  (1) Plaintiffs own a protectable trademark; (2) High used the trademark in connection with goods or services; and (3) High's use of the trademark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." [36]

2. <u>Elements 2 and 3 Not Supported By Amended Complaint</u>:  Plaintiffs allege, in conclusory fashion, that "Defendants . . . made repeated representations about the source, origin, and nature of Defendants' products that have created the false and misleading impression that Defendants' goods or services are manufactured by GES, affiliated by GES . . . when, in fact, they are not," and that "Defendants . . . have made false representations, false descriptions, and false designations of origin regarding Defendants and Defendants' goods or services." [37] Plaintiffs allege no facts at all supporting the notion that High ever used any of Plaintiff's trademarks or even that he offered any products, goods, or services, much less that High made misrepresentations about them. This claim consists of nothing more than bare, conclusory legal assertions regarding other parties besides High and should be dismissed as to Defendant High.

F. **Claim 5:  Common Law Trademark and Trade Name Infringement**

1. <u>Elements</u>:  The elements of common law trademark infringement in Colorado ar similar to those under the Lanham Act, set forth above, and require proof of (1) Plaintiff's

---

[36] *Grady v. Nelson*, 2014 WL 7143852, at *6 (D. Colo. Dec. 15, 2014).
[37] Am. Compl., ¶¶ 176-77.

"protectable interest in its mark, [2] the defendant's use of that mark in commerce, and [3] the likelihood of consumer confusion."[38]

 2. <u>Elements 2 and 3 Not Supported By Amended Complaint</u>: Plaintiffs summarily allege, that "Defendants' . . . unauthorized use of GES' trademarks and names for [sic] in connection with the same or similar products and services infringes upon Goode's common law trademark and trade name rights."[39] As before, Plaintiffs make no factual allegations whatsoever regarding High's relationship with or any actions related to GES, or showing that he ever used any GES trademarks or trade names for any purpose. This claim should be dismissed.

 **G. Claim 6:  Common Law Unfair Competition**

 1. <u>Elements</u>:  There are two elements of this claim under Colorado law. "First, a plaintiff must show that the trade name acquired a secondary meaning or significance that identifies the plaintiff.  'Secondary meaning' is defined as the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify.  Second, the defendant must have unfairly used the name or a simulation of it against the plaintiff."[40]

 2. <u>No Elements Supported By Amended Complaint</u>: With respect to this claim, Plaintiffs allege that "Defendants . . . have made unauthorized and infringing use of Goode's trademarks and trade names, wrongfully and illegally took control of Goode's content . . . [and] utilized Gaia's position as a content provider and director" of Cosmic Disclosure.[41] Plaintiffs also allege that "Defendants . . . have, or have sought to, pass off their goods as those of

---

[38] *See Donchez v. Coors Brewing Co*., 392 F.3d 1211, 1219 (10th Cir. 2004).
[39] Am. Compl., ¶ 181.
[40] *HealthONE*, 805 F. Supp. 2d at 1124 (citations omitted).
[41] Am. Compl., ¶ 185.

Defendants' by virtue of use of Goode's trademarks and trade names," and that "Defendants . . . have misappropriated and exploited GES' business values."[42] As above, Plaintiffs allege no facts to support these conclusory statements as to High. They have not plead how, specifically, High used Goode's trademarks or trade names; what goods High sought to pass off; how, if at all, High had any interaction with GES; or even what GES "business values" are at issue. As with Plaintiffs' other claims above, these broad generalizations and conclusory statements do not meet Rule 8 pleading standards under *Iqbal* or *Twombly*. Accordingly, this claim should be dismissed.

**H.    Claim 7:  CCPA**

1.    <u>Elements</u>:  "In order to prove a private cause of action under the CCPA, a plaintiff must show:  (1) the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury."[43]

2.    <u>No Elements Supported By Amended Complaint</u>:  This claim is also based on vague and unsupported assertions that Defendants (or unnamed agents or affiliates) "sought to pass off Defendants' products and/or services as being Goode products or otherwise affiliated with, controlled or approved by GES," "made false representations attributing the source, sponsorship, approval, or certification of Defendants' goods and/or services to GES," and "made false representations that Defendants and Defendants' goods and/or services are affiliated with,

---

[42] *Id*. at ¶¶ 187-88.
[43] *HealthOne*, 805 F. Supp. 2d at 1120 (citation and internal quotation marks omitted).

connected, associated with, or certified by Goode."[44] Again, Plaintiffs have not set forth any facts that suggest High offered any products or services in the course of any business or made any misrepresentations about such nonexistent products or services. Moreover, since Plaintiffs' claims against High are based on his criticism of Goode, it is especially improbable that he simultaneously claimed any unidentified goods or services were somehow affiliated with Goode. This claim should be dismissed because it lacks any factual support as to High and fails to meet the Rule 9(b) pleading standards requiring specificity.[45]

I.     **Claim 10:  Intentional Infliction of Emotional Distress**

1.     <u>Elements</u>:  There is no applicable federal common law cause of action for this claim. To prevail on a claim for intentional infliction of emotional distress under Colorado law, "a plaintiff must show that (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff severe emotional distress."[46] Outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[47]

2.     <u>No Elements Supported By Amended Complaint</u>:  Plaintiffs fail to sufficiently plead facts supporting any of these elements related to High. Plaintiffs conclusory characterization of High's social media statement as a "threat[] of bodily harm" is not supported by the actual post, which reads:  "Ack! David Wilcock & Corey Goode STOLE the results of

---

[44] Am. Compl., ¶ 192.
[45] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010).
[46] *Matthys v. Narconon Fresh Start*, 104 F. Supp. 1191, 1205 (D. Colo. 2015).
[47] *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

decades of my work! … My offer to fight both of these 'fellows' stands open."[48] This statement does not rise to the level of "outrageous conduct" necessary to support a claim for intentional infliction of emotional distress—it is not extreme in degree, does not go beyond the bounds of all decency, and cannot be regarded as atrocious or utterly intolerable in civilized society.[49] Moreover, Plaintiffs plead no facts demonstrating that High made this media post recklessly or with the intent of causing Plaintiffs severe emotional distress, or that High's actions actually caused Plaintiffs severe emotional distress. Thus, this claim should also be dismissed.

### J.    Claim 9:  Negligent Infliction of Emotional Distress

1.    <u>Elements</u>:  Again, there is no federal common law cause of action for this claim but under Colorado law, "a plaintiff must show that the defendant's negligence created an unreasonable risk of *physical harm* and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that plaintiff's fear was the cause of the damages sought."[50]

2.    <u>No Elements Supported By Amended Complaint</u>:  As before, Plaintiffs merely recite the bare elements of this claim in conclusory fashion but fail to properly plead any facts supporting such elements.[51] Plaintiffs allege no facts regarding any negligent conduct by High, how such undescribed conduct created an "unreasonable risk of physical harm," or how Goode was allegedly "in fear for his own safety" due to such an unidentified risk. A mere recital of the elements of an offense is insufficient to meet the pleading standards of *Iqbal* or *Twombly*, and this claim—like the others—should be dismissed.

---

[48] Am. Compl., ¶ 127.

[49] *See Coors Brewing Co.*, 978 P.2d at 666.

[50] *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496 (Colo. App. 2011) (emphasis added).

[51] *See* Am. Compl., ¶¶ 203-06.

**K.      Claim 13:  Slander Per Se**

1.      <u>Elements</u>:  "To be slanderous *per se*, a statement must be oral and. . . impute to the plaintiff a commission of a crime or defame the plaintiff in his trade, business, profession, or office."[52]

2.      <u>No Elements Supported By Amended Complaint</u>:  Here, Plaintiffs have plead no facts indicating that High made any oral statement concerning them, or how such unidentified oral statement rises to the level of slander *per se*. Thus, this claim should be dismissed.

**L.      Claim 14:  Libel Per Se**

1.      <u>Elements</u>:  Unlike libel *per quod*, "to be libel per se the libel must carry its defamatory imputation on its face and is actionable without an allegation of proof or damages; but any libel which does not carry such imputation on its face is libel per quod and is actionable only where special damages are pleaded and proved."[53] "For a characterization of a person to warrant *per se* classification, it should, without equivocation, expose the plaintiff to public hatred or contempt."[54] Moreover, "[d]efamation per se has been narrowly construed, and [] this court has noted that per se classifications and presumed damages are not favored."[55]

2.      <u>No Elements Supported By Amended Complaint</u>:  The only written statement that Plaintiffs identify concerning High is a single tweet that reads in pertinent part, "Ack! David Wilcock and Corey Goode STOLE the results of decades of my work!"[56] This statement, standing alone, does not, without equivocation, expose the plaintiff to public hatred or contempt,

---

[52] *Dorr v. C.B. Johnson, Inc.*, 660 P.2d 517, 520 (Colo. App. 1983).
[53] *Inter-State Detective Bureau, Inc. v. Denver Post, Inc.*, 484 P.2d 131, 133 (Colo. App. 1971).
[54] *Hayes v. Smith*, 832 P.2d 1022, 1025 (Colo. App. 1991).
[55] *Keohane v. Wilkerson*, 859 P.2d 291, 301 (Colo. App. 1993).
[56] Amended Compl. at ¶ 127.

and thus does not rise to the level of libel per se. Even if construed as a claim for libel per quod, Plaintiffs have not plead any facts showing special damages to support such a claim. "Special damages are limited to specific monetary losses that a plaintiff incurs because of the defamatory publication."[57] Plaintiffs' claim for libel per se should also be dismissed as to High.

### M.      Claim 15:  Tortious Interference with Business Expectancy

1.      <u>Elements</u>:  "To prove tortious interference with a prospective contractual relation, it is not necessary to prove an underlying contract. It is sufficient to show intentional and improper interference preventing formation of a contract."[58]

2.      <u>No Elements Supported By Amended Complaint</u>:  Here, Plaintiffs have not plead any of the necessary facts of this claim at all:  that High had any intention of interfering with Plaintiffs' contractual relationships, how High supposedly interfered, and what prospective contracts were allegedly thwarted. As such, this claim should also be dismissed as to High.

### N.      Claim 16:  Cyberstalking

1.      <u>Elements</u>:  It is unclear exactly what cause of action Plaintiffs intend to assert through this claim as there is no applicable civil cause of action for "cyberstalking" under Colorado or federal law.

2.      <u>Claim Not Supported By Amended Complaint</u>:  Even if the conclusory statements found in paragraphs 243 to 245 of the Amended Complaint set out the elements of a claim, there are no facts alleged that support any allegation that High approached, contacted, communicated with, or placed under surveillance Goode or his immediate family or partner. Plaintiffs have

---

[57] *See Stump v. Gates*, 777 F. Supp. 808, 826 (D. Colo. 1991)
[58] *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981).

failed to plead any actionable cause of action for "cyberstalking" as to High, and this claim should also be dismissed.

## CONCLUSION

For these reasons, High respectfully requests that the Court dismiss the Amended Complaint against him for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, alternatively, for failure to state a claim pursuant to Rule 12(b)(6).

Dated August 3, 2020.

Respectfully submitted,

*s/ J. Lee Gray*_____
J. Lee Gray, Esq.
Melissa Y. Lou, Esq.
HOLLAND & HART LLP
515 17th Street, Suite 3200
Denver, CO  80202-3921
303-290-1602
lgray@hollandhart.com
mylou@hollandhart.com

***Counsel for Defendant Clif High***

### CERTIFICATIONS PURSUANT TO PRACTICE STANDARDS

I hereby certify that, pursuant to **DDD Civ. P.S. III(A)(4)**, the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

The undersigned counsel also certifies that, pursuant to **DDD Civ. P.S. III(D)(1)**, he discussed the grounds for this motion and the relief requested herein with counsel for Plaintiffs on July 31, 2020. Plaintiffs' counsel maintains that Plaintiffs have adequately stated all claims asserted against High in the Amended Complaint and opposes the relief requested above.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2020, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Valerie Yanaros, Esq.
Yanaros Law, P.C.
5057 Keller Springs Road Suite 300
Addison, Texas 75001
Telephone: (512) 826-7553
Fax: (469) 718-5600
valerie@yanaroslaw.com
**ATTORNEY FOR PLAINTIFFS**

Michael Jacob Laszlo
Laszlo & Associates, LLC-Boulder
2595 Canyon Boulevard, Suite 210
Boulder, CO 80302
Telephone: (303) 926-0410
Fax: (303) 443-0758
mlaszlo@laszlolaw.com
**ATTORNEY FOR BENJAMIN ZAVODNICK**

Daniel Andrew Dingerson
Ina B. Scher
Davis & Gilbert, LLP
1740 Broadway
New York NY 10019
Telephone: (212) 237-1488
Fax: (212) 468-4888
ddingerson@dglaw.com
ischer@dglaw.com
**ATTORNEYS FOR GAIA, INC.**

Alyssa Montalbano
2536 Rimrock Avenue, Suite 400-117
Grand Junction, CO 81505
Telephone: (970) 250-8365
AriStoneArt@Ymail.com
**PRO SE DEFENDANT**

*s/ Megan A. McMillen*_____
HOLLAND & HART LLP

14816373_v6