**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
09/14/2020
**JEFFREY P. COLWELL, CLERK**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-RBJ

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.
                Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKARYSAVY, BRAD
WARKINS AND KIERSTEN MEDVEDICH

                Defendants.

_____

DEFENDANT CLIFF HIGH'S REPLY TO PLAINTIFF JAMES
COREY GOODE AND GOODE ENTERPRISE SOLUTIONS,
INC.'S RESPONSE TO MOTION TO DISMISS UNDER FED. R.
CIV. P. 12(b)(2) FILED SEPTEMBER 7, 2020

_____

Cliff High files this Reply to Plaintiff's Response in Opposition to the Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) filed by Cliff High. Dkt. No. 42. The Defendant is acting *pro se* and begs the Court's indulgence with errors of form or format.

The Court should grant the Motion because personal jurisdiction over High has not been established by fact and he is not "essentially at home" in Colorado,

A recent communication, the "September Email" ( Exhibit A), in Plaintiff's Response to the Motion to Dismiss from Defendant High, did not consent to personal nor general jurisdiction in Colorado.

Plaintiff should not be allowed to file the Second Amended Complaint as no deficiencies are corrected against Defendant.

## I. Introduction

Defendant requests granting the Motion to Dismiss as

Plaintiff's Complaint has failed to provide facts against which a defense may be constructed, and Plaintiff's Response to the Motion did not correct deficiencies.

Defendant seeks Motion to Dismiss as Plaintiff, and Plaintiff's attorney have withheld, and concealed material fact affecting Plaintiff's ability to purse this case in good faith as per Rule 11 (detailed in Conclusion).

New discrepancies of fact and law in Plaintiff's Complaint pleadings have been exposed by the Response to Defendant's Motion to Dismiss which demolish areas central to Plaintiff's case.

The Plaintiff's claim of applicability of damages attributed to Defendant High's rests solely on the creation of the term "blue (space) chicken cult". This is the central specific claim against Defendant High , without which jurisdiction will not exist.

## II. Summary of Argument

Plaintiff states that Goode files this action against Defendants for claims arising under the Lanham Act,15U.S.C. 1143(a). This forms the entirety of the foundation of the Plaintiff's Complaint,

excepting RICO.

In paragraph 13, Plaintiff states all subsequent claims to supplemental jurisdiction over Goode's common law and state law claims of defamation, deceptive trade practices,et al, rely on the Lanham claims as the foundation of the claim of this Court's original jurisdiction.

Plaintiff's Introduction to the Response states that "specifically, starting at least in 2017 and continuing until 2020..." which indicates that Plaintiff's attorney is aware of the discrepancies in Plaintiff's ability to pursue Lanham as referenced in Plaintiff's Complaint ( and Second Amended) as a cause granting jurisdiction in this matter.

Plaintiff states in the Summary of Argument, section 3, that "Goode's trademarks are an element of his success and are at the heart of the dispute with High and the other Defendants." Defendant High reiterates this now to stress that, without their presence, no jurisdiction against Defendant can exist as the claims rest on these claimed Marks.

Defendant's use of the phrase "blue chicken cult" is a copyrighted use in works that predate the Plaintiff's application for mark.

Defendant High was granted a TM from the US PTMO on the phrase claimed to damage by Plaintiff. No US PTMO granted mark may offend another.

Complaint against Defendant High is claimed under RICO without Plaintiff providing factual support.

### III. Argument

Plaintiff states that Defendant High has "claimed that he coined the term Blue Chicken Cult" as a way to demean and tarnish Goode's claimed 'mark' ". This claim by Plaintiff is neither factual, nor plausible. The creation and use of the term "blue (space) chicken cult" by Defendant High <u>predates</u> Plaintiff's claimed mark use "blue avians". As noted by Plaintiff, Defendant High's use of the term "blue (space) chicken cult" started "at least" in 2017. This is reasonably interpreted to mean that plaintiff's attorney is aware that Defendant had used the term prior.

Plaintiff has "Blue Avians" filed as a 'word mark' on March 6th, 2018. Clearly beyond the creation date for the phrase created by Defendant, which the Plaintiff claims to be damaging and as Plaintiff's own filing provides, was in use prior to 2017.

The defendant was issued the following

NOTICE OF ALLOWANCE (NOA)

ISSUE DATE: Nov 5, 2019

U.S. Serial Number: 88420556
Mark: BLUE CHICKEN CULT BLUE SPACE CHICKEN CUL etc.

This substantiates that the Blue Space Chickens Mark was issued to Defendant High. Plaintiff may not claim damage against Plaintiff's mark by Defendant's use of Defendant's mark.

Plaintiff did not object during the process of Defendant obtaining said Mark from the US PTMO. No complaint has been made by Plaintiff to US PTMO, which is the more appropriate jurisdiction, and venue and, goes to the point of jurisdiction of this Court claimed in this matter.

Plaintiff does not enjoy Lanham protection until the mark is

granted. The use of 'blue avians' as a reference to characters in a TV show does not rise to the level required in Lanham.

Defendant High demeaned no mark and created no jurisdiction under Lanham.

Defendant High's coining of the term "blue space chicken cult" did not interfere with any commercial mark.

As Lanham does not apply when the events predate the creation of the claimed mark, Defendant High would not be under the jurisdiction of this Court.

Plaintiff has not met the burden of factual, nor plausible attribution of damages to Defendant High's copyrighted and trademarked, phrase 'blue (space) chicken cult'.

Plaintiff is being duplicitous in any claims to damage or damages by the term "Blue Chicken Cult" as Plaintiff had registered that phrase as a domain name with GoDaddy.Com on 2017-09-10. It expires on 2021-09-10, and was last updated on 2019-09-11. This use of the copyrighted and TM term of Defendant High clearly shows that Plaintiff had no damages resulting from

the term to, and including date of ,filing this suit. Further it establishes that Plaintiff, and his attorney, were aware of the creation of the term and its use prior to 2017. Plaintiff last renewed the domain registration on 2019-09-11 which is within the period in which he is claiming damages from use of that term. It is this term solely which has been cited as both defamatory and damaging. No other examples of any actions by Defendant are provided.

Plaintiff sought to own the TM term created by Defendant High, and began the process of profiting by registering it as a domain name for the purposes of commerce.

Registration records:

https://whois.domaintools.com/bluechickencult.com

### RICO

The Response to the Motion to Dismiss Plaintiff provides no credible, plausible, or factual support for the claims made of an "Association".

The contacts between individuals referenced by Plaintiff do not

support allegations of an "associated-in-fact" nor are at least two acts of "racketeering activity" provided.

In the Second Amended Complaint (105) the "association" is stated as a conclusion. The 'prior statements' are not detailed. The 'different individuals' are neither described, nor quantified.

The stated purpose of the "association" in paragraph 106 of the Amended Complaint is a conclusion. No facts are provided that describe Defendant High as "associated-in-fact", nor can a "common purpose" be established which involves him. No proof of a pattern of racketeering activity is provided. Plaintiff fails to satisfy *United States v. Turkette*, 452 U.S. 576, 582 (U.S. 1981). No facts are presented as to structure, decision making, nor continuity of asserted "association".

The Plaintiff's Amended Complaint, paragraph 107, cites the open nature of the actions of the defendants on social media platforms thus negating any claim of a conspiracy, or "association" with criminal intent. The Defendant's activities do not qualify as 'a pattern of racketeering' .

In paragraph 108, of the Amended Complaint, Plaintiff's attorney's claims the "association" has been active since 2015, acknowledging that he began his disputes with the individual defendants prior to the formation of the businesses for which he is claiming tortious interference. This was also three years prior to the filing to obtain the Marks claimed to be the target of the "association".

Plaintiff describes his fiction of an "association" on his social media as,"The Dark Alliance", and defames Defendant High, and others by inclusion. No factual representations are provided of this alleged conspiracy worthy of RICO prosecution.

Paragraph 109 of the Plaintiff's Second Amended Complaint provides no factual support for any of the claimed multiple criminal acts. In point of fact refuting claims of stalking, Defendant High has not been to the Plaintiff 's current state of residence while the plaintiff has been a resident nor has ever contacted him.

No facts are offered by Plaintiff in any pleading to

10

substantiate claimed association-in-fact and coordinated criminal action against Plaintiff by Defendant High with any, or all of the defendants in this action. Defendant High has never had any contact with GAIA defendants excepting emails, expressing umbrage over Plaintiff's statements in GAIA produced videos, sent to Jay Weidner shortly before he left his employment there.

Claims made by Plaintiff under Claim II: paragraph 142, allege that Defendants formed a criminal conspiracy to disrupt Plaintiff's business efforts, and that "each defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering ". No factual support is made for this claim.

This is continuing abuse of the defendants in general, and Defendant High in particular, by the Plaintiff that has been on going since 2016 . Plaintiff alleges conspiracy, criminal activity of the most heinous (and interplanetary) nature on social media, and now brings such spurious allegations to this Court. Plaintiff provides no supporting facts for the claimed conspiracy to obtain

11

the Plaintiff's businesses and intellectual property, which did not exist at the time of the inception of the "dark alliance" Plaintiff sees raised against him.

### Plaintiff's Response sections III, IV, V, VI, VII

Claims made in these paragraphs 144 through 181 include Defendant High within the class of "all defendants". These are assertions of claims which may not be applied against Defendant High as he engages in no Colorado specific activity or business. All "continuous and systematic contacts" of Defendant with Colorado summed will fall well within the standard of 'relatively small portion of the (company's) national or international reach.'.

Defendant High has a granted Trade Mark, against which damage is being claimed. Defendant High's exercise of his own Mark for his own purposes does not grant jurisdiction over him by this Court. This argues to subject matter jurisdiction, personal jurisdiction, and venue (US PTMO).

### Plaintiff's Response section IV

Plaintiff alleges 'defamatory statements' and 'threats of

12

violence' being produced for 'years' by Defendant High, yet provides no examples. The offer to fight was explicitly made in response to discovery of theft of copyrighted material by Plaintiff and associates. Assertions are not supported claims and go explicitly to the point of 12(B) request for granting of Motion to Dismiss.

Plaintiff claims that Defendant 'targeted Youtube users' in Colorado. Plaintiff alleges that 'much' of Defendant High's video production targets Plaintiff. This is not factual. Defendant High has over 150 videos on his YouTube channel covering a wide range of subjects, the vast majority of which do not include references to Plaintiff. Plaintiff cites no videos in support of this claim.

Caulder v Jones specifically goes the selection of a publisher, with the location of that publisher and its distribution being a specific attribute of the publication. All the social media cited by Plaintiff as being the source of the claimed damages are operating under Section 230 within the Communications Decency Act, and as such are not publishers, but platforms. Thus are not supportive

of the claim to specificity of publication referenced by Caulder v Jones. None of the social media referenced are location specific to Colorado.

No comparable situation exists in this case as Defendant High did not publish, nor seek to publish, anything within Colorado jurisdiction. Defendant High used Section 230 platforms without regard as to where the material he presented would be viewed, nor without targeting a specific audience in Colorado.

### Plaintiff's Response section B

In section B, Response to the Motion to Dismiss, Plaintiff's statement that "High's affidavit is disingenuous because he has hours of content posted on YouTube attacking Goode and his trademarks between 2017and 2020 " is factually not supported and false. Plaintiff's Mark did not exist for most of these years. Plaintiff provides no facts for any statement in this section. Defendant High's catalog of hours of videos claimed by the Plaintiff to target the Plaintiff does not exist. His YouTube channel is filled with a wide spectrum of videos, the vast majority

14

of which do not reference Plaintiff. No list detailing the claimed catalog is provided by Plaintiff.

### Plaintiff's Response section C

Defendant High does indeed argue travel to Colorado as a burden. Defendant High is 67 years old, a cancer patient with medical requirements making travel a burden. Defendant High is the only care provider for his 68 year old wife who is disabled, and suffers life-threatening episodes. She has recently been hospitalized with emergency action required of Defendant. Attendance in Colorado is an extraordinary burden, both unreasonable, and threatening to the health of both, Defendant High and wife.

### Assertions of Jurisdiction via residency

Plaintiff's attorney's statement that Defendant High "chose to go after a resident of Colorado" is false. Defendant High was responding to aggression and attack and theft of copyrighted material by Plaintiff, at that time a resident of the state of Texas. Defendant disputes that this provides jurisdiction by the State of

Colorado.

### Plaintiff's Response section V

Defendant High asserts that the Court does not have either criminal, nor civil RICO jurisdiction for the reasons that the claimed "enterprise" has not been factually supported, and no examples of the predicate crimes, as required, are provided. Plaintiff alleges "mail fraud" without providing supporting fact. Plaintiff alleges pattern activity without example, nor fact. Plaintiff is attempting to qualify the acts of the defendants, individually responding to aggression and attack by Plaintiff, collectively under RICO, as an 'enterprise'. No supporting facts offered.

### Plaintiff's Response section VI.

Plaintiff claims that the defendant's granted TM is demeaning and tarnishing and pejorative, as a granted US PTMO Mark, the burden is on Plaintiff to provide specific examples of claimed damage.

Plaintiff alleges that Defendant High used Plaintiff's marks

16

without providing any substantiation.

### Plaintiff's Response section VII.

Plaintiff states that Defendant is deceiving consumers without any factual support for the claim.

### Plaintiff's Response section IX.

Plaintiff claims Defendant makes untrue representations without providing any facts. Allegations alone are not sufficient for purposes of the pleading statute and should not survive a Rule 12 Motion.

### Plaintiff's Response section X.

Plaintiff fails to provide sufficiency of fact, nor plausibility of relief in the Complaint, while also completely failing to inform the Court of pertinent facts which would dispute the need for a ruling for discovery for jurisdictional purposes.

## IV. Conclusion

Plaintiff has repeatedly failed to meet the burdens required of fact and law. The Motion to Dismiss the defendant from these

proceedings should be granted, as well as Defendant's request to grant fees, and costs and other such relief as the Court may decide.

Defendant again raises the issue of Rule 11 standards. The complete lack of facts provided for claims against Defendant is suggestive of a tactic employed in a vindictive fashion by Plaintiff.

Defendant contends that Plaintiff and Plaintiff's attorney acted in bad faith in this Complaint with no intention of pursuing a factual case against the Defendant. Defendant High offers fact that Plaintiff had a domain name registered in 2017, then maintained that registration in 2019, on the term "Blue Chicken Cult", that was claimed to be damaging and is central to Plaintiff's Complaint with Defendant High. For two years plaintiff maintained this domain, and has not shared that information with this Court, all the while exploiting this Court's resources by claiming damages from the term.

The filing of the registration for the domain "BLUECHICKENCULT.COM" was under GES. The domain

18

registration was executed by Plaintiff, or possibly, Plaintiff's attorney. A request to the registrar could be made for the associated IP address. If either, the presumption must be that Plaintiff's attorney either actively participated in creating this Rule 11 violation, or at the least, failed to perform due diligence required of the Rule.

The Defendant again, and lastly, requests granting his Motion to Dismiss, and of relief of the extraordinary burden of attorney fees, and costs accrued in this matter before the Court.

Respectfully submitted this 14th day of September.

*S/Cliff High*
Cliff High
PO Box 141
Moclips, WA, 98562
Tel.: (360) 276-0049
Email:clif@halfpasthuman.com

**Defendant, pro se**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

# CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, I electronically filed the foregoing with the Clerk of Court via email.