IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE,  et al,

Plaintiffs,

v.

GAIA, INC.,  et al,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
2:23 pm, Jan 08, 2021
JEFFREY P. COLWELL, CLERK

_____
_____

DEFENDANT CLIFF HIGH'S REPLY TO PLAINTIFF'S
RESPONSE TO HIGH'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV P. 12(b)(2) AND 12(b)(6)

_____
____

Comes now, defendant  Cliff High  files this Reply to the Plaintiff's Response (Doc #123 filed January 7, 2021 ) to Defendant's Motion to Dismiss the  plaintiff's Second Amended Complaint (SAC) Doc. No. 111  filed on December 8, 2020.

Defendant High is acting *pro se* and begs the Court's indulgence with errors of form or format.

## Argument

The September email cited by Plaintiff's counsel (the "September Email", #62-1) in the opening paragraph of the Response (Doc # 123 )  does not acquiescence to jurisdiction, but is a statement that Defendant had reached a conclusion that Plaintiff's strategy with this inauthentic suit was to erode Defendant's retirement

2

savings with legal bills which would not be recovered when Plaintiff's  suit was inevitably dismissed. Defendant High therefore decided to remove the 'prize' of further legal costs from the situation by taking on the matter personally, and pressing  for this Court to Dismiss for lack of jurisdiction over defendant. Jurisdiction is not granted by this communication which was per procedure to instruct the parties herein involved of my decision to personally participate in obtaining a dismissal of this suit. The language of the email was specific to the task at hand, that is to say, the MTD, and defendant's conclusion that his legal counsel had been ineffective and costly, and had fallen into a strategic trap set by the inauthentic nature of Plaintiff's case. This was explicitly not consent to jurisdiction. This email was an announcement of explicit intent to contest jurisdiction.

3

In the opening paragraphs of Plaintiffs' Response to Defendant's MTD, Plaintiff's counsel erringly returns to the 'Blue Space Chicken Cult' language.  The 'Blue Space Chicken Cult' phrase is a lawfully granted trademark by the USPTO to defendant High. Thus raising the issue of this Court's applicability as to venue, and jurisdiction as to subject matter.

Plaintiff  states  that Defendant High has "claimed that he coined the term Blue Chicken Cult" as a way to demean and tarnish Goode's claimed 'mark' ". This claim by Plaintiff  is neither factual, nor plausible. The creation and use of the term "blue (space) chicken cult" by Defendant High <u>predates</u> Plaintiff's claimed mark use "blue avians". As noted by Plaintiff in the original Complaint, but deprecated from the current SAC, Defendant High's use of the term "blue (space) chicken

cult" started "at least" in 2017. This is  reasonably interpreted to mean that plaintiff's attorney is aware that Defendant had used the term prior to that year.

Plaintiff has "Blue Avians" filed as a 'word mark' on March 6th, 2018. Clearly beyond the creation date for the phrase created by Defendant, which the Plaintiff claims to be damaging and as Plaintiff's own filing provides, was in use prior to 2017.

Defendant High  was issued the following

NOTICE OF ALLOWANCE (NOA)

ISSUE DATE: Nov 5, 2019

U.S. Serial Number: 88420556
Mark: BLUE CHICKEN CULT BLUE SPACE CHICKEN CUL etc.

This substantiates that the Blue Space Chickens Mark was issued to Defendant High. Plaintiff may not claim

damage against Plaintiff's mark by Defendant's use of Defendant's mark. Such is directly a challenge to this Court's subject matter jurisdiction and venue as both more appropriately are placed within the USPTMO.

In the original, granted, form, the  TM of "BLUE CHICKEN CULT BLUE SPACE CHICKEN CULT BLUE 6 FOOT SPACE CHICKEN CULT" was never registered, as a statement of use was never filed. While this is factual as  to the original language submitted, Defendant's developing business needs, as well as family health issues, as well as family members end of life issues, as well as Defendant's own battle with cancer during the period framed by this inauthentic suit, made the use of the phrase in that form, not viable. Thus it was not pursued in that form.

Instead, Defendant separated the language into two

6

phrases and resubmitted a new application with the USPTMO for the following:

"Blue Chicken Cult" (application serial number '90178554'), and

"Blue Space Chicken Cult" (application serial number '90178527 ').

These new marks are both more effective, and reflective of the Defendant's first use of the terms within copyrighted materials that date back to 2014.

The Plaintiff's counsel's failure to grasp business, or legal strategy, does not negate the filing of the mark as sufficient to prove necessary intent of use of the phrase within commercial applications by Defendant High prior to Plaintiff's ever engaging in commercial exploitation of his word mark.

Plaintiff did not object during the process of Defendant obtaining said Mark from the US PTMO. No complaint has been made by Plaintiff to US PTMO, which is the more appropriate jurisdiction, and venue and, goes to the point of  jurisdiction of this Court claimed in this specific subject matter.

Plaintiff does not enjoy legal  protection until the trademark is  granted.  The use of 'blue avians' as a reference to characters in a TV show  does not rise to the level required by law.

Defendant High demeaned no mark and created no jurisdiction capable of relief by this Court, and indeed, Plaintiff's pleading for this example directly challenges jurisdiction by pointing towards venue and subject matter.

Defendant High's coining of the term "blue space

chicken cult" did not interfere with any  commercial mark then existent, thus Plaintiff can not claim damages retroactively.

As legal protection for word marks, most frequently cited under Lantham,  does not apply when the events predate the creation of the claimed mark, Defendant High would not be under the jurisdiction of this Court.

Plaintiff has not met the burden of factual, nor plausible attribution of damages to Defendant High's copyrighted and trademarked,  phrase 'blue (space) chicken cult'.

Plaintiff  is being duplicitous  in any claims to damage or damages by the term "Blue Chicken Cult" as Plaintiff had registered that phrase as a domain name  with GoDaddy.Com on 2017-09-10. It expires on 2021-09-10, and was last updated on 2019-09-11. This use of the

copyrighted and TM term of Defendant High clearly shows that Plaintiff had no damages resulting from the term to, and including date of, filing this suit. Further it establishes that Plaintiff, and his attorney, were aware of the creation of the term and its use prior to 2017. Plaintiff last renewed the domain registration on 2019-09-11 which is within the period in which he is claiming damages from use of that term.

Defendant High again directs this Court's attention to the filing dates for this term. Plaintiff's attorney failed in due diligence required of Rule 11, either by ploy of the Plaintiff attempting to conceal, failure to perform adequately, or was deliberately deceitful with this Court. There is no other explanation.

Plaintiff sought to own the TM term created by Defendant High, and began the process of profiting by

10

registering it as a domain name for the purposes of commerce. Plaintiff participated, at least to the level of promotion on social media, the commercial exploitation of Defendant High's TM term by individuals who may be termed as "followers" of Plaintiff. These followers produced merchandise featuring this defendant's TM phrase. Plaintiff openly promoted such efforts in his social media activities proving he has no standing for a claim to damages from Defendant High's TM term. Without a claim of damages that may be rendered into relief by action of this Court, where exists jurisdiction over Defendant High?

Plaintiff states in Response to Defendant's MTD, that to survive a Rule 12(b)(6) motion, a complaint need not include "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must

merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  As just demonstrated by preceding paragraphs, Plaintiff has no damages, ergo, no claims that may be relieved by actions of this Court, therefore, jurisdiction does not exist over Defendant High.

Further, and specifically to the point of Bell Atl. Corp. v. Twombly citation, Plaintiff has provided no factual matter within the SAC that rises to the level required by Twombly for this Court to claim jurisdiction over Defendant High.

Even if the Court construes the material presented by Plaintiff's SAC in "light most favorable to Plaintiff", there still are no factual examples to provide support for claims of damages that may be rendered relief by this Court.

This is especially highlighted by Plaintiff's actions attempting to obtain Defendant's legally issued TM, and copyrighted material as is demonstrated by Plaintiff's actions filing for domain names and supporting the sale of merchandise with a stolen, trademarked, phrase.

Plaintiff's counsel raise the argument of Colorado specificity in Defendant High's actions. This Court must take as it's guiding principles for jurisdiction in Colorado, the guidelines presented by the Colorado Supreme Court which maintains as a result of a test of jurisdiction in a case called *Magill v. Ford Motor Co.* There, the court explained that general jurisdiction is appropriate only when a nonresident corporate defendant's connections with the forum state are so continuous and systematic as to render it "essentially at home in the forum State." In doing so, the Court created a new test that Colorado trial

courts must apply before holding that a nonresident corporate defendant is subject to general jurisdiction. The test requires the court to consider: (1) whether the nonresident corporate defendant's contacts with Colorado are continuous, and systematic or significant; and (2) whether that defendant is "essentially at home in Colorado." To determine if a defendant is "essentially at home" in Colorado, the court must determine whether the defendant's "continuous and systematic contacts" "amounted to more than a 'relatively small portion of the company's national or international reach.'"

It is Defendant High's argument that his activities cannot be made to fit any pattern that meets "essentially at home" in Colorado as is defined by the Supreme Court of the forum state. Defendant High's contacts with Colorado, as established in previous affidavit, herein

reiterated are non-existent excepting occasional emails from parties involved in this case. Defendant has some other Colorado email acquaintances who would number less than 5. Defendant High's last physical contact with Colorado was while waiting in a lay-over at the Denver airport in 2000, and in which he did not deplane. The duration was probably less than 30 minutes.

Plaintiff's counsel states in the Response to Defendant's MTD that **"On the contrary, as shown in the Second Amended Complaint, High has failed to reference many instances dating from 2017 to 2020 in which he has directed many harmful activities—defamatory statements and threats of violence—at Goode. #111at 18-20. "**

Defendant would be pleased to have addressed any such statements alleged to have been made by him if they had been provided by Plaintiff's SAC. Noting that no

15

examples are provided of the 'many instances' claimed by Plaintiff's counsel, Defendant High again presses this explicit point that the SAC provides no examples which would rise to the level of jurisdictional contact required by any Colorado State court under the guidelines of the Colorado Supreme Court as is cited previously. The single tweet exemplified in the SAC, the Plaintiff's Response to the Defendant's MTD, and the original Complaint, is an offer to fight. An offer is not a threat. An offer to fight is not an expression of threat of violence. This tweet was made in direct response to the frequent, continual, and aggressive social media attacks on Defendant High by Plaintiff. This tweet was written in the language it expresses to create a specific response in the reader's mind in order that they may question the veracity of the Plaintiff's defamatory allegations against Defendant at

the time of that interaction on Twitter. Other than this single instance, no other examples claimed by Plaintiff to be 'many', and 'numerous', are provided.

Plaintiff's SAC has a continuous failing in this regard as to examples. Allegations are not sufficient for obtaining jurisdiction, and Plaintiff fails to meet requirements for factual presentations that may even be so labeled as 'Disputed'. Plaintiff's SAC presents only allegation, and conclusory assertions, all of which are bereft of examples for Defendant to dispute. Plaintiff sites videos claimed by them to be defamatory, and slanderous, yet sites no examples of such, by URL, nor by title. Plaintiff claims Defendant High appeared in videos produced by other parties, yet expects that Defendant High had direct control on such other video producers, and could direct them to specifically target Colorado. Further, no examples

extracted from any video are provided of any speech or action by Defendant High to meet the requirements for claims of Slander and Libel that Plaintiff's counsel so frequently employs.

Plaintiff claims damages exist from videos and tweets and other social media on-going and in past years by Defendant, yet provide not a single example of speech or action by Defendant, nor plausible relationship to any damages, nor are there examples of how Plaintiff was to have suffered damage. In point of fact, and as has been demonstrated in this Reply document, Plaintiff seeks to obtain by usurpation of  the intellectual property of Defendant  High, to whit, his TM commercial phrase, and to profit from it, as Plaintiff's actions suitably illuminate. Plaintiffs actions registering the domain name extracted from Defendants TM clearly call into question all

allegation of damages suffered.

This Court has no jurisdiction over Defendant High. While Plaintiff's counsel presents **"High has posted hours of content on YouTube attacking Goode and his trademarks between 2017 and 2020. "** , this is an unsubstantiated claim, with not a single video cited. Further, Plaintiff Goode had no trademarks to be attacked during this period, as his counsel well knows.

Daring to bore this Court yet one more time, the Plaintiff's counsel provided in the Response that **"The aggression ingrained in Defendant's videos, social media posts and livestreams raises to a level that shocks the conscience and as such makes it even more likely that Defendant should be subjected to jurisdiction by this Court. "** Yet again, not a single example is provided. Defendant is unable to do more than deny, if Plaintiffs fail

to provide facts which may be disputed. This claim of shock to the conscience is not sufficient to establish jurisdiction, especially when provided without fact.

Plaintiff's counsel presents "**He has admitted to reaching out to Weidner in Colorado in order to prevent Mr. Goode from pursuing his career in Colorado. #114 at 4.** " in her Response to Defendant's MTD. This is conclusory, not factual. Defendant reached out to Weidner to attempt to alert Weidner and then to stop the theft of his own copyrighted material, not to interfere with the GAIA TV show.  Further to this point, a single email exchange neither establishes an 'association', nor rises to any level of action required by RICO.

In spite of claims, Plaintiff has provided no exemplary predicate crimes related to any actions by Defendant High. Claims of RICO violations without required

predicate factual material are not sufficient to establish jurisdiction.

Defendant High concludes by noting that Plaintiff's inauthentic suit before this Court is part of a larger pattern of exploitation of controversy for notoriety to drive views and sales.

## Conclusion

The Defendant again prays this Court to move to dismiss  the Plaintiff's Second Amended Complaint against Defendant High,  and granting of Defendant's request for relief of the extraordinary burden of attorney fees, and costs accrued in this  matter before the Court.

Respectfully submitted this  8th  day of January, 2021.

*S/Cliff High*
Cliff High

PO Box 141
Moclips, WA, 98562
Tel.: (360) 276-0049
Email:clif@halfpasthuman.com

**Defendant, pro se**

I hereby certify that the foregoing pleading complies

with the type-volume limitation set forth in Judge

Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2021, I electronically
filed the foregoing with the Clerk of Court  via email.