# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-742-KLM

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

Plaintiffs,

v.

GAIA, INC.,
JAY WEIDNER,
CLIF HIGH,
BENJAMIN ZAVODNICK,
ALYSSA MONTALBANO,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH,

Defendants.

-----------------

ALYSSA CHRYSTIE MONTALBANO, individually,

Counter-Claimant,

v.

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

Counter-Defendants,

GAIA, INC.,
JAY WEIDNER,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH,

Cross-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC;
DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
VALERIE YANAROS WILDE,
ELIZABETH LORIE,
BRIAN JAMES FLYNN,
WILLIAM CAMPBELL,
MATTHEW GROVE,
DIANA TERRY, and
CHRISTINA GOMEZ,

Third-Party Defendants.

_____

### GAIA, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

_____

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

RELEVANT FACTUAL ALLEGATIONS AGAINST GAIA ...................................2

I.     THE PARTIES..............................................................................................2

II.    CONTRACTUAL RELATIONSHIP BETWEEN GAIA AND
       PLAINTIFFS .................................................................................................2

III.   PLAINTIFFS' ASSERTED INTELLECTUAL PROPERTY RIGHTS ...........3

IV.    ACTIONS OF OTHER DEFENDANTS .........................................................5

ARGUMENT.............................................................................................................5

I.     RULE 12 REQUIRES CLAIMS TO BE PLAUSIBLE ...................................6

II.    EACH OF PLAINTIFFS' CLAIMS FAILS TO STATE A CAUSE OF
       ACTION .......................................................................................................6

       A.     PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW ...........7

              1.    Required Elements of a RICO Claim............................................7

                    (a)   Racketeering Activity ........................................7

                    (b)   Pattern of Activity............................................8

              2.    Specific Standards Applicable to Predicate Offenses................8

              3.    Plaintiffs' Allegations Lack Required Elements of a RICO
                    Claim..........................................................................................9

       RICO ELEMENTS NOT ALLEGED: 1) RACKETEERING ACTIVITY; 2) PATTERN...............10

       FRAUD ELEMENTS NOT ALLEGED: 1) REPRESENTATION; 2) FALSITY;
       3) MATERIALITY; 4) INTENT TO ACT;  5) IGNORANCE OF FALSITY;
       6) RIGHT TO RELY; 7) INJURY....................................................................10

       B.     PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW ............11

       BREACH OF CONTRACT ELEMENTS NOT ALLEGED: 1) EXISTENCE OF A CONTRACT;
       2) PERFORMANCE BY PLAINTIFF; 3) BREACH.........................................................12

              1.    Plaintiffs' Oral Contract Claim is Barred and Inadequately
                    Pleaded......................................................................................12

                    (a)   The Merger Clause in the Parties' 2016 Contract Precludes the
                          Purported Oral Contract...................................13

                    (b)   The Purported Oral Contract is Not Sufficiently Definite ............14

              2.    Plaintiffs' Breach of Written Contract Claim is
                    Inadequately Pleaded ................................................................14

C.     PLAINTIFFS' TRADEMARK CLAIMS FAIL AS A MATTER OF LAW ............................ 15

    1.     Federal Trademark Infringement and Unfair Competition Claims ........................................................................................................ 15

**INFRINGEMENT ELEMENTS NOT ALLEGED: 1) INFRINGING USE IN COMMERCE; 2) LIKELIHOOD OF CONFUSION; 3) DISTINCTIVENESS.** ............................ 16

        (a)    <u>Fair Use is a Complete Defense to Plaintiffs' Claims</u> .................. 17

    2.     False Designation of Origin ........................................................................ 18

**FALSE DESIGNATION ELEMENTS NOT ALLEGED: 1) FALSE DESIGNATIONS; 2) LIKELIHOOD OF CONFUSION.** .............................................................. 19

    3.     Trademark Infringement Pursuant to Colorado Common Law ........................................................................................................... 19

**INFRINGEMENT ELEMENTS NOT ALLEGED: 1) INFRINGING USE IN COMMERCE; 2) LIKELIHOOD OF CONFUSION.** .............................................................. 19

    4.     Declaration of Validity ................................................................................ 20

**VALIDITY ELEMENTS NOT ALLEGED: 1) USE IN COMMERCE; 2) AS A DISTINGUISHING MARK.** ....................................................................... 20

D.     PLAINTIFFS' OTHER TORT CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED ... 22

    1.     Colorado Consumer Protection Act ........................................................... 22

**CCPA ELEMENTS NOT ALLEGED: 1) UNFAIR TRADE PRACTICE; 2) SIGNIFICANT PUBLIC IMPACT.** .......................................................... 23

    2.     Colorado Common Law Unfair Competition ............................................. 24

**UNFAIR COMPETITION ELEMENTS NOT ALLEGED: 1) SECONDARY MEANING; 2) UNFAIR USE.** ............................................................................ 25

    3.     Fraudulent Misrepresentation ................................................................... 25

**MISREPRESENTATION ELEMENTS NOT ALLEGED: 1) INDEPENDENT DUTY; 2) NOT IMPOSED BY CONTRACT.** .................................................... 26

    4.     Libel and Slander ........................................................................................ 26

**DEFAMATION ELEMENTS NOT ALLEGED: 1) DEFAMATORY STATEMENT BY GAIA; 2) SPECIAL DAMAGES.** ................................................................. 27

    5.     Tortious Interference with a Business Expectancy ................................... 28

**INTERFERENCE ELEMENTS NOT ALLEGED: 1) "IMPROPER INTERFERENCE; 2) LACK OF COMPETITION.** ...................................................................... 28

**<u>CONCLUSION</u>** ...................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
    722 F.3d 1229 (10th Cir. 2013) ................................................................ 15-16

*American Furniture Co. v. American Furniture Co.*,
    261 P.2d 163 (1953)...................................................................................24

*Amoco Oil Co. v. Ervin*,
    908 P.2d 493 (Colo. 1995)..........................................................................28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................6

*Bell v. Magna Times, LLC*,
    No. 2:18CV497DAK, 2019 WL 1896579 (D. Utah Apr. 29, 2019)........................17

*Brereton v. Bountiful City Corp.*,
    434 F.3d 1213 (10th Cir. 2006) .....................................................................6

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008).....................................................................................9

*Brodeur v. American Home Assurance Co.*,
    169 P.3d 139 (Colo. 2007)..........................................................................23

*Brokers' Choice of America, Inc. v. NBC Universal, Inc.*,
    861 F.3d 1081 (10th Cir. 2017) .....................................................................3

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*,
    873 F.2d 1357 (10th Cir. 1989) .....................................................................7

*Cleary Building Corp. v. David A. Dame, Inc.*,
    674 F. Supp. 2d 1257 (D. Colo. 2009)...............................................15, 16, 19, 23

*In re Continental Resources Corp.*,
    799 F.2d 622 (10th Cir. 1986) .....................................................................13

*Davison v. Grant Thornton LLP*,
    582 F. App'x 773 (10th Cir. 2014) ..................................................................7

*Durango Herald, Inc. v. Hugh A. Riddle & Riddle Directories, Inc.*,
　719 F. Supp. 941 (D. Colo. 1988) .............................................................................18

*Erie R.R. v. Tompkins*,
　304 U.S. 64 (1938) .................................................................................................13

*Fernandez v. Clean House, LLC*,
　883 F.3d 1296 (10th Cir. 2018) ................................................................................6

*Go Pro, Ltd. v. River Graphics, Inc.*,
　No. 01-cv-600-JLK, 2006 WL 898147 (D. Colo. Apr. 5, 2006) .............................20

*Green v. Mansour*,
　474 U.S. 64 (1985) .................................................................................................21

*Grossman v. Novell, Inc.*,
　120 F.3d 1112 (10th Cir. 1997) ................................................................................6

*Hamon Contractors, Inc. v. Carter & Burgess, Inc.*,
　229 P.3d 282 (Colo. App. 2009) .............................................................................26

*Harmon v. Waugh*,
　414 P.2d 119 (Colo. 1966) .....................................................................................13

*Haynes Trane Service Agency v. American Standard, Inc.*,
　573 F.3d 947 (10th Cir. 2009) ........................................................................... 25-26

*Health Grades, Inc. v. Robert Wood Johnson University Hospital, Inc.*,
　634 F. Supp. 2d 1226 (D. Colo. 2009) ...................................................................17

*HealthONE of Denver, Inc. v. UnitedHealth Group, Inc.*,
　805 F. Supp. 2d 1115 (D. Colo. 2011) ...................................................................23

*Hitch Enterprises, Inc. v. Cimarex Energy Co.*,
　859 F. Supp. 2d 1249 (W.D. Okla. 2012) ...............................................................12

*Keohane v. Stewart*,
　882 P.2d 1293 (Colo. 1994) .............................................................................. 26-27

*Khalik v. United Air Lines*,
　671 F.3d 1188 (10th Cir. 2012) ................................................................................6

*Klein v. Grynberg*,
　44 F.3d 1497 (10th Cir. 1995) ................................................................................13

*Lininger v. Knight*,
   226 P.2d 809 (Colo. 1951) ................................................................................27

*Mestas v. Martini*,
   155 P.2d 161 (Colo. 1944) ................................................................................14

*Monus v. Colorado Baseball 1993, Inc.*,
   No. 95-1099, 1996 U.S. App. LEXIS 32995 (10th Cir. Dec. 17, 1996) .................13

*Netquote, Inc. v. Byrd*,
   504 F. Supp. 2d 1126 (D. Colo. 2007) ...............................................................24

*Pittman v. Larson Distributing Co.*,
   724 P.2d 1379 (Colo. App. 1986) .......................................................................27

*Prince Lionheart, Inc. v. Halo Innovations, Inc.*,
   No. 06-cv-00324-WDM-KLM, 2008 WL 878985 (D. Colo. Mar. 28, 2008) .........16

*Public Service Commission of Utah v. Wycoff Co.*,
   344 U.S. 237 (1952) ..........................................................................................21

*Resolution Trust Corp. v. Stone*,
   998 F.2d 1534 (10th Cir. 1993) ...........................................................................8

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................................................7

*RV Horizons, Inc. v. Smith*,
   No. 1:18-cv-02780-NYW, 2019 WL 6052416 (D. Colo. Nov. 15, 2019) ..............16

*Schwartz v. Celestial Seasonings, Inc.*,
   124 F.3d 1246 (10th Cir. 1997) .........................................................................23

*State Bank of Wiley v. States*,
   723 P.2d 159 (Colo. App. 1986) ........................................................................25

*Stump v. Gates*,
   777 F. Supp. 808 (D. Colo. 1991) ......................................................................27

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) ......................................................................8, 11

*Town of Alma v. AZCO Construction, Inc.*,
   10 P.3d 1256 (Colo. 2000) ................................................................................25

*United States v. Washita Construction Co.*,
     789 F.2d 809 (10th Cir. 1986) ...................................................................................9

*USA Network v. Gannett Co.*,
     584 F. Supp. 195 (D. Colo. 1984) ..........................................................................20

*Western Distributing Co. v. Diodosio*,
     841 P.2d 1053 (Colo. 1992) ...................................................................................12

*Williams v. District Court*,
     866 P.2d 908 (Colo. 1993) .....................................................................................26

*Wilton v. Seven Falls Co.*,
     515 U.S. 277 (1995) ...............................................................................................21

*Wood v. Wells Fargo Bank, N.A.*,
     No. 13-cv-01731-CMA-KMT, 2013 WL 5763101 (D. Colo. Oct. 2, 2013) ............9

**Statutes**

15 U.S.C. §§1051–1072.............................................................................................21

15 U.S.C. § 1115..................................................................................................17, 21

15 U.S.C. § 1125.......................................................................................................18

15 U.S.C. § 1127.......................................................................................................20

18 U.S.C. §§ 1961 et seq..........................................................................................7, 9

**PLEASE TAKE NOTICE** that Defendant Gaia, Inc. ("Gaia"), by and through its attorneys, Davis & Gilbert LLP, hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice the Second Amended Complaint ("Complaint") of Plaintiffs James Corey Goode and Goode Enterprise Solutions, Inc. ("GES"), for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Gaia files this Motion to resolve claims that are unsupported by law and entirely inadequately pleaded.  Goode, whose livelihood involves experiences living off-planet in a secret space program and communicating with alien beings, brings this action purportedly to protect Plaintiffs from a suspected conspiracy to misappropriate intellectual property and defame Goode. But Plaintiffs are actually using these proceedings to disparage Gaia, stir controversy, and drive profits, as evidenced by Plaintiffs' hundreds of internet posts further attempting to smear the Defendants.  Plaintiffs' claims are simply not supported by the wild, disjointed, and vague allegations against various, apparently unconnected Defendants—each fail to state a cause of action and must be dismissed.

The Complaint includes thirteen numbered claims—twelve brought against Gaia, including eight against all Defendants.  But Plaintiffs' claims are mere conclusory pronouncements and baseless conspiracy theories, not plausible causes of action.  Plaintiffs' scattershot approach is not consistent with federal pleading requirements and unfairly burdens Defendants and the Court.

To the extent that anything can be gleaned from the Complaint, it is clear Plaintiffs' purported claims are deficient as a matter of law.  For example, Plaintiffs assert a RICO

conspiracy but fail to plausibly plead any necessary predicate offenses.  Likewise, Plaintiffs vaguely assert breach of contract but fail to allege any supporting facts that could establish whether any obligations exist and have been breached.  Plaintiffs also attempt to assert certain trademark claims, but fail to allege how and when the purported trademarks were used by Gaia.

For the following reasons, Plaintiffs' effort to use the Court improperly requires dismissal of all claims with prejudice and an imposition of sanctions on Plaintiffs and their counsel.

## RELEVANT FACTUAL ALLEGATIONS[1] AGAINST GAIA[2]

### I.     THE PARTIES

Gaia is a conscious media company that operates a global digital video subscription service catering to a unique subscriber base.  Gaia is rapidly growing with a digital content library of over 8,000 titles available to subscribers.

James Corey Goode is a media figure and Goode Enterprise Solutions, Inc. ("GES") is a company formed by Goode and his wife.  (Complaint ¶¶ 2-3).

### II.    CONTRACTUAL RELATIONSHIP BETWEEN GAIA AND PLAINTIFFS

In June 2015, Plaintiffs and Gaia began discussing Goode's appearance on the show *Cosmic Disclosure* ("CD"), and thereafter contracted for Goode to appear on CD.  (Complaint ¶ 22).

Goode alleges that in discussions prior and subsequent to signing a written agreement he requested certain consideration for appearing on CD but admits that much of what he now

---

[1] Plaintiffs' allegations are accepted as true solely for this Motion, and are otherwise denied.

[2] Plaintiffs frequently fail to distinguish among Defendants; for this Motion and to assist the Court, Gaia has attempted to determine which allegations pertain to Gaia, but does not concede any are.

alleges is due was ultimately not in any written contract.  (Complaint ¶¶ 25-26, 30, 134).

Plaintiffs admit entering a written contract dated August 22, 2016 (the "2016 Contract"), related

to Goode appearing on CD and for various speaking engagements.[3]  (Complaint ¶ 26).  Plaintiffs

allege conclusorily that Gaia failed to pay Plaintiffs certain agreed compensation pursuant to the

2016 Contract.  (*See* Complaint ¶¶ 28-29).  Plaintiffs also allege that purported oral promises—

not included in any written contracts—were not fulfilled.  (*See* Complaint ¶¶ 26, 30).  The 2016

Contract contains a "merger clause" which provides: "[t]his Agreement contains the entire

agreement of the parties and all previous agreements, warranties, and representations, if any, are

merged herein."  (2016 Contract, ¶ 8).

Gaia removed from its digital library materials that feature Goode.  (Complaint ¶ 115).

Plaintiffs cite a note on Gaia's webpage explaining the removal, which expresses Gaia's

"disappointment" in Goode.  (Complaint ¶ 117).  Plaintiffs allege that the removal caused a

"backlash" and upset Gaia's subscribers.  (Complaint ¶¶ 115-116, 118).

Plaintiffs also allege that Defendant Jay Weidner was hostile to Goode when both worked

on CD.  (*See* Complaint ¶ 33).

## III.    PLAINTIFFS' ASSERTED INTELLECTUAL PROPERTY RIGHTS

GES asserts rights to certain intellectual property created by Goode.  (Complaint ¶ 19).

Such intellectual property may include Plaintiffs' purported rights in the terms "Sphere Being

Alliance", "SBA", "Blue Avians", and "20 and Back".  (Complaint ¶¶ 38-40).  Plaintiffs claim

registered marks for "Sphere Being Alliance" and "SBA".  (Complaint ¶¶ 39-40).  "Sphere

---

[3] Plaintiffs did not file the 2016 Contract but it may be considered because it is referenced in the Complaint, is central to Plaintiffs' breach of contract claim, and is indisputably authentic. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

Being Alliance" is registered in Class 25 for "clothing"; "SBA" is registered in Classes 16 and 41, for "comic books" and "services in the field of film and television".  (Complaint Ex. A).  Plaintiffs have also sought registrations for the marks "Blue Avians", and "20 and Back".  (Complaint ¶ 39).  Plaintiffs do not describe the classes of goods for which such registrations were sought or attach copies of the applications.

Gaia filed oppositions with the Trademark Trial and Appeal Board (the "TTAB") to applications for "Blue Avians" and "20 and Back".  (Complaint ¶ 41).  Plaintiffs make vague allegations about the status of the TTAB proceedings, including the status of discovery.[4]  (Complaint ¶¶ 43-44).  Plaintiffs also allege that Gaia was slow responding to settlement requests.  (Complaint ¶ 212).

Plaintiffs allege without specification that Gaia has and continues to use "20 and Back" "on various advertising and promotional materials."  (Complaint ¶ 47).  Plaintiffs allege that other individuals—not named as Defendants—appeared on CD and "use[d] Goode's [] protected phrases."  (Complaint ¶¶ 48, 151).  Plaintiffs do not allege which "protected phrases" were supposedly "used", when such "protected phrases" were "used", who "used" the "protected phrases", or in what context the "protected phrases" were "used".  (*See* Complaint ¶¶ 48-57).

---

[4] Plaintiffs' characterizations of discovery in the TTAB actions are a gross misstatement.  When Plaintiffs sought to stay the proceedings, Gaia was prepared to file motions to compel due to Plaintiffs' wholesale failure to participate in discovery in good faith.  Plaintiffs' outright false statements in the Complaint— repeated across amendments and signed by Plaintiffs' counsel who represents Plaintiffs in the TTAB actions—are grounds for sanctions.  Regardless, discovery in other proceedings has no relevance to Plaintiffs' purported claims.

Plaintiffs allege that they attempted to stop Gaia and others from "using" their "protected phrases" by sending cease and desist letters.  (Complaint ¶ 50).[5]  Gaia offered to indemnify one recipient of Plaintiffs' threatening letters.  (Complaint ¶¶ 52, 54).

## IV.   ACTIONS OF OTHER DEFENDANTS

Plaintiffs allege that Defendants Weidner, High, Montalbano, and Zavodnick (termed the "Association") made various purportedly defamatory statements.  (Complaint ¶¶ 58-59, 88, 102).

Plaintiffs also allege that the Association made threats to Goode, or undertook other actions designed to harass him.  (*See* Complaint ¶¶ 59-106).  Plaintiffs do not allege that Gaia made statements or took any actions to threaten, harass, or defame Goode, his family, or GES.

Plaintiffs allege that Goode ceased being invited to certain conferences sponsored by Gaia because of "malicious postings" by the Association and conversations by Gaia.  (Complaint ¶¶ 89, 99).

Plaintiffs make little effort to connect the Association to Gaia other than by alleging that Gaia "is a strong influence on the Association."  (Complaint ¶ 110).  Plaintiffs admit that Weidner is not actually connected to Gaia.  (Complaint ¶ 110).

## <u>ARGUMENT</u>

The Complaint is a morass of conclusory pronouncements lacking in any clarity, conciseness, or simplicity.  If Plaintiffs' conclusions are stripped away, what emerges is a Complaint devoid of facts pertaining to Gaia or implicating it in many causes of action.  Even if

---

[5] Plaintiffs admit that the basis for certain allegations and an exhibit to the Complaint were obtained in discovery in the TTAB actions (Complaint ¶¶ 52-56); it is unclear whether use of that discovery material is prohibited by the Standard Protective Order applicable to TTAB proceedings, including those at issue.

the Court accepts Plaintiffs' conclusory allegations—which it is not required to, and should not, do—Plaintiffs' claims still fail as a matter of law and should be dismissed.

## I.     RULE 12 REQUIRES CLAIMS TO BE PLAUSIBLE

Under Rule 12(b)(6), a complaint should be dismissed unless it alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that allows the court to draw a reasonable inference of the defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Mere recitations of the elements of a cause of action or conclusory statements of liability do not suffice. *Twombly*, 550 U.S. at 555. Accordingly, courts disregard conclusory statements and determine whether the remaining factual allegations plausibly suggest liability. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).

Courts properly dismiss claims pursuant to 12(b) when the complaint alleges the factual basis for a defense. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

Finally, where a complaint fails to state a claim and further amendment is futile, dismissal with prejudice is appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997).

## II.     EACH OF PLAINTIFFS' CLAIMS FAILS TO STATE A CAUSE OF ACTION

After wading through the conclusory and disjointed allegations as best as possible on a claim-by-claim basis and accepting the facts alleged, the Court will conclude that Plaintiffs have failed to plausibly plead claims as required by *Twombly* and *Iqbal*. Because Plaintiffs cannot do so, and have already amended twice, Plaintiffs' claims against Gaia should be dismissed with prejudice.

A.    PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' RICO claim fails to include allegations of fundamental elements of such a claim, including adequate predicate offenses.  Accordingly, Plaintiffs' RICO claim against Gaia should be dismissed.

1.    *Required Elements of a RICO Claim*

The federal RICO statutes, 18 U.S.C. §§ 1961-1968, outlaw conducting an enterprise's affairs through a pattern of racketeering activity.  "To state a private RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Davison v. Grant Thornton LLP*, 582 F. App'x 773, 775 (10th Cir. 2014) (quotation marks and citation omitted).

Where a plaintiff fails to plead the requisite elements of a RICO claim, such claim should be dismissed.  *Davison*, 582 F. App'x at 776 (affirming dismissal of RICO claim where "Plaintiff's complaint . . . makes no attempt to identify predicate offenses under § 1961(1), and we can discern none.").

(a)    Racketeering Activity

A plaintiff alleging a RICO claim must set forth with particularity the predicate acts—the so-called "racketeering activity"—that purportedly give rise to a cause of action.  *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (dismissing RICO claims based on mail and wire fraud).  "Racketeering activity" is defined by statute to include: 1) "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . "; and, 2) acts identified in specific federal statutes.  18 U.S.C. § 1961(1); *see also Rotella v. Wood*, 528

U.S. 549, 552 (2000) (racketeering activity is "defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics").

(b)   Pattern of Activity

The RICO statute is not designed to hold liable an isolated offender. *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1544 (10th Cir. 1993).  Proof of two or more predicate acts is insufficient to prove a pattern unless there is a relationship between the predicate acts and a threat of continuing activity. *Tal v. Hogan*, 453 F.3d 1244, 1267 (10th Cir. 2006).  "Continuity of threat requires both proof of 'a series of related predicates extending over a substantial period of time,' as well as a 'showing that the predicates themselves involve a distinct threat of long-term racketeering activity . . . or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise.'" *Tal*, 453 F.3d at 1268 (quoting *Resolution Trust*, 998 F.2d at 1543).

## 2.   *Specific Standards Applicable to Predicate Offenses*

Plaintiffs' expressly allege that the requisite predicate acts of "racketeering activity" are wire fraud and mail fraud.  (Complaint ¶ 128).  Plaintiffs also appear to suggest that alleged breaches of contract/broken agreements and hiring "imposter talent" constitute "racketeering activity".  (Complaint ¶¶ 134-137).

Mail fraud requires "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Tal*, 453 F.3d at 1263 (citation omitted).  Wire fraud is similar but "require[s] that the defendant use interstate wire, radio or television communications." *Tal*, 453 F.3d at 1263 (citation omitted).

"The common thread [] among these crimes is the concept of 'fraud.'  Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury." *Id*. (citation omitted).  "Failure to adequately allege any one of the nine elements is fatal to the fraud claim." *Id*.; *but see Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 648-49 (2008) (holding reliance is not a necessary element for mail or wire fraud as enumerated in RICO statute).

"[A] plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent." *Wood v. Wells Fargo Bank, N.A.*, No. 13-cv-01731-CMA-KMT, 2013 WL 5763101, at *6 (D. Colo. Oct. 2, 2013) (citation omitted).  "General allegations that the mails were used in connection and in furtherance of the enterprise are insufficient to meet the particularity requirements of Rule 9(b)." *Id*. at *6.  A defendant must participate in each instance of alleged fraud with the specific intent to defraud.  *United States v. Washita Construction Co.*, 789 F.2d 809, 817 (10th Cir. 1986).

Neither breach of contract nor hiring "imposter talent" are valid predicate acts or "racketeering activity".  18 U.S.C. § 1961(1).

### 3.    *Plaintiffs' Allegations Lack Required Elements of a RICO Claim*

Plaintiffs fail to allege any recognized "racketeering activity" or any pattern of such activity.  Accordingly, Plaintiffs' RICO claim must be dismissed.

**RICO Elements Not Alleged: 1) racketeering activity; 2) pattern.**

Plaintiffs allege mail and wire fraud as the requisite predicate acts of "racketeering activity" to support their RICO claims.  Plaintiffs do not actually allege or reference any use of the U.S. mail.  Plaintiffs reference only six emails, two each from three Gaia employees.  Each of the identified emails fails to establish any actionable fraud.

**Fraud Elements Not Alleged: 1) representation; 2) falsity; 3) materiality; 4) intent to act; 5) ignorance of falsity; 6) right to rely; 7) injury.**

The emails Plaintiffs allege constitute wire fraud all lack multiple elements of an actionable fraudulent communication.  Instead, the emails simply describe an alleged breach of contract, not fraud or the conduct of a RICO enterprise.

Plaintiffs reference a March 27, 2018, 5:53 p.m. email from Medvedich in which she requested that Goode appear for filming.  There is no allegation of any false representation in the email, much less a material one, or one of which Plaintiffs were ignorant.  An 11:07 p.m. email from that same day purportedly informs Goode that Gaia intended to proceed with filming, but again fails to allege any false material representation or Plaintiffs' ignorance of the falsity.  These scheduling emails clearly do not constitute fraud or racketeering activity.

Plaintiffs next reference a February 25, 2016 [sic], 7:02 p.m. email from Warkins asking a colleague for information about a payment to Goode.  Plaintiffs allege that the payment amount itself was not correct, but fail to allege that there is any false material representation in the email itself.  Further, Plaintiffs allege that they "knew" there was a mistake in the amount thus, even if an actual false material representation was alleged, Plaintiffs were not ignorant of its falsity.  The final three referenced emails, two on February 26, 2018, and one on March 5, 2018, suffer from

the same problem, namely that Plaintiffs allege they knew—not were ignorant of—the purported falsity regarding the payment amount.

Moreover, Plaintiffs do not allege how these emails were part of any fraudulent scheme or give rise to a strong inference of specific fraudulent intent; or that the supposed scheme—as opposed to other Defendants' actions—caused Plaintiffs damages. The emails simply pertain to contract performance and payment.

Accordingly, Plaintiffs have failed to allege multiple elements of actionable fraud as to each alleged wire, when even failing to allege a single element is grounds for dismissal. *See Tal*, 453 F.3d at 1263. Therefore, Plaintiffs' RICO claim must be dismissed for failure to allege any predicate acts of racketeering activity.

Without any racketeering activity, Plaintiffs have thus failed to plausibly plead a pattern of racketeering activity. Plaintiffs seem to believe that any actions alleged in the Complaint suffice to plausibly allege a RICO violation. But a pattern of activity, in the RICO context, requires more than just a series of actions—Plaintiffs must also plausibly allege that there are valid predicate acts, a relationship between those predicate acts, and a threat of continuing activity, which they cannot do beyond mere conclusory statements.

For all of the above reasons, Plaintiffs' RICO claim against Gaia should be dismissed with prejudice.

### B.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' breach of contract claim appears to be based on a combination of written agreements and a purported oral agreement. Both claims are inadequately pleaded and should be dismissed.

In Colorado, a party claiming breach of contract must prove: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted). A complaint alleging breach of contract must adequately plead all four elements. *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1257 (W.D. Okla. 2012) (dismissing breach of contract claim because factually sparse allegations failed to meet *Twombly* standard).

<u>**Breach of Contract Elements Not Alleged: 1) existence of a contract; 2) performance by plaintiff; 3) breach.**</u>

### 1.   *Plaintiffs' Oral Contract Claim is Barred and Inadequately Pleaded*

Plaintiffs' claim for breach of oral contract should be dismissed because it is barred by a merger clause in the 2016 Contract and it fails to allege with sufficient definiteness the purported essential terms.

Plaintiffs rely on a purported oral contract for their claim of $150,000 in stock options, as these "stock options" do not appear in any written contract between the parties. Plaintiffs allege that the purported stock options were discussed by the parties prior to entering into written contracts, but admit that the "agreement" was not in writing. However, Plaintiffs allege that the purported stock options were again agreed to subsequent to the 2016 Contract.[6]

---

[6] In earlier pleadings, Plaintiffs alleged that the oral agreement with Gaia was made *prior* to entering into a written agreement. The timing of the purported agreement was altered by Plaintiffs in subsequent pleadings, perhaps to avoid the merger clause. Though Plaintiffs may not be precluded from amending factual allegations to be wholly inconsistent with previous allegations, the amendment speaks to the plausibility of the allegations as a whole.

(a)    <u>The Merger Clause in the Parties' 2016 Contract Precludes the Purported Oral Contract</u>

The merger clause in the parties' written 2016 Contract plainly supersedes and merges all prior negotiations and representations, and bars parol evidence of an oral contract inconsistent with its terms.  In the presence of the merger clause, Plaintiffs cannot plausibly claim breach of oral contract based on allegations of pre-contractual oral agreements.

The 2016 Contract may be considered on this Motion because it is referenced in and integral to the Complaint.  Consideration of the 2016 Contract makes clear that Plaintiffs cannot plausibly plead a breach of oral contract claim based on pre-contract oral negotiations.

The 2016 Contract provides: "[t]his Agreement contains the entire agreement of the parties and all previous agreements, warranties, and representations, if any, are merged herein." (2016 Contract, ¶ 8).  Accordingly, the 2016 Contract was an integrated agreement that merged the parties' prior discussions. *See Harmon v. Waugh*, 414 P.2d 119, 121 (Colo. 1966).[7]

Parol evidence contradicting the contract's terms is inadmissible where an agreement is integrated.  *See Monus v. Colorado Baseball 1993, Inc.*, No. 95-1099, 1996 U.S. App. LEXIS 32995, at *40-44 (10th Cir. Dec. 17, 1996) (affirming exclusion of evidence of oral agreement under parol evidence rule where writing contained merger clause and different terms).

The 2016 Contract plainly and unambiguously merges all prior representations, thus barring the introduction of parol evidence contradicting its terms.  Without parol evidence, Plaintiffs cannot plausibly allege breach of contract, including that an oral contract exists.

---

[7] Colorado law governs the admissibility of parol evidence here.  The 2016 Contract provides it is to be construed in accordance with Colorado law; the parol evidence rule is a rule of substantive law.  *In re Continental Resources Corp.*, 799 F.2d 622, 626 (10th Cir. 1986). Accordingly, the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), requires the application of Colorado law. *See Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995).

(b)     The Purported Oral Contract is Not Sufficiently Definite

Even if an alleged oral agreement entered after the 2016 Contract is not barred by the merger clause, such agreement is not sufficiently definite to support a plausible claim for breach of contract.

For a valid contract to exist that may support a breach claim, a court must find that all "essential terms of the contract [have been] established by competent evidence and shown to be definite, certain, clear, and unambiguous." *Mestas v. Martini*, 155 P.2d 161, 164 (Colo. 1944). The definiteness required of an oral contract is the same as required of a written contract. *Id*. At 165.

Plaintiffs have not alleged the oral agreement's essential terms.  Plaintiffs alleged simply that they are due $150,000 in stock options, without providing any specifics that would be required of a written contract, including: the option price; the time to execute; the class of stock; and the vesting date.  It would thus be impossible for the Court to enforce the purported vague and conclusory oral "agreement" or to determine damages.

Because it is precluded by the merger clause in the 2016 Contract and lacks definiteness, Plaintiffs' claim for breach of oral contract against Gaia must be dismissed with prejudice.

## 2.     *Plaintiffs' Breach of Written Contract Claim is Inadequately Pleaded*

Plaintiffs' claim for breach of the 2016 Contract is also inadequately pleaded and does not plausibly—rather than merely possibly—suggest there was any breach.

Plaintiffs allege breaches regarding fees and royalties only in conclusory terms.  Notably, Plaintiffs fail to plead any facts regarding for what period of time payment was not made, or even an approximation of the damages suffered as a result of the purported breach.  Further,

Plaintiffs allege that Gaia failed to pay a performance bonus **and/or** "Ambassador Program" fees suggesting that Plaintiffs are merely guessing as to whether there was a breach at all of either category.  Indeed, though the 2016 Contract provides that Plaintiffs may track information regarding subscribers relevant to the "Ambassador Program" fees, Plaintiffs still pleaded no facts in support.  Likewise, as to purported royalties due, Plaintiffs have not alleged conditions precedent, namely that there were any license payments due after expenses.  Plaintiffs' factually sparse allegations fail to meet the *Twombly* standard and mandate dismissal.

### C.   PLAINTIFFS' TRADEMARK CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' various trademark claims are all based on identical conclusory allegations which fail to support plausibility.  Accordingly, Plaintiffs' trademark claims should be dismissed.

#### 1.   *Federal Trademark Infringement and Unfair Competition Claims*

Plaintiffs' claims for trademark infringement and unfair competition fail for a variety of reasons, including Plaintiffs' failure to allege "use".

Plaintiffs assert several trademark infringement claims under the Lanham Act, including trademark infringement and unfair competition.  Courts address these claims "together because they have virtually identical elements and both require 'commercial use.'"  *Cleary Building Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)).  The elements of a Lanham Act claim for infringement are: "(1) that the plaintiff has a protectable interest in the mark, (2) that the defendant has used an identical or

similar mark in commerce, and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013).

"A plausible claim for relief for misappropriating a trademark must allege sufficient facts for the defendants and the court to identify the mark at issue and at least some instances of misuse." *RV Horizons, Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 WL 6052416, at *8 (D. Colo. Nov. 15, 2019). Moreover, "in order to survive a motion to dismiss, a plaintiff must plead facts sufficient to state a plausible claim that Defendant used Plaintiff's mark 'in connection with any goods or services.'" *Cleary*, 674 F. Supp. 2d at 1267 (citing *Utah Lighthouse*, 527 F.3d at 1051-52). "This is commonly described as the commercial use requirement." *Cleary*, 674 F. Supp. 2d at 1267.

As to the purported trademarks not registered with the USPTO, to establish they have a protectable mark Plaintiffs must allege their marks are inherently distinctive or have acquired distinctiveness through secondary meaning. *RV Horizons*, 2019 WL 6052416, at *5. Descriptive marks are only entitled to protection if they have acquired secondary meaning. *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-KLM, 2008 WL 878985, at *3 (D. Colo. Mar. 28, 2008).

### Infringement Elements Not Alleged: 1) infringing use in commerce; 2) likelihood of confusion; 3) distinctiveness.

Plaintiffs' conclusory and vague allegations fail to allege plausibly that Gaia has used an infringing mark in commerce and that consumers are likely to be confused. Indeed, Plaintiffs have alleged rights in four marks but have not alleged which mark Gaia purportedly infringed, or any details about when such infringement purportedly occurred, by whom, and in what context. Likewise, Plaintiffs do not allege that Gaia used an infringing mark "in commerce" as that term

is defined and understood.  Further, to the extent Plaintiffs' claims are based on their unregistered marks that are merely descriptive of supernatural phenomena, they have failed to allege facts—not mere conclusions—that such marks are protectable and have acquired distinctiveness through secondary meaning.

Plaintiffs have pleaded only conclusory and vague allegations about their purported trademarks and Gaia's alleged infringing use thereof.  Without pleading specific facts, Plaintiffs' allegations fail to establish a plausible claim for infringement or unfair competition.  As such, Plaintiffs' claims must be dismissed.

(a)     Fair Use is a Complete Defense to Plaintiffs' Claims

Plaintiffs' trademark claims are also barred by the doctrine of fair use.

The "classic" fair use defense provides that no infringement occurs when a defendant uses marks descriptively, fairly, and in good faith.  *Health Grades, Inc. v. Robert Wood Johnson University Hospital, Inc.*, 634 F. Supp. 2d 1226, 1240 (D. Colo. 2009); *see also* 15 U.S.C. § 1115(b)(4).

Fair use is an affirmative defense to a trademark infringement claim that may be considered on a motion to dismiss when the defense's elements are apparent from the complaint. *See Bell v. Magna Times, LLC*, No. 2:18CV497DAK, 2019 WL 1896579, at *2 (D. Utah Apr. 29, 2019).  Raising fair use on a motion to dismiss is a way of establishing that plaintiff has failed to state a claim upon which relief can be granted.  *See id.*  A party asserting trademark infringement has the burden of proving likelihood of confusion as part of its *prima facie* case, and the fair use defense calls that element into question.  *Bell*, 2019 WL 1896579, at *3 (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118, 124 (2004)).

Plaintiffs' allegations establish that Plaintiffs do not have a plausible claim for trademark infringement, including because of the doctrine of fair use.  Plaintiffs admit that the terms "Blue Avians" and "20 and Back" identify and are descriptive of factual phenomena about purported alien beings and government programs.  The mere reporting and commentary by others during episodes of CD about these phenomena is nothing more than fair use.

Plaintiffs' assertions that Google and other search engines associated Gaia content with Plaintiffs' purported terms have no bearing on allegations against Gaia and do not establish "use" in any trademark context.

Because Plaintiffs cannot establish any improper "use" by Gaia of Plaintiffs' purported trademarks, Plaintiffs' claims are barred and must be dismissed with prejudice as to Gaia.

### 2.      *False Designation of Origin*

Plaintiffs' claim for false designation of origin is just as deficiently pleaded—and thus, implausible—as its infringement and unfair competition claims.

A claim for false designation of origin pursuant to 15 U.S.C. § 1125 may be brought against a party who uses in commerce a designation that falsely identifies or represents the origin, sponsorship, or approval of goods.  *See* 15 U.S.C. § 1125(a)(1).

Among other elements such as likelihood of confusion, "[t]o prevail on a claim of false designation of origin, the moving party must show: (1) defendants' designation of the source of a product was false, (2) defendants caused goods so identified to enter commerce, and (3) defendants' false statement is likely to damage the moving party."  *Durango Herald, Inc. v. Hugh A. Riddle & Riddle Directories, Inc.*, 719 F. Supp. 941, 946 (D. Colo. 1988).

**False Designation Elements Not Alleged: 1) false designations; 2) likelihood of confusion.**

Plaintiffs have not alleged any facts—rather than just conclusory statements—about what designations Gaia used in commerce on any products, how such designations were false, or a likelihood of confusion.  Without such allegations, Gaia cannot meaningfully respond to the allegations and Plaintiffs' claim.  Accordingly, Plaintiffs' claim for false designation of origin must be dismissed.

### 3. *Trademark Infringement Pursuant to Colorado Common Law*

Plaintiffs' claim for trademark infringement pursuant to Colorado common law is essentially the same as its claims under federal law and should be dismissed for the same reasons.

An analysis of trademark infringement under Colorado common law is nearly identical to an analysis under the Lanham Act.  *Cleary*, 674 F. Supp. 2d at 1270 (citing *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004)).  "Among other things, a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion."  *Cleary*, 674 F. Supp. 2d at 1270.

**Infringement Elements Not Alleged: 1) infringing use in commerce; 2) likelihood of confusion.**

As with its federal claims, Plaintiffs' conclusory and vague allegations fail to plausibly support a Colorado claim because Plaintiffs have not alleged Gaia's use in commerce of an infringing mark or anything that would support a likelihood of confusion.  Plaintiffs have not alleged specifically which of their marks was purportedly infringed, or the details of when and how such infringement occurred.  Moreover, the allegations establish as a matter of law that any purported use by Gaia constitutes fair use, another bar to Plaintiffs' claim.

Accordingly, as with its federal trademark claims, Plaintiffs' claim for infringement pursuant to Colorado common law should be dismissed.

### 4.      Declaration of Validity

It is unclear exactly what Plaintiffs are seeking from the Court with respect to their final trademark claim seeking a declaration of validity for the purported marks "20 and Back" and "Blue Avians".  Regardless, any discernible formulation of their request fails to plausibly state a claim that the Court may entertain.  Alternatively, the Court should use its discretion to decline to exercise jurisdiction over Plaintiffs' claim.

If Plaintiffs are seeking a declaration of validity under common law for the marks "20 and Back" and "Blue Avians", they have not pleaded allegations that plausibly entitle them to relief, and therefore the claim should be dismissed.

A plaintiff, when asserting rights in unregistered marks, must establish the common law validity of such marks to maintain an action for infringement.  *USA Network v. Gannett Co.*, 584 F. Supp. 195, 198 (D. Colo. 1984).  Valid marks are created when a designation identifies one source and distinguishes it from other sources.  *Go Pro, Ltd. v. River Graphics, Inc.*, No. 01-cv-600-JLK, 2006 WL 898147, at *3 (D. Colo. Apr. 5, 2006).  "If the designation does not perform the job of identification, then it is not protectible [sic] as a trademark."  *Id.* at *3.

**Validity Elements Not Alleged: 1) use in commerce; 2) as a distinguishing mark.**

Plaintiffs have not alleged specific facts—rather than vague conclusions—to plausibly establish that Plaintiffs have used "20 and Back" or "Blue Avians" by placing the marks on goods that are sold in commerce, or in the sale or advertising of any services rendered in commerce.  *See* 15 U.S.C. § 1127 (defining "use in commerce").  Moreover, allegations of use in

commerce alone are not sufficient to allege plausibly that a declaration of validity is proper; Plaintiffs also must allege that the purported marks distinguish Plaintiffs' goods or services from other sources, which they have not done and cannot do concerning terms that are merely descriptive of factual phenomena.

If Plaintiffs are seeking registration of their marks on the Principal Register, in lieu of the application process with the USPTO and the proceeding before the TTAB, such relief is outside the jurisdiction of the Court.  Registration of a mark on the Principal Register is governed by the USPTO.  *See* 15 U.S.C. §§1051–1072.  While registration of a mark on the Principal Register constitutes *prima facie* evidence of the validity, 15 U.S.C. § 1115, registration does much more than that; a declaration of validity would not constitute registration or thereby moot the TTAB proceedings.  Because those proceedings would necessarily continue, there is no ripe dispute regarding validity alone, so this Court may not have jurisdiction to determine validity.

Even if the Court has jurisdiction, the Court should decline to exercise it here.  The Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  Accordingly, it is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952); *see also Green v. Mansour*, 474 U.S. 64, 72 (1985).

A court is free to exercise such broad discretion at the outset of a case because, if it "determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton*, 515 U.S. at 288.

Here, a declaration of validity would not moot the TTAB proceedings between Gaia and Plaintiffs and would have no useful purpose.  Further, deference to a parallel concurrent proceeding is within the sound exercise of a court's judgment for denying a claim for declaratory relief.  *See id*., at 290.

Moreover, the basis for Plaintiffs' request is entirely specious.  Plaintiffs assert they are entitled to a declaration merely because Gaia has not entertained Plaintiffs' settlement demands and because of on-going discovery disputes.  Plaintiffs' claim for a declaratory judgment before this Court thus seems to be a mere attempt to avoid litigating and unfavorable rulings in the TTAB.

Plaintiffs' allegations purportedly in support of a claim for declaratory relief are deficient and fail to plausibly show that Plaintiffs are entitled to relief.  As such, Plaintiffs' claim for a declaration of validity should be dismissed with prejudice.

### D.      PLAINTIFFS' OTHER TORT CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

Even viewing Plaintiffs' allegations in a favorable light, the remaining tort claims have little or no connection to Gaia.  Nevertheless, because Plaintiffs have used group pleading to assert many claims against all Defendants, Gaia addresses each herein.  As detailed below, each claim fails as a matter of law and should be dismissed as to Gaia.

### 1.      *Colorado Consumer Protection Act*

Plaintiffs' claim for violation of the Colorado Consumer Protection Act (the "CCPA") fails as a matter of law because of the lack of specific pleading and failure to plead necessary elements.  Plaintiffs' claim should be dismissed.

"To state a claim for relief under the []CCPA[], Colo. Rev. Stat. § 6-1-105, a plaintiff must plead facts sufficient to show that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury." *Cleary*, 674 F. Supp. 2d at 1270.

To satisfy the third element, the challenged practice must *significantly* impact the public. *Brodeur v. American Home Assurance Co.*, 169 P.3d 139, 155-56 (Colo. 2007). It is not sufficient that a business is public or that the industry may affect the public interest. *See id*.

Courts in the District of Colorado apply the heightened pleading standards of Rule 9(b) to claims under the CCPA. *HealthONE of Denver, Inc. v. UnitedHealth Group, Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011). Rule 9(b) requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citation omitted).

### CCPA Elements Not Alleged: 1) unfair trade practice; 2) significant public impact.

Plaintiffs' vague and conclusory allegations are wholly deficient under Rule 9(b)'s heightened standards. Plaintiffs have not alleged what they assert to be the false representation, the date when that representation was made, the identity of the individual making the representation, or any direct consequences of such allegations.

Such failures make it difficult to establish any element of a violation, but even ignoring that, there are no allegations that Gaia, specifically, has done anything that constitutes an unfair or deceptive trade practice. *See* C.R.S. § 6-1-105. Plaintiffs' claim appears to be based—at least with respect to Gaia—on allegations that certain individuals as part of their personal narratives and opinions mentioned words and phrases on CD that Plaintiffs assert are trademarks. Even if that were true, the mere mention or discussion of concepts cannot constitute passing off Plaintiffs' intellectual property as Gaia's. Moreover, Plaintiffs have not, and cannot, plausibly plead allegations that the above alleged practice *significantly* impacts the public. At most, Plaintiffs are alleging that they, not the public at large, were damaged in some undefined way.

Plaintiffs' failure to plausibly and adequately plead a violation of the CCPA mandates dismissal.

### 2.    *Colorado Common Law Unfair Competition*

Plaintiffs' claim for unfair competition does not include allegations that could plausibly state a claim against Gaia, and as such, must be dismissed.

The tort of unfair competition does not encompass any and all alleged improper conduct, but only a narrow set of conduct regarding use of trademarks or trade names. *Netquote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1133 (D. Colo. 2007). Unfair competition with respect to a trademark requires two elements to be present: "[t]he name must have acquired a secondary meaning or significance that identifies the plaintiff; the defendant must have unfairly used the name or a simulation of it against the plaintiff." *American Furniture Co. v. American Furniture Co.*, 261 P.2d 163, 166 (1953) (citation omitted).

24

**Unfair Competition Elements Not Alleged: 1) secondary meaning; 2) unfair use.**

Plaintiffs have alleged only conclusorily that their purported marks have acquired secondary meaning, with no facts that could support such a conclusion.  Moreover, the only facts alleged about Gaia's purported "use" of Plaintiffs' marks are that individuals uttered the descriptive "marks" on CD.  This type of "use" cannot constitute an action taken by Gaia to "unfairly" use the marks against Plaintiffs.

Because Plaintiffs' allegations do not fit within the narrow scope of the tort of unfair competition the claim must be dismissed.

### 3.    *Fraudulent Misrepresentation*

Plaintiffs' claim for fraudulent misrepresentation must be dismissed because a fraud claim cannot be based on a failure to perform contractual duties and nevertheless is barred by the economic loss rule.

"Fraud cannot be predicated upon the mere non-performance of a promise or contractual obligation, or upon failure to fulfill an agreement to do something at a future time."  *State Bank of Wiley v. States*, 723 P.2d 159, 160 (Colo. App. 1986) (internal citation omitted).  The economic loss rule holds that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).

"Under Colorado law, for a duty to be 'independent' of a contract, and thus actionable in tort notwithstanding the economic-loss rule, two conditions must be met. First, the duty must arise from a source other than the relevant contract.  Second, the duty must not be a duty also

imposed by the contract." *Haynes Trane Service Agency v. American Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (internal citations omitted); *see also Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 295 (Colo. App. 2009) (affirming that fraud claims were barred by the economic loss doctrine because "whether a party negligently breaches a contractual duty or fraudulently does so, the duty allegedly breached is not independent of the contract.").

**Misrepresentation Elements Not Alleged: 1) independent duty; 2) not imposed by contract.**

Here, Plaintiffs allege as the basis of their fraud claim that they were to be paid by Gaia for services performed, and that they were not. Such an alleged contract breach does not constitute fraud. Payment for Plaintiffs' services is plainly the subject of the 2016 Contract. Moreover, Plaintiffs do not—and cannot—allege that there was any independent duty to pay them for the alleged categories of non-payment (*i.e.*, stock options, bonuses, and a percentage of revenues earned), as such a duty could only arise by contract. Plaintiffs therefore cannot avoid application of the economic loss rule, which bars their claim for fraudulent misrepresentation. Accordingly, Plaintiffs' claim should be dismissed with prejudice.

### 4.      *Libel and Slander*

Plaintiffs' claims for libel and slander are both subject to the same standards, and must be dismissed for the same reasons—namely, that Plaintiffs have not alleged any defamatory statements made by Gaia, nor any special damages.

Colorado recognizes the tort of defamation, which is actionable both as libel (written statements) and slander (oral statements). *See Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994); *Williams v. District Court*, 866 P.2d 908, 914 n.1 (Colo. 1993). "Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur

injury or damage." *Keohane*, 882 P.2d at 1297.  The elements of a defamation claim—whether libel or slander—are: (1) a defamatory statement about plaintiff by defendant; (2) published to a third party; (3) with the publisher's fault amounting to at least negligence; and (4) special damages or in certain instances presumed damages.  *Stump v. Gates*, 777 F. Supp. 808, 825 (D. Colo. 1991).

Alleged defamatory statements are characterized either as *per se* or *per quod*.  *Id*.  Only defamation *per se* is actionable without allegations of actual damages.  *Id*.  *Per se* defamatory statements must include "defamatory words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious."  *Lininger v. Knight*, 226 P.2d 809, 813 (Colo. 1951); *see also Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1387 (Colo. App. 1986) (to be defamatory *per se* a statement must "require[] no extrinsic evidence to show how it might be taken as concerning the plaintiff or defaming him in his trade or business.").

Statements that do not carry a defamatory imputation on their face are *per quod* and require special damages to be pleaded.  *Stump*, 777 F. Supp. at 825.  "'Special damages' are limited to specific monetary losses that a plaintiff incurs because of the defamatory publication", and "do not include injuries to a plaintiff's reputation or feelings which do not result in monetary loss."  *Id*. at 826.

**Defamation Elements Not Alleged: 1) defamatory statement by Gaia; 2) special damages.**

Here Plaintiffs' claims—whether libel or slander—fail to allege that Gaia made any defamatory statement about Plaintiffs.  Plaintiffs cannot point to a single statement by Gaia about Plaintiffs that holds either of them "up to contempt or ridicule".  Further, in the absence of

alleging any statement "on [its] face, and without the aid of intrinsic proof, [that can] be unmistakably recognized as injurious", Plaintiffs are required to plead special damages—specific monetary losses, not merely hurt feelings—which they have utterly failed to do.

Plaintiffs' defamation claims against Gaia must be dismissed.

### 5.   *Tortious Interference with a Business Expectancy*

Interpreting Plaintiffs' claim for "tortious interference with a business expectancy" in the light most favorable to Plaintiffs, they presumably mean intentional interference with prospective business relations, a tort recognized in Colorado.  Such a claim may be brought when defendant intentionally and improperly interferes with plaintiff's prospective contractual relation, if the interference consists of inducing or otherwise causing a third person not to enter into or continue the relation.  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995).  One key element of such a claim is that any interference was made "improperly" by the use of "wrongful means".  *Id*. at 501.  "Wrongful means" includes the use of physical violence, fraud, civil suits and criminal prosecutions, but not persuasion or economic pressure.  *Id*. at 502 (no use of wrongful means where there were no allegations of physical violence, fraud, or prosecution).  A claim for intentional interference with prospective business relations fails when it is brought against a competitor simply for competing.  *Id*.

**Interference Elements Not Alleged: 1) "improper interference; 2) lack of competition.**

Plaintiffs allege only that Weidner and Gaia employees "spoke to the heads of [conferences] and told them not to invite Goode."  This does not constitute "improper" interference, because it does not involve the use of physical violence, fraud, or prosecution, none of which Plaintiffs allege.  Mere persuasion does not constitute engaging in "wrongful means".

28

Finally, Plaintiffs assert that after Goode and Gaia ceased working together that Gaia was competing with him; that competition is another reason why any alleged actions regarding Goode's participation at conferences cannot rise to the tort of interference.

Accordingly, Plaintiffs' claim for intentional interference with prospective business relations must be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, Gaia respectfully requests that the Court dismiss the Complaint and all claims therein with prejudice and without leave to re-plead, together with such other and further relief as the Court deems just and proper.  The Court should also impose sanctions on Plaintiffs and their counsel for failure to file in good faith the Complaint and certain claims therein.

Dated: January 12, 2021        **DAVIS & GILBERT LLP**

By:   */s/ Daniel A. Dingerson*
        Daniel A. Dingerson
        Ina B. Scher
        ddingerson@dglaw.com

1675 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant Gaia, Inc.*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as amended by the Court's September 22, 2020, Order providing that Gaia, Inc. may file a motion to dismiss not to exceed 8,000 words.  For purposes of this certification, the word count includes footnotes but excludes the case caption, tables of contents and authority (which are provided for the Court's convenience), signature block, this Certificate of Compliance, the Certificate of Service, and the Certificate of Conferral.

<u>    /s/ Daniel A. Dingerson    </u>
Daniel A. Dingerson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2021, I caused a copy of the foregoing Gaia, Inc.'s

Motion to Dismiss Plaintiffs' Second Amended Complaint and Brief in Support to be served on

all other parties who have appeared in this matter, other than Cliff High, by filing it on the

Court's ECF system, and, by agreement with Cliff High, serving it on him via email.


                                    /s/ Daniel A. Dingerson
                                    Daniel A. Dingerson

## **CERTIFICATE OF CONFERRAL**

I hereby certify that pursuant to Judge Domenico's Practice Standard III(D)(1), on September 21, 2020, I conferred via telephone with Plaintiffs' counsel about the claims in the Second Amended Complaint, including discussion of the arguments anticipated to be included in this motion to dismiss.  I hereby further certify that I contacted Plaintiffs' counsel via email on January 4, 2021, to confirm the prior conferral and to inquire whether any further conferral efforts were necessary.  I hereby further certify that I conferred via telephone with Plaintiffs' counsel on previous occasions about previous versions of the complaint, which included many of the same allegations and claims as the Second Amended Complaint.

　　　/s/ Daniel A. Dingerson　　
　　　Daniel A. Dingerson