IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA RYSAVY,
BRAD WARKINS, and KIERSTEN MEDVEDICH

Defendants.

---

## DEFENDANT JAY WEIDNER'S MOTION TO DISMISS

---

**COMES NOW,** Jay Weidner, through undersigned counsel, and hereby submits this *Motion to Dismiss*, and in support provides the following:

### PRELIMINARY STATEMENT

Based on his antagonistic over-the-internet relationship with other defendants, which arose because of his controversial and public philosophy about his alleged space explorations, Mr. Goode and his company have upped the ante and attempted to add a sense of legitimacy to their internet crusade by filing a series of complaints containing numerous claims asserted against Mr. Goode's former employer and current internet critics. However, the factual allegations in all of Plaintiffs' complaints are more appropriate for a social media tirade than this Court's docket and do not support the excessive legal claims alleged.

After initiating this lawsuit in March 2020 with a fifty-three-page Complaint that included sixteen disparate claims (ECF No. 1), Plaintiffs received the instructional benefit of

various motions to dismiss (ECF Nos. 17, 23, 26) and filed their First Amended Complaint ("FAC")—which added five pages, another claim, and three more defendants (ECF No. 36). After some defendants again filed motions to dismiss (ECF No. 42, 43), Plaintiffs requested to amend their Complaint again (ECF No. 61)—their third bite at the apple—rendering the Second Amended Complaint ("SAC") the operative complaint (ECF No. 110, 111).

However, Plaintiffs' SAC fails for the same reasons their previous complaints failed. Despite receiving the benefit of extensive conferrals, Plaintiffs' SAC failed to address significant legal and factual deficiencies. The claims are still factually unsupported and are still inadequately pled—especially as to Mr. Weidner. This Court must therefore dismiss the claims asserted against Mr. Weidner with prejudice.

Moreover, justice requires that Plaintiffs be barred from a fourth bite at the apple. The law does not condone Plaintiffs' multiple attempts to make defendants wade through the quagmire of unsupported theories that are largely a result of Plaintiffs' frustration with their own internet fame and its attendant controversy. *See, e.g.*, SAC, ¶¶ 60, 67–68, 113 (expressing frustration with defendants "tagging" Mr. Goode in social media, using hashtags with Mr. Goode's name, and daring Mr. Goode to appear on their social media channels—all common internet practices). Plaintiffs do not get repeated attempts to fix their mess. This must end.

Plaintiffs' claims lack substantial justification—which mandates an award of attorney's fees for defendants being required to respond to such pleadings. *See* § 13-17-102(2), (4); *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1217–19 (10th Cir. 2010) (noting that 13-17-102 "clearly may apply to claims brought in the District of Colorado"); § 13-17-201, C.R.S.

This Court should therefore award Mr. Weidner attorney's fees and costs incurred in being required to wade through various iterations of Plaintiffs' complaints, including the forty-

two pages of "factual allegations" and no fewer than thirteen unsupported claims found in the SAC.[1]

### RELEVANT FACTUAL ALLEGATIONS[2] AGAINST MR. WEIDNER

According to Plaintiffs, Mr. Goode is a public media figure who became employed by Gaia—a media company where Mr. Weidner was also employed. *SAC*, ¶¶ 17, 22. Plaintiffs allege that Mr. Weidner would scream and curse at others while employed at Gaia. *SAC*, ¶ 33. Mr. Goode reported this behavior to Gaia, and Mr. Weidner was allegedly fired for these outbursts. *SAC*, ¶¶ 34–35. Even so, Plaintiffs admit that Mr. Goode worked for Gaia for about three years. *SAC*, ¶ 36.

Sometime after Mr. Goode left Gaia's employment, he got into various online disputes with other defendants, including Mr. Weidner, whereby these defendants would "tag" Mr. Goode in their social media posts. *SAC*, ¶¶ 58, 67. Plaintiffs claim that Mr. Weidner divulged Mr. Goode's private information (without elaborating what that private information was), "dared" Mr. Goode to appear on Mr. Weidner's YouTube show, and allegedly disparaged Mr. Goode— again without identifying the specific nature of that disparagement—in posts on various social media platforms. *See SAC*, ¶¶ 59–70.

Plaintiffs also claim that Mr. Goode was "blacklisted from major ufology events sponsored by Gaia, as well as by two leading ufology shows" due, in part, to Mr. Weidner's

---

[1] Although the claims in the SAC number up to XVII (seventeen), the claims are not numbered correctly because Claims X–XII and Claim XVI are missing from the SAC. However, for the sake of clarity, Mr. Weidner will refer to the claims as they are numbered in SAC.

[2] Because this Court must accept the factual allegations in the SAC as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), this Motion to Dismiss does the same. However, for all other purposes, Mr. Weidner denies the factual allegations and mischaracterizations rife throughout the SAC.

influence.  *SAC*, ¶ 89.   To support this claim, Plaintiffs allege only that "[u]pon information and belief," Mr. Weidner "spoke to the heads of [the conferences] and told them not to invite Goode to their Conferences."  *SAC*, ¶ 99.

To tie this together, Plaintiffs allege that Mr. Weidner's and the other defendants' social media interactions gave rise to some sort of "association"—supporting this assertion by alleging "a reasonable suspicion there is an underlying motivation to remove Goode from his livelihood by creating a lengthy campaign of innuendo, possible presentation of doctored evidence and continual rehash of prior statements[.]"  *SAC*, ¶ 105.  Without any elaboration, Plaintiffs conclude that the Association's endeavor "rises to the level of multiple criminal acts including stalking, harassment, mail and wire fraud and various obstructions of justice such as witness tampering."  *SAC*, ¶ 109.

Based on the above, Plaintiffs asserted ten claims against Mr. Weidner.  *SAC*, ¶¶ 141–208.

## LEGAL STANDARD

Two legal standards apply at this point: Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Under both Rules, Plaintiffs' SAC must be dismissed.

Rule 8(a) requires a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  F.R.C.P. 8(a).  Rule 8's purpose is to "requir[e] plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted."  *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  Failing to provide a "short and plain statement" in the complaint is a sufficient reason to dismiss the complaint.  *Id.* at 1147–48 (stating it is not the court's "job to stitch together cognizable claims for relief from the wholly deficient pleading that [plaintiff] filed").  Here, this Court must

dismiss the SAC because it is "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs." *Id.* at 1148 (quoting *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)).

Under Rule 12(b)(6) a complaint must be dismissed unless it alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Although courts presume all factual allegations in the complaint are true, they need not accept conclusory allegations without supporting factual averments, nor legal conclusions. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Iqbal*, 556 U.S. at 678.

Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Similarly, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotations marks and citations omitted).  Rather, "*factual* allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Finally, notwithstanding the numerous exhibits attached to the SAC, "the sufficiency of the complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010)).

<u>**ARGUMENT**</u>

Plaintiffs' SAC asserts ten claims against Mr. Weidner.  However, the SAC fails under both Rule 8 and Rule 12(b)(6) and should therefore be dismissed with prejudice as to Mr. Weidner.

## I.  Summary of Arguments

After twenty-six pages of convoluted narrative detailing what largely amounts to run-of-the-mill internet interactions, Plaintiffs allege thirteen claims against eight defendants.  Eight claims are broadly alleged against "all defendants" regardless of whether they apply, are factually supported, or are sufficiently pled as to all defendants.  Plaintiffs' SAC therefore violates Rule 8 and should be dismissed.

Plaintiffs' SAC is likewise subject to dismissal under Rule 12(b)(6).  Plaintiffs' claims against Mr. Weidner are plainly inapplicable to him, unsupported by the factual allegations, or fail to state plausible claims.  For many of the claims, Plaintiffs' do not even bother to provide factual support—instead, they simply recite the bare legal elements of the claim, which "do[es] not suffice."  *Iqbal*, 566 U.S. at 678.  These claims must therefore be dismissed.

Because the claims are brought in bad faith, do not apply to Mr. Weidner, and are utterly unsupported by the factual allegations despite Plaintiffs having *multiple* chances to correct such deficiencies, Plaintiffs' claims are substantially unjustified.  § 13-17-102(4), C.R.S. (attorney's fees awarded for substantially unjustified claims).  Thus, Mr. Weidner respectfully requests that this Court award him attorney's fees and costs incurred in defending against these bad-faith, frivolous, groundless, and meritless claims.  *See id.*; *see also* § 13-17-201, C.R.S (fees mandatory when court dismisses a tort action under Rule 12(b)).

## II.  Plaintiffs' SAC Fails to Comply with Rule 8

Plaintiffs' convoluted SAC fails to comply with even the basic Rule 8 requirement that pleadings provide a short and plain statement showing Plaintiffs are entitled to relief.  F.C.R.P. 8. Instead, Plaintiffs' SAC is a forty-two-page tale that fails to distinguish between numerous defendants and indolently asserts many claims against "all Defendants" when such claims are nonsensical and unsupported by any factual allegations specific to any particular defendant. *Compare Robbins v. Okla. ex rel Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (dismissing claims because "collective term 'Defendants' [rendered it] impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed") *with SAC*, ¶¶ 122–40 (RICO claim *only* against Gaia Defendants), ¶¶ 141–43 (asserting conspiracy-based RICO claim against Mr. Weidner based on alleged conduct "as more fully described in Count One"—despite him not being named in Count I, nor any factual allegations in Count I specific to him), ¶¶ 144–57 (Claim III asserted against "All Defendants" with no specific allegations as to Mr. Weidner), ¶¶ 158–61 (Claim IV, same), ¶¶ 162–65 (Claim V, same), ¶¶ 166–72 (Claim VI, same), ¶¶ 173–81 (Claim VII, same), ¶¶ 195–99 (Claim XIII, same), ¶¶ 200–04 (Claim XIV, same), ¶¶ 205–08 (Claim XV, same).

To make matters more confusing, Plaintiffs also incorporate by reference the entire SAC in each claim regardless of the applicability of certain factual allegations—another tactic that renders it impossible for defendants to ascertain what alleged factual grounds apply to each claim.  *E.g.*, *SAC*, ¶¶ 122, 141, 144, 158, 162, 166, 173, 182, 189, 195, 200, 205, 209.  Because it is Plaintiffs' burden to "provide fair notice of the grounds for the claims made against each of the defendants," *Robbins*, 519 F.3d at 1250, and Plaintiffs failed to do so by asserting claims against "All Defendants" without specific factual grounds for any single defendant and by reasserting

the entirety of the SAC into each claim regardless of applicability, this Court should dismiss Plaintiffs' SAC.  *Mann*, 477 F.3d at 1148.

### III. Plaintiffs' Claims Fail to State a Claim Under Rule 12(b)(6)

Separately, this Court must dismiss the ten claims Plaintiffs assert against Mr. Weidner because Plaintiffs' SAC fails under Rule 12(b)(6) to state a *single* claim upon which relief can be granted.  Indeed, Plaintiffs fail to specify what factual allegations purportedly support their claims, and Plaintiffs' claims consist almost entirely of bare legal conclusions and conclusory statements—which are not entitled to the presumption of truth and "do not suffice."  *Iqbal*, 566 U.S. at 678.  Regardless, any factual allegations fail to raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.  Plaintiffs' SAC cannot survive this Motion to Dismiss under *Twombly/Iqbal*.

#### a.  *Claim II is Conclusory and Fails to Sufficiently Plead Factual Allegations as to Mr. Weidner*

In Claim I, Plaintiffs attempt to plead a RICO claim against Defendants Rysavy, Warkins, and Medvedich (the "Gaia Defendants").[3]  *SAC*, ¶¶ 122–40.  To state a civil RICO claim, "a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002)

---

[3]  After being notified that their initial RICO claim was barred by the statute of limitations, Plaintiffs changed the date upon which the alleged activities "commenced" so that they did not plead themselves outside the statute of limitations.  *Compare* ECF No. 1 (Initial Complaint alleged RICO scheme spanned "since 2015") *with* ECF No. 111 (SAC pleading—after Plaintiffs learned of statute of limitations—that the RICO scheme "commenc[ed] in 2016"); *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (Civil RICO claims subject to four-year statute of limitations). Plaintiffs' sudden amendment to sidestep being time-barred further supports the fact that their litigation is brought in bad faith.  *See* § 13-17-102(4), C.R.S.; § 13-17-201, C.R.S.; *see also* ECF No. 127, pp. 2, 5 (Plaintiffs again admitting RICO violations started in 2015).

(quotation marks and citation omitted).  Plaintiffs, by their own words, limit Claim I—and the allegations supporting it—*solely* to the Gaia Defendants.  *SAC*, ¶¶ 122–40.

However, Plaintiffs then assert a second RICO claim (Claim II) against Defendants Weidner, High, Zadvodnick, and Montalbano, claiming that these defendants "conspired to violate section 1962(c)" because "each defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering" as described more fully in Count One.  *SAC*, ¶ 142.  Plaintiffs attempt to bootstrap Mr. Weidner to a tenuous conspiracy-based RICO claim by broadly stating—without *any* supporting factual allegations, let alone with the specificity required under Rule 9(b)—that he conspired to participate in certain affairs that Plaintiffs' SAC expressly limited *solely* to the Gaia Defendants.  *Compare Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (Rule 9(b)'s particularity requirement applies to claims of mail and wire fraud where used as a RICO predicate offense); *with* SAC, ¶¶ 125–26 (defining Gaia Defendants alone as "the Enterprise"), ¶¶ 129–40 (alleging only Gaia Defendants' racketeering activity—but failing to even mention Mr. Weidner).  As such, all defendants are prejudiced by being required to defend against this amalgamation of claims.

To the extent Plaintiffs reference Claim I in asserting Claim II against Mr. Weidner, such sweepingly broad allegations are inappropriate and cannot survive a motion to dismiss.  Beyond failing to plead a RICO claim entirely as to Mr. Weidner in either Claim I or II, Plaintiffs' allegations are conclusory and also fail to plead with specificity claims sounding in fraud against Mr. Weidner, as required by Rule 9(b).  *Iqbal*, 566 U.S. at 678; *Tal*, 453 F.3d at 1263.  Indeed, none of the specific instances alleged refer to—or could even be interpreted as referring to—Mr. Weidner; they do not mention Mr. Weidner at all.  *See SAC*, ¶¶ 130–33 (specifying only three instances of alleged mail and wire fraud that *only* the Gaia Defendants engaged in).

Nor could Mr. Weidner have "agreed that a conspirator would participate in the affairs of the Enterprise." *SAC*, ¶ 142. It makes no sense that the three alleged instances of predicate acts as "described in Count One"—which is expressly limited to the Gaia Defendants—could somehow have involved Mr. Weidner. *See SAC*, ¶¶ 131–33, 142 (alleged mail and wire fraud acts in Count I pertain to private emails and meetings between Gaia Defendants and Plaintiffs only). The other allegations under Claim I are also utterly inapplicable to Mr. Weidner, and thus he necessarily cannot have agreed to participate in such acts—nor do Plaintiffs provide any factual allegations stating such. *See SAC*, ¶¶ 134–35 (negotiations between Gaia and Mr. Goode), ¶ 136 (claiming Gaia Defendants caused the Goode Marks to be used in interstate commerce through its broadcasts). In other words, these allegations are implausible.

Plaintiffs' RICO claims are not only deficient and unsupported but are also frivolous—a salacious attempt to garner attention. This Court should therefore dismiss Claim II as to Mr. Weidner.

### b. *Claims III and V Fail to State a Plausible Claim for Relief*

Plaintiffs' federal trademark infringement (Claim III) and unfair competition (Claim V) claims fail to plausibly state a claim for relief and must therefore be dismissed.

Courts analyze trademark infringement and unfair competition claims together "because they have virtually identical elements, and both require 'commercial use.'" *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. For Apologetic Info. And Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)). The elements of a claim for infringement under the Lanham Act are: "(1) that the plaintiff has a protectable interest in the mark, (2) that the defendant has used an identical or similar mark in commerce, and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013).

These claims "must allege sufficient facts for the defendants and the court to identify the mark at issue and at least some instances of misuse." *RV Horizons Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 WL 6052416, at *8 (D. Colo. Nov. 15, 2019). To survive a motion to dismiss, a plaintiff "must plead facts sufficient to state a plausible claim that Defendant used Plaintiff's mark 'in connection with any goods or services.'" *Cleary*, 674 F. Supp. 2d at 1267. Moreover, to have protectable marks, Plaintiffs' marks not registered with the USPTO must have acquired distinctiveness through secondary meaning. *RV Horizons*, 2019 WL 6052416, at *5.

Plaintiffs' allegations fail to provide sufficient notice of their claims and fail to make such claims plausible as to Mr. Weidner.

First, Plaintiffs failed to allege that Mr. Weidner used an infringing mark in commerce, which is a fundamental element of the claim. *Cleary*, 674 F. Supp. 2d at 1267. Nor have Plaintiffs identified which of their marks Mr. Weidner allegedly infringed upon, provided any information about when such infringement occurred, or stated in what context the alleged infringement occurred. Indeed, Plaintiffs' trademark infringement claim includes only conclusory allegations about use—allegations that this Court need not accept as true. *Iqbal*, 556 U.S. at 678.

The only semi-cognizable factual allegation under this claim is that Mr. Weidner used "Sphere Being Alliance ®" in the summary of a YouTube video to link Mr. Weidner's and Mr. Goode's channels. *SAC*, ¶ 67; *see also SAC*, ¶ 58 (alleging defendants tag Mr. Goode and use the Goode Marks in their social media posts to ride off the notoriety—but not in an attempt to pass those marks off as their own). Tagging someone to ride off their notoriety does not violate the law. *See Utah Lighthouse Ministry*, 527 F.3d at 1052–53 ("Lanham Act is intended 'to protect the ability of consumers to distinguish among competing producers,' not to prevent all

unauthorized uses"—and citing with approval cases holding trademark rights cannot be used "to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.").

Regarding the "in commerce" prong, Plaintiffs' SAC makes no mention of any goods or services Mr. Weidner sells, nor do Plaintiffs allege that Mr. Weidner attempted to associate his goods or services (if any) with Plaintiffs' goods or services.  Indeed, there are *no* factual allegations that Mr. Weidner is engaged in a business or elucidation concerning what products or services he ostensibly sells on his social media platforms.

Given these failures, it is unsurprising that Plaintiffs also fail to allege that consumers were likely to be confused by Mr. Weidner's social media posts—nor could they given that Mr. Weidner is not purporting to offer the Goode Marks in any way, but rather is critiquing Mr. Goode's publicly expressed dogma.  *Hygrade Food Products Corp. v. H.D. Lee Mercantile Co.*, 46 F.2d 771, 773 (10th Cir. 1931) (allegations insufficient as a matter of law to show consumers could be deceived by defendant's use of the mark and affirming dismissal of the claim); *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987) ("[T]he requirement of trademark law is that a likely confusion of source, sponsorship or affiliation must be proven, which is not the same thing as a 'right' not to be made fun of.") (Quoting 2 J. McCarthy, *Trademarks and Unfair Competition*, § 31:38 at 670 (2d ed. 1984)).  To the contrary, Plaintiffs admit that the mark was used on a YouTube channel critical of Mr. Goode and his alleged status as an insider in a "Secret Space Program."  Thus, Plaintiffs' plead themselves out of this claim: there can be *no* confusion to consumers given Plaintiffs' numerous allegations that Mr. Weidner was critical of Plaintiffs (and thus would be neither using the alleged marks nor confusing others regarding those alleged marks).

Moreover, Plaintiffs allege that Mr. Weidner's social media criticism is of their public dogma and its preachers (and that he tags those individuals in his critiques), which means that Mr. Weidner's use (if any) of the Goode Marks constitutes "fair use"—a complete defense to Plaintiffs' claims that warrants dismissal. *See Bell v. Magna Times, LLC*, 2020 WL 1692816 (D. Utah Feb. 12, 2020) (dismissing infringement claim based on fair use defense); 15 U.S.C. § 1115(b)(4).

Because Plaintiffs' Colorado state claim mirrors Plaintiffs' claim under federal law, it fails for the same reasons. *Cleary*, 674 F. Supp. 2d at 1270 (citing *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004)). Plaintiffs' trademark infringement claims (both federal and Colorado common law) fail to plausibly state a claim for relief as relevant to Mr. Weidner, and this Court must dismiss them.

### c.  *Claim IV Fails to Support its Conclusory Claims with Factual Allegations*

As with their infringement claims, Plaintiffs also fail to appropriately plead their false designation of origin and federal unfair competition claim. *SAC*, ¶¶ 158–61. Instead, Plaintiffs merely recite the bare elements of the claim, which fails to satisfy the *Twombly/Iqbal* standard.

First, claims for false designation of origin may only be brought against a party who uses in commerce a designation that falsely identifies or represents the origin, sponsorship, or approval of goods. 15 U.S.C. § 1125(a)(1). In addition to elements such as the likelihood of confusion, a plaintiff must show: "(1) defendants' designation of the source of a product was false, (2) defendants caused goods so identified to enter commerce, and (3) defendants' false statement is likely to damage the moving party." *Durango Herald, Inc. v. Hugh A. Riddle & Riddle Directories, Inc.*, 719 F. Supp. 941, 946 (D. Colo. 1988). Moreover, Plaintiffs' false designation of origin claim sounds in fraud and is thus subject to Rule 9(b)'s pleading standards—a proposition supported by other federal district courts. *E.g.*, *Smoothreads, Inc. v.*

*Addventure Prod., Inc.*, No. 08-CV-1634-MMA (AJB), 2009 WL 10671911, at *7 (S.D. Cal. Sept. 29, 2009) ("[T]here is an abundance of relevant and persuasive case law standing for the proposition that Rule 9(b) should be applied to Section 43 claims when they are 'grounded in fraud.'") (Citing numerous cases).  Even if Rule 9(b) is inapplicable, Plaintiff's allegations fail to state a plausible claim against Mr. Weidner.

Indeed, under the SAC's factual allegations, it is wholly speculative how Mr. Weidner meets these elements.  *See* Argument III(b), *supra*.  At most, Plaintiffs allege that Mr. Weidner used "Sphere Being Alliance ®" in the summary of a YouTube video to link Mr. Weidner's and Mr. Goode's channels.  *SAC*, ¶ 67; *see also SAC*, ¶ 58 (alleging defendants tag Plaintiffs in their social media posts).  None of these alleged actions satisfy the elements for this claim.  No consumer is going to be confused by "tagging" another person in social media posts—in fact, "tagging" another person is a clear statement that you are *not* that person and are not pretending to be that person.  Thus, Plaintiffs fail to plead—let alone plausibly plead—that Mr. Weidner's designation of any alleged marks was false, that he caused goods so identified to enter commerce, or that his statement regarding such was likely to harm them.  *Durango*, 719 F. Supp. at 946.  Claim IV therefore fails.

Finally, unfair competition and false designation claims under the Lanham Act are subject to a three-year statute of limitations in Colorado.  § 13-80-101(c); *Full Draw prods. v. Easton Sports*, 85 F. Supp. 2d 1001, 1011 (D. Colo.  2000).  Although Plaintiffs initially alleged that the culpable conduct began in 2015, (ECF No. 1, ¶¶ 142(c), 144, 146), they failed to commence this case until March 2020.  Thus, Plaintiffs' false designation claim is barred on its face by the statute of limitations.

This Court must therefore dismiss Claim IV as to Mr. Weidner.

### d. *Claim VI Fails to Support its Threadbare Recital with Factual Allegations Relevant to Mr. Weidner*

Contrary to Plaintiffs' broadly worded allegations, the Colorado common-law tort of unfair competition does not encompass all allegedly improper conduct by competitors; rather, it covers only a narrow set of conduct regarding the use of trademarks or tradenames. *Netquote v. Byrd*, 504 F. Supp. 25 1126, 1133 (D. Colo. 2007).  This claim requires two elements: (1) "The name must have acquired a secondary meaning or significance that identifies the plaintiff;" and (2) "the defendant must have unfairly used the name or a simulation of it against the plaintiff." *Am. Furniture Co., v. Am. Furniture Co.,* 261 P.2d 163, 166 (Colo. 1953) (citation omitted).  To the extent this claim is grounded in fraud, Rule 9(b)'s particularity requirement applies.  F.R.C.P. 9(b).

Again, Plaintiffs' threadbare recitals of the elements of this claim "do not suffice" to overcome a motion to dismiss.  *Iqbal*, 566 U.S. at 678.

Plaintiffs also fail to appropriately allege even their threadbare recitals against Mr. Weidner.  First, Plaintiffs have not alleged that Mr. Weidner fraudulently used their purported marks nor that those purported marks have acquired a secondary meaning.  *SAC*, ¶ 67 (alleging Mr. Weidner used "Sphere Being Alliance ®" in the summary of a YouTube video); *see also SAC*, ¶ 58 (allegation of tagging Plaintiffs).  These allegations fail to plead the elements of this claim.

Second, Plaintiffs fail to allege that Mr. Weidner unfairly used the purported marks against Plaintiff in the business sense (rather than just being critical of Plaintiffs).  Nor could the SAC support such an argument given its repeated insistence that Mr. Weidner critiqued Plaintiffs and their purported marks rather than using Plaintiffs' marks as his own.

Plaintiffs' threadbare allegations do not fit within the narrow scope of this claim and are insufficient to state a plausible claim for unfair competition. Accordingly, this Court must dismiss Claim VI as to Mr. Weidner.

> ### e.   Claim VII Consists of a Threadbare Recital of the Legal Elements Without any Supporting Factual Allegations

Plaintiffs' claim for vague violations of the Colorado Consumer Protection Act ("CCPA") fails as a matter of law because the SAC fails to both plausibly and specifically plead a CCPA claim. The CCPA is intended and applied to protect consumers against consumer fraud; it is not meant as a sword for disgruntled internet celebrities to wield against their critics in private disputes. *See generally Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (CCPA deters and punishes *businesses* that commit deceptive practices in their dealings with the public by providing remedies against consumer fraud). To state a claim for relief under the CCPA,

> a plaintiff must plead facts sufficient to show that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.

*Cleary*, 674 F. Supp. 2d at 1270. The heightened pleading standards of Rule 9(b) apply to pleading claims under the CCPA. *See, e.g.*, *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985). In turn, Rule 9(b) requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quotation marks and citation omitted).

As is their pattern, Plaintiffs merely recite elements of the CCPA claim and fail to support their conclusory recitations with factual allegations.  For this reason alone, this Court must dismiss this claim.  *Iqbal*, 556 U.S. at 678.

Indeed, this claim is particularly nonsensical against Mr. Weidner.  The SAC does not make *any* allegations as to Mr. Weidner's current business, occupation, or vocation—nor does it even allege that he sought to pass off any goods or services, state what those alleged goods or services would have been, or how Mr. Weidner's actions impacted the public as consumers of the non-specified goods or services.  By this point, it becomes clear that Plaintiffs' SAC lacks a good-faith basis in bringing this claim against Mr. Weidner, which militates in favor of awarding attorneys' fees.  § 13-17-102(4); § 13-17-201.

Because Plaintiffs fail to support their CCPA claim with any specific factual allegations, this Court must dismiss the CCPA claim as to Mr. Weidner.

### f.   Claim VIII Fails to Allege the Basic Elements of a Breach of Contract Claim as to Mr. Weidner

Plaintiffs' breach of contract claim is legally deficient because Plaintiffs do not allege the existence of a contract between Mr. Weidner and Mr. Goode—a fundamental element to a breach of contract claim.  *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (elements of breach of contract claim includes "existence of a contract").

As to Mr. Weidner, the SAC alleges only that "[w]hile negotiating his talent contract . . . Mr. Goode met with Gaia CEO, Rysavy, and/or employees and agents of Gaia, Warkins, Weidner and Medvedich."  *SAC*, ¶ 25.  However, in the following paragraphs describing the alleged breaches of contract, Mr. Weidner is not mentioned at all.  *See, e.g.*, *SAC*, ¶¶ 25–31. Instead, the factual allegations of the SAC allege only that:

- Mr. Goode worked with Mr. Weidner.  *SAC*, ¶ 32.

- Mr. Weidner screamed and cursed at Mr. Goode and others.  *SAC*, ¶ 33.

- Mr. Goode reported Mr. Weidner's behaviors to Gaia.  *SAC*, ¶ 34.

- Mr. Weidner was eventually fired from Gaia.  *SAC*, ¶ 35.

In Claim VIII itself, the SAC does not allege much more regarding Mr. Weidner:

- Mr. Goode "entered into a contract with Gaia governing the terms and conditions of his ongoing contractual relationship with Gaia, including Defendant Weidner and the Gaia Defendants."  *SAC*, ¶ 183.

- "Weidner's job description included compliance with company policies and procedures . . . ."  *SAC*, ¶ 184.

- "Weidner and Gaia breached that contract by failing to adhere to company policies" and "by failing to act appropriately in a work environment."  *SAC*, ¶ 185.

- "Weidner, the Gaia Defendants and Gaia further breached their contact with Goode by acting in a manner contrary to the implied duty of good faith and fair dealing."  *SAC*, ¶ 187.

The SAC fails to allege the existence of a contract specifically between Mr. Weidner and Mr. Goode, the terms of the non-existent contract, or any alleged breach of the non-existent contract.  Because Plaintiffs failed to plead the existence of a contract between Mr. Weidner and Mr. Goode—and cannot plausibly plead such because none exists—they fail to plead a claim upon which relief can be granted, and this Court must dismiss this claim as to Mr. Weidner.

Rather than pleading an actual breach of contract action, Plaintiffs appear to be claiming that Mr. Weidner breached his employment agreement with Gaia by failing to abide by unspecified company policies.  *See SAC*, ¶¶ 184–85.  However, Plaintiffs lack standing to bring a

claim that Mr. Weidner breached his agreement with Gaia.  *See Bewley v. Semler*, 432 P.3d 582, 586–87 (Colo. 2018).  Only Gaia may bring such a claim.

It may also be that Plaintiffs are alleging Mr. Goode was harmed by an alleged breach of the contract between Mr. Weidner and Gaia.  However, Mr. Goode is not a third-party beneficiary to that contract—indeed, he did not allege that he was.  *Id.* at 587 (exception to the privity requirement where agreement intended to directly benefit non-party).  Because Plaintiffs are not third-party beneficiaries of that contract, they cannot bring an action on it.  *Smith v. TCI Communications, Inc.*, 981 P.2d 690, 693 (Colo. App. 1999).   For the same reasons that Plaintiffs' breach of contract claim fails, so too must their conclusory breach of the implied duty of good faith and fair dealing claim fail.  *See id.*; *SAC*, ¶ 187.

Because Plaintiffs fail to state a plausible claim for relief as it pertains to Mr. Weidner—despite being notified of these deficiencies several times—Claim VIII must be dismissed.

### g.  Claims XIII and XIV Fail to Plead Even the Minimum Legal Requirements to Sustain the Defamation Claims

"[B]ecause the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamations actions, by summary judgment or motion to dismiss, is appropriate."  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 138 F. supp. 3d 1191, 1199 (D. Colo. 2015), *aff'd* 861 F.3d 1081 (10th Cir. 2017).  A motion to dismiss may be granted where the "allegedly defamatory statements . . . are either too vague to state a claim for defamation or, if accurately reported, are not defamatory as a matter of law."  *Proffitt v. Cornuke*, No. CIV.A. 03-CV-00810JL, 2005 WL 2171860, at *2; *Hogan v. Winder*, 762 F.3d 1096, 1107 (10th Cir. 2014) (affirming Rule 12(b)(6) dismissal of defamation claim based, in part, on "three statements suggesting [plaintiff's] actions amounted to extortion and blackmail," because such terms are rhetorical devices).

In ruling on a motion to dismiss a defamation claim, courts determine as a matter of law "[w]hether a statement is defamatory" and "whether allegedly defamatory language is constitutionally protected opinion[.]" *Zueger v. Goss*, 343 P.3d 1028, 1034 (Colo. App. 2014)[4]; *see also Henderson v. Times Mirror Co.*, 669 F. Supp. 356, 357 (D. Colo. 1987); *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989). "[T]he meaning of the allegedly defamatory words is a matter of law left to the court—not a factual allegation to which it must defer." *Fry v. Lee*, 2013 COA 100 ¶ 29 (Colo. App. 2013).

Here, Mr. Goode confesses he is a public figure. *SAC*, ¶ 17. For First and Fourteenth Amendments purposes, public figures are those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" and therefore "invite attention and comment." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). Despite his intentional invitation for attention and comment, Mr. Goode is attempting to silence those who disagree with his dogma through expensive litigation—a tactic that this Court should not countenance. In doing so, Plaintiffs fail to allege facts sufficient to state a defamation claim that is plausible on its face. *Twombly*, 550 U.S. at 570.

First, Claims XIII and XIV (collectively, Defamation Per Se Claims) are generic regurgitations of the elements for defamation per se. *See SAC*, ¶¶ 195–204. These threadbare recitals, supported by mere conclusory statements, are not entitled to the presumption of truth and "do not suffice." *Iqbal*, 556 U.S. at 678.

---

[4] Restatement (Second) of Conflict of Laws § 149 (1971) provides that "[i]n an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties." Thus, Colorado law applies to Plaintiffs' defamation claims against Mr. Weidner.

What is more, Plaintiffs fail to even plead the appropriate threadbare recitals: despite the SAC repeatedly admitting Mr. Goode is a public figure, Plaintiffs fail to plead publication with actual malice—an essential requirement when pleading defamation per se against public figures. *See Gertz*, 418 U.S. at 328 (articulating rule requiring public figures to prove publication "with actual malice" to succeed in defamation claims). Instead, Plaintiffs merely plead that "Defendants did so intentionally—or, at the very least, negligently." *SAC*, ¶¶ 198, 203. This allegation does not rise to the level of actual malice, and thus Plaintiffs' claims fail.

Second, Plaintiffs also fail to plead *which* statements were defamatory, stating only that Defendants "made a multitude of false spoken" or "false written statements (e.g., accusing Goode of a criminal act) purporting to be facts." *SAC*, ¶¶ 196, 201. Yet the SAC is devoid of *any* factual allegation to support this contention, certainly as to Mr. Weidner. Instead, the SAC vaguely alleges:

- Mr. Weidner "engaged in repeated threats and invaded [Plaintiff's] privacy by incessantly and repeatedly divulging his private information and disparaging him through social media posts" on various platforms. *SAC*, ¶ 59; *see also SAC*, ¶ 65 (alleging general "invasion of privacy"), ¶ 66–67 (claiming Mr. Weidner's YouTube channel is "devoted almost solely to harassing and invading Mr. Goode's privacy").

- Mr. Weidner offered a "dare" for Mr. Goode to come on his YouTube show. *SAC*, ¶ 60.

- Mr. Weidner issued "violent threats" and "makes threats of bodily harm and harm to Goode's business and reputation through his multitude of videos" that he posts on social media—none of which are alleged to be defamatory. *SAC*, ¶ 61.

- Mr. Weidner sent two allegedly threatening emails to Mr. Goode. *SAC*, ¶ 63.

- Mr. Weidner's videos "represent[] hours and hours of false and threatening narrative"—again without specifying what is false or defamatory.  *SAC*, ¶ 69.

- Certain defendants were "engage[d] in making harassing and defamatory statements about Goode" and "spin[ning] a narrative of Goode supposedly 'doxing' various influencers in the Conscious Community."  *SAC*, ¶ 102.

- The Association's purpose is to "remove Goode from his livelihood by creating a lengthy campaign of innuendo, possible presentation of doctored evidence and continual rehash of prior statements" and "accuse Goode of criminal activities through social media outlets and other wirings and to use extortion . . . harassment and any other manipulative tactic to deprive him of his livelihood."  *SAC*, ¶¶ 105–06.

Glaringly, none of the SAC's allegations specifically state what the defamatory statements were. Plaintiffs' hyperbolic rhetoric in lieu of factual allegations does not suffice.  *See Hogan*, 762 F.3d at 1107; *Iqbal*, 566 U.S. at 678.

Moreover, accusing Plaintiffs of being "fakes" and "doxing" others is not defamatory per se.  *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1387 (Colo. App. 1986) (defining requirements of defamation per se).  In the absence of any statement that is defamatory per se, the defamatory statement is actionable *only* if special damages are pled.  *Stump v. Gates*, 777 F. Supp. 808, 825 (D. Colo. 1991).  As such, Plaintiffs were required to plead special damages— specific monetary losses, not merely hurt feelings—which they fail to do.

To the extent that Plaintiffs' vague allegations of defamation state a plausible claim for relief (they do not), Mr. Weidner's statements are protected opinions about a public figure with whom he disagrees.  Three factors drive this analysis: (1) how a statement is phrased; (2) the entire context in which the statement was made; and (3) "all of the circumstances surrounding

the statement, including the medium through which it is disseminated and the audience to whom it is directed." *Sall*, 782 P.2d at 1218.  All of these factors militate in favor of finding, as a matter of law, that Mr. Weidner's statements are constitutionally protected.

Here, the circumstances and context as alleged are an internet dispute over beliefs. Plaintiffs allege that the primary purpose of Mr. Weidner's YouTube channel is to critique Mr. Goode—a public figure espousing a controversial dogma—and that Mr. Weidner's statements are disseminated on social media platforms.  *SAC*, ¶¶ 66–70.  It is in this context that Plaintiffs allege that Weidner accused Plaintiffs of being "fakes" and "doxing" others in the community. *SAC*, ¶ 64.  Such allegations do not constitute defamation per se.  *See Cinquanta v. Burdett*, 388 P.2d 799, 780 (Colo. 1963) ("crook" does not constitute slander per se); *Hogan*, 762 F. 3d at 1107 (accusations of extortion and blackmail "are a familiar rhetorical device" and not actionable); *Mikovich v. Lorain Journal Co.*, 497 U.S. 1, 16–17 (1990) (term "blackmail" not actionable).

Given the totality of circumstances alleged—namely that Mr. Goode is a public figure spinning a tale of being an insider for the Secret Space Program and that Mr. Weidner is a critic of Mr. Goode's story—Mr. Weidner's statements are not actionable.  *See Cinquanta*, 388 P.2d at 780; *Bucher v. Roberts*, 595 P.2d 239, 241–42; Restatement (Second) of Torts, § 566 (1976).  If Plaintiffs' vague and broad allegations about Mr. Weidner's statements—made between internet rivals—were deemed defamatory, it would open the floodgates of litigation, chill constitutionally protected speech, and allow all public internet personalities to commence litigation based on their online conflicts, status wars, and trolling.

Because Plaintiffs fail to allege the basic elements of defamation against a public figure and fail to delineate which statements are allegedly defamatory, they fail to state plausible claims

upon which relief can be granted.  Regardless, as a matter of law, Mr. Weidner's alleged statements are constitutionally protected and do not constitute defamation.  Accordingly, this Court must dismiss Claims XIII and XIV as to Mr. Weidner.

### h.  Claim XV Fails to Allege Mr. Weidner Employed "Wrongful Means" in his Alleged Interference

Intentional interference with prospective business relations, as recognized in Colorado, requires Plaintiffs to show that Mr. Weidner intentionally and improperly interfered with Plaintiffs' prospective contractual relations.  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995).  Notably, the interference must be made "improperly" by the use of "wrongful means"— including the use of physical violence, fraud, civil suits, and criminal prosecutions.  *Id.* at 501– 02.  However, "wrongful means" do *not* include persuasion or economic pressure.  *Id.* at 502.

Here, against Mr. Weidner, Plaintiffs allege only that:

- "Goode has been blacklisted from major ufology events sponsored by Gaia, as well as by two leading ufology shows" due, in part, to Mr. Weidner's influence.  *SAC*, ¶ 89.

-  Eventually Goode was no longer invited to attend three conferences at which Gaia was a sponsor or in which Gaia had an ownership interest.  *SAC*, ¶¶ 90–98.

- Mr. Weidner and others "spoke to the heads of the [Conferences] and told them not to invite Goode to their Conferences."  *SAC*, ¶ 99.

Based solely on the above allegations, Plaintiffs spuriously assert that "Goode had a multitude of actual or prospective business contracts with the aforementioned Conferences and various entertainment agencies[,]" that Defendants knew of these contracts "and intentionally and improperly interfered with the performance of these contracts."  *SAC*, ¶ 206–07.

However, this claim is inadequately pled because it is full of conclusory allegations without a factual basis.  *Iqbal*, 556 U.S. at 678.  To the extent Plaintiffs allege *some* facts, they

allege nothing more than that Mr. Weidner "spoke to the heads of the [Conferences] and told them not to invite" Plaintiffs. *SAC*, ¶ 99. This conduct does not come even close to using "wrongful means" as defined by Colorado law. *See Amoco*, 908 P.2d at 501–02. Accordingly, Plaintiffs' claim XV fails and must be dismissed with prejudice as to Mr. Weidner.

IV.    **Plaintiffs' Claims Against Mr. Weidner Were Interposed for Harassment and Lack Substantial Justification; This Court Should Therefore Award Mr. Weidner Attorney's Fees and Costs**

Mr. Goode, who admits to being a public figure, garnered the attention of individuals who disagreed with his dogma. Upset at those who voiced their constitutionally protected disagreement with his philosophy, Mr. Goode is attempting to punish those individuals through this lawsuit. However, this is not an appropriate forum for such tactics, and this Court should not condone Plaintiffs' vituperative litigiousness.

Colorado has long recognized the proper purposes of litigation and—to discourage litigation like Plaintiffs'—Colorado law provides for a mandatory award of attorney's fees in certain circumstances. *See* § 13-17-102(2) (mandating "the court shall award" reasonable attorney fees against "any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification"); § 13-17-102(4) (mandating attorney's fees for an action interposed for harassment, if a party unnecessarily expanded the proceeding, or if the action lacked substantial justification—and defining "lacked substantial justification" as "substantially frivolous, substantially groundless, or substantially vexatious"); *Lorillard*, 611 F.3d at 1217–19 (Section 13-17-102 "clearly may apply to claims brought in the District of Colorado").

"A vexatious claim or defense is one brought or maintained in bad faith. Bad faith may include conduct that is arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Lorillard*, 611 F.3d

at 1219 (quoting *Zivian v. Brooke-Hitching*, 28 P.3d 970, 974 (Colo. Ct. App. 2001)) (emphasis and internal quotations omitted).  The fee-shifting provision of Colorado's statute is mandatory and applies here.  *Id.* at 1217.

Regardless of their original intent in commencing this litigation, Plaintiffs received the benefit of revising their complaint multiple times in response to motions to dismiss and extensive conferrals regarding the same, including conferrals detailing the very arguments Mr. Weidner raises herein.  At this point, it is clear that Plaintiffs' claims lack substantial justification—which mandates this Court to award defendants attorney fees for being required to respond to such a pleading.  § 13-17-102(4).

Furthermore, an award of fees is also warranted under section 13-17-201, C.R.S.  When a plaintiff has pleaded both tort and non-tort claims, a court must determine, as a matter of law, whether the essence of the action was one in tort, in order to ascertain if section 13–17–201 applies.  *See Crow*, 262 P.3d at 997; *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 606 (Colo. App. 2008); *Castro v. Lintz*, 2014 COA 91, ¶¶ 13–16.  It applies here because the essence of Plaintiffs' action is in tort.

This Court should therefore award Mr. Weidner attorney's fees and costs for the expenses incurred in defending this matter.

<u>CONCLUSION</u>

Given the verbose, confusing, conclusory, and utterly unsupported allegations, Plaintiffs' SAC runs afoul of both Rule 8 and Rule 12(b)(6).  Indeed, Plaintiffs' claims for relief do not rise above the speculative level.  *Twombly*, 550 U.S. at 555.  Accordingly, this Court should grant this Motion to Dismiss.

Moreover, Plaintiffs' SAC—like the initial Complaint and FAC before it—lacks substantial justification; it is frivolous, vexatious, and meritless. § 13-17-102(4). To be sure, Plaintiffs continued to vexatiously assert claims that lack a basis in fact despite receiving numerous detailed explanations on why and how those claims fail to plausibly state claims for relief. By ignoring these explanations—and the rules regarding pleading requirements—Plaintiffs have required multiple defendants to respond to their speculative, vexatious, and legally deficient claims and incur attorney's fees. This Court cannot condone Plaintiffs' tactic of using the judicial system to further their salacious media stunts. Accordingly, Defendant Weidner respectfully requests attorney's fees and costs under sections 13-17-102(4) and 13-17-201 for defending himself in this suit.

Respectfully submitted this 12th day of January, 2020.

**BURNHAM LAW**
By:

*/s/ Aaron Belzer (Duly Signed)*
Aaron Belzer, Esq. #47826
Counsel for Defendant

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on the 12th day of January, 2020, a true and correct copy of the foregoing ***Motion to Dismiss*** was filed and served electronically in accordance with C.R.C.P. 121 § 1-26, to the following:

**Attorney for Plaintiffs:**
Valerie Ann Yanaros
Yanaros Law PC
5057 Keller Springs
Suite 300
Addison, TX 76001
Phone: 512-826-7553
Email: valerie@yanaroslaw.com

**Attorney for Defendant Benjamin Zavodnick**:
Michael Jacob Laszlo
Laszlo & Associates, LLC
2595 Canyon Boulevard
Suite 210
Boulder, CO 80302
Phone: 303-926-0410
Email: mlaszlo@laszlolaw.com

**Attorneys for Defendant Gaia, Inc.**:
Daniel Andrew Dingerson
Ina B. Scher
Davis & Gilbert, LLP
1740 Broadway
New York, NY 10019
Phone: 212-237-1488
Email: ddingerson@dglaw.com
ischer@dglaw.com

**Defendant Alyssa Montalbano,** *Pro Se*
2536 Rimrock Avenue
Suite 400-117
Grand Junction, CO 81505
970-250-8365
Email: LegalZenACM@Gmail.com

**Defendant Clif High,** *Pro Se*
PO Box 141
Moclips, WA 98562
Phone: 360-276-0049
clif@halfpasthuman.com

*/s/ Elisa Taute (Duly Signed)*

Elisa Taute

Paralegal

*In accordance with C.R.C.P. 121 § 1-26, a printed copy of this document with original signature(s) is maintained by Burnham Law.*