IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

                                                                           Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH

                                                                           Defendants.

---

**PLAINTIFF JAMES COREY GOODE AND GOODE ENTERPRISE
SOLUTIONS, INC.'S MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6)**

---

### I.    Introduction

James Corey Goode ("Mr. Goode") and Good Enterprise Solutions ("GES") (collectively "Goode" or the "Plaintiff") files this Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(6) to Defendant/Counterplaintiff Alyssa Montalbano's ("Montalbano" or "Counterplaintiff") Counterclaims (Docket 120, the "Counterclaim(s)"). This Court should dismiss the Counterclaims in their entirety.

### II.    Background

Counterplaintiff, merely days before Christmas, filed almost five hundred pages (roughly two-hundred and fifty pages of her Answer and Counterclaim and two hundred pages of exhibits) of

overly verbose allegations and claims that do not have a basis in law, fact or reality. Counterplaintiff has already had the same or similar claims dismissed by Mesa County District Court of Colorado (*Alyssa Chrystie Montalbano v James Corey Goode*, case number 2018-cv-50 the "Mesa County Case") (*see* Exhibit "A", the "State Court Dismissal") and some of Counterplaintiffs Counterclaims are barred by the doctrine of collateral estoppel. Counterplaintiff either lacks standing to bring the remaining claims or lacks the requisite legal and/or factual support for them to survive dismissal. This Court should employ the same reasoning by Judge Gallagher in the District of Colorado in his report and recommendation (Exhibit "B", the "R&R") and Judge Flynn in Mesa County in the State Court Dismissal and dismiss all of the alleged Counterclaims.

### III. Applicable Standards

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A plaintiff "fails to state a claim upon which relief may be granted," when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Some claims are "so insubstantial, implausible, . . . or otherwise completely

devoid of merit as not to involve a federal controversy." *See Oneida Indian Nation of N.Y. v. Oneida Cty.*, 414 U.S. 661, 666 (1974). Federal courts lack power to entertain these "wholly insubstantial and frivolous" claims. *Southpark Square Ltd. v. City of Jackson,* 565 F.2d 338, 343–44 (5th Cir. 1977). Determining whether a claim is "wholly insubstantial and frivolous" requires asking whether it is "obviously without merit" or whether the claim's "unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject." *Id*. at 342.

Counterplaintiff's Counterclaim is neither short nor plain, and to attempt to concoct how she is entitled to relief is to engage in an exercise that would surely result in an elaborate stretch of the imagination. The allusions to secret government mind-control tactics and "dream visions" as a basis for legal remedy are completely without merit. This Court's time and resources should not be wasted litigating such claims, and they should be dismissed. *See Atakapa Indian de Creole Nation v. Louisiana,* 943 F.3d 1004, 1006 (5th Cir. 2019).[1]

## IV.  Arguments and Authorities

The United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the

frivolity of a claim." *Nagy v. Federal Med. Ctr. Butner*, 376 F.3d 252, 256-57 (4th Cir. 2004). (some internal quotation marks omitted). The Supreme Court further has identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As

---

[1] "Unsurprisingly, we can find no Supreme Court precedent controlling or even addressing the plaintiff's exotic claims. We must therefore ask: are the claims "obviously without merit"? We say yes." *Id*.

those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (internal citations and quotation marks omitted). In considering such matters, this Court may "apply common sense." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 954 (4th Cir. 1995) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)).

V. **Montalbano's Counterclaims Must be Dismissed in Their Entirety**
   a. **Claims 4-8, 10-13, 16 and 18 are (aside from baseless) Criminal in Nature and Counterplaintiff Lacks Standing to Bring these Claims in this Court**

Counterplaintiff asserts claims for Criminal Mail Fraud under 18 USC 1341 (Claim 4), Criminal Wire Fraud under 18 USC 1343 (Claim 5), Criminal Human Trafficking under 18 USC 1590 (Claim 6), Theft of Trade Secrets under 18 USC 1832 (Claim 7), Criminal Economic Espionage under 18 USC 1831 (Claim 8), Criminal Defamation under CRS 13-80-103 (Claim 10), Criminal Money Laundering under 18 USC 1956 (Claim 11), Criminal Harassment under CRS 18-9-111 (Claims 12 and 13), Criminal Abuse of Process under 18 USC 1589 (Claim 16), Criminal Extortion under 18 USC 1951 and 1952 (Claim 18). All of the aforementioned criminal causes of action are only enforceable by the state.

Although Congress can by law create rights or obligations, it does not automatically follow that private parties can enforce those rights or obligations through the judicial process. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Frequently—and for good reasons—only the executive can enforce a federal statute. Other federal laws create individual rights that are enforceable only by agencies, *see, e.g., Commc'ns Workers v. Beck*, 487 U.S. 735, 742 (1988), or not enforceable at all, *see, e.g., Alden v. Maine*, 527 U.S. 706 (1999). But many federal laws are enforceable by private parties in judicial proceedings. Whether a private party can bring suit to enforce a statute

depends on if that statute—expressly or by implication—provides a private right of action. On this point congressional intent is determinative because "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Courts will dismiss criminal claims that are not private causes of action. (*see Campbell v. M&T Bank*, Case No. 3:16-cv-118 (W.D. Pa. Mar. 22, 2017), dismissing a plethora of criminal claims with no private cause of action.)[2]

All of the aforementioned claims are criminal. As such, the smattering of claims listed above should be dismissed in their entirety.

### i. Counterplaintiffs Claims, if Converted to Civil Remedies for Theft of Trade Secrets and Defamation, are Barred by the Doctrine of Collateral Estoppel and the *Rooker-Feldman Doctrine*

To the extent that Counterplaintiff is attempting to invoke civil causes of action under Claims 7 and 10, these are barred by the doctrine of collateral estoppel. Counterplaintiff asserted these exact claims with the exact facts in her earlier suit filed in Mesa County Court. These claims were dismissed with prejudice (*see* Exhibit A) and attorneys fees were awarded to Mr. Goode. As such, Counterplaintiffs Claims 7 and 10 must be dismissed, as further explained in more detail below.

### VI.   Montalbano Only Makes Conclusory Allegations of Harm, not Specific as Required by Many of Her Claims

Only four paragraphs in the 243-page complaint allege harm to Counterplaintiff by Plaintiffs, a representative example as follows:

---

[2] "The United States Code is the official compilation of codified federal law. As of March 2017, the U.S. Code contains 54 titles. Those 54 titles contain hundreds of chapters, and those hundreds of chapters contain thousands of laws. To a layperson, it may seem as though all those laws are bases upon which to sue. After all, if a law is broken, is it not up to the courts to declare it so? The simple answer is maybe. Our legal system has certain threshold requirements that must be met before a person can sue. These requirements include the existence of a private cause of action; just because a law was broken does not mean that Congress intended that law be judicially enforceable by a private litigant. This means that flipping through the U.S. Code in search of aptly named laws upon which to sue is a poor litigation strategy. Which brings us to this case." *Id*.

> **585.** Based upon the facts of all Twenty-Two (22) Claims, Montalbano believes she is entitled to preventive Injunctive Relief and to recover damages for the foregoing act of Defamation to include compensation for harm to Montalbano's reputation, personal humiliation, mental or physical suffering, loss of income, along with attorney/legal fees and punitive damages for willful and malicious defamation and any other relief the Court deems just.

Counterclaim at 182.

This exact phrase is repeated on pages 196 and 200 but "Harassment Remote Neural Electronic Stalking" and "Colorado Harassment Law 'Kiana Arellano's Law'" replaces the word "Defamation"[3]. Finally, under Claim 6 (that must be dismissed as explained above) Montalbano alleges physical harm by remote neural stalking. As explained below, these claims are irrational and wholly incredible and—per *Denton*—may be disregarded as frivolous.

### a. Claim 1 (Civil RICO) Fails for Lack of Any of the Requisite Elements; Fails to Meet Heightened FRCP 9(b) Standard

"The purpose of RICO is 'the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Marlow v. Allianz Life Ins. Co. of N. Am.*, No. 08-cv-00752-CMA-MJW, 2009 WL 1328636, at *3 (D. Colo. May 12, 2009) (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969)). "The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." Dewey v. Lauer, No. 08-cv-01734-WYD-KLM, 2009 WL 3234276, at *3 (D. Colo. Sep. 30, 2009) (internal quotation marks omitted, quoting Tal v. Hogan, 453 F.3d 1244, 1261 (10th Cir. 2006)).

---

[3] As explained below, "Harassment Remote Neural Electronic Stalking" is not an actual cause of action and harassment is a criminal cause of action with no private right, but the allegation is included to evidence the lack of appropriate pleading.

The Supreme Court has added additional pleading requirements that a plaintiff must satisfy in order to state a RICO claim. As it is relevant here, a plaintiff must demonstrate proximate cause; that is, that he or she was "injured in his [or her] business or property by reason of a violation of [18 U.S.C. § 1962[4]]." *Holmes v. Sec. Inv'rs Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (explaining Holmes as requiring more than "but for" causation; rather there must be some "direct relation between the injury asserted and the injurious conduct alleged").

In this case, although the allegations are somewhat difficult to follow, Counterplaintiff alleges that Plaintiffs engaged in illegal activity during the pendency of the state court proceedings which resulted in an unfavorable dismissal of her case. This theory—that Counterplaintiff suffered injury because of fraud perpetrated on a third-party—has been discredited by the Supreme Court. *See Anza*, 547 U.S. at 457-58. Besides the absolute incredibility of Counterplaintiff's allegations, she has shown no causal connection between some incomprehensible, vague and unattenuated alleged actions by Plaintiffs and any possible harm she could have suffered. Indeed, because she has only recited the threadbare elements of the causes of action, it is difficult to decide what actions alleged throughout the hundreds of pages are at issue. Moreover, as explained above, she has shown to injury.

      b. **Claims 2 and 3: No Misrepresentation, No Reliance by Counterplaintiff and No Harm based on Reliance**

Montalbano's alleged misrepresentations by Plaintiffs are that Mr. Goode referred to her as a "stalker" and as part of the "Dark Alliance". Mr. Goode filed two temporary restraining order against Montalbano in Broomfield County Court (Exhibits "C" and "D"). As shown in those

---

[4] Counterplaintiff alleges Claim 1 under §1961. After undersigned counsel conferred with Counterplaintiff, understands she meant to allege under §1962.

verified affidavits and the supporting briefs, evidence *and TRO order signed by the Court* (Exhibit C at 1-3), Mr. Goode had ample support for his claims of stalking. After the second TRO was filed, Goode filed the instant action that included Montalbano. This replaced any need to pursue the state court TRO. Goode never tied Montalbano to any "Dark Alliance" references, but those references would not qualify as a "misrepresentation" anyway.

### i. Claim 2: No Fraudulent Representation

Based on the "facts" alleged in the Counterclaim by Counterplaintiff, there is no cognizable claim for fraudulent misrepresentation under Colorado law. The elements of fraudulent misrepresentation under Colorado law are: (1) a fraudulent misrepresentation of material fact; (2) the plaintiffs' reliance on the material representation; (3) the plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting in damages. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994); *Nielson v. Scott*, 53 P.3d 777, 780 (Colo.App. 2002). As stated above, there is not fraudulent misrepresentation of a fact. To say that Montalbano relied on a statement that she was a stalker or part of a "Dark Alliance" would be nonsensical. It follows that any reliance would be unjustified. As stated above, Montalbano does not state any reliance damages. All four elements are missing and Claim 2 fails.

### ii. Claim 3: No Violation of the CCPA

The CCPA was enacted to regulate commercial activities and practices which, "because of their nature, may prove injurious, offensive, or dangerous to the public." *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 112, 493 P.2d 660, 667 (1972);*see also Martinez v. Lewis*, 969 P.2d 213, 220 (Colo. 1998); *People ex rel. MacFarlane v. Alpert Corp.*, 660 P.2d 1295, 1297 (Colo.App. 1982). The CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available

remedies against consumer fraud. *Showpiece Homes, Corp. v. Assurance Co. of America*, 38 P.3d 47, 50-51 (Colo. 2001); *Martinez*, 969 P.2d at 222; *Curragh Queensland Min. Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 240-41 (Colo.App. 2002); *MacFarlane*, 660 P.2d at 1297. Remedies include injunctive relief, civil penalties including treble damages, and attorney fees. *Showpiece Homes*, 38 P.3d at 51; § 6-1-110, § 6-1-113.

> To prove a private cause of action under the CCPA, a plaintiff must show:
>
> (1) that the defendant engaged in an unfair or deceptive trade practice;
> (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
> (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
> (5) that the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

Here, all but the second element are absent. Even assuming the conduct Counterplaintiff complains of took place in the course of Plaintiffs' business, vocation or occupation, Montalbano's allegations do not describe an unfair or deceptive trade practice. The actions complained of include vague references to Plaintiffs disseminating "fake news" with wild allegations (including cult-like practices) that are wholly unsubstantiated. As explained above, her allegations that Plaintiffs' references to stalking and a "Dark Alliance" are not misrepresentations. Merely posting information is not an unfair or deceptive trade practice.

A fundamental element of a claim under the Colorado Consumer Protection Act (CCPA) is that the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property. *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146 - 47 (Colo. 2003). The allegations in the Counterclaim describe an impact

allegedly suffered by Montalbano, but nothing indicates or implies that Plaintiffs' practices had any significant impact on the public.

As explained above, Montalbano only makes conclusory references to damages without any specificities or factual support. So, the fourth and fifth elements are not met and Counterplaintiff's third claim fails.

### c.  Claim 9: Copyright Infringement is Inapplicable

Copyright is a form of legal protection for authors of "original works of authorship," including literary, dramatic, musical, artistic, and certain other intellectual works. This protection is available to both published and unpublished works. (U.S. Copyright Act, 17 U.S.C. §§ 101 et seq). Copyright protects certain works:

- Literary works
- Musical works, including accompanying words
- Dramatic works, including accompanying music
- Pantomimes and choreographic works
- Pictorial, graphic, and sculptural works
- Motion pictures and other audiovisual works
- Sound recordings
- Architectural works

(17 U.S.C. §102(a)). Nowhere in Section 102 does the statute allow for "dream visions"—published, or unpublished.

Certain material is not protected:

- Titles, names, short phrases and slogans; familiar symbols or designs, mere variations of typographic ornamentation, lettering, mere listings of ingredients or contents
- **Ideas, procedures, methods, systems, processes, concepts, principles, discoveries**, or devices, as distinguished from a description, explanation, or illustration
- Certain works produced by government employees
- Works consisting entirely of information that is common property and containing no original authorship
- Works in the public domain

(17 U.S.C. §102(b)) (emphasis added).

Plaintiff's ideas encapsulated in her dream visions are not actual copyrighted works. Nothing else in Plaintiff's motion could be construed as copyrighted work.

To assert a prima facie claim of copyright infringement, a party must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" (*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)). The Supreme Court has held that registration occurs and a copyright claimant may commence an infringement suit when the Copyright Office registers a copyright. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886-87, (2019).

To determine substantial similarity, the Tenth Circuit has stated that the "ordinary observer" test is an appropriate method. *Country Kids `N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996). The court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated plaintiff's protectible expression by taking material of substance and value." *Id*. (quoting *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*,672 F.2d 607, 614 (7th Cir. 1982)). Stated otherwise, "[t]he essence of this test is whether the 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Id*. Although the issue of substantial similarity may be an issue of fact for resolution by a jury, a court may determine non-infringement as a matter of law where (1) the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work or (2) no reasonable jury could find that the two works are substantially similar. *Warner Bros. Inc. v. American Broadcasting Companies*,720 F.2d 231, 240 (2d Cir. 1983); *Fisher v. United Feature Syndicate*, Inc., 37 F. Supp. 2d 1213, 1224 (D. Colo. 1999).

Montalbano accuses Plaintiffs of infringing on two federal copyright registrations on books she authored by making social media posts. The nature of the rights at issue and the allegedly infringing "works" (posts versus books) are so inapposite that there cannot possibly be the requisite "substantial similarity" required for infringement. That is, no reasonable jury could find that the Montalbano's books and Plaintiffs' broadcasts are substantially similar. Because her dream visions are not copyrightable subject matter and because the matter she alleges is infringing by Plaintiffs is nowhere near the same as her copyrighted works, these claims also fail entirely and must be dismissed.[5]

### d. Claims 14 and 15: There are No Facts to Show Injury to Counterplaintiff's Constitutionally-Protected Interests

Montalbano's Claims 14 and 15 are for deprivation of civil rights and conspiracy to do so. Section 1983 and § 1985 claims share a common element: a plaintiff must show some deprivation of a federally protected right in order to be successful. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995); *Houston v. Reich*, 932 F.2d 883, 890 (10th Cir. 1991). Montalbano claims the deprivation in this case came through violations of a blunderbuss of references to the United States and Colorado Constitutions. (Docket 120 at 205-6). Those that Plaintiffs can filter from this list are: due process rights, free speech and right to privacy. Plaintiffs must make a mental leap to devise what possible Constitutional rights are allegedly at issue here or how they possibly could be harmed. Plaintiffs could not have possibly used any of the alleged mind-control tactics to hinder her due process rights, certainly did not stifle her speech and did not invade her privacy through disseminating any alleged dream visions. "The Court has no obligation to scour the record

---

[5] Montalbano also alludes to a picture she "donated" and was "used" by an "associate" of Plaintiffs at a conference. Counterclaim at 99. Obviously there are issues here related to an actual or implied license of the work at issue, but most importantly she is accusing the "associate" of using her work without permission. This all is of no consequence, however, because Montalbano has not federally-registered the work.

in search of evidence to support Plaintiff's claims. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir.2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her].")." *McGowan v. Bd. of Trs. for Metro. State Univ. of Denver*, 114 F. Supp. 3d 1129, 1142 (D. Colo. 2015). Here, even searching through the almost five hundred pages of filed documents would not return any facts to support Claims 14 and 15.

    **e. Claim 17: No Abuse of Process Because No Baseless Cause of Action**

In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages. *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007). "An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson v. Am. Family Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1305 (D. Colo. 2012).

As this Court has stated *in OmniMax Int'l, Inc. v. Anlin Indus., Inc.*, No. 18-cv-01830-DDD-MEH, at *13-15 (D. Colo. June 17, 2019), an ulterior motive does not implicate an abuse of process claim. "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994). And "while the ulterior motive may be inferred from the wrongful use of the process, the wrongful use may not be inferred from the motive." *Id.*; s*ee also* Restatement (Second) of Torts § 682 comment b (1977) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, [although] there is an incidental motive of spite or an ulterior purpose."). Counterclaimant has failed to plausibly allege any legal impropriety, and an "ulterior or even

nefarious motive, alone, isn't enough to constitute an abuse of process." *Parks v. Edward Dale Parrish LLC*, No. 17CA1257, 2019 WL 470515, at *3 (Colo. App. 2019). As Judge Jackson has held, "filing a complaint not justified in fact or law alone is not enough to amount to an abuse of process." *GN Netsome, Inc. v. Callpod, Inc.*, No. 11-CV-03271-RBJ, 2012 WL 4086530, at *2 (D. Colo. Sept. 17, 2012) (reviewing Colorado authority).

As stated above, Plaintiffs have had ample support to bring the claims in the instant suit and the previous stalking TROs. The fact that Montalbano's Mesa County Case was removed (properly) based on her pleading of copyright infringement. Only after Montalbano revised her complaint to plead around the copyright claims was the Mesa County Case remanded. Even if there is an alleged "ulterior motive," (there is not) there are no allegations showing this action and its procedural tools have been used for anything other than their regular, legitimate judicial functions.

  **f. Claim 19: No Cognizable Theory, but if Invasion of Privacy No Reasonable Expectation of Privacy**

Claim 19 does not state a cognizable theory. To the extent that it is meant to implicate invasion of privacy, that is clearly not here. The Second Restatement of Torts articulates the tort of appropriation of another's name or likeness, stating: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C. The Colorado Civil Jury Instructions divide the tort into five distinct elements: (1) the defendant used the plaintiff's name or likeness; (2) the defendant sought to take advantage of the plaintiff's reputation, prestige, social or commercial standing, or any other value attached to the plaintiff's name, likeness, or identity; (3) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or

otherwise; (4) damages; and (5) causation. CJI-Civ.4th 28:4 (2000); *see Dickerson v. Dittmar*, 34 P.3d 995, 1001 (Colo. 2001).

"A plaintiff's claim of invasion of privacy by appropriation of her name and likeness will not succeed, however, if the defendant's use of the plaintiff's name and likeness is privileged under the First Amendment." *Dittmar*, 34 P.3d at 997. Whether the First Amendment privilege applies is a question of law. *See id*. at 1003.

The First Amendment "permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Dittmar*, 34 P.3d at 1003.

All but the first element are at issue here, but as explained above Montalbano does not describe any particular damages here. Even if she could, the requisite causation is lacking. If, for example, Montalbano alleges that her business has failed due to the alleged conduct of Plaintiffs, by her own admission she negates this by stating that she has "had to be her own lawyer" (Docket 120 at 232-33). As explained in Exhibit D, it was Montalbano who plagued Plaintiffs and the dockets with voluminous, needless, and baseless filings.

### g. Claims 20 and 21: No Outrageous Conduct, Certainly None that Threatened Bodily Harm
#### i. There is no claim for IIED

To prevail on a claim for intentional infliction of emotional distress, plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Han Ye Lee v. Colorado Times, Inc*., 222 P.3d 957, 966-67 (Colo. App. 2009). Defendant argues primarily that plaintiffs fail to allege the first element.

"'Outrageous conduct' is defined as conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Culpepper v. Pearl St. Bldg., Inc*., 877 P.2d 877, 882 (Colo. 1994) (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988)).

A defendant is not liable for mere insults, indignities, or annoyances that are not extreme or outrageous. *Reigel v. SavaSeniorCare L.L.C*., 292 P.3d 977, 990-91 (Colo. App. 2011) This District has held that subjecting an elderly women in a nursing home to Scientology practices is not outrageous conduct. *Mott v. Narconon Fresh Start*, Civil Action No. 14-cv-01293-PAB-KMT, at *8-9 (D. Colo. Mar. 17, 2015).

Montalbano's alleged conduct falls short of what this District has held to be outrageous conduct, and thus claim 20 fails.

### ii.  No plausible fear of bodily harm

To prevail on a claim for negligent infliction of emotional distress, plaintiff must show that "defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011).

Montalbano has not alleged any plausible facts to support an "unreasonable risk of physical harm". Claim 21 fails as well.

### h.  Claim 22: No Alleged Benefit to Plaintiffs or Expense to Counterplaintiff

An unjust enrichment claims accrues "when a person discovers, or through the exercise of reasonable diligence should discover, that all elements of the claim are present." *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP* , 293 P.3d 55, 58 (Colo. App. 2011). Under Colorado law, an unjust enrichment claim requires a showing of three elements: "(1) at

plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000).

Montalbano makes conclusory references to benefits to Plaintiffs and expenses to her but does not provide any factual support. This final claim fails as well as the other twenty-one.

### VII. Collateral Estoppel and the Rooker-Feldman Doctrine Bar Most of Counterplaintiff's Counterclaims
#### a. Collateral Estoppel

Under Colorado law, the doctrine of collateral estoppel "bars relitigation of an issue if: (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." *Bebo Constr. Co. v. Mattox O'Brien, P.C.,* 990 P.2d 78, 84 — 85 (Colo. 1999).

As explained above, Judge Flynn issued a final judgment on the claims of defamation and theft of "dream visions" (what she alleges are her trade secrets) and thus claims 7 and 10 are barred under collateral estoppel.

#### b. The Rooker-Feldman Doctrine

"The Rooker–Feldman doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074–75 (10th Cir. 2004) (footnote omitted). "The Rooker-Feldman doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that

judgment in federal court." *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012). The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Tenth Circuit has "concluded that 'the type of judicial action barred by Rooker Feldman [] consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)). "Rooker-Feldman does not bar federal court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Id*. (quoting Bolden, 441 F.3d at 1145). Tenth Circuit jurisprudence has emphasized the relief sought by the plaintiffs. *See id*. The court has applied the Rooker Feldman doctrine where the relief sought required the federal court to review and reject the state court judgment. *See id*. (citing *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007)).

Here, Montalbano seeks this Court's review of Judge Flynn's rulings in the Mesa Case. This case went on for almost two years and has been litigated at length and depth in state and federal court. The claims she seeks to revisit should be barred and dismissed.

### VIII. Motion to Strike Under FRCP 12(f)

Montalbano makes various references to "human trafficking" and other horrific crimes and attempts to associate them with Plaintiffs. Plaintiffs respectfully request this Court strike from the record such scandalous and offensive matter. The Supreme Court has instructed that access to

judicial documents should not be permitted "to gratify private spite or promote public scandal with no corresponding assurance of public benefit," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 603, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Such baseless claims and accusations are without merit and without public benefit. As such, this Court should strike such offensive matter from the record.

### IX. Conclusion

Montalbano has burdened this court with a multitude of completely baseless claims and alleged "facts" and "evidence" that have no basis in reality. *See Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1007 (5th Cir. 2019) ("We will not try to decipher what any of this means. "[T]o do so might suggest that these arguments have some colorable merit." *Crain v. Comm'r* , 737 F.2d 1417, 1417 (5th Cir. 1984) (per curiam).") The Court should grant Plaintiff's Motion and grant Plaintiffs attorney's fees incurred in connection with addressing Counterplaintiff's Counterclaims.

Respectfully submitted this 12th day of January 2021.

*s/ Valerie A. Yanaros*
Valerie Yanaros, Esq.
State Bar No. 24075628
Yanaros Law, P.C.
15851 Dallas Parkway, Suite 600
Addison, Texas 75001
Tel.: (512) 826-7553

**ATTORNEY FOR PLAINTIFF**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on January 12th, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.

By:   s/ Valerie Yanaros
      Valerie Yanaros

## CERTIFICATE OF CONFERRAL

Pursuant to Judge Domenico's Practice Standard III(D)(1), in the case of parties proceeding pro se, parties are not required to confer. However, out of an abundance of caution, on January 12, 2021, I conferred via email with Ms. Montalbano her counterclaims, including discussion of the arguments anticipated to be included in this motion to dismiss. Ms. Montalbano provided clarification on some of her counterclaims, and I have included those clarifications as I understand them in this Motion.