**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EASYKNOCK, INC.,

                   Plaintiff,

      -against-

KNOCKAWAY, INC.,

                 Defendant.

20-cv-8491 (ALC) (KNF)

**ANSWER AND**
**COUNTERCLAIMS**

     Defendant Knockaway, Inc. ("Knock" or "Defendant"), by and through its attorneys, Davis & Gilbert LLP, for its Answer and Counterclaims to the Second Amended Complaint (the "Amended Complaint") of Plaintiff EasyKnock, Inc. ("EasyKnock" or "Plaintiff"), denies all factual allegations contained in the headings and unnumbered paragraphs and states as follows:

### <u>NATURE OF THE CLAIMS[1]</u>

     1.    Knock denies that EasyKnock's use of its EASYKNOCK mark does not infringe Knock's rights in its KNOCK mark.  The remaining allegations of paragraph 1 state Plaintiff's intent in filing the Amended Complaint, to which no response is required.  To the extent any further response is required, Knock denies the remaining allegations in paragraph 1.

     2.    Knock states that paragraph 2 states legal conclusions, to which no response is required.  To the extent any response is required, Knock denies the allegations in paragraph 2.

     3.    Knock denies that it has committed any tortious acts, in this District or otherwise, and denies that EasyKnock has suffered any damages.  Knock admits that it conducts business in this District and does not contest personal jurisdiction.

---

[1] The various headings that appear throughout the Amended Complaint require no answer.  To the extent said headings require an answer, Knock denies any allegations contained therein.

4.      Knock states that paragraph 4 states a legal conclusion, to which no response is required.  To the extent any response is required, Knock does not contest the appropriateness of venue in this District.

5.      Knock admits that it sent a cease-and-desist letter to EasyKnock on September 25, 2020 (17 days prior to EasyKnock filing the original complaint) identifying EasyKnock's trademark infringement and unfair competition and admits that EasyKnock is violating Knock's rights as set out in the cease-and-desist letter.  The remaining allegations of paragraph 5 state a legal conclusion, to which no response is required.  To the extent any further response is required, Knock denies the remaining allegations in paragraph 5.

6.      Knock denies that EasyKnock's use of its EASYKNOCK mark does not infringe Knock's rights in its KNOCK mark.  Knock further denies that EasyKnock is the senior user of any mark or with respect to services related to which EasyKnock is infringing on Knock's rights, and states that Knock has been using the KNOCK mark in connection with services, including leaseback services which it has offered since early-2017, prior to EasyKnock offering the same or similar services.  Knock further denies that there is no likelihood of consumer confusion between Knock's senior mark and EasyKnock's mark, as used in connection with Knock's services.  The remaining allegations of paragraph 6 state Plaintiff's intent in filing the Amended Complaint, to which no response is required.  To the extent any further response is required, Knock denies the remaining allegations in paragraph 6.

7.      Knock denies that EasyKnock is the senior user of any mark or with respect to services at issue.  Knock further denies that it is infringing on any of EasyKnock's purported rights or violating any laws.  The remaining allegations of paragraph 7 state legal conclusions, to

which no response is required.  To the extent any further response is required, Knock denies the remaining allegations in paragraph 7.

## PARTIES

8.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 8.

9.     Knock admits the allegations in paragraph 9.

## FACTS

10.     Knock admits that a residential sale-leaseback is a series of transactions or a single transaction in which a homeowner sells their property and then leases it back.  Knock lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 10.

11.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11.

12.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12.

13.     Knock states that the trademark application (the "'740 application") referred to in paragraph 13 speaks for itself.  Knock denies the allegations in paragraph 13 to the extent that they are inconsistent with the '740 application.

14.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14.

15.     Knock states that the trademark application (the "'734 application") referred to in paragraph 15 speaks for itself.  Knock denies the allegations in paragraph 15 to the extent that they are inconsistent with the '734 application.

16.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16.

17.     Knock admits that it uses its KNOCK mark in connection with a program known as Knock Home Swap.   Knock further admits that through the Home Swap program, Knock provides, among other things: the primary mortgage the consumer uses to purchase a new home; loans for continued mortgage payments and for repairs and other preparations for selling; and, access to Knock's proprietary home valuation technology and Knock's approved contractor network.   Knock denies that it does not and has not used the KNOCK mark in connection with other products and services.

18.     Knock admits that it filed a trademark application (the "'063 application"), on September 23, 2020.   Knock states that the '063 application referred to in paragraph 18 speaks for itself.   Knock denies the allegations in paragraph 18 to the extent that they are inconsistent with the '063 application.

19.     Knock admits that it filed the '063 application two days prior to sending a cease-and-desist letter to EasyKnock.   Knock denies the remaining allegations in paragraph 19.

20.     Knock admits the allegations in paragraph 20.

21.     Knock admits that, on September 25, 2020, it sent a cease-and-desist letter to EasyKnock identifying EasyKnock's trademark infringement and unfair competition and admits that EasyKnock is violating Knock's rights as set out in the cease-and-desist letter.   Knock denies that a copy of that letter is attached to the Amended Complaint as Exhibit A.   Knock states that the letter referred to in paragraph 21 speaks for itself.   Knock denies the allegations in paragraph 21 to the extent that they are inconsistent with the letter.

22.     Knock states that the letter referred to in paragraph 22 speaks for itself.  Knock denies the allegations in paragraph 22 to the extent that they are inconsistent with the letter.

23.     Knock admits that, in the September 25, 2020, letter, it requested a response by October 2, 2020.  Knock further states that based on representations from EasyKnock's counsel, Knock extended the time for EasyKnock to provide a substantive response to the September 25, 2020, letter.

24.     The allegations of paragraph 24 state legal conclusions or Plaintiff's intent in filing the Amended Complaint, to which no response is required.  To the extent any response is required, Knock denies the allegations in paragraph 24.

25.     Knock admits that it began offering its Home Swap service to consumers in or around July 2020.  Knock further states that it has been using the name and mark "KNOCK" as a trademark in connection with real estate services since 2016, including with respect to leaseback services since February 2017, prior to any date by which EasyKnock offered the same or similar services.  Knock denies the remaining allegations in paragraph 25.

26.     Knock states that the article referred to in paragraph 26 speaks for itself.  Knock denies the allegations in paragraph 26 to the extent that they are inconsistent with the article.

27.     Knock admits that through its Home Swap program, Knock provides: the primary mortgage the consumer uses to purchase a new home; loans for continued mortgage payments and for repairs and other preparations for selling; and, access to Knock's proprietary home valuation technology and Knock's approved contractor network.  Knock denies that it previously provided substantially different services to consumers, and states that Knock Home Swap continues to provide the same or similar benefits to consumers and is a natural evolution of

Knock's previous services that have been offered since 2016.  Knock denies the remaining allegations in paragraph 27.

28.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28.

29.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29.

30.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30.

31.     Knock denies the allegations in paragraph 31.

32.     Knock denies the allegations in paragraph 32.

33.     Knock denies the allegations in paragraph 33.

34.     Knock admits that the first letters of the KNOCK mark and the EASYKNOCK mark are different.  Knock denies the remaining allegations in paragraph 34.

35.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35.

36.     Knock denies the allegations in paragraph 36.

37.     Knock admits that the EASYKNOCK mark is used in connection with services that allow homeowners to unlock and access the value of their homes.  Knock denies that the preceding services and/or benefits are the only use of the EASYKNOCK mark.  Knock lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 37.

38.     Knock admits that the KNOCK mark is used in connection with financial services that allow customers to sell their homes and buy new ones.  Knock denies that the preceding services and/or benefits are the only use of the KNOCK mark.

39.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.

40.     Knock denies that Knock and EasyKnock are not competitors.  Knock admits that the KNOCK mark is used in connection with financial services that allow customers to sell their homes and buy new ones.  Knock denies that the identified services and/or benefits are the only use of the KNOCK mark.  Knock lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 40.

41.     Knock states that the letter referred to in paragraph 41 speaks for itself.  Knock further states that the allegations of paragraph 41 state a legal conclusion, to which no response is required. To the extent any response is required, Knock denies the allegations in paragraph 41 to the extent that they are inconsistent with the letter.

42.     Knock states that the letter referred to in paragraph 42 speaks for itself.  Knock further states that the allegations of paragraph 42 state a legal conclusion, to which no response is required. To the extent any response is required, Knock denies the allegations in paragraph 42 to the extent that they are inconsistent with the letter.

43.     Knock denies the allegations in paragraph 43.

44.     Knock states that the website referred to in paragraph 44 speaks for itself.  Knock denies the allegations in paragraph 44 to the extent that they are inconsistent with the website.

45.     Knock states that the website referred to in paragraph 45 speaks for itself.  Knock denies the allegations in paragraph 45 to the extent that they are inconsistent with the website.

46.     Knock states that paragraph 46 states a legal conclusion, to which no response is required.  To the extent any response is required, Knock denies the allegations in paragraph 46.

47.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 47.

48.     Knock denies the allegations in paragraph 48.

49.     Knock denies the allegations in paragraph 49.

50.     Knock states that paragraph 50 states a legal conclusion, to which no response is required.  To the extent any response is required, Knock denies the allegations in paragraph 50.

51.     Knock admits that it began offering its Home Swap service to consumers in or around July 2020.  Knock denies the remaining allegations in paragraph 51.

52.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52.

53.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 53.

54.     Knock states that paragraph 54 states a legal conclusion, to which no response is required.  To the extent any response is required, Knock denies the allegations in paragraph 54.

55.     Knock admits that EasyKnock filed a complaint in this action on October 12, 2020.  Knock states that the filed complaint speaks for itself.  Knock denies the allegations in paragraph 55 to the extent that they are inconsistent with the filed complaint.  Knock further denies the substance of the allegations repeated in paragraph 55.

56.     Knock admits that it received a copy of the filed complaint on October 12, 2020. Knock states that the remaining allegations of paragraph 56 state legal conclusions, to which no

response is required.  To the extent any response is required, Knock denies the allegations in paragraph 56.

57.     Knock admits that, on or about October 29, 2020, it caused a letter to be sent to Move Sales, Inc., and that EasyKnock and Move Sales, Inc. are business partners  Knock states that the letter speaks for itself.  Knock denies the allegations in paragraph 57 to the extent that they are inconsistent with the October 29, 2020, letter.

58.     Knock admits that, on or about October 29, 2020, it caused a letter to be sent to Move Sales, Inc.  Knock states that the letter speaks for itself.  Knock denies the allegations in paragraph 58 to the extent that they are inconsistent with the October 29, 2020, letter.

59.     Knock denies that the October 29, 2020, letter gives any false impressions. Knock further states that its trademark rights date to 2016 and predate EasyKnock's purported trademark rights.

60.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 60.

## COUNT I

61.     Knock repeats and re-alleges each and every answer contained in the preceding paragraphs as if fully set forth herein.

62.     Knock states that paragraph 62 states a legal conclusion, to which no response is required.  To the extent any response is required, Knock denies the allegations in paragraph 62.

63.     Knock denies the allegations in paragraph 63.

64.     Knock denies the allegations in paragraph 64.

65.     Knock denies that EasyKnock's use of its EASYKNOCK mark does not infringe Knock's rights in its KNOCK mark.  Knock further denies that EasyKnock is the senior user of

any mark or with respect to services related to which EasyKnock is infringing on Knock's rights. Knock further denies that there is no likelihood of consumer confusion between Knock's senior mark and EasyKnock's mark, as used in connection with Knock's services.   The remaining allegations of paragraph 65 state Plaintiff's intent in filing the Amended Complaint, to which no response is required.   To the extent any further response is required, Knock denies the remaining allegations in paragraph 65.

### COUNT II

66.    Knock repeats and re-alleges each and every answer contained in the preceding paragraphs as if fully set forth herein.

67.    Knock admits that it sent a cease-and-desist letter to EasyKnock identifying EasyKnock's false endorsement and unfair competition and admits that EasyKnock is violating Knock's rights as set out in the cease-and-desist letter.   The remaining allegations of paragraph 67 state a legal conclusion, to which no response is required.   To the extent any further response is required, Knock denies the remaining allegations in paragraph 67.

68.    Knock denies the allegations in paragraph 68.

69.    Knock denies the allegations in paragraph 69.

### COUNT III

70.    Knock repeats and re-alleges each and every answer contained in the preceding paragraphs as if fully set forth herein.

71.    Knock denies the allegations in paragraph 71.

72.    Knock denies the allegations in paragraph 72.

73.    Knock denies the allegations in paragraph 73.

### COUNT IV

74.     Knock repeats and re-alleges each and every answer contained in the preceding paragraphs as if fully set forth herein.

75.     Knock denies the allegations in paragraph 75.

76.     Knock denies the allegations in paragraph 76.

77.     Knock denies the allegations in paragraph 77.

**COUNT V**

78.     Knock repeats and re-alleges each and every answer contained in the preceding paragraphs as if fully set forth herein.

79.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79.

80.     Knock denies the allegations in paragraph 80.

81.     Knock denies the allegations in paragraph 81.

82.     Knock denies the allegations in paragraph 82.

83.     Knock denies the allegations in paragraph 83.

84.     Knock admits the allegations in paragraph 84.  Knock further states that, on or about September 23, 2020, Knock filed a federal trademark application with the United States Patent and Trademark Office (the "USPTO") for the Knock Mark (serial number 90204063) in International Class 36.

85.     Knock denies the allegations in paragraph 85.

86.     Knock denies the allegations in paragraph 86.

87.     Knock denies the allegations in paragraph 87.

88.     Knock denies the allegations in paragraph 88.

89.     Knock denies the allegations in paragraph 89.

90.     Knock denies the allegations in paragraph 90.

91.     Knock lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 91.

## DEFENSES

### FIRST DEFENSE
**(Failure to State a Claim)**

The Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
**(Declaration Not Available)**

Plaintiff is not entitled to a declaration on any of its claims because Knock has filed, and is re-filing as counterclaims, causes of action on the same grounds for which Plaintiff seeks a declaration.

### THIRD DEFENSE
**(Lack of Damages)**

EasyKnock did not suffer any damages, or if it did, such damages are *de minimis*.

### FOURTH DEFENSE
**(Laches, Waiver, Estoppel)**

EasyKnock's claims are barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

### FIFTH DEFENSE
**(Senior User)**

Knock's use in U.S. interstate commerce of the Knock Mark is senior to EasyKnock's use of the EasyKnock Mark.

## SIXTH DEFENSE
### (Good Faith)

Knock's use of the Knock Mark was in good faith.

## SEVENTH DEFENSE
### (Other Defenses)

Knock hereby gives notice that it intends to rely upon any other defense that is now or may become available during, or as a result of, discovery in this action and hereby reserves the right to amend its Answer to assert such defenses.

## COUNTERCLAIMS

Knock, by and through its attorneys, Davis & Gilbert LLP, as and for its counterclaims against EasyKnock, alleges as follows:

## NATURE OF THE COUNTERCLAIMS

1.      Knock brings this action against EasyKnock as a result of EasyKnock's deliberate, willful, and bad faith use of Knock's trademark as part of a confusingly similar name and mark, without Knock's authority, which constitutes: (a) trademark infringement, unfair competition and false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and, (b) common law trademark infringement and unfair competition.

2.      Knock seeks to recover actual and treble damages, along with EasyKnock's profits, as well as costs and attorneys' fees, arising from EasyKnock's conduct, permanent injunctive relief and any other relief the Court deems proper.

## PARTIES

3.      Knock is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 335 Madison Avenue, 16th Floor, New York, NY 10017.  Knock provides real estate services to consumers.

4.      EasyKnock, upon information and belief, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 215 Park Avenue S, Suite 1713, New York, NY 10003.  EasyKnock provides real estate services to consumers.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1338 and 1367 because this action involves claims arising under the Lanham Act, 15 U.S.C. §1051, *et seq.*, and related state-law claims.

6.      By filing the original and Amended Complaint alleging claims concerning the same subject matter as these counterclaims, EasyKnock has consented to the jurisdiction of the Court.  Further, this Court has personal jurisdiction over EasyKnock because, on information and belief, EasyKnock's principal place of business is in this District.  Additionally, the Court has personal jurisdiction over EasyKnock pursuant to N.Y. CPLR § 302(a)(1) and (2) because EasyKnock transacts business within the state of New York and within this District, and has committed tortious acts within the state of New York.

7.      In addition, upon information and belief, EasyKnock has solicited and/or transacted business in New York using Knock's trademark, and Knock's injury arises out of EasyKnock's conduct.

8.      By filing the original and Amended Complaint alleging claims concerning the same subject matter as these counterclaims, EasyKnock has consented to venue in this District.  Further, venue in this District is proper under 28 U.S.C. §§ 1391(b) and (c) because, upon information and belief, EasyKnock's principal place of business is in this District and a substantial part of the events or omissions giving rise to Knock's claims occurred in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION IN THE COUNTERCLAIMS

9.    Knock provides real estate services, including services designed to assist with the concurrent or overlapping real estate sale and purchase transactions.  Knock's services provide increased liquidity to homeowners to facilitate more seamless transitions between homes. Knock's offices are located in New York and San Francisco, and Knock operates in markets around the United States.

10.    Knock has been using the name and mark "KNOCK" (the "Knock Mark") as its corporate name and as a trademark in connection with real estate services since 2016.  Since at least September 2016, prior to any purported use by EasyKnock of its claimed trademark, the Knock Mark has been—and continues to be—used in interstate commerce.

11.    Knock has been consistently recognized as a market leader for its expertise and services in various media outlets, including *The Wall Street Journal* and *Bloomberg*, among others.

12.    As a result of Knock's longstanding use of the Knock Mark and the high quality of its services, the Knock Mark has become widely known throughout the United States, is closely identified with Knock, and represents substantial and valuable goodwill.

13.    Since its inception, Knock has assisted homeowners in the sale of their home as well as the purchase of a new home with a focus on eliminating the uncertainty previously endemic to overlapping sale/purchase home transactions and relieving homeowners of the illiquidity of equity in their existing home.  Knock has consistently provided consumers peace of mind by assessing the market value of a consumer's current home and facilitating and guaranteeing the sale of that property.

14.     Past Knock service offerings have included the Knock Seller Guarantee and the Knock Home Trade-In, both of which facilitated consumers' ability to purchase and move into a new home prior to sale of their prior home.

15.     Knock also offered leaseback programs to its customers, both to consumers who sold their existing home and leased it to continue living there (i.e. sale-leaseback transactions) and to consumers who leased their new home from Knock prior to selling their previous home (i.e. buy-leaseback transactions).

16.     Knock entered into a leaseback transaction with a customer as early as February 2017, and has offered this service to hundreds of consumers in numerous states around the U.S.

17.     Knock's leaseback offerings furthered Knock's ability to assist homeowners in the sale of their home as well as the purchase of a new home.

18.     Knock's latest consumer offering, Knock Home Swap, continues to provide the same or similar benefits to consumers and is a natural evolution of Knock's previous services that have been offered since 2016.  Through the Home Swap program, Knock provides, among other things, the primary mortgage the consumer uses to purchase a new home, loans for continued mortgage payments as well as for repairs and other preparations for selling, and access to Knock's proprietary home valuation technology and Knock's approved contractor network.

19.     Knock's Home Swap service makes it easier for homeowners to purchase their next home by assisting with the sale of their current home, providing increased liquidity, and removing much of the uncertainty in the process.

20.     Knock markets Home Swap to consumers by partnering with real estate brokerages and agents.

21.     Knock also markets to consumers through the website https://www.knock.com (previously knock.re and knock.co), which started in or around July 2016.

22.     On or about September 23, 2020, Knock filed a federal trademark application with the United States Patent and Trademark Office (the "USPTO") for the Knock Mark (serial number 90204063) in International Class 36.

23.     The service identification in the Knock application is for "Providing information in the field of real estate; Real estate consulting services; Financial appraisal and valuation of homes; Real estate financing services; Real estate lending services; Real estate acquisition services".

24.     EasyKnock, upon information and belief, provides real estate services, including services designed to provide consumers with an alternative to a reverse mortgage through a sale and leaseback program called "Sell & Stay."  As its name suggests, the purpose of the Sell & Stay program is to have homeowners stay in their existing homes, but to be able to get some of their equity out of their home while they still are living in it.

25.     EasyKnock markets itself and its products using its corporate name "EasyKnock" (the "EasyKnock Mark").

26.     Up until only recently, EasyKnock's services were focused on its Sell & Stay program, as well as its initial offering of an online listing service for homeowners and buyers that was an alternative to the traditional real estate brokerage service.

27.     Upon information and belief, EasyKnock began offering its services, including the Sell & Stay program, after Knock offered the same or similar products to consumers.

28.     However, it was only recently that Knock learned, upon information and belief, that EasyKnock has launched a new service that is extremely similar to the Knock Home Swap

program and Knock's historic Home Trade-In program, which EasyKnock markets as "EasyKnock MoveAbility".

29.     The EasyKnock MoveAbility program is described on the EasyKnock website (https://www.easyknock.com/programs/moveability) as making it "easier [for homeowners] to purchase their next home" by assisting with the sale of their current home and is a new service, not merely an extension of any previous EasyKnock services. This service, similar to Knock's services, attempts to provide increased liquidity to homeowners to facilitate a more seamless transitions between homes.

30.     In addition to being a service that seeks to provide the same benefits to consumers as Knock's Home Swap, upon information and belief, EasyKnock expressly markets MoveAbility as an alternative to a bridge loan, a key product that Knock offers as part of its Home Swap service. Upon information and belief, EasyKnock's Sell & Stay service had no such bridge loan component.

31.     EasyKnock uses the domain name easyknock.com for a website (https://www.easyknock.com) promoting its real estate services and to offer the MoveAbility service. Included on the website is use of the infringing EasyKnock Mark.

32.     In direct competition with Knock, EasyKnock is, upon information and belief, also partnering with real estate brokers and agents to offer the MoveAbility service.

33.     Upon information and belief, EasyKnock is also partnering with established iBuyers, including Opendoor and Offerpad, which will cause further confusion in the marketplace with respect to Knock's services.

34.     Upon information and belief, EasyKnock is promoting or is planning to promote its EasyKnock MoveAbility service on several real estate services platforms, including

Realtor.com, Zavvie.com, and others, meaning that Knock's services and EasyKnock's services are available or will be available to consumers via the same, or similar, trade channels.

35.     EasyKnock's new program and recent shift into services designed to assist homeowners in the transition from one home to the next puts EasyKnock in direct competition with Knock and its Knock Home Swap service and Knock's previous Home Trade-In service.

36.     Knock and EasyKnock are competitors.

37.     EasyKnock's use of the EasyKnock Mark in connection with services which are nearly identical to those provided by Knock, combined with EasyKnock's use of the Knock Mark in its entirety as part of the EasyKnock Mark, furthered by EasyKnock's current and planned marketing channels, is likely to cause confusion, mistake, and deception of consumers as to the sponsorship, source, and origin of EasyKnock's services.

38.     One potential form such confusion may take, among others, is that the EasyKnock Mark may be mistaken as a version of Knock's service that is designed to be "easier" than its other services, not a service that originates from a different company than Knock.

39.     Upon information and belief, EasyKnock has filed two applications with the USPTO for marks that are confusingly similar to the Knock Mark under serial numbers 87507734 and 87507740, in Classes 9 and 36, respectively (together, the "EasyKnock Applications").  In both EasyKnock Applications, the dominant portion of the applied-for mark is "Knock", which is the Knock Mark.

40.     On or about September 25, 2020, after learning of EasyKnock's use of the Knock Mark in conjunction with MoveAbility, a service that is very similar to Knock's services and likely to be confusing to consumers, Knock sent a letter to EasyKnock informing it that Knock has prior rights in the Knock Mark and requesting that EasyKnock cease and desist from any use

of marks incorporating the Knock Mark because they are likely to cause consumer confusion and harm to the Knock Mark.

41.     Although it acknowledged receiving Knock's September 25, 2020, letter, EasyKnock has not ceased its use of the Knock Mark in its name, domain name, and in marketing its services.

42.     Indeed, rather that cease using the Knock Mark or respond substantively to Knock's September 25, 2020, letter, EasyKnock filed this action

43.     EasyKnock's continued use of the Knock Mark—at least after receiving Knock's September 25, 2020, letter, if not earlier—is therefore deliberate, willful, and in bad faith, and has caused and/or is likely to cause consumer confusion and harm to Knock's goodwill.

## FIRST CAUSE OF ACTION
### (Direct and Contributory Trademark Infringement
### pursuant to Section 43(a) of the Lanham Act)

44.     Knock repeats and realleges the allegations stated in the preceding paragraphs of the counterclaims as if set forth fully herein.

45.     The Knock Mark is a valid and subsisting trademark under the Lanham Act.

46.     Knock's use in U.S. interstate commerce of the Knock Mark is senior to EasyKnock's use of the EasyKnock Mark.

47.     Consumers associate the Knock Mark with Knock.

48.     EasyKnock's use of the Knock Mark in its name is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of EasyKnock with Knock, or as to the origin, sponsorship, or approval of EasyKnock's goods, services, or commercial activities by Knock, all to the damage and detriment of Knock's reputation and goodwill.

49.     EasyKnock's continued use of the Knock Mark without Knock's consent and without causing, inducing or materially contributing to such use, constitutes direct and contributory trademark infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.     Irreparable harm to Knock is imminent as a result of EasyKnock's conduct, and Knock is without an adequate remedy at law.  Knock is thus entitled to an injunction restraining EasyKnock, its officers, directors, agents, employees, representatives, and all other persons acting in concert with them, from engaging in further such infringing acts.

51.     On information and belief, and as evidenced in part by EasyKnock's refusal to cease unauthorized use of the EasyKnock mark after receiving a cease and desist letter from Knock's counsel, EasyKnock's acts were done in bad faith, willfully, deliberately, and with knowledge of Knock's rights, since no later than September 25, 2020, if not earlier.

52.     As a result of this trademark infringement, Knock has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

### SECOND CAUSE OF ACTION
**(False Designation of Origin and Unfair Competition
pursuant to Section 43(a) of the Lanham Act)**

53.     Knock repeats and realleges the allegations stated in the preceding paragraphs of the counterclaims as if set forth fully herein.

54.     Consumers associate the Knock Mark with Knock.

55.     EasyKnock's continued use of the Knock Mark in its name without Knock's consent and/or causing, inducing or materially contributing to such use, constitutes false designation of origin and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.     Irreparable harm to Knock is imminent as a result of EasyKnock's conduct, and Knock is without an adequate remedy at law.  Knock is thus entitled to an injunction restraining EasyKnock, its officers, directors, agents, employees, representatives, and all other persons acting in concert with them, from engaging in further such infringing acts.

57.     On information and belief, and as evidenced in part by EasyKnock's refusal to cease unauthorized use of the EasyKnock mark after receiving a cease and desist letter from Knock's counsel, EasyKnock's acts were done in bad faith, willfully, deliberately, and with knowledge of Knock's rights, since no later than September 25, 2020, if not earlier.

58.     As a result of EasyKnock's false designation of origin and unfair competition, Knock has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**THIRD CAUSE OF ACTION**
**(Common Law Trademark Infringement)**

59.     Knock repeats and realleges the allegations stated in the preceding paragraphs of the counterclaims as if set forth fully herein.

60.     The Knock Mark is a valid and subsisting trademark under common law.

61.     Knock's use of the Knock Mark is senior to EasyKnock's use of the Knock Mark in its name and as part of the EasyKnock Mark.

62.     Consumers associate the Knock Mark with Knock.

63.     EasyKnock's continued use of the Knock Mark without Knock's consent and without causing, inducing or materially contributing to such use, constitutes trademark infringement under applicable state common law.

64.     Irreparable harm to Knock is imminent as a result of EasyKnock's conduct, and Knock is without an adequate remedy at law.  Knock is thus entitled to an injunction restraining

EasyKnock, its officers, directors, agents, employees, representatives, and all other persons acting in concert with them, from engaging in further such infringing acts.

65.    On information and belief, and as evidenced in part by EasyKnock's refusal to cease unauthorized use of the EasyKnock mark after receiving a cease and desist letter from Knock's counsel, EasyKnock's acts were done in bad faith, willfully, deliberately, and with knowledge of Knock's rights, since no later than September 25, 2020, if not earlier.

66.    As a result of this trademark infringement, Knock has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

### FOURTH CAUSE OF ACTION
#### (Unfair Competition)

67.    Knock repeats and realleges the allegations stated in the preceding paragraphs of the counterclaims as if set forth fully herein.

68.    Consumers associate the Knock Mark with Knock.

69.    EasyKnock's continued use of the Knock Mark in its name and as part of the EasyKnock Mark without Knock's consent constitutes unfair competition under applicable state statutes and/or common law.

70.    Irreparable harm to Knock is imminent as a result of EasyKnock's conduct, and Knock is without an adequate remedy at law.  Knock is thus entitled to an injunction restraining EasyKnock, its officers, directors, agents, employees, representatives, and all other persons acting in concert with them, from engaging in further such infringing acts.

71.    On information and belief, and as evidenced in part by EasyKnock's refusal to cease unauthorized use of the EasyKnock mark after receiving a cease and desist letter from Knock's counsel, EasyKnock's acts were done in bad faith, willfully, deliberately, and with knowledge of Knock's rights, since no later than September 25, 2020, if not earlier.

72.     As a result of EasyKnock's unfair competition, Knock has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**WHEREFORE**, Knock prays for judgment to be entered in its favor against EasyKnock providing as follows:

A.     A permanent injunction enjoining EasyKnock, its officers, agents, employees, representatives, servants, successors, assigns and all persons, firms, corporations, or entities either acting directly or indirectly in concert with them or under their direction, control or authority from further use of the Knock Mark in any form;

B.     An award of damages that Knock has sustained and profits EasyKnock has derived as a result of its trademark infringement, false designation of origin, unfair competition, and other misconduct specified herein, in an amount to be determined at trial.

C.     An award of treble damages in accordance with section 35 of the Lanham Act, 15 U.S.C. § 1117, and an award of exemplary or punitive damages as is deemed appropriate because of the willful and intentional nature of EasyKnock's conduct.

D.     An award of interest and costs of this action together with statutory attorneys' fees pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117;

E.     An order that EasyKnock make restitution to Knock for any unjust enrichment caused by virtue of its unlawful conduct as complained of herein;

F.     Dismissing EasyKnock's Amended Complaint with prejudice; and

G.     Such other and further relief as the Court deems just and proper.

Dated:  February 10, 2021          **DAVIS & GILBERT LLP**
New York, New York

/s/ Marc J. Rachman
    Marc J. Rachman
    Daniel A. Dingerson
    1740 Broadway
    New York, New York 10019
    Telephone:  (212) 468-4800
    Facsimile: (212) 468-4888
    Email:  mrachman@dglaw.com

*Attorneys for Defendant Knockaway, Inc.*