IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH

Defendants.

---

**PLAINTIFF JAMES COREY GOODE AND GOODE ENTERPRISE
SOLUTIONS, INC.'S RESPONSE TO GAIA'S MOTION TO
DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

---

## I.     Introduction

James Corey Goode ("Mr. Goode") and Good Enterprise Solutions ("GES") (collectively "Goode" or "Plaintiff") file this Response in Opposition to the Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(6) filed by Gaia, Inc. ("Gaia" or "Defendant") (Docket 128, the "Motion").   This Court should deny Defendant's Motion because Goode has alleged with sufficiency each of the claims it has brought against Defendant. Defendant has, through its wrongful actions, deprived Goode of monies owed to Mr. Goode and GES. Further, Defendant has harmed and lessened the goodwill Goode has worked to garner and should not be rewarded for its indiscretions. Defendant's Motion attempts to distract and detract from the heart of the issue: that Defendant has harmed Goode's livelihood financially. Gaia has drug on the current issues between Goode and Gaia (each a "Party", both the "Parties") for *almost three years now*, it is clear that without a court-sanctioned discovery process and trial there is no likely resolution on the horizon.

Defendant either intentionally overlooks or misapprehends the claims and allegations put forth by Goode or attempts to, through mental gymnastics, make them more complicated than they actually are. All claims as alleged are sufficient to withstand dismissal and any issues of material fact must be determined by a jury.

## II.     Background

Plaintiffs' Second Amended Complaint ("SAC") includes state and federal claims for racketeering, deceptive trade practices, defamation, breach of contract, misrepresentation, and tortious interference arising from Defendant's attempts to usurp, tarnish and misappropriate the character, financial gain, goodwill and work of Goode.  The SAC lays out the background of the Parties' working relationship, explains how Goode worked diligently to garner goodwill and a presence in the Conscious Community and bring profit and notoriety to Gaia, how Gaia made promises—through its contractors and employees—to Goode to compensate him for the work he had done, and finally how those promises were broken. Only after years of negotiating in good faith by Goode that was met with more broken and empty promises and threats by Gaia did Goode finally file this action. In alignment with its true *modus operandi*, Gaia again refuses to operate in good faith after multiple meet and confers whereupon Goode amended its claims to meet Gaia's demands in the hopes of reaching resolution and filed its Motion on all remaining claims.

## III.    Applicable Standards

To survive a Rule 12(b)(6) motion, a complaint need not include "detailed factual allegations" as Defendant's Motion demands. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe the factual allegations in the light most favorable to Plaintiff, and not simply question their veracity. *See Twombly*, 550 U.S. at 555.  Rule 12(b)(6) motions are disfavored and rarely granted. *See Lone Star Indus., Inc. v. Horman Family Trust,* 960 F.2d 917, 920 (10th Cir.1992).

Accordingly, the Court must assess whether the complaint is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).

Defendant attempts to downplay the gravity of its actions through advertising and social media. This Court has recognized the importance of a Plaintiff's goodwill and the harm that may befall it through a Defendant's unauthorized use of its intellectual property or through that Defendant's harmful statements published

online. (*See RV Horizons, Inc. v. Smith*, Civil Action No. 1:18-cv-02780-NYW (D. Colo. Nov. 15, 2019), denying Defendants' Motions to Dismiss for, *inter alia*, various unfair competition claims). In order to shorten the SAC but provide sufficient support for its claims, Goode has referenced various postings and print matter that is sufficient to support its claims at the pleading stage. (E.g., SAC at 5, 9, 14, 19, 20, 24). This Court has held that this type of information is sufficient to support a Plaintiff's claims. (*See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081 (10th Cir. 2017), holding that the district court did not err by reviewing a seminar recording and a TV episode on a rule 12(b) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity".[1]

## IV.    Pertinent Facts

Goode filed suit against Gaia for various claims related to breach of contract, trademark infringement and unfair competition. The pertinent facts in the SAC are laid out below and grouped into two types of claims: (a) those involving claims for the various types of unfair competition and (b) those involving false or fraudulent statements or misrepresentations. As explained below, these claims involve the same

---

[1] Defendant does not question the authenticity of any of the documents referenced, nor can it because they are self-authenticating in that it comes from Defendant's own accounts, files or some other source of which this Court may take judicial notice.

basic elements and so the pertinent facts will be referred to in the Disputed Claims section by the applicable Pertinent Facts subsection.

### a. Facts Pertinent to Trademark and Unfair Competition Claims (Claims III-VI)

Plaintiff brings federal law claims related to trademark infringement in which Defendant engages in connection with the other named defendants in this action, including using Plaintiff's registered or unregistered trademarks or some that are confusingly similar which diminishes the Plaintiff's reputation and trademarks. (SAC at ¶¶20-23). Defendant used Plaintiff's claimed marks and names in a manner "drive customers away from [Plaintiff's] products and to solicit business for [Defendant]" (*Atlas Biologicals, Inc. v. Kutrubes*, Civil Action No. 15-cv-00355-CMA-KMT, at *32 (D. Colo. Sep. 23, 2019)).

Goode has been developing his goodwill, branding and intellectual property since at least 2008. *Id*. Goode has filed and received federal registrations on various trademarks. *Id*. Goode is known worldwide and has been invited as a guest on celebrity shows that are seen by hundreds of thousands of audience members worldwide. *Id*., SAC at ¶¶ 38, 119. The Goode Marks have become a source indicator of Goode's goodwill, branding and message and have, as such, acquired secondary meaning. *Id*. at ¶ 38. Goode has taken action to protect his goodwill. *Id*. at ¶ 50. Goode has invested tremendous time, effort and financial resources in his branding and goodwill and has received worldwide recognition. *Id*. at ¶ 148.

### b. Facts Pertinent to False/Fraudulent Misrepresentation Claims (including defamation and tortious interference, Claims VII-IX, XIII-XV)

Plaintiff brings claims related to harmful and false statements in which Defendant engages in connection with the other named defendants in this action, including making promises to Plaintiff that it broke and/or never intended to keep (SAC at ¶¶ 24, 25-31). Gaia also targeted Plaintiff with defamatory, harmful publicity which diminishes the Plaintiff's reputation and accuses Goode of illegal or immoral practices. *Id*. Gaia attacked Goode's goodwill and claimed marks by replacing Mr. Goode with actors to come on Cosmic Disclosure, the show that Mr. Goode was previously on, to use his story, name and intellectual property (including his claimed marks and copyrighted material) in a fashion that invited ridicule or disdain on Mr. Goode and GES' claimed marks and intellectual property. (SAC at ¶¶ 48-58).

### V.    Facts and Law Pertinent to Commercial Speech and Use in Commerce

Defendant is in the business of attracting and keeping subscribers (SAC at 5). To say that Defendant is not a competitor or making commercial use of Goode's names, likenesses and claimed marks is frivolous at best and deceptive at worst. Liability under the Lanham Act can be based on advertising or promotion alone. *See VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1365-66 (Fed. Cir. 2019) (holding that defendant's use of plaintiff's trademarks in advertising and brochures was sufficient to establish liability for trademark infringement); *BMW of N. Am., LLC v.*

*Barreira*, 633 F. App'x 882, 884 (9th Cir. 2015) (finding irrelevant the fact that defendant "did not actually complete any sales," because "even an offer to sell goods with an infringing trademark establishes liability under the Lanham Act" (emphasis in original)); *DealerX v. Kahlon*, No. 2:17-cv-1444-MCE-AC, 2017 WL 5664580, at *4 (E.D. Cal. Nov. 27, 2017) ("That defendant does not actually sell or provide the services advertised . . . is immaterial, as 'merely advertising an infringing mark itself is an act of infringement.'") (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 25:26 (5th ed. 2017)). Furthermore, establishing a subscriber base is sometimes a sole source of income for people nowadays (*see* "11 Ways to Make a Living on Social Media Without Selling a Product", last accessed February 23, 2021).[2] Defendant does not deny that it has a large following, and thus the information it disseminates is done so in a commercial and widespread manner.

## VI.   Disputed Claims[3]

Defendant wastes much time addressing the amount of claims in the SAC. It is well settled that a Plaintiff may plead as many causes of action, either consecutive

---

[2] This article includes: 1. Pick a Platform (lists Instagram, Facebook, Twitter and YouTube—all platforms used by Defendant), 3. Boost Your Engagement Rates (lists clicks, reach, audience sentiment, and '[y]ou want users to like, comment, tag, view and share your content'—all tactics employed by Defendant's marketing), 5. Use Multiple Hashtags and 11. Promote Your Services. Defendant does all of the aforementioned using Goode's name and claimed marks.

[3] Although Defendant addresses the RICO allegations, it is not included as a defendant in that claim. To be clear, Gaia is alleged to be the enterprise itself and not a member of the enterprise. *See* SAC at ¶ 125.

or in the alternative, and may lose its chance to do so in the future if not brought at the same time as the others under the doctrine of res judicata or claim preclusion. *Nelson v. Csajaghy*, Civil Action No. 14-cv-02617-CMA-KLM (D. Colo. May 28, 2015). As set forth in Federal Rule of Civil Procedure 8(d)(2), a party pleading in the alternative does not have [to] separately identify the statements as alternative theories in separate counts or factual allegations. Rather, Rule 8(d)(2) states that '[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.' Fed. R. Civ. P. 8(d)(2). In addition, pursuant to Federal Rule of Civil Procedure 8(d)(3), 'a party may state as many separate claims or defenses as it has regardless of consistency.' Fed. R. Civ. P. 8(d)(3), *RV Horizons, Inc. v. Smith*, Civil Action No. 1:18-cv-02780-NYW, at *16-17 (D. Colo. Nov. 15, 2019) (citing *Fagan v. U.S. Carpet Installation*, *Inc*., 770 F.Supp.2d 490, 496 (E.D.N.Y. 2011)).

    **a. Claim III: Federal Trademark Infringement, Claim IV: False Designation of Origin and Federal Unfair Competition, Claim V: Colorado Common Law Trademark and Trade Name Infringement and Claim VI: Colorado Common Law Unfair Competition**

"Courts addressing claims of both trademark infringement and unfair competition address the claims together because they have virtually identical elements[.]" *Cleary  Bldg. Corp. v. David  A. Dame*, *Inc*., 674  F.Supp.2d  1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)). To sufficiently allege a

trademark infringement claim under Section 1125(a)(1)(A), a plaintiff must allege that (1) it has a protectable mark, and (2) that the defendant's use of that mark is likely to cause confusion in the marketplace. *Adams v. Grand Slam Club/Ovis*, No. 12-cv-2938-WJM-BNB, 2014 WL 103782, at *2 (D. Colo. Jan. 10, 2014). Because some of the alleged trademarks at issue here are not registered with the United States Patent and Trademark Office, in order to establish that they have a protectable mark, Plaintiff must establish either that the identifying mark (a) is inherently distinctive, or (b) has acquired distinctiveness through secondary meaning. *See Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d 1245, 1251 (D. Utah 2017). "Marks  that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection," whereas descriptive marks are only protected if they have acquired "secondary meaning." *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-KLM, 2008 WL 878985, at *9 (D. Colo. Mar. 28, 2008). A plaintiff may use direct or circumstantial evidence to establish secondary meaning. *Id*. at *10. Permissible circumstantial evidence to establish secondary meaning includes "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark[,] and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Id*.

Goode has exclusively used its claimed marks/names in commerce for many years and consumers only associate the various names with the services provided by Goode and thus has established enforceable and protectable trademarks in its names. *See* (Docket 111 at ¶38). Plaintiff describes its trademarks and specify which marks are at issue. *See* (id. at ¶39-40). Plaintiff also alleges that Defendant uses the names belonging to Goode, (id. at ¶160, 168-170), and that such use of Plaintiff's trademarked names is "likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the services because they are false or misleading representations regarding the scope of Fund 7, the Smiths, and Dahn's experience and relationship with Plaintiffs." *Id*.

The SAC pleads enough facts, drawing all inferences in favor of Plaintiff, to support a finding of at least secondary meaning. Plaintiff alleges, as laid out in Section IV(a) above, allegations, taken as true and making all inferences in favor of Plaintiff, constitute circumstantial evidence of secondary meaning even without classifying the respective trademarks in the SAC.

"Under established Tenth Circuit law," whether Defendant's use of Plaintiff's marks "is likely to confuse the public in terms of [Defendant] being associated with [Plaintiff]  is a question of fact and should not be determined conclusively on a motion to dismiss." *Id. See also Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1239 (D. Colo. 2009) ("Most courts hold that this

fact-intensive question, however analyzed, is not appropriate for determination on a motion to dismiss, but should be determined on summary judgment or at trial."). "Thus, the [c]ourt need only decide whether [Plaintiff] has pled sufficient facts to make a likelihood of confusion plausible." *Adams*, 2014 WL 103782, at *3. "Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion." *John Allan Co.*, 540 F.3d at 1139. "The focus is on whether the defendant sought to derive benefit from the reputation or goodwill of the plaintiff." *Id*.

"[T]he posting of Plaintiff's [name] onto a . . . website[] is likely to cause confusion as to Plaintiff's affiliation or grant of authority to use the trademark." See *Grady v. Nelson*, No. 12-cv-03004-RM-KMT, 2014 WL 7143852, at *7 (D. Colo. Dec. 15, 2014). Here, Defendant included Plaintiff's names on marketing material available on its website and in its mailings—repeatedly and implicitly referring to Plaintiff as affiliate—allegedly "causing the false image of approval, affiliation or sponsorship by Plaintiff." *See id*. Accordingly, Plaintiff has sufficiently pled "actionable trademark infringement by Defendant." *Id*.

Defendant claims the SAC does not sufficiently allege use in commerce. However, to be commercial advertising, the speech must be:

> (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a classic advertising campaign, but may consist instead of more informal types

of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000) (citing *Gordon & Breach Science Publishers, S.A. v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y 1994)). Commercial speech is that which influences consumers to buy defendant's goods or services. *Strauss v. Angie's List, Inc.*, No. 217CV02560HLTTJJ, 2018 WL 5722561, at *14 (D. Kan. Nov. 1, 2018), aff'd, 951 F.3d 1263 (10th Cir. 2020). Subscribers are a source of income for Defendant, if not *the* main source of income for Defendant. This Court has recently ruled as much, and that—even more specifically—infringing conduct is commercial in nature in and of itself. It has held that "a "[f]inancial benefit exists where the availability of infringing material acts as a draw for customers" and that "[t]he size of the 'draw' relative to a defendant's overall business is immaterial." The court concluded that "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Warner Records Inc. v. Charter Commc'ns, Inc.*, 454 F. Supp. 3d 1069, 1074 (D. Colo. 2020)(internal citations omitted).

Defendant admits that it uses Goode's marks (Docket 128 at 16-18) but claims that such use is not actionable. This is untrue, keywords and adwords have been

found to be actionable since at least 2009. *Rescuecom Corp. v. Google Inc.*, 2009 WL 875447 (2d Cir. April 3, 2009). Goode alleges that Defendant uses its marks to bolster its credibility through association with its names and thus is sufficient to survive dismissal. *See RV Horizons* at *16. The SAC "identif[ies] the mark[s] at issue and at least some instances of misuse" and as such Claims III-VI must go forward to discovery.

### b. Claim VII: Colorado Consumer Protection Act

To prevail on a claim under the CCPA, a plaintiff must prove: (1) the defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1259 (D. Colo. 2014) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

As discussed under Section IV(b) above, Gaia defrauded consumers by continuing to use Goode's content. Gaia also used bribery, witness tampering and counterfeiting to profit off of Goode's name. *Id*. Gaia has hundreds of thousands of subscribers and released a statement, via Jason Rice, with a call to action against Goode. This is sufficient to state a claim.

Courts in this District evaluating claims under the CCPA apply the heightened pleading standards of Rule 9(b). *See, e.g., Adams v. FedEx Ground Package Sys., Inc.*, No. 11-CV-02333-LTB-CBS, 2013 WL 1164426, at *6 (D. Colo. Mar. 1, 2013). Rule 9(b) provides that malice, intent, and other states of mind may be averred generally, but requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The Complaint is to be read as a whole and not in piecemeal fashion for this analysis. *Id*. at 1252.

### c. Claim VIII: Breach of Contract

Defendant—because it challenged all of the claims, instead of the ones that could plausibly be at issue—even challenges perhaps the most straightforward cause of action. It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, *Denver & Rio Grande R.R. Co. v. Iles*, 25 Colo. 19, 25, 53 P. 222, 224 (1898); (2) performance by the plaintiff or some justification for nonperformance, *Walling v. Warren*, 2 Colo. 434, 438-39 (1874); (3) failure to perform the contract by the defendant, *Denver & Rio Grande R.R. Co.*, 25 Colo. at 21, 53 P. at 223; and (4) resulting damages to the plaintiff, *Western Union Tel. Co. v. Trinidad Bean & Elevator Co.*, 84 Colo. 93, 96-97, 267 P. 1068, 1069 (1928). There are many

contracts at issue here, both verbal and written. All of Defendant's challenges go to the weight of the evidence, but this is not appropriate at this juncture. The SAC identifies the contract at issue, identifies what Goode is allegedly entitled to under the contract, and alleges that he did not receive what he was promised under the contract. As Goode asserts in the SAC (as discussed above in Section IV(b)), Defendant breached the contract by failing to pay Plaintiff all the fees owed to Plaintiff under the contract, he was entitled to inspect Gaia's records of sales and receive quarterly reports, and that Gaia violated these terms by not allowing him to inspect the records and "fail[ing] to produce the quarterly reports." (Id. at ¶¶ 27-31.) These allegations are plain, simple, and entirely plausible. *Hildebrand v. Wilmar Corp.*, Civil Action No. 19-cv-00067-RM-NRN, at *6 (D. Colo. Apr. 24, 2019). *Hildebrand* is instructive in this matter in that it involves the same types of contracts and breaches at issue: royalties due and not paid and records that were promised and never provided. Goode's breach of contracts are more than sufficiently pled and must move forward through discovery.

### d. Claim IX: Fraudulent Misrepresentation

The elements of fraudulent misrepresentation are: (1) a fraudulent misrepresentation of material fact; (2) the plaintiffs' reliance on the material representation; (3) the  plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting in damages. *See M.D.C./Wood, Inc. v.*

*Mortimer*, 866 P.2d 1380 (Colo. 1994). As discussed above in Section IV(b) and VI(b)-(c), these are all met. Defendant states this is also barred by the economic loss rule, which does not apply here—and especially not at the motion to dismiss stage.

### e.  Claim XIII: Slander Per Se and Claim XIV: Libel Per Se

"In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another, (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams v. Dist*. *Court*, *Second Judicial Dist*., *City & Cty*. *of Denver*, 866 P.2d 908, 912 n.4 (Colo. 1993). Oral defamation is slander, while that which is written is libel. *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983). Three factors drive a court's analysis as to whether a statement is defamatory: how a statement is phrased (which often reveals how the statement was intended to or reasonably would be perceived); the entire context in which the statement was made (i.e., the court will not focus on any one particular word or phrase) and "all of the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed." *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989).

Defendant released a statement through Jason Rice accusing Goode of moral turpitude by allegedly attacking the Conscious Community (SAC at ¶¶51, 53, 56).

These words imputed conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute and is of such kind as to involve infamous punishment or moral turpitude conveying the idea of major social disgrace. *See Cinquanta v. Burdett*, 388 P.2d 779 (Colo. 1963). Defendant, through Rice, Weidner, or some of its marketing and/or customer service representatives made statements to at least thousands, possibly hundreds of thousands of public persons that Mr. Goode was of irreputable character.

### f.   Claim XV: Tortious Interference with a Business Expectancy

Defendant misstates the law as to Claim XV, but instead of mincing words Plaintiff will focus on the substance of the issues. Tortious interference with business expectancy is an intentional tort actionable under Colorado law. *Examination Bd. of Prof'l Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, Civil Action No 18-cv-01559-RBJ, at *26 (D. Colo. Feb. 10, 2021). The tort applies to those who "intentionally and improperly interfere with another's prospective contractual relation." *Id*., Restatement (Second) of Torts § 766 (1979). The tort applies to those who either (1) induce or cause a "third person to not enter or continue the prospective relation," or (2) prevent "the other from acquiring or continuing the prospective relation." *Id*. Because the tort is forward looking plaintiffs need not prove the existence of an underlying contract to succeed on a tortious interference claim. However, they must demonstrate that the tortfeasor employed intentional and

improper means to prevent a contract's formation. *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981).

Defendant alleges that the element of "wrongful means" is absent here. Certain types of conduct—physical violence, fraud, civil suits, and criminal prosecutions—fall into the Restatement's "wrongful means" category. However, that list is not exhaustive. Other types of conduct can qualify as wrongful if it is "capable of forming the basis for liability of the actor." *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1197 (Colo. App. 2009). Such conduct includes that which is "wrongful by reason of a statute or other regulation [or] a recognized rule of common law. . . ." *Id*. It also includes making statements that are defamatory or contain a "disparaging falsehood." *Id*. (citing *Downey Chiropractic Clinic v. Nampa Rest Corp.*, 900 P.2d 191, 194 (1995)).

As explained above and alleged in the SAC at ¶¶89-99, 118, 206-7, Defendant made false, defamatory and/or disparaging remarks regarding Goode to the heads of major ufology events including conferences that interfered with Goode's regular speaking attendances at said events. He suffered monetary harm because of this (¶118, 206-7).

[GAIA] Defendant states that a "lack of competition" is not alleged but does not explain what it means by this. It seems Gaia alleges that just because it is a competitor with Goode that it cannot possibly be found liable for tortious

interference under this "element" but does not give legal support for this being an element. Gaia does not speak at conferences, nor do the allegations state as such. Gaia was not simply "competing" by causing Goode to be blacklisted by its intentional and willful acts to cause this blacklisting, and Goode was harmed to the tune of tens of thousands of dollars. Even if this was an element of Claim XV, it would be met. To the extent that Gaia is attempting to assert the "Competitor's Privilege", "[a]s the *Robinson* decision makes clear, defamation is sufficient to support a finding of wrongful means in the tortious interference context." *Examination Bd. of Prof'l Home Inspectors* at *28-29.

### g. Claim XVII: Declaratory Judgment of Validity of GES Trademarks

28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act) allows this Court to declare Goode's marks as valid. Section 2201 states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Section 2202 states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

As outlined in the SAC, there are multiple trademarks Gaia has challenged. It would be redundant to litigate at this level and at the TTAB, the TTAB proceeding has been stayed, and this Court has the power to grant Goode this appropriate relief.

## VII.   Attorney's Fees

In good faith and compliance with this Court's Practice Standards, Goode has revised its Complaint to address the issues Defendant has raised. In doing so, Goode has dropped claims that it could have pursued in order to narrow the issues. As evidence of its own inability to work within the system and operate in a showing of good faith, Defendant has still challenged every single one of Goode's claims. This has cost Goode dozens of hours and thousands of dollars and thus Goode should be compensated and awarded fees and sanctions under Colo. Rev. Stat. § 13-17-102. As such, Goode respectfully requests this Court award fees incurred in amending its complaints, conferring with counsel, and responding to its related Motions brought forth only as a delay tactic in order to force Goode to wait even longer before it may be justly compensated and made whole for the injuries caused by Defendant.

## VIII.  Conclusion

Defendant has harmed Goode with its tortious conduct for years now, even after Goode has attempted to settle the issues between the Parties. Defendant continues

its harmful conduct and continues to harm Goode. The Plaintiff deserves the opportunity to explore these actions further in discovery, to present evidence to a judge and jury at trial and be compensated for the harm Goode has suffered. The Court should deny Defendant's Motion and for attorney's fees and instead award fees to Goode and sanctions against Defendant and its counsel for having to respond to Defendant's groundless Motion.

Respectfully submitted this 23rd day of February 2021.

<u>*s/ Valerie A. Yanaros*</u>
Valerie Yanaros, Esq.
State Bar No. 24075628
Yanaros Law, P.C.
15851 Dallas Parkway, Suite 600
Addison, Texas 75001
Tel.: (512) 826-7553
**ATTORNEY FOR PLAINTIFF**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 23rd, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.


By:     <u>s/ Valerie Yanaros</u>
         Valerie Yanaros