IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

                         Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH

                         Defendants.

_____

**PLAINTIFF JAMES COREY GOODE AND GOODE ENTERPRISE
SOLUTIONS, INC.'S RESPONSE TO WEIDNER'S MOTION TO
DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

_____

## I.    Introduction

James Corey Goode ("Mr. Goode") and Good Enterprise Solutions ("GES") (collectively "Goode" or "Plaintiff") file this Response in Opposition to the Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(6) filed by Jay Weidner ("Weidner" or "Defendant") (Docket 129, the "Motion"). This Court should deny Defendant's Motion because Goode has alleged with sufficiency each of the claims it has brought against Defendant. Defendant has, through his wrongful and deliberate actions, deprived Goode of monies owed to Mr. Goode and GES. Further, Defendant has harmed and lessened the goodwill Goode has worked to garner and should not be rewarded for his indiscretions. Defendant's Motion attempts to distract and detract from the heart of the issue: that Defendant has harmed Goode's livelihood financially—currently, in the past and now looking forward into the future should Defendant be allowed to continue its course of misconduct. The other superfluous, irrelevant and bizarre allegations included in Defendant's Motion should be ignored and this Court should deny Defendant's Motion. Defendant either intentionally overlooks, ignores or misapprehends the claims and allegations put forth by Goode or attempts to, through mental gymnastics, make them more complicated than they actually are. The claims as alleged are sufficient to withstand dismissal and any issues of material fact must be determined by a jury.

At the very least, discovery must move forward to allow Plaintiff to obtain the materials that are in Weidner's position and elicit and obtain testimony from those with knowledge pertinent to the claims and issues at bar. Only after discovery in this case would it possibly be appropriate to determine the disposal of any claims, and only after Goode and Defendant (each a "Party", collectively the "Parties") file dispositive motions. To note, existing documents and information pertinent to Goode's claims are within Defendant's possession and recent actions taken by Defendant show those documents and information may be disappearing at the hands and/or direction of Defendant. As such, Defendant's delay tactics should not be allowed to continue and discovery should commence to prevent further harm to Goode and spoliation of the relevant information and documents.

## II.    Background

Plaintiffs' Second Amended Complaint ("SAC", Docket 111) includes state and federal claims for racketeering, deceptive trade practices, defamation, breach of contract, misrepresentation, and tortious interference arising from Defendant's desire to usurp, tarnish and misappropriate the character, financial gain, goodwill and work of Goode.  The SAC lays out the background of Goode's relationship with Weidner, explains how Goode worked diligently to garner goodwill and a presence in the Conscious Community, why Weidner wished to profit off of that goodwill and presence (because of the financial viability connected to it that he sought), and the

offensive and virulent steps that Weidner took in an attempt to do so. These steps taken by Defendant eventually led to Plaintiff filing this lawsuit after those steps increased in prevalence, frequency and intensity. Indeed, Weidner continues to attempt to profit from Goode's name and goodwill and interfere with his business relationships. In fact, only a few months ago Weidner posted on his Facebook page a call-to-action for his followers to interfere with a business deal Mr. Goode and a few other prominent business and media figures were fostering.[1] (*See* Exhibit A, "Goode Dec" at 18, 20-22).

### III.   Applicable Standards

To survive a Rule 12(b)(6) motion, a complaint need not include "detailed factual allegations" as Defendant's Motion claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe the factual allegations in the light most favorable to Plaintiff, and not simply question their veracity. *See Twombly*, 550 U.S. at 555.  Rule 12(b)(6) motions are disfavored and rarely granted. *See Lone Star Indus., Inc. v. Horman Family Trust,* 960 F.2d 917, 920 (10th Cir.1992).

---

[1] Since then, Weidner has taken down his Facebook page—most likely at the behest of his attorneys due to the volume of inappropriate posts he was posting on the matter at hand in an attempt to curtail sanctions from this Court. (*See Painter v. Atwood*, 2014 WL 1089694 D. Nev. Mar. 18, 2014 [Judge issuing adverse inference and sanctions for spoliation of evidence after Defendant deleted Facebook posts after litigation initiated]).

Accordingly, the Court must assess whether the complaint is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).

Defendant attempts to downplay the gravity of its actions through advertising and social media. This Court has recognized the importance of a Plaintiff's goodwill and the harm that may befall it through a Defendant's unauthorized use of its intellectual property or through that Defendant's harmful statements published online. (*See RV Horizons, Inc. v. Smith*, Civil Action No. 1:18-cv-02780-NYW (D. Colo. Nov. 15, 2019), denying Defendants' Motions to Dismiss for, *inter alia*, various unfair competition claims). In order to shorten the SAC but provide sufficient support for its claims, Goode has referenced various postings and print matter that is sufficient to support its claims at the pleading stage. (E.g., SAC at 5,

9, 14, 19, 20, 24). This Court has held that this type of information is sufficient to support a Plaintiff's claims. (*See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081 (10th Cir. 2017), holding that the district court did not err by reviewing a seminar recording and a TV episode on a rule 12(b) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity".)[2]

## IV.   Pertinent Facts

Goode filed suit for various claims related to breach of contract, trademark infringement, unfair competition, and civil RICO violations. The pertinent facts in the SAC are laid out below and grouped into three types of claims: (a) those supporting RICO, (b) those supporting claims for the various types of unfair competition, and (c) those involving false or fraudulent statements or misrepresentations. A separate section addresses commercial use, as it is an issue central to multiple claims and an element disputed by Defendant (e.g., Motion at 11) that may be addressed and disposed of at the outset. As explained below, these claims involve the same basic elements and so the pertinent facts will be referred to in the Disputed Claims section by the applicable Pertinent Facts subsection.

---

[2] Defendant does not question the authenticity of any of the documents referenced, nor can he because most of the documents are self-authenticating in that they come from Defendant's own accounts, files or some other source from which this Court may take judicial notice.

### a. Facts Central to RICO Claims

Specifically, starting in 2015 and continuing until 2020, Weidner has published—and continues to publish—offensive videos, either alone or as guest of another defendant's "show" for the purpose for bashing the Plaintiff and depriving Plaintiff of pecuniary gain. (SAC at ¶¶32-36, 59-70, 89-99, 101-102, 105-114, *See also* Exhibit A). Weidner established relationships with co-defendants, made harmful statements about Plaintiff with the motivation to harm the Plaintiff's livelihood through fraudulent and defamatory statements and worked with several other defendants in this action (namely, Cliff High, Benjamin Zavodnick and Alyssa Montalbano) to disseminate false information through use of mail/email/wires to form the "Association". (Docket 111 ¶¶105-114).

### b. Facts Pertinent to Trademark and Unfair Competition Claims (Claims III-VI)

Plaintiff brings federal law claims related to trademark infringement in which Defendant engages in connection with the other named defendants in this action, including using Plaintiff's registered or unregistered trademarks or some that are confusingly similar which diminishes the Plaintiff's reputation and trademarks. (SAC at ¶¶20-23). Defendant used Plaintiff's claimed marks and names in a manner "drive customers away from [Plaintiff's] products and to solicit business for [Defendant]" (*Atlas Biologicals, Inc. v. Kutrubes*, Civil Action No. 15-cv-00355-CMA-KMT, at *32 (D. Colo. Sep. 23, 2019)).

Goode has been developing his goodwill, branding and intellectual property since at least 2008. *Id*. Goode has filed and received federal registrations on various trademarks. *Id*. Goode is known worldwide and has been invited as a guest on celebrity shows that are seen by hundreds of thousands of audience members worldwide. *Id*., SAC at ¶¶ 38, 119. The Goode Marks have become a source indicator of Goode's goodwill, branding and message and have, as such, acquired secondary meaning. *Id*. at ¶ 38. Goode has taken action to protect his goodwill. *Id*. at ¶ 50. Goode has invested tremendous time, effort and financial resources in his branding and goodwill and has received worldwide recognition. *Id*. at ¶ 148.

### c. Facts Pertinent to False/Fraudulent Misrepresentation Claims (including defamation and tortious interference, Claims VII-IX, XIII-XV)

Plaintiff brings claims related to harmful and false statements in which Defendant engages in connection with the other named defendants in this action, including making promises to Plaintiff that it broke and/or never intended to keep (SAC at ¶¶ 24). Weidner also targeted Plaintiff with defamatory, harmful publicity which diminishes the Plaintiff's reputation and accuses Goode of illegal or immoral practices (SAC at ¶¶ 24-5, 32-36, 59-70, 89-99). He interfered both on and offline with various actors in the Conscious Community to harm Goode while garnering attention off of his notoriety.

## V.       Facts and Law Pertinent to Commercial Speech and Use in Commerce

Defendant is in the business of attracting and keeping subscribers (see, e.g., Weidner's website accessed at http://jayweidner.com/ last accessed February 23, 2021 listing his YouTube channel as the first object of interest). Weidner is a self-touted author and producer, and on his bio lists his current endeavors as appearing on talk shows.[3] To say that Defendant is not a competitor or making commercial use of Goode's names, likenesses and claimed marks is frivolous at best and deceptive at worst. Liability under the Lanham Act can be based on advertising or promotion alone. *See VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1365-66 (Fed. Cir. 2019) (holding that defendant's use of plaintiff's trademarks in advertising and brochures was sufficient to establish liability for trademark infringement); *BMW of N. Am., LLC v. Barreira*, 633 F. App'x 882, 884 (9th Cir. 2015) (finding irrelevant the fact that defendant "did not actually complete any sales," because "even an offer to sell goods with an infringing trademark establishes liability under the Lanham Act" (emphasis in original)); *DealerX v. Kahlon*, No. 2:17-cv-1444-MCE-AC, 2017 WL 5664580, at *4 (E.D. Cal. Nov. 27, 2017) ("That defendant does not actually

---

[3] *See* http://jayweidner.com/bio/ last accessed February 23, 2021: "Since 2012, Jay developed and produced original content for Gaia TV, the online alternative television network for which he develops and produces cutting edge programs and series such as Cosmic Disclosure and Wisdom Teachings starring David Wilcock, Deep Space, a series about the Secret Space Program, Beyond Belief with George Noorey, Open Minds with Regina Meredith, Hidden Origins with Michael Tellinger Hollywood Decoded, and many more. For greater insight into this work, go to www.gaia.com/weidner.

In addition, he continues to be a featured guest on popular radio shows such as Coast to Coast AM, Red Ice, Freeman Fly, Veritas, etc."

sell or provide the services advertised . . . is immaterial, as 'merely advertising an infringing mark itself is an act of infringement.'") (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 25:26 (5th ed. 2017)). Furthermore, establishing a subscriber base is sometimes a sole source of income for people nowadays (*see* "11 Ways to Make a Living on Social Media Without Selling a Product", last accessed February 23, 2021).[4] Defendant regularly employs the "like, comment and share" tactic and include links to his online PayPal for subscribers to "Donate":

---

[4] This article includes: 1. Pick a Platform (lists Instagram, Facebook, Twitter and YouTube—all platforms used by Defendant), 3. Boost Your Engagement Rates (lists clicks, reach, audience sentiment, and '[y]ou want users to like, comment, tag, view and share your content'—all tactics used by Defendant), 5. Use Multiple Hashtags (used by the Defendant) and 11. Promote Your Services. Defendant does all of the aforementioned using Goode's name and claimed marks.



## VI.   Limitations Allegations

Defendant makes various incorrect statements of fact and law regarding limitations periods in its Motion. (Motion at 14 (regarding limitations on unfair competition claims), id. at 8 (in a footnote a bizarre accusation regarding RICO allegations that were not in fact made by Goode)). RICO claims are governed by the "injury-discovery rule" which would mean the limitations period would not even have begun to run until 2018. *See Cracraft v. Utah Valley Univ.*, No. 2:19-cv-397-TC (D. Utah Oct. 19, 2020). In the allegations in the SAC, Goode discovered and felt the injury in 2018, thereby putting the lawsuit well within the applicable

limitations periods. With regard to the unfair competition claims, the SAC allegations state those arose in 2018 (SAC ¶ 151), so even if three years was the statute of limitations for Lanham Act unfair competition (it is not) the suit is still not time-barred.

## VII.   Disputed Claims

Defendant wastes much time (and word count) addressing the character, length and amount of claims in the SAC. It is well settled that a Plaintiff may plead as many causes of action, either consecutive or in the alternative, and may lose its chance to do so in the future if not brought at the same time as the others under the doctrine of res judicata or claim preclusion. *Nelson v. Csajaghy*, Civil Action No. 14-cv-02617-CMA-KLM (D. Colo. May 28, 2015). As set forth in Federal Rule of Civil Procedure 8(d)(2), a party pleading in the alternative does not have [to] separately identify the statements as alternative theories in separate counts or factual allegations. Rather, Rule 8(d)(2) states that '[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.' Fed. R. Civ. P. 8(d)(2). In addition, pursuant to Federal Rule of Civil Procedure 8(d)(3), 'a party may state as many separate claims or defenses as it has regardless of consistency.' Fed. R. Civ. P. 8(d)(3), *RV Horizons, Inc. v. Smith*, Civil Action No. 1:18-cv-02780-NYW, at *16-17 (D. Colo. Nov. 15, 2019) (citing *Fagan v. U.S. Carpet Installation, Inc.*, 770 F.Supp.2d 490, 496 (E.D.N.Y. 2011)).

[address numbering of claims consistent with Original Complaint]

### a. Claim II: Civil RICO Conspiracy

Section VI above explains why there is no limitations bar on this action. Section IV(a) lays out the applicable facts. RICO "provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct." *Robert L. Kroenlein Trust v. Kirchhefer*, 764 F.3d 1268, 1275 (10th Cir. 2014). RICO prohibits "conducting an enterprise's affairs through a pattern of racketeering activity." *Klehr v. A.O. Smith Corp*., 521 U.S. 179, 183 (1997) (citing 18 U.S.C. § 1962).

To state a civil RICO cause of action, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473  U.S. 479, 496 (1985). "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as any act which is indictable under federal law.... These underlying acts are referred to as predicate acts, because they form the basis for liability under RICO." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (internal cite and quotation marks omitted). A plaintiff must allege at least two predicate acts. *Klehr*, 521 U.S. at 183.

Weidner caused the use of the mails, and interstate wires for the purpose of defrauding Plaintiffs of at least tens of thousands of dollars.   Some representations of these mailings and interstate wirings (the "conduct"), which consist of electronic

messages which constitute interstate transmissions and interstate telephone calls between Weidner and Plaintiff are included in the Appendix in Support of the SAC—namely, Docket 61-6 and 61-7. Similarly, the transmissions contained in the actual body of the SAC constitute an ongoing pattern of racketeering activity under 18 U.S. Code § 1962(c). The enterprise is (at least) Weidner, Montalbano, High and Zavodick formed to deprive Plaintiff of financial gain owed to it. As explained, the conduct is plentiful and ongoing.

   **b. Claim III: Federal Trademark Infringement, Claim IV: False Designation of Origin and Federal Unfair Competition, Claim V: Colorado Common Law Trademark and Trade Name Infringement and Claim VI: Colorado Common Law Unfair Competition**

"Courts addressing claims of both trademark infringement and unfair competition address the claims together because they have virtually identical elements[.]" *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F.Supp.2d 1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)). To sufficiently allege a trademark infringement claim under Section 1125(a)(1)(A), a plaintiff must allege that (1) it has a protectable mark, and (2) that the defendant's use of that mark is likely to cause confusion in the marketplace. *Adams v. Grand Slam Club/Ovis*, No. 12-cv-2938-WJM-BNB, 2014 WL 103782, at *2 (D. Colo. Jan. 10, 2014). Because some of the alleged trademarks at issue here are not registered with the United States

Patent and Trademark Office, in order to establish that they have a protectable mark, Plaintiff must establish either that the identifying mark (a) is inherently distinctive, or (b) has acquired distinctiveness through secondary meaning. *See Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d 1245, 1251 (D. Utah 2017). "Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection," whereas descriptive marks are only protected if they have acquired "secondary meaning." *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-KLM, 2008 WL 878985, at *9 (D. Colo. Mar. 28, 2008). A plaintiff may use direct or circumstantial evidence to establish secondary meaning. *Id*. at *10. Permissible circumstantial evidence to establish secondary meaning includes "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark[,] and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Id*.

Goode has exclusively used its claimed marks/names in commerce for many years and consumers only associate the various names with the services provided by Goode and thus has established enforceable and protectable trademarks in its names. *See* (Docket 111 at ¶38). Plaintiff describes its trademarks and specify which marks are at issue. *See* (id. at ¶39-40). Plaintiff also alleges that Defendant uses the names belonging to Goode, (id. at ¶160, 168-170), and that such use of Plaintiff's

trademarked names is "likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the services because they are false or misleading representations regarding the scope of Fund 7, the Smiths, and Dahn's experience and relationship with Plaintiffs." *Id*.

The SAC pleads enough facts, drawing all inferences in favor of Plaintiff, to support a finding of at least secondary meaning. Plaintiff alleges, as laid out in Section IV(b) above, allegations, taken as true and making all inferences in favor of Plaintiff, constitute circumstantial evidence of secondary meaning even without classifying the respective trademarks in the SAC.

"Under established Tenth Circuit law," whether Defendant's use of Plaintiff's marks "is likely to confuse the public in terms of [Defendant] being associated with [Plaintiff]  is a question of fact and should not be determined conclusively on a motion to dismiss." *Id. See also Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1239 (D. Colo. 2009) ("Most courts hold that this fact-intensive question, however analyzed, is not appropriate for determination on a motion to dismiss, but should be determined on summary judgment or at trial."). "Thus, the [c]ourt need only decide whether [Plaintiff] has pled sufficient facts to make a likelihood of confusion plausible." *Adams*, 2014 WL 103782, at *3. "Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion."

*John Allan Co.*, 540 F.3d at 1139. "The focus is on whether the defendant sought to derive benefit from the reputation or goodwill of the plaintiff." *Id*.

"[T]he posting of Plaintiff's [name] onto a . . . website[] is likely to cause confusion as to Plaintiff's affiliation or grant of authority to use the trademark." See *Grady v. Nelson*, No. 12-cv-03004-RM-KMT, 2014 WL 7143852, at *7 (D. Colo. Dec. 15, 2014). Here, Defendant included Plaintiff's names on or near marketing material available on his websites (mainly YouTube and Facebook, from which he receives payments from subscribers)—repeatedly and implicitly referring to Plaintiff—"causing (at least momentarily) the false image of approval, affiliation or sponsorship by Plaintiff." *See id*. Accordingly, Plaintiff has sufficiently pled "actionable trademark infringement by Defendant." *Id*.

Defendant claims the SAC does not sufficiently allege use in commerce. However, to be commercial advertising, the speech must be:

> (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000) (citing *Gordon & Breach Science Publishers, S.A. v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y 1994)). Commercial speech is that which influences

consumers to buy defendant's goods or services. *Strauss v. Angie's List, Inc.*, No. 217CV02560HLTTJJ, 2018 WL 5722561, at *14 (D. Kan. Nov. 1, 2018), aff'd, 951 F.3d 1263 (10th Cir. 2020). Subscribers are a source of income for Defendant, if not *the* main source of income for Defendant. This Court has recently ruled as much, and that—even more specifically—infringing conduct is commercial in nature in and of itself. It has held that "a "[f]inancial benefit exists where the availability of infringing material acts as a draw for customers" and that "[t]he size of the 'draw' relative to a defendant's overall business is immaterial." The court concluded that "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Warner Records Inc. v. Charter Commc'ns, Inc.*, 454 F. Supp. 3d 1069, 1074 (D. Colo. 2020)(internal citations omitted).

Defendant admits that it uses Goode's marks (SAC at 11) but claims that such use is not actionable. This is untrue, keywords and adwords have been found to be actionable since at least 2009. *Rescuecom Corp. v. Google Inc.*, 2009 WL 875447 (2d Cir. April 3, 2009). Goode alleges that Defendant uses its marks to bolster its credibility through association with its names and thus is sufficient to survive dismissal. *See RV Horizons* at *16. The SAC "identif[ies] the mark[s] at issue and

at least some instances of misuse" and as such Claims III-VI must go forward to discovery.

**Claim VII: Colorado Consumer Protection Act**

To prevail on a claim under the CCPA, a plaintiff must prove: (1) the defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1259 (D. Colo. 2014) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

This is untrue, keywords and adwords have been found to be actionable since at least 2009. *Rescuecom Corp. v. Google Inc.*, 2009 WL 875447 (2d Cir. April 3, 2009). Goode alleges that Defendant uses Goode's marks to bolster his credibility through association with its names and thus is sufficient to survive dismissal. *See RV Horizons* at *16. As described above, Weidner is an author and producer with now twelve thousand followers on YouTube. He uses Goode's intellectual property to route YouTubers to his site instead of Goode's.

Courts in this District evaluating claims under the CCPA apply the heightened pleading standards of Rule 9(b). *See, e.g., Adams v. FedEx Ground Package Sys.,*

*Inc.*, No. 11-CV-02333-LTB-CBS, 2013 WL 1164426, at *6 (D. Colo. Mar. 1, 2013). Rule 9(b) provides that malice, intent, and other states of mind may be averred generally, but requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The Complaint is to be read as a whole and not in piecemeal fashion for this analysis. *Id*. at 1252. Read as a whole, the SAC sufficiently alleges trademark and unfair competition claims against Weidner. The SAC "identif[ies] the mark[s] at issue and at least some instances of misuse" and as such Claims III-VI must go forward to discovery.

### c. Claim VIII: Breach of Contract

Defendant—because it challenged all of the claims, instead of the ones that could plausibly be at issue—even challenges perhaps the most straightforward cause of action. It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, *Denver & Rio Grande R.R. Co. v. Iles*, 25 Colo. 19, 25, 53 P. 222, 224 (1898); (2) performance by the plaintiff or some justification for nonperformance, *Walling v. Warren*, 2 Colo. 434, 438-39 (1874); (3) failure to perform the contract by the defendant, *Denver & Rio Grande R.R. Co.*, 25 Colo. at 21, 53 P. at 223; and (4) resulting damages to the plaintiff, *Western Union Tel. Co. v. Trinidad Bean &*

*Elevator Co.*, 84 Colo. 93, 96-97, 267 P. 1068, 1069 (1928). There are many contracts at issue here, both verbal and written. All of Defendant's challenges go to the weight of the evidence, but this is not appropriate at this juncture. The SAC identifies the contract at issue, identifies what Goode is allegedly entitled to under the contract, and alleges that he did not receive what he was promised under the contract. As Goode asserts in the Complaint, Defendant breached the contract in which he agreed to abide by Gaia policies and procedures as they pertain to safeguarding Goode's confidential and proprietary information. Defendant breached this contract by disseminating Goode's private information. Goode has been harmed because the release of that information has resulted in a loss of followers and business deals. These allegations are plain, simple, and entirely plausible. *Hildebrand v. Wilmar Corp.*, Civil Action No. 19-cv-00067-RM-NRN, at *6 (D. Colo. Apr. 24, 2019). Goode's breach of contracts are more than sufficiently pled and must move forward through discovery.

### d. Claim XIII: Slander Per Se and Claim XIV: Libel Per Se

"In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another, (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams*

*v. Dist. Court, Second Judicial Dist., City & Cty. of Denver*, [866 P.2d 908, 912](#) n.4 (Colo. 1993). Oral defamation is slander, while that which is written is libel. *Walters v. Linhof*, [559 F. Supp. 1231, 1234](#) (D. Colo. 1983). Three factors drive a court's analysis as to whether a statement is defamatory: how a statement is phrased (which often reveals how the statement was intended to or reasonably would be perceived); the entire context in which the statement was made (i.e., the court will not focus on any one particular word or phrase) and "all of the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed." *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989).

The record is replete with harmful accusations that Weidner has made since at least 2018. *See* Exhibit A, SAC. These words imputed conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute and are of such kind as to involve infamous punishment or moral turpitude conveying the idea of major social disgrace. *See Cinquanta v. Burdett*, 388 P.2d 779 (Colo. 1963). Defendant made statements to at least thousands, possibly tens of thousands of public persons that Mr. Goode was a criminal on various levels. Weidner published them in videos are verbal and in emails, copy on videos, and social media posts as written. As such, Claims XIII and IX must not be dismissed.

### e.  Claim XV: Tortious Interference with a Business Expectancy

Defendant misstates the law as to Claim XV, but instead of mincing words Plaintiff will focus on the substance of the issues. Tortious interference with business expectancy is an intentional tort actionable under Colorado law. *Examination Bd. of Prof'l Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, Civil Action No 18-cv-01559-RBJ, at *26 (D. Colo. Feb. 10, 2021). The tort applies to those who "intentionally and improperly interfere with another's prospective contractual relation." *Id*., Restatement (Second) of Torts § 766 (1979). The tort applies to those who either (1) induce or cause a "third person to not enter or continue the prospective relation," or (2) prevent "the other from acquiring or continuing the prospective relation." *Id*. Because the tort is forward looking plaintiffs need not prove the existence of an underlying contract to succeed on a tortious interference claim. However, they must demonstrate that the tortfeasor employed intentional and improper means to prevent a contract's formation. *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981).

Defendant alleges that the element of "wrongful means" is absent here. Certain types of conduct—physical violence, fraud, civil suits, and criminal prosecutions—fall into the Restatement's "wrongful means" category. However, that list is not exhaustive. Other types of conduct can qualify as wrongful if it is "capable of forming the basis for liability of the actor." *Harris Grp., Inc. v. Robinson*, 209

P.3d 1188, 1197 (Colo. App. 2009). Such conduct includes that which is "wrongful by reason of a statute or other regulation [or] a recognized rule of common law. . . ." *Id*. It also includes making statements that are defamatory or contain a "disparaging falsehood." *Id*. (citing *Downey Chiropractic Clinic v. Nampa Rest Corp.*, 900 P.2d 191, 194 (1995)).

As explained above and alleged in the SAC at ¶¶89-99, 118, 206-7, Defendant made false, defamatory and/or disparaging remarks regarding Goode to the heads of major ufology events including conferences that interfered with Goode's regular speaking attendances at said events. He suffered monetary harm because of this (¶118, 206-7).

## VIII.  Attorney's Fees

In good faith and compliance with this Court's Practice Standards, Goode has revised its Complaint to address the issues Defendant has raised. In doing so, Goode has dropped claims that it could have pursued in order to narrow the issues. As evidence of its own inability to work within the system and operate in a showing of good faith, Defendant has still challenged every single one of Goode's claims. This has cost Goode dozens of hours and thousands of dollars and thus Goode should be compensated and awarded fees and sanctions under [____]. [authority where challenging all claims is show of bad faith.] As such, Goode respectfully requests this Court award fees incurred in amending its complaints, conferring with counsel,

and responding to its related Motions brought forth only as a delay tactic in order to force Goode to wait even longer before it may be justly compensated and made whole for the injuries caused by Defendant.

## IX.     Conclusion

Defendant has harmed Goode with its tortious conduct for years now, even after Goode has attempted to settle the issues between the Parties. Defendant continues its harmful conduct and continues to harm Goode.   The Plaintiff deserves the opportunity to explore these actions further in discovery, to present evidence to a judge and jury at trial and be compensated for the harm Goode has suffered.   The Court should deny Defendant's Motion and for attorney's fees and instead award fees to Goode and sanctions against Defendant and its counsel for having to respond to Defendant's groundless Motion.


Respectfully submitted this 23rd day of February 2021.

_s/ Valerie A. Yanaros_
Valerie Yanaros, Esq.
State Bar No. 24075628
Yanaros Law, P.C.
15851 Dallas Parkway, Suite 600
Addison, Texas 75001
Tel.: (512) 826-7553
**ATTORNEY FOR PLAINTIFF**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23rd, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.


By:   s/ Valerie Yanaros
      Valerie Yanaros