IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

                                                                        Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA RYSAVY,
BRAD WARKINS, and KIERSTEN MEDVEDICH

                                                                         Defendants.

_____

**DEFENDANT JAY WEIDNER'S REPLY IN SUPPORT OF MOTION TO DISMISS**
_____

**COMES NOW,** Jay Weidner ("Weidner"), through undersigned counsel, and hereby submits this *Reply in Support of Motion to Dismiss*, and in support provides the following:

### INTRODUCTION

Plaintiffs' Response to Weidner's Motion to Dismiss ("Response") makes unsupported and conclusory statements to create a "factual" narrative that was entirely omitted from the Second Amended Complaint ("SAC"). Plaintiffs fundamentally misunderstand the pleading requirements: they must support their claims against Weidner with specific factual allegations actually pled in the SAC. They have not done so despite having multiple bites of the apple. The claims against Weidner must therefore be dismissed.

**ARGUMENT**

Plaintiffs fail to rebut arguments raised in Weidner's Motion to Dismiss ("Motion"), make inappropriate arguments, and add "facts" that were never alleged in the SAC.[1] This Court must look to what Plaintiffs *actually pled*—not to Plaintiffs' post-hoc additions asserted in their Response. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[T]he sufficiency of the complaint must rest on its contents alone"). Because Plaintiffs' claims are unsupported by factual allegations—and Plaintiffs failed to rebut Weidner's arguments—the claims must be dismissed.

### I. Plaintiffs' SAC Fails to Comply with Rule 8

Although Plaintiffs may bring many causes of action, those claims must comply with Rule 8. F.R.C.P. 8. Plaintiffs' SAC does not meet this standard. It fails to distinguish between defendants, incorporates by reference the entire SAC into each claim, and asserts many claims against "all Defendants" when such assertions are nonsensical and unsupported by specific factual allegations. Because Plaintiffs' SAC fails to comport with Rule 8, this Court should dismiss it. *See Robbins v. Okla. ex rel Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

### II. Plaintiffs' Claims Fail Under Rule 12(b)(6)

Separately, this Court must dismiss the claims asserted against Weidner because Plaintiffs failed to rebut arguments raised in Weidner's Motion and do not plead factual allegations to support their claims—instead resorting to bare legal conclusions and conclusory

---

[1] Plaintiffs also accuse Weidner of making certain posts, later deleted, mentioning possible spoliation sanctions. *Response*, p.4 n.1. This veiled accusation borders on bad faith because Plaintiffs threatened additional frivolous litigation based on some of these posts, and the parties subsequently engaged in settlement communications where Weidner agreed to take down these posts (without admitting liability) *per Plaintiffs' explicit request*. Thereafter, Plaintiffs confirmed and thanked Weidner for the removal.

2

statements, which are not entitled to the presumption of truth and "do not suffice." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Because the SAC fails to state a claim against Weidner and further amendments are futile—indeed, Plaintiffs do not request leave to further amend—this Court should dismiss Plaintiffs' claims with prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

### *a. Claim II is Conclusory and Fails to Sufficiently Plead Factual Allegations*

Plaintiffs assert a RICO claim (Claim II) against Weidner, alleging he "conspired to violate section 1962(c)" because he "agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering" as described in Claim I. *SAC*, ¶ 142; *but see SAC*, ¶¶ 123–40 (Claim I describes only Gaia Defendants' alleged racketeering activities—with no mention of Weidner). Because this claim absurdly alleges that Weidner conspired to participate in affairs that Plaintiffs limit *solely* to the Gaia Defendants, Plaintiffs have alleged *none* of the elements required to state a RICO claim against Weidner. *See Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (RICO elements). Moreover, Plaintiffs do not allege with particularity the claims sounding in mail and wire fraud, as required by Rule 9(b). *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006); *see also SAC*, ¶¶ 130–33 (alleging mail and wire fraud as to *only* Gaia Defendants).

Despite Weidner's Motion articulating these errors, Plaintiffs failed to address them in their Response. Nor did Plaintiffs bother to identify *which* factual allegations in the SAC support Claim II against Weidner—let alone with the particularity required. The reason for this omission is simple: no such facts exist in the SAC.

Instead, Plaintiffs allege for the first time that "Weidner caused the use of the mails, and interstate wires for the purpose of defrauding Plaintiffs of at least tens of thousands of dollars."

3

*Response*, pp.13–14 (failing to cite to the SAC); *but see SAC*, ¶ 142 (making *no* mention any of these allegations). Plaintiffs' post-hoc addition cannot save their legally deficient claim.

Notwithstanding the novel claim that Weidner engaged in mail/wire fraud, Plaintiffs *still* fail to plead or identify any factual allegations in the SAC supporting that claim. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991) (mail fraud elements); *BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (wire fraud elements). Plaintiffs do not allege any of the elements of either fraud, including the specific existence of a scheme, intent to defraud (representation, falsity, materiality), ignorance of falsity, right to rely, injury, or use of mail/wire in executing the scheme. Instead, Plaintiffs cite to documents they attached to the SAC—alleged emails between Weidner to Goode. *Response*, pp. 13–14 (citing Docket 61-6 and 61-7 as supporting Claim II against Weidner).[2] However, these two emails do not show the conduct of an enterprise through a pattern of racketeering activity, show a scheme to defraud on false pretenses, or otherwise provide any sort of factual support for a RICO claim—let alone plead these elements with particularity.[3]

Accordingly, Plaintiffs' RICO claim is legally deficient, and this Court should dismiss Claim II as to Weidner. *See Davison v. Grant Thornton LLP*, 582 F. App'x 773, 775 (10th Cir.

---

[2] *But see Gee*, 627 F.3d at 1186. Even if this Court considers the attachments, they are wholly insufficient to support a RICO claim as a matter of law. Nevertheless, this Court should not consider them and should not convert the Motion into one for summary judgment.

[3] Plaintiffs' reliance on these documents as supporting a RICO claim only corroborates Weidner's characterization of this lawsuit as a media stunt based on Plaintiffs' antagonistic over-the-internet relationships with the defendants. To assert a RICO claim based on these two emails by characterizing them as somehow constituting mail or wire fraud lacks substantial justification. § 13-17-102(4), C.R.S. Allowing such an infirm claim to proceed would inundate the courts with frivolous lawsuits based nothing more than vague emails between two private individuals.

2014) (affirming dismissal of RICO claim where "Plaintiff's complaint . . . makes no attempt to identify predicate offenses under § 1961(1), and we can discern none").

### b. Notwithstanding Plaintiffs' Post-Hoc Additions, Claims III, IV, V, and VI Still Fail to State a Plausible Claims for Relief [4]

Plaintiffs' claims for federal trademark infringement (Claim III), false designation of origin (Claim IV), and federal and state unfair competition (Claim V, Claim VI) fail to plausibly plead the *specific* marks Weidner used, the marks' distinctiveness, any infringing use in commerce, and any likelihood of confusion. *See 1-800 Contacts, Inc. v. Lens.com Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (elements of infringement and unfair competition claims); *Durango Herald, Inc. v. Hugh A. Riddle & Riddle Directories, Inc.*, 719 F. Supp. 941, 946 (D. Colo. 1988) (elements for claims of false designation); *Am. Furniture Co., v. Am. Furniture Co.*, 261 P.2d 163, 166 (Colo. 1953) (elements for Colorado unfair competition claim). To the extent these claims are grounded in fraud, Rule 9(b)'s particularity requirement applies. F.R.C.P. 9(b).

As pled, it is wholly speculative how Weidner's alleged actions meet the elements for any of these claims. First, Plaintiffs fail to allege which mark(s) Weidner purportedly infringed on, any details about when such infringement allegedly occurred, and in what context the marks were allegedly used. Notably, Plaintiffs do not bother to clarify this in their Response. *See Response*, pp.14–19. Instead of identifying which specific marks Weidner allegedly used, Plaintiffs simply cite to all their alleged marks. *Response*, p.15 (citing SAC, ¶¶ 38–40); *but see RV Horizons, Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 WL 6052416, at *8 (plaintiff "must allege sufficient facts for the defendants and the court to identify the mark at issue and at least some instances of misuse"). Moreover, to the extent Plaintiffs' claims are based on unregistered

---

[4] Weidner will address these claims in the same manner as Plaintiffs' Response addresses them.

marks that are merely descriptive, they failed to allege specific facts (rather than legal conclusions) that such marks are protectable and acquired a distinctiveness through secondary meaning. *Id.* at *5; *Am. Furniture Co.*, 261 P.2d at 166 (Colorado unfair competition claim requires that the name "must have acquired a secondary meaning or significance that identifies the plaintiff").

Second, Plaintiffs failed to allege how Weidner used an infringing mark "in connection with any goods or services." *Cleary Bldg. Corp. v. David A Dame, Inc.*, 674 F. Supp. 2d 1257, 1267 (D. Colo. 2009). Instead, Plaintiffs once again cite to the threadbare legal elements of their claims—which does not suffice. *See Response*, pp. 15–16 (citing *SAC* ¶ 160, 168–70 to rebut Weidner's arguments).[5]

Plaintiffs hurriedly attempt to supplement their deficient claims by adding "facts" about Weidner's alleged business and use of the mark(s) on his websites. *Response*, pp. 9, 17. Again, Plaintiffs' Response cannot save their legally deficient SAC, which does not plead *any* of these allegations as to Weidner. *See SAC*, ¶ 67 (mentioning "Sphere Being Alliance" in summary of video, stating Weidner will be discussing "the threats and name calling by the Sphere Being Alliance"). It is patently unclear how this alleged "use" (really, more of a mention) constituted a use in commerce, was used against Plaintiffs' business, or was likely to confuse consumers rather than simply being "fair use"—another argument Plaintiffs failed to rebut. In fact, Plaintiffs' new allegation squarely contradicts the SAC's allegations regarding Weidner's

---

[5] Plaintiffs argue Weidner admitted that he uses Goode's marks. *Response*, p.18 (citing SAC at 11). Plaintiffs' citation is unavailing. *See SAC*, p.11 (pertaining to allegations against Gaia); *SAC*, ¶ 11 (pertaining to Ms. Montalbano). If Plaintiffs are referring to Weidner's Motion at page 11, the argument contained therein fully explains why Weidner's mention of the single mark in the summary of a YouTube video utterly fails to satisfy the elements of these claims—an argument that Plaintiffs failed to rebut.

critique of Plaintiffs' dogma. *See, e.g.*, SAC, ¶¶ 66–67 (Weidner's channel "devoted almost solely to harassing and invading" Plaintiffs' privacy and "ridicules and harasses" Plaintiffs); *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1042–43 (10th Cir. 2008) (Lanham Act intended "to protect the ability of consumers to distinguish among competing producers, not to prevent all unauthorized uses[,]" and "trademark rights cannot be used to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.") (Cleaned up). As alleged in the SAC, Weidner's use—if any—of Plaintiffs' marks constitutes fair use and an expression of his opinion about Plaintiffs' goods and services—*not* use in connection with a good/service of a competing producer or likely to cause confusion. It is thus not actionable. *Id.* (stating "the defendant . . . must use the mark in connection with the goods or services of a competing producer, not merely to make a comment on the trademark owner's goods or services").

Finally, rather than citing to specific factual allegations in the SAC, Plaintiffs again cite to threadbare legal conclusions to show that Weidner's alleged use—whatever it may be—is likely to cause confusion. *Response*, pp.16–17 (citing SAC, ¶¶ 160, 168–70); *but see SAC*, ¶¶ 66–67. Given that Plaintiffs admit Weidner ridicules Plaintiffs, there is *no likelihood* that Weidner is confusing potential consumers. *See John Allan Co. v. Craig Allen Co. LLC*, 540 F.3d 1133, 1138 (10th Cir. 2008) (factors of confusion). Here, Plaintiff failed to plead sufficient facts to make likelihood of confusion plausible. *Adams v. Grand Slam Club/Ovis*, No. 12-cv-2938-WJM-BNB, 2014 WL 103782, at *2 (D. Colo. Jan. 10, 2014).

Plaintiffs cannot simply allege the bald legal elements of these claims to survive a motion to dismiss—such conclusory statements "do not suffice." *Iqbal*, 566 U.S. at 678. Claims III, IV, V, and VI should therefore be dismissed.

### c. *Claim VII Consists of a Threadbare Recital Without Supporting Factual Allegations*

Plaintiffs' Colorado Consumer Protection Act ("CCPA") claim fails as a matter of law because Plaintiffs do not plausibly and specifically plead the claim. Although Plaintiffs concede that Rule 9(b) applies (*Response*, p. 19), Plaintiffs nevertheless state that "[t]he Complaint is to be read as a whole and not in piecemeal for this analysis" and in so doing, the SAC "identifies the marks at issue and at least some instances of misuse and as such Claims III–VI must go forward to discovery" (*Response*, p.20).[6] Plaintiffs cannot simply point to the entire forty-two-page SAC as pleading a CCPA claim—especially when it must be pled with particularity.

Thereafter, Plaintiffs do not address any of the arguments that Weidner raised—that Plaintiffs merely recited the threadbare legal elements, failed to support their conclusory recitations with factual allegations, did not make any allegations as to Weidner's business, did not allege what goods or services he sought to pass off, and failed to allege how Weidner's actions impacted the public as consumers of these non-specified goods or services. Instead, bizarrely, Plaintiffs make an inapplicable argument regarding keywords and adwords, citing a case from the Second Circuit—which does not apply or govern this Colorado state claim. *Response*, p.19.

Plaintiffs again add unsupported "facts" to bolster their infirm CCPA claim. *Response*, p.19 (not citing the SAC for new facts related to Weidner's alleged profession and social media followers). This Court should not condone Plaintiffs' tactic of adding new "facts" that were

---

[6] The CCPA claim is not part of claims II–VI. It is claim VII.

entirely left out of the SAC. Because Plaintiffs fail to appropriately plead this claim despite conceding that Rule 9(b) applies, this Court must dismiss this claim.

### d.   *Claim VIII Fails to Allege the Basic Elements as to Weidner*

Plaintiffs blame Weidner for challenging "perhaps the most straightforward cause of action." *Response*, p.20.[7] But Plaintiffs fail to plead what is perhaps the most fundamental part of this straightforward claim—they do not even allege the existence of a contract between Weidner and Plaintiffs. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (elements of claim includes "existence of a contract").

To rebut Weidner's contention that there was no contract, Plaintiffs inexplicably claim "[t]here are many contracts at issue here, both verbal and written." *Response*, p.21; *but see generally SAC* (failing to allege existence of any contract—verbal or written—between Weidner and Plaintiffs). There is *no* contract between Weidner and Plaintiffs—which is why Weidner's Motion argued for dismissal.

Rather than addressing this fundamental point, Plaintiffs bizarrely claim that Weidner's challenge goes "to the weight of the evidence"—another argument that makes no sense given the fatal failure to even plead the existence of a contract. Plaintiffs further claim (again without citing the SAC) that Weidner "breached the contract in which he agreed to abide by Gaia policies and procedures as they pertain to safeguarding Goode's confidential and proprietary information." *Response*, p.21; *but see generally SAC*, ¶¶ 25–31 (no such contract alleged). Plaintiffs' Response confirms their claim is premised on Weidner's alleged breach of his contract

---

[7] Throughout this lawsuit, Plaintiffs have broadly lumped all defendants together. They do so again in this motions practice—indeed, Plaintiffs Response is almost identical to their Response to Gaia's Motion to Dismiss. *Compare* ECF No. 152 (Response to Gaia) *with* ECF No. 153 (Response to Weidner). Thus, Weidner is unsure whether this statement is directed at him or Gaia.

*with Gaia*. But Plaintiffs lack standing to bring such a claim—a wholly separate reason to dismiss this claim. *See Bewley v. Semler*, 432 P.3d 582, 586–87 (Colo. 2018). Plaintiffs entirely failed to address this point.

Plaintiffs' conclusory breach of the implied duty of good faith and fair dealing claim fails for the same reasons that their breach of contract claim fails. *See id.*; *SAC*, ¶ 187. Because Plaintiffs fail to state a plausible claim for relief as to Weidner, Claim VIII must be dismissed.

### e. Claims XIII and XIV Fail to Plead Even the Minimum Legal Requirements to Sustain Defamation Claims

Goode confesses he is a public figure (*SAC*, ¶ 2)—someone who thrust himself to the forefront of public controversies and invites attention and comment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). Despite this, Plaintiffs fail to plead actual malice—an essential requirement when pleading defamation against public figures. *Id.* at 328. Plaintiffs likewise fail to rebut this argument in their Response, along with Weidner's argument that Plaintiffs must plead special damages in absence of defamation per se. *See Response*, pp.21–23.

Plaintiffs also fail to plead *which* statements were defamatory. Instead, Plaintiffs' claims are generic regurgitations of the elements for defamation—threadbare recitals supported by conclusory statements, which are not entitled to the presumption of truth and "do not suffice." *Iqbal*, 556 U.S. at 678. Although Weidner articulated these deficiencies, Plaintiffs fail to identify *any* specific factual allegations—along with any specific statements Weidner allegedly made—supporting their conclusory defamation claims.

Instead, Plaintiffs claim that "[t]he record is replete with harmful accusations that Weidner has made since at least 2018" and cite to all attachments to the SAC, alleging that Weidner made statements that Goode (an admitted public figure) "was a criminal on various

levels." *Response*, p.22.[8] Regardless of whether these numerous attachments are appropriate, *none* of these exhibits show that Weidner defamed Goode.

Exhibits A, B, C, G, H, I, J, K, and N pertain to other defendants and are inapplicable to Weidner. (ECF Nos. 61-3, 61-4, 61-5, 61-9, 61-10, 61-11, 61-12, 61-13, 61-16).

To the extent other attachments even reference Weidner, they fail to show that Weidner made a defamatory statement, identify the allegedly defamatory statement, show publication to third parties, allege fault amounting to negligence/malice, and plausibly plead damages. *Stump v. Gates*, 777 F. Supp. 808, 825 (D. Colo. 1991) (defamation elements).

Exhibits D and F are emails allegedly sent by Weidner to Goode and do not support Plaintiffs' defamation claim. (ECF Nos. 61-6, 61-7). As a matter of law, there are no defamatory statements in these emails. *Zueger v. Goss*, 343 P.3d 1028, 1034 (Colo. App. 2014) (courts determine as a matter of law "[w]hether a statement is defamatory" and "whether allegedly defamatory language is constitutionally protected opinion"). Also, they were not published to a third party—instead, they were sent directly to Goode. Finally, there is no indication that these emails could have damaged Goode because they were private.

Exhibit F shows title cards for a YouTube channel with a clever play on words because of special guest Clif High. (ECF No. 61-8). There is nothing defamatory about these title cards.

Exhibits L and M appear to be irrelevant affidavits full of hearsay from an individual who claims that Weidner was working with Zavodnick to "destroy" Goode, opining that Weidner (and the other defendants) "may be working with and supporting Zavodnick," and claiming that

---

[8] Defamation has a one-year statute of limitation. § 13-80-103(1)(a), C.R.S. If Plaintiffs are relying on alleged statements made in 2018, those claims are time-barred and likewise warrant dismissal.

11

Weidner promoted social media posts that originated with Zavodnick and were directed towards Plaintiffs. (ECF No. 61-14, 61-15). Beyond being improper attachments, these documents are wholly irrelevant, do not identify with specificity what statements were allegedly defamatory, when such statements were made, or to whom the statements were made. They do not support defamation claims.

In sum, *none* of the above supports Plaintiffs' arguments. *Proffitt v. Cornuke*, No. CIV.A. 03-CV-00810JL, 2005 WL 2171860, at *2 (Motion to dismiss may be granted where the "allegedly defamatory statements . . . are either too vague to state a claim for defamation or, if accurately reported, are not defamatory as a matter of law."); *Hogan v. Winder*, 762 F.3d 1096, 1107 (10th Cir. 2014) (affirming Rule 12(b)(6) dismissal of defamation claims).

Plaintiffs are using this litigation to maliciously chill Weidner's constitutionally protected right of free speech. Prompt resolution of this claim through dismissal is therefore warranted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 138 F. Supp. 3d 1191, 1199 (D. Colo. 2015), *aff'd* 861 F.3d 1081 (10th Cir. 2017). Because Plaintiffs' defamation claims are conclusory, vague, and fail to state a claim for defamation, they must be dismissed.

### *f. Plaintiffs' Post-Hoc Attempt to Save Claim XV is Unavailing*

Plaintiffs cannot escape the fact the SAC alleges only that Weidner "spoke to the heads of [conferences] and told them not to invite Goode to their Conferences." *SAC*, ¶ 99. Merely speaking to individuals does not constitute "wrongful means" or "improper interference" as necessary to support Plaintiffs' interference with business relations claim (Claim XV). *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501–02 (Colo. 1995) ("wrongful means" do *not* include persuasion or economic pressure; instead "wrongful means" includes the use of physical violence, fraud, civil suits, and criminal prosecutions).

To correct this deficiency, Plaintiffs claim that "wrongful" conduct includes making defamatory statements, further alleging—for the first time—that "Defendant made false, defamatory, and/or disparaging remarks" to the heads of the conference. *Response*, pp.23–24 (citing SAC, ¶¶ 89–99, 118, 206–07). However, that is *not* what the SAC alleges. *SAC*, ¶ 99 (alleging only that Weidner "spoke" to individuals and "told them not to invite Goode to their Conferences"). Merely speaking to these individuals does not constitute wrongful conduct or, as Plaintiffs claim in their newest moving target, defamation.[9]

Plaintiffs' reliance on the Association's alleged misrepresentations to support this claim is likewise unavailing. *Response*, p.24 (citing SAC, ¶ 118). First, that section of the SAC describes Gaia's actions—not Weidner's. *See SAC*, ¶¶ 115–18 (describing Gaia's removal of Plaintiffs' content). Weidner is not Gaia and did not take down Plaintiffs' content. *See SAC*, ¶ 35 (alleging Gaia had fired Weidner). Accordingly, it is entirely unclear what the Association—and specifically Weidner—is alleged to have done that constituted wrongful conduct. *SAC*, ¶ 118 (vaguely alleging "misrepresentations of the Association" but never describing as to Weidner what those misrepresentations were, when or how they were made, and to whom). Such speculative, vague, and broad allegations do not plausibly plead this claim. *Iqbal*, 566 U.S. at 678.

Nor do Plaintiffs' other citations remedy this failure. *Response*, p.24 (citing SAC, ¶¶ 206–07, which conclusorily allege Plaintiffs had multiple "actual or prospective business contracts" with conferences and entertainment agencies that Defendants knew of these and "intentionally and improperly interfered with the performance of these contacts"). The threadbare legal conclusions, wholly unsupported by the factual allegations as to any specific

---

[9] Plaintiffs also wholly fail to plausibly allege defamation. *See* Argument II(e), *supra*.

defendant, "do not suffice." *Iqbal*, 556 U.S. at 678.  Accordingly, Claim XV fails and must be dismissed.

## Conclusion

Given the confusing, conclusory, and unsupported allegations, Plaintiffs' SAC runs afoul of both Rule 8 and Rule 12(b)(6).  Plaintiffs' claims, as pled, do not rise above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nor can the Response's post-hoc additions save the SAC.  Accordingly, this Court should grant the Motion and dismiss the claims against Weidner with prejudice.

Although Plaintiffs request attorney's fees, their request is without merit or legal authority.  *Response*, pp.24–25 (failing to cite basis for fee request).  Weidner challenged all claims precisely because Plaintiffs failed to plausibly plead even the most basic elements, support their claims with factual allegations, and address the pervasive legal deficiencies— deficiencies that were discussed in detail during conferrals and motions practice.  The SAC lacks substantial justification, and Weidner therefore reasserts his request for attorney's fees and costs. § 13-17-102, C.R.S.; § 13-17-201, C.R.S.

Respectfully submitted this 9th day of March, 2021.

        **BURNHAM LAW**
        By:

        */s/ Aaron Belzer (Duly Signed)*
        Aaron Belzer, Esq. #47826
        Counsel for Defendant

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 9th day of March, 2021, a true and correct copy of the foregoing ***Reply in Support of Motion to Dismiss*** was filed and served via the CM/ECF and all parties as listed below were electronically served via same with the exception of Cliff High, who has been served via email.

**Attorney for Plaintiffs:**
Valerie Ann Yanaros
Yanaros Law PC
5057 Keller Springs
Suite 300
Addison, TX 76001
Phone: 512-826-7553
Email: valerie@yanaroslaw.com

**Attorney for Defendant Benjamin Zavodnick**:
Michael Jacob Laszlo
Laszlo & Associates, LLC
2595 Canyon Boulevard
Suite 210
Boulder, CO 80302
Phone: 303-926-0410
Email: mlaszlo@laszlolaw.com

**Attorneys for Defendant Gaia, Inc.**:
Daniel Andrew Dingerson
Ina B. Scher
Davis & Gilbert, LLP
1740 Broadway
New York, NY 10019
Phone: 212-237-1488
Email: ddingerson@dglaw.com
ischer@dglaw.com

**Defendant Alyssa Montalbano,** *Pro Se*
2536 Rimrock Avenue
Suite 400-117
Grand Junction, CO 81505
970-250-8365
Email: LegalZenACM@Gmail.com

**Defendant Clif High,** *Pro Se*
PO Box 141
Moclips, WA 98562
Phone: 360-276-0049
clif@halfpasthuman.com

*/s/ Elisa Taute (Duly Signed)*

Elisa Taute

Paralegal

*In accordance with C.R.C.P. 121 § 1-26, a printed copy of this document with original signature(s) is maintained by Burnham Law.*