# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually
And GOODE ENTERPRISE SOLUTIONS INC.,

Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN ZAVODNICK, ALYSSA MONTALBANO, JIRKA RYSAVY, BRAD WARKINS, and KIERSTEN MEDVEDICH

Defendants.

----

Alyssa Chrystie Montalbano, Individually

Counter-Claimant, Third-Party Plaintiff

v.

James Corey Goode, individually
And GOODE ENTERPRISE SOLUTIONS INC.

Counter-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC;
David Wilcock, THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
Valerie Yanaros Wilde, Elizabeth Lorie,
Brian James Flynn, William Campbell,
Matthew Grove, Diana Terry,
Christina Gomez

Third-Party Defendants.

REPLY IN SUPPORT OF MOTION TO AMEND          Page **1** of 11

# COUNTER-CLAIMANT ALYSSA MONTALBANO
# REPLY IN SUPPORT OF HER MOTION TO AMEND

COMES NOW, counter-claimant, Alyssa Chrystie Montalbano, in Reply to counter-defendants, Mr. James Corey Goode and GES's, Response [#171] to First motion to Amend the Counterclaims Complaint [#155], hereafter FACC, and in support of her Motion to Amend states as follows:

Most of counter-defendants' counsels' arguments are simply the recitation of case law and court rules without being specifically applied to any of the specific counterclaims as filed by Montalbano and are largely vague and unclear in application to the facts at issue. However, Montalbano will do her best to address them by construing them to where they might apply.

I.  **OPPOSING PARTY MAIN ARGUMENTS [#171]**

   **The main arguments by the counter-defendant's and its counsel are as follows:**

1. Length of counterclaims complaint; and amendments don't cure deficiencies.
   Section II; and Section III; and Section IV. at p3 – p6)

2. Claims already heard in Mesa District Civil Court. (Section II; and Section IV at p6)

3. All 22 claims should be thrown out based on the same reasoning used in Magistrate Gallagher's recommendation from October 19, 2018. (Section II, p2; [#131-2])

4. Mind Control claims are typically thrown out for lack of evidence and frivolous. (Section IV. at p5-p6)

5. All claims should be thrown out because the mind control claims read as science fiction. (Section III; and Section IV. p5-p6)

6. Enjoin Montalbano from filing any pleadings via Court, and awarded more money to counter-defendants from Montalbano. (Section V. conclusion)

## II.    POINT BY POINT REPLY

**Montalbano will now address each of the main arguments on a point by point basis:**

In the Response [#171], Ms. Wilde incorporates the counter-defendants' arguments from their Motion to Dismiss [#131]; and in Reply to that, Montalbano incorporates by reference her Response to counter-defendants MTD [#135] along with the variations addressed in the Motion to Amend the counterclaims at Docket 155.

### 1.    LENGTH OF COUNTERCLAIMS NECESSARY; AND AMENDING CURES DEFICIENCIES

The length of counterclaims was deemed necessary as this is a complex situation, involving multiple parties (See FACC at Section IV. Background of Parties), multiple lawsuits [FACC at ¶¶229-285], and multiple problems (See all 22 claims) that extend well beyond Ms. Wilde's clients Mr. Goode and GES. These situations required the length for comprehension, explanation of technical data related to MKULTRA and neural interfacing [#155 at ¶¶127-210], and to factually address multiple ordinary claims.

At this preliminary stage, Montalbano does not need to 'prove' her entire case and claims and has provided enough facts to reasonably conclude multiple violations have occurred against Montalbano, by multiple parties, and whereby fraud also requires specificity when pled, especially with RICO (claim 1) and violation CCPA (claim 3), and Montalbano has fulfilled the preliminary requirements for each claim.

Ms. Wilde also irrationally complains about the lawful removal of the dismissed third-party defendants and crossed out sections, and complains about the addition of pages, which were predominantly added in order to clarify the remedy and relief sought in each claim and cited court rules in support thereof. The amendments made directly addressed Objections in counter-defendants MTD [#131] and cured any alleged deficiencies. Additionally, Ms. Wilde was asked by Montalbano to confer on the proposed amendments prior to filing them at Docket 155, and Wilde failed to respond.

## 2. CLAIMS HAVE NOT ALREADY BEEN HEARD IN MESA COURT

**In section titled "IV. Argument and Authorities"** the main girth of case law is cited here with the bare recitation of court rules, and whereby Ms. Wilde provides no specificity as to how these recitations of legalese actually apply to Montalbano's counterclaims.

Ms. Wilde states matters (without specifying which ones) have already been 'heard' in Mesa Court. Montalbano reintegrates the arguments from Docket 135 Response to MTD, Section I, regarding why the Trade Secret claim (Claim 7) and Defamation claim (Claim 10) have not in fact been heard at any time in Mesa Court, or any Court, due to Due Process violations and the 'orders' are open to collateral attack. [#155, claims 15, 16, 17 and 18]. Montalbano also reintegrates section E., p11, Dkt. 135, stating the trade secret claims (claims 7 and 8) are part of the RICO claims; and the RICO claims have not been argued.

Even if some of the claims, such as Trade Secrets and Defamation, could lawfully be removed for being 'heard' (and they cannot; see claim 15 Deprivation of Civil Rights) the other 20 claims have not been directly argued to notably include the RICO claims: 1, 4, 5, 6, 11, 18; and claim 9 (Copyrights). Counter-defendant's counsel provides no valid arguments in support of dismissal

of any of the RICO, or other claims, in their Response and Objection to the Motion to Amend and the legal arguments in their MTD [#131] have already been shown to be legally invalid by Montalbano's Response and Objection. [#135]

Counter-defendants' counsel, also makes the argument that Montalbano is filing claims against judges due to simply being "dissatisfied with the decisions" [#171, p6] while it is self-evident Montalbano is dissatisfied with the decisions, that would not be enough to bring legal claims against an officer; while it is true ordinarily officers enjoy judicial immunity, that is only true when they have followed due process of law and faithfully performed their duties pursuant their Oath of Office to the State and National Constitutions. The officers the claims are filed against did not in fact faithfully perform their duties or uphold due process of law; thereby their perceived immunities do not apply, and they are being summoned to answer. (See claims 15, 16, 17 and 18)

## 3. ALL 22 CLAIMS SHOULD NOT BE THROWN OUT BASED ON THE SAME REASONING IN MAGISTRATE GALLAGHER'S RECOMMENDATION

The Counter-defendants regurgitate that this Court's Officers should use the same reasoning Magistrate Gallagher did when writing his report and recommendation in 2018. [#131-2] Montalbano reminds the presiding Officers of this instant case that this recommendation was issued based on Ms. Wilde placing a fraud upon the Denver Federal Court, whereby she filed a fake complaint [#26-6] that the recommendation was written for. This issue has been repeatedly addressed by Montalbano in multiple responses and in Claim 16 Abuse of Process. Also see Montalbano's Response to MTD, Dkt. 135, last paragraph, p3, asking the recommendation be struck due to fraud on the court by Ms. Wilde.

### 4. MIND CONTROL CLAIMS HAVE EVIDENCE AND ARE PLAUSIBLE

In short, the counter-defendants, Goode and GES, and its counsel's main arguments as to why the counterclaims should not be amended are basically: they want all 22 counterclaims thrown out because largely they argue the mind control claims shouldn't be brought so every claim should be dismissed. Even if this were true (and it is not) that the more mind control specific claims were thrown out, this argument only addresses Claims 6 and 12, and does not apply to the remaining 18 claims (FACC) against Goode and GES, which have solid grounds supported by facts and evidence related to those claims. To dismiss all 20 claims against Goode based on the mind control argument, would be highly illogical, a clear denial of due process of law, and a further violation of Montalbano's Constitutionally secured right to have equal protection of the law to address the claims based on obviously plausible facts, notably to include RICO, fraud, violation CCPA, harassment, and defamation.

Next the counter-defendants argue about the addition of the EEG heterodyning clone [#155, ¶¶378-394] and essentially want it looked at as irrelevant and to classify it with other case law to throw out the mind control claims [#171, p5-p7]. The case law cited does not address Montalbano's particular and unique situation, but it is at least a proper legal effort by Ms. Wilde as to why the mind control claims should not be heard, however Montalbano has provided ample plausible records and facts in support of her position [#155, ¶¶127-210; and Claims 6 and 12; and exhibits 121-9, 121-10, 121-11, 121-12, 121-13, 121-14, 121-15, 121-16, and 121-17] and has provided plausible facts related to Goode's public MKULTRA program claims [#121-3, #121-6; #155 at ¶¶24-28 and ¶¶48-81] and Montalbano's specific situation involving Goode and dream states. [id. at ¶¶200-206] The EEG heterodyning clone is relevant as it is something tangible that can be looked for via computers (like a .jpg or similar digital file), and in particular

via Goode's computer(s) or other computers he and his associates may be working with within the CIA, DOD, or related programs. Due to the unusual nature of the situation, it is reasonable to permit the investigation due to the explanation of how the MKULTRA programs operate via neural interfacing and to determine what technology (if any) are being directly used on Montalbano by Goode and/or his associates. If Goode is in fact using Montalbano's brain signature, that would legally be copyrighted materials belonging to Montalbano as her unique signature in a tangible digital format, and Montalbano did not give permission to Goode or his associates to make it, or use it for neural interfacing, experimentation, or profit.

Next, the brunt of the counter-defendants' Response is focused on saying Montalbano can't prove Goode visits Montalbano in dream states (which is untrue), Montalbano gives the following oversimplified example-scenario to bring easy comprehension of how it is proven:

Alex overhears Bob telling Craig he's going to threaten Alex with extortion and rob his bank account. Alex goes home and writes the date, time, and conversation details into his journal for reference. Alex goes to the police station and says Bob is going to extort him, but all he has are his journal notes and no video footage or tape recording of the planned event, only his firsthand observation. The Policeman says, "I'm sorry we can't help you, because Bob hasn't done anything to you yet." Six months later Alex is shopping in the grocery store and Bob comes up to him and threatens him with extortion in front of witnesses and the store video camera captures everything. Alex, goes back to the police station with witnesses and video footage. The Policeman looks at the evidence and then willfully refuse to help Alex because Bob is a famous local newscaster for BOB FM radio and he doesn't want his public reputation destroyed by Bob and his Police Chief, Daren, (who issues his paychecks) is also friends with Bob. This situation

is similar to Montalbano's where Montalbano is like Alex and Bob is like Goode, and the Policeman like 'Judge' Flynn. In this scenario nobody would tell 'Alex' he is crazy for overhearing the plan or telling others he knew he would be threatened at some point by Bob because he overheard it. Montalbano's dream situation cited in FACC at ¶205 [#120, ¶231] is elementally the same, whereby Goode first threatened to go after Montalbano's trust funds in a dream state of consciousness and Montalbano documented it in her journal. Then 8 months later Goode made the same threat against Montalbano only this time in front of witnesses by posting the threat to YouTube that was digitally recorded. [#121-19] That is an oversimplification of Montalbano's situation with Goode and in this way it can be repeatedly legally proven it is in fact Goode visiting Montalbano in dream states of consciousness, which is scientifically proven to be doable [#155, ¶¶200-205, ¶¶461-464]; this is why the MKULTRA dream based mind control programs Goode participates in must be directly legally investigated in this instant case.

Next, there is the due process problem.

Even if the mind control claims were to be thrown own due to 'mind control' being 'frivolous' (which is not true, see US Senate Hearing, August 3, 1977 [1]; where they sought to amend laws for mind control to be taken seriously) the mind control claims may not legally be thrown out prior legal investigation, as Goode has already agreed through acquiescence he is using MKULTRA techniques to visit Montalbano in dream states. Goode legally agreed to this as being true since the filing of the PLAC (Pre-Litigation Affidavit Complaint) records [#121-18] pursuant FRE 902 (4), (8) and (10), recorded June 7, 2018, Mesa Clerk and Recorder, Record #2843230. Since then, the burden of proof has been legally shifted to be upon Goode and GES to

---

[1] Project MKULTRA, The CIA's Program Of Research In Behavioral Modification – Joint Hearing Before The Select Committee On Intelligence And The Scientific Research Of The Committee On Human Resources United States Senate Ninety-Fifth Congress First Session, August 3, 1977.

rebut or meet the presumptions with their own evidence and whereby 'denial' does not constitute a response and Goode and GES have failed to respond or rebut the PLAC mailings since April 18, 2018. [#155 at ¶¶215-228] Legally, Montalbano does not need to prove the mind control claims as they are already agreed upon as being true by Goode, GES, and Montalbano; Goode and GES must now prove to the Court the presumptions imposed against them are untrue or nonexistent pursuant FRE 301, until then all Court Officers are bound by their Oath of Office to follow Due Process of Law, which dictates relief may only be granted on behalf of Montalbano absent legal investigations and/or a trial.

Via the PLAC mailings, Federal Rules of Evidence, Presumptions, and Due Process of Law Goode and GES have also agreed they've performed fraud (Claim 2), stole Trade Secret IP (Claim 7), Copyright infringed (Claim 9), defamed Montalbano (Claim 10), money laundered (Claim 11), and are Unjustly Enriched (claim 22). Each of these claims, at this stage, may only be ruled in favor of Montalbano.

## 5. ALL 22 CLAIMS CANNOT BE THROWN OUT BECAUSE THE MIND CONTROL CLAIMS ALLEDGEDLY READ AS SCIENCE FICTION

**In Section titled "III. Defendant's First Amended Counterclaims"** Counter-defendants' counsel states that basically the entire counterclaims filing [#120 and #155] reads like science fiction, yet Ms. Wilde only attempts to argue the mind control claims as such and ignores the other 18 claims remaining against Goode and GES, which do not have to do with mind control, and they read as claims with overtly plausible facts and relief sought.

In further support of their argument that 'all' claim are 'science fiction' because of the MKULTRA program factor and the content of Montalbano's Intellectual Property, Ms. Wilde

again falsely states Montalbano is (sic) "…proliferating her imaginary relationship with Mr. Goode via social media postings and discussions…" Montalbano reminds the Court it is Mr. Goode, his associates, and Ms. Wilde, who have been proliferating this 'imaginary relationship' since early 2018 and using it as a way to defame, embarrass, extort, and harass [#121-21] Montalbano both on and off court records [#155, See Claims, 1, 2, 3, 10, 13, 14, 15, 16, 17, 18, 19, 20, and 21]. Montalbano continues to seek injunctive relief for this problem. Additionally, Montalbano has the right to the freedom of speech to discuss her own experiences publicly or privately and do what she can (publicly or privately) to restore her good name and reputation that Goode, Wilde, and their associates have publicly destroyed to thousands and even potentially millions of people with their knowing misrepresentations. (Colorado State Constitution, Article II, Section 10)

6. **MONTALBANO'S CIVIL RIGHT TO FILE PLEADINGS**

Lastly, the counter-defendants argue that Montalbano should be enjoined from filing pleadings in Court and they should be awarded more (extortion) money from Montalbano. Montalbano reminds this Court and it's presiding Officers, that Montalbano only opened one case (18CV50, June 25, 2018, in Mesa District Civil Court) against Mr. Goode, and that it is Goode and Wilde who have been opening multiple vexatious and frivolous cases against Montalbano and they are the ones, in fact, needing to be enjoined from opening any more unlawful cases and compensate Montalbano. [#155 at ¶229-285, Claims 15, 16, 17, and 18] Enjoining Montalbano from filing any pleadings generally, or specifically against Goode and GES, would be an egregious violation of Montalbano's already severely violated Constitutionally secured Civil Rights.

Wherefore, Montalbano again moves this Court to Grant the Motion to Amend the complaint at Docket 155 and move the case into discovery, for all the aforementioned reasons and pursuant FRE 902, FRE 301, and FRCP 15(a)(2) requiring granting of amending of the complaint be liberally given when justice so requires it.

Respectfully Submitted and All Rights Reserved,

/s/ Alyssa Chrystie Montalbano

Alyssa Chrystie Montalbano, American Citizen
Counter-Claimant
2536 Rimrock Ave
Suite 400-117
Grand Junction, CO 81505
E-mail: LegalZenACM@gmail.com

**Certificate of Compliance**

I certify the foregoing Reply complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

I certify that on this 26th day of March 2021 a copy of the foregoing Reply was filed with the clerk of the court using the CM/ECF system and are lawfully served upon relevant parties counsels and upon appeared Defendants, through the Case Management/Electronic Case Filed (CM/ECF) court filing system. (FRCP Rule 5) and courtesy copy delivered to Mr. High by email.

/s/ Alyssa Montalbano

Alyssa Montalbano, American Citizen