IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

                              Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH

                              Defendants.

**PLAINTIFF JAMES COREY GOODE AND GOODE ENTERPRISE
SOLUTIONS, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SERVICE BY PUBLICATION**

James Corey Goode and Good Enterprise Solutions (collectively "Plaintiffs") file this Response in Opposition ("Response") Defendant/Counterplaintiff Alyssa Montalbano's ("Defendant") Motion for Service by Publication (Docket 161, the "Motion") filed March 13, 2021. This Court should deny Defendant's Motion and dismiss her counterclaims in their entirety.

1. Introduction

Under Federal Rule of Civil Procedure (the "Rules") 4 and Colorado Rule of Civil Procedure (the "Colorado Rules") 4(f), Defendant must serve all third-party defendants in accordance with the steps enumerated under those rules or exercise diligence in doing so prior to this Court authorizing an alternate means of service. Defendant has not exercised diligence but instead has

created another quagmire of filings and mailings that do not comport with a singular timeline and are difficult (at best) to follow. Defendant should not be held to a less stringent standard than the rest of the parties to this case and should be held to her current deadline to serve. Defendant's inclusion of judges, attorneys and other members of the bench and bar in this case—***ten*** total—is merely an attempt to harass those third-party defendants and disqualify counsel for the Plaintiffs. Plaintiffs have filed—and reurge, incorporating by reference their arguments including, *inter alia*, those outlining how Defendant puts forth no cognizable claims—their pending motion to dismiss her counterclaims in their entirety (Docket 131) based on well-settled law.

## 2. Background

Defendant, merely days before Christmas, filed almost five hundred pages (roughly two-hundred and fifty pages of her Answer and Counterclaim and two hundred pages of exhibits, the "Counterclaim") of overly verbose allegations and claims that do not have a basis in law, fact or reality. (Dockets 120, 121). Defendant has already had the same or similar claims dismissed by Mesa County District Court of Colorado (*Alyssa Chrystie Montalbano v James Corey Goode*, case number 2018-cv-50 the "Mesa County Case"). Plaintiffs filed their Motion to Dismiss Counterclaims (Docket 131, the "Motion to Dismiss") on January 12, 2021 stating that Defendant's counterclaims were barred by, *inter alia*, collateral estoppel and a failure to state a cognizable claim. All co-defendants of Defendant that Defendant included as cross-defendants have been dismissed by Defendant (Dockets 126, 144). On February 27, 2021 Defendant filed a motion to amend her Counterclaim (the "Motion to Amend"). Defendant never requested summonses for the Counterclaim until March 12, 2021 (Docket 160). Summonses were issued on March 15, 2021. (Docket 164).

### 3. Service by publication is not available in this case and Defendant has not exercised diligence in her efforts to properly serve third-party defendants

Federal Rule of Civil Procedure 4(h), which governs the service of corporations, provides that a party may serve process on a corporation located within the United States "by **delivering a copy of the summons and of the complaint** to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Rule 4(h)(1)(B). In the alternative, such a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(h)(1)(A). Rule 4(e)(1), in turn, allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Rule 4(e)(1).

The Colorado Rules provide for service on a corporation through "the registered agent for service as set forth in the most recently filed documents in the records of the secretary of state of [Colorado] or any other jurisdiction." Colorado Rule 4(e)(4). A registered agent may be served in the same manner as a "natural person," in other words, "at the person's usual workplace, with the person's secretary, administrative assistant, bookkeeper, or managing agent." *Goodman v. Assocs., LLC v. WP Mountain Properties, LLC*, 222 P.3d 310, 316 (Colo. 2010) (quoting Colorado Rule 4(e)(1)); *see also Rain Design, Inc. v. Spinido, Inc.*, Civil Action No. 19-cv-00349-RM-KMT, at *2-3 (D. Colo. July 28, 2020). For purposes of a limited liability company ("LLC"), Colorado law requires personal service on the LLC "by delivering a copy of [the summons] to the registered agent for service," or to a manager if management is vested in managers, or a member if management is vested in the members. Colorado Rule 4(e)(4)(C)-(D). Colorado law recognizes "service by mail or publication" but "**only in actions affecting specific property or status or other proceedings in rem**" (emphasis added) and only after the serving party files a verified

3

motion seeking permission to do so. Colorado Rule 4(g). When service by mail or publication is not otherwise available, Colorado Rule 4(f) provides for substitute service but likewise requires the serving party to file a motion requesting substitute service that ***demonstrates the serving party's due diligence*** in attempting to serve the identified party. *See id*. 4(f) *see also Matthews v. Candie*, Civil Action No. 20-cv-00139-PAB-NYW, at *3-4 (D. Colo. June 26, 2020)

Defendant admits she has not served any summons to any of the real or purported third-party defendants. Moreover, Defendant misspells and misstates names and titles and otherwise makes it impossible to find out who it is she is in fact trying to serve (and sue). Defendant has not "used diligence" in her endeavors with service of her Counterclaims this case and instead attempts to short-circuit the system by creating chaos and expecting special treatment at the outset of her claims against other parties in this case. This is despite having dragged Plaintiffs through court process since 2018. As explained herein, the pending Motion to Dismiss sets out the basis for this Court to dismiss Defendants Counterclaims in their entirety. If granted, the Motion to Dismiss would thus moot Defendant's Motion and further ensure the just, expedient and efficient resolution of this dispute.

### 4. Montalbano must abide by the Rules and serve in accordance with the Rules

"[P]ro se litigants are bound by the same rules of civil procedure as attorneys licensed to practice law in the state . . . and are entitled to no greater safeguards or benefits than if represented by counsel." *Ballowe v City of Black Hawk*, No. 08CV12, 2008 WL 1826754 (Colo. Dist. Ct. Apr. 18, 2008) (citing *People v. Romero*, 694 P.2d 1256 (Colo. 1985) with approval). The Supreme Court of Colorado made this exceedingly clear in its *en banc* decision in *People v. Romero*, stating:

> "To the extent that the defendant's argument implies that a *pro se* defendant is entitled to opportunities over and above those normally accorded an attorney, we reject such

4

> implication as unfounded in law. By electing to represent himself the defendant subjected himself to the same rules, procedures, and substantive law applicable to a licensed attorney. A *pro se* defendant cannot legitimately expect the court to deviate from its role of impartial arbiter and accord preferential treatment to a litigant simply because of the exercise of the constitutional right of self-representation."

*People v. Romero*, 694 P.2d 1256, 1266 (Colo. 1985).

Defendant, through her Motion, asks this Court to allow her to circumvent the same process any other plaintiff or counterplaintiff must take in order to avail themselves of the rights and responsibilities of the litigation process. Defendant allegedly mailed out a few packages—without undertaking research to determine correct information—to almost a dozen entities and persons without the proper documentation. Defendant did not even request summonses until the day before filing her Motion. Defendant is merely attempting to harass the named third parties in her Counterclaim and further delay trial. Defendant has already cost Plaintiffs over a hundred thousand dollars in legal costs in meritless actions that were dismissed on their face. To allow this to go forward once again would invite any party to do the same, opening the floodgates to baseless and duplicitous litigation plaguing an already burdened court system. If this Court finds that Defendant does actually have claims that merit the litigation process, it should hold Defendant to the same standards and rules it would any other plaintiff—including proper service.

### 5. The third-party defendants and legal counsel may not be sued regardless of proper service

Federal courts have concluded that the proper procedure to complain of a member of the bench or bar is to file a Rule 11 motion or a complaint with the appropriate state bar. "As a general rule, a party may not sue opposing counsel under any theory of recovery for 'acts or omissions undertaken as part of the discharge of their duties as attorneys to opposing parties in the same lawsuit.'" *Miller v. Stonehenge/Fasa-Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998)

5

(quoting *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996)). The New Mexico Supreme Court has reached a similar conclusion:

> "The role of the attorney therein is to represent and advocate a client's cause of action as vigorously as the rules of law and professional ethics will permit. For that reason an attorney's exclusive and paramount duty must be to the client alone and this duty cannot run to the client's adversary. Not only would the adversary's interests interfere with the client's interests, but the attorney's ongoing and justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship. Thus, an attorney in discharging professional duties on behalf of his client cannot be held liable for negligence toward an adverse party. As a matter of public policy in order to maintain and enforce the fidelity and duty of the attorney toward the client, we cannot jeopardize the integrity of the adversarial system by imposing a professional duty on an attorney toward an adverse party."

*Garcia v. Rodey, Dickason, Sloan, Akin Robb, P.A.*, 106 N.M. 757, 761, 750 P.2d 118, 122 (1988) (internal citations omitted). This rule is well-grounded in public policy and "protects the public's interest in loyal, faithful, and aggressive representation by the legal profession." *Miller v. Stonehenge/Fasa-Texas, JDC, L.P.*, 993 F. Supp. at 464. Within the bounds of the law, attorneys must be able to advocate on behalf of their clients and have a right to interpose any valid claims and defenses that the law, the rules of procedure, and the rules of professional responsibility allow. Attorneys acting within those confines must be able to act in their client's best interest without fear of personal liability. Moreover, opposing parties are not helpless when attorneys act in an improper fashion. When attorneys venture outside the permissible boundaries, rule 11 provides the appropriate remedial mechanism for sanctions that include penalties up to and including dismissal of a client's action. *See* Rule 11; *see also Bragg v. Chavez*, CIV 07-0343 JB/WDS, at *47 (D.N.M. Aug. 2, 2007)(dismissing all claims).

The public officers and members of the bench sued by Defendant are protected by qualified immunity. The foremost reason for the doctrine of qualified immunity is the concern that fear of litigation would deter and distract public officials from "the unflinching discharge of their duties."

6

*Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (internal quotation marks omitted); *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."); *Wyatt v. Cole*, 504 U.S. 158, 167 (1992) ("Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions."). As initially developed, immunity required satisfaction of both objective and subjective components—public officials were not entitled to qualified immunity unless they acted reasonably and in good faith. *See Wood v. Strickland*, 420 U.S. 308, 322 (1975) ; *Scheuer v. Rhodes*, 416 U.S. 232, 247-48 (1974). Supreme Court later abandoned the subjective prong, deciding that a fact-intensive inquiry into an official's state of mind was incompatible with the need to avoid excessively disruptive discovery and litigation. *See Harlow*, 457 U.S. at 815-18, 102. Instead the test became a purely objective one, asking only whether a clearly established right had been violated. *See id*. at 818; *see also Stanley v. Gallegos*, 852 F.3d 1210, 1213-14 (10th Cir. 2017).

Clearly the members of the bench and bar that Defendant sued acting on behalf of the state in the course of their duties were acting appropriately. They gave Defendant multiple chances to evince a cognizable legal theory in various forums, none of which garnered any merit. As explained in Defendant's Counterclaim, Defendant made multiple complaints to various legal bar authorities all to no avail. This last desperate attempt should be curtailed before it goes any further and wastes even more judicial resources.

Often it is *pro se* parties that attempt to sue legal participants of the bench and bar involved in actions to which they are parties. *See* Paul T. Hayden, *Reconsidering the Litigator's Absolute*

*Privilege to Defame*, 54 OHIO ST. L.J. 985, 1043 (1993) ("Litigators will often make others angry, and that anger may spawn purely retaliatory legal actions."); John B. Lewis & Lois J. Cole, *Defamation Actions Arising from Arbitration and Related Dispute Resolution Procedures - Preemption, Collateral Estoppel and Privilege: Why the Absolute Privilege Should be Expanded*, 45 DEPAUL L. REV. 677, 678 (1996) (stating that participants in litigation countersue as a means of visiting retribution). To allow this to happen would spurn a multitude of cases wherein parties could redirect the focus from the dispute between the proper parties and instead tie up the time and resources of the bench and bar that are taking part in litigating the actual dispute at bar. To allow service on these parties would kick off another round of spurious litigation that would further deplete resources that are better used in litigating concrete issues such as breach of contract and theft of intellectual property—not allegations of mind control and theft of dreams.

6. **Conclusion**

This Court should deny Defendant's Motion. Defendant chose to file her counterclaims three days before Christmas and wait until almost three months later to request summonses. In the meantime, she has dismissed all five of the cross-defendants. She has had the benefit of the last year of litigation *and* the previous few years of litigation in the other actions between Defendant and Plaintiff to get accustomed to the procedure necessary to bring counterclaims but has chosen instead to attempt to take advantage of the system. Plaintiffs respectfully ask this Court to DENY Defendant's Motion and DISMISS her counterclaims in their entirety.

8

Respectfully submitted this 5th day of April, 2021.

*s/ Valerie A. Yanaros*
Valerie Yanaros, Esq.
State Bar No. 24075628
Yanaros Law, P.C.
15851 Dallas Parkway, Suite 600
Addison, Texas 75001
Tel.: (512) 826-7553

**ATTORNEY FOR PLAINTIFFS**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on 5th day of April, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.

By:   *s/ Valerie Yanaros*
      Valerie Yanaros