IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.

                Plaintiffs,

v.

GAIA, INC.,
JAY WEIDNER,
CLIF HIGH, BENJAMIN ZAVODNICK,
ALYSSA MONTALBANO,
JIRKA RYSAVY,
BRAD WARKINS AND
KIERSTEN MEDVEDICH

                Defendants.

---

**PLAINTIFF JAMES COREY GOODE AND GOODE ENTERPRISE SOLUTIONS, INC.'S RESPONSE TO JIRKA RYSAVY, BRAD WARKINS, AND KIERSTEN MEDVEDICH'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

---

**I.     Plaintiffs Incorporate by Reference their Arguments in its Response to Gaia, Inc.'s Motion to Dismiss**

James Corey Goode ("Mr. Goode") and Good Enterprise Solutions ("GES") (collectively "Goode" or "Plaintiffs") file this Response (the "Response") in Opposition to the Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(6) filed on April 5, 2021 by Jirka Rysavy, Brad Warkins, and Kiersten Medvedich ("Rysavy", "Warkins" and "Medvedich", respectively; each a "Defendant" or "Defendants", collectively) (Docket 175, the "Motion").  This Court should deny Defendants' Motion because Goode has alleged with sufficiency each of the claims it has brought against Defendants. Defendants have, through their wrongful actions, deprived Goode of monies owed to Mr. Goode and GES. Further, Defendants have harmed and lessened the goodwill Goode has worked to garner and interfered with his business and livelihood. Defendant's Motion attempts to distract and detract from the heart of the issue: that Defendants have harmed Plaintiffs financially. Defendants have used Gaia, Inc. ("Gaia") as a shield to evade answering for their wrongs against Plaintiffs for over three years. As described in the Second Amended Complaint filed on December 8, 2020 (Docket 111, the "SAC") and further herein, each Defendant has perpetrated fraud on Plaintiffs and thus may be individually liable either directly or under a veil-piercing/alter ego theory of liability.

As in Gaia's Motion to Dismiss (Docket 128), Defendants either intentionally overlook or misapprehend the claims and allegations put forth by Goode or attempt to, through mental gymnastics, make them more complicated than they actually are. Plaintiffs incorporate by reference the arguments made in their Response to Gaia's Motion to Dismiss filed on February 23, 2021 (the "Gaia Response", Docket 152).

### II. Plaintiffs Differentiate Between Defendants Rysavy, Medvedich and Warkins when Appropriate

As a threshold matter, Defendants argue that "Plaintiffs did not differentiate among the Gaia Employees as to any of the claims" and "did nothing more than plaster the names of three executives into the Complaint" (Motion at 7). This underscores Defendants' lack of attention to detail when reviewing the SAC—Plaintiffs do, in fact, differentiate when appropriate with regard to specific acts (*see, e.g.*, SAC at ¶¶ 131-133 describing six different emails constituting fraudulent acts, two per Defendant). The SAC at ¶ 131 described two separate, specific email communications from Medvedich to Goode. The SAC at ¶132 described two specific, separate email communications: one from Warkins to Spracht and one from Warkins to Goode. Finally, the SAC at ¶133 described another two email communications: one from Rysavy to Warkins and one from Rysavy to Goode. When appropriate, individuals are referred to by their individual last name (*see, e.g.*, SAC at ¶¶ 27-29, 89, 99, 131-133). When Plaintiffs referred to "Defendants" generally in the SAC, Plaintiffs meant all named defendants in the lawsuit. Alleged throughout the SAC is the fact that all named defendants in the SAC are working in together in some fashion (*see, e.g.*, SAC at ¶¶ 18, 24) and as such many allegations are applicable to all named defendants in Plaintiffs' SAC.

All claims as alleged are sufficient to withstand dismissal and any issues of material fact must be determined by a jury.

### III. Defendants' General Assertions (Sections II and III) of the Motion

In Section II of their Motion, Defendants claim that Plaintiffs "admit[ they] knowingly contracted with Gaia, not the individual Gaia Employees". As discussed above, Plaintiffs name

each Defendant individually where appropriate and may recover against each under individual or alter ego theory liability (*see, e.g.*, SAC at ¶¶ 131-133).

In Section III of their Motion, Defendants overlook many specific references to Plaintiffs' asserted Intellectual Property (IP) rights and how Defendants infringed them. Specifically, in their Motion at 9 Defendants assert: "Plaintiffs do not allege which 'protected phrases' were supposedly 'used', when such 'protected phrases' were 'used', who 'used' the 'protected phrases', or in what context the 'protected phrases' were 'used'". Defendants completely ignore the allegations included in Claim III in the SAC ¶¶144-157. The protected phrases are the GES Marks: SPHERE BEING ALLIANCE ®, SBA®, 20 AND BACK ™ and BLUE AVIANS ™ (SAC at ¶¶ 145-148). The GES Marks were "used" by all defendants (including Defendants as defined in this Response). The GES Marks were "used" without permission by Defendants by placing the GES Marks in their content (including commentary and dialogue) not associated with Mr. Goode or GES and causing the GES marks to be displayed prominently and in association with Gaia when searching for GES Marks in a search engine or on social media (SAC at ¶ 151). For example, as recently as September 24, 2020 Plaintiffs' protected phrase "BLUE AVIANS" was used on Gaia's website in conjunction with a picture of a blue sphere (reminiscent of Plaintiffs' registered trademark "SPHERE BEING ALLIANCE" and an article attempting to correlate Goode's story and branding with various Egyptian gods.[1]

---

[1] Accessible at https://web.archive.org/web/20200924221859/https://www.gaia.com/article/blue-avians (last accessed April 26, 2021). The only similarity between the BLUE AVIANS and the Egyptian gods was that the Egyptian gods had birdlike heads—none of them had any other characteristics in similar with the BLUE AVIANS described by Goode.

**IV.     Defendants May Be Liable for Their Independent, Tortious and Perhaps Fraudulent Acts and Under Agency Theories of Liability**

As explained further below, and in response to Defendants' Section I in its Motion, the Defendants may be liable for their independent acts as outlined in the SAC at ¶¶ 25, 30-31, 47, 89, 99, 131-133. Defendants have acted on their own and independently from Gaia and exercise—in their roles as Chief Executive Officer, President and Vice President (*see* Motion at 2). Rysavy is the majority holder of stock for Gaia[2] and independently and directly interfaced with Goode regarding the terms of his contract with Gaia (SAC at ¶131). Medvedich is President and Warkins is Vice President who each directly interfaced with Goode regarding the terms of his contract with Gaia (SAC at ¶¶132 and 133, respectively.) Rysavy, Warkins and Medvedich each independently are believed to have spoken with various conferences and interfered with Goode's business relationships to prevent him from returning to speak at those conferences (SAC at ¶¶89, 99).

Jason Rice is included in the SAC due to his actions that may be imputed to Gaia and Defendants through an agency theory. Rice was induced to issue a tortious, public statement against Plaintiffs by at least Warkins and Medvedich (SAC at ¶137.) Rice was hired to replace Goode on Cosmic Disclosure and instructed to continue using Goode's Marks and story tied to the goodwill he worked to garner (SAC at ¶48).

**V.     Plaintiffs have sufficiently pled fraudulent acts by the individuals to subject them to alternate liability under a veil-piercing theory**

Although a plaintiff cannot recover on conflicting theories of liability , a plaintiff can plead and pursue alternative theories of liability. *See Robert W. Thomas and Anne McDonald Revocable*

---

[2] *See* https://ir.gaia.com/company-information/management-team (last accessed April 26, 2021 (explaining Rysavy and Medvedich history, ownership and control over Gaia)); *see also* https://finance.yahoo.com/news/ownership-structure-gaia-inc-nasdaq-054834526.html and https://www.marketscreener.com/quote/stock/GAIA-INC-29752152/company/ (both last accessed April 26, 2021 (explaining ownership structure of Gaia including Rysavy, Warkins and Medvedich as managers)).

*Tr. v. Inland Pacific Colo., LLC*, No. 11-cv-03333-WYD-KLM, 2012 WL 2190852, at *5 (D. Colo. June 4, 2012) (denying the defendants' motion to dismiss based on finding that "[the plaintiff's] decision in the Amended Complaint to plead the breach of contract and unjust enrichment claims in the alternative is appropriate at this stage in the litigation.") (citing *Bachus v. Apishapa Land and Cattle Co.*, 615 P.2d 42, (Colo. App. 1980) (finding that the plaintiff could "proceed alternatively on his claim for unjust enrichment" in addition to breach of contract claim, since if the plaintiff's claim for assignment fails, he would have no right under an enforceable contract and may be able to recover for unjust enrichment); *Clyne v. Walters*, No. 08-cv-01646- MSK-CBS, 2009 WL 2982842, at *3 (D. Colo.2009)); *see also Powers v. Emcon Assocs., Inc.*, Civil Action No. 14-cv-03006-KMT, at *9-10 (D. Colo. Mar. 22, 2016)(allowing a plaintiff to proceed under an alternative theory of liability for unjust enrichment).

Under Colorado law, "[p]iercing the corporate veil is an equitable remedy, requiring balancing of the equities in each particular case." *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 490 (Colo.App.2001). "The corporate entity may be disregarded, and [the] corporate veil may be pierced, if not doing so would defeat public convenience, justify wrong, or protect fraud." *Id*. "* * * To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud. *Fink v. Montgomery Elev. Co.*, 161 Colo. 342 (Colo. 1966)

As stated above, at least Rysavy owns the majority of stock and maintains the majority of control over Gaia. As alleged further below, each of the Defendants has committed tortious and possibly fraudulent acts that may impute individual liability to each.

"Unjust enrichment is a form of contract, or quasi-contract, implied by law that does not rely upon a promise between parties." *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009). The elements of unjust enrichment are: "(1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it." *Id*. A party may proceed under two alternative theories of liability for unjust enrichment. *Interbank Invs., LLC v. Eagle River Water and Sanitation Dist*., 77 P.3d 814, 816 (Colo. App. 2003). First, a party can recover on an unjust enrichment claim where "the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." *Id*. Second, a party can recover on an unjust enrichment claim "when the party will have no right under an enforceable contract. For example, [unjust enrichment] may be allowed when an express contract failed or was rescinded." *Id*. (internal quotations and citations omitted).

If, over the course of this litigation, this Court should decide—or discovery show evidence—that there was no enforceable contract between the Parties so that Plaintiffs may not recover the monies due to them under the Contracting Agreement (SAC at ¶ 26) or that the conduct falls outside of—or subsequent to—any express contract, Plaintiffs may proceed under an unjust enrichment theory. Defendants deprived Goode of monies and/or goodwill owed to him (monies such as fees, royalties or stock options, SAC at ¶¶ 27-30, 134; goodwill by attacking—without basis and with the intent to defraud—his trademarks SAC at ¶¶ 49, 52, 136) that harmed him financially (by failing to pay him such amounts due, SAC at ¶¶ 24, 27) and it would be unjust for them to retain the monies/goodwill without paying for it (Defendants kept such amounts for themselves, SAC at ¶¶ 29, 31).

Here, Plaintiffs allege that each Defendant perpetrated specific acts of mail and wire fraud against them and by fraudulently misrepresenting to Goode what he would be paid in the SAC at ¶¶ 128-133.

## VI. Each of Plaintiffs' Claims Adequately Plead a Cause of Action

For the reasons below and as further explained in their Gaia Response, Plaintiffs have adequately pled each and every claim against Defendants.

### A. Plaintiffs' Breach of Contract Claim is Adequately Pled

Defendants claim that they may only be liable if they failed "to disclose the responsible principal corporation to which [they] answered as an agent." As explained above, this is not correct. Due to their fraudulent acts described above, each Defendant may be liable for their independent representations explained in the SAC (*see* SAC at ¶¶ 27-29, 89, 99, 131-133).

### B. Plaintiffs' RICO Claim is Adequately Pled

A civil RICO plaintiff may allege a legal entity enterprise, such as Gaia, Inc., or an association in fact (AIF) enterprise, which is satisfied by a union or group of individuals (and entities) functioning together as a continuing unit. To meet the "AIF" test, the Supreme Court in *Boyle v. United States*, 556 U.S. 939 (2009) concluded that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Id*. at 946. The *Boyle* court stated that "as we said in *Turkette* , an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id*. at 948.

Mail and wire fraud are predicate acts of racketeering activity under RICO and occur "whenever a person, having devised or intending to devise any scheme or artifice to defraud, uses the mail [or interstate wires] for the purpose of executing such scheme or artifice or attempting so

to do... The statutes further proscribes a person "who knowingly causes to be delivered by mail." See section 1343 [or interstate wire] "causes to be transmitted." Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used. *Pereira v. United States*, 347 U.S. 1, 9 (1954).

The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing [or wiring] element, even if the mailing [or wire] itself contains no false information." *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. at 647 (quoting Schmuck v. United States, 489 U.S. 705, 712 (1989) (alteration in original). *See also Parr v. United States*, 363 U.S. 370, 390 (1960) (the Court specifically acknowledged that "innocent" mailings—ones that contain no false information—may supply the mailing element).

Specific intent to defraud is satisfied by "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself."

## The Enterprise and Predicate Acts

Rysavy, Warkins and Medvedich are separate and distinct actors from Gaia (SAC at ¶¶22, 25) and since they are officers they would be "conducting the affairs of the enterprise." Gaia is the enterprise, as alleged in the SAC at ¶¶125-126. The following predicate acts are explained in the SAC:

¶26. While negotiating his talent contract, Mr. Goode met with Gaia CEO Jirka Rysavy ("Rysavy") and employees Brad Warkins ("Warkins") and Kiersten Medvedich. ("Medvedich").

¶27. Mr. Goode was promised various forms of compensation in exchange for his appearance on Cosmic Disclosure ("CD") including, inter alia, $150,000.00 in stock options, a percentage of the revenue brought in by CD through Talent Fees, fees under the "Ambassador Program" and monthly access to the information that showed the revenue brought in by CD. Mr. Goode agreed to work with Gaia in exchange for these promises in addition to a monetary amount agreed to by the parties.

¶28. Gaia, through Rysavy, never reduced these agreements to writing although Mr. Goode requested they be memorialized in his written contract. Rysavy assured Mr. Goode that he would keep his word. Rysavy, to date, has reneged on all of these agreements.

¶29. On August 22, 2016 (the "August 22 Contract"), Gaia entered into a contracting agreement (the August 22 Contract and all amendments hereafter the "Contracting Agreement") with Mr. Goode promising certain compensation for his testimony by and through CD as well as various speaking arrangements.

¶48. Gaia continues to use Goode's protected phrases and materials on various advertising and promotional materials.

¶49. Just prior to Mr. Goode's departure from Gaia and CD, Gaia hired additional talent to take over Mr. Goode's role on the show. Individuals like Jason Rice, Emery Smith and others appeared on CD and, to Mr. Goode's shock and dismay, proceeded to use Goode's protected phrases and testimony that copied his.

¶50. In response, and in an attempt to prevent any dilution and tarnishment of his branding and goodwill, Goode sent out multiple Cease and Desist letters to Gaia and the talent that was appearing on Gaia utilizing Goode's protected IP. In response, Gaia's attorneys and talent (in an attempt to turn the Conscious Community against Goode)  launched an attack on Mr. Goode for attempting to protect his business assets.

¶52. Goode discovered that Gaia offered to provide legal representation for Rice's defense. After Warkins and Medvedich sent Rice a letter offering legal protection in response to Goode's Cease and Desist letter, Rice sent it back signed and released the aforementioned public statement.

The predicate acts are more thoroughly laid out in SAC at ¶¶129-138.

### Pattern of Racketeering Activity

The Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 239-243 (1989) set forth the legal framework for determining whether a "pattern of racketeering" was adequately alleged.  The Court in *H.J. Inc*. discussed that "continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Id*., at 241.  The Court further stated that in either case, it is centrally a temporal concept, that is a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. A pattern of racketeering is outlined explicitly in the SAC at ¶¶138-140: "the Defendants named herein have been conducting the operations of Gaia Inc. since at least 2016, and will continue the cycle of deception and illegal actions against Goode into the

future if not stopped. Thus, the Gaia Defendants remain a threat to others and their racketeering activity meets the open-ended continuity test".

Plaintiffs have outlined the RICO violation by Defendants with painstaking specificity and their Motion to Dismiss Claim I should be denied.

### C. Plaintiffs' Trademark Infringement Claim is Adequately Pled

As explained above in Section III, Plaintiffs' claim for trademark infringement must go forward. Even if the heightened rule Defendants allege is the correct rule applies (it does not), all three elements Defendants allege are deficient are met. Plaintiffs allege that Defendants are actively participating in the content creation on Gaia and as such are responsible for placing the GES Marks in their content (including commentary and dialogue) not associated with Mr. Goode or GES and causing the GES marks to be displayed prominently and in association with Gaia when searching for GES Marks in a search engine or on social media (SAC at ¶ 151).

### D. Plaintiffs' Other Tort Claims are Adequately Pled

#### a. Colorado Consumer Protection Act

As explained above, in its Gaia Response and in the SAC Defendants made multiple representations to, at least, the owners of various conferences that caused the owners of those conferences to cancel Goode's appearance at those conferences. (SAC ¶118, 206-7).

#### b. Colorado Common Law Unfair Competition

As explained above in Section VI(C), Plaintiffs have adequately pled claims for common law unfair competition, because those elements are the same or similar as those elements for trademark infringement.

#### c. Plaintiffs Have Agreed to Dismiss the Defamation Claims Against Defendants

The Parties have a Rule 11 agreement that Plaintiffs' defamation claims are to be dropped as to the Defendants. (*See* Exhibit "A") and therefore are no longer asserted against Defendants.

### d. Tortious Interference

As explained above in Section VI(D)(a), in its Gaia Response and in the SAC Rysavy, Warkins and Medvedich each independently are believed to have spoken with various conferences and interfered with Goode's business relationships to prevent him from returning to speak at those conferences (SAC at ¶¶89, 99). Plaintiffs allege three separate occasions in 2018 wherein Defendants met with heads of the the CITD, NLE and the CLE conferences to make harmful statements against Plaintiffs in order to have them blacklisted from those events. Plaintiffs did in fact suffer financial damages because of this (SAC ¶118, 206-7).

## VII. Attorney's Fees

In good faith and compliance with this Court's Practice Standards, Goode has revised its Complaint to address the issues Defendants have raised. In doing so, Goode has dropped claims that it could have pursued in order to narrow the issues. As evidence of its own inability to work within the system and operate in a showing of good faith, Defendants have still challenged every single one of Goode's claims. This has cost Goode dozens of hours and thousands of dollars and thus Goode should be compensated and awarded fees and sanctions under Colo. Rev. Stat. § 13-17-102. As such, Goode respectfully requests this Court award fees incurred in amending its complaints, conferring with counsel, and responding to its related Motions brought forth only as a delay tactic in order to force Goode to wait even longer before it may be justly compensated and made whole for the injuries caused by Defendants.

## VIII. Conclusion

Defendants have harmed Goode with its tortious conduct for years now, even after Goode has attempted to settle the issues between the Parties. Defendants continue their harmful conduct and continues to harm Plaintiffs. The Plaintiffs deserves the opportunity to explore these actions further in discovery, to present evidence to a judge and jury at trial and be compensated for the harm Goode has suffered. The Court should deny Defendants' Motion and request for attorney's fees and instead award fees to Goode and sanctions against Defendants and their counsel for having to respond to Defendants' groundless Motion.

Respectfully submitted this 26th day of April 2021.

_s/ Valerie A. Yanaros_
Valerie Yanaros, Esq.
State Bar No. 24075628
Yanaros Law, P.C.
15851 Dallas Parkway, Suite 600
Addison, Texas 75001
Tel.: (512) 826-7553
**ATTORNEY FOR PLAINTIFF**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26th, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.

By: <u>s/ Valerie Yanaros</u>
Valerie Yanaros