IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

                                        Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH

                                        Defendants.

_____

ALYSSA CHRYSTIE MONTALBANO, individually,
Counter-Claimant,

v.

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,
Counter-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC;
DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
VALERIE YANAROS WILDE,
ELIZABETH LORIE,
BRIAN JAMES FLYNN,
WILLIAM CAMPBELL,
MATTHEW GROVE,
DIANA TERRY, and
CHRISTINA GOMEZ,

                                        Third-Party Defendants.

---

**PLAINTIFF JAMES COREY GOODE AND GOODE ENTERPRISE
SOLUTIONS, INC.'S RENEWED MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6)**

---

## I.      Introduction

James Corey Goode ("Mr. Goode") and Good Enterprise Solutions ("GES") (collectively "Goode" or the "Plaintiff") files this Renewed Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(6) to Defendant/Counterplaintiff Alyssa Montalbano's ("Montalbano" or "Counterplaintiff") Counterclaims (Docket 183, the "Amended Counterclaim(s)").  This Court should dismiss the Amended Counterclaims in their entirety.

## II.      Background

Counterplaintiff, merely days before Christmas, filed almost five hundred pages of overly verbose allegations and claims that do not have a basis in law, fact or reality. Counterplaintiff has had the same or similar claims dismissed by Mesa County District Court of Colorado (*Alyssa Chrystie Montalbano v James Corey Goode*, case number 2018-cv-50 the "Mesa County Case") (*see* Exhibit "A", the "State Court Dismissal") and some of Counterplaintiffs' Amended Counterclaims are barred by the doctrine of collateral estoppel. Counterplaintiff either lacks standing to bring the remaining claims or lacks the requisite legal and/or factual support for them to survive dismissal. Counterplaintiff's Amended Counterclaims merely dropped some parties and added a multitude of others but failed to add sufficient factual support in order to withstand a motion to dismiss because they state no cognizable claim. This Court should employ the same reasoning by the District of Colorado in its report and recommendation (Exhibit "B", the "R&R") and Mesa County in the State Court Dismissal and dismiss all of the Amended Counterclaims.

III.     **Applicable Standards**

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A plaintiff "fails to state a claim upon which relief may be granted," when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Some claims are "so insubstantial, implausible, . . . or otherwise completely devoid of merit as not to involve a federal controversy." *See Oneida Indian Nation of N.Y. v. Oneida Cty.*, 414 U.S. 661, 666 (1974). Federal courts lack power to entertain these "wholly insubstantial and frivolous" claims. *Southpark Square Ltd. v. City of Jackson,* 565 F.2d 338, 343–44 (5th Cir. 1977). Determining whether a claim is "wholly insubstantial and frivolous" requires asking whether it is "obviously without merit" or whether the claim's "unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject." *Id*. at 342.

Counterplaintiff's Amended Counterclaim is neither short nor plain, and to fashion how she is entitled to relief entails an elaborate stretch of the imagination. The allusions to secret government mind-control tactics and "dream visions" as a basis for legal remedy are completely without merit. This Court's time and resources should not be wasted litigating such claims, and they should be

dismissed. *See Atakapa Indian de Creole Nation v. Louisiana,* 943 F.3d 1004, 1006 (5th Cir. 2019).[1]

## IV.    Arguments and Authorities

The United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It has further identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In considering such matters, this Court may "apply common sense." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 954 (4th Cir. 1995) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)).

Where a pleading fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile, dismissal with prejudice is appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Instead of grounding allegations in fact and legal substance, the Amended Counterclaims add wild accusations that cannot be considered or weighed by a court and/or jury. The majority of the "factual" statements take place in a "dream sleep-wake" state that Defendant has allegedly experienced on various occasions—the exact type of "facts" that courts have declined to consider.[2]

---

[1] "Unsurprisingly, we can find no Supreme Court precedent controlling or even addressing the plaintiff's exotic claims. We must therefore ask: are the claims "obviously without merit"? We say yes." *Id.*

[2] Courts in this District have declined to entertain such fantastical pleadings such as Montalbano's and dismissed them in their entirety. (*See Manco v. Does*, No. 08-3205-SAC (D. Kan. July 29, 2009) dismissing a plaintiff's

Montalbano's Amended Counterclaim is akin to the pleading at issue in *Manco* and should be dismissed ("[p]laintiff's complaint is 50 pages long and has over 100 pages and exhibits attached. With the complaint, plaintiff filed a 'Brief in Support of Initial Complaint' and attached exhibits amounting to over 200 pages. Plaintiff's initial pleading is not a 'short and plain statement' of his claims, and patently violates Rule 8 of the Federal Rules of Civil Procedure", *Manco* at *1). Moreover, granting Defendant leave to amend her counterclaims under any circumstances would be futile. (*See Mettlen v. Kaste*, No. 16-cv-4008-DDC-KGG, at *7 (D. Kan. Oct. 4, 2016) "[s]o long as plaintiff's Complaint is premised—as it is here—on defendants' alleged use of mind control devices attached to small jets, he cannot state a plausible claim for relief"). It is neither short nor plain. *See Bank of Am., N.A. v. Lebreton*, No. CIV 14-0319 JB/KBM (D.N.M. Apr. 20, 2015) (the court instructing the *pro se* defendant to amend her pleading to a "short and plain statement" because it could not "identify the legal claim that the Counter Claim alleges").

## V.    Montalbano's Counterclaims Must be Dismissed in Their Entirety
### a.    Claims 4-8, 10-13, 16 and 18 are (aside from baseless) Criminal in Nature and Counterplaintiff Lacks Standing to Bring these Claims in this Court

---

mind-control-based claims for lacking any arguable basis in law or fact and gathering cases holding the same). Allegations regarding government-controlled human experiments and mind control are specifically disregarded.  *See Gutierrez v. N.M. Corr.*, No. CIV 19-0648 JB\SCY, at *2-3 (D.N.M. Oct. 6, 2020) "the claim that Gutierrez is being used as a human robot, via unknown radio signals, is not cognizable under any state or federal law"; *Kersh v. Smeler*, 390 Fed. App'x 836 (10th Cir. 2010) affirming dismissal of habeas petition where petitioner alleged an "invisible human robot conspiracy"); *Owens-El v. Pugh*, 16 Fed.Appx. 878 (10th Cir. 2001) (affirming dismissal of claims as factually frivolous where prisoner alleged harassment and torture by way of a mind-control device); *Thibeaux v. Cain*, 448 Fed.Appx. 863, 864 (10th Cir. 2012) involving *pro se* lawsuit alleging that a wire had been implanted in plaintiff's body to monitor his thoughts was factually frivolous); *Flores v. U.S. Atty. Gen.*, 442 Fed. App'x. 383 (10th Cir. 2011) affirming § 1915(e)(2) dismissal of civil rights complaint alleging that the government used outer space satellites to torture plaintiff and his family members); *Murray v. United States*, 475 Fed. App'x. 311, 312 (10th Cir. 2012)(involving complaint alleging various conspiracies by the government, including the use of satellites to damage the plaintiff's reproductive system, and concluding the claims were properly dismissed as frivolous); *see also Maley v. State*, No. 08-3146-SAC, at *1 (D. Kan. June 24, 2008) (dismissing the case in its entirety when the plaintiff alleged he "was illegally implanted with a mind control device" by the government and did "not provide any medical reports, dates or supporting affidavits for medical personnel").

Counterplaintiff asserts claims for Criminal Mail Fraud under 18 USC 1341 (Claim 4), Criminal Wire Fraud under 18 USC 1343 (Claim 5), Criminal Human Trafficking under 18 USC 1590 (Claim 6), Theft of Trade Secrets under 18 USC 1832 (Claim 7), Criminal Economic Espionage under 18 USC 1831 (Claim 8), Criminal Defamation under CRS 13-80-103 (Claim 10), Criminal Money Laundering under 18 USC 1956 (Claim 11), Criminal Harassment under CRS 18-9-111 (Claims 12 and 13), Criminal Abuse of Process under 18 USC 1589 (Claim 16), Criminal Extortion under 18 USC 1951 and 1952 (Claim 18). All of the aforementioned criminal causes of action are only enforceable by the state.

Although Congress can by law create rights or obligations, it does not automatically follow that private parties can enforce those rights or obligations through the judicial process. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Frequently—and for good reasons—only the executive can enforce a federal statute. Other federal laws create individual rights that are  enforceable only by agencies, *see, e.g., Commc'ns Workers v. Beck*, 487 U.S. 735, 742 (1988), or not enforceable at all, *see, e.g., Alden v. Maine*, 527 U.S. 706 (1999). Whether a private party can bring suit to enforce a statute depends on if that statute—expressly or by implication—provides a private right of action. On this point congressional intent is determinative because "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Courts will dismiss criminal claims that are not private causes of action. (*see Campbell v. M&T Bank*, Case No. 3:16-cv-118 (W.D. Pa. Mar. 22, 2017), dismissing a plethora of criminal claims with no private cause of action.)[3]

---

[3] "The United States Code is the official compilation of codified federal law. As of March 2017, the U.S. Code contains 54 titles. Those 54 titles contain hundreds of chapters, and those hundreds of chapters contain thousands of laws. To a layperson, it may seem as though all those laws are bases upon which to sue. After all, if a law is broken, is it not up to the courts to declare it so? The simple answer is maybe. Our legal system has certain threshold requirements that must be met before a person can sue. These requirements include the existence of a private cause of action; just because a law was broken does not mean that Congress intended that law be judicially

All of the aforementioned claims are criminal. As such, the claims listed above should be dismissed in their entirety.

>    i.   **Counterplaintiffs Claims, if Converted to Civil Remedies for Theft of Trade Secrets and Defamation, are Barred by the Doctrine of Collateral Estoppel and the *Rooker-Feldman Doctrine***

To the extent that Counterplaintiff is attempting to invoke civil causes of action under Claims 7 and 10, these are barred by the doctrine of collateral estoppel. Counterplaintiff asserted these exact claims with the exact facts in her earlier suit filed in Mesa County Court. These claims were dismissed with prejudice (*see* Exhibit A) and attorneys fees were awarded to Mr. Goode. As such, Counterplaintiffs' Amended Counterclaims 7 and 10 must be dismissed, as further explained in more detail below. Most of Defendant's issues have been heard, considered and dismissed with an award of fees to Goode (*see Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229, 233 n.3 (E.D.N.Y. 2014) (where the complaint which did not clearly lay out the facts underlying the action at bar, reflected the *pro se* plaintiff's dissatisfaction with the decisions in three prior actions based upon the same underlying facts"). Montalbano complains of decisions already made by previous judges and includes hundreds of pages of descriptions of her dreams and alleged coercion between counter- and cross-defendants via telepathy and other means that—even *if* real—could not be proven or disproven in a court of law, nor are they actionable under the laws in this country.

## VI.   Montalbano Only Makes Conclusory Allegations of Harm, not Specific as Required by Many of Her Claims

Montalbano's only accusations of harm as fantastical and in no way believable, as explained above and laid out below:

---

enforceable by a private litigant. This means that flipping through the U.S. Code in search of aptly named laws upon which to sue is a poor litigation strategy. Which brings us to this case." *Id*.

### **DEFRAUDED DREAM JOURNAL RECORDS**

126.   **Due to belief** in Goode and Wilcock's public claims and that they regularly needed donations of all kinds and were legitimate dream researchers, dream prophets, and dream teachers helping humanity; Montalbano sent Goode and by extension David Wilcock approximately 400 emails at SphereBeingAlliance@gmail.com, with approximately 500 Dream Visions (Intellectual Property/dream journals) attached as JPGs in PDF files along with custom dream analyses, private information, and associated dream research.

127.   Montalbano sent these records due to Goode's extensive and non-stop dream visits and Wilcock's fairly regular dream visits as well.

Amended Counterclaim at ¶127.

As another example, under Claim 6 (that must be dismissed as explained above) Montalbano alleges physical harm by remote neural stalking. As explained below, these claims are irrational and wholly incredible and—under *Denton*—may be disregarded as frivolous.

### a. **Claim 1 (Civil RICO) Fails for Lack of Any of the Requisite Elements; Fails to Meet Heightened FRCP 9(b) Standard**

"The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." (*Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006)).

The Supreme Court has added additional pleading requirements that a party must satisfy in order to state a RICO claim. As it is relevant here, a party must demonstrate proximate cause; that is, that he or she was "injured in his [or her] business or property by reason of a violation of [18

U.S.C. § 1962[4]].” *Holmes v. Sec. Inv'rs Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (explaining Holmes as requiring more than "but for" causation; rather there must be some "direct relation between the injury asserted and the injurious conduct alleged").

In this case, although the allegations are somewhat difficult to follow, Counterplaintiff alleges that Plaintiffs engaged in illegal activity during the pendency of the state court proceedings which resulted in an unfavorable dismissal of her case. This theory—that Counterplaintiff suffered injury because of fraud perpetrated on a third-party—has been discredited by the Supreme Court. *See Anza*, 547 U.S. at 457-58. Besides the absolute incredibility of Counterplaintiff's allegations, she has shown no causal connection between some incomprehensible, vague and unattenuated alleged actions by Plaintiffs and any possible harm she could have suffered. Indeed, because she has only recited the threadbare elements of the causes of action, it is difficult to decide what actions alleged throughout the hundreds of pages are at issue. Moreover, as explained above, she has not shown injury.

### b. Claims 2 and 3: No Misrepresentation, No Reliance by Counterplaintiff and No Harm based on Reliance

Montalbano's alleged misrepresentations by Plaintiffs are that Mr. Goode referred to her as a "stalker" and as part of the "Dark Alliance". Mr. Goode filed two temporary restraining orders against Montalbano in Broomfield County Court (Exhibits "C" and "D"). As shown in those verified affidavits and the supporting briefs, evidence *and TRO order signed by the Court* (Exhibit C at 1-3), Mr. Goode had ample support for his claims of stalking. After the second TRO was filed, Goode filed the instant action that included Montalbano. This replaced any need to pursue the state

---

[4] Counterplaintiff alleges Claim 1 under §1961. After undersigned counsel conferred with Counterplaintiff, understands she meant to allege under §1962.

court TRO. Goode never tied Montalbano to any "Dark Alliance" references, but those references would not qualify as a "misrepresentation" anyway.

### i. Claim 2: No Fraudulent Representation

Based on the "facts" alleged in the Amended Counterclaim, there is no cognizable claim for fraudulent misrepresentation . The elements of fraudulent misrepresentation under Colorado law are: (1) a fraudulent misrepresentation of material fact; (2) the plaintiffs' reliance on the material representation; (3) the plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting in damages. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994); *Nielson v. Scott*, 53 P.3d 777, 780 (Colo. App. 2002). As stated above, there is not fraudulent misrepresentation of a fact. To say that Montalbano relied on a statement that she was a stalker or part of a "Dark Alliance" would be nonsensical. It follows that any reliance would be unjustified. As stated above, Montalbano does not state any reliance damages. All four elements are missing and Claim 2 fails.

### ii. Claim 3: No Violation of the CCPA

The CCPA was enacted to regulate commercial activities and practices which, "because of their nature, may prove injurious, offensive, or dangerous to the public." *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 112 (1972). The CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud. *Showpiece Homes, Corp. v. Assurance Co. of America*, 38 P.3d 47, 50-51 (Colo. 2001).

To prove a private cause of action under the CCPA, a plaintiff must show:

(1) that the defendant engaged in an unfair or deceptive trade practice;
(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
(4) that the plaintiff suffered injury in fact to a legally protected interest; and
(5) that the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

Here, all but the second element are absent. Even assuming the conduct Counterplaintiff complains of took place in the course of Plaintiffs' business, vocation or occupation, Montalbano's allegations do not describe an unfair or deceptive trade practice. The actions complained of include vague references to Plaintiffs disseminating "fake news" with wild allegations (including cult-like practices) that are wholly unsubstantiated. As explained above, her allegations that Plaintiffs' references to stalking and a "Dark Alliance" are not misrepresentations. Merely passively posting information is not an unfair or deceptive trade practice.

A fundamental element of a claim under the Colorado Consumer Protection Act (CCPA) is that the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property. *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146 - 47 (Colo. 2003). The allegations in the Counterclaim describe an impact allegedly suffered by Montalbano, but nothing indicates or implies that Plaintiffs' practices had any significant impact on the public.

As explained above, Montalbano only makes conclusory references to damages without any specificities or factual support. So, the fourth and fifth elements are not met and Counterplaintiff's third claim fails.

### c.   Claim 9: Copyright Infringement is Inapplicable

Copyright is a form of legal protection for authors of "original works of authorship," including literary, dramatic, musical, artistic, and certain other intellectual works. This protection

is available to both published and unpublished works. (U.S. Copyright Act, 17 U.S.C. §§ 101 et

seq). Copyright protects certain works such as:

- Literary works
- Musical works, including accompanying words
- Dramatic works, including accompanying music
- Pictorial, graphic, and sculptural works
- Motion pictures and other audiovisual works
- Sound recordings

(17 U.S.C. §102(a)). Nowhere in Section 102 does the statute allow for "dream visions"—

published, or unpublished.

Certain material is not protected:

- Titles, names, short phrases and slogans; familiar symbols or designs, mere variations of typographic ornamentation, lettering, mere listings of ingredients or contents
- **Ideas, procedures, methods, systems, processes, concepts, principles, discoveries**, or devices, as distinguished from a description, explanation, or illustration
- Works consisting entirely of information that is common property and containing no original authorship
- Works in the public domain

(17 U.S.C. §102(b)) (emphasis added).

Plaintiff's ideas encapsulated in her dream visions are not actual copyrighted works.

Nothing else in Plaintiff's motion could be construed as copyrighted work.

To assert a prima facie claim of copyright infringement, a party must allege "(1) ownership

of a valid copyright, and (2) copying of constituent elements of the work that are original.'" (*Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Supreme Court has held that

registration occurs and a copyright claimant may commence an infringement suit when the

Copyright Office registers a copyright. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,

139 S. Ct. 881, 886-87 (2019).

To determine substantial similarity, the Tenth Circuit has stated that the "ordinary

observer" test is an appropriate method. *Country Kids `N City Slicks, Inc. v. Sheen*, 77 F.3d 1280,

1288 (10th Cir. 1996). The court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated plaintiff's protectible expression by taking material of substance and value." *Id*. Stated otherwise, "[t]he essence of this test is whether the 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Id*. Although the issue of substantial similarity may be an issue of fact for resolution by a jury, a court may determine non-infringement as a matter of law where (1) the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work or (2) no reasonable jury could find that the two works are substantially similar. *Fisher v. United Feature Syndicate*, Inc., 37 F. Supp. 2d 1213, 1224 (D. Colo. 1999).

Montalbano accuses Plaintiffs of infringing on two federal copyright registrations on books she authored by making social media posts. The nature of the rights at issue and the allegedly infringing "works" (posts versus books) are so inapposite that there cannot possibly be the requisite "substantial similarity" required for infringement. That is, no reasonable jury could find that the Montalbano's books and Plaintiffs' broadcasts are substantially similar. Because her dream visions are not copyrightable subject matter and because the matter she alleges is infringing by Plaintiffs is nowhere near the same as her copyrighted works, these claims also fail entirely and must be dismissed.[5]

> **d. Claims 14 and 15: There are No Facts to Show Injury to Counterplaintiff's Constitutionally-Protected Interests**

---

[5] Montalbano also alludes to a picture she "donated" and was "used" by an "associate" of Plaintiffs at a conference. Counterclaim at 99. Obviously there are issues here related to an actual or implied license of the work at issue, but most importantly she is accusing the "associate" of using her work without permission. This all is of no consequence, however, because Montalbano has not federally-registered the work.

Montalbano's Claims 14 and 15 are for deprivation of civil rights and conspiracy to do so. Section 1983 and § 1985 claims share a common element: a plaintiff must show some deprivation of a federally protected right in order to be successful. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995); *Houston v. Reich*, 932 F.2d 883, 890 (10th Cir. 1991). Montalbano claims the deprivation in this case came through violations of a blunderbuss of references to the United States and Colorado Constitutions. (Amended Counterclaims at 199-219). Those that Plaintiffs can filter from this list are: due process rights, free speech and right to privacy. Plaintiffs must make a mental leap to devise what possible Constitutional rights are allegedly at issue here or how they possibly could be harmed. Plaintiffs could not have possibly used any of the alleged mind-control tactics to hinder her due process rights, certainly did not stifle her speech and did not invade her privacy through disseminating any alleged dream visions. "The Court has no obligation to scour the record in search of evidence to support Plaintiff's claims. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir.2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her].")." *McGowan v. Bd. of Trs. for Metro. State Univ. of Denver*, 114 F. Supp. 3d 1129, 1142 (D. Colo. 2015). Here, even searching through the almost five hundred pages of filed documents would not return any facts to support Claims 14 and 15.

### e.   Claim 17: No Abuse of Process Because No Baseless Cause of Action

In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages. *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007). "An improper use of the legal process occurs when a particular procedural tool is used in an

attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson v. Am. Family Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1305 (D. Colo. 2012).

As this Court has stated *in OmniMax Int'l, Inc. v. Anlin Indus., Inc.*, No. 18-cv-01830-DDD-MEH, at *13-15 (D. Colo. June 17, 2019), an ulterior motive does not implicate an abuse of process claim. "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994). And "while the ulterior motive may be inferred from the wrongful use of the process, the wrongful use may not be inferred from the motive." *Id.*[6] Counterclaimant has failed to plausibly allege any legal impropriety, and an "ulterior or even nefarious motive, alone, isn't enough to constitute an abuse of process." *Parks v. Edward Dale Parrish LLC*, No. 17CA1257, 2019 WL 470515, at *3 (Colo. App. 2019). As Judge Jackson has held, "filing a complaint not justified in fact or law alone is not enough to amount to an abuse of process." *GN Netsome, Inc. v. Callpod, Inc.*, No. 11-CV-03271-RBJ, 2012 WL 4086530, at *2 (D. Colo. Sept. 17, 2012) (reviewing Colorado authority).

As stated above, Plaintiffs have had ample support to bring the claims in the instant suit and the previous stalking TROs. The fact that Montalbano's Mesa County Case was removed (properly) based on her pleading of copyright infringement. Only after Montalbano revised her complaint to plead around the copyright claims was the Mesa County Case remanded. Even if there is an alleged "ulterior motive," (there is not) there are no allegations showing this action and

---

[6] *See also* Restatement (Second) of Torts § 682 comment b (1977) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, [although] there is an incidental motive of spite or an ulterior purpose.")

its procedural tools have been used for anything other than their regular, legitimate judicial functions.

### f.  Claim 19: No Cognizable Theory, but if Invasion of Privacy No Reasonable Expectation of Privacy

Claim 19 does not state a cognizable theory. To the extent that it is meant to implicate invasion of privacy, it fails. The Second Restatement of Torts § 652C articulates the tort of appropriation of another's name or likeness, stating: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.". The Colorado Civil Jury Instructions divide the tort into five distinct elements: (1) the defendant used the plaintiff's name or likeness; (2) the defendant sought to take advantage of the plaintiff's reputation, prestige, social or commercial standing, or any other value attached to the plaintiff's name, likeness, or identity; (3) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (4) damages; and (5) causation. CJI-Civ.4th 28:4 (2000); *see Dickerson v. Dittmar*, 34 P.3d 995, 1001 (Colo. 2001).

"A plaintiff's claim of invasion of privacy by appropriation of her name and likeness will not succeed, however, if the defendant's use of the plaintiff's name and likeness is privileged under the First Amendment." *Dittmar*, 34 P.3d at 997. Whether the  First Amendment privilege applies is a question of law. *See id.* at 1003.

The First Amendment "permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Dittmar*, 34 P.3d at 1003.

All but the first element are at issue here, but as explained above Montalbano does not describe any particular damages here. Even if she could, the requisite causation is lacking. If, for

example, Montalbano alleges that her business has failed because she was engaged in these lawsuits and could not work, as explained in Exhibit D, it was Montalbano who plagued Plaintiffs and the dockets with voluminous, needless, and baseless filings.

### g.   Claims 20 and 21: No Outrageous Conduct, Certainly None that Threatened Bodily Harm
#### i.   There is no claim for IIED

To prevail on a claim for intentional infliction of emotional distress, plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Han Ye Lee v. Colorado Times, Inc*., 222 P.3d 957, 966-67 (Colo. App. 2009). Plaintiff clearly fails to allege even the first element.

"'Outrageous conduct' is defined as conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Culpepper v. Pearl St. Bldg., Inc*., 877 P.2d 877, 882 (Colo. 1994).

A defendant is not liable for mere insults, indignities, or annoyances that are not extreme or outrageous. *Reigel v. SavaSeniorCare L.L.C*., 292 P.3d 977, 990-91 (Colo. App. 2011) This District has held that subjecting an elderly women in a nursing home to Scientology practices is not outrageous conduct. *Mott v. Narconon Fresh Start*, Civil Action No. 14-cv-01293-PAB-KMT, at *8-9 (D. Colo. Mar. 17, 2015).

Montalbano's alleged conduct falls short of what this District has held to be outrageous conduct, and thus claim 20 fails.

#### ii.   No plausible fear of bodily harm

To prevail on a claim for negligent infliction of emotional distress, plaintiff must show that "defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011).

Montalbano has not alleged any plausible facts to support an "unreasonable risk of physical harm". Claim 21 fails as well.

### h.   Claim 22: No Alleged Benefit to Plaintiffs or Expense to Counterplaintiff

An unjust enrichment claims accrues "when a person discovers, or through the exercise of reasonable diligence should discover, that all elements of the claim are present." *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 58 (Colo. App. 2011). Under Colorado law, an unjust enrichment claim requires a showing of three elements: "(1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000).

Montalbano makes conclusory references to benefits to Plaintiffs and expenses to her but does not provide any factual support. This final claim fails as well as the other twenty-one.

### VII.   Collateral Estoppel and the Rooker-Feldman Doctrine Bar Most of Counterplaintiff's Counterclaims
### a.   Collateral Estoppel

Under Colorado law, the doctrine of collateral estoppel "bars relitigation of an issue if: (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to

litigate the issues in the prior proceeding." *Bebo Constr. Co. v. Mattox O'Brien, P.C.,* 990 P.2d 78, 84 — 85 (Colo. 1999).

As explained above, Judge Flynn issued a final judgment on the claims of defamation and theft of "dream visions" (what she alleges are her trade secrets) and thus claims 7 and 10 are barred under collateral estoppel.

### b. The Rooker-Feldman Doctrine

"The Rooker–Feldman doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074–75 (10th Cir. 2004) (footnote omitted). "The Rooker-Feldman doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012). The doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Tenth Circuit has "concluded that 'the type of judicial action barred by Rooker Feldman [] consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010). "Rooker-Feldman does not bar federal court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Id*. (quoting Bolden, 441 F.3d at 1145). Tenth Circuit jurisprudence has emphasized the relief sought by the plaintiffs. *See id*. The court has applied the Rooker Feldman

doctrine where the relief sought required the federal court to review and reject the state court judgment. *See id*. (citing *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007)).

Here, Montalbano seeks this Court's review of Judge Flynn's rulings in the Mesa Case. This case went on for almost two years and has been litigated at length and depth in state and federal court. The claims she seeks to revisit should be barred and dismissed.

### VIII.   Conclusion

Montalbano has burdened this court with a multitude of completely baseless claims and alleged "facts" and "evidence" that have no basis in reality. *See Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1007 (5th Cir. 2019) ("We will not try to decipher what any of this means. "[T]o do so might suggest that these arguments have some colorable merit." *Crain v. Comm'r* , 737 F.2d 1417, 1417 (5th Cir. 1984) (per curiam).") The Court should grant Plaintiff's Motion and grant Plaintiffs attorney's fees incurred in connection with addressing Counterplaintiff's Counterclaims.

Finally, this Court may enjoin Defendant from filing similar pleadings that consume substantial time and resources. (*See Ketchum* at 916, upholding district court's order restricting plaintiff's *pro se* access to the district court and requiring litigant to obtain leave of court to file actions *pro se*). In doing so this Court will streamline the process of the current litigation and relieve all parties from having to wade through the morass of allegations put forth by Defendant in her FACC. Goode respectfully requests this Court enjoin Defendant from further filings and orders costs and fees to be paid to Goode for the time spent responding to Defendant's pleading.

Respectfully submitted this 11th day of April 2021.

> *s/ Valerie A. Yanaros*
> Valerie Yanaros, Esq.
> State Bar No. 24075628
> Yanaros Law, P.C.
> 15851 Dallas Parkway, Suite 600
> Addison, Texas 75001
> Tel.: (512) 826-7553
>
> **ATTORNEY FOR PLAINTIFF**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on April 11th, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.

> By:     s/ Valerie Yanaros
>           Valerie Yanaros