IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE ENTERPRISE SOLUTIONS INC.,

      Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN ZAVODNICK, ALYSSA MONTALBANO, JIRKA RYSAVY, BRAD WARKINS, and KIERSTEN MEDVEDICH,

      Defendants.

----

Alyssa Chrystie Montalbano, Individually

      Counter-Claimant,

v.

James Corey Goode, individually and GOODE ENTERPRISE SOLUTIONS INC.

      Counter-Defendants,

GAIA, INC., Jay Weidner, Jirka Rysavy, Brad Warkins, and Kiersten Medvedich,

      Cross-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC; David Wilcock, THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION, Valerie Yanaros Wilde, Elizabeth Lorie, Brian James Flynn, William Campbell, Matthew Grove, Diana Terry, Christina Gomez

      Third-Party Defendants.

---

BRIAN JAMES FLYNN, WILLIAM CAMPBELL, MATTHEW GROVE, DIANA TERRY, AND CHRISTINA GOMEZ'S MOTION TO DISMISS ALYSSA CHRYSTIE MONTALBANO'S COUNTERCLAIMS COMPLAINT [DOC. 204-1]

## CERTIFICATE OF CONFERRAL

Under D.C.Colo.LCivR 7.1(b)(2), no conferral is necessary. Nor—because Montalbano is pro se—does DDD Civ. P.S. III(D) require conferral.

## INTRODUCTION

Alyssa Chrystie Montalbano lost her case in state district court, and then filed an untimely appeal. Instead of seeking certiorari review or moving on, Montalbano sued the four judicial officers—Judges Brian Flynn, Matthew Grove, Diana Terry, and Christina Gomez—who ruled against her. For good measure, she also sued William Campbell, the director of Colorado's Commission on Judicial Discipline (CCJD), for not disciplining Judge Flynn.

Montalbano's claims are foreclosed by absolute judicial immunity, lack of standing, and the *Rooker-Feldman* doctrine. Moreover, her claims are barred for lack of subject matter jurisdiction, and she cannot state plausible claims for relief under Fed. R. Civ. P. 12(b)(6). This Court should dismiss her second amended "counterclaims complaint" [Doc. 204-1] against these Defendants with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Montalbano loses against Goode in state district court.

On June 25, 2018, Montalbano filed a complaint (styled as a "Motion to Order Cease and Desist Unauthorized Use of Intellectual Property, Dream Visions, Copyrighted Materials and Defamation of Character") against James Corey Goode in Mesa County District Court, Case No. 18CV50. (Ex. A.) Judge Flynn was

assigned to the matter. As Judge Flynn described, Montalbano "believes that she is a shaman who is able to see events before they happen in her dreams." (Ex. B, Order re: Pending Mots., May 14, 2019, at 2.) Goode, using "nefarious mind-control techniques" he learned in the military, "allegedly manipulated [Montalbano] into sharing hundreds of emails with him in which she describes her prescient dreams." (*Id.* at 2.) Then, Goode "published these dream stories . . . claiming them as his own." (*Id.*) Montalbano further alleged that Goode defamed her and retaliated against her by seeking a protection order. (*Id.*) Goode moved to dismiss. (Ex. C).

The case proceeded "tortuous[ly]," including removal to, and remand from, federal court. (Ex. B at 2–5; *see also* Ex. D (Register of Actions for 18CV50).) Nine months in, Judge Flynn accepted an amended complaint from Montalbano, denied Goode's pending motion to dismiss as moot, and disposed of numerous motions filed by Montalbano. (Ex. B at 5–14.)

A few weeks later, Goode filed a renewed motion to dismiss Montalbano's amended complaint. (Ex. E.) On January 29, 2020, Judge Flynn granted the motion. (Ex. F.) He found Montalbano "failed to state a cognizable claim as dream visions are neither tangible nor intangible property and [Montalbano] has failed to show that [Goode] broadcasted any defamatory statement published or uttered in or as a part of a visual or sound radio broadcast." (*Id.*) Montalbano filed numerous post-judgment motions on February 12, 2020, and continued to file various motions, objections, and exhibits through July 2020. (Ex. D.) Among other things, she sought

post-judgment relief under Colo. R. Civ. P. 60, Judge Flynn's disqualification, and that Judge Flynn "Read all Pleadings Plaintiff Files with this Court and Adhere to Constitutionally Compliant Case Law." (*Id*.) On August 5, 2020, Judge Flynn addressed and denied Montalbano's numerous filings. (*Id*.)

On August 19, 2020, Montalbano filed another post-judgment motion, in which she accused Judge Flynn of "support[ing] a state of anarchy," violating his oath of office, and essentially failing in his judicial duties. (*See* Ex. G.) Judge Flynn denied all relief, except he returned Montalbano's jury fee. (Ex. H.)

**B.     Montalbano files an untimely appeal.**

Montalbano filed a notice of appeal in the Colorado Court of Appeals, Case No. 20CA1775, on October 14, 2020. (Ex. I.) The court clerk issued an order requiring Montalbano to show cause why her appeal should not be dismissed for failure to timely appeal under Colo. App. R. 4. (Ex. J.) Montalbano responded. (Ex. K.) In a summary order signed by Judge Terry, Judge Grove, and Judge Gomez, the court determined Montalbano's appeal was untimely and dismissed it. (Ex. L.) Montalbano then filed a "Notice of Constitutional Civil Rights Violations and Notice of Disqualification," (Ex. M), which the court construed as a motion for reconsideration and summarily denied, (Ex. N). Montalbano filed additional motions, all of which were denied. (Ex. O (Register of Actions, No. 20CA1775).)

### C.     Montalbano grieves Judge Flynn.

Montalbano filed multiple grievances against Judge Flynn in 2019 and 2020 with the CCJD, where Mr. Campbell serves as executive director. [Doc. 204-1 at 98–99  ¶¶ 270, 271; 126 ¶ 372(b); 195 ¶ 628; 203 ¶¶ 658, 659.] Mr. Campbell did not take disciplinary action, so Montalbano accused him of failing in his duties. *E.g.*, [Doc. 204-1 at 203 ¶ 658.]

### D.     Montalbano files her claims in this matter.

Montalbano's third-party complaint contains 756 numbered paragraphs of allegations.[1] It includes counterclaims, crossclaims, and third-party claims against a bevy of individuals, including these Defendants, who Montalbano lumps in with private counsel as "Public Servants." [Doc. 204-1 at 52 ¶ 39.] The gravamen of Montalbano's complaint is that the judicial Defendants (Judge Terry, Judge Grove, Judge Gomez, and Judge Flynn) committed error in her lawsuit against Goode. *See* [Doc. 204-1 at 196–203 ¶¶ 633–57 (alleging that Judge Flynn erred); 204–05 ¶¶ 664–65 (alleging Judge Terry, Judge Grove, and Judge Gomez erred)]. Montalbano further alleges that Mr. Campbell should have, but did not, remove Judge Flynn from his judicial office. [Doc. 204-1 at 203 ¶ 659.]

---

[1] [Doc. 204-1] is Montalbano's operative third-party complaint. *See* [Doc. 216]. Due to the voluminous and repetitive nature of Montalbano's allegations, the citations to her complaint are intended to be representative, not exhaustive.

## LEGAL STANDARD

### A.    Motion to dismiss under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges a court's subject matter jurisdiction. Under a Rule 12(b)(1) challenge, the court may consider matters outside the pleadings that challenge the allegations upon which the court's jurisdiction depends. *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

The Colorado Governmental Immunity Act (CGIA) also raises a subject matter jurisdiction issue under Fed. R. Civ. P. 12(b)(1). *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). This Court must resolve the CGIA question at the outset. *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 923–24 (Colo. 1993). The party asserting jurisdiction bears the burden of proving it. *City & Cty. of Denver v. Dennis*, 418 P.3d 489, 494 (Colo. 2018). Because Montalbano has not alleged sufficient facts to show jurisdiction, and there is no evidentiary dispute of the facts relevant to governmental immunity, this Court may rule on the pleadings alone without a hearing. *Finnie v. Jefferson Cty. Sch. Dist. R-1,* 79 P.3d 1253, 1260 (Colo. 2003).

### B.    Motion to dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

plaintiff must 'nudge [her] claims across the line from conceivable to plausible in order to survive a motion to dismiss.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). This Court need not accept conclusory allegations as true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In considering a motion under Fed. R. Civ. P. 12(b)(6), this Court may take judicial notice of "another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand'" without converting this motion to one under Fed. R. Civ. P. 56. *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (unpublished) (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)).

## ARGUMENT

### I.     The judicial defendants are absolutely immune from Montalbano's claims.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). "Judges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). This is so "even if [a judge's] exercise of authority is flawed by the commission of grave procedural errors," *id.*, or subject to "allegations of bad faith or

malice," *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they deal with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Here, the doctrine of judicial immunity forecloses Montalbano's claims against Judge Terry, Judge Grove, Judge Gomez, and Judge Flynn. Montalbano's allegations—along with the records in the Mesa County and Court of Appeals cases—show her claims are tied to these Defendants' performance of quintessential judicial duties, including managing their dockets and issuing case-specific orders. To be sure, Montalbano asserts these judges committed legal error, "lied" in their orders, violated her civil rights, and violated their oaths of office. *E.g.*, [Doc. 204-1 at 100 ¶ 279; 176 ¶¶ 558, 560; 193 ¶ 622; 194 ¶¶ 624–26.] But regardless of whether that is true (it is not), such allegations do not overcome the judges' judicial immunity. *Mireles*, 502 U.S. at 11. Thus, this Court should dismiss Montalbano's third-party complaint as to those Defendants.

## II.   Montalbano has no standing to assert claims against Mr. Campbell.

"Standing to sue . . . limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs bear the burden of establishing standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). To meet the burden, a plaintiff

must demonstrate she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Thus, "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.*; *see also Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993) (plaintiff cannot "insert himself substantively into a license-based discipline system"). In fact, this Court has found that plaintiffs lack standing to bring claims specifically against Mr. Campbell for his "alleged failure to take appropriate disciplinary action against" sitting judges. *E.g., Rojas v. Meinster*, No. 19-cv-01896-LTB-GPG, 2019 WL 8331477, at *5 (D. Colo. Sept. 10, 2019).

Here, Montalbano's claims against Mr. Campbell fare no better. Her third-party claims are premised exclusively on her dissatisfaction with Mr. Campbell's alleged failure to discipline Judge Flynn. *E.g.* [Doc. 204-1 at 195 ¶ 628.] Under *Linda R.S.*, she has no standing to bring such claims. 410 U.S. at 619. She also lacks standing because Mr. Campbell cannot change a judge's decision; the CCJD's jurisdiction is limited to disciplining judges for violating the Code of Judicial Conduct. *See* Colo. Const. art. VI, § 23(3)(d). Thus, a favorable decision against Mr.

Campbell could not redress her claims. Accordingly, Montalbano has no standing to assert claims against Mr. Campbell, and this Court should dismiss them.

## III.   The *Rooker-Feldman* doctrine defeats Montalbano's claims.

"[O]nly the Supreme Court can hear appeals from final judgments of state courts;" thus, federal district courts do not have subject matter jurisdiction "to review a case that was resolved by state courts." *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006) (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923)). Moreover, "if the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's [state court claims], then the district court is in essence being called upon to review the state-court decision." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983). So, "challenges to a state court judgment are barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Khalsa*, 446 F.3d at 1031.

The Tenth Circuit has explained that "the type of judicial action barred by *Rooker-Feldman* consists of a review of the proceedings already conducted by the [state] tribunal to determine whether it reached its result in accordance with law." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010). *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 289 (2005).

Here, Montalbano is a classic state court loser seeking redress in federal district court. She lost the Mesa County case, failed to timely appeal it, and has not sought review from the Colorado Supreme Court.[2] Thus, the judgment in the Mesa County case is final. Further, her claims here—where she alleges that these Defendants violated her rights by ruling against her in state court, or (in Mr. Campbell's case) by not meting out judicial discipline—are "inextricably intertwined" with the Mesa County case and the Court of Appeals case. *See Feldman*, 460 U.S. at 483 n.16. Put differently, Montalbano's claims invite this Court to overturn binding state court judgments against her. Under these circumstances, the *Rooker-Feldman* doctrine bars Montalbano's federal lawsuit, and this Court is without subject matter jurisdiction to entertain her complaint. *Khalsa*, 446 F.3d at 1031.

## IV. This Court does not have subject matter jurisdiction over Montalbano's criminal claims.

Private citizens cannot compel enforcement of criminal law. *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986). Here, Montalbano brings multiple claims

---

[2] Again, this Court may take judicial notice of other courts' docket entries in deciding a motion to dismiss. Here, the Court of Appeals' Register of Actions shows Montalbano has not sought certiorari review. (Ex. O.) Her time to do so has expired. Colo. App. R. 52(b)(1).

against these Defendants premised on the alleged violation of federal criminal statutes. [Doc. 204-1 at 101 (claim under the Racketeer-Influenced and Corrupt Organizations (RICO) Act); 122 (claim for mail fraud under 18 U.S.C. § 1341); 125 (claim alleging enticement to human trafficking under 18 U.S.C. § 1590); 136 (claim for theft of trade secrets under 18 U.S.C. § 1832); 179 (claim for money laundering under 18 U.S.C. § 1956); 207 (claim for criminal abuse of process under 18 U.S.C. § 1589(a)(3) and (c)); and 221 (extortion under 18 U.S.C. §§ 1951, 1952(a)(3) and (b))]. Because this Court lacks subject matter jurisdiction to hear such claims, it should dismiss Montalbano's third-party claims to the extent they seek enforcement of criminal statutes against these Defendants. *See Lyons v. Kyner*, No. 09-2045-JWL-DJW, 2009 WL 10690905, at *5 (D. Kan. Sept. 3, 2009) ("Because this case is filed as a civil action and not a criminal proceeding, the Court has no jurisdiction to determine whether any criminal statute has been violated.").

## V. The CGIA bars Montalbano's tort claims.

Under the CGIA, anyone claiming to have been injured by a public entity or employee must file a Notice of Claim within 182 days of discovering the injury. Colo. Rev. Stat. § 24-10-109(1). Failure to comply with this jurisdictional requirement forever bars any tort action against the public entity or employee. *Id.* Further, the CGIA confers immunity to government defendants against state-law tort claims unless those claims arise from one of six limited areas for which sovereign

immunity has been waived, or unless the act or omission causing injury was willful and wanton. Colo. Rev. Stat. § 24-10-106(1).

Here, Montalbano brings a number of state law claims against these Defendants that lie, or could lie, in tort.[3] [Doc. 204-1 at 170 (defamation); 225 (intentional infliction of emotional distress); 229 (negligent infliction of emotional distress); 230 (unjust enrichment)[4]]. Montalbano knew, or should have known, that she suffered her alleged injuries no later than October 21, 2020, when the Court of Appeals dismissed her appeal. *See Abrahamson v. City of Montrose*, 77 P.3d 819, 821 (Colo. App. 2003). But Montalbano did not timely filed the required notice of claim. (Ex. P, Declaration of Tammy Adams.) Thus, her tort claims are barred. § 24-10-109(1). Even if she had timely filed a notice of claim, the CGIA does not waive immunity for the tort claims she alleges here. *See* § 24-10-106(1). Thus, this Court should dismiss Montalbano's tort claims.

## VI.    Montalbano fails to state a plausible claim for relief.

Montalbano's remaining claims against these Defendants fail because she cannot state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6).

---

[3] Montalbano alleges, and these Defendants agree, that they are "public servants." [Doc. 204-1 at 52 ¶ 39]. This Court may also take judicial notice that these Defendants are public employees.

[4] Unjust enrichment claims arising from non-contractual injuries fall within the CGIA's ambit. *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.,* 182 P.3d 687, 692 (Colo. 2008).

**Civil RICO [Doc. 204-1 at 101]**. To the extent this Court construes Montalbano's various RICO claims as civil, not criminal, her claims still fail. "The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).

Here, Montalbano's RICO claim fails for a variety of reasons. First, she fails to plausibly allege the existence of an "enterprise" involving these Defendants. In fact, she expressly defines the so-called "Enterprise" group of defendants to *exclude* these Defendants. *See* [Doc. 204-1 at 101–02 ¶¶ 283–84]. At worst, Montalbano faults the Defendants here for purportedly willfully failing to stop the "Enterprise." [Doc. 204-1 at 103 ¶ 290]. But an "enterprise" under RICO requires either the existence of a legal entity or an "association-in-fact" for which there is a "*common purpose* of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (emphasis added). Montalbano alleges no such "common purpose" between state judicial officials and the "Enterprise." Thus, she cannot plausibly allege this RICO element.

Second, and for similar reasons, Montalbano cannot plausibly allege that these Defendants participated in the "investment in, control of, or conduct" the so-called enterprise. *Tal*, 453 F.3d at 1261.

Third, she fails to set forth a "pattern," which requires showing a "threat of continued criminal activity." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090,

2096–97 (2016). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Again, her claims are bereft of any plausible allegations that these Defendants pose such a threat. Thus, her RICO claim fails on this element too.

Fourth, Montalbano cannot plausibly establish proximate cause, which is an additional required element. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). A plaintiff's allegation she suffered injury due to fraud perpetrated on a third party is insufficient to allege proximate cause. *Tso v. Murray*, No. 16-cv-02480-WJM-CBS, 2017 WL 8787045, at *9 (D. Colo. Sept. 26, 2017). Here, the crux of Montalbano's allegations is that these Defendants enabled alleged criminal or fraudulent conduct by others through a "willful failure to stop" it. *E.g.* [Doc. 204-1 at 103 ¶¶ 290.] Under these circumstances, these allegations are insufficient to establish proximate cause.

Accordingly, Montalbano fails to state a civil RICO claim.

**Civil conspiracy under 42 U.S.C. § 1985 [ECF No. 204-1 at 186].** To sustain a § 1985 conspiracy claim, a plaintiff must allege a conspiracy motivated by "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971)). Montalbano nowhere alleges such invidious discrimination. Thus, her claim fails.

**Civil rights violations under 42 U.S.C. § 1983 [ECF No. 204-1 at 192].**

Montalbano does not specify the constitutional rights that these Defendants purportedly violated. Insofar as her allegations of procedural improprieties and legal error could be interpreted as a claim for violation of her Fourteenth Amendment due process rights, that claim fails.

First, Montalbano fails to plausibly allege these Defendants violated her procedural due process rights. To prevail on a procedural due process claim, a plaintiff must make two showings. *Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, a plaintiff must demonstrate she possesses a protected liberty or property interest. *Id.* Second, a plaintiff must show the procedures impacting her protected interest were inadequate under the circumstances. *Id.* "Where procedural due process must be afforded because a 'liberty' or 'property' interest is within the Fourteenth Amendment's protection, there must be determined 'what process is due' in the particular circumstance." *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 847 (1977). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks omitted).

Here, Montalbano has no cognizable interest in a judicial disciplinary proceeding, so she cannot plausibly state a claim alleging a procedural due process violation against Mr. Campbell. *Linda R.S.*, 410 U.S. at 619. Next, even assuming

16

Montalbano had a protected interest in the Mesa County and Court of Appeals matters by participating as a litigant, she does not plausibly allege a violation of procedural due process against Judge Terry, Judge Grove, Judge Gomez, and Judge Flynn. The records in the underlying Mesa County and Court of Appeals cases amply demonstrate that Montalbano was heard "at a meaningful time in and in a meaningful manner." *Mathews*, 424 U.S. at 333; (*See* Ex. A–O.)  She filed a complaint, filed numerous motions, made arguments against a motion to dismiss, and filed post-judgment motions. That she lost on a motion to dismiss does not plausibly suggest her rights were violated. Further, she filed an appeal. That the Court of Appeals dismissed the appeal because she did not timely file a notice of appeal likewise does not amount to a plausible violation of her procedural due process rights. Thus, this claim fails.

Second, Montalbano fails to plausibly allege these Defendants violated her substantive due process rights. Montalbano must allege conduct "so egregious that it shocks the conscience of the court." *Neiberger v. Hawkins*, 239 F. Supp. 2d, 1140, 1149 (D. Colo. 2002) (quotation marks omitted). "Conscience-shocking behavior is most likely to be found where there is an intent to do harm that is not justified by any governmental interest." *Id*. Mere allegations of negligence are insufficient. *Id*. Here, Montalbano alleges only that these Defendants made erroneous legal rulings or (for Mr. Campbell) erred in not enforcing judicial discipline. Such conduct, if true,

does not come close to "conscience-shocking behavior." This claim therefore fails as well.

## CONCLUSION

For these reasons, these Defendants—Judge Terry, Judge Grove, Judge Gomez, Judge Flynn, and Mr. Campbell—respectfully request that this Court dismiss Montalbano's third-party claims with prejudice.

Dated this 25th day of June, 2021.

Respectfully submitted,

PHILIP J. WEISER
Attorney General

*s/ Dmitry B. Vilner*

DMITRY B. VILNER *
Assistant Attorney General
Civil Litigation and Employment Law Section
Attorneys for Third-Party Defendants Brian
  James Flynn, William Campbell, Matthew
  Grove, Diana Terry, and Christina Gomez

1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6645
FAX:  720-508-6032
E-Mail:  Dmitry.vilner@coag.gov

*Counsel of Record

CERTIFICATION OF WORD COUNT: I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

<u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing BRIAN JAMES FLYNN, WILLIAM CAMPBELL, MATTHEW GROVE, DIANA TERRY, AND CHRISTINA GOMEZ'S MOTION TO DISMISS upon all parties herein by e-filing with the CM/ECF system maintained by the court or by depositing copies of same in the United States mail, first-class postage prepaid, at Denver, Colorado, this 25th day of June 2021, addressed as follows:

Valerie Ann Yanaros
Yanaros Law PC
5057 Keller Springs, Suite 300
Addison, TX 76001
*Attorneys for James Corey Goode and
Goode Enterprise Solutions, Inc.*

Daniel Andrew Dingerson
Ina B. Scher
Davis & Gilber, LLP
1675 Broadway
New York, NY 10019
*Attorneys for Gaia, Inc.; Jirka Rysavy;
Brad Warkins; and Kiersten Medvedich*

Aaron Bardin Belzer
Ashlee Nicole Hoffman
Burnham Law Firm PC
2760 29th Street, Suite 1E
Boulder, CO 80301
*Attorneys for Jay Weidner*

Michael Jacob Laszlo
Laszlo & Associates, LLC
2595 Canyon Blvd., Suite 210
Boulder, CO 80302
*Attorneys for Benjamin Zavodnick*

Timothy M. Murphy
Robinson & Henry PC
7555 E. Hampden Ave., Suite 600
Denver, CO 80231
*Attorneys for Elizabeth Lorie*

Alyssa Chrystie Montalbano
2536 Rimrock Ave. Suite 400-117
Grand Junction, CO 81505
LegalZenACM@gmail.com
*Pro se*

Clif High (*via U.S. mail*)
P.O. Box 141
Moclips, WA 98562
*Pro se*

*s/ La'Tasha Carter*