IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

                              Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH

                              Defendants.

_____

ALYSSA CHRYSTIE MONTALBANO, individually,
Counter-Claimant,

v.

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,
Counter-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC;
DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
VALERIE YANAROS WILDE,
ELIZABETH LORIE,
BRIAN JAMES FLYNN,
WILLIAM CAMPBELL,
MATTHEW GROVE,
DIANA TERRY, and
CHRISTINA GOMEZ,

                              Third-Party Defendants.

_____

**PLAINTIFFS' SECOND RENEWED MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6)**

_____

## I.      Introduction

James Corey Goode ("Mr. Goode") and Good Enterprise Solutions ("GES") (collectively "Goode" or the "Plaintiff") files this Second Renewed Motion to Dismiss ("Motion") under Fed. R. Civ. P. 12(b)(6) to Defendant/Counterplaintiff Alyssa Montalbano's ("Montalbano" or "Counterplaintiff") Amended Counterclaims (Docket 217, the "Amended Counterclaim(s)" or "ACC"[1]).  This Court should dismiss the Amended Counterclaims in their entirety.

## II.     Background

Merely days before Christmas, Counterplaintiff filed almost five hundred pages of nonsensical and verbose allegations, claims, and exhibits that do not have a basis in law, fact or reality. The Mesa County District Court of Colorado dismissed these claims in *Alyssa Chrystie Montalbano v James Corey Goode*, case no. 2018-cv-50 (the "Mesa County Case") (*see* Exhibit "A", the "State Court Dismissal"). Other "claims" in the ACC are barred by the *Rooker-Feldman* Doctrine and collateral estoppel. Counterplaintiff either lacks standing to bring the remaining claims or lacks the requisite legal and/or factual support for them to survive dismissal. The ACC fails to state any cognizable claim. This Court should follow the same reasoning used by the District of Colorado in its Report and Recommendation (Exhibit "B", the "R&R") and Mesa County in the State Court Dismissal and dismiss the ACC in its entirety and award sanctions and fees to Plaintiffs.

## III.    Applicable Standards

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint for failure to state a claim upon which

---

[1] Due to the sheer enormity of the allegations included in the ACC, references to allegations in the ACC are illustrative in nature and are not meant to be exhaustive.

relief can be granted. A plaintiff "fails to state a claim upon which relief may be granted," when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Some claims are "so insubstantial, implausible, . . . or otherwise completely devoid of merit as not to involve a federal controversy." *See Oneida Indian Nation of N.Y. v. Oneida Cty.*, 414 U.S. 661, 666 (1974). Federal courts lack power to entertain these "wholly insubstantial and frivolous" claims. *Southpark Square Ltd. v. City of Jackson,* 565 F.2d 338, 343–44 (5th Cir. 1977). Determining whether a claim is "wholly insubstantial and frivolous" requires asking whether it is "obviously without merit" or whether the claim's "unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject." *Id.* at 342.

Counterplaintiff's ACC is neither short nor plain, and to fashion how she is entitled to relief requires an elaborate stretch of the imagination. The allusions to secret government mind-control tactics and "dream visions" as a basis for legal remedy are completely without merit. This Court's time and resources should not be wasted litigating such claims, and they should be dismissed. *See Atakapa Indian de Creole Nation v. Louisiana,* 943 F.3d 1004, 1006 (5th Cir. 2019).[2]

## IV.    Arguments and Authorities

The United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It has further identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As

---

[2] "Unsurprisingly, we can find no Supreme Court precedent controlling or even addressing the plaintiff's exotic claims. We must therefore ask: are the claims "obviously without merit"? We say yes." *Id.*

those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In considering such matters, this Court may "apply common sense." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 954 (4th Cir. 1995) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). The ACC is replete with wild accusations that cannot be considered or weighed by a court and is devoid of facts grounded in reality. Most of the "factual" statements take place in a "sleep-wake" state (*see, e.g.,* ACC at 65, 127; 135, 409) that Montalbano allegedly experiences on regular occasions—the exact type of "facts" that courts have declined to consider.[3]

Where a pleading fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile, dismissal with prejudice is appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Courts in this District have declined to entertain such fantastical pleadings such as Montalbano's and dismissed them in their entirety. *See Manco v. Does*, No. 08-3205-SAC (D. Kan. July 29, 2009) dismissing a plaintiff's mind-control-based claims for lacking any arguable basis in law or fact and gathering cases holding the same.  Montalbano's ACC is akin to the pleading at issue in *Denton* and *Manco* and should be dismissed ("[p]laintiff's complaint is 50

---

[3] Allegations regarding government-controlled human experiments and mind control are specifically disregarded.  *See Gutierrez v. N.M. Corr.*, No. CIV 19-0648 JB\SCY, at *2-3 (D.N.M. Oct. 6, 2020) "the claim that Gutierrez is being used as a human robot, via unknown radio signals, is not cognizable under any state or federal law"; *Kersh v. Smeler*, 390 Fed. App'x 836 (10th Cir. 2010) affirming dismissal of habeas petition where petitioner alleged an "invisible human robot conspiracy"); *Owens-El v. Pugh*, 16 Fed.Appx. 878 (10th Cir. 2001) (affirming dismissal of claims as factually frivolous where prisoner alleged harassment and torture by way of a mind-control device); *Thibeaux v. Cain*, 448 Fed.Appx. 863, 864 (10th Cir. 2012) involving *pro se* lawsuit alleging that a wire had been implanted in plaintiff's body to monitor his thoughts was factually frivolous); *Flores v. U.S. Atty. Gen.*, 442 Fed. App'x. 383 (10th Cir. 2011) affirming § 1915(e)(2) dismissal of civil rights complaint alleging that the government used outer space satellites to torture plaintiff and his family members); *Murray v. United States*, 475 Fed. App'x. 311, 312 (10th Cir. 2012)(involving complaint alleging various conspiracies by the government, including the use of satellites to damage the plaintiff's reproductive system, and concluding the claims were properly dismissed as frivolous); *see also Maley v. State*, No. 08-3146-SAC, at *1 (D. Kan. June 24, 2008) (dismissing the case in its entirety when the plaintiff alleged he "was illegally implanted with a mind control device" by the government and did "not provide any medical reports, dates or supporting affidavits from medical personnel").

pages long and has over 100 pages and exhibits attached . . . plaintiff filed a 'Brief in Support of Initial Complaint' and attached exhibits amounting to over 200 pages. Plaintiff's initial pleading is not a 'short and plain statement' of his claims, and patently violates Rule 8 of the Federal Rules of Civil Procedure", *Manco* at *1; *see also Bank of Am., N.A. v. Lebreton*, No. CIV 14-0319 (D.N.M. Apr. 20, 2015) the court instructing the *pro se* defendant to amend her pleading to a "short and plain statement" because it could not "identify the legal claim that the Counter Claim alleges"). Moreover, granting Montalbano leave to amend her ACC under any circumstances would be futile. *See Mettlen v. Kaste*, No. 16-cv-4008-DDC-KGG, at *7 (D. Kan. Oct. 4, 2016) "[s]o long as plaintiff's Complaint is premised—as it is here—on defendants' alleged use of mind control devices attached to small jets, he cannot state a plausible claim for relief".

### V.      Montalbano's ACC Must be Dismissed in its Entirety
#### a.    Claims 4-8, 10-13, 16 and 18 are Baseless, Criminal in Nature and thus Counterplaintiff Lacks Standing and this Court lacks Subject Matter Jurisdiction Over Them

This Court does not have subject matter jurisdiction over Montalbano's criminal causes of actions. Counterplaintiff asserts claims for Criminal Mail Fraud under 18 U.S.C. 1341 (Claim 4), Criminal Wire Fraud under 18 U.S.C.1343 (Claim 5), Criminal Human Trafficking under 18 U.S.C. 1590 (Claim 6), Theft of Trade Secrets under 18 U.S.C. 1832 (Claim 7), Criminal Economic Espionage under 18 U.S.C. 1831 (Claim 8), Criminal Defamation under CRS 13-80-103 (Claim 10), Criminal Money Laundering under 18 U.S.C. 1956 (Claim 11), Criminal Harassment under CRS 18-9-111 (Claims 12 and 13), Criminal Abuse of Process under 18 U.S.C. 1589 (Claim 16), Criminal Extortion under 18 U.S.C. 1951 and 1952 (Claim 18). All the aforementioned criminal causes of action are only enforceable by the state in a criminal—not civil—proceeding.

Although Congress can by law create rights or obligations, it does not automatically follow that private parties can enforce those rights or obligations through the judicial process. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Whether a private party can bring suit to enforce a statute depends on if that statute—expressly or by implication—provides a private right of action. On this point congressional intent is determinative because "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Courts will dismiss criminal claims that are not private causes of action. *See Campbell v. M&T Bank*, Case No. 3:16-cv-118 (W.D. Pa. Mar. 22, 2017), dismissing a plethora of criminal claims with no private cause of action.[4] All the aforementioned claims are criminal and should be dismissed in their entirety because this Court lacks jurisdiction over these claims and Montalbano lacks standing.

## VI.   Collateral Estoppel and the Rooker-Feldman Doctrine Bar Most of Counterplaintiff's Counterclaims
### a.   Collateral Estoppel

Under Colorado law, the doctrine of collateral estoppel "bars relitigation of an issue if: (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." *Bebo Constr. Co. v. Mattox O'Brien, P.C.,* 990 P.2d 78, 84 - 85 (Colo. 1999). As explained above, Judge Flynn issued a final judgment on the claims of

---

[4] "The United States Code is the official compilation of codified federal law. As of March 2017, the U.S. Code contains 54 titles. Those 54 titles contain hundreds of chapters, and those hundreds of chapters contain thousands of laws. To a layperson, it may seem as though all those laws are bases upon which to sue. After all, if a law is broken, is it not up to the courts to declare it so? The simple answer is maybe. Our legal system has certain threshold requirements that must be met before a person can sue. These requirements include the existence of a private cause of action; just because a law was broken does not mean that Congress intended that law be judicially enforceable by a private litigant. This means that flipping through the U.S. Code in search of aptly named laws upon which to sue is a poor litigation strategy. Which brings us to this case." *Id.*

defamation and theft of "dream visions" (what she alleges are her trade secrets) and thus claims 7 and 10 are barred under collateral estoppel. *See* Exhibit A.

      **b.   The *Rooker-Feldman* Doctrine**

The *Rooker–Feldman* doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074–75 (10th Cir. 2004). [It] precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court. *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012). The doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Tenth Circuit has "concluded that 'the type of judicial action barred by *Rooker Feldman* [] consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010). The *Rooker-Feldman* doctrine establishes a jurisdictional bar that precludes a Court from exercising subject matter jurisdiction over a case (*see Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004)). Even if not raised by defendants, it is mandatory for this Court to raise the issue *sua sponte* as "subject matter jurisdiction is integral to [its] power to hear any case." *Id*.; see also F. R. Civ. P. 12(h)(3). Under the [] doctrine, a Court may not review claims that are inextricably intertwined with a state court judgment. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *see also Tatum v. Simpson*, 399 F. Supp. 2d 1159, 1161-62 (D. Colo. 2005).

Here, Montalbano seeks this Court's review of Judge Flynn's rulings in the Mesa Case. This case dragged on for almost two years and has been litigated in state and federal court. The claims she seeks to revisit should are barred and should be dismissed.

### VII. Montalbano Only Makes Conclusory Allegations of Harm, not Specific as Required by Many of Her Claims

Montalbano's only accusations, claims, and allegations of harm are fantastical, intangible and in no way concrete or believable, as explained above and laid out below.

Montalbano claims that she sent "approximately 400 emails at (sic) SphereBeingAlliance@gmail.com, with approximately 500 Dream Visions (Intellectual Property/dream journals) attached as JPGs in PDF files along with custom dream analyses, private information, and associated dream research comprising thousands of pages of documented records. . . due to Goode's extensive and non-stop dream visits." ACC at 63, 117-8. She claims she made monetary donations to Goode for various purposes. *Id*. at 64. She then alleges she lost "tens of thousands of dollars in investments", "thousands of pages of Intellectual Property" and "the goodwill of the public" due to "Goode['s] public frauds". *Id*. As explained above, such allegations are fanciful, fantastic, and delusional and should be dismissed. *See Denton*.

As another example, under Claim 6 (that must be dismissed as explained above) Montalbano alleges physical harm by remote neural stalking. *See, e.g.*, ACC at 85. As explained below, these claims are irrational and wholly incredible and—under *Denton*—may be disregarded as frivolous.

### a. Claim 1 (Civil RICO) Fails for Lack of Any of the Requisite Elements; Fails to Meet Heightened FRCP 9(b) Standard

"The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). The Supreme Court has added additional pleading requirements that a party must

satisfy to state a RICO claim. [A] party must demonstrate proximate cause; that is, that he or she was "injured in his [or her] business or property by reason of a violation of [18 U.S.C. § 1962[5]]." *Holmes v. Sec. Inv'rs Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (explaining *Holmes* as requiring more than "but for" causation; rather there must be some "direct relation between the injury asserted and the injurious conduct alleged"). Even if Montalbano had sufficiently pled injury—she did not—she did not plead proximate causation.

Although the allegations are difficult to follow, Counterplaintiff seems to allege that Plaintiffs engaged in illegal activity (undisclosed "Civil Rights Violations" and "remote neural harassing") during the pendency of the Mesa County Case which resulted in a dismissal of her case. ACC at 192, 618; 226, 733. This theory—that Counterplaintiff suffered injury because of fraud perpetrated on a third-party—has been discredited by the Supreme Court. *See Anza*, 547 U.S. at 457-58. Besides the absolute incredibility of Counterplaintiff's allegations, she has shown no causal connection between some incomprehensible, vague and unattenuated alleged actions by Plaintiffs and any possible harm she could have suffered. Indeed, because she has only recited the threadbare elements of the causes of action and it is difficult (if not impossible) to pinpoint what actions alleged throughout the hundreds of pages are at issue. Moreover, as explained above, she has not shown injury.

> **b. Claims 2 and 3: No Misrepresentation, No Reliance by Counterplaintiff and No Harm based on Reliance**

Montalbano's only alleged misrepresentations by either Plaintiff are that Mr. Goode—not GES—referred to her as a "stalker" and as part of the "Dark Alliance". *See, e.g.*, ACC at 72, 161;

---

[5] Counterplaintiff alleges Claim 1 under §1961. After undersigned counsel conferred with Counterplaintiff, understands she meant to allege under §1962.

81, 185; 103, 287. Mr. Goode filed two temporary restraining orders against Montalbano in Broomfield County Court (*see* Exhibits C and D). As shown in those verified affidavits and the supporting briefs, evidence and TRO order signed by the Court (Exhibit C at 1-3), Mr. Goode had ample support for his claims of stalking. After the second TRO was filed, Goode filed the instant action that included Montalbano as a defendant. This supplanted any need to pursue the second TRO. Goode never implicated Montalbano in any "Dark Alliance" references, but those references would not qualify as a "misrepresentation" anyway. Montalbano has not alleged any facts against GES to support Claims 2 and 3 and her allegations against Mr. Goode fail and should be dismissed.

### i.   Claim 2: No Fraudulent Misrepresentation

Based on the "facts" alleged in the ACC, there is no cognizable claim for fraudulent misrepresentation. The elements of fraudulent misrepresentation under Colorado law are: (1) a fraudulent misrepresentation of material fact; (2) the plaintiffs' reliance on the material representation; (3) the plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting in damages. *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994); *Nielson v. Scott*, 53 P.3d 777, 780 (Colo. App. 2002). When statements are so general or devoid of specific factual content that they are incapable of empirical verification they can't, as a matter of law, give rise to liability. *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 436 (Colo. App. 2006). This Court used this reasoning in *Renfro v. Champion Petfoods U.S., Inc.*, and granted a Motion to Dismiss the plaintiff's various claims premised on fraudulent misrepresentation. 475 F. Supp. 3d 1242, 1247 (D. Colo. 2020). Statements that someone is a "stalker" or part of a "Dark Alliance" do not contain any factual content—they are merely opinions and/or puffery. *See Shaw v. General Motors Corp.*, 727 P.2d 387 (Colo. App. 1986), *Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009) ("the term puffery is used to characterize those vague

generalities that no reasonable person would rely on as assertions of particular facts"). To say that Montalbano relied on a statement that she was a stalker or—if such statement existed—was part of a "Dark Alliance" would be nonsensical because she would know herself whether this is true. It follows that any reliance on these statements by Montalbano would be unjustified. As stated above, Montalbano does not state any reliance damages. All four elements are missing and Claim 2 fails.

### ii.   Claim 3: No Violation of the CCPA

The Colorado Consumer Protection Act ("CCPA") was enacted to regulate commercial activities and practices which, "because of their nature, may prove injurious, offensive, or dangerous to the public." *People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 112 (1972). The CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud. *Showpiece Homes, Corp. v. Assurance Co. of America*, 38 P.3d 47, 50-51 (Colo. 2001). To prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

Here, the only element that is even arguably present is element (2). However, even if the conduct of which Counterplaintiff complains took place "in the course of [Plaintiffs'] business, vocation or occupation", Montalbano's allegations do not describe an unfair or deceptive trade practice. The actions complained of include vague references to Plaintiffs disseminating "fake

news" (ACC at 89, 216; 102, 285; 103, 289; 116, 325; 120, 341 and 346; 122, 355; 123, 357; 124, 361) with wild allegations (including cult-like practices, ACC at 53, 53) that are wholly unsubstantiated. As explained above, her allegations that Plaintiffs' references to stalking and a "Dark Alliance" are not misrepresentations. This Court very recently found that passively posting online—even defamatory material—is not an unfair or deceptive trade practice. *See Examination Bd. of Prof'l Home Inspectors v. Int'l Ass'n of Certified Home Inspectors,* Civil Action No 18-cv-01559-RBJ (D. Colo. Feb. 10, 2021) (*citing Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1162 (D. Colo. 2016).

A fundamental element of a claim under the CCPA is that the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property. *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146 - 47 (Colo. 2003). The allegations in the Counterclaim describe an impact allegedly suffered by Montalbano, but nothing indicates or implies that Plaintiffs' practices had any significant impact on the public.

As explained above, Montalbano only makes conclusory references to damages without any specifics or factual support. So, the fourth and fifth elements are not met and Counterplaintiff's third claim fails.

### c.   Claim 9: Copyright Infringement is Inapplicable

Copyright is a form of legal protection for authors of "original works of authorship," including literary, dramatic, musical, artistic, and certain other intellectual works. U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq*. Copyright protects certain works such as literary, musical, dramatic pictorial, graphic, and sculptural works; motion pictures and other audiovisual works; sound recordings, etc. *See* 17 U.S.C. §102(a). Nowhere in Section 102 does the statute provide protection for "dream visions". Certain material is not protected: titles, names, short phrases and slogans;

familiar symbols or designs, mere variations of typographic ornamentation, lettering, mere listings of ingredients or contents; **ideas, procedures, methods, systems, processes, concepts, principles, discoveries**, or devices, as distinguished from a description, explanation, or illustration. *See* 17 U.S.C. §102(b)) (emphasis added). Montalbano's ideas encapsulated in her dream visions are not actual copyrighted works. *See* Exhibit A, Judge Flynn stating: "dream visions are neither tangible nor intangible property".

To assert a prima facie claim of copyright infringement, a party must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991). The Supreme Court has held that registration occurs and a copyright claimant may commence an infringement suit when the Copyright Office registers a copyright. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886-87 (2019). Montalbano does not have a copyright registration for her "dream visions" and—even *if* they were copyrightable subject matter—could not bring suit for infringement unless and until she received a registration for them.

Finally, the "fake news" of which Montalbano complains is not substantially similar to her dream visions to constitute copying. To determine substantial similarity, the Tenth Circuit has stated that the "ordinary observer" test is an appropriate method. *Country Kids `N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996). The court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated plaintiff's protectible expression by taking material of substance and value." *Id*. Stated otherwise, "[t]he essence of this test is whether the 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Id*. Although the issue of substantial similarity may be an issue

of fact for resolution by a jury, a court may determine non-infringement as a matter of law where (1) the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work or (2) no reasonable jury could find that the two works are substantially similar. *Fisher v. United Feature Syndicate*, Inc., 37 F. Supp. 2d 1213, 1224 (D. Colo. 1999).

Montalbano accuses Plaintiffs of infringing on two federal copyright registrations on books she authored by making social media posts. ACC at 154-163. The nature of the rights at issue and the allegedly infringing "works" (online posts versus books) are so inapposite that there cannot possibly be the requisite "substantial similarity" required for infringement. That is, no reasonable jury could find that the Montalbano's books and Plaintiffs' broadcasts are substantially similar. Because her dream visions are not copyrightable subject matter and because the matter she alleges is infringing by Plaintiffs is nowhere near the same as her copyrighted works, these claims also fail entirely and must be dismissed.[6]

### d. Claims 14 and 15: There are No Facts to Show Injury to Counterplaintiff's Constitutionally-Protected Interests

Montalbano's Claims 14 and 15 are for deprivation of civil rights and conspiracy to do so. Sections 1983 and 1985 claims share a common element: a plaintiff must show some deprivation of a federally protected right in order to be successful. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995); *Houston v. Reich*, 932 F.2d 883, 890 (10th Cir. 1991). Montalbano claims the deprivation in this case came through violations of a blunderbuss of references to the United States and Colorado Constitutions. ACC at 199-219. Those that Plaintiffs can filter from this list are: due process rights, free speech and right to privacy. Plaintiffs must make a massive

---

[6] Montalbano also alludes to a picture she "donated" and was "used" by an "associate" of Plaintiffs at a conference. Counterclaim at 99. Obviously there are issues here related to an actual or implied license of the work at issue, but most importantly she is accusing the "associate" of using her work without permission. This all is of no consequence, however, because Montalbano has not federally-registered the work.

mental leap to devise what possible Constitutional rights are allegedly at issue here or how they possibly could be harmed. Plaintiffs could not have possibly used any of the alleged "mind-control tactics" to hinder her due process rights, certainly did not stifle her speech (as shown throughout her voluminous pleadings and social media posts) and did not invade her privacy through disseminating any alleged dream visions. "The Court has no obligation to scour the record in search of evidence to support Plaintiff's claims." *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir.2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her].") *McGowan v. Bd. of Trs. for Metro. State Univ. of Denver*, 114 F. Supp. 3d 1129, 1142 (D. Colo. 2015). Here, even searching through the almost five hundred pages of filed documents would not expose any facts to support Claims 14 and 15.

### e.   Claim 17: No Abuse of Process Because No Baseless Cause of Action

In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages. *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007). "An improper use of the legal process occurs when a particular procedural tool is used in an attempt to accomplish a result which that tool, when properly used, could not provide." *Gustafson v. Am. Family Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1305 (D. Colo. 2012).

As this Court has stated *in OmniMax Int'l, Inc. v. Anlin Indus., Inc.*, an ulterior motive does not implicate an abuse of process claim: "[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." No. 18-cv-01830-DDD-MEH, at *13-15 (D. Colo. June 17, 2019); *see also James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App.

1994). And "while the ulterior motive may be inferred from the wrongful use of the process, the wrongful use may not be inferred from the motive." *Id*.[7] Counterclaimant has failed to plausibly allege any legal impropriety, and an "ulterior or even nefarious motive, alone, isn't enough to constitute an abuse of process." *Parks v. Edward Dale Parrish LLC*, No. 17CA1257, 2019 WL 470515, at *3 (Colo. App. 2019). As Judge Jackson in this District has held, "filing a complaint not justified in fact or law alone is not enough to amount to an abuse of process." *GN Netsome*, *Inc*. *v*. *Callpod*, *Inc*., No. 11-CV-03271-RBJ, 2012 WL 4086530, at *2 (D. Colo. Sept. 17, 2012) (reviewing Colorado authority).

As stated above, Plaintiffs had ample support to bring the claims in the instant suit and the previous stalking TROs. Montalbano's Mesa County Case was removed to federal court properly based on her pleading of copyright infringement. Only after Montalbano revised her complaint to drop the copyright claims was the Mesa County Case remanded. Even if there is an alleged "ulterior motive," (there is not) there are no allegations showing this action and its procedural tools have been used for anything other than their regular, legitimate judicial functions.

### f. Claim 19: No Cognizable Theory; but if claiming Invasion of Privacy, No Reasonable Expectation of Privacy

Claim 19 does not state a cognizable theory. To the extent that it is meant to implicate invasion of privacy, it fails. The Second Restatement of Torts § 652(c) articulates the tort of appropriation of another's name or likeness, stating: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." The Colorado Civil Jury Instructions divide the tort into five distinct elements: (1) the defendant used the plaintiff's name or likeness; (2) the defendant sought to take advantage of the

---

[7] *See also* Restatement (Second) of Torts § 682 comment (b) (1977) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, [although] there is an incidental motive of spite or an ulterior purpose.")

plaintiff's reputation, prestige, social or commercial standing, or any other value attached to the plaintiff's name, likeness, or identity; (3) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (4) damages; and (5) causation. CJI-Civ.4th 28:4 (2000); *see Dickerson v. Dittmar*, 34 P.3d 995, 1001 (Colo. 2001). "A plaintiff's claim of invasion of privacy by appropriation of her name and likeness will not succeed, however, if the defendant's use of the plaintiff's name and likeness is privileged under the First Amendment." *Id*. at 997. Whether the First Amendment privilege applies is a question of law. *See id*. at 1003. The First Amendment "permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Id*.

The only element that could possibly be met here is the first, but as explained above Montalbano does not describe any particular damages and it is Montalbano who is attempting to profit off of Goode's notoriety—not the other way around. Even if she could show damages from the alleged conduct of posting "fake news", the requisite causation is lacking. If, for example, Montalbano alleges that her business has failed because she was engaged in these lawsuits and could not work (*see* ACC at 217, 691) it was Montalbano who plagued this Court, Plaintiffs and the dockets with voluminous, needless, and baseless filings—it was not because of any "fake news" postings.

    **g. Claims 20 and 21: No Outrageous Conduct, Certainly None that Threatened Bodily Harm**
        **i. There is no claim for IIED**

To prevail on a claim for intentional infliction of emotional distress, plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer

severe emotional distress." *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009). Plaintiff clearly fails to allege even the first element.

"'Outrageous conduct' is defined as conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). A defendant is not liable for mere insults, indignities, or annoyances that are not extreme or outrageous. *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 990-91 (Colo. App. 2011). A Court in this District has held that not even subjecting an elderly women in a nursing home to Scientology practices is outrageous conduct. *Mott v. Narconon Fresh Start*, Civil Action No. 14-cv-01293-PAB-KMT, at *8-9 (D. Colo. Mar. 17, 2015). Montalbano alleges, as outlined above, that Goode has engaged in posting "fake news" on his social media and engaging in cult-like practices, neither of which are substantiated nor would be considered outrageous conduct and thus claim 20 fails.

### ii. No plausible fear of bodily harm

To prevail on a claim for negligent infliction of emotional distress, plaintiff must show that "defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011).

Montalbano has not alleged any plausible facts to support an "unreasonable risk of physical harm". Neural stalking does not exist and Goode is not visiting her in her dreams for any reason, and would not even if he could. Claim 21 fails as well.

### h.   Claim 22: No Alleged Benefit to Plaintiffs or Expense to Counterplaintiff

An unjust enrichment claim accrues "when a person discovers, or through the exercise of reasonable diligence should discover, that all elements of the claim are present." *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP* , 293 P.3d 55, 58 (Colo. App. 2011). Under Colorado law, an unjust enrichment claim requires a showing of three elements: (1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000).

Montalbano makes conclusory references of benefits ("Montalbano's Trade Secret materials, Intellectual Property, and private information" ACC at 230, 754) to Plaintiffs but does not provide any factual support. To the extent she believes that her donations—or gifts of monetary nature—unjustly enriched Goode, she does not state why she should be able to take those donations back. She does not actually show evidence of these donations. This final claim fails as well as the other twenty-one.

## VIII.   Conclusion

Montalbano has burdened this court with a multitude of completely baseless claims and alleged "facts" and "evidence" that have no basis in reality. *See Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1007 (5th Cir. 2019) ("We will not try to decipher what any of this means. "[T]o do so might suggest that these arguments have some colorable merit." *Crain v. Comm'r* , 737 F.2d 1417, 1417 (5th Cir. 1984) (per curiam).") The Court should grant Plaintiff's Motion and grant Plaintiffs attorney's fees incurred in connection with addressing Counterplaintiff's Counterclaims.

Finally, this Court may enjoin Montalbano from filing similar pleadings that consume substantial time and resources. (*See Ketchum* at 916, upholding district court's order restricting plaintiff's *pro se* access to the district court and requiring litigant to obtain leave of court to file actions *pro se*). In doing so this Court will streamline the process of the current litigation and relieve all parties from having to wade through the morass of allegations put forth by Montalbano in her ACC. Goode respectfully requests this Court enjoin Montalbano from further filings and orders costs and fees to be paid to Goode for the time spent responding to Defendant's pleading.

Respectfully submitted this 2nd day of July, 2021.

*s/ Valerie A. Yanaros*
Valerie Yanaros, Esq.
State Bar No. 24075628
Yanaros Law, P.C.
8300 Douglas Avenue Suite 800
Dallas, Texas 75225
Tel.: (512) 826-7553

**ATTORNEY FOR PLAINTIFF**

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2ⁿᵈ, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.

By:     s/ Valerie Yanaros
        Valerie Yanaros

**CERTIFICATE OF CONFERRAL**

Pursuant to Judge Domenico's Practice Standard III(D)(1), in the case of parties proceeding pro se, parties are not required to confer. However, out of an abundance of caution, on January 12, 2021, I conferred via email with Ms. Montalbano her counterclaims, including discussion of the arguments anticipated to be included in this motion to dismiss. Ms. Montalbano provided clarification on some of her counterclaims, and I have included those clarifications as I understand them in this Motion.