2018 WL 10563049
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Drew MILLER, Plaintiff,
v.
INSTITUTE FOR DEFENSE ANALYSES, a Delaware Non-Profit Corporation, Defendant.

Civil Action No. 17-cv-02411-NYW
|
Signed 05/29/2018

**Attorneys and Law Firms**

Drew Miller, Colorado Springs, CO, pro se.

Jonathan Helmsley Geneus, Melisa Hallie Panagakos, Timothy Michael Kratz, Jackson Lewis, P.C., Denver, CO, for Defendant.

**ORDER ON PARTIAL MOTION TO DISMISS AND MOTION TO AMEND**

Magistrate Judge, Nina Y. Wang

**\*1** This matter comes before the court on Defendant Institute for Defense Analyses' ("Defendant" or "IDA") Partial Motion to Dismiss (or "Motion") [#16, filed January 30, 2018] and *pro se*[1] Plaintiff Drew Miller's ("Plaintiff" or "Dr. Miller") Motion to Add Seventh Cause of Action and Claim for Relief: Defamation ("Motion to Amend") [#23, filed March 12, 2018], which are before the undersigned pursuant to 28 U.S.C. § 636(c); D.C.COLO.LCivR 72.2; Fed. R. Civ. P. 73; and the Order of Reference for all purposes [#14]. The court concludes that oral argument will not materially assist in the resolution of these matters. Having carefully reviewed the pending Motions and related briefing, the applicable case law, and the entire docket, the court **GRANTS** the Partial Motion to Dismiss and **DENIES** the Motion to Amend for the reasons stated herein.

**BACKGROUND**

The following facts, pertinent to the Partial Motion to Dismiss and Motion to Amend, are drawn from the Complaint and taken as true for purposes of the instant Motion. Dr. Miller, a retired Colonel of the United States Air Force Reserve, began working for IDA in or about 2002; he worked in various locations for IDA, including its Virginia office as well as overseas in Iraq. *See* [#1 at ¶¶ 14, 20–21]. Defendant, a Delaware corporation, "is a Federally Funded Research and Development Center ... that conducts research for the U.S. government" pursuant to contracts with the United States Department of Defense (the "DoD"). *See* [*id.* at ¶¶ 13, 24]. IDA originally hired Plaintiff as a consultant before he became an Adjunct Research Staff to reflect his increase in hours worked. *See* [*id.* at ¶ 25]. Dr. Miller's work as an Adjunct Research Staff member allowed him to work on various projects, including for the Strategy, Forces, and Resources Division of IDA, and his research was even cited by the National Commission on the Structure of the Air Force. *See* [*id.* at ¶¶ 26–27].

Between 2008 and 2010, Dr. Miller traveled to Iraq on four separate deployments—for a combined total of thirteen (13) months—where he "received high praise" for his research, reports, and recommendations. *See* [*id.* at ¶¶ 29–30]. While deployed, Dr. Miller "worked full-time for IDA in the status of a Research Staff Member," working "an average of 70 hours per week," like "most other IDA employees." *See* [*id.* at ¶¶ 29, 31]. But Dr. Miller alleges that he received compensation for only 40 hours worked each week, while other employees received compensation for all hours worked. [*Id.* at ¶ 32].

Based on these events, and those associated with a campaign of alleged retaliation against Dr. Miller by IDA that led to his termination, *see, e.g.*, [*id.* at ¶¶ 33–74], Plaintiff initiated this action on October 6, 2017. [#1]. He asserts federal claims against IDA for: retaliation under the False Claims Act, 31 U.S.C. § 3730(h)(1) ("Claim I"), "Defense Contractor Whistleblower Retaliation" under 10 U.S.C. § 2409 ("Claim II"), and non-payment of earned wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207 ("Claim III"); he also asserts state law claims for: wrongful discharge in violation of public policy ("Claim IV"), termination for lawful off-duty activity under Colo. Rev. Stat. § 24-34-402.5 ("Claim V"), and unlawful prevention of an employee's political participation under Colo. Rev. Stat. § 8-2-108 ("Claim VI"). *See* [*id.*]. On January 30, 2018, Defendant filed its Answer to Claims I, II, IV–VI and the instant Partial Motion to Dismiss Claim III as untimely. *See*

[#15; #16]. Plaintiff has since filed his Response to the Motion to Dismiss [#21], IDA has filed its Reply [#22], and Plaintiff has filed a Sur-Reply[2] [#24].

**\*2** Then, on March 12, 2018, Dr. Miller filed his Motion to Amend wherein he seeks to assert a seventh claim for relief for defamation based on a recently obtained IDA memorandum submitted to the DoD Inspector General Deputy Director that allegedly defames Dr. Miller. *See* [#23]. IDA opposes the Motion to Amend on futility grounds, arguing the statements contained in the memorandum are shielded by the litigation privilege. *See* [#29]. Plaintiff did not file a Reply. Because the Motions are ripe for disposition, I consider each in turn.

## LEGAL STANDARDS

### I. Rule 12(b)(6)
Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). But a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### II. Rule 15(a)
Rule 15(a) governs motions to amend when the moving party seeks leave to amend its pleadings on or before the deadline for joinder of parties and amendment of pleadings set by the Scheduling Order. *see Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (explaining that the movant need not demonstrate good cause under Rule 16(b) under such circumstances). Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *see Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *accord Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (observing that a court may dismiss a motion to amend if amendment is futile, *i.e.*, the amended complaint would be subject to dismissal for any reason). Whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996).

## ANALYSIS

### I. The Partial Motion to Dismiss
Defendant moves to dismiss Plaintiff's FLSA claim as barred by the statute of limitations. [#16]. IDA argues that, assuming the two or three-year statute of limitations applies to Dr. Miller's FLSA claim, the Complaint reveals that any such claim accrued by the end of 2010 at the latest. *See* [*id.* at 2; #22 at 2]. Further, IDA avers that the Complaint alleges no possible basis for tolling the applicable statute of limitations, nor does any exist under the circumstances; thus, Claim III is untimely. *See* [#16 at 2–3; #22 at 3–5].

**\*3** Although the statute of limitations is an affirmative defense, the court may dismiss a complaint under Rule 12(b)(6) when "the dates given in the complaint make clear that the right sued upon has been extinguished." *Colby v. Herrick*, 849 F.3d 1273, 1279 (10th Cir. 2017) (citation and internal quotation marks omitted); *but cf. Ghailani v. Sessions*, 859 F.3d 1295, 1306 (10th Cir. 2017) (stating the complaint need not anticipate affirmative defenses). For purposes of Dr. Miller's FLSA claim the applicable statute of limitations is generally two-years "unless the defendant's violations are shown to be willful, in which case a three-year period applies." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (citing 29 U.S.C. § 255(a)). A plaintiff's allegations of willfulness may be sufficient for purposes of applying the three-year statute of limitations when considering a motion to dismiss on statute of limitations grounds. *see Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

Dr. Miller argues against dismissal because he only learned of IDA's FLSA violations in 2016. *See* [#21 at 3; #24 at 1]. He contends that, despite working in excess of 70 hours, IDA informed him that it could not legally pay him for hours worked in excess of 40. *See* [#21 at 3, 4, 5–6, 7, 8; #24 at 1, 2, 4, 6]. In his Sur-Reply Dr. Miller asserts that he relied on IDA's misrepresentations given IDA's special governmental classification, and avers that this special classification allowed IDA to deceive him about his rights to just compensation. [#24 at 2]. Dr. Miller further contends that IDA perpetuated this deception deliberately, and he identifies the IDA official that made the alleged misrepresentations. *See* [*id.* at 2–4]. Dr. Miller thus argues that the statute of limitations should not bar Claim III. *See generally* [#24].

Construing Dr. Miller's papers liberally, it appears that he intends to argue for the tolling of the statute of limitations on his FLSA claim based on Defendant's misrepresentations as to his entitlement to compensation for hours worked in excess of 40. While acknowledging that the incidents complained of occurred around 2008 and 2010, Plaintiff nonetheless asserts that it was not until 2016 that he learned IDA had "lied" to him about why he could not receive compensation for hours worked in excess of 40. *See, e.g.*, [#24 at 6]. It was only then, in 2016, that he discovered the viability of his FLSA claim.

In extraordinary circumstances courts may equitably toll the applicable statute of limitations to a plaintiff's FLSA claim. *see Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012) ("Equitable tolling, however, should be invoked sparingly."). Equitable estoppel is one such doctrine that may permit tolling under appropriate circumstances. *See, e.g., Tarco, Inc. v. Conifer Metro. Dist.*, 316 P.3d 82, 88–89 (Colo. App. 2013) (explaining that equitable estoppel may be raised in response to a statute of limitations defense). The doctrine applies in situations where "a claimant was induced to action or forbearance of a material character, and in reasonable reliance on the inducement, the claimant failed to bring suit within the applicable time period." *Price v. Pub. Serv. Co. of Colo.*, 1 F. Supp. 2d 1216, 1234 (D. Colo. 1998) (citations omitted). Relevant here, courts appear split as to whether, in response to an employee's complaints, an employer's representations that its compensation policies are lawful or that the employee is not entitled to the FLSA's protections are sufficient for the application of equitable estoppel to toll a plaintiff's FLSA claim(s). *Compare Jones v. Changsila*, 271 F. Supp. 3d 9, 24 (D.D.C. 2017) (rejecting as premature the defendants' statute of limitations arguments because, although the applicable statute of limitations might have well run, the plaintiff alleged the defendants' continually represented that he was not entitled to overtime as a manager despite the plaintiff completing several non-managerial tasks); *Rumpz v. Am. Drilling & Testing, Inc.*, No. 09-10971, 2010 WL 1416990, at *3–5 (E.D. Mich. Apr. 8, 2010) (holding equitable estoppel tolled the statute of limitations on the plaintiff's FLSA claim where the plaintiff relied on the defendant's representations that its compensation policy adhered to federal law); *Randle v. City of New Albany, Mississippi*, No. 3:05CV74, 2006 WL 2085387, at *3 (N.D. Miss. July 25, 2006) (holding that genuine issues of material fact existed as to the plaintiffs' equitable estoppel arguments based on the city-defendant's representations that the plaintiffs were not entitled to overtime compensation under the law) *with Escamilla v. Nuyen*, 227 F. Supp. 3d 37, 56 (D.D.C. 2017) (holding, "although Mr. Nuyen provided Plaintiff with inaccurate information regarding Plaintiff's right to overtime compensation," this was insufficient to toll the statute of limitations on the plaintiff's FLSA claims); *Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 896–97 (S.D. Ohio 2004) (holding the defendants' misrepresentations that the plaintiff was not entitled to overtime compensation were insufficient to toll the statute of limitations on equitable estoppel grounds); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 904 (S.D. Ohio 2003) (same).

**\*4** Dr. Miller alleges that the four deployments to Iraq, where he worked in excess of 70 hours a week but was only compensated for 40 hours, occurred between 2008 and 2010. *See* [#1 at ¶¶ 29, 31–32]; *cf. Philips v. Carpet Direct Corp.*, No. 16-cv-02438-MEH, 2017 WL 121630, at *7 (D. Colo. Jan. 10, 2017) (concluding that an FLSA claim based on denial of compensation accrues when compensation was denied); *accord Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 277 (E.D.N.Y. 2015) ("A cause of action under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated."). But the Complaint also alleges that Plaintiff did not learn of any FLSA violation until "[o]nly several years ago." [*Id.* at ¶ 32]. Defendant is correct that these allegations do not provide a basis for tolling the statute of limitations applicable to Plaintiff's FLSA claim; and it is also true that a plaintiff may not amend his complaint through allegations contained in a response to a motion to dismiss. *see In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiff[ ] may not effectively amend his Complaint by alleging new facts in his

response to a motion to dismiss."). But, as explained, Dr. Miller's Response and Sur-Reply assert that his FLSA claim is timely because Defendant's misrepresentations—that it could not legally pay Plaintiff for hours worked in excess of 40—were the reason for his delay in filing suit. *See generally* [#21; #24].

Based on the foregoing, and given the apparent split in persuasive authority on the issue and Dr. Miller's *pro se* status, the court concludes that the most efficient outcome is to dismiss Claim III without prejudice and to provide Plaintiff the opportunity to amend his Complaint to insert allegations justifying the application of equitable estoppel to toll the applicable statute of limitations. *see Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-0644 W (KSC), 2013 WL 12076473, at *3 (S.D. Cal. Sept. 13, 2013) (granting the plaintiff leave to amend to allege facts establishing the applicability of the doctrine of equitable estoppel to his FLSA claims). In doing so, Plaintiff shall limit such allegations to those concerning only Defendant's alleged misrepresentations as to their ability to pay employees for hours worked in excess of 40—***Plaintiff is not permitted leave to amend for any other purpose***. Defendant will then have the opportunity to properly assert any arguments in opposition to amendment. But in this regard, I note that any such amendments are not futile merely because Dr. Miller may have known the facts necessary to maintain a FLSA claim as early as 2008 or 2010. *See* [#22 at 3–5]. Indeed, the doctrine of equitable estoppel presumes that the plaintiff may have known the facts giving rise to a cause of action, but that *defendant's* actions "dissuaded the plaintiff from filing the claim at issue within the limitations period." *Gessele v. Jack in the Box, Inc.*, 6 F. Supp. 3d 1141, 1165 (D. Or. 2014) (citation and internal quotation marks omitted). Accordingly, the Partial Motion to Dismiss is **GRANTED**, and Claim III is **DISMISSED without prejudice**.

### II. The Motion to Amend

Plaintiff seeks leave to add a claim for defamation under Colorado law as his seventh claim for relief. [#23]. "Defamation is a communication holding an individual up to contempt or ridicule that causes the individual to incur injury or damage." *Ramsey v. Fox News Network, L.L.C.*, 351 F. Supp. 2d 1145, 1150 (D. Colo. 2005) (citing Colorado law). " 'A statement may be defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1125 (D. Colo. 2016) (quoting *Burns v. McGraw–Hill Broadcasting Co., Inc.*, 659 P.2d 1351, 1357 (Colo. 1983)). Written defamatory communications are libel, and words may be libelous per se if they are deplorable, derogatory, or disgraceful on their face. *see Brammer-Hoelter v. Twin Peaks Charter Academy*, 81 F. Supp. 2d 1090, 1099 (D. Colo. 2000) (citing Colorado law). "Whether a statement is defamatory is a question of law." *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013).

**\*5** The basis for Plaintiff's proposed defamation claim is a February 24, 2017 memorandum (the "Memo") written by IDA's general counsel, Benjamin Lindorf, and submitted to the DoD Inspector General Deputy Director. [#23 at 1; #23-1]. Dr. Miller asserts the Memo "charged [him] with extortion for reporting misconduct to IDA and offering to settle with IDA rather than file a lawsuit, and included false, derogatory, insulting information designed to defame Dr. Miller[.]" [#23 at 2]. Further, the Memo falsely accused him of using IDA work-product for his personal business interests. [*Id.* at 2–3]. Dr. Miller states he only recently became aware of the Memo. [*Id.* at 2].

IDA opposes the Motion to Amend, arguing that amendment is futile. [#29 at 3]. This is because, regardless of whether the Memo contains defamatory statements, the litigation privilege shields the communication from forming the basis of a defamation claim. [*Id.*]. Specifically, the communication at issue was that of an attorney concerning or relating to proposed judicial proceedings, *i.e.*, Dr. Miller's offer to settle the instant dispute rather than file a lawsuit. [*Id.* at 3–5]. Defendant further avers that the Memo is shielded from defamation liability because it contains an attorney's statements made in the course of quasi-judicial proceedings, *i.e.*, the DoD's investigation into Dr. Miller's retaliation and whistleblower complaint filed against IDA. [*Id.* at 5–6].

With no decision from the Colorado Supreme Court directly on point this court is guided by the decisions rendered by lower courts in Colorado, "endeavoring to predict" how the Colorado Supreme Court would rule on this question. *Abercrombie v. Aetna Health, Inc.*, 176 F. Supp. 3d 1202, 1206 (D. Colo. 2016). In certain instances, Colorado law shields an attorney's communications from liability for defamation, even if the statements are in fact defamatory. Derived from the Restatement (Second) of Torts § 586, an attorney is "absolutely privileged to publish defamatory matter concerning another in communications *preliminary* to a proposed judicial proceeding, or in the *institution* of, or *during* the course" of judicial proceedings in which the

**attorney** participates as counsel, "*if it has some relation to the proceeding*." *Club Valencia Homeowners Ass'n, Inc. v. Valencia Assocs.*, 712 P.2d 1024, 1027 (**Colo**. App. 1985) (emphasis added) ("[T]he alleged defamatory matter must have been made in reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it."); *Buckhannon v. U.S. West Commc'ns, Inc.*, 928 P.2d 1331, 1335 (**Colo**. App. 1996) (extending this privilege to "bar[ ] other non-defamation claims that stem from the same conduct."). *see also Partminer Worldwide Inc. v. Siliconexpert Techs. Inc.*, No. 09-cv-00586-MSK-MJW, 2010 WL 502718, at *5 (D. **Colo**. Feb. 10, 2010) (dismissing defamation claim, because the **litigation privilege** shielded communications from the plaintiff's general counsel that Mr. Williams was the "leak" of proprietary information alleged in a state court case and noting communications were an **attorney's** concerning a judicial proceeding). A division of the **Colorado** Court of Appeals has since qualified that defamatory communications made preliminary to actual litigation must not only relate to the proposed litigation but that the proposed litigation must be contemplated in good faith. *see Begley v. Ireson*, 399 P.3d 777, 781 (**Colo**. App. 2017). Several **Colorado** courts have also inquired as to whom the communication was disclosed, as the "maker of the statement and the recipient must be involved in and closely connected with the proceeding." *Club Valencia Homeowners Ass'n, Inc.*, 712 P.2d at 1027 (holding the privilege applied to an **attorney's** letter apprising individual homeowners of a lawsuit initiated by the homeowner's association); *see also Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1315 (D. **Colo**. 1998) (holding the privilege did not apply to an **attorney's** statements about a pending lawsuit made to the press or posted on the internet); *Cache la Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 438 F. Supp. 2d 1288, 1294–95 (D. **Colo**. 2006) (holding the privilege did not apply to **attorney** statements made in a press release and brochures distributed to the public despite being published in the course of a judicial proceeding).

**\*6** The privilege also encompasses communications in quasi-judicial proceedings. *see Williams v. Boyle*, 72 P.3d 392, 400 (**Colo**. App. 2003); *Dep't of Admin. v. State Pers. Bd. of State*, 703 P.2d 595, 597–98 (**Colo**. App. 1985). Although no **Colorado** cases squarely address this issue, after reviewing the jurisprudence of the **Colorado** courts, I conclude that the **Colorado** Supreme Court would likely extend the **litigation privilege** to statements made in anticipation of quasi-judicial proceedings, so long as the statements were related to the potential quasi-judicial proceeding; made to an individual closely involved in the quasi-judicial proceeding; and such proceeding was brought in good faith. This extension is consistent with the underlying purpose of the **litigation privilege**, *i.e.*, to afford litigants the utmost freedom of access to the courts without fear of being subsequently harassed by derivative tort actions. The **litigation privilege** promotes the effectiveness of judicial proceedings by encouraging **attorneys** to zealously protect their clients' interests. **Litigation privilege**, 1A American Law of Torts § 5:17.10. Indeed, at least one state Supreme Court has applied this privilege to statements made preliminary to proposed quasi-judicial proceedings. *see Kirschstein v. Haynes*, 788 P.2d 941, 945 (Okla. 1990).

Here, the Memo at issue was written by IDA's general counsel concerning a January 22, 2017 letter Dr. Miller sent to IDA's president Dr. David Chu. *See* [#29-3; #29-2]. The articulated purpose of the Memo was to apprise the DoD Deputy Inspector General that Dr. Miller had "threated that unless IDA pays him $350,000 to settle his various claims against the Company, he will file an IG complaint for fraud, waste, and abuse and for reprisal for whistleblowing." [#29-3 at 1]. A review of his January 22 letter confirms that Dr. Miller requested $350,000 "as compensation for illegal mistreatment, irreparable career damage and termination, and unpaid work hours," and in exchange for such payment, Dr. Miller would, *inter alia*, forebear from filing a complaint with the DoD Office of the Inspector General ("OIG") over alleged misuse of task funds. *See* [#29-2 at 5]. An OIG investigation falls squarely into the definition of a quasi-judicial proceeding. *See* Litigation privilege, 1A American Law of Torts § 5:17.10 ("Judicial or quasi-judicial proceedings protected by the litigation privilege are defined broadly to include all kinds of truth-seeking proceedings, including administrative, legislative, and other official proceedings"). Mr. Lindorf made the statements at issue during the course of zealously advocating against the initiation of an OIG investigation of IDA that he believed would be forthcoming from Dr. Miller. The statements were made to the OIG Deputy Director for Policy and Oversight, who would likely be involved with any ensuing investigation. And though it is not entirely clear that the good faith requirement would apply here—in a case where the proponent of the statement is not the one threatening to initiate an investigation—there is no indication in the record other than IDA's accusations against Dr. Miller that he lacked good faith when he sought to initiate a DoD complaint. Thus, this court concludes that the litigation privilege applies to the Memo,

rendering Dr. Miller's proposed amendment to add a claim for defamation futile.

**CONCLUSION**

Therefore, **IT IS ORDERED** that:

(1) IDA's Partial Motion to Dismiss [#16] is **GRANTED**;

  a. Plaintiff's FLSA claim (Claim III) is **DISMISSED without prejudice**;

  b. On or before **June 12, 2018**, Plaintiff shall file a Motion to Amend his Complaint directed only at Claim III; specifically, Plaintiff shall provide facts establishing the applicability of equitable estoppel to the tolling of the statute of limitations as to his FLSA claim. The Motion to Amend shall fully comply with the requirements of Rule 15(a) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 15.1(b);

(2) Plaintiff's Motion to Amend [#23] is **DENIED**; and

(3) A copy of this Order shall be sent to the following:

Drew Miller
1855 Smoke Ridge Drive
Colorado Springs, CO 80919

**All Citations**

Slip Copy, 2018 WL 10563049

Footnotes

1   Because Plaintiff proceeds *pro se*, this court liberally construes his pleadings, but does not act as his advocate, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). And the court applies the same procedural rules and substantive law to Plaintiff as to a represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

2   The Federal Rules of Civil Procedure and this District's Local Rules of Civil Practice do not contemplate a sur-reply and Dr. Miller has not sought or acquired leave of court to file one. However, due to his *pro se* status, this court will consider the arguments reflected in his Sur-Reply in which he rebuts IDA's statute of limitations arguments. Any future sur-reply filed without leave of the court will be stricken without substantive consideration.

**End of Document**                                               © 2021 Thomson Reuters. No claim to original U.S. Government Works.