IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

    Plaintiffs,

v.

GAIA, INC.,
JAY WEIDNER,
CLIFF HIGH,
BENJAMIN ZAVODNICK,
ALYSSA MONTALBANO,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Cliff High's ("High") **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)** [#114][1] (the "Motion"). Plaintiffs filed a Response [#123] in opposition to the Motion [#114], and Defendant High, who proceeds as a pro se litigant,[2] filed a Reply [#125]. Pursuant to 28 U.S.C. § 636(b)

---

[1] "[#114]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro

-1-

and D.C.COLO.LCivR 72.1(c), the Motion [#114] has been referred to the undersigned for a recommendation regarding disposition. *Order Referring Motion* [#116]. The Court has reviewed the Motion [#114], the Response [#123], the Reply [#125], the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#114] be **GRANTED**.

## I. Background

Plaintiffs commenced this action on March 17, 2020. *See Compl.* [#1]. On December 8, 2020, the Court granted Plaintiffs leave to file their Second Amended Complaint ("SAC") [#111], which is now the operative complaint. *Order* [#110]. According to the SAC, Plaintiff James Corey Goode ("Goode"), through his business Plaintiff Goode Enterprise Solutions, Inc., (the "Enterprise") is "an educational and motivational speaker, influencer, author and media figure and is well-known and respected in the Conscious Community." *Second Am. Compl.* [#111] ¶ 2 (footnote omitted). Plaintiffs assert the following claims against Defendant High: civil RICO conspiracy, federal trademark infringement, false designation of origin and federal unfair competition, Colorado common law trademark and trade name infringement, Colorado common law unfair competition, violation of the Colorado consumer protection act, slander per se, libel per se, and tortious interference with a business expectancy. *Id.* at 31-40.

According to the SAC [#111], Defendant High resides in the state of Washington and "has targeted much of his YouTube postings . . . towards harming [Plaintiff] Goode in Colorado." *Id.* ¶ 9. Plaintiffs also assert that Defendant High and others involved in the alleged attacks on Plaintiffs "consistently tag Mr. Goode and use the Goode Marks in their

---

se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[s]ocial [m]edia posts" to "ride off of the notoriety and reach of [Plaintiff] Goode's followers," resulting in further harm to "[Plaintiff] Goode by spreading untruths and baseless statements." *Id.* ¶ 58. In addition, Plaintiffs assert that Defendant High has contributed to Plaintiff Goode being blacklisted from three "ufology events". *Id.* ¶¶ 89-99. Plaintiffs also assert that Defendant High has hosted or participated in various YouTube videos in which he has accused Plaintiff Goode of criminal acts, and that Defendant High threatened Plaintiff Goode with bodily harm when he authored a social media message that stated "David Wilcock & Corey Goode STOLE the results of decades of my work! . . . My offer to fight both of these 'fellows' still stands open." *Id.* ¶¶ 101, 103.

Finally, Plaintiffs assert that Defendant High belongs to an "association" for the purposes of asserting a claim for civil RICO conspiracy pursuant to 18 U.S.C. § 1962(d). *See Id.* ¶¶ 141-43. They state that the "association" has been "evidenced through social media" and was built with the purpose of "accus[ing] Plaintiff Goode of criminal activities through social media outlets and other wirings and to use extortion (specifically, through an email sent by [Defendant Jay] Weidner), harassment and any other manipulative tactic to deprive him of his livelihood." *Id.* ¶ 106-7.

In the present Motion [#114], Defendant High moves to have all of Plaintiffs' claims against him dismissed based on lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Motion* [#114] at 5. Defendant High asserts that he is not a resident of the State of Colorado and argues that he has "no personal contact, systematic or otherwise, with Colorado" and is essentially not "at home" in Colorado. *Id.* Moreover, Defendant High maintains that his YouTube videos and appearances on other YouTube channels were undertaken "without

consideration as to where they would be consumed." *Id.* at 6-7.  Thus, Defendant High argues that the Second Amended Complaint [#111] has not alleged facts "to support personal jurisdiction" over him.  *Id.* at 5.  In addition, Defendant High argues that he has not consented to jurisdiction in the State of Colorado.  *Id.* at 6.

In their response to the Motion [#114], Plaintiffs argue that "personal jurisdiction over [Defendant] is appropriately exercised by this Court based on his intentional actions and behavior specifically aiming his tortious actions at [Plaintiff] (and others) in Colorado." *Response* [#123] at 2.  Plaintiffs assert that Defendant High "has published and continues to publish offensive social media posts either alone or as a guest of another Defendant's 'show' for the purpose of bashing [Plaintiffs] and depriving [Plaintiffs] of pecuniary gain." *Id.* at 4-5.  Plaintiffs further argue that these attacks are "directly targeted at [Plaintiffs] and thus, [Defendant High] has availed himself of jurisdiction" in Colorado.  *Id.* at 6. Additionally, Plaintiffs state that in "recent communication from [Defendant High] he has consented to jurisdiction in Colorado."  *Id.* at 2.  The communication is a "September email," in which Plaintiffs aver that Defendant High stated that he intends to "engage in the fight in Colorado," which they construe to mean that he "has consented to jurisdiction in Colorado."  *Id.* at 6.  Lastly, Plaintiffs claim state that Defendant High is involved in an "association," giving rise to jurisdiction under the civil RICO statute.  *Id.*

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties.  Plaintiffs bear the burden of establishing personal jurisdiction over all of Defendants.  *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).  If the presence or absence of personal

jurisdiction can be established by reference to the complaint, the Court need not look further, and the Court accepts the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the complaint as true to determine whether Plaintiffs have made a prima facie showing that personal jurisdiction exists.  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court may also consider affidavits and other written materials submitted by the parties.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Allegations in the complaint need not be taken as true if controverted by a defendant's affidavit, but conflicting facts supported by affidavits from both sides must be resolved in the plaintiff's favor.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Here, the parties have provided no affidavits, and the Court therefore accepts all of Plaintiff's well-pled allegations as true.  *See Dudnikov*, 514 F.3d at 1070.

As a court of limited jurisdiction, this Court may only exercise jurisdiction over non-resident Defendant High if (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction in Colorado comports with the Due Process Clause of the United States Constitution.  *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005).  The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Therefore, a due process analysis of jurisdiction in this case also satisfies Colorado's long-arm statute.

Due process first requires that the defendant have "minimum contacts" with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  This requirement

protects a defendant from "being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). The defendant must have "fair warning that a particular activity may subject [him] to jurisdiction." *Id.* Minimum contacts may be established either generally or specifically. *See id.*

> Depending on the level of contact, personal jurisdiction may be either specific, in which case personal jurisdiction is based on specific activities or contacts the defendant had with the forum state, or it may be general, in which case jurisdiction is based upon "continuous or systematic contacts" between the defendant and the forum state.

*United States v. Botefuhr*, 309 F.3d 1263, 1271-72 (10th Cir. 2002) (internal citation omitted). Under either theory of jurisdiction, the defendant's contact must be substantial enough so that exercising personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.*

### III.  Analysis

Because the defense of lack of personal jurisdiction has been raised, Plaintiffs bear the burden of proof. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (2004). Plaintiffs must make a prima facie showing that the Court's exercise of personal jurisdiction over Defendant High is proper. *Impact Prod., Inc. v. Impact Prod., LLC,* 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). It is uncontested that Defendant High is neither a citizen nor a resident of Colorado. *See Second Am. Compl.* [#111] ¶ 9; *Motion* [#114] at 5.

**A.  Consent to Jurisdiction**

At the outset, the Court addresses Plaintiffs' assertion that Defendant High has consented to jurisdiction in Colorado by writing in an email that he "plans to fight" the case

brought by Plaintiffs.  *Response* [#123] at 2 (citing [#62-1]).  In full, Defendant High wrote the following:

> i will be informing the court i am going pro se on further responses to the corey goode frivolous lawsuit , i will be seeking to recover costs, & i am filing my own suits against Corey goode, david wilcock, Jay weidner, Gaia TV & the whole cosmic cluckadoodle 'documentary' crew for theft of copyrighted material. i will be claiming that the antarctica stuff corey & david spewed was stolen from my copyrighted reports & did not arise from any contact with anyone other than my reports. This will force the issue of discovery of his claims that he lived it and had contact with off world & inner earth beings.
>
> This is to inform you that i will be representing myself in these matters. Why shouldn't i get to have fun too?
>
> ALL contacts relating to this suit requiring my response need to be directed to me at this email address or by USPS to appropriate address.

[#62-1] (all syntax as in original).

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."  *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).  However, the Court disagrees with Plaintiffs' argument that Defendant High, through this emailed statement, has consented to jurisdiction in Colorado or has forfeited his ability to challenge personal jurisdiction in the forum state.  First, express consent to personal jurisdiction "must, at the very least, be clear."  *Fuentes v. Sheven*, 92 U.S. 1983, 2002 (1972).  Here, the Court finds that Defendant High's email does not provide the requisite level of clarity.  Indeed, Defendant High is fighting Plaintiffs' lawsuit just by filing the present Motion [#114] contesting the Court's personal jurisdiction over him; hence, a proclamation to "fight" the lawsuit does not equate to a concession regarding personal jurisdiction.  Second, this is not a situation where the defendant has participated extensively in the legal proceedings against him before raising a personal jurisdiction argument.  *See Hunger U.S. Special Hydraulics*

*Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 203 F.3d 835 (10th Cir. 2000) (unpublished table decision). Indeed, this case has not yet proceeded to the discovery phase. Thus, the Court finds that Defendant High has not consented to personal jurisdiction in this forum.

**B.     Minimum Contacts**

    **1.     General Personal Jurisdiction**

Plaintiffs argue that Defendant High has continuous and systematic contact with Colorado sufficient to permit the Court to exercise general personal jurisdiction over him. *Response* [#123] at 1-2. Further, they argue that Defendant High's contacts are "based on the 'effects' of the defendant's conduct in the forum state." *Id.* at 7. Plaintiffs assert that Defendant High has published harassing material on several social media platforms and states that on YouTube he has "hours of videos dedicated to ridiculing and harassing" Plaintiffs. *Id.* Further, Plaintiffs assert that Defendant High's remarks are "aimed at the YouTube audience in Colorado," and he is aware that his videos target Colorado because Plaintiff Goode's television show was based and produced there, and Plaintiff Goode has lived and worked in Colorado for much of his present career. *Id.* at 8.

The Court of Appeals for the Tenth Circuit has recognized that general personal jurisdiction may sometimes be exercised over a defendant due to his authorship of a website. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (*quoting Patriot Systems, Inc. v. C–Cubed Corp.*, 21 F. Supp. 2d 1318, 1323-24 (D. Utah 1998)). The present case does not involve website creation but rather content created by Defendant High and released on YouTube and Twitter. *See generally Second Am. Compl.* [#111]. However, the analysis remains the same. *See Shrader v. Biddinger*,

633 F.3d 1235, 1241-42 (10th Cir. 2011) (holding that "posting allegedly defamatory comments on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read").  A special framework has been developed for determining whether a website subjects its author to the general personal jurisdiction of a particular forum.  *Id.*  This framework classifies websites into three general categories: (1) business websites, i.e., those through which the site's author "clearly conducts business over the Internet between different fora," *SCC Commc'ns Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (2002); (2) passive websites; and (3) interactive websites.  *Soma Med. Int'l*, 196 F.3d at 1296.  A website falls within the first category if its author uses it to "'enter [ ] into contracts with residents of foreign jurisdictions that involve the knowing and repeated transmission of computer files over the Internet.'"  *Id.* (*quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (internal quotations omitted)).  A passive website "is one where the [site's author] has merely posted information [that is] accessible to a user in a different forum."  *SCC Commc'ns*, 195 F. Supp. 2d at 1260.  An interactive website is one "where a user can exchange information with the host computer."  *Soma Med. Int'l*, 196 F.3d at 1296 (*quoting Zippo*, 952 F. Supp. at 1124).

In this case, Defendant High, by posting his YouTube and social media content, did not create the equivalent of a business website.  *See Anderson*, 195 F. Supp. 2d at 1260.  Further, there have been no allegations made by either party that Defendant High's content is "interactive" and thereby falls into the third category for interactive websites. *Soma Med. Int'l*, 196 F.3d at 1296.  Rather, the Court finds that the creation of the internet content as alleged here is the equivalent of a passive website.  *Shrader*, 633 F.3d 1235

at 1241. It is well-settled that a defendant's authorship of a passive website does not, by itself, subject him to a forum's general personal jurisdiction. *SharpShooter Spectrum Venture, LLC v. Consentino*, No. 09-cv-00150-WDM-KLM, 2009 WL 4884281, at *5 (D. Colo. Dec. 10, 2009); *accord Zippo*, 952 F. Supp. at 1124 ("A passive web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996))). The Court therefore finds that the mere creation and posting of content by Defendant High does not subject him to the general jurisdiction of the Court.

### 2. Specific Personal Jurisdiction

Plaintiffs assert that Defendant High is subject to the Court's specific personal jurisdiction because Defendant High has posted hours of content on YouTube attacking Plaintiff Goode and his trademarks between 2017 and 2020. *Response* [#123] at 4-5. Further, Plaintiffs argue that Defendant High targeted his attacks at Plaintiff Goode and his fans in Colorado, and thus, under the *Calder v. Jones* "express aiming" test, Defendant High has intentionally targeted tortious actions at the forum state, thus giving the Court personal jurisdiction over the Defendant. *Id.* at 7; *Calder v. Jones*, 465 U.S. 783 (1984).

A nonresident defendant is subject to this Court's specific personal jurisdiction only when he "has purposefully directed activities at [Colorado] residents or otherwise acted to avail himself purposefully of the privilege of conducting activities [in Colorado]." *Impact Prods.*, 341 F. Supp. 2d at 1190. The aim of the "'purposeful direction' doctrine has been said by the Supreme Court to [be to] ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (2008)

(*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  A defendant has "purposefully directed" his activities at Colorado or its residents when he has (1) taken intentional action, (2) that was expressly aimed at Colorado, (3) with the knowledge that the brunt of the injury from the action would be felt in Colorado.  *Id.* at 1072; *see also Impact Prods.*, 341 F. Supp. 2d at 1190.

With regard to the first element of purposeful direction, the Tenth Circuit Court of Appeals has not determined "whether a defendant's intentional [action] must be wrongful or tortious or whether innocent intentional action suffices."  *SharpShooter*, 2009 WL 4884281, at *6; see *Dudnikov*, 514 F.3d at 1073 (stating that a court can "avoid entering this thicket" when the complaint alleges wrongful intentional conduct).  The Court need not decide the issue here because Plaintiffs have asserted that Defendant High's act of authoring the internet content was tortious (i.e., "libelous" and "defamatory").  *See Dudnikov*, 514 F.3d at 1070.  Thus, the Court finds that the SAC [#111] has adequately alleged that Defendant took wrongful intentional action. The Court therefore next considers whether Defendant's act of authoring internet content was "expressly aimed" at Colorado.

The "express aiming" test was "developed in *Calder* to deal with the somewhat analogous question of specific jurisdiction based on content in nationally distributed print media."  *Shrader*, 633 F.3d 1235 at 1241.  The test focuses on a defendant's intentions by asking "where was the 'focal point'" of his intentional action.  *See Dudnikov*, 514 F.3d at 1070.  The Tenth Circuit has adopted a restrictive approach to the "express aiming" test, holding that the forum state itself—and not merely a known resident of the forum state—must be the focal point of the defendant's intentional action.  *Id.* at 1075 n.9.

Although "[t]he question of whether an Internet Web site is expressly aimed at any certain location is a complicated one," *SharpShooter*, 2009 WL 4884281, at *6, "[t]he creation of a passive web site, by itself, is not considered an act purposefully directed toward" any particular state. *SCC Commc'ns*, 195 F. Supp. 2d at 1260 (citing *Soma Med. Int'l*, 196 F.3d at 1296). Further, the fact that a passive website was accessed by a user in a certain state is insufficient to subject the site's author to the jurisdiction of courts situated in that state. *Id.*

In this case, as discussed above, Defendant High's YouTube and Twitter content is the equivalent of a passive website. *See Shrader*, 633 F.3d 1235 at 1242. Thus, pursuant to *SCC Communications*, Defendant High's authorship of video content on YouTube was not purposefully directed at Colorado. Although Plaintiffs allege that the YouTube content was accessed by Plaintiff Goode and his fans in Colorado, no evidence has been presented, beyond mere conclusory statements, to indicate that Defendant High expressly aimed his content at Colorado. *See Response* [#123]. Moreover, Plaintiffs assert that Defendant High "has targeted much of his YouTube postings . . . towards harming *[Plaintiff] Goode* in Colorado," *Second Am. Compl.* ¶ 9 (emphasis added), and that Defendant High's social media postings harm *Plaintiff Goode*. *Id.* ¶ 58. In other words, Defendant High, as alleged by Plaintiffs in the SAC [#111], has targeted his internet activity at Plaintiff Goode, not the state of Colorado. *See Id.* ¶ 9, 58, 103.

Finally, even were the Court to assume that Defendant High knew that the internet content would have a negative effect on Plaintiffs in Colorado, that fact alone "is not sufficient to demonstrate 'express aiming' in this forum." *Impact Prods.*, 341 F. Supp. 2d at 1191. The Court therefore concludes that Plaintiff has failed to establish that the

Defendant's internet content was expressly aimed at Colorado, and thus, specific personal jurisdiction is not proper over Defendant High.[3]

## C. Civil RICO Jurisdiction

Notwithstanding the Court's analysis above, Plaintiffs assert that the Court has jurisdiction over Defendant High under the broader personal jurisdiction analysis used for civil RICO causes of action, i.e., that Defendant High was involved in an "association" for the purposes of civil RICO violations, and thus, is subject to jurisdiction under 18 U.S.C. § 1965(b). This statute provides:

> [I]n any district court of the United Sates in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

In addressing the civil RICO statute, the Tenth Circuit has stated: "where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (2006). "When a civil RICO action is brought in a district court where personal jurisdiction [via the "minimum contacts" test under the Fourteenth Amendment] can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice." *Id.* Further, the Tenth Circuit concluded that the ends of justice "is a flexible concept uniquely tailored to the facts of each case," and that, as a

---

[3] Having found that Plaintiffs have not carried their burden of establishing that Defendant has sufficient minimum contracts with Colorado, the Court need not further consider traditional notions of fair play and substantial justice.

matter of law, sustained damages and litigation costs did not satisfy the ends of justice standard. *Id.* at 1232.

Here, Plaintiffs assert jurisdiction over Defendant High under this statute. Plaintiffs adequately assert that there was an "association" among Defendants. *Second Am. Complaint* [#111] ¶ 105-10. However, Plaintiffs have failed to provide, or even mention, an "ends of justice" analysis or why jurisdiction is proper under the statute. *See Second Am. Compl.* [#111]; *Response* [#123]. Plaintiff merely states "[Defendant's] connections with [co-Defendants] Weidner, Zavodnick and Montalbano [are] laid out therein as well, and the multiple and ongoing instances of his unlawful acts sufficiently show a pattern of racketeering activity." *Response* [#123] at 11. Further, Plaintiff avers that "[t]he RICO claims establish nationwide jurisdiction as a basis of jurisdiction over High." *Id.* However, Plaintiffs do not address whether the exercise of jurisdiction over Defendant comports with the Fifth Amendment, nor have the Plaintiffs demonstrated why the ends of justice require the Court to assert personal jurisdiction over Defendant High. *See Second Am. Compl.* [#111]; *Response* [#123]. The Court therefore concludes that Plaintiffs have failed to show why jurisdiction is proper under 18 U.S.C. § 1965(b). *See Dudnikov*, 514 F.3d 1063 at 1069-70 (reasoning that the plaintiff bears the burden of establishing personal jurisdiction, but where, the issue is raised early on in litigation, that burden can be met by a prima facie showing); *see U.S. v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (explaining that cursory argument not meaningfully developed by any analysis or citation is deemed waived).

**D.  Jurisdictional Discovery**

Finally, Plaintiffs ask the Court, in the event "this Court find[s] merit in Defendant's arguments," to permit jurisdictional discovery. *Response* [#123] at 12-13. The request is denied for three independent reasons.

First, pursuant to D.C.COLO.LCivR 7.1(d), "[a] motion shall not be included in a response . . . to the original motion. A motion shall be filed as a separate document." Here, Plaintiffs' request for jurisdictional discovery was made in their Response [#123] and therefore is procedurally improper.

Second, Plaintiffs do not request any *specific* discovery or an evidentiary hearing to determine the merits of Defendant High's personal jurisdictional arguments. *See Response* [#123] at 12-13. In other words, Plaintiffs have not provided the Court with any indication of the type of information and discovery they think they may need to combat Defendant High's request for dismissal based on lack of personal jurisdiction. *See id.* Requests for discovery to combat a motion to dismiss based on jurisdiction must be specific. *See, e.g.*, *Smith v. United States*, No. 13-cv-01156-RM-KLM, 2014 WL 6515677, at *3 (D. Colo. July 10, 2014) (citing *Smith v. United States*, 495 F. App'x 44, 49 (Fed. Cir. 2012) (stating that the plaintiff's discovery request was properly denied because "he failed to explain with sufficient specificity how discovery would help him overcome the various jurisdictional bars to his suit . . . and thus, permitting discovery would likely have unnecessarily delayed resolution of the matter," and further stating that the plaintiff "did not identify facts that would support his claims for jurisdiction or explain how the documents he requested would show that the Court had jurisdiction"). Thus, the Court finds that Plaintiffs' nebulous reference to the need for discovery is insufficient to

convince the Court that any specific discovery is necessary to determine the jurisdictional aspects of the Motion [#114].

Third, Plaintiffs essentially ask for "a second bite at the apple" by asking the Court for discovery only if the Court decides to grant the Motion [#114] and dismiss Defendant High for lack of personal jurisdiction. *Response* [#123] at 12-13. This essentially equates to allowing Plaintiffs to file a motion to reconsider, which "is an extreme remedy to be granted in rare circumstances" only. *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). Here, Plaintiffs have had sufficient opportunity to present additional evidence in their Response [#123], to request an evidentiary hearing, or to properly seek additional discovery. Thus, the Court finds that the parties have had "fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions." *See Morales–Feliciano v. Parole Bd. of the Commonwealth of Puerto Rico*, 887 F.2d 1, 6 (1st Cir.1989), cert. denied, 494 U.S. 1046 (1990). Nothing more is required.

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#114] be **GRANTED**, and that Plaintiffs' claims asserted against Defendant High be **DISMISSED without prejudice**. *See Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (holding that the district court should have dismissed the plaintiffs' claims against the defendant without prejudice after it found a lack of personal jurisdiction).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 16, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge