Case No. 1:20-cv-00742-DDD-KAS   Document 247-2   filed 08/05/21   USDC Colorado   pg 1
Case 1:20-cv-02296-SKC   Document 1-1   filed 08/04/20   USDC Colorado   Page 1 of 1
of 8

JS 44 (Rev. 12/11)   District of Colorado Form

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Elson Foster

**DEFENDANTS**
Brian Flynn, Charlene Benton and Ruth Ann Brigham

**(b)** County of Residence of First Listed Plaintiff: Mesa County, Colorado
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Mesa County, Colorado
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott H. Palmer, P.C., 15455 Dallas Parkway, Suite 540, Addison, Texas 75001
(214) 987-4100.   Scott H. Palmer
James P. Roberts

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff) (For Diversity Cases Only) and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability |  | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability |  | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | **LABOR** | **SOCIAL SECURITY** | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Med. Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise |  |  | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | **TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [X] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee |  | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence |  |  | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | **IMMIGRATION** |  |  |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities Employment / [ ] 535 Death Penalty | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions |  |  |
|  | [ ] 448 Education / [ ] 550 Civil Rights |  |  |  |
|  | [ ] 555 Prison Condition |  |  |  |
|  | [ ] 560 Civil Detainee - Conditions of Confinement |  |  |  |

**V. ORIGIN** *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42. U.S.C. Sec. 1983

Brief description of cause:   [ ] AP Docket
Violation of rights and privileges secured by the Fourteenth Amendment of the United States Constitution

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes  [ ] No

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 08/04/2020 | /s/ Scott H. Palmer |

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT          APPLYING IFP           JUDGE            MAG. JUDGE

Case No. 1:20-cv-00742-DDD-KAS   Document 247-2   filed 08/05/21   USDC Colorado   pg 2
of 8
Case 1:20-cv-02296-SKC   Document 1   Filed 08/04/20   USDC Colorado   Page 1 of 45

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ELSON FOSTER,<br>*Plaintiff*,<br><br>v.<br><br>BRIAN FLYNN,<br>CHARLENE BENTON, and<br>RUTH ANN BRIGHAM,<br>*Defendants*. | §<br>§<br>§<br>§   CIVIL ACTION NO. 1:20-cv-2296<br>§<br>§<br>§<br>§<br>§ |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, ELSON FOSTER, Plaintiff, complaining of BRIAN FLYNN, CHARLENE BENTON, and RUTH ANN BRIGHAM, and for causes of action will respectfully show unto the Court as follows:

### I.
### PARTIES

1. Plaintiff Elson Foster is a resident of Mesa County, Colorado.

2. Defendant Brian Flynn is an individual residing in Grand Junction, Mesa County, Colorado and is the Chief Judge for the 21st Judicial District. Chief Judge Flynn may be served at his place of employment at the Mesa County Justice Center located at 125 N Spruce St., Grand Junction, CO 81501, or wherever he may be found. Chief Judge Flynn is being sued in his individual capacity.

3. Defendant Charlene Benton is an individual residing in Grand Junction, Mesa County, Colorado and is the Clerk of Court for the 21st Judicial District. Defendant Benton may be served at her place of employment at the Mesa County Justice Center located at 125 N Spruce St., Grand Junction, CO 81501, or wherever she may be found. Defendant Benton is being sued in her individual capacity.

1

Case No. 1:20-cv-00742-DDD-KAS   Document 247-2   filed 08/05/21   USDC Colorado   pg 3
Case 1:20-cv-02296-SKC   Document 1   Filed 08/04/20   USDC Colorado   Page 6 of 45
of 8

### The 21st Judicial District has a Pattern and Practice of Not Vacating Mandatory Protection Orders When Sentences are Discharged Early

32. The 21st Judicial District has a pattern and practice of not vacating mandatory protection orders when sentences are discharged early.

33. On February 5, 2016, Deputy Public Defender Scott Burrill sent an email to the Chief Judge at the time, Chief Judge David Bottger, informing him of an issue with protection orders remaining in effect after sentences had been discharged. Burrill explained to Chief Judge Bottger that "when clients terminate sentences early through good time, earned time, etc., at either community corrections (felonies) or work release/jail (for [misdemeanors]) the protection orders are remaining in effect."

34. Burrell went on to inform Chief Judge Bottger of three public defender clients that had completed their sentences but had subsequently been arrested and charged with violating protection orders that were no longer valid.

35. That same day, Chief Judge Bottger responded by email to Burrill that it appeared to be a **clerical issue**, and then informed Burrill that Heather Siegfried had been **working on the problem**.

36. Later that day, Heather Siegfried emailed Burrill that Chief Judge Bottger forward her Burrill's initial email and she hoped that she could help resolve the issue.

37. At the time, Heather Siegfried was a Unit Supervisor with the 21st Judicial District Court.

38. Despite Chief Judge Bottger being made aware of the issue, the problem persisted.

> **Alicia Pearson 16M705.** Finished CC sentence early yet picked up a VPO based on the CC case.
>
> **Russell Jones 17M1461.** This case (and 17M1103, where we realized there is some computer issue) spawned me sending you the email in the first place.
>
> **Randy McNamara 13CR540.** He completed his CC sentence early with earned time and then once he was out, got picked up on a VPO based on 13CR540 (15M2034).

44. Burrill also stated that there are **more examples** than just these four individuals, putting Chief Judge Flynn on notice that this was a widespread problem and not an isolated occurrence.

45. **A year later**, on June 18, 2018, Burrill emailed Chief Judge Flynn again stating,

> "It appears we are still having the issue with protection orders remaining in effect once parole is discharged. I cannot provide a specific case number as we are actively representing the gentleman at issue, but I would like to get some more information about how the courts are removing criminal protection orders from the system once someone discharges parole. **It seems to pop up every few months or so** and I am just wondering what more we can do to address the issue." (emphasis added).

46. Almost a month later, on July 10, 2018, Burrill emailed Chief Judge Flynn again stating:

> "I never heard back on this protection order issue. Is there a way you could update us on how protection orders are vacated once someone discharges parole? I ask because **we continue to get cases every few months where someone who discharged parole is arrested for a [Violation of Protection Order] based on the discharged parole case.**" (emphasis added).

47.     That same day, Chief Judge Flynn finally responded by email to Burrill. On the email, Chief Judge Flynn copied, *inter alia*, Ann Brigham and Charlene Benton.

48.     In that email, Chief Judge Flynn responded to Burrill that the State Court Administrator's Office had been sending the 21st Judicial District a list of defendants who were close to completing parole or who were being released from the department of corrections for time served.

49.     Chief Judge Flynn also stated in that July 20, 2018 email that the 21st Judicial District was **relying on defendants to notify the district** of when their parole has been completed.

50.     Finally, Chief Judge Flynn directed Burrill to contact Ann Brigham, Charlene Benton, or Linda Robinson with any further questions or concerns as "they will have the most current information about the issue."

51.     Charlene Benton was the Clerk of Court.

52.     Ann Brigham was a "Supervisor I."

53.     Linda Robinson was the Chief Probation Officer.

54.     Burrill responded to Chief Judge Flynn asking if this was how other jurisdictions were handling the issue.

55.     However, **Chief Judge Flynn did not respond**.

56.     To be clear, the way that the 21st Judicial District, at the direction of Chief Judge Flynn, was handling the administrative task of vacating mandatory protection orders was by relying on defendants to inform the court that their parole had been completed.

57.     The fact that the State Court Administrator's Office had been sending the 21st Judicial District a list of defendants who were close to completing parole or who were

9

being released from the department of corrections for time served demonstrates that it was the responsibility of the 21st Judicial District – not the defendants themselves – to vacate mandatory protection orders when they were no longer valid.

58. Chief Judge Flynn, as the administrative head of the 21st Judicial District, is responsible for overseeing the administrative functions of the district.

59. This administrative supervision is not done in his judicial capacity.

60. These administrative functions include the clerical processes of entering and vacating mandatory protection orders.

61. Charlene Benton, as the Clerk of Court of the 21st Judicial District who provides technical, administrative, and supervisory work in the operation of a Clerk's Office of the Colorado Judicial Branch, is responsible for overseeing the administrative functions of the district as directed by Chief Judge Flynn.

62. These administrative functions include the processes of entering and vacating mandatory protection orders as these are clerical according to former Chief Judge Bottger, and Chief Judge Flynn directed Burrill to contact Charlene Benton with any further questions or concerns as she "will have the most current information about the issue."

63. Ann Brigham, as a "Supervisor I" in the 21st Judicial District who supervises case processing, technical, and/or administrative staff, is responsible for overseeing the administrative staff who are performing the administrative functions of the district as directed by Clerk of Court Charlene Benton and Chief Judge Flynn.

64. These administrative functions include the processes of entering and vacating mandatory protection orders as these are clerical according to former Chief Judge Bottger, and Chief Judge Flynn directed Burrill to contact Ann Brigham with any

further questions or concerns as she "will have the most current information about the issue."

65. Knowing that the procedure being used and enforced was allowing people to be wrongly and illegally arrested and held in custody on invalid protection order violations because of the emails and specific examples from Burrill, Chief Judge Flynn continued to implement the same procedures.

66. Knowing that the procedure being used and enforced was allowing people to be wrongly and illegally arrested and held in custody on invalid protection order violations because of the emails between Burrill and Chief Judge Flynn, Clerk of Court Charlene Benton continued to implement, train, and oversee personnel using the same procedures.

67. Knowing that the procedure being used and enforced was allowing people to be wrongly and illegally arrested and held in custody on invalid protection order violations because of the emails between Burrill and Chief Judge Flynn, Supervisor I Ann Brigham continued to train and oversee her administrative personnel using the same procedures.

### Elson Foster was Wrongly Arrested Seven Times for Violating an Invalid Protection Order Following His Discharge from Parole

68. On August 4, 2018, Plaintiff Elson Foster was arrested for violating a mandatory protection order stemming from case 14CR964 pursuant to Colo. Rev. Stat. Ann. § 18-1-1001.

69. The protection order contained a prohibition from consuming alcohol.

11

147. According to the 21st Judicial District's policies regarding protection orders, which was revised in November of 2017,

> Additionally, temporary and mandatory protection orders without expiration dates **have not consistently been purged from the Central Registry or from the court record in ICON/Eclipse.** Though the protection order should no longer be valid, it may still appear on the Central Registry and again, **law enforcement officers may enforce a protection order that should no longer be active**. (emphasis added).
>
> ...
>
> In circumstances where the sentence is terminated early, the MRO/MRI should be vacated **whenever possible**. This will help **reduce the possibility** that a person will be **falsely arrested based on a protection order that should have been removed from the Central Registry**. (emphasis added).

148. Chief Judge Flynn was already on notice that his policies related to vacating mandatory protection orders were allowing innocent citizens' constitutional rights to be violated by being illegally arrested and detained. His written policy literally acknowledges the exact injuries suffered by Mr. Foster in this case; however, he failed to act in a manner that would prevent the constitutional violations.

149. This written policy does not require that mandatory protection orders shall be vacated upon completion of the sentence – which is the law. Instead, the written policy suggests that the mandatory protection orders be vacated "whenever possible," inherently allowing for situations where the mandatory protection orders will not be vacated and these citizens will be left vulnerable to constitutional violations.

150. This written policy does not seek to prevent false arrests, i.e., Fourth and Fourteenth Amendment violations. Instead, the written policy only seeks to "help reduce the possibility" of these people being falsely arrested.