

Powered by
**Colorado Special Districts Property and Liability Pool**

## Overview of the Colorado Governmental Immunity Act

The Colorado Special Districts Property and Liability Pool (the "Pool") prepared this overview of the Colorado Governmental Immunity Act (CGIA) to provide information to its Member Districts – this information is not substitute for legal advice. The Pool encourages Districts to work with their legal counsel on questions or advice on governmental immunity.

As a general note, the Pool has published other information for our Members' benefit which addresses the CGIA in the context of District's agreements with contractors or vendors, as well as liability waivers or claims releases. Please refer to those publications for further information.

### A.    Background

Until the twentieth century, a concept called *sovereign immunity* protected the federal, state, and local governments, and their employees, from lawsuits, particularly suits based in *tort*. The historic background of *sovereign immunity* in the United States comes from the British common law legal system, in which no suit was allowed against the monarch or state (*sovereign*). *Torts* are a kind of legal claim for injuries or damages stemming from another's wrongful actions – *negligence*, for example, is a well-known type of *tort*. *Torts* are different from contract-based claims, where the duties of the parties to one another, and remedies if those promises are broken, are included in the agreement.

During the twentieth century, the federal and state governments began to replace common law *sovereign immunity* with statutory immunity allowing some types *tort* suits to proceed against the government. In our state, the Colorado Governmental Immunity Act (CGIA) replaced *sovereign immunity* when the statutes became law in 1972.[1] The CGIA is in Article 10 of Title 24 of the Colorado Revised Statutes (C.R.S.).

#### 1.    What is the purpose of the CGIA?

The General Assembly, in the statutes establishing the CGIA, included a legislative intent section, C.R.S. § 24-10-102. Here's a summary of the purposes of providing public entities immunity from tort suits, and an explanation of the reasons that exceptions from governmental immunity were also adopted:

- Common law *sovereign immunity* from all suits for injuries to private persons by the government is not fair/equitable.
- State and local governments provide essential public services and functions; allowing unlimited liability for these services and functions could disrupt or make prohibitively expensive the provision of such essential public services and functions.

---

[1] In 1971, the Colorado Supreme Court decided three cases which abrogated Colorado's common law sovereign immunity and, further, acknowledging that the Colorado General Assembly could establish a statutory framework for governmental immunity. *See Evans v. Board of County Comm'rs*, 174 Colo. 97, 482 P.2d 968 (Colo. 1971); *Flournoy v. School Dist. No. 1*, 174 Colo. 110, 482 P.2d 966 (Colo. 1971); *Proffitt v. State*, 174 Colo. 113, 482 P.2d 965 (Colo. 1971).

- If the liability for public entities was not limited, to some degree, the taxpayers would ultimately bear the fiscal burdens of unlimited liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens.
- Public employees, whether elected or appointed, should be provided with protection from unlimited liability so that such public employees are not discouraged from providing the services or functions required by the citizens or from exercising the powers authorized or required by law.

2. How does the GCIA limit *tort* liability?

The CGIA limits the circumstances under which a public entity or public employee (including Directors and volunteers) may be held liable/responsible in *tort* actions. Under the CGIA, the default is that public entities have governmental immunity from *tort* liability. However, the CGIA waives governmental immunity for injuries or damage resulting from wrongful actions by public entities in the following six (6) contexts:

    a. The operation of a publicly owned or leased motor vehicle, except emergency vehicles;
    b. The operation of any public hospital, correctional facility or jail;
    c. A dangerous condition of any public building;
    d. A dangerous condition of a public highway, road, street or sidewalk;
    e. A dangerous condition of any public facility located in any park or recreation area or any public water, gas, sanitation, electrical, power, or swimming facility; and
    f. The operation and maintenance by a public entity of any public water, gas, sanitation, electrical, power or swimming facility.

Colorado's courts have interpreted each of these six (6) waivers in written decisions. Therefore, if your District has questions regarding whether any waivers of governmental immunity may apply to your District's operations or infrastructure, there is likely caselaw available that can offer some perspective or guidance. Work with your District's legal counsel if you have specific questions on these waivers.

Also, importantly, the CGIA requires that a person claiming to have suffered an injury by a public entity must file a written notice within 182 days after discovering the injury, including: the claimant's name and address (and, if represented, his/her attorney's name and address); a statement of the factual basis of the claim, including date, time, place and circumstances of the act, omission, or event; the name and address of any public employee involved, if known; and, a statement of the amount of monetary damages being requested. C.R.S. § 24-10-109. Colorado courts have not strictly applied these provisions to invalidate a notice, but timely notice is required.

3. How does the GCIA limit maximum liability?

The CGIA also includes maximum liability limits for public entities. Therefore, even for those *tort* actions where a public entity may be held responsible under one of the six (6) statutory waivers, liability is limited by the CGIA to a maximum of $387,000 for injury to one person in any single occurrence and $1,093,000 for injury to multiple persons in a single occurrence, except that no one person shall recover in excess of $387,000. These limits are adjusted for inflation every 4 years, C.R.S. § 24-10-114. The Secretary of State's Office posts the adjustments to these limits in a certificate available at: https://www.sos.state.co.us/pubs/info_center/certificates.html. The limits in this paragraph are current through the end of calendar year 2021.

4. <u>Are there other kinds of liability of which my District should be aware?</u>

Yes, there are other types of actions for which your District, as a public entity, may be held responsible and for which the CGIA does not apply. These include the following:

- <u>Federal Actions</u>: Suits or claims against public entities that are grounded in federal law, including claims for violations of a person's civil rights, and violations environmental, antitrust, securities, and labor and wage laws (again, based in federal law) are outside of the protections of the CGIA.
- <u>Contract Claims</u>: Responsibility for any claims arising out of an agreement or contractual dispute are outside of the CGIA. The responsibilities and remedies from such disputes should be addressed within the agreement itself.
- <u>Criminal Actions</u>: The CGIA does not create any governmental immunity from claims for injury or damage from a public entity's criminal actions. Criminal actions may include: entering into a prohibited transaction; failing to disclose conflicts of interest; misuse of official information; malfeasance; or issuing a false certificate or document.

In conclusion, if you have questions regarding your District and the CGIA, consider reaching out to your District's legal counsel for advice, or your broker or the Pool Administrator if you have a question about your District's coverage under the Pool.