# Exhibit A

**TALENT AGREEMENT**        **Contract #2811**

**THIS "AGREEMENT"** dated as of June 20, 2015 is between Gaia, Inc. dba Gaiam TV, with offices at 833 W. South Boulder Road, Louisville, Colorado 80027 (hereinafter "GTV") and GOODE ENTERPRISE SOLUTIONS, INC. f/s/o James "Corey" Goode, located at 2715 Forest Grove Drive, Richardson, Texas 75080 (hereinafter referred to as "Talent") constitutes the terms and conditions by which Talent shall perform the Services as specified herein and defined below. In consideration of this Agreement and the mutual promises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **CONDITION PRECEDENT**. All of GTV's obligations under this Agreement are conditioned upon GTV's receipt of a fully-executed copy of this Agreement and the satisfactory completion of Artist's Services,

2.      **TERM**. (collectively the "Term")

    (A)      The "Term," and any extensions thereof, of this Agreement shall commence on June 22, 2015 until completion of all Talent's services in connection with the Services as specified herein plus ninety (90) days thereafter.

3.      **DUTIES OF TALENT**. Talent shall perform the following "Services":

    (A)      GTV Productions:  As used herein, a "Program" means an audiovisual work consisting of an unscripted performance session by Talent which is approximately thirty (30) minutes in duration.  Notwithstanding the foregoing, GTV reserves the right to edit each Program as it shall determine in its good faith discretion.

        (i)      GTV contemplates no fewer than fifty-two (52) Programs will be produced during the Term.

        (ii)      Pre-Production: Prior to commencement of rehearsals and principal photography for the Programs, Talent will consult and work with Gaiam regarding the development, creation and exploitation of the Programs.

        (iii)      Rehearsal, Principal Photography, Voice-Over Sessions, etc.: Talent will perform on camera as a principal featured performer in the Programs. Without limiting the foregoing, Talent will attend and perform at rehearsals, principal photography, voice-over sessions, and any necessary "re-takes" and/or "overdub sessions" which shall be scheduled in consultation with Talent.

        (iv)      Still Photography: Appearance and performance at one (1) still photography session for the taking of photographs ("Photos"), for use by Gaiam on and in connection with packaging, advertising, marketing, promotion and publicity related to the Programs, for other Gaiam-owned products and services featuring Talent, and in advertising, publicity and related materials for Gaiam, Gaiam TV and their respective affiliates.

    4.  Marketing & Promotion: Talent will use best faith efforts to advertise and promote the Programs and Gaiam TV in Talent's professional activities in close collaboration with GTV. Without limiting the foregoing, Talent's marketing and promotion efforts will include the following, all in close collaboration with GTV:

    i.   Talent will market and promote, on a regular and consistent basis, the Programs and Gaiam TV on Talent's social media platforms (e.g., Facebook, Twitter).

    ii.   Talent agrees to endorse the Programs and speak favorably about the Programs and Gaiam TV whenever reasonably possible including, without limitation, in interviews and third party inquiries. The compensation due herein is inclusive of any compensation payable to Talent for Talent's endorsement of the Programs.

5.   **Non-Compete**: Talent's Services to GTV shall be on a first priority basis and in no event shall Talent accept other employment which would interfere with Talent's ability to render Services hereunder. During the Term (defined as the period during principal photography plus ninety (90) days following completion of principal photography), Talent will not appear or perform nor endorse, market or promote such programs produced, owned and/or distributed on video devices or via digital distribution. Talent and Gaiam expressly acknowledge and agree that the non-compete provisions in the Agreement are a material portion of the consideration given by Talent under this Agreement and a material inducement on which Gaiam has relied in entering into this Agreement. Notwithstanding the foregoing, this Agreement does not preclude Talent from entering into agreements with third party television networks, radio stations, conferences/conventions, and/or other non-digital networks/platforms.

6.   **Compensation/Travel/Expenses**. Talent's all inclusive fee for the Services rendered under this Agreement shall be as follows:



Redacted Pursuant to 10.14.21 Court Order (Docket 257)

7.   Standard Terms and Conditions

    (A)   Relationship between the Parties: Talent is not an employee and as such is deemed to be an independent consultant during the Term. Talent shall be solely responsible for withholding and payment of Talent's federal, state, and local income and other payroll taxes etc. as required by law. All of Talent's activities hereunder shall be at Talent's own risk. Talent shall not be entitled to Workers' Compensation or other

insurance protection provided by GTV, nor shall Talent be entitled to the benefit of any other plans or programs intended for GTV's employees.

(B)     Warranties: Talent represents and warrants that Talent has the full right and power to enter into this Agreement.

(C)     Name and Likeness. Talent hereby grants to GTV the right, in perpetuity and throughout the universe, to use Talent's name, biography, likeness and activities hereunder, in any and all media, including commercial tie-ins but excluding endorsements, in connection with the advertising, publicizing, promoting and exploiting GTV, Gaiam TV and/or any of its services and/or Talent's Services hereunder.

(D)     Results and Proceeds. Talent acknowledges that all of the results and proceeds of Talent's Services will be created by Talent as a "work-made-for-hire" specially ordered or commissioned by GTV and are assigned to GTV with GTV being deemed the sole author of all such results and proceeds.

(E)     No obligation to Proceed: GTV is not obligated to use Talent's Services hereunder and provided that Talent is able and available to perform Talent's obligations under this Agreement then GTV agrees to compensate Talent pursuant to Paragraph 6 herein.

(G)     Governing Law: This Agreement shall be construed in accordance with the laws of the State of Colorado.

(H)     Waiver: The failure of either party at any time to enforce any right or remedy available to it under this Agreement with respect to any breach or failure by the other party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

(I)     Force Majeure: Neither GTV nor Talent shall be liable to the other for the nonperformance of its obligations hereunder due to an event of "force majeure", which term shall include, without limitation, fire, flood, epidemic, earthquake, explosion, labor dispute or strike, act of God or public enemy, satellite or equipment failure, riot or civil disturbance, war (declared or undeclared) or any federal, state or local government law, order or regulation, order of any court or jurisdiction, or other cause not reasonably within the control of the non-performing party.

(J)     Termination: GTV shall have the right to terminate the Agreement for cause upon 30 days written notice to Talent and thereby be relieved of any liability or obligation hereunder. "Cause" shall be defined as : (a) Talent's material and persistent failure to perform his/her Services in accordance with this Agreement; (b) the appropriation (or attempted appropriation) of a material business opportunity of GTV, including attempting to secure or securing any personal profit in connection with any transaction entered into on behalf of GTV other than as provided in this Agreement; (c) theft, fraud, or embezzlement of property of GTV or any of its affiliates; (d) commission of an act of fraud upon, or bad faith or willful misconduct toward, GTV or any of its affiliates; (e) conduct constituting vulgar or offensive behavior, gross negligence or recklessness, as determined by GTV in its sole discretion, that is materially injurious to GTV, a customer of GTV, or any of its affiliates; or (f) the conviction of, the indictment for (or its procedural equivalent), or the entering of a guilty plea or plea of no contest with respect to, a felony, the equivalent thereof, or any other crime with respect to which imprisonment is a possible punishment.

(K)     Rights Surviving Termination: Upon the termination of this Agreement, GTV retains all right, title and interest in and to GTV Materials, and the right to make use of the name, image, voice, signature, and other likeness of Talent in the exploitation, exhibition, distribution, licensing, marketing and promotion of such

rights subject to the terms of this Agreement. Any rights reverting to Talent shall be subject to all licenses and other grants of rights made by GTV to third parties pursuant to this Agreement. Any and all rights of GTV under such licenses and grants of rights, and all representations, warranties and indemnities of Talent, shall survive the termination of this Agreement

(L)     Severability: If one or more of the provisions contained herein shall be held to be unenforceable in any respect under Colorado or federal law, such unenforceability shall not affect any other provision of this Agreement. The Agreement shall then be construed as if such unenforceable provision or provisions had never existed.

(M)     Confidentiality: Each party shall hold and keep in strict trust and confidence all aspects of the negotiation, drafting and contents of this Agreement, including but not limited to the terms and conditions of this Agreement, and shall not disclose any of the foregoing to any other person except their managerial employees, accountants or other professional advisors. Each party acknowledges and agrees that this paragraph is a material bargained-for portion of the consideration for this Agreement, and the other party would not have entered into this Agreement but for the terms of this paragraph and as such, shall survive the termination of this Agreement.

8.  **ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and all previous agreements, warranties, and representations, if any, are merged herein. This Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which taken together shall be deemed to constitute one and the same instrument. This Agreement may be executed and delivered by facsimile transmission, email or in Portable Document Format (PDF) with the same force and effect as if it were executed and delivered by the parties simultaneously in the presence of one another, and signatures on a facsimile or PDF copy hereof shall be deemed authorized original signatures.

By signing in the spaces provided below, Talent and GTV accept and agree to all of the terms and conditions of this Agreement.

GOODE ENTERPRISE SOLUTIONS, INC.
("TALENT")

(Signature)

An Authorized Signatory

Date: 6-26-2015

James "Corey" Goode
Phone: 214-556-5346 or 469-377-0620 (Cell)
Email: GoodeTech@Yahoo.com

Gaia, Inc. dba Gaiam TV

(Signature)

Brad Warkins, President & COO
Paul Tarell, Jr. CFO

(Date) 6/26/15



## PERFORMANCE RELEASE – Guest Talent

For good and valuable consideration, the receipt and sufficiency of which I hereby acknowledge, I hereby authorize **GAIA, INC. dba GaiamTV** and its affiliates, licensees, successors, assigns and designees (collectively, "Gaiam") to make, use, exhibit, license, distribute and otherwise exploit audio and/or audiovisual recordings (such recordings including any derivative works, collectively the "AV Works") featuring my performances as a guest on a GaiamTV television production currently entitled, _____:

I expressly agree that the AV Works will be owned solely and exclusively by Gaiam, throughout the universe and in perpetuity, free of any claims by me. Accordingly, Gaiam and its affiliates, licensees, successors, assigns and designees shall have the sole and exclusive right, throughout the universe and in perpetuity, to use, distribute, exhibit, license, edit, change, publish and otherwise exploit the AV Works and/or any portion thereof, by any method(s) and in any and all media now or hereafter known, including via all methods of linear and/or digital exhibition/distribution.

I also expressly agree that I will not be entitled to any monetary compensation for my services or the rights granted by me to Gaiam relating to the AV Works, and that Gaiam will not have any obligation to make any payments to SAG-AFTRA or any other unions or guilds in connection with my services or the rights granted by me to Gaiam relating to the AV Works.

I also grant to Gaiam the right, throughout the universe and in perpetuity, the right to use (a) my name, likeness and biographical information and (b) any visual or graphic materials provided by me in connection with the AV Works. I expressly waive any right to review, inspect or approve the AV Works or any promotional/advertising materials created/derived from the AV Works.

I hereby represent and warrant that I have the right to perform for and appear in the AV Works; I have the right to grant the rights herein granted to Gaiam; and my performance and appearance in the AV Works will not violate, conflict with or infringe upon the rights of any person or entity.

I also affirm that I am at least eighteen (18) years of age, have read and understand this document, and have the full right and capacity to sign this document.

ACCEPTED AND AGREED TO:

Signature: _____

Print Name: James Carey Goode

Tel: 214 556 5346   Email: Goodetech@live.com   Date: 6-26-2015

# Exhibit B



**Gaia Inc.**
833 W. South Boulder Rd., Building G
Louisville, CO 80027

### TALENT AGREEMENT                                    Contract #XXXX

**THIS "AGREEMENT"** dated as of August 22, 2016 is between Gaia, Inc., with offices at 833 W. South Boulder Road, Louisville, Colorado 80027 (hereinafter "Gaia") and GOODE ENTERPRISE SOLUTIONS, INC. f/s/o James "Corey" Good, located at 2715 Forest Grove Drive, Richardson, Texas 75080 (hereinafter referred to as "Talent") constitutes the terms and conditions by which Talent shall perform the Services as specified herein and defined below. In consideration of this Agreement and the mutual promises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1.**   **CONDITION PRECEDENT**.  All of Gaia's obligations under this Agreement are conditioned upon Gaia's receipt of a fully-executed copy of this Agreement and the satisfactory completion of Artist's Services.

2.   **TERM**.  (collectively, the "Term")

    (A)   The "Term," and any extensions thereof, of this Agreement shall commence on August 1, 2016 for a one year term or until completion of all Talent's services in connection with the Services as specified, whichever is later.

    (B)   The Term shall automatically renew for successive one year terms unless either party notifies with ninety (90) prior written notice that it wishes to terminate the Agreement.

3.   **DUTIES OF TALENT**.  Talent shall perform the following "Services":

    (A)   <u>Gaia Productions</u>:

        (i)   <u>Program(s):</u>  Talent shall perform as an on-air talent for Gaia's proposed programs and promotional content produced by Gaia on dates to be mutually agreed upon between the parties (collectively, the "Programs"). Talent shall work with Gaia in good faith to determine the number of Programs to be produced during the Term (and any successive renewal Terms) of this Agreement.

        (ii)   <u>Pre-Production:</u>  Prior to commencement of rehearsals and principal photography for the Programs, Talent will consult and work with Gaia regarding the development, creation and exploitation of the Programs.

        (iii)   <u>Rehearsal, Principal Photography, Voice-Over Sessions, etc.:</u>  Talent will perform on camera as a principal featured performer in the Programs. Without limiting the foregoing, Talent will attend and perform at rehearsals, principal photography, voice-over sessions, and any necessary "re-takes" and/or "overdub sessions" which shall be scheduled in consultation with Talent.

(iv)     <u>Still Photography</u>: Appearance and performance at one (1) still photography session for the taking of photographs ("Photos"), for use by Gaia on and in connection with packaging, advertising, marketing, promotion and publicity related to the Programs, for other Gaia-owned products and services featuring Talent, and in advertising, publicity and related materials for Gaia, Gaia and their respective affiliates.

4.   <u>Marketing & Promotion</u>: Talent will use best faith efforts to advertise and promote the Programs and Gaia in Talent's professional activities in close collaboration with Gaia. Without limiting the foregoing, Talent's marketing and promotion efforts will include the following, all in close collaboration with Gaia:

    i.   Talent will market and promote, on a regular and consistent basis, the Programs and Gaia on Talent's social media platforms (<u>e.g.</u>, Facebook, Twitter).

    ii.   Talent will market and promote the Programs and Gaia in any media appearances, articles and interviews.

    iii.   Talent agrees to endorse the Programs and speak favorably about the Programs and Gaia whenever reasonably possible including, without limitation, in interviews and third party inquiries. The compensation due herein is inclusive of any compensation payable to Talent for Talent's endorsement of the Programs.

    iv.   Talent agrees to coordinate all marketing with Gaia personnel. In no case shall Talent publicize or publicly discuss Gaia video shoots subject matter or participants until Gaia publicizes said topics and details or until Gaia provides express, written approval.

5.   <u>Competing Programs</u>:     During this Agreement, for the ninety-days following the termination of this Agreement and any renewals thereof, and for the ninety-days after the last program Talent is paid for under this Agreement is published on Gaia, Talent will not host a competing programming show on a Video On Demand ("VOD") or Subscription Video On Demand ("SVOD") service without prior written consent from Gaia. For the purposes of this Agreement: 1) VOD is defined as delivery of audiovisual works selected by the viewer where the commencement time for the exhibition of the audiovisual works is not predetermined or scheduled by the program provider but rather is entirely at the viewer's discretion and delivered by means of Digital Distribution and/or Television; and 2) SVOD is defined as VOD delivered via a business model based upon a Subscription Service and may include so-called "tethered downloads".

Notwithstanding the foregoing, Talent will have the right (a) to appear and perform as a guest in any "talk show"-style audiovisual program hosted by a third party and/or (b) to perform as the host of a narrative audiovisual program which is not in a "talk show" format (<u>e.g.</u>, Talent could perform as a guest host on the program "Ancient Aliens" on History Channel) and/or (c) to develop, write, produce and/or appear and perform in any audiovisual program produced by Virgin Produced.

Each of Gaia and Talent expressly acknowledges and agrees that (i) the non-competition provisions of this Agreement are a material portion of the consideration given by Gaia and Talent to Gaia under this Agreement, and a material inducement on which Gaia has relied in entering into this Agreement; and (ii) such non-competition clauses govern the rights of the parties in connection with the ownership, control and exploitation of intellectual property, including but not limited to copyrights, trademarks,

endorsements, and rights of publicity, separate and apart from the practice of a profession, trade business by Talent; and (iii) such non-competition clauses are not intended to, and do not, restrict Talent from engaging in Talent's principal profession, trade or business; and, therefore, (iv) any dispute between the parties over the meaning and effect of the non-competition provisions of this Agreement shall be resolved to enforce such clauses to the maximum extent permitted by law.

6.  <u>Compensation/Travel/Expenses</u>.   Talent's all-inclusive fee for the Services rendered under this Agreement shall be as follows:



Redacted Pursuant to 10.14.21 Court Order (Docket 257)

**Redacted Pursuant to 10.14.21 Court Order (Docket 257)**

(F)   <u>Audit Provision</u>.  Due to the cost associated with an audit, the Parties Agree that Talent will have the opportunity to request an audit only once during the Term of this contract, including renewal Terms.  The Parties further agree that an audit will not be requested prior to the completion of the second Term.

(G)   <u>Security Provision</u>.  If, in Gaia's judgement, the dissemination of information during shoots causes security concerns for Talent, Gaia may choose to provide security on location of shoot and/or for transportation to and from shoot location.  Gaia may alternatively relocate video shoots to secure locations, similarly at Gaia's judgment and expense.

<u>7.</u>   <u>Terms and Conditions</u>

(A)   <u>Relationship between the Parties</u>: Talent is not an employee and as such is deemed to be an independent consultant during the Term.  Talent shall be solely responsible for withholding and payment of Talent's federal, state, and local income and other payroll taxes etc. as required by law. All of Talent's activities hereunder shall be at Talent's own risk.  Talent shall not be entitled to Workers' Compensation or other insurance protection provided by Gaia, nor shall Talent be entitled to the benefit of any other plans or programs intended for Gaia's employees.

(B)   <u>Digital Distribution</u> means delivery of audiovisual recordings by means of transmission via the Internet or any other form of digital, wireless and/or electronic transmission now known or hereafter invented that utilizes the Internet or any successor network as its primary means of transmission (collectively, "Internet Technologies"), including via transferring, streaming, downloading and/or other non-tangible delivery to fixed and/or mobile platforms utilizing Internet Technologies, including, without limitation, to computers, mobile phones, other personal communication devices, personal and other music, video and/or other audiovisual recorders and/or players and/or other digital devices, platforms and services, including, without limitation, by means of so-called "electronic sell-through" (also known as "EST"), "download to own," "download to rent," "download to burn," "video on demand" "advertising video on demand" and/or "pay per view" distribution via Internet Technologies.

(C)   <u>Subscription Service</u> means a service that distributes audiovisual content to subscribers for a periodic fee. A Subscription Service may include limited free trial subscriptions for promotional purposes.

(D)   <u>Gaia Qualified Viewing</u> is defined as any view at least 30 seconds and no more than 2 times the published length of each Program.

      (E)     <u>Warranties</u>.  Talent represents and warrants that Talent has the full right and power to enter into this Agreement. Talent represents and warrants that Talent has read this agreement in its entirety prior to executing.

      (F)     <u>Name and Likeness</u>.  Talent hereby grants to Gaia the right, in perpetuity and throughout the universe, to use Talent's name, biography, likeness and activities hereunder, in any and all media, including commercial tie-ins but excluding endorsements, in connection with the advertising, publicizing, promoting and exploiting Gaia and/or any of its services and/or Talent's Services/Programs hereunder.

      (G)     <u>Results and Proceeds</u>. Talent acknowledges that all of the results and proceeds of Talent's Services will be created by Talent as a "work-made-for-hire" specially ordered or commissioned by Gaia and are assigned to Gaia with Gaia being deemed the sole author of all such results and proceeds.

      (H)     <u>Governing Law</u>: This Agreement shall be construed in accordance with the laws of the State of Colorado.

      (I)     <u>Waiver</u>: The failure of either party at any time to enforce any right or remedy available to it under this Agreement with respect to any breach or failure by the other party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

      (J)     <u>Force Majeure</u>: Neither Gaia nor Talent shall be liable to the other for the nonperformance of its obligations hereunder due to an event of "force majeure", which term shall include, without limitation, fire, flood, epidemic, earthquake, explosion, labor dispute or strike, act of God or public enemy, satellite or equipment failure, riot or civil disturbance, war (declared or undeclared) or any federal, state or local government law, order or regulation, order of any court or jurisdiction, or other cause not reasonably within the control of the non-performing party.

      (K)     <u>Termination</u>:  Gaia shall have the right to terminate the Agreement for Cause upon thirty (30) days written notice to Talent and thereby be relieved of any liability or obligation hereunder. "Cause" shall be defined as : (a) Talent's material and persistent failure to perform his/her Services in accordance with this Agreement; (b) the appropriation (or attempted appropriation) of a material business opportunity of Gaia, including attempting to secure or securing any personal profit in connection with any transaction entered into on behalf of Gaia other than as provided in this Agreement; (c) theft, fraud, or embezzlement of property of Gaia or any of its affiliates; (d) commission of an act of fraud upon, or bad faith or willful misconduct toward, Gaia or any of its affiliates; (e) conduct constituting vulgar or offensive behavior, gross negligence or recklessness, as determined by Gaia in its sole discretion, that is materially injurious to Gaia, a customer of Gaia, or any of its affiliates; (f) malicious or defamatory comments/reviews against the Programs and/or Gaia or any of its officers, employees, subsidiaries or affiliates; or (g) the conviction of, the indictment for (or its procedural equivalent), or the entering of a guilty plea or plea of no contest with respect to, a felony, the equivalent thereof, or any other crime with respect to which imprisonment is a possible punishment.

      (L)     <u>Rights Surviving Termination</u>:  Upon the termination of this Agreement, Gaia retains all right, title and interest in and to Gaia Materials and Programs, and the right to make use of the name, image, voice, signature, and other likeness of Talent in the exploitation, exhibition, distribution, licensing, marketing and promotion of such rights subject to the terms of this Agreement.  Any rights reverting to Talent shall be subject to all licenses and other grants of rights made by Gaia to third parties pursuant to this Agreement. Any and all rights of Gaia under such licenses and grants of rights, and all representations, warranties and indemnities of Talent, shall survive the termination of this Agreement.

(M)    Severability:  If one or more of the provisions contained herein shall be held to be unenforceable in any respect under Colorado or federal law, such unenforceability shall not affect any other provision of this Agreement.  The Agreement shall then be construed as if such unenforceable provision or provisions had never existed.

(N)    Confidentiality:  Each party shall hold and keep in strict trust and confidence all aspects of the negotiation, drafting and contents of this Agreement, including but not limited to the terms and conditions of this Agreement, and shall not disclose any of the foregoing to any other person except their managerial employees, accountants or other professional advisors. Each party acknowledges and agrees that this paragraph is a material bargained-for portion of the consideration for this Agreement, and the other party would not have entered into this Agreement but for the terms of this paragraph and as such, shall survive the termination of this Agreement.

(O)    Indemnification:  Each party shall indemnify, defend and hold harmless the other party, its respective parent company, partners, subsidiaries, successors and affiliated companies, and the officers, directors, agents and employees of all of the foregoing (the "Indemnified Parties"), from and against any demands, losses, penalties, claims, damages, liabilities, costs and expenses whatsoever (including, but not limited to, reasonable legal fees and expenses) incurred by or asserted against any of the Indemnified Parties, arising from exhibition of the Licensed Program(s), or any advertising or promotional use of the Licensed Program(s) in any manner in any media in accordance with the rights granted herein, or any breach of any warranty, representation, covenant made or obligation assumed by each other herein. The rights and obligations set forth in this Indemnification Section shall survive the termination or expiration of this Agreement.

8.    **ENTIRE AGREEMENT**.  This Agreement contains the entire agreement of the parties and all previous agreements, warranties, and representations, if any, are merged herein.  This Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which taken together shall be deemed to constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile transmission, email or in Portable Document Format (PDF) with the same force and effect as if it were executed and delivered by the parties simultaneously in the presence of one another, and signatures on a facsimile or PDF copy hereof shall be deemed authorized original signatures.

By signing in the spaces provided below, Talent and Gaia accept and agree to all of the terms and conditions of this Agreement.

GOODE ENTERPRISE SOLUTIONS, INC ("TALENT")

By _____
        Corey Goode

Date: __8-23-2016__

Phone:  214-556-5346 or 469-377-0620 (Cell)
Email:  GoodeTech@Yahoo.com

GAIA, INC.

By: _____
     Brad Warkins, President & COO

Date: __8/25/16__

Exhibit C



Gaia Inc.
833 W. South Boulder Rd. Building G
Louisville, CO 80027

**Contract #3078B**

**August 18, 2017**

Goode Enterprise Solutions, Inc.
f/s/o James "Corey" Goode
2715 Forest Grove Drive
Richardson, Texas 75080

Re: <u>**Amendment to the Talent Agreement (#3078) dated August 22, 2016**</u>

Dear Corey:

Reference is made to the exclusive Talent Agreement (the "Agreement") dated August 22, 2016 by and between you, Goode Enterprise Solutions, Inc. f/s/o James "Corey" Goode ("Talent") and Gaia Inc. ("Gaia"), as amended and in full force and effect as of the date hereof.

Both Parties now wish to make the following revisions to the Talent Agreement.

All capitalized terms used herein and not specifically defined herein shall have the meaning set forth in the Talent Agreement. Notwithstanding anything to the contrary expressed or implied in the Talent Agreement, Talent and Gaia hereby agree to amend the Talent Agreement, as follows:

**I.**    Paragraph 2 of the Agreement shall be revised to include the following:

2(C)    <u>Term Renewal</u> – The parties hereby agree to renew the Agreement for an additional one year period commencing September 1, 2017 through August 31, 2018.

**II.**    Paragraph 6 of the Agreement shall be revised to include the following:

**Redacted Pursuant to 10.14.21 Court Order (Docket 257)**



Redacted Pursuant to 10.14.21 Court Order (Docket 257)

**Redacted Pursuant to 10.14.21 Court Order (Docket 257)**

Ratification and Confirmation. Except as expressly modified by the terms set forth above, the Agreement and all of the terms and conditions set forth therein shall apply and remain in full force and effect.

Counterparts and Fax. Signatures. This Amendment may be executed in one or more counterparts, each of which shall constitute an original, and all of which taken together shall be deemed to constitute one and the same instrument. This amendment may be executed and delivered by facsimile transmission or in PDF format with the same force and effect as if it were executed and delivered by the parties simultaneously in the presence of one another, and signatures on a facsimile or PDF copy hereof shall be deemed authorized original signatures.

Please sign in the space indicated below to confirm your agreement to the foregoing terms and conditions.

ACCEPTED AND AGREED TO:

**GOODE ENTERPRISE SOLUTIONS (TALENT)**          **GAIA INC.**

By: /s/o James "Corey" Goode                      By: Brad Warkins, President

Date:   8-29-2017                                 Date:   8/29/17

# Exhibit D



Gaia International, Inc.
833 W. South Boulder Rd. Building G
Louisville, CO 80027

**Contract #3078C**

November 7, 2017

Goode Enterprise Solutions, Inc.
f/s/o James "Corey" Goode
2715 Forest Grove Drive
Richardson, Texas 75080

Re: <u>Amendment #2 to the Talent Agreement (#3078) dated August 22, 2016</u>

Dear Corey:

Reference is made to the exclusive Talent Agreement (the "Agreement") dated August 22, 2016 by and between you, Goode Enterprise Solutions, Inc. f/s/o James "Corey" Goode ("Talent") and Gaia Inc. ("Gaia"), as amended and in full force and effect as of the date hereof. Notice is hereby given that Gaia, Inc. assigned its interest in that Agreement to Gaia International, Inc. ("Licensee")

Both Parties now wish to make the following revisions to the Talent Agreement.

All capitalized terms used herein and not specifically defined herein shall have the meaning set forth in the Talent Agreement. Notwithstanding anything to the contrary expressed or implied in the Talent Agreement, Talent and Gaia hereby agree to amend the Talent Agreement, as follows:

I.     Paragraph 3(A)(i) of the Agreement shall be replaced with the following paragraph as 3(A)(i):

Program(s): Talent shall perform as an on-air talent for Gaia's proposed programs and promotional content produced by Gaia subject at all times to Gaia's Standards & Practices guidelines pursuant to Exhibit 2A (please read and initial), attached herein, on dates to be mutually agreed upon between the parties (collectively, the "Programs"). Talent shall work with Gaia in good faith to determine the number of Programs to be produced during the Term (and any successive renewal Terms) of this Agreement.

II.    Paragraph 6 of the Agreement shall be revised to include the following paragraph as 6(H):



**III.**   The attached exhibits shall be included and made a part of the Agreement as Exhibit 2A and 2B of the Agreement.

Ratification and Confirmation. Except as expressly modified by the terms set forth above, the Talent Agreement and all of the terms and conditions set forth therein shall apply and remain in full force and effect.

Counterparts and Fax Signatures. This Amendment may be executed in one or more counterparts, each of which shall constitute an original, and all of which taken together shall be deemed to constitute one and the same instrument. This amendment may be executed and delivered by facsimile transmission or in PDF format with the same force and effect as if it were executed and delivered by the parties simultaneously in the presence of one another, and signatures on a facsimile or PDF copy hereof shall be deemed authorized original signatures.

Please sign in the space indicated below to confirm your agreement to the foregoing terms and conditions.

ACCEPTED AND AGREED TO:
**GOODE ENTERPRISE SOLUTIONS (TALENT)**      **GAIA INTERNATIONAL INC.**

By:  f/s/o James "Corey" Goode        By: Brad Warkins, President

Date:  11/17/17            Date:  11/27/17

# Gaia

Gaia International, Inc.
833 W. South Boulder Rd., Building G
Louisville, CO 80027

## EXHIBIT 2A

### Gaia Standards & Practices

<u>Programs:</u>  Talent acknowledges and agrees:

- The Programs shall not contain violence or explicit sexuality.
- The Programs shall not be fear-based without suggesting possible solutions.
- The Programs shall not contain content that divides our subscribers, such as talent's one-sided view or discussions regarding politics or religion (including any political comments covering the last 16-year period).
- The Programs shall not include any self-promotion (or promotion of a producer)

Talent's initials _____

Exhibit E



# Gaia

Gaia International, Inc.
833 W. South Boulder Rd., Building G
Louisville, CO 80027

## EXHIBIT 2B

## GAIA INTERNATIONAL, INC. RELOCATION BENEFIT AGREEMENT

I, Corey Goode, hereby agree to the following terms and conditions with respect to all relocation costs paid to me or on my behalf by Gaia International, Inc. (the "Company"), whether by reimbursement to me or by direct payment to third parties, in connection with my relocation from Texas to my new home in Colorado (the "Relocation Costs"):

1.  For the purpose of this Relocation Benefit Agreement, "Under Contract" is defined as having a fully executed agreement between Company and me or on my behalf, with me hosting or appearing in a minimum of 360 minutes of net published content per quarter

Redacted Pursuant to 10.14.21 Court Order (Docket 257)

4.  I understand that certain reimbursements and allowances paid to me or on my behalf as Relocation Costs in connection with my relocation must be included as a part of my gross income and therefore may be subject to tax.
5.  If I am required under paragraph 3 of this agreement to repay Relocation Costs to the Company, I will repay the entire amount determined under paragraph 3, including amounts withheld as payment deductions, within two weeks of no longer being Under Contract. I also understand that my ability to deduct a portion of my Relocation Costs is subject to specific limits and other IRS requirements, including the requirement that I must be able to substantiate my expenses by keeping copies of my receipts. *I UNDERSTAND THAT IF I AM AUDITED BY THE IRS OR ANY STATE TAX AGENCY, I ALONE AND NOT THE COMPANY WILL BE LIABLE FOR ANY TAXES, INTEREST OR PENALTIES DUE IF ANY CLAIMED DEDUCTIONS ARE DENIED FOR ANY REASON, INCLUDING IF I FAIL TO KEEP COPIES OF RECEIPTS.* I understand that I cannot rely on the Company or any officer or employee of the Company for advice regarding the proper tax treatment of my Relocation Costs, and that I am responsible for obtaining independent advice from my own personal tax advisor.
6.  I understand that nothing in this Relocation Benefit Agreement assures me of a continuing position with the Company.
7.  If I am obligated under this Relocation Benefit Agreement to repay the Company for Relocation Costs, I hereby authorize the Company to deduct the entire amount due from any future payment that I may receive otherwise.
8.  I understand that in the event legal action is brought to enforce the terms of this Relocation Benefit Agreement, the prevailing party shall be entitled to recover reasonable costs of such action, including attorney's fees, under Colorado law and jurisdiction.

_____          ___11/17/17___
Corey Goode                                Date