# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually and,
GOODE ENTERPRISE SOLUTIONS INC.,

Plaintiffs,

v.

GAIA, INC.,
JAY WEIDNER,
BENJAMIN ZAVODNICK,
ALYSSA MONTALBANO,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH

Defendants.

----

Alyssa Chrystie Montalbano, Individually

Counter-Claimant,

v.

James Corey Goode, individually, and
GOODE ENTERPRISE SOLUTIONS INC.

Counter-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC;  David Wilcock,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
Valerie Yanaros Wilde,  Elizabeth Lorie, Brian James Flynn, William Campbell,
Matthew Grove,  Diana Terry, and Christina Gomez

Third-Party Defendants.

**ALYSSA MONTALBANO'S REPLY TO JAY WEIDNER'S RESPONSE [#268]
IN SUPPORT OF MOTION TO LIFT STAY OF DISCOVERY [#262]**

Third-Party Plaintiff, Alyssa Chrystie Montalbano, in Reply to: DEFENDANT JAY WEIDNER'S RESPONSE TO MOTION TO LIFT DISCOVERY STAY [#268]; and in support of Granting the MOTION TO LIFT STAY OF DISCOVERY ("the Motion") [#262] states as follows:

## I.     INTRODUCTORY REPLY

Primarily Mr. Weidner by and through his counsel, Ms. Ashlee Hoffmann, argue the Stay of Discovery [#100] was requested October 12, 2020 by Montalbano, Weidner, and GAIA [#268, ¶2], and that the five String Cheese factors weighed in favor of the Stay then and that the Stay is still appropriate now (over one year later) allegedly because "little has changed" [Id., ¶¶13-14] and they incorporate by reference the First Motion to Stay. [Id., ¶3] Ms. Hoffmann also provides a bare recitation of the five String Cheese Incident factors [Id, ¶2, ¶¶7-9]; with a couple exceptions addressed below.   Weidner's Response arguments are 'old' with respect to Montalbano's counterclaims and fail to address or overcome any of the problems and prejudices cited with specificity in Montalbano's Motion to Lift Stay that support lifting the Stay from Montalbano and her counterclaims [#217, SACC]; basically, they ignore most everything in the Motion [#262] and write their Response paper as if Plaintiffs Goode and GOODE ENTERPRISE SOLUTIONS (GES) filed the Motion, and not Montalbano.

**II.     FIVE STRING CHEESE FACTORS STILL IN FAVOR OF LIFTING THE STAY FROM MONTALBANO'S COUNTERCLAIMS**

1. The *First String Cheese incident factor* (prejudice to the Plaintiff, Montalbano) is largely not addressed by Weidner's counsel, with the exception they state Montalbano did not move expeditiously with her claims. This appears to be somewhat true, however it is also somewhat inaccurate and false in light of the fact Montalbano does not have the benefit of legal Counsel or Pro Se clinic assistance [#180 at pp10-11, Nos. 7-8]. Montalbano has always timely moved forward as best as understood to be permitted by law.

    In support of showing Ms. Hoffmann's statement is inaccurate and that Montalbano moved forward as expeditiously as she knew she lawfully could:

    The Joint Motion to Stay [#100] was filed October 12, 2020 [#262, p3, at No. 4] and was an appropriate request based on the then current position of the case, only Goode and GES (original Plaintiffs) having filed a complaint and Montalbano still addressing the problems with Flynn failing to perform in case 18CV50 [#27, Montalbano v. Goode] through Constitutional Due Process channels [#105, filed October 28, 2020 - Notice Related Case (18CV50) in Colorado Court of Appeals (20CA1775)]. Montalbano (Defendant) filed counterclaims December 22, 2020 [Id. p4 at No. 7] naming GAIA, Rysavy, Warkins, Medvedich, and Ms. Hoffmann's client, Mr. Jay Weidner, as cross-defendants. However, because Montalbano had prior agreed to the Stay, Montalbano honored the Stay as if granted

since October 2020 and negotiated counterclaims without discovery requests. December 22, 2020 through May 29, 2021, Montalbano amended the counterclaims complaint (which is not a small task) [Id. p4, No 11] and also in-fact stipulated removal of Ms. Hoffmann's client, Mr. Weidner (cross-defendant) January 11, 2021, and cross-defendants GAIA, Rysavy, Warkins, and Medvedich February 4, 2021 from the counterclaims [Id. p4, No 8]. All other defendants were not forthcoming or willing to negotiate, and the Stay was Granted April 26, 2021. [Id. p4, No 9] Obviously, Montalbano honored the Stay after it was granted, so there was no option for discovery requests or 'expeditious' movement since April 26, 2021.

Weidner's Response fails to rebut with specificity the first String Cheese incident factor related to Montalbano as a Plaintiff, and fails to show that ongoing defamation and ongoing misuse of Montalbano's original Intellectual Property is not in-fact damaging to Plaintiff, Montalbano; because they failed to rebut with specificity the facts actually presented in the Motion they have agreed with Montalbano's arguments, and thereby the first unrebutted factor remains in Montalbano's favor. [#262, pp9-12, Section III C. No.1.]

With respect to Montalbano being a Plaintiff, she reminds the Court she does not have the benefit of legal counsel and has been severely prejudiced by this fact since June 25, 2018 [#27, Notice Related Case, 18CV50, Montalbano v. Goode]. Mr. Weidner's counsels (Mr. Belzer and Ms. Hoffmann) and GAIA's counsels (Mr. Dingerson and Ms. Scher) represent their clients' interests and not Montalbano's and they have no interest in what the consequences of a Stay mean to Montalbano legally or personally, nor did they have any obligation to explain

the consequences to Montalbano at the original agreeing of the Joint Motion to Stay. However, if Montalbano would have been told beforehand by counsel she could make discovery requests of any Defendant at the filing of a complaint and make formal records requests even though the Scheduling/Planning Conference was continued/vacated [#45 Scheduling Conference set; #96 (October 2, 2020) Order vacating Scheduling Conference] and that a stay being granted meant the case would likely be delayed another year or two or three, Montalbano would have declined to join the motion and instead moved forward making formal discovery requests as early as December 22, 2020 [#120 Montalbano original Counterclaims], or earlier, as it sounds like discovery requests could begin as soon as any complaint is filed; however, Montalbano only recently learned of this Right and standard discovery procedures. If this is an incorrect understanding Montalbano requests the presiding Officers inform Montalbano of the standard procedure, as Montalbano is prejudiced by not having access to the same information and Court process knowledge as opposing parties with Counsels who know 'standard procedures', that can essentially only be acquired via experience, as they are not clearly defined in the Rules or Statutes. All that can be done now to rectify this impediment is for Montalbano to do as she has done and Motion to lift the Stay as specified to prevent further damages and to allow Montalbano the opportunity to expeditiously move things forward via discovery requests.

It is to be duly noted, implementing discovery and managing a lawsuit is not something Montalbano has professionally performed before and a formal 'Motion to Request Court Assign Counsel to Montalbano' is forthcoming.  Currently, all appeared parties are unopposed to the fundamental premise of the Court assigning counsel to Montalbano.

...

2.  Next, Weidner's counsel argues the *Second String Cheese Incident factor* (burden on defendants) with a completely irrelevant argument. Ms. Hoffmann alleges proceeding with discovery would prejudice and burden 'defendant' Weidner and other defendants if the stay was lifted [#268, ¶¶4-5], she also states Weidner's Motion to Dismiss Goode and GES's claims is likely to be granted and that a stay is even more appropriate now than prior. [Id. ¶¶6-12]

However, these arguments are not substantive for the following:

   a. The lifting of the stay is requested specifically for Montalbano and her Counterclaims [#217] and not for a general lifting of the stay.

   b. Weidner (cross-defendant) was removed from Montalbano's counterclaims pursuant negotiations and stipulated agreements and subsequently he was dismissed from Montalbano's counterclaims without prejudice and terminated as a cross-defendant by Judge Domenico. [#262, p4 No. 8] Because Weidner is not a defendant in Montalbano's counterclaims he cannot be burdened by discovery being opened for Montalbano's Counterclaims, therefore Ms. Hoffmann's argument is not only irrelevant, it is also moot.

   c. Weider has no Motion To Dismiss (MTD) pending against Montalbano's counterclaims, because he is not a defendant to them.

   d. Weider has a MTD filed against Goode and GES's claims [#262, p4, No. 10]. Regardless to if Weidner's MTD is granted or not, it will not dispose of

Montalbano's independent case and claims. Furthermore, Montalbano also showed in the Motion to Lift Stay, that her counterclaims [#217] are not dependent on any other complaint or counterclaims proceeding forward or not and that no pending Motion To Dismiss will be able to completely dispose of Montalbano's case and claims. [#262, p3 No. 5; and p8 Section III B. DISPOSITIVE MOTION FACTORS IN FAVOR OF LIFTING STAY]

The Second String Cheese incident factor remains in Montalbano's favor as Weider is not a defendant and thereby he cannot be burdened as a defendant by discovery being opened for Montalbano's counterclaims and no pending MTD (especially Weidner's MTD, which is not even filed against Montalbano's claims) can dispose of all or any of Montalbano's claims.

3. Next, Weidner's Counsel does not specifically address the *Third String Cheese Incident factor* (benefit to the Court) but make various statements alluding to the fact that allegedly a stay is still a benefit to the Court, based on the prior order granting the Stay [#268, ¶¶10-13] and argues discovery conducted in multiple phases would be burdensome. [Id. ¶7] However, Weidner and his Counsel failed to overcome the specified reasons presented by Montalbano in the Motion showing the benefits to the Court. [#262 at p14-15, No 3]

4. The primary argument with the *Fourth String Cheese Incident factor* (non-parties) is only addressed with a general recitation of the rule and a general statement again that a stay is somehow still appropriate, [#268 ¶8] yet Weidner and his Counsel fail to

address factors specified in Montalbano's Motion and failed to overcome how Montalbano's non-party witnesses 'dying' does not in fact prejudice Montalbano's counterclaims. [#262, pp15-18, No.4]

Additionally, while Weidner is no longer a defendant in Montalbano's claims, he is a "non-party" and he will be summoned one way or another for his testimony regarding The Enterprise's public frauds, money scams, and harassment acts. [#217 (SACC), ¶213, ¶261, ¶311, ¶315, ¶320 A., ¶324, ¶347, ¶492, ¶¶556-557]  Ms. Hoffmann failed to make any arguments specific to Weidner as a non-party and failed to rebut how non-party deaths do not in fact prejudice Montalbano's counterclaims. Conversely, Montalbano showed a very clear benefit to lifting the stay for non-parties: they will be alive to testify. [#262, pp15-18, Section III C. 4]

Montalbano also brings the following concerning factors to the Courts attention regarding non-party Weidner:  (1) if Weidner is dismissed from the case (like non-party Mr. High [#252 Order Dismissing High August 12, 2021;  SACC ¶261]) before Montalbano's counterclaims can be investigated through discovery tools, it will further burden Montalbano to have to (re)locate and/or (re)summon Mr. Weidner (like non-party High) and; (2) Montalbano is concerned about possibly losing Weidner as a witness before he can testify like other non-party witnesses; Peterson (alleged health and age death) and McCandlish (alleged suicide) [#262, pp16-18, Section III. C. No 4. b.]); if the stay is prolonged anymore for the following:

    a. Weidner publicly spoke about leaving GAIA around the time Montalbano began serving the (still unrebutted) presumptive Pre-Litigation Affidavit Complaint (PLAC) notices (April 18, 2018) [#121-18 PLAC sample pages; #135-1 PLAC privacy agreement; #135-2 PLAC USPS Certified Mail] to Corey Goode, GES, and by extension David Wilcock at GAIA headquarters for fraud and theft of Intellectual Property. Montalbano also delivered courtesy copies of the presumptive claims to GAIA CEO, Mr. Rysavy and Mr. Weidner [SACC, ¶492; #135-2]. While Montalbano was seeking legal and Injunctive Relief via Mesa District Civil Court, Goode publicly lied that Weidner was fired from GAIA, when Weidner in-fact retired **(EXHIBIT 1 – Weidner Retirement)** and retirement was later learned by Montalbano to be mildly 'forced' due to Weidner being hospitalized and almost dying from cancer.

    b. Weidner has also spoken publicly on his REALITY CHECK YouTube channel of being concerned that Goode, his associates, or cult followers will stalk and harass him and his wife at his home, so much so he purchased surveillance equipment for protection.[1] Montalbano is reasonably concerned for Weidner and his family's safety (and other non-parties), as Goode has a pattern of stalking, threatening, and harassing former employers, work associates [See SACC ¶674 F., DARLING v. Goode; ¶311, ¶¶315, ¶320] and critics publicly exposing his public frauds. [SACC claim 2 (¶¶294-336) Fraud;  also see Weidner Counterclaims #210, claim 1]

---

[1] Believed to have been stated in REALITY CHECK YouTube video posted around May 16, 2019 titled "Reality Check Episode Three: Death Threat Groovie Spills the…" and appears to have since been removed.

Montalbano Reply to Weidner Response to Motion Lift Stay                                  Page **9** of **13**

Weidner is an integral part of this case. Regardless to if he is 'dismissed' as a Defendant from Goode and GES's claims or not he will remain a non-party to Montalbano's claims. [SACC, Claims 1-5 (RICO and Violation CCPA), claims 7-9 (Trade Secret and Copyright IP theft)] Weidner's testimony is very important to resolving the problems involving Goode and The Enterprise.  The possibility of losing Weidner as a non-party due to prolonged Stay of the case would further prejudice Montalbano's claims, especially since non-party deaths are becoming a matter at issue and leave question marks of if the deaths were actually natural or not.

Montalbano showed in the Motion, that non-parties dying is a serious problem prejudicing Plaintiff Montalbano's case and she reasonably considers Mr. Weidner an 'at risk' non-party (same as High (cancer) [#89, p2 at ¶5]) whose testimony needs to be acquired through discovery sooner rather than later, as Montalbano is reasonably concerned later may not arrive at the current rate things are going. Weidner's counsel failed to rebut with particularity how deaths of non-parties does not in fact prejudice Montalbano's claims and failed to show with specificity how non-party Weidner does not in-fact benefit from Montalbano's counterclaims entering discovery and the Court ordering Goode and The Enterprise's frauds stopped.  Thereby, the Fourth String Cheese incident factor is even more strongly in Montalbano's favor and is especially beneficial to non-party Weidner that the stay be lifted from Montalbano's claims as specified in the Motion.

5. The last argument made by Ms. Hoffmann is that the *Fifth String Cheese Incident factor* (the public) is in favor of the stay, but this bare legal recitation statement also remains factually unsupported with any past or current reasons. Ms. Hoffmann does nothing to addressing or overcome the specified reasons stated in Montalbano's motion showing what changed, to include defaulted third-party defendant David Wilcock [#262, pp5-6 at No. 13] running another massive public scam (LARP – Live Action Role Play) for alleged hover cars based on Montalbano's original Intellectual Property record delivered to Goode by email during 2017. [Id. pp9-11 Section III, C. No 1] Wilcock will likely continue to damage thousands and even hundreds of thousands of ignorant people in the general public for years with The Enterprise's hover car financial scheme, unless the Court immediately intervenes and Orders The Enterprise's frauds to stop (Injunctive Relief) and opens discovery for Montalbano's counterclaims. [#217, Section VII Prayer for Relief]

Weidner is also part of 'the public' with respect to Montalbano's counterclaims. Ms. Hoffmann failed to show in the Response how Weidner will not in-fact benefit as part of the public by Montalbano's counterclaims being moved into discovery and the Court issuing Injunctive Relief ordering The Enterprise's public frauds and harassment activities to stop. Therefore, the last string cheese factor remains in Montalbano's favor to lift the stay.

### III.     CONCLUSION

WHEREFORE, Mr. Weidner by and through his Counsel Ms. Hoffmann, failed to show in their Response [#268] to Montalbano's Motion to Lift Stay of Discovery [#262]: (1) that Weidner is a defendant to Montalbano's counterclaims who can be burdened by Montalbano's counterclaims being moved into discovery; (2) that his MTD Goode and GES's claims will have any impact on Montalbano's independent counterclaims [#217]; (3) that any pending MTD can dispose of Montalbano's case entirely to warrant a continued stay; (4) how non-parties dying does not in-fact prejudice Montalbano's claims; (5)  how The Enterprise continuing to (mis)use Montalbano's original IP for their public frauds while the case is stayed does not in-fact cause ongoing personal and professional damages to Montalbano; (6) how Weidner will not in-fact benefit as both a 'non-party' and member of 'the public' from the Enterprise's frauds being investigated and stopped through Injunctive Relief and Montalbano's counterclaims entering Discovery;  AND whereby Montalbano has shown in the Motion to Lift Stay of Discovery [#262] the five String Cheese Incident factors weigh in Montalbano's favor, and this Court should Grant Montalbano's Motion to Lift the Stay and any other such relief this Court deems fair to bring a speedy, just, and proper resolution to all matters at issue pursuant Due Process of Law. (Colorado Constitution, Article II, Sections 10 and 25; U.S. Constitution, Bill of Rights, Article V).

Respectfully Submitted and All Rights Reserved,

/s/ Alyssa Chrystie Montalbano

Alyssa Chrystie Montalbano, American Citizen
2536 Rimrock Ave
Suite 400-117
Grand Junction, CO 81505
E-mail: LegalZenACM@gmail.com
Third-Party Plaintiff, Counter-Claimant, Defendant

**Certificate of Compliance**

I certify the foregoing Reply complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1)

## CERTIFICATE OF SERVICE

I certify that on this 11th day of January 2022 a copy of the foregoing Reply was filed with the clerk of the court using the CM/ECF system and are lawfully served upon Plaintiff's Counsel and appeared Defendants through the Case Management/Electronic Case Filed (CM/ECF) court filing system. (FRCP Rule 5).

/s/ Alyssa Montalbano

Alyssa Montalbano, American Citizen