IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00742-DDD-KLM

JAMES COREY GOODE, and
GOODE ENTERPRISE SOLUTIONS, INC,

      Plaintiffs and Counter Defendants,

v.

GAIA, INC,
JAY WEIDNER,
BENJAMIN ZAVODNICK,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH,

      Defendants.

ALYSSA MONTALBANO,

      Defendant, Counter Claimant, and Third-Party Plaintiff,

v.

LIGHT WARRIOR LEGAL FUND, LLC,
DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION,
VALERIA YANAROS WILDE,
ELIZABETH LORIE,
BRIAN JAMES FLYNN,
WILLIAM CAMPBELL,
MATTHEW GROVE,
DIANA TERRY, and
CHRISTINA GOMEZ,

      Third-Party Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

- 1 -

This matter is before the Court on Third-Party Defendant Elizabeth Lorie's ("Lorie") **Motion to Dismiss** [#221][1]; on Third-Party Defendants Brian James Flynn ("Flynn"), William Campbell ("Campbell"), Matthew Grove ("Grove"), Diana Terry ("Terry"), and Christina Gomez's ("Gomez") **Motion to Dismiss Alyssa Chrystie Montalbano's Counterclaims Complaint [Doc. 204-1]** [#222] (the "State Defendants' Motion"); on Plaintiffs/Counter Defendants' **Second Renewed Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)** [#227]; and on Third-Party Defendants Light Warrior Legal Fund, LLC ("LWLF") and Valerie Yanaros Wilde's ("Yanaros"[2]) **Motion to Dismiss Under F.R.C.P. 12(b)(6) and 12(b)(1)** [#233].  Counter Claimant and Third-Party Plaintiff Alyssa Montalbano ("Montalbano"), who proceeds as a pro se litigant,[3] filed Responses [#225, #231, #247, #254] in opposition to the Motions [#221, #222, #227, #233], and the above-named parties filed their Replies [#241, #243, #253, #256] in support of their Motions [#221, #222, #227, #233].  Plaintiff filed a Surreply [#271], with the Court's permission.  *Minute Order* [#270].  The Motions [#221, #222, #227, #233] have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1.  *See* [#224,

---

[1]  "[#221]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2]  Although named as "Valerie Yanaros Wilde" in this lawsuit and sometimes referenced as such throughout the pleadings, Ms. Yanaros refers to herself as "Valerie Yanaros" throughout her own briefs, and the Court therefore refers to her as "Ms. Yanaros" as well throughout this Recommendation.

[3]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In addition, a pro se litigant must follow the same procedural rules that govern other litigants.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

#229, #235].   The Court has reviewed the Motions, the Responses, the Replies, the Surreply, the entire case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court respectfully **RECOMMENDS** that the State Defendants' Motion [#222] be **GRANTED** and that the other Motions [#221, #227, #233] be **GRANTED in part and DENIED in part**.

## I. Background[4]

Ms. Montalbano alleges that she "is a multi-award winning Author, Artist, and Poet that uses the pseudonym of Ari Stone," and that she is a dream researcher who has written about and documented dreams since 2004. *See Counterclaims* [#217] at 37.  Her "dream research and dream journal records (referred to as 'Dream Visions') are not religious or faith based"; rather, she asserts that "they are an empirical data collection of first hand observations coupled with theories based on the empirical evidence." *Id.*  Ms. Montalbano further states that her "dream journal records are created and fixed literary works and all hold common law copyrights and some federal copyrights," that she "is a Living Now Book Award winning author (2019) for some of her dream research, observations, and theories, contained in her Copyrighted book, 'Dreams the Missing Text, What Are They? Why Do We Have Them? And How What We Do in Them Determines Waking 3D Life Experience'." *Id.*  She asserts that her "unique designs, art, and fine craft products have been seen in many local art galleries on Main Street in Grand Junction,

---

[4]  For the purposes of resolving the Motions [#221, #222, #227, #233], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Ms. Montalbano's Amended Counterclaims Complaint [#217]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Colorado, along with her self-published dream books, tarot journals, and coloring books," and that her "art, fine art crafted products, and books are seen and sold online via the internet and delivered by both post mail and broadcast (internet)." *Id.* at 38. She further states that she "has a clean record" and that she "has never been in the military or knowingly a part of any CIA MKULTRA, MiLab, black operation, or otherwise related programs or experiments."[5] *Id.*

Mr. Goode "is a public speaker and public figure" who "broadcasted shows on television and the internet." *Id.* He was a "co-host of the Cosmic Disclosure show (June 2015-June 2018), [which was] broadcast to the public both nationally and internationally." *Id.* at 39. The scripts for the show were written by him along with his co-host David Wilcock" ("Wilcock"). *Id.* Ms. Montalbano alleges that Mr. Goode "solicits for donations based on his public claims, notably to include his alien experiences with 8 foot plus tall Blue Birds he calls 'Blue Avians' and that he is fighting the 'Dark Alliance.'"[6] *Id.*

Goode Enterprise Solutions Inc. ("GES") is a Colorado corporation owned by Mr. Goode and his wife Stacy Goode. *See* [#217] at 30. Mr. Goode sells various products

---

[5] "CIA" refers to the United States' Central Intelligence Agency. *See* [#217] at 190. Ms. Montalbano generally describes "MKULTRA" or "MiLab" as "black operation mind control programs . . . that invade dream states utilizing frequency broadcasts carried via the . . . Federal Communication Commission radio wave spectrums . . . ." *Id.* at 4. More specifically, she alleges that "CIA MKULTRA is a personality splitting program for mind control that uses drugs (notably LSD), abuse (including sexual), hypnosis, microchipping, and invasion of neurological and dream states (Subconscious Isolation) through the use of frequencies directed at the brain and body for total consciousness obliteration." *Id.* at 54. MiLab, which stands for "MiLitary Abduction", is allegedly "an illicit MKULTRA personality splitting program for mind control, with the added feature that the perpetrators ('military') cause the victim to think they are being abducted by aliens (for illicit experiments, cult rituals, microchipping, or otherwise) rather than being kidnapped by humans working for illicit factions of the 'government' or black operations." *Id.* at 54-55.

[6] According to Ms. Montalbano, the Dark Alliance "are people who threaten to murder [Mr. Goode and Mr. Wilcock]; and in general are horrifying criminals such as: murders [sic], rapists, pedophiles, Cabal, Satanists, and human traffickers (who perform sacrifices) through secret Luciferian Rituals and Cult practices." *See* [#217] at 53.

through GES, including videos and other merchandise.  *Id.* at 38.  Mr. Goode allegedly "regularly seeks free labor (volunteers) from the public to help with the production of his GES products . . . under the premise that the volunteer(s) will receive the 'good will of the people' as the medium of exchange."  *Id.* at 39.  Ms. Montalbano asserts that "[d]onations and monies received by The Enterprise [as defined below] from sales based on [Mr.] Goode and [Mr.] Wilcock's public claims and alien narratives are notably received via: GES . . . ."  *Id.* at 60.  Ms. Montalbano "donated money to Mr. Goode/GES for Mrs. Stacy Goode (his wife) to have dental surgery under the belief the Goode's [sic] were poor and could not afford regular dental care without financial help."  *Id.* at 64.

LWLF is a Colorado corporation owned by Mr. Goode.  *See* [#217] at 30, 42.  Ms. Montalbano asserts that LWLF was started by Mr. Goode "to receive public financial donations to fund his lawsuit(s) against [Ms.] Montalbano" and to fight attacks by a "Dark Alliance" or "cabal."  *Id.* at 42, 53.  LWLF also receives money "from sales based on [Mr.] Goode and [Mr.] Wilcock's public claims and alien narratives."  *Id.* at 60.

Ms. Yanaros of Yanaros Law, P.C., is a Texas-based attorney who, according to Ms. Montalbano, is not licensed to practice law in Colorado.  *Id.* at 30, 50, 90.  Mr. Goode hired Ms. Yanaros around June 2018, after which she "began to extort [Ms.] Montalbano by email, post mail, and phone, with threats of criminal lawsuits for alleged criminal stalking, a crime not committed by [Ms.] Montalbano."  *Id.* at 90.  Ms. Yanaros helped Mr. Goode with a number of legal filings against and by Ms. Montalbano: (1) around June 15, 2018, Mr. Goode and Ms. Yanaros filed a lawsuit in the Broomfield Combined Courts asserting a stalking claim, which "was rejected by the Court, as they failed to meet the requirements," *id.* at 91; (2) on June 25, 2018, Ms. Montalbano filed a lawsuit, 18CV50,

in Mesa District Court against Mr. Goode, in which Ms. Montalbano alleges Ms. Yanaros did not follow procedure to properly enter her appearance in the matter, *id.* at 91-92; (3) around July 17, 2018, Mr. Goode and Ms. Yanaros filed a second lawsuit against Ms. Montalbano in Broomfield Combined Courts, "alleging 'stalking' against [Ms.] Montalbano for the approximate 400 emails sent to [Mr.] Goode during 2017 containing [Ms.] Montalbano's copyrighted materials (IP)" and other documents; the case was dismissed in Ms. Montalbano's favor on August 6, 2020, *id.* at 93; (4) on August 13, 2018, Mr. Goode and Ms. Yanaros removed Ms. Montalbano's case in 18CV50 to the United States District Court for the District of Colorado, Civil Action No. 18-cv-02060-RM-GPG, using a "fake complaint" and without telling Ms. Montalbano about the removal; Mr. Goode and Ms. Yanaros used statements made by the Magistrate Judge "to further publicly defame [Ms.] Montalbano as someone with a mental disease in her trade and profession," *id.* at 93-94; (5) on March 11, 2020, Mr. Goode and Ms. Yanaros filed a third lawsuit in the Broomfield Combined Courts asserting another stalking claim, which was administratively closed on June 22, 2020, *id.* at 94; and (6) on March 17, 2020, Mr. Goode and Ms. Yanaros filed the present lawsuit, Civil Action No. 20-cv-00742-DDD-KLM, *id.* at 95.  Ms. Montalbano has "filed complaints against Ms. Yanaros . . . twice with the Texas State Bar, in efforts to get [Ms.] Yanaros and [Mr.] Goode to follow due process of law in case 18CV50 . . . ." *Id.* at 99.

Ms. Lorie resides in Florida and is licensed there to work as an attorney at LL LEGAL, PLLC.  *See* [#217] at 31, 50.  Ms. Montalbano asserts that Ms. Lorie is not licensed to practice law in the State of Colorado, and that she "never lawfully entered" her appearance in the Colorado state court case, 18CV50.  *Id.* at 50, 92.  In December 2019,

Mr. Goode "obtained legal assistance" from Ms. Lorie, which seems to have primarily been in the form of a cease-and-desist letter sent to Ms. Christine Ferrante ("Ferrante"), whom Ms. Montalbano apparently intended to call as a witness in 18CV50.  *Id.* at 113-14, 211.  Ms. Montalbano asserts that Ms. Lorie "harassed [Ms.] Montalbano's witness, Ms. Christine Ferrante (an individual publicly exposing [Mr.] Goode and [Mr.] Wilcock's public frauds with public records) on behalf of [Mr.] Goode and [Mr.] Wilcock.  While Ms. Lorie was extorting Ms. Ferrante by email, [Ms.] Lorie provided [Ms.] Ferrante with a fake law firm address for legal communication."  *Id.* at 50, 97.

Judge Flynn presided over Ms. Montalbano's Colorado state court case against Mr. Goode, 18CV50, and she disagrees with many of his rulings.  Judge Grove, Judge Terry, and Judge Gomez are Colorado appellate judges who allegedly wrongly affirmed Judge Flynn's rulings in 18CV50.  Mr. Campbell of the Colorado Commission on Judicial Discipline did not discipline or remove Judge Flynn despite the latter's allegedly faulty rulings.

Ms. Montalbano groups these Counter Defendants/Third-Party Defendants into two categories.  The "Enterprise" consists of Mr. Goode, GES, LWLF, Ms. Yanaros, Ms. Lorie, Judge Flynn, Mr. Wilcock, and The Wilcock Spiritual Healing and Empowerment Foundation.[7]  *See* [#217] at 101.  The "Public Servants" consist of Judge Flynn (again), Mr. Campbell, Judge Grove, Judge Terry, Judge Gomez, Ms. Yanaros (again), and Ms. Lorie (again).  *See id.* at 52.  In addition to the brief overview of each Defendant provided above, Ms. Montalbano provides a lengthy recitation of allegations consisting of 204

---

[7]   Ms. Montalbano's claims against Third-Party Defendants Wilcock and The Wilcock Spiritual Healing and Empowerment Foundation are not at issue in the instant Recommendation.

pages and 756 numbered paragraphs in her Amended Counterclaims Complaint [#217].

According to her own summary of her case:

> This counterclaim complaint is extensively long due to the severe problems of prejudice and/or disbelief about [Ms.] Montalbano's Trade Secret claims (seeing and documenting things in dream states prior [to] them occurring in waking states).  In addition to that problem, the number of people who have jumped onto the proverbial harassment-of-Montalbano-bandwagon in and out of multiple Courts has also significantly increased the length of allegations along with the severe and growing number of causes of action because the simple matters were never lawfully addressed by Brian James Flynn ('Judge') in case 18CV50, Mesa District Civil Court, since June 25, 2018 and he and other 'judges' have knowingly assisted [Mr.] Goode and [Ms.] Yanaros in their obstruction of justice and violation of [Ms.] Montalbano's civil rights.
>
> [Ms.] Montalbano has stated the claims very simply prior, i.e. Intellectual Property and Trade Secret Intellectual Property stolen via public figures' dream teaching frauds and donation schemes, that adversely impact the lives of millions of people including [Ms.] Montalbano; and [Ms.] Montalbano is stalked in dream states by [Mr.] Goode via his CIA MKULTRA and MiLab (mind control) programs and training, and [Ms.] Montalbano is also cyberstalked and defamed by [Mr.] Goode and his associates in waking states along with them employing repeat abuse of process and malicious prosecutions to extort and coerce [Ms.] Montalbano into dropping charges.  [Ms.] Montalbano (still) requires legal investigation to find out what Artificial Intelligence technologies and CIA/military programs are being used by [Mr.] Goode and [Mr.] Wilcock to neurologically and remotely stalk her and how many people and corporations are involved.  [Ms.] Montalbano needs Injunctive Relief to stop the ongoing defamation, harassment, malicious lawsuits, and extortion practices of [Mr.] Goode and [Ms.] Yanaros, and for her Intellectual Property to be legally declared hers and to order [Mr.] Goode and his associates to stop using it and/or selling it as their own.
>
> In addition to that, there are many others in the public who have spoken up about all the same problems as [Ms.] Montalbano and who are also victims of the same sleep and waking state stalking, harassment, and defamation, by [Mr.] Goode, [Mr.] Wilcock, and their associates and are also complaining about the ongoing deceptive trade practices by [Mr.] Goode, [Mr.] Wilcock, [Ms.] Yanaros, and [Ms.] Lorie, that have also caused them damages.  Lastly, the likelihood of human trafficking by [Mr.] Goode, [Mr.] Wilcock, and The Enterprise utilizing remote mind control technologies also needs to be legally investigated.

That is the simple summary of the problem.

However, due to the faulty (and literally programmed) belief systems of many people, the following will explain in fuller details some of the science that created the problem(s), show how it is possible via frequencies to knowingly invade dream states for the purpose of mind control via the CIA MKULTRA programs coupled with neuroscience, and will also explain why and how [Ms.] Montalbano's Trade Secret research is in fact science in her field of 'predictive dream research' and show that her claims are based on data and records (science) and as such are protectable by law.  [Ms.] Montalbano is in the same field of research as [Mr.] Goode, [Mr.] Wilcock, and the CIA, and whereby the 'CIA' has likely invested quadrillions of the American people's tax dollars into their black operation projects in effort to illicitly discover what [Ms.] Montalbano has researched, documented, and discovered organically.   The CIA would refer to [Ms.] Montalbano's research as "Subconscious Isolation."

Finally, it would be highly illogical to think the 'CIA' programs, having invested likely quadrillions of dollars into development, neuroscience research, and related A.I. technology production (including microscopic microchips called smart dust) would not in fact have obtained a degree of success and equally illogical to think their programs would not in fact operate and be readily observable in the very states of mind and consciousness they intentionally target and invade for remote neurological electric (frequency) driving of the brain for mind control; aka dreaming and lucid dreaming states; that occur in the Delta, Theta, and Alpha brain wave frequency states, that are also referred to as 'sleep-wake' states in multiple U.S. patents and the CIA's MKULTRA 'consciousness obliteration' research records.

The following gives factual and technical background of the CIA MKULTRA problem(s) along with the accompanying causes of actions against multiple individuals, public servants, and corporations participating in this public problem and performing ongoing harassment and obstruction of justice against [Ms.] Montalbano with her case and claims and that [Ms.] Montalbano has been seeking to legally address and correct the problems since April 2018 in accordance with due process of law and her inalienable Constitutional civil rights.

*See* [#217] at 34-36.  Additional allegations expanding on this summary are discussed as needed in the Analysis section below.

Ms. Montalbano asserts the following claims: (1) Claim One, RICO, 18 U.S.C. § 1961, against the Enterprise and the Public Servants, *see* [#217] at 101; (2) Claim Two,

fraudulent misrepresentation, against the Enterprise, *id.* at 105; (3) Claim Three, violation

of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6–1–101, against

the Enterprise, *id.* at 119; (4) Claim Four, "frauds and swindles (mail)," 18 U.S.C. § 1341,

against the Enterprise and the Public Servants, *id.* at 122; (5) Claim Five, "frauds by wire,

radio, or television," 18 U.S.C. § 1343, against the Enterprise, *id.* at 123; (6) Claim Six,

"enticement into slavery human trafficking," 18 U.S.C. § 1590, against the Enterprise and

the Public Servants, *id.* at 125; (7) Claim Seven, trade secret theft/misappropriation,

against the Enterprise and the Public Servants, *id.* at 136; (8) Claim Eight, economic

espionage, 18 U.S.C. § 1831, against the Enterprise, *id.* at 149; (9) Claim Nine, copyright

infringement, against the Enterprise, *id.* at 150; (10) Claim Ten, defamation, Colo. Rev.

Stat. § 13–80–103, *id.* at 170; (11) Claim Eleven, money laundering, 18 U.S.C. § 1956,

against the Enterprise and the Public Servants, *id.* at 179; (12) Claim Twelve, civil

conspiracy, against the Enterprise and the Public Servants, *id.* at 186; (13) Claim

Thirteen, "civil act for deprivation of rights," 42 U.S.C. § 1983, against the Public Servants,

*id.* at 192; (14) Claim Fourteen, abuse of process, 18 U.S.C. § 1589(a)(3), (c), against

Mr. Goode, GES, and the Public Servants, *id.* at 207; (15) Claim Fifteen, malicious

prosecution, against Mr. Goode and Ms. Yanaros, *id.* at 219; (16) Claim Sixteen,

extortion, against the Enterprise and the Public Servants, *id.* at 221; (17) Claim

Seventeen, intentional intrusion on privacy rights, against the Enterprise, *id.* at 223; (18)

Claim Eighteen, intentional infliction of emotional distress ("IIED"), Colo. Rev. Stat. § 7–

74–104(2), against the Enterprise and the Public Servants, *id.* at 225; (19) Claim

Nineteen, negligent infliction of emotional distress ("NIED"), against the Enterprise and

the Public Servants, *id.* at 229; and (20) Claim Twenty, unjust enrichment, Colo. Rev. Stat. § 7–74–104, against the Enterprise and the Public Servants, *id.* at 230.

Ms. Montalbano asks the Court for the following relief: (1) "[e]nter injunctive relief baring [sic] the defendants from any of the aforementioned conduct"; (2) "[d]eclare [Ms.] Montalbano's [i]ntellectual [p]roperty / [t]rade [s]ecret IP legally hers"; (3) [o]rder defendants [to] stop and desist all unlawful use of all of [Ms.] Montalbano's IP materials"; (4) "[f]ind that all defendants and corporations are liable for their grievances"; (5) "[o]rder all defendants pay actual and non-economic damages for their fraudulent activities performed against [Ms.] Montalbano"; (6) "[o]rder defendants pay for the additional damages [Ms.] Montalbano has incurred from their fraudulent misrepresentations regarding [Ms.] Montalbano and for damages incurred from [Ms.] Montalbano's initial reliance on them"; (7) "[g]rant [Ms.] Montalbano special damages, due to willful, reckless, wanton, egregious, unfair, unethical, deceptive and unscrupulous conduct by defendants"; (8) "[g]rant [Ms.] Montalbano attorney fees, cost[s] and interest, to include compensating [Ms.] Montalbano for acting as her own attorney since April 2018"; and (9) [g]rant [Ms.] Montalbano all monetary and other relief available at law and in equity." *Id.* at 231-32.

In the present Motions [#221, #222, #227, #233], Ms. Lorie, Judge Flynn, Mr. Campbell, Judge Grove, Judge Terry, Judge Gomez, Mr. Goode, GES, LWLF, and Ms. Yanaros seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) of all of Ms. Montalbano's claims asserted against them.

## II.  Standard of Review

### A.     Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id*. (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.  *Id.*  By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.* at 1003.  When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56.  *Id*.

**B.    Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations" (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that [the] plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that [the] plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk,*

*LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

### III.  Analysis

### A.      Motion [#222]

#### 1.      Judicial Immunity

Judge Flynn, Judge Grove, Judge Gomez, and Judge Terry are sued in their individual capacities.  *Am. Counterclaims* [#217] at 31-32.  In their Motion [#222], they argue that they are entitled to absolute immunity from Ms. Montalbano's claims.  *See* [#222] at 7-8.  As explained below, the Court finds that Ms. Montalbano's claims against these four judges are all barred by judicial immunity, given that all of her claims arise from the fact that these judges presided over various judicial proceedings with which she was associated.  *See, e.g.*, *DeLia v. U.S. Dep't of Justice*, No. 21-5047, 2021 WL 428758, at *3 (10th Cir. Sept. 20, 2021) (holding that a judge who presided over criminal proceedings from which the plaintiff's civil claims arose was entitled to judicial immunity).

"The doctrine of absolute judicial immunity shields judges from liability for their 'official adjudicative acts.'"  *Id.* (quoting *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978))).  Judicial immunity does not, however, protect judges from "actions taken outside the judicial capacity; and actions taken in the 'complete absence of all jurisdiction.'"  *DeLia*, 2021 WL 4258758, at *3 (quoting *Edge v. Payne*, 342 Fed. App'x 395, 399 (10th Cir. 2009) (quoting *Stein v.*

*Disciplinary Bd. of Supreme Court of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008))).  "In 'determining whether an act by a judge is a "judicial" one,' the Supreme Court has explained that courts look to whether the act 'is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'"  *DeLia*, 2021 WL 4258758, at *3 (quoting *Stump*, 435 U.S. at 362).

It is clear from a review of Ms. Montalbano's First Amended Counterclaims Complaint [#217] that all of her allegations against these four judges relate to their rulings and oversight of her prior civil case.  Judge Flynn presided over her lawsuit in case 18CV50 in Mesa District Court.  *See, e.g.*, [#217] ¶¶ 30, 224, 229-31, 233, 236, 238, 242, 248-49, 253, 255-61, 263-65, 272, 274, 276-77.  Judge Grove, Judge Gomez, and Judge Terry handled the appeal of that case after Ms. Montalbano lost at the trial court level.  *See, e.g.*, *id.* ¶¶ 32-34, 279, 372, 560, 579.  All of these actions constitute "official adjudicative acts" and "function[s] normally performed by a judge."  *DeLia*, 2021 WL 4258758, at *3 (quoting *Stump*, 435 U.S. at 356-57; *Edge*, 342 F. App'x at 399).  Ms. Montalbano does not include any allegation against Judge Flynn, Judge Grove, Judge Gomez, or Judge Terry which falls outside the scope of their official capacities overseeing the proceedings of Ms. Montalbano's civil lawsuit.  Thus, Judge Flynn, Judge Grove, Judge Gomez, and Judge Terry are all entitled to absolute judicial immunity.

Accordingly, the Court **recommends** that the Motion [#222] be **granted** to the extent that all claims asserted against Judge Flynn, Judge Grove, Judge Gomez, and Judge Terry be **dismissed with prejudice**.  *See Mehdipour v. Matthews*, 386 F. App'x 775, 778 (10th Cir. 2010) (affirming trial court's dismissal of claims with prejudice on the basis of judicial immunity).

## 2.     Standing

Plaintiff's claims against Mr. Campbell of the Colorado Commission on Judicial Discipline are all premised on his alleged failure to take appropriate disciplinary action against Judge Flynn.  *See, e.g.*, *Am. Counterclaims* [#217] ¶¶ 31, 271, 372, 628, 658-59. Defendant Campbell argues that Plaintiff lacks standing to assert her claims against him. *Motion* [#222] at 8-9.   To satisfy Article III of the United States' Constitution's standing requirement, a plaintiff must allege that (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citing *Friends of the Earth v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 180-181 (2000)).

The situation here is materially identical to the one in *Rojas v. Meinster*, No. 19-cv-01896-LTB-GPG, 2019 WL 8331477, at *5 (D. Colo. Sept. 10, 2019), where a plaintiff asserted claims against Mr. Campbell which were all premised on his alleged failure to take appropriate disciplinary action against a judge.  The Court there noted that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution."   *Rojas*, 2019 WL 8331477, at *5 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.") (citing *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993) (concluding that the plaintiff lacked standing to "insert himself substantively into a license-based discipline system")).  Thus, the plaintiff's claims in *Rojas* against Mr. Campbell were dismissed.

Here, the Court similarly finds that Ms. Montalbano lacks standing to assert her claims against Mr. Campbell because those claims are solely premised on his alleged failure to take appropriate disciplinary action against a judge. Accordingly, the Court **recommends** that the Motion [#222] be **granted** to the extent that all claims asserted against Mr. Campbell be **dismissed without prejudice**. *See Rojas*, 2019 WL 8331477 (dismissing claims against Mr. Campbell without prejudice based on lack of standing) (citing *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (stating that "standing is a jurisdictional mandate," and holding that dismissal for lack of standing must be without prejudice)).

**B.     Motions [#221, #227, #233]**

**1.     *Rooker–Feldman* Doctrine**

Mr. Goode and GES assert that certain of Ms. Montalbano's counterclaims are barred by the *Rooker–Feldman* doctrine. *Motion* [#227] at 2. "Under the *Rooker–Feldman* doctrine, lower federal courts lack subject-matter jurisdiction to consider appeals of state-court judgments." *Deloge v. Davis*, No. 21-8025, 2021 WL 6143719, at *2 (10th Cir. Dec. 30, 2021) (citing *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (per curiam)). "The doctrine applies when a federal plaintiff pursues a claim that an adverse state-court judgment violated [her] federal rights and seeks what in substance is appellate review of the state judgment." *Deloge*, 2021 WL 6143719, at *2 (citing *Kline*, 861 F.3d at 1180). In other words, "*Rooker–Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (citations omitted).

- 17 -

Mr. Goode and GES state: ". . . [Ms.] Montalbano seeks this Court's review of Judge Flynn's rulings in the Mesa Case.  This case dragged on for almost two years and has been litigated in state and federal court.  The claims she seeks to revisit should are [sic] barred and should be dismissed." *Motion* [#227] at 8.  However, Mr. Goode and GES do not state which specific claims here they believe are barred by *Rooker–Feldman*.  *See id.* at 7-8.  Even were the Court to guess which claims here *may* be barred based on Judge Flynn's Order [#227-1] dismissing Ms. Montalbano's state court case, there is simply not enough information provided by Mr. Goode and GES in the present Motion [#227] or by Judge Flynn in his Order [#227-1] for the Court to determine with any degree of certainty that the basis for those claims, specifically trade secret misappropriation and defamation, are the same in both cases.  By way of example only, it is impossible to tell from the record before the Court whether Ms. Montalbano is suing Mr. Goode for defamation based on the same or different purportedly defamatory statements, or whether the same purported trade secrets are the subject of both cases.

Accordingly, the Court **recommends** that the Motion [#227] be **denied without prejudice** to the extent Mr. Goode and GES seek dismissal of any claims on the basis of the *Rooker–Feldman* doctrine.

### 2.    Criminal Statutes

Several of the claims against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie are criminal in nature, and therefore Ms. Montalbano lacks standing to assert them. These claims are as follows: (1) Claim Four, "frauds and swindles (mail)," i.e., criminal mail fraud under 18 U.S.C. § 1341, *see* [#217] at 122; (2) Claim Five, "frauds by wire, radio, or television," i.e., criminal wire fraud under 18 U.S.C. § 1343, *id.* at 123; (3) Claim

Eight, criminal economic espionage under 18 U.S.C. § 1831, *id.* at 149; (4) Claim Eleven, criminal money laundering under 18 U.S.C. § 1956, *id.* at 179; and (5) Claim Sixteen, criminal extortion under 18 U.S.C. §§ 1951 and 1952(a)(3), (b), *id.* at 221.[8]

A private citizen "lacks standing to assert that a party has violated criminal laws, or to seek criminal prosecution, in either state or federal court." *Rojas*, 2019 WL 8331477, at *2 (citing *Linda R.S.*, 410 U.S. at 619 ("A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (private citizens cannot compel enforcement of criminal law); *Newcomb v. Ingle*, 827 F.2d 675, 676 n.1 (10th Cir. 1987) (no authorized private cause of action); *Winslow v. Romer*, 759 F. Supp. 670, 673 (D. Colo. 1991) ("Private citizens generally have no standing to institute federal criminal proceedings.")). Thus, Ms. Montalbano cannot obtain relief for alleged violations of criminal statutes. *See Rojas*, 2019 WL 8331477, at *2 (citing *Shaw v. Neece*, 727 F.2d 947, 949 (10th Cir. 1984)); *see, e.g.*, *Farmer v. Law Office Weiner & Weiner, LLC*, 2020 WL 6530882, at *3 (S.D.N.Y. Apr. 6, 2020) (stating that fraud claims under 18 U.S.C. §§ 1341 and 1343 "[are] not actionable as a private cause of action"); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) ("18 U.S.C. § 1956 [regarding money laundering] does not give rise to a private right of action."); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999) ("[N]either the statutory language of 18 U.S.C. § 1951 nor its

---

[8] In his Motion [#227], Mr. Goode also mentions criminal harassment under Colo. Rev. Stat. § 18–9–111, but this cause of action appears to have been removed from the current set of amended counterclaims. *See* [#120] at 190-200. In addition, although Mr. Goode mentions criminal defamation, the statute cited by Ms. Montalbano here is Colo. Rev. Stat. § 13–80–103, which concerns the statute of limitations for certain civil actions, and it does not appear from her Amended Counterclaims that she intends to bring a claim for *criminal* defamation. *See* [#217] at 170.

legislative history reflect an intent by Congress to create a private right of action."); *Reilly v. Levin*, No. 1:15-cv-00429-EJL-CWD, 2015 WL 13236640, at *9 (D. Idaho Dec. 18, 2015) ("Courts considering civil actions based upon 18 U.S.C. § 1952 have resoundingly concluded that it is a criminal statute that grants no explicit private right of action." (collecting cases)).

Ms. Montalbano's Claim Eight, criminal economic espionage under 18 U.S.C. § 1831, requires additional discussion.  Prior to 2016, there was no private right of action under 18 U.S.C. § 1831 regarding economic espionage or under 18 U.S.C. § 1832 regarding theft of trade secrets (which Ms. Montalbano asserts under Claim Seven).  In 2016, the Defend Trade Secrets Act ("DTSA") was signed into law, creating a private right of action under certain circumstances: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  This language mirrors the language of 18 U.S.C. § 1832 regarding theft of trade secrets: "Whoever, with intent to convert a trade secret, that *is related to a product or service used in or intended for use in interstate or foreign commerce*, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information . . . ." (emphasis added).  The language of 18 U.S.C. § 1831 regarding economic espionage is entirely different: "Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly—(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by

fraud, artifice, or deception obtains a trade secret . . . ."  The Court has found no legal authority holding that the private right of action created by 18 U.S.C. § 1836(b)(1) extends to 18 U.S.C. § 1831 regarding economic espionage.  Indeed, the plain language of 18 U.S.C. § 1836(b)(1) parallels only 18 U.S.C. § 1832 regarding theft of trade secrets.  A number of courts have held that the private right of action extends to 18 U.S.C. § 1832. *See, e.g.*, *Eberline Oilfield Serv., Inc. v. Eberline*, No. 1:18-CV-00245, 2020 WL 6233330, at *6 (D.N.M. Mar. 6, 2020) ("While § 1832, a criminal statute, does not itself provide a private civil cause of action, § 1836(b)(3) does provide one.").  Here, the Court finds that there is no private right of action under 18 U.S.C. § 1831 regarding criminal economic espionage, and therefore Ms. Montalbano lacks standing to assert Claim Eight.

Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claims Four, Five, Eight, Eleven, and Sixteen to the extent asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie be **dismissed without prejudice**.  *See Brereton*, 434 F.3d at 1216.

### 3.    Claim One: RICO

This claim is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at 101.  These parties generally argue that Ms. Montalbano merely recites the elements of a civil RICO claim without offering discernible allegations in support.  *See, e.g.*, *Motion* [#221] at 5; *Reply* [#243] at 3-4.  For this claim to survive a motion to dismiss, Ms. Montalbano must offer "factual content" in support of her RICO claim, not "labels and conclusions," "naked assertions," or "a formulaic recitation" of the elements of a RICO claim.  *See Iqbal*, 556 U.S. at 678.  Here, Ms. Montalbano's allegations have not met that standard, as explained below.

The elements  of a civil RICO claim are (1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity.  *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).  The term "enterprise" is a term defined by statute and "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A RICO enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).

A plaintiff must also allege that the "enterprise" exists separate and apart from the pattern of racketeering.  *United States v. Smith*, 413 F.3d 1253, 1267 (10th Cir. 2005) (quotation omitted).  "'Pattern of racketeering activity' is a defined term and requires at least two acts of 'racketeering activity.'"  *Salinas v. United States*, 522 U.S. 52, 62 (1997).  "Racketeering activity" is defined in 18 U.S.C. § 1961(1) as "any act which is indictable" under any of the crimes listed in the statute, which include "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance."  18 U.S.C. § 1961(1).  These underlying acts are "predicate acts" and form the basis for RICO liability.  *Tal*, 453 F.3d at 1261.  A defendant need not be convicted of the predicate acts to constitute a RICO violation.  *Id.* at 1262.

Ms. Montalbano does allege any specific actions taken by either Ms. Lorie or LWLF in connection with this claim, and GES is only mentioned where Ms. Montalbano seeks attorney/legal fees from the entity in connection with this claim.  *See* [#217] at 104.  The only specific mention of Ms. Yanaros is the following allegation: "[Mr.] Goode and [Ms.]

Yanaros abused the legal system, June 2018 to current, to repeatedly threaten and extort Montalbano to be silent and drop charges."  *See* [#217] at 103.

Here, among other issues, the Court finds that Ms. Montalbano has failed to sufficiently plead a pattern of racketeering activity by Mr. Goode, GES, Ms. Yanaros, LWLF, or Ms. Lorie.  The actions generally alleged by Ms. Montalbano in connection with this claim include (1) being defrauded "of vast amounts of Intellectual Property and rare Trade Secret dream research records"; (2) "a pattern of soliciting the general public for involuntary servitude via remote neural mind control . . . broadcasts"; (3) "stealing and/or using legitimate researchers' work in the same or similar trades and professions . . . and then destroying the real researchers' public reputations."  *See* [#217] at 102-03.  None of these actions, even assuming their criminal nature, appear to fall within the types of crimes listed under the statute.  18 U.S.C. § 1961(1).

Ms. Montalbano does repeatedly mention the word "extortion" here, which, although not explicitly defined by the federal statute in this instance, is defined by Black's Law Dictionary as "[t]he practice or an instance of obtaining something or compelling some action by illegal means, as by force or coercion."  *Extortion*, Black's Law Dictionary (11th ed. 2019).  Under Colorado law, criminal extortion requires a showing that the defendant, "without legal authority, threatened to cause economic injury to [the plaintiff], with the intent to induce [the plaintiff], against [the plaintiff's] will, to do an act."  *Zueger v. Goss*, 343 P.3d 1028, 1037-38 (Colo. App. 2014).  The Court is aware of no legal authority holding that the acts alleged here constitute extortion.  For example, Ms. Montalbano seems to imply that a cease-and-desist letter sent by Ms. Lorie, as well as her subsequent follow-up e-mails, can constitute extortion for purposes of a civil RICO claim.  Ms.

Montalbano seems to similarly imply that Ms. Yanaros' legal representation of Mr. Goode in his various lawsuits with Ms. Montalbano constitutes extortion.  These types of actions simply do not appear to be the types of actions contemplated under the statute, whether extortion or any other type of racketeering activity.  Ms. Montalbano has also not adequately alleged how the collection of funds from the public by Mr. Goode, GES, or LWLF constitutes extortion or other racketeering activity for purposes of a RICO claim.

Ms. Montalbano is attempting to challenge the actions of a wide array of persons and entities who have allegedly selected Ms. Montalbano as the target of their criminal enterprise.  Beyond Ms. Montalbano's conclusory statements, however, her Amended Counterclaims [#217] are entirely unclear with respect to how the actions of these varied persons and entities make up any kind of enterprise.  Nor has Ms. Montalbano provided sufficient factual allegations that these parties "function as a continuing unit".  *See Turkette*, 452 U.S. at 583.  The Court is not required to piece together allegations in a complaint to establish a valid claim, even for a pro se litigant.  *See Whitney*, 113 F.3d at 1173-74.

For the foregoing reasons, the Court finds that Ms. Montalbano's RICO claims are vague, conclusory, and fail to allege any particular acts that indicate that Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie were engaged in racketeering as an enterprise.[9]

---

[9]  To the extent Ms. Montalbano *may* also be asserting a RICO conspiracy claim under 18 U.S.C. § 1962(d), this claim likewise fails.  "A claim of conspiracy requires plaintiff [to] demonstrate direct or circumstantial evidence of a meeting of the minds or agreement of the defendants. Conspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds.  However, conclusory allegations that defendants acted in concert or conspired without specific factual allegations to support such assertions are insufficient." *Johnson v. Artemis*, No. 12-cv-01359-WJM-KLM, 2013 WL 3771311, at *4 (D. Colo. July 18, 2013) (quoting *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1141 (D. Colo. 2013)).  Any conspiracy allegations here are based on no more than supposition or speculation.  *See Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009).

Furthermore, particularly because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.

Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim One be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie. *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### 4.    Claim Two: Fraudulent Misrepresentation

This claim is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie. *See* [#217] at 105.

A party asserting a claim based on fraudulent misrepresentation in Colorado must allege five elements: "(1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the plaintiff's reliance resulted in damage to the plaintiff." *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). The Court finds that Ms. Montalbano has failed to adequately plead her fraudulent misrepresentation claim because her allegations fail to include specific facts so as to put Mr. Goode, GES, Ms. Yanaros, LWLF, or Ms. Lorie on notice of the elements of her claim.

In connection with Claim Two, Ms. Montalbano states in part:

[Mr.] Goode and The Enterprise knew their public statements about Montalbano being a 'stalker' were false when [Mr.] Goode and [Ms.]

> Yanaros repeatedly lost their Broomfield Combined Court stalking cases even with fabricated evidence and perjury on 3 separate occasions. . . . [Ms.] Montalbano learned that [Mr.] Goode, [Mr.] Wilcock, [Ms. Yanaros] Wilde, and [Ms.] Lorie regularly extort legitimate researchers, like [Ms.] Montalbano, in the same or similar professions as [Mr.] Goode and [Mr.] Wilcock, or those publicly exposing their racketeering activities, when others publicly showed (via the internet) that they also received threats or legal extortion letters from Ms. Yanaros and/or Ms. Lorie ordering them to cease and desist exposing [Mr.] Goode and [Mr.] Wilcock's deceptive trade practices or else lawsuits would be opened against them . . . . [Mr.] Goode, [Mr.] Wilcock, [Ms.] Yanaros, and [Ms.] Lorie, participate in legal extortion (color of official right) to gain [Mr.] Goode and [Mr.] Wilcock public fame, notoriety, new followers, and to promote their knowingly fraudulent "Dark Alliance" and "stalker" misrepresentations to obtain illicit donations (money laundering) from the public. [Mr.] Goode started the for-profit, Light Warrior Legal Fund LLC, to launder money people donate under the false pretext of donating to fight the "dark alliance". [Mr.] Goode knowingly fraudulently states people like [Ms.] Montalbano are "Dark Forces" and "Dark Alliance" in order to garner illicit donations from potentially hundreds and even thousands of people in the general public to pay for [Mr.] Goode, [Mr.] Wilcock, [Ms.] Yanaros, and [Ms.] Lorie's ongoing Civil Rights Violations and extortion of [Ms.] Montalbano, witnesses, and other valid researchers.

See [#217] at 108, 113-14, 117.

In effect, Ms. Montalbano's pleadings are not plausible on their face because she fails to "plead[ ] factual content that allows the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Assuming that statements regarding whether Ms. Montalbano is a "stalker" or part of a "dark alliance" could be the type of fraudulent statements protected by this type of claim, the Court finds that she has failed to adequately allege the third element, i.e., that the person(s) to whom the representation(s) was made was ignorant of the falsity. *See Bristol Bay Prods., LLC*, 312 P.3d at 1160. It is not clear from Ms. Montalbano's allegations that any person to whom these statements were made believed the statements.

In addition, Ms. Montalbano's claim also fails on the fifth element, i.e., that "the plaintiff's reliance resulted in damage to the plaintiff." *See Bristol Bay Prods., LLC*, 312

P.3d at 1160.   Here, there is no indication that Ms. Montalbano herself relied on statements made by Mr. Goode or any other Defendant.   As Mr. Goode states, "[t]o say that [Ms.] Montalbano relied on a statement that she was a stalker or—if such statement existed—was part of a 'Dark Alliance' would be nonsensical because she would know herself whether this is true.   It follows that any reliance on these statements by [Ms.] Montalbano would be unjustified."   *Motion* [#227] at 11.

Even if the fraudulent misrepresentation claims could be considered facially plausible, the Court finds that Ms. Montalbano fails to meet the heightened pleading standard required for fraud claims, especially as to GES, Ms. Yanaros, LWLF, and Ms. Lorie.   All claims asserted by Ms. Montalbano related to alleged false representations must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).   *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985).   Broadly speaking, "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based."   *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). The rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   The rule does not require the pleading to contain "detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind.   It only requires identification of the circumstances constituting fraud."   *Trussell v. Underwriter, Ltd.*, 228 F. Supp. 757, 774-75 (D. Colo. 1964).   Thus, in order to state a claim with sufficient particularity under this heightened standard, the complaint must "set forth the time, place and contents of the false representation[.]"   *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991).   In other words, "[a]t a minimum, Rule 9(b) requires that a

plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 232 F.3d 902, No. 99-3105, 2000 WL 1595976, at *3 (10th Cir. Oct. 26, 2000) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998)).  In this case, Ms. Montalbano fails to plead many parts of this claim with the requisite specificity, including, by way of example only, when Ms. Lorie used the objectionable representations or what, if anything, GES did, given that no allegations here specifically mention the entity.

In conclusion, the Court finds that Ms. Montalbano's claim for fraudulent misrepresentation fails under both Rule 12(b)(6) and Rule 9(b).  Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues. Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Two for fraudulent misrepresentation be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

## 5.    Claim Three: CCPA

Ms. Montalbano asserts that Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie violated the CCPA, Colo. Rev. Stat. § 6-1-101.  *See* [#217] at 119.  The CCPA regulates commercial activities and practices which, "because of their nature, may prove injurious, offensive, or dangerous to the public."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003).  Under the CCPA, a plaintiff must sufficiently allege five elements to state a viable cause of action: "(1) that the defendant[s] engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the

course of defendant[s'] business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant[s'] goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Id.* at 146-47.

Regarding an unfair or deceptive trade practice, a plaintiff must allege that the defendants "knowingly [made] a false representation." *Rhino Linings*, 62 P.3d at 147 (quoting Colo. Rev. Stat. § 6–1–105(1)(e)). A false representation "must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers." *Id.* Therefore, regarding a deceptive trade practice, a plaintiff must allege "that the false representation had the capacity or tendency to deceive, even if it did not." *Id.* at 148.

Additionally, a plaintiff must meet a heightened pleading standard pursuant to Fed. R. Civ. P. 9(b) to sufficiently allege a deceptive or unfair trade practice. *HealthONE of Denver, Inc., v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011). As discussed above, Rule 9(b) requires a complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch*, 203 F.3d at 1236.

Here, Ms. Montalbano provides no allegations directly in connection with this claim with respect to GES, Ms. Yanaros, LWLF, or Ms. Lorie. *See* [#217] at 119-22. There is no indication that any of the elements of this claim are met, especially as Ms. Montalbano has not adequately alleged commercial activities and practices which may prove injurious, offensive, or dangerous *to the public* as opposed to her personally. *See Rhino Linings USA, Inc.*, 62 P.3d at 146-47. Even if some of Ms. Montalbano's general allegations could

be liberally construed as meeting any of these elements, the claim would still fail for failure to meet the heightened pleading standard of Fed. R. Civ. P. 9(b).

In conclusion, the Court finds that Ms. Montalbano's claim under the CCPA fails under both Rule 12(b)(6) and Rule 9(b).  Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Three under the CCPA be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 6.      Claim Six: Human Trafficking

Claim Six, "enticement into slavery human trafficking," i.e., human trafficking under 18 U.S.C. § 1590, is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at 125.  Pursuant to 18 U.S.C. § 1590, it is unlawful to "knowingly recruit[ ], harbor[ ], transport[ ], provide[ ], or obtain[ ] by any means, any person for labor or services" in violation of the offenses contained in Chapter 77 of Title 18.  The trafficking into servitude provision states that "[w]hoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a)," which include fines, imprisonment, or both.  18 U.S.C. §§ 1584(b), 1590(b).  Section 1595 provides for a private right of action for a victim of "any violation under Chapter 77 of Title 18, including violations of Sections 1584 and 1590." *See, e.g.*, *Hernandez v. Attisha*, No. 09CV-2257-IEGWMC, 2010 WL 816160, at *2 (S.D. Cal. Mar. 5, 2010).

In connection with this claim, Ms. Montalbano states in part:

> Upon information and belief, [Mr.] Goode, [Mr.] Wilcock, The Enterprise, and John and Jane Does, use [Mr.] Goode's fraudulent 'Blue Avian' and 'alien' narratives to entice children, young adults and mature adults all over the world, into being MiLab (MiLitary Abduction) kidnapped and placed into involuntary servitude (volunteers) and/or human trafficked via remote neural interfacing. . . .   Upon information and belief the manipulation into involuntary servitude predominantly involves remotely neural scanning the Targeted Individual's (TI) brain to non-consensually obtaining their digital brain signature, medically termed 'EEG Heterodyning Cloning'.  Once the EEG clones are obtained (related to CIA MKULTRA A.I. S.A.TA.N. technology and DOD Sentient World Simulation), it is believed they are used to remote neural interface with [Mr.] Goode and [Mr.] Wilcock's alien cult followers to mind control them via dream states.  These remote neural interfaces are observable by the Targeted Individual/victim (such as [Ms.] Montalbano) as dream state (neural) interactions and/or felt as physical sensations of the body during waking states to include euphoria, sexual, depression, and anxiety.  [Mr.] Goode and [Mr.] Wilcock fraudulently tell their cult followers these illicit neural interfacing interactions are 'spiritual experiences' with their 'loving aliens'. . . .   It is believed the main form of human trafficking The Enterprise is currently involved in is done via using illicitly obtained EEG Heterodyning Clones (CIA S.A.T.A.N. [#121-17]) and that they are sold via black markets and/or illicitly used by themselves for 'dream' (neural) state experiments, illicit research, involuntary servitude (mind control), sexual encounters, or assaults with [Mr.] Goode and [Mr. Wilcock's followers, such as having been directly experienced by [Ms.] Montalbano.

See [#217] at 125, 128, 130.

Ms. Montalbano's allegations here regarding the kidnapping and involuntary servitude of children and adults are, at best, speculative.  In addition, even assuming that dream states could somehow be used as a means of human trafficking, such actions would not constitute recruiting, harboring, transporting, providing, or obtaining a *person* for labor or services.  In other words, the Court is aware of no legal authority holding that a "person" under the statute is equivalent to the person's "dream state."

Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further

- 31 -

amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Six under 18 U.S.C. § 1590 be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 7.    Claim Seven: Misappropriation of Trade Secrets

Claim Seven is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.[10]  *See* [#217] at 136.  Ms. Montalbano frames this claim in three ways: (1) "theft of trade secrets" under 18 U.S.C. § 1832, (2) the federal Defend Trade Secrets Act of 2016 ("DTSA"), and (3) the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-74-101 et seq.  *Id.* at 136.  The DTSA consists of 18 U.S.C. §§ 1836-1839, the first section of which created a private cause of action for the theft of trade secrets under 18 U.S.C. § 1832, *see* 18 U.S.C. § 1836(b)(1), and the last section of which provided definitions of various terms including "trade secret" and "misappropriation," *see* 18 U.S.C. § 1839(3), (5).  Thus, although the DTSA is utilized to interpret 18 U.S.C. § 1832 regarding theft of trade secrets, the DTSA is not itself a separate cause of action from 18 U.S.C. §

---

[10]   Mr. Goode and GES argue that Ms. Montalbano's Claim Seven for misappropriation of trade secrets and Claim Ten for defamation are barred by the doctrine of collateral estoppel, also known as issue preclusion, based on Judge Flynn's decisions in 18CV50.  *Motion* [#227] at 6-7 (citing *Ex. A* [#227-1]).  Because they rely on a Colorado state court decision, Colorado issue preclusion law governs.  *See Everhart v. N.M. Children Youth & Family Servs.*, No. 20-2078, 2022 WL 110835, at *4 (10th Cir. Jan. 12, 2022).  Under Colorado law, issue preclusion applies if: "(1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding."  *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001).  Here, based on the information provided, the Court cannot determine that the issues sought to be precluded regarding misappropriation of trade secrets and defamation are identical to the issues actually determined by Judge Flynn.  Although the issues *could* be identical, Mr. Goode and GES have not provided enough detail for the Court to make such a finding.  Accordingly, the Court proceeds to the merits of these two claims.

1832, as Ms. Montalbano appears to imply here.  Thus, the Court examines those parts of this claim together.

To state a claim under the DTSA, a plaintiff must adequately allege: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means."  *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1175 (D. Colo. 2019); *see* 18 U.S.C. §§ 1836(b)(1), 1839.  The term "trade secret" is defined "broadly to include 'all forms and types of financial, business, scientific, technical, economic, or engineering information' so long as 'the owner thereof has taken reasonable measures to keep such information secret' and 'the information derives independent economic value, actual or potential, from not being generally known to,' or ascertainable by, another person."  *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (quoting 18 U.S.C. § 1839(3)).   "To plausibly allege ownership of a trade secret, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."  *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 17-CV-00808-DAD-EPG, 2018 WL 2463869, at *3 (E.D. Cal. June 1, 2018).   "[T]he complaint must do more than describe the subject matter of the trade secrets in a vague and conclusory manner."  *Id.*; *see also Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017) (stating

that although plaintiffs are not required to identity trade secrets "with any particular degree of specificity, . . . a vague and indefinite piece of information cannot be protected as a trade secret" (quotation omitted)).

Similar to the DTSA, to state a claim under the CUTSA, a plaintiff must adequately allege: "[1] that he or she possessed a valid trade secret, [2] that the trade secret was disclosed or used without consent, and [3] that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). "To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Colo. Rev. Stat. § 7–74–102(4). Thus, "the alleged secret must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy," but "[e]xtreme and unduly expensive procedures need not be taken." *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo. App. 1990). "Reasonable efforts have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on a 'need to know' basis, and controlling plant access." *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 521 (Colo. App. 2011).

LWLF is not mentioned specifically in connection with this claim. Regarding the other Defendants, Ms. Montalbano asserts that a "contract" was purportedly formed between Mr. Goode, GES, Mr. Wilcock, and Ms. Montalbano "when [Ms.] Montalbano donated her (Trade Secret) dream journal records and research to [Mr.] Goode and [Mr.] Wilcock under false pretenses," and "that the goodwill of the public would be received as the mutual exchange of consideration." *See* [#217] at 143. Ms. Montalbano asserts that

- 34 -

"[Mr.] Goode and [Mr.] Wilcock further breached the contract when they extorted [Ms.] Montalbano, via Texas based attorney Valerie Yanaros, and witnesses via Florida based attorney Elizabeth Lorie." *Id.* at 144.  Ms. Montalbano seeks injunctive relief in that: "The emailed records in [Mr.] Goode, GES, and GAIA email boxes, are to also be ordered to not be shared, emailed, or otherwise electronically copied, stored, or delivered by [Mr.] Goode, [Mr.] Wilcock, or any other associate(s) within or without The Enterprise, and the records are to be preserved throughout the course of litigation."[11]  *Id.* at 148.

Here, even assuming that the content of Ms. Montalbano's dream journals would otherwise qualify as "trade secrets," Ms. Montalbano has provided no allegations that she took reasonable measures to keep that content secret.  She alleges that she voluntarily gave the information to Mr. Goode (albeit purportedly under fraudulent circumstances), but she does not say that there were any conditions attached to providing the information, such as a requirement that the contents remain secret.  In fact, she alleges that she was expecting "the goodwill of the public" in exchange for providing the information, necessarily implying that the public would have some degree of access to her materials. *See* [#217] at 143.  Thus, the Court cannot find that the content of Ms. Montalbano's dream journals were trade "secrets" for purposes of the DTSA or CUTSA.  *See, e.g.*, *E. & J. Gallo Winery*, 2018 WL 2463869, at *3; *Colo. Supply Co.*, 797 P.2d at 1306.

---

[11]    GAIA, Inc. is a defendant to Mr. Goode and GES's lawsuit here but not named as a defendant by Ms. Montalbano with respect to her claims.  According to Ms. Montalbano, GAIA is a media company which "broadcasts many shows along the lines of metaphysical topics, fringe science, conspiracy theories, historical research, and holistic teachings," including "Cosmic Disclosure episodes containing [Mr.] Goode and [Mr.] Wilcock" which were broadcast "to hundreds of thousands and even potentially millions of people around the world, 2015—current." *See* [#217] at 51.

In conclusion, the Court finds that Ms. Montalbano's DTSA and CUTSA claims asserted under Claim Seven both fail under both Rule 12(b)(6).  Furthermore, particularly because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Seven be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 8.    Claim Nine: Copyright Infringement

Claim Nine, federal and common law copyright infringement, is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at 150.  In Colorado, "a cause of action for copyright infringement is only cognizable in federal court pursuant to 28 U.S.C. § 1338," and therefore Ms. Montalbano fails to state a claim for common law copyright infringement.  *Mountain States Props., Inc. v. Robinson*, 771 P.2d 5, 7 (Colo. App. 1988).  Thus, the Court proceeds to examine the merits of Ms. Montalbano's federal copyright infringement claim only.

For this claim to survive, Ms. Montalbano must adequately allege (1) ownership of a valid copyright and (2) "copying of constituent elements of the work that are original." *TransWestern Pub. Co. LP v. Multimedia Mktg. Assocs., Inc.*, 133 F.3d 773, 775 (10th Cir.1998) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The second element means that Ms. Montalbano must allege that that each Defendant unlawfully appropriated protected portions of the copyrighted work.  *Gates Rubber Co. v. Bando Chem. Indus. Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993).  The Copyright Act provides

that "anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) . . . is an infringer of the copyright."  17 U.S.C. § 501(a).

Although asserted against Ms. Yanaros, LWLF, and Ms. Lorie, none of these parties is specifically mentioned in the allegations relating to this claim.  Regarding Mr. Goode and GES, Ms. Montalbano alleges in part that "[Mr.] Goode, GES, or any proper party on their behalf, failed to respond or rebut the presumptions in the PLAC mailings [as described below] and thereby [Mr.] Goode and GES legally agreed that they, [Mr.] Wilcock, and their associates have in fact infringed on Montalbano's IP as claimed."  *See* [#217] at 166.  Ms. Montalbano seeks injunctive relief here, stating in part: "The literary records in [Mr.] Goode and GES's email box (SphereBeingAlliance@gmail.com) and other email boxes of The Enterprise are to also be ordered to not be shared, emailed, or otherwise electronically copied, stored, printed, or delivered by [Mr.] Goode, [Mr.] Wilcock, or any other associate(s) within or without The Enterprise, and the records are to be preserved throughout the course of litigation."  *Id.* at 168.

First, regarding "PLAC", Ms. Montalbano asserts: "April 18, 2018 – June 7, 2018, [Ms.] Montalbano began Due Process of Law against [Mr.] Goode for remedy and protection of her Intellectual Property records and began serving what is referred to as the PLAC or Pre-Litigation Affidavit Complaint mailings, notarized affidavits with certificates of service. . . .  The PLAC mailings were presumptive affidavits for [Mr.] Goode and GES, or any lawful party on their behalf, to rebut or meet the allegations and shifted the burden of proof to being on [Mr.] Goode and GES, should they fail to respond."  *See* [#217]  at 88-89.  The Court finds that, as a matter of law, Ms. Montalbano misunderstands

the rules she cites, Fed. R. Evid. 301 ("Presumptions in Civil Cases Generally") and 902(4), (8), and (10) ("Evidence That Is Self-Authenticating").  Simply put, the Court is aware of no legal authority holding that these rules mean that Mr. Goode or GES would have presumptively "agreed" to any of the allegations in this PLAC mailing sent by a private citizen even if he did not respond to the mailing.

Second, "17 U.S.C. § 411(a) states that 'no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title.'"  *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019).  Ms. Montalbano has not alleged that her dreams visions, as recorded in her dream journals or otherwise, have been copyrighted in accordance with 17 U.S.C. § 411, with the exception of two federally-copyrighted books she has written: (1) *Dreams the Missing Text* and (2) *Dream Walker Dream Diary Adventures of Enetka Tulina*.  *See* [#217] at 150.  Ms. Montalbano has not provided any non-conclusory allegations, though, that Mr. Goode, GES, Ms. Yanaros, LWLF, or Ms. Lorie infringed on any specific material contained in these two books, as opposed to the dream journals about which she provides many allegations.  Thus, Ms. Montalbano's claim fails under Rule 12(b)(6).

Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Nine regarding copyright infringement be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 9.    Claim Ten: Defamation

Ms. Montalbano's Claim Ten, defamation, is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at 170.  Ms. Montalbano here cites to Colo. Rev. Stat. § 13-80-103 as the basis for this claim, but that statute simply relates to statutes of limitations for a variety of causes of action under Colorado.  No party has argued that the defamation claim is barred by the statute of limitations, and therefore the Court need not further address Colo. Rev. Stat. § 13–80–103.

"The elements  of a cause of action for defamation (slander and libel) are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication."  *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983).  Regarding the last element, "actionability of the statement irrespective of special damages" refers to defamation per se, which means that the "libelous statement must be (1) on its face and without extrinsic proof, unmistakably recognized as injurious (defamatory meaning) and (2) specifically directed at the plaintiff (identity)."  *Gordon v. Boyles*, 99 P.3d 75, 78-79 (Colo. App. 2004).  The "traditional categories" of defamation per se are "imputation of (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct."  *Id.* at 79.  On the other hand, "the existence of special damages to the plaintiff caused by the publication" is required for defamation per quod, which occurs where "the defamatory meaning may be understood only in reference to extrinsic facts known by the recipient."  *Id.* at 78.

Here, Ms. Montalbano has made no allegations in connection with this claim directly with respect to GES, LWLF, or Ms. Lorie. *See* [#217] at 170-79. In part, Ms. Montalbano otherwise alleges:

> [Mr.] Goode, [Mr.] Wilcock, [Ms.] Yanaros and their associates (believed to be working for The Enterprise), have defamed [Ms.] Montalbano publicly and privately to third parties, intentionally, negligently, or with reckless disregard of the truth and have made knowingly false public and private statements about [Ms.] Montalbano accusing her of criminal acts (stalking, murder, rape, pedophilia), sexual misconduct (as someone having an extramarital affair with [Mr.] Goode), and as someone with a mental disease (crazy, insane, delusional), to others in the same or similar trades and professions of predictive dream research, via libel and slander notably overtly since February 2, 2018 and have regularly publicly escalated their hate speech against Montalbano through to current. . . . [Mr.] Goode further defamed [Ms.] Montalbano in the Reddit post in her trade of dream research as being 'delusional' for having legitimate 'prophetic' dreams that showed [Ms.] Montalbano knew (via many tangible dream journal records) what [Ms.] Goode and his attorney, Wilde Yanaros, were up to before they did the acts in waking states. . . . It is self-evident [Ms.] Goode, [Ms.] Yanaros, and The Enterprise will continue to escalate their defamation, hate speech, and harassment activities against [Ms.] Montalbano unless the Court orders it stopped.

*See* [#217] at 170, 174, 177.

Ms. Montalbano has not alleged that GES, LWLF, or Ms. Lorie made any defamatory statements or to whom such statements may have been made. Thus, Ms. Montalbano's claim here fails on the first and second elements under Rule 12(b)(6) with respect to GES, LWLF, and Ms. Lorie. Similarly, although Ms. Yanaros is mentioned in connection with this claim, all statements concerning her are conclusory, with no mention of what specific defamatory statements she may have made or when she may have made them. Thus, this claim fails as to Ms. Yanaros as well.

Mr. Goode's only arguments regarding this claim stem from *Rooker–Feldman* and collateral estoppel. *Motion* [#227] at 6-8. As discussed above, however, he has not

provided enough information to determine that either of these legal doctrines apply here. Looking to the merits, the Court finds that Ms. Montalbano has adequately alleged this claim.  The alleged defamatory statements include, by way of example only, that Ms. Montalbano is a stalker and a member of the "Dark Alliance."   Ms. Montalbano's allegations state that Ms. Goode purposely published these statements via social media to the public.  Stalking is a criminal offense in Colorado, *see* Colo. Rev. Stat. § 18–3–602, which therefore requires no allegation of special damages.  *See Gordon*, 99 P.3d at 78-79.  Being called a member of the "Dark Alliance," which Ms. Montalbano alleges means that she is associated with murder, rape, and/or pedophilia, requires extrinsic facts to understand, and therefore the Court finds that this type of statement requires allegations of special damages.  *See id.* at 79.  "[S]pecial damages include economic and non-economic losses such as lost earnings, mental anguish, impairment of quality of life, etc.," i.e., "foreseeable damages within the reasonable contemplation of the parties" stemming from the conduct at issue.  *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 237 n.3 (Colo. 2003).  Here, Ms. Montalbano has provided allegations of harm to her reputation, personal humiliation, mental suffering, loss of income, and loss of earning capacity.  *See* [#217] at 178.  Thus, the Court finds that, for purposes of a Rule 12(b)(6) motion to dismiss, she has adequately alleged a defamation claim with respect to Mr. Goode.

Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues as to GES, Ms. Yanaros, LWLF, or Ms. Lorie. Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Ten regarding defamation be **dismissed with**

**prejudice** with respect to GES, Ms. Yanaros, LWLF, and Ms. Lorie. *See Brereton*, 434 F.3d at 1219. The Court further **recommends** that Mr. Goode's Motion [#227] be **denied** to the extent Mr. Goode seeks dismissal of Claim Ten against him.

### 10. Claim Twelve: Civil Conspiracy

Ms. Montalbano's Claim Twelve, civil conspiracy, is asserted under 42 U.S.C. § 1985 as well as Colorado common law. *See* [#217] at 186. The claim is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie. *See id.*

The elements of a 42 U.S.C. § 1985(3) conspiracy claim are: (1) a civil conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). To meet the first element of a § 1985(3) claim and state a claim for civil conspiracy, Ms. Montalbano "must allege specific facts showing agreement and concerted action among the defendants." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988) (emphasis added). It is not enough for her to merely state that Defendants engaged in a conspiracy. *See id.* ("Conclusory allegations of conspiracy are insufficient.").

To state a claim for common law civil conspiracy, Ms. Montalbano must allege "specific facts that fulfill the requirements of the elements of a state law claim for civil conspiracy." *Sieverding v. Colo. Bar Ass'n*, No. Civ. A.02-M-1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003). Under Colorado law, a plaintiff must allege the existence of: (1) two or more persons or corporations, (2) an object to be accomplished, (3) an agreement or meeting of the minds on the object or course of action, (4) at least one unlawful overt act, and (5) proximately caused damages. *Schneider v.*

*Midtown Motor Co.*, 854 P.2d 1322, 1326 (Colo. App. 1992); *see also Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).   Importantly, an express agreement is not necessary; however, there must be some indicia of an agreement presented by the plaintiff because a court will not simply infer a conspiracy.   *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977).

Neither GES nor LWLF is specifically mentioned in any allegation underlying this claim.  Otherwise, Ms. Montalbano alleges in part:

> [Ms.] Yanaros, [Ms.] Lorie, [Judge] Flynn, [Judge] Campbell, [Judge] Grove, [Judge] Gomez, and [Judge] Terry conspired with The Enterprise to impede, hinder, obstruct, and defeat the due course of justice (due process of law) and conspired together to repeatedly deny [Ms.] Montalbano equal protection of the laws, while extorting [Ms.] Montalbano. . . .  [Mr.] Goode works with Texas based attorney, Ms. Yanaros, as part of his Civil Conspiracy to maintain his public frauds and schemes through Abuse of Process and Malicious Prosecutions, also known as Color of Law, Color of Office, and Color of Official Right.  [Mr.] Goode and [Mr.] Wilcock work with Florida base[d] attorney, Ms. Elizabeth (Liz) Lorie, as part of their Civil Conspiracy to maintain their public frauds and schemes through Abuse of Process and extortion also known as Color of Law, Color of Office and Color of Official Right.   [Mr.] Goode conspired with [Ms.] Yanaros, [Ms.] Lorie, [Judge] Flynn, [Judge] Campbell, [Judge] Grove, [Judge] Gomez, and [Judge] Terry, as part of their civil conspiracy to interfere with civil rights to prevent [Ms.] Montalbano from exposing [Mr.] Goode, [Mr.] Wilcock, and The Enterprise's public frauds and schemes through deprivation of rights, also known as Color of Law, Color of Office and Color of Official Right.

*See* [#217] at 186-88.

The Court finds Ms. Montalbano's statements to be conclusory in that she fails to provide a factual basis for her conclusion that Mr. Goode, GES, Ms. Yanaros, LWLF, or Ms. Lorie engaged in a conspiracy, whether with the judicial defendants or otherwise. First, 42 U.S.C. § 1985(3) only applies to "conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  *Tilton*, 6 F.3d at 686 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971)).  "The other 'class-based

animus' language of this requirement has been narrowly construed."  *Id.* (citing *United Bd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837 (1983).   Ms. Montalbano's pleading is completely devoid of any allegations that the alleged conspiracy was motivated by "invidiously discriminatory animus."  Thus, the Court finds that Ms. Montalbano fails to state a claim as to this portion of her Claim Twelve.

Regarding common law civil conspiracy, the Court finds that Ms. Montalbano fails to adequately plead that there was a meeting of the minds between Defendants or that there was an unlawful overt act.   "[T]he purpose of the conspiracy must involve an unlawful act or unlawful means.  A party may not be held liable for doing in a proper manner that which it had a lawful right to do," such as use of the court system.  *Nelson*, 908 P.2d at 106.  Thus, even if there was a meeting of the minds between Defendants, the Court finds no reason to conclude that any actions taken by them were inherently unlawful.

In conclusion, the Court finds that Plaintiff's claim for civil conspiracy fails under Rule 12(b)(6).  Furthermore, particularly because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Twelve regarding civil conspiracy be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

**11.     Claim Thirteen: Deprivation of Civil Rights**

Ms. Montalbano's Claim Thirteen, "civil act for deprivation of rights," 42 U.S.C. § 1983, is asserted against Ms. Yanaros and Ms. Lorie.  *See* [#217] at 192.

Section 1983 provides a federal civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution" by any person acting under color of state law.  42 U.S.C. § 1983.  The general elements of a § 1983 claim are: (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a person (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any state. *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).  "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986).  Rather, the purpose of § 1983 damages is to compensate for actual injuries caused by the deprivation of constitutional rights.  *Id.*

"The analysis in a § 1983 case begins with the identification of the precise constitutional rights infringed." *McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011). In connection with this claim, Ms. Montalbano alleges in part:

> [Mr.] Goode and Ms. Valerie Yanaros ([Mr.] Goode's legal counsel based in Texas) worked with the following public servants: Brian James Flynn (chief Judge Mesa County), Elizabeth Lorie ([Mr.] Goode and [Mr.] Wilcock's alleged legal counsel based in Florida), Grove, Gomez and Terry (Colorado Court of Appeals Judges), and William Campbell (Colorado Judicial Commission), hereafter "Public Servants", to implement its Civil Rights Violations against [Ms.] Montalbano. (June 2018 to current). . . .  [Ms.] Yanaros and [Ms.] Lorie, (attorneys) did nothing to stop or report [Judge] Flynn's civil rights violations and are trespassers in law with [Judge] Flynn. . . .  [Judge] Flynn ignored that Ms. Elizabeth Lorie (opposing party, [Mr.] Goode's, Florida based counsel) harassed and extorted a witness (Ms. Ferrante) and provided a fake law firm address for legal communications while doing so. . . .  Ms. Yanaros did nothing to stop or report [Judge] Flynn's civil rights violations against [Ms.] Montalbano, and did nothing to stop her own civil rights violations, and instead unlawfully and maliciously capitalized on them for her client, Mr. Goode and violated her first duty to her Oath of

> Office, due process of law, and equal protection of the law.  Ms. Lorie, overtly and unlawfully participating in case 18CV50 on behalf of [Mr.] Goode by extorting witnesses, and did nothing to stop her own or the civil rights violations of others and instead unlawfully and maliciously capitalized on them for herself and her client, Mr. Goode.

*See* [#217] at 192, 195, 201, 204.

As best the Court can discern from her pleading, Ms. Montalbano is asserting a violation of her procedural due process rights as well as her equal protection rights.  To determine whether a plaintiff has been deprived of her right to procedural due process, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."  *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994).  Ms. Montalbano provides no allegations that she was not given fair hearings on all of the issues concerning the various state court proceedings.  Although she believes that rulings unfavorable to her were wrong, due process only requires that she be heard through "an appropriate level of process," which here was provided through the state court system.  The correctness of decisions made in state court is not an appropriate basis for a due process claim; rather, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Lawrence v. Reed*, 406 F.3d 1224, 1233 (10th Cir. 2005).  Thus, the Court finds that Ms. Montalbano has failed to plausibly allege a due process claim.

Regarding equal protection, Ms. Montalbano appears to assert an equal protection claim for a class of one, which requires her to allege (1) that she was "intentionally treated differently from others similarly situated" in all material respects, and (2) "that there is no rational basis for the difference in treatment[,]" i.e., that the government action is abusive

and not related to any legitimate objective. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Ms. Montalbano has not alleged facts that support any of these elements.

Thus, even assuming that Ms. Yanaros and Ms. Lorie, as attorneys, could be deemed to be acting "under color of state law," Ms. Montalbano's § 1983 claims against them fail. Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], she has given the Court no reason to believe that any further amendment would raise substantial issues. Accordingly, the Court **recommends** that the Motions [#221, #233] be **granted** to the extent that Ms. Montalbano's Claim Thirteen regarding deprivation of civil rights be **dismissed with prejudice** with respect to Ms. Yanaros and Ms. Lorie. *See Brereton*, 434 F.3d at 1219.

### 12.   Claim Fourteen: Abuse of Process

Claim Fourteen, criminal abuse of process under 18 U.S.C. § 1589(a)(3), (c), is asserted against Mr. Goode, GES, Ms. Yanaros, and Ms. Lorie. *See* [#217] at 207. Ms. Montalbano asserts that Mr. Goode and Ms. Yanaros "had ulterior motives in the use of judicial proceedings that were not proper in the regular conduct of a lawsuit and that caused damages to [Ms.] Montalbano and the legal actions lacked reasonable factual basis or cognizable basis in law." *Id.* She further asserts that "[t]hese actions were malicious and designed solely for the purpose of inflicting psychological, financial, and reputational harm against [Ms.] Montalbano through their complicit and ongoing repeat abuse of the legal process and threats of abuse of the legal process to exert pressure on [Ms.] Montalbano to make her refrain from seeking legal remedy against [Mr.] Goode." *Id.*

"A private right of action does exist under 18 U.S.C. § 1589, the Trafficking Victims Protection Reauthorization Act ("TVPRA") . . . ." *Shukla v. Deloitte Consulting LLP*, No. 19-cv-010578 (AJN) (SDA), 2020 WL 3181785, at *15 (S.D.N.Y. June 15, 2020). The private right of action is "for victims of trafficking, and provides for civil liability . . . ." *Id.* As is relevant here, "[w]however knowingly provides or obtains the labor or services of a person by any one of . . . the following means . . . (3) by means of the abuse or threatened abuse of law or legal process . . . shall be punished as provided under subsection (d)." 18 U.S.C. § 1589(a)(3). "The term 'abuse or threatened abuse of law or legal process' means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).

The Court is aware of no legal authority supporting a finding that Ms. Montalbano is a victim of human trafficking such that she would be protected by this statute. She alleges that the judicial proceedings were intended to "exert pressure" on her not to file her own lawsuits against Mr. Goode. *See* [#217] at 207. However, the pressure to take action or refrain from taking some action must be connected to providing or obtaining the labor or services of a person. 18 U.S.C. § 1589(a)(3), (c)(1). Ms. Montalbano has provided no allegations supporting a finding that any judicial proceeding filed by these defendants or any action taken in connection with those proceedings was done in order to obtain the labor or services of Ms. Montalbano. As a result, the Court finds that Ms. Montalbano has failed to state a claim for criminal abuse of process under 18 U.S.C. § 1589.

Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Fourteen regarding abuse of process be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 13.    Claim Fifteen: Malicious Prosecution

Ms. Montalbano's malicious prosecution claim is asserted against Mr. Goode and Ms. Yanaros.  *See* [#217] at 219.  In part, Ms. Montalbano alleges that "[Mr.] Goode and [Ms.] Yanaros, were party to multiple actions against [Ms.] Montalbano that were resolved in [Ms.] Montalbano's favor.  There was no probable cause for the actions and [Mr.] Goode and [Ms.] Yanaros lacked either a reasonable or good faith belief that the actions would be successful or were warranted in any way."  *See id.*  Ms. Montalbano also states that "[t]his instant case as filed by [Mr.] Goode and [Ms.] Wilde Yanaros [sic], is a Malicious Prosecution case."  *Id.*

The elements of a malicious prosecution claim under Colorado law are as follows: (1) the defendants contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004).

At the outset, the Court notes that to the extent Ms. Montalbano bases her malicious prosecution claim on the instant case, the claim fails on the second element, because this case, including the claims asserted against her, is ongoing, and she cannot show that "the prior action ended in favor" of her.  Similarly, she complains of the

"improper removal of 18CV50 to the Denver Federal Court," a case which she filed, and therefore the claim fails on the first element, i.e., because in that situation Mr. Goode and Ms. Yanaros were not the ones to bring the prior action against Ms. Montalbano.

This leaves the stalking cases filed by Ms. Yanaros on behalf of Mr. Goode in June 2018, July 2018, and March 2020.  *See* [#217] at 219.  Here, Ms. Montalbano has failed to adequately allege that there was no probable cause and that there was malice.  *See Montgomery Ward & Co. v. Pherson*, 129 Colo. 502, 509 (1954) (holding that, for purposes of a malicious prosecution claim, "[m]alice is any motive other than a desire to bring an offender to justice" and "may be inferred from the want of probable cause" for bringing the prior action).  Although Ms. Montalbano conclusorily states that there was no probable cause and that Mr. Goode's and Ms. Yanaros's lawsuit filings were done with malice, Ms. Montalbano has not provided enough factual information for the Court to conclude that these elements are met.

Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues. Accordingly, the Court **recommends** that the Motions [#227, #233] be **granted** to the extent that Ms. Montalbano's Claim Fifteen be **dismissed with prejudice** with respect to Mr. Goode and Ms. Yanaros.  *See Brereton*, 434 F.3d at 1219.

### 14.    Claim Seventeen: Intrusion on Privacy Rights

Ms. Montalbano's Claim Seventeen, intentional intrusion on privacy rights, is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at

223.    Ms. Montalbano does not mention GES, LWLF, or Ms. Lorie specifically in connection with this claim.

"Invasion of privacy is a generic term for a number of separate torts commonly identified as: (1) publicity that places one in a false light in the public eye; (2) appropriating one's name or likeness for another's benefit; (3) public disclosure of private facts, which concerns the communication or publication to third parties of information or activities which a person has held private; and . . . (4) intrusion upon seclusion, which focuses on the manner in which information that a person has kept private has been obtained." *Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1064-65 (Colo. App. 1998).  "Although all of these claims concern, in the abstract, the concept of being left alone, each tort has distinct elements and establishes a separate interest that may be invaded."  *Id.* at 1065.

In part, Ms. Montalbano alleges that Mr. Goode, Mr. Wilcock, "and their associates . . . have publicly and repeatedly disseminated the private December 16, 2017 dream journal record of [Ms.] Montalbano's where she experienced marrying Mr. Goode in a dream" as well as other "statements about the sexual content of some of [Ms.] Montalbano's private dream experiences . . . for the purpose of falsely representing her as someone sexually amoral to hundreds of thousands and even millions of people in the general public."  *See* [#217] at 223.  Thus, part of her claim here appears to be based on the first type of invasion-of-privacy tort described above, i.e., publicity that places one in a false light in the public eye.  However, the Colorado Supreme Court has explicitly declined to recognize this tort, "concluding that it is highly duplicative of defamation both in interests protected and conduct averted," and given that "the subjective component of the false light tort raises the spectre of a chilling effect on First Amendment freedoms."

*Denver Pub. Co. v. Bueno*, 54 P.3d 893, 894 (Colo. 2002).   Thus, this part of Ms. Montalbano's claim fails.

Ms. Montalbano further alleges that "[Mr.] Goode and [Ms.] Yanaros have also used the court system as a way to release [Ms.] Montalbano's private information publicly, to include her private place of residence and personal contact number."  *See* [#217] at 224.  This part of her claim appears to be based on the third type of invasion-of-privacy tort described above, i.e., public disclosure of private facts.  "[T]o prevail on a claim for unreasonable disclosure of private facts, a plaintiff must establish that: (1) the fact disclosed was private in nature; (2) the disclosure was made to the public; (3) the disclosure was one which would be highly offensive to a reasonable person; (4) the disclosed fact was not of legitimate concern to the public; and (5) the one who disclosed the fact did so with reckless disregard of the private nature of the fact disclosed."  *Doe*, 972 P.2d at 1065.  The Court has found no legal authority supporting a claim that providing an address and phone number in connection with court proceedings is an "unreasonable disclosure of private facts" that would be "highly offensive to a reasonable person."  Thus, this part of Ms. Montalbano's claim fails as well.

Particularly because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Seventeen regarding intrusion on privacy rights be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 15.    Claim Eighteen: IIED

Ms. Montalbano's Claim Eighteen, intentional infliction of emotional distress under Colo. Rev. Stat. § 7–74–104(2), is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at 225.

"Colorado has adopted the Restatement (Second) of Torts definition of intentional infliction of emotional distress: 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009) (citing Restatement (Second) of Torts § 46(1) (1965)).  Thus, "[t]he elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003).

Ms. Montalbano provides no specific allegations regarding either GES or LWLF in connection with this claim.  Regarding Mr. Goode, Ms. Yanaros, and Ms. Lorie, she alleges in part:

> [Mr.] Goode and [Ms.] Yanaros' repeat and ongoing abuse of process and filing multiple vexatious and malicious prosecution cases since June 2018 through to current with fabricated papers and documents are evidence of outrageous conduct used for Intentional Infliction of Emotional Distress upon [Ms.] Montalbano, and [Ms.] Montalbano was and continues to be severely emotionally distressed by these. . . .  Mr. Goode, Ms. Yanaros, Ms. Lorie, and their network of associates, have engaged in IIED through harassing [Ms.] Montalbano via organized public and private cyberstalking, cyberbullying, defamation, and via abuse of the legal system to extort and bully Montalbano to silence to Intentionally Inflict Emotional Distress. . . . [Mr.] Goode, [Ms.] Yanaros, and [Ms.] Lorie, harassed, extorted, or bullied Montalbano and/or her witnesses speaking up about [Ms.] Goode and [Ms.] Wilcock's public frauds, and violated [Ms.] Montalbano's Civil Rights and Intentionally Inflicted Emotional Distress. . . .  [Mr.] Goode, [Ms.] Yanaros,

[Mr.] Wilcock, and their network of associates, ongoing and repeat public defamation and harassment of [Ms.] Montalbano as a criminal (Dark Alliance/stalker) and someone sexually amoral and/or crazy in her trade and profession, since early 2018, is evidence of outrageous conduct used for Intentional Infliction of Emotional Distress upon [Ms.] Montalbano, and [Ms.] Montalbano was and continues to be severely emotionally distressed by these acts.

*See* [#217] at 225-28.

While Ms. Montalbano recites these elements  in her IIED claim, she fails to provide factual support for her allegation that Defendants' actions were extreme and outrageous. Extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).  Ms. Montalbano has not satisfactorily alleged that Mr. Goode, GES, Ms. Yanaros, LWLF, or Ms. Lorie violated any laws, for example, or otherwise acted so unreasonably given the circumstances as to give rise to an IIED claim. Rather, Ms. Montalbano's statements here are merely generalized and conclusory.

Particularly because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Eighteen regarding IIED be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 16.    Claim Nineteen: NIED

Ms. Montalbano's Claim Nineteen, negligent infliction of emotional distress, is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at 229.

In Colorado, a cause of action for NIED has six elements: 1) the defendant's conduct is negligent; 2) the negligent conduct created an unreasonable risk of physical harm; 3) causing the plaintiff to be in fear of their own safety; 4) that the plaintiff either (a) suffered physical injury or (b) was in the "zone of danger" created by the negligent conduct; 5) the plaintiff's fear had "physical consequences" or "long-continued emotional disturbance"; and 6) the defendant's conduct was the cause of the damages.  *Vance v. TOLMAR, Inc.*, No. 16-cv-01286-MSK-NYW, 2018 WL 1456275, at *7 (D. Colo. Mar. 23, 2018); *Draper v. DeFrenchi–Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011).

Ms. Montalbano does not specifically mention Mr. Goode, GES, Ms. Yanaros, LWLF, or Ms. Lorie in connection with this claim.  Rather, she generally states that "[t]he Enterprise and Public Servants negligently caused enormous amounts of emotional distress, financial losses, and other damages to [Ms.] Montalbano for well over two and [a] half years that they all could have prevented and could reasonably foresee would cause damages."  *See* [#217] at 229.

Here, among other issues, Ms. Montalbano has failed to provide allegations that that there was ever an unreasonable risk of physical harm, that she feared for her safety, or that she suffered a physical injury or was in the zone of danger.  Thus, the Court finds that she has failed to state a claim for NIED.

Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further

amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Nineteen regarding NIED be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 17.    Claim Twenty: Unjust Enrichment

Ms. Montalbano's Claim Twenty, unjust enrichment under Colo. Rev. Stat. § 7–74–104, is asserted against Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See* [#217] at 230.

"The elements  of unjust enrichment are: (1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it."  *In re Application of Thomas Read Mattson*, No. 21-mc-00046-WJM-NYW, 2021 WL 1698929, at *11 (D. Colo. Apr. 29, 2021) (citing *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008)).  "The scope of this equitable remedy is broad, 'cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another.'"  *Mattson*, 2021 WL 1698929, at *11 (quoting *Robinson*, 179 P.3d at 1007).  "It is a form of restitution designed to restore the plaintiff to his or her prior status."  *Mattson*, 2021 WL 1698929, at *11 (citing Restatement (First) of Restitution § 1 (1937)).

Ms. Montalbano does not provide any specific allegations under this claim with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, or Ms. Lorie.  Rather, she generally states that "[t]he Enterprise and their network of associates, are being Unjustly Enriched by [Ms.] Montalbano's Trade Secrets materials, Intellectual Property, and private

information."  *See* [#217] at 231.  She asserts that "[t]hey received these benefits under circumstance of fraud and at [Ms.] Montalbano's expense and it would be unjust for them to retain the benefit of such without commensurate compensation to [Ms.] Montalbano." *Id.*

Here, Ms. Montalbano has failed to provide any allegations relating to the first or third elements of this claim.  She has not shown that Defendants received a benefit *at the expense* of Ms. Montalbano, rather than simply *from* Ms. Montalbano, and she also has not adequately alleged that the circumstances of their obtaining the benefit make it unjust for them to retain the benefit without paying Ms. Montalbano.  She asserts that she gave them the materials "under circumstance of fraud," but as discussed above, she has not provided adequate information regarding the specifics of that fraud.

Because Ms. Montalbano has already amended her pleadings, *see Minute Order* [#216], Ms. Montalbano has given the Court no reason to believe that any further amendment would raise substantial issues.  Accordingly, the Court **recommends** that the Motions [#221, #227, #233] be **granted** to the extent that Ms. Montalbano's Claim Twenty regarding unjust enrichment be **dismissed with prejudice** with respect to Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie.  *See Brereton*, 434 F.3d at 1219.

### 18.    Sanctions

In addition to asking for dismissal of Ms. Montalbano's claims against them, Mr. Goode, GES, Ms. Yanaros, LWLF, and Ms. Lorie ask for sanctions against Ms. Montalbano.

Ms. Lorie "moves this Court for an Order dismissing her from this action, as well as for sanctions against Alyssa Montalbano."  *Motion* [#221] at 2.  However, Ms. Lorie

does not specify what type of sanctions she seeks to have imposed or under what legal authority those sanctions should be imposed.   *See* D.C.COLO.LCivR 7.1(d) (stating in part: "[A] motion involving a contested issue of law shall state under which rule or statute it is filed and be supported by a recitation of legal authority in the motion.").   In fact, she does not again mention sanctions in either her Motion [#221] or Reply [#243].   In the absence of further information, the Court **recommends** that the Motion [#221] be **denied without prejudice** to the extent Ms. Lorie seeks sanctions against Ms. Montalbano.

Ms. Yanaros and LWLF state that "[Ms.] Montalbano's attempts to use the legal system to disseminate her wild theories and fantasies and disqualify counsel for Plaintiffs must be blocked," and therefore they ask that Ms. Montalbano "be enjoined from filing any further verbose, harassing, and fantastical pleadings in this case."   *Motion* [#233] at 2.   Ms. Yanaros, who is representing Plaintiffs GES and Mr. Goode as well as herself, included identical language in both her own Motion [#233] as well as the Motion [#227] she filed for Mr. Goode and GES:

> The Court should grant Plaintiff's [sic] Motion and grant Plaintiffs [sic] attorney's fees incurred in connection with addressing [Ms. Montalbano's] Counterclaims.  Finally, this Court may enjoin [Ms.] Montalbano from filing similar pleadings that consume substantial time and resources.  In doing so this Court will streamline the process of the current litigation and relieve all parties from having to wade through the morass of allegations put forth by [Ms.] Montalbano . . . .  [Mr.] Goode respectfully requests this Court enjoin [Ms.] Montalbano from further filings and orders [sic] costs and fees to be paid to [Mr.] Goode for the time spent responding to [Ms. Montalbano's] pleading.

*Motion* [#227] at 19-20; *Motion* [#233] at 8-9.  Mr. Goode and GES appear to abandon the injunctive request in their Reply [#241], instead merely asking for attorney's fees.  *Reply* [#241] at 5-6.  Ms. Yanaros and LWLF appear to abandon any request for fees in

their own Reply [#256], although they do ask the Court to impose unspecified "sanctions against [Ms.] Montalbano for her frivolous filings."  *Reply* [#256] at 6.

Ms. Yanaros cites two cases where courts have imposed filing restrictions, but both cases involve restrictions on filing lawsuits, not necessarily filing documents in a case where the party at issue, like Ms. Montalbano, is a defendant in the lawsuit and therefore must necessarily participate by making appropriate filings.  *See Motion* [#233] at 9 (citing *Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991) (barring the plaintiff from filing lawsuits under most circumstances "because of his consistent and repeated abuse of the legal system")); *Reply* [#256] at 6 (citing *McMurray v. McCelmoore*, 445 F. App'x 43, 45 (10th Cir. 2011) (barring the plaintiff from filing lawsuits under most circumstances due to a "lengthy, abusive filing history")).  Given that Ms. Montalbano must defend herself in the suit brought by Mr. Goode and GES, the request to "enjoin [Ms.] Montalbano from further filings" is simply far too broad.  In the absence of a more nuanced request, the Court **recommends** that the Motions [#227, #233] be **denied without prejudice** to the extent Mr. Goode, GES, Ms. Yanaros, and LWLF seek to enjoin Ms. Montalbano from filing documents in this case.[12]

The Motions [#227, #233] are not entirely clearly regarding precisely what fees and costs these parties are seeking.  It is unclear whether only Mr. Goode is seeking fees and costs, or Mr. Goode and GES, or Mr. Goode, GES, Ms. Yanaros, and LWLF.  It is unclear precisely what costs are being sought, no legal authority is provided for the imposition of

---

[12]    Ms. Montalbano is warned, however, that pursuant to D.C.COLO.LCivR 7.1(i): "Motions, responses, and replies shall be concise.  A verbose, redundant, ungrammatical, or unintelligible motion, response, or reply may be stricken or returned for revision, and its filing may be grounds for sanctions."  Without further warning, the Court may strike, or return for revision, future filings by Ms. Montalbano, or any other party, which do not comply with this Local Rule.

attorney's fees under these circumstances, and no information required by D.C.COLO.LCivR 54.3 has been provided.  In the absence of a clear, well-supported request, the Court **recommends** that the Motions [#227, #233] be **denied without prejudice** to the extent Mr. Goode, GES, Ms. Yanaros, and/or LWLF seeks attorney's fees and/or costs.

## IV.  Conclusion

Based upon the foregoing,

IT IS HEREBY **RECOMMENDED** that the State Defendants' Motion [#222] be **GRANTED** and that all claims against Defendants Flynn, Grove, Gomez, Terry, and Campbell be **DISMISSED** as outlined above.

IT IS FURTHER **RECOMMENDED** that Ms. Lorie's Motion [#221] be **GRANTED in part and DENIED without prejudice** in part, and that all claims against Ms. Lorie be **DISMISSED**, as outlined above, and that Ms. Lorie be **DISMISSED** from this lawsuit.

IT IS FURTHER **RECOMMENDED** that Mr. Goode and GES's Motion [#227] be **GRANTED in part and DENIED without prejudice** in part, and that all claims against GES be **DISMISSED**, as outlined above, that GES be **DISMISSED** as a Counter Defendant in this lawsuit,[13] and that all claims except for Ms. Montalbano's Claim Ten (defamation) against Mr. Goode be **DISMISSED**.

IT IS FURTHER **RECOMMENDED** that LWLF and Ms. Yanaros's Motion [#233] be **GRANTED in part and DENIED without prejudice** in part, that all claims against

---

[13]  Assuming this Recommendation is adopted, GES would remain in this lawsuit solely as a Plaintiff.

LWLF and Ms. Yanaros be **DISMISSED**, as outlined above, and that LWLF and Ms. Yanaros be **DISMISSED** from this lawsuit.[14]

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 28, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

14   Assuming this Recommendation is adopted, Ms. Yanaros would still remain in this lawsuit solely as counsel for Mr. Goode and GES.