IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

Plaintiffs,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH

Defendants.

---

**PLAINTIFF JAMES COREY GOODE AND GOODE ENTERPRISE
SOLUTIONS, INC.'S RESPONSE TO MONTALBANO'S MOTION TO
DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

---

## I.      Introduction

James Corey Goode ("Mr. Goode") and Good Enterprise Solutions ("GES") (collectively "Goode" or "Plaintiff") file this Response in Opposition to the Motion to Dismiss ("Motion"), improperly filed pursuant to Fed. R. Civ. P. 12(b)(6)[1] by Alyssa Montalbano ("Defendant") (Docket 352, the "Motion".)   This Court should deny Defendant's Motion for several reasons:

*First*, Goode has alleged each of the claims with sufficiency against Defendant. Defendant has, through its wrongful actions, deprived Goode of monies owed to Mr. Goode and GES. Further, Defendant has harmed and lessened the goodwill Goode has worked to garner and should not be allowed to profit off of Goode's name and work. Defendant uses Goode's protected trademarks to garner "followers" on social media, thereafter requesting and accepting donations from those followers. Defendant has accused Goode of criminal acts on multiple occasions and interfered with business contracts by advancing such harmful claims. Defendant has conspired with other Defendants in this case to defame and harm Goode as shown in the SAC and its exhibits.

*Second*, Defendant failed to follow applicable federal and local rules. Defendant failed to follow Judge Domenico's Practice for Rule 12(b) motions. *See* DDD Civ.

---

[1] As explained below, Defendant has already filed an answer. Accordingly, the Motion should have been filed pursuant to F. R. Civ. Proc. 12(c).

P.S. III(D). Had it done so, Goode would be able to appropriately respond to the Motion. Instead, Goode must attempt to fashion a response that is in line with the Rules without the benefit of knowing specifically what Defendant disputes. Defendant's failure to follow the Local Rules of Practice is sufficient, on its own, to recommend denying the Motion. *See Cont'l Cas. Co. v. Arrowrock, LLC*, 19-cv-3631-DDD-MDB, 2022 WL 17975484, at *3, *6 (D. Colo. Dec. 28, 2022) (denying plaintiff's motion to amend the complaint for failing to include a proposed second amended complaint with the motion); *Waller v. City and Cnty. of Denver*, 14-cv-02109-WYD-NYW, 2015 WL 18116371, at *4 (D. Colo. Apr. 20, 2015) (plaintiff's failure to comply with Local Rule 15.1 is sufficient grounds to strike the motion), *Pac. Ocean Alameda v. AmGUARD Ins. Co.*, Civil Action 1:21-cv-2523-CMA-SKC, at *5 (D. Colo. Mar. 1, 2023)

*Third*, Defendant fails to advance any argument whatsoever regarding Goode's claims. Defendant merely incorporates standards in Defendant Gaia's Motion to Dismiss (#128) and states that Goode includes no facts to support any of the claims. Further, Defendant's Answer (#217 at 2-28, the "Answer") belies Defendant's Motion and in fact evidences support for Goode's claims. For example, the Answer at 19 para. 112, Defendant admits to having discussions with Weidner and Gaia but denies colluding with them to harm Goode. In considering a motion to dismiss, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the

plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984), *See also Wood v. Kelley*, Civil Action No. 20-cv-01221-PAB-NRN, at *8 (D. Colo. Mar. 2, 2021). Finally, Defendant's Motion is misnamed—a Motion to Dismiss must be filed before an answer. F. R. Civ. Proc. 12(b). After an answer is filed, the proper Rule 12 motion is a Motion for Judgment on the Pleadings. F. R. Civ. Proc. 12(c). As such, Goode will construe Defendant's Motion as one for Judgment on the Pleadings and show that all claims are sufficiently plead and supported below.

## II.    Background

Plaintiffs' Second Amended Complaint ("SAC") includes state and federal claims for racketeering, unfair competition, deceptive trade practices, defamation, and tortious interference arising from Defendant's attempts to usurp, tarnish and misappropriate the character, financial gain, goodwill and work of Goode. The SAC lays out the background of the Defendant's history of continually harassing Goode and working with other Defendants (namely, Zavodnick and Weidner) to profit off of his name by using it and his trademarks to obtain followers on social media and donations from those platforms. The SAC explains how Goode worked diligently to garner goodwill and a presence in the Conscious Community and how, when Goode

refused Defendant's advances and unwanted attention, sought to cause him financial harm all while profiting off of his fame.

Goode has asserted nine (9) claims against Defendant. Claims 1, 8-9 and 17 are not asserted against Defendant. Goode will not waste the Court's time responding to those four (4) claims that Defendant included in the Motion that are not asserted against Defendant.

## III.    Applicable Standards

To survive a Rule 12(b)(6) motion, a complaint need not include "detailed factual allegations" as Defendant's Motion demands. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe the factual allegations in the light most favorable to Plaintiff, and not simply question their veracity. *See Twombly*, 550 U.S. at 555.  As stated above, In considering a motion to dismiss, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen at* 733, *Kelley* at *8. Rule 12(b)(6) motions are disfavored and rarely granted. *See Lone Star Indus., Inc. v. Horman Family Trust,* 960 F.2d 917, 920 (10th Cir.1992).

Accordingly, the Court must assess whether the complaint is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).

Defendant attempts to downplay the gravity of its actions online and on social media. This Court has recognized the importance of a Plaintiff's goodwill and the harm that may befall it through a Defendant's unauthorized use of its intellectual property or through that Defendant's harmful statements published online. (*See RV Horizons, Inc. v. Smith*, Civil Action No. 1:18-cv-02780-NYW (D. Colo. Nov. 15, 2019), denying Defendants' Motions to Dismiss for, *inter alia*, various unfair competition claims). In order to shorten the SAC but provide sufficient support for its claims, Goode has referenced various postings and print matter that is sufficient to support its claims at the pleading stage. (E.g., SAC at 15, 17, 19, 23). The Tenth

Circuit has held that this type of information is sufficient to support a Plaintiff's claims. (*See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081 (10th Cir. 2017), holding that the district court did not err by reviewing a seminar recording and a TV episode on a rule 12(b) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity". Defendant does not challenge the authenticity of any of the exhibits or documents referred to in Goode's Complaint. As such, the Court may consider it in ruling. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (providing that documents whose contents are alleged in a complaint and whose authenticity no party questions may be considered in ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)).

## IV.   Pertinent Facts

Goode filed suit against Defendant for various business and personal torts including unfair competition, libel and slander and tortious interference. The pertinent facts in the SAC are laid out below and grouped by the type of claims: (a) those involving claims for the various types of unfair competition, (b) those involving false or fraudulent statements or misrepresentations and RICO claims and (c) commercial use. As explained below, these claims involve the same basic elements and so the pertinent facts will be referred to in the Disputed Claims section by the applicable Pertinent Facts subsection.

### a. Facts Pertinent to Trademark and Unfair Competition Claims (Claims III-VI)

Plaintiff brings federal law claims related to trademark infringement in which Defendant engages in connection with the other named defendants in this action, including using Plaintiff's registered or unregistered trademarks or some that are confusingly similar which diminishes Goode's reputation and trademarks. (SAC at ¶¶87-88, 112-113). Defendant used Plaintiff's claimed marks and names in a manner "drive customers away from [Plaintiff's] products and to solicit business for [Defendant]" (*Atlas Biologicals, Inc. v. Kutrubes*, Civil Action No. 15-cv-00355-CMA-KMT, at *32 (D. Colo. Sep. 23, 2019)). Defendant has a YouTube account dedicated to harassing Mr. Goode. (SAC at ¶¶87-88. Running a search on that account shows Defendant "tagging" Mr. Goode's federally-registered trademark "SBA®":



(Defendant's "Deprogrammer" YouTube Channel alleged in the SAC at ¶¶87-88, accessible at https://www.youtube.com/@Deprogrammer/search, last accessed June 28, 2023). This channel was claimed by Defendant in its Answer at ¶¶87-88. Goode alleges Defendant, alone and along with Zavodnick, Gaia and Weidner, tag Mr. Goode and use the Goode marks in order to ride off of Goode's notoriety (SAC at ¶58). Defendant admits to this tagging (Answer at ¶58).

Goode has been developing his goodwill, branding and intellectual property since at least 2008. (SAC at ¶20). Goode has filed and received federal registrations on various trademarks. (*Id*. at ¶¶37-40). Goode is known worldwide and has been invited as a guest on celebrity shows that are seen by hundreds of thousands of audience members worldwide. (*Id*. at ¶¶20, 38, 119). The Goode Marks have become a source indicator of Goode's goodwill, branding and message and have, as such, acquired secondary meaning. (*Id*. at ¶ 38.) Goode has taken action to protect his goodwill. (*Id*. at ¶ 50.) Goode has invested tremendous time, effort and financial resources in his branding and goodwill and has received worldwide recognition. (*Id*. at ¶ 148.)

### b. Facts Pertinent to RICO, False/Fraudulent Misrepresentation Claims (including defamation and tortious interference, Claims VII, XV)

Plaintiff brings claims related to harmful and false statements in which Defendant engages in connection with the other named defendants in this action, including accusing Goode of criminal acts and linking her channel to Zavodnick and Weidner's YouTube channels (*Id*. at ¶¶12, 88). Defendant admits to accusing Mr. Goode of criminal acts. (Answer at ¶88). Defendant also targeted Plaintiff with defamatory, harmful publicity which diminishes the Plaintiff's reputation and accuses Goode of illegal or immoral practices. (SAC at ¶¶87-88, 112-113). Defendant established relationships with co-defendants, made harmful statements

about Plaintiff with the motivation to harm the Plaintiff's livelihood through fraudulent and defamatory statements and worked with several other defendants in this action (namely, Zavodnick and Weidner) to disseminate false information through use of mail/email/wires to form the "Association". (Docket 111 ¶¶105-114).

### c. Facts and Law Pertinent to Commercial Speech and Use in Commerce

Defendant derives business from her social media channel (SAC at ¶¶58, 113). To say that Defendant is not making commercial use of Goode's names, likenesses and claimed marks is belied by Defendant's own Answer (see above, Answer at ¶¶88.) Liability under the Lanham Act can be based on advertising or promotion alone. *See VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1365-66 (Fed. Cir. 2019) (holding that defendant's use of plaintiff's trademarks in advertising and brochures was sufficient to establish liability for trademark infringement); *BMW of N. Am., LLC v. Barreira*, 633 F. App'x 882, 884 (9th Cir. 2015) (finding irrelevant the fact that defendant "did not actually complete any sales," because "even an offer to sell goods with an infringing trademark establishes liability under the Lanham Act" (emphasis in original)); *DealerX v. Kahlon*, No. 2:17-cv-1444-MCE-AC, 2017 WL 5664580, at *4 (E.D. Cal. Nov. 27, 2017) ("That defendant does not actually sell or provide the services advertised . . . is immaterial, as 'merely advertising an infringing mark itself is an act of infringement.'") (quoting J. Thomas McCarthy,

McCarthy on Trademarks and Unfair Competition, § 25:26 (5th ed. 2017)). Furthermore, every court to have considered the use of hashtags with a wordmark has held that such use either supported granting a preliminary injunction or stated an infringement claim. *See Museum of Modern Art v. MOMACHA IP LLC* , 339 F. Supp. 3d 361, 377–78 (S.D.N.Y. 2018) (preliminary injunction); *Pub. Impact, LLC v. Bos. Consulting Grp., Inc.* , 169 F. Supp. 3d 278, 290 (D. Mass. 2016) (same); *Chanel, Inc. v. WGACA, LLC*, No. 18 Civ. 2253 (LLS), 2018 WL 4440507, at *2 (S.D.N.Y. Sept. 14, 2018) (motion to dismiss); *Fraternity Collection, LLC v. Fargnoli* , No. 3:13-CV-664-CWR-FKB, 2015 WL 1486375, at *2 (S.D. Miss. Mar. 31, 2015) (same); *Khaled v. Bordenave* , 18 Civ. 5187 (PAE), 2019 WL 1894321, at *6 (S.D.N.Y. Apr. 29, 2019) (motion to amend), *Align Technologies, Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-cv-06663-TSH, 2019 WL 1586776, at *1 (N.D. Cal. Apr. 12, 2019), *Juul Labs., Inc. v. 4X Pods*, 509 F. Supp. 3d 52 (D.N.J. 2020). Defendant uses Goode's registered marks, including SBA®, in her posts on social media. Individuals conducting a search for SBA® will be directed to her social media and even though she is not associated with Goode. Although confusion may be eliminated once that individual reaches her social media, the harm is done to Goode. The individual then associates Goode's mark with the negative, defamatory statements that Defendant makes. Finally, Defendant urges consumers to "watch,

share like and subscribe" (SAC at ¶113). Defendant admits to doing this. (Answer at ¶113). Defendant is using for her commercial gain Goode's protected marks.

## V.    Limitations Allegations

Defendant makes various incorrect statements of fact and law regarding limitations periods in its Motion. (Motion at 7). RICO claims are governed by the "injury-discovery rule" which would mean the limitations period would not even have begun to run until 2018. *See Cracraft v. Utah Valley Univ.*, No. 2:19-cv-397-TC (D. Utah Oct. 19, 2020). In the allegations in the SAC, Goode discovered and felt the injury in 2018, thereby putting the lawsuit well within the applicable limitations periods.

## VI.    Disputed Claims

Defendant incorporates by reference most of Gaia's Motion to Dismiss (#128) including the Disputed Claims portion. Goode incorporates by reference any general arguments responsive to those put forward in Goode's response (#152) and will address below the specific alleged deficiencies as they pertain to Montalbano.

### a.  Claim II: Civil RICO Conspiracy

Section V above explains why there is no limitations bar on this action. Section IV(b) lays out the applicable facts. RICO "provides a private right of action in federal court for individuals injured in their business or property through fraudulent conduct." *Robert L. Kroenlein Trust v. Kirchhefer*, 764 F.3d 1268, 1275

(10th Cir. 2014). RICO prohibits "conducting an enterprise's affairs through a pattern of racketeering activity." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997) (citing 18 U.S.C. § 1962).

To state a civil RICO cause of action, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473  U.S. 479, 496 (1985). "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as any act which is indictable under federal law.... These underlying acts are referred to as predicate acts, because they form the basis for liability under RICO." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (internal cite and quotation marks omitted). A plaintiff must allege at least two predicate acts. *Klehr*, 521 U.S. at 183.

Defendant caused the use of the mails, and interstate wires for the purpose of defrauding Plaintiff of at least thousands of dollars.   Some representations of these mailings and interstate wirings (the "conduct"), which consist of electronic messages which constitute interstate transmissions and interstate telephone calls between Defendant and Plaintiff are included in the Appendix in Support of the SAC— namely, Exhibit K (#1-12). Similarly, the video transmissions referenced in the SAC constitute an ongoing pattern of racketeering activity under 18 U.S. Code § 1962(c). The enterprise is Montalbano, Weidner and Zavodnick working together to deprive

Plaintiff of financial gain via defaming Goode online. The conduct is ongoing because the Defendants continue to post online on their social media platforms.

> **b. Claim III: Federal Trademark Infringement, Claim IV: False Designation of Origin and Federal Unfair Competition, Claim V: Colorado Common Law Trademark and Trade Name Infringement and Claim VI: Colorado Common Law Unfair Competition**

"Courts addressing claims of both trademark infringement and unfair competition address the claims together because they have virtually identical elements[.]" *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F.Supp.2d 1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)). To sufficiently allege a trademark infringement claim under Section 1125(a)(1)(A), a plaintiff must allege that (1) it has a protectable mark, and (2) that the defendant's use of that mark is likely to cause confusion in the marketplace. *Adams v. Grand Slam Club/Ovis*, No. 12-cv-2938-WJM-BNB, 2014 WL 103782, at *2 (D. Colo. Jan. 10, 2014). Because some of the alleged trademarks at issue here are not registered with the United States Patent and Trademark Office, in order to establish that they have a protectable mark, Plaintiff must establish either that the identifying mark (a) is inherently distinctive, or (b) has acquired distinctiveness through secondary meaning. *See Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d 1245, 1251 (D. Utah 2017). "Marks that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled

to protection," whereas descriptive marks are only protected if they have acquired "secondary meaning." *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-KLM, 2008 WL 878985, at *9 (D. Colo. Mar. 28, 2008). A plaintiff may use direct or circumstantial evidence to establish secondary meaning. *Id*. at *10. Permissible circumstantial evidence to establish secondary meaning includes "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark[,] and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Id*.

Goode has exclusively used its claimed marks/names in commerce for many years. Consumers only associate the various names with the services provided by Goode and thus has established enforceable and protectable trademarks in its names. *See* (Docket 111 at ¶38). Plaintiff describes its trademarks and specify which marks are at issue. *See* (id. at ¶39-40). Plaintiff also alleges that Defendant uses the names belonging to Goode, (*id*. at ¶87-88, 112-113), and that such use of Plaintiff's trademarked names is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the services because they are false or misleading representations regarding [Defendant's] experience and relationship with Plaintiffs. *Id*.

The SAC pleads enough facts, drawing all inferences in favor of Plaintiff, to support a finding of at least secondary meaning. Plaintiff alleges, as laid out in Section IV(a) above, allegations, taken as true and making all inferences in favor of Plaintiff, constitute circumstantial evidence of secondary meaning even without classifying the respective trademarks in the SAC.

Under established Tenth Circuit law, whether Defendant's use of Plaintiff's marks "is likely to confuse the public in terms of [Defendant] being associated with [Plaintiff] is a question of fact and should not be determined conclusively on a motion to dismiss." *Id. See also Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1239 (D. Colo. 2009) ("Most courts hold that this fact-intensive question, however analyzed, is not appropriate for determination on a motion to dismiss, but should be determined on summary judgment or at trial."). "Thus, the [c]ourt need only decide whether [Plaintiff] has pled sufficient facts to make a likelihood of confusion plausible." *Adams*, 2014 WL 103782, at *3. "Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion." *John Allan Co.*, 540 F.3d at 1139. "The focus is on whether the defendant sought to derive benefit from the reputation or goodwill of the plaintiff." *Id.*

"[T]he posting of Plaintiff's [name] onto a . . . website[] is likely to cause confusion as to Plaintiff's affiliation or grant of authority to use the trademark." *See*

*Grady v. Nelson*, No. 12-cv-03004-RM-KMT, 2014 WL 7143852, at *7 (D. Colo. Dec. 15, 2014). Here, Defendant included Plaintiff's names on its website and social "causing the false image of approval, affiliation or sponsorship by Plaintiff." *See id*. Accordingly, Plaintiff has sufficiently pled "actionable trademark infringement by Defendant." *Id*.

Defendant claims the SAC does not sufficiently allege use in commerce. However, to be commercial advertising, the speech must be:

> (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000) (citing *Gordon & Breach Science Publishers, S.A. v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y 1994)). Commercial speech is that which influences consumers to buy defendant's goods or services. *Strauss v. Angie's List, Inc.*, No. 217CV02560HLTTJJ, 2018 WL 5722561, at *14 (D. Kan. Nov. 1, 2018), aff'd, 951 F.3d 1263 (10th Cir. 2020). Subscribers are a source of income for Defendant. This Court has recently ruled as much, and that—even more specifically—infringing conduct is commercial in nature by itself. It has held that "a '[f]inancial benefit exists where the availability of infringing material acts as a draw for customers' and that

"[t]he size of the 'draw' relative to a defendant's overall business is immaterial." The court concluded that "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Warner Records Inc. v. Charter Commc'ns, Inc.*, 454 F. Supp. 3d 1069, 1074 (D. Colo. 2020)(internal citations omitted).

Defendant admits that it uses Goode's marks (Answer at ¶88) Keywords and adwords have been found to be actionable trademark infringement since at least 2009. *Rescuecom Corp. v. Google Inc.*, 2009 WL 875447 (2d Cir. April 3, 2009). Goode alleges that Defendant uses its marks to bolster its credibility through association with its names and thus is sufficient to survive dismissal. *See RV Horizons* at *16. The SAC "identif[ies] the mark[s] at issue and at least some instances of misuse" and as such Claims III-VI must go forward to discovery.

### c. Claim VII: Colorado Consumer Protection Act

To prevail on a claim under the CCPA, a plaintiff must prove: (1) the defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (4) the plaintiff suffered injury in fact to a legally protected

interest; and (5) the challenged practice caused the plaintiff's injury. *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1259 (D. Colo. 2014) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

As discussed under Section IV(c) above, Defendant uses Goode's registered marks, including SBA®, in her posts on social media. This is a form of unfair competition that the CCPA was meant to prevent. *See Swart v. Mid-Continent Co.*, 145 Colo. 600 (Colo. 1961).

Courts in this District evaluating claims under the CCPA apply the heightened pleading standards of Rule 9(b). *See, e.g., Adams v. FedEx Ground Package Sys., Inc.*, No. 11-CV-02333-LTB-CBS, 2013 WL 1164426, at *6 (D. Colo. Mar. 1, 2013). Rule 9(b) provides that malice, intent, and other states of mind may be averred generally, but requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The Complaint is to be read as a whole and not in piecemeal fashion for this analysis. *Id*. at 1252. As explained above, Defendant has admitted to using Goode's marks without approval in the practice of "tagging". This is sufficient to state a claim.

### d.  Claim XIII: Slander Per Se and Claim XIV: Libel Per Se

"In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another, (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams v. Dist. Court, Second Judicial Dist., City & Cty. of Denver*, 866 P.2d 908, 912 n.4 (Colo. 1993). Oral defamation is slander, while that which is written is libel. *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983). Three factors drive a court's analysis as to whether a statement is defamatory: how a statement is phrased (which often reveals how the statement was intended to or reasonably would be perceived); the entire context in which the statement was made (i.e., the court will not focus on any one particular word or phrase) and "all of the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed." *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989).

As stated above, Defendant accuses Goode of criminal acts. These words imputed conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute and are of such kind as to involve infamous punishment or moral turpitude conveying the idea of major social disgrace. *See Cinquanta v. Burdett*, 388 P.2d 779 (Colo. 1963). Defendant made statements

to thousands of public persons that Mr. Goode was a criminal on various levels. Defendant published them in videos and social media posts as written. As such, Claims XIII and IX must not be dismissed.

### e.  Claim XV: Tortious Interference with a Business Expectancy

Tortious interference with business expectancy is an intentional tort actionable under Colorado law. *Examination Bd. of Prof'l Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, Civil Action No 18-cv-01559-RBJ, at *26 (D. Colo. Feb. 10, 2021). The tort applies to those who "intentionally and improperly interfere with another's prospective contractual relation." *Id*., Restatement (Second) of Torts § 766 (1979). The tort applies to those who either (1) induce or cause a "third person to not enter or continue the prospective relation," or (2) prevent "the other from acquiring or continuing the prospective relation." *Id*. Because the tort is forward looking plaintiffs need not prove the existence of an underlying contract to succeed on a tortious interference claim. However, they must demonstrate that the tortfeasor employed intentional and improper means to prevent a contract's formation. *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981).

Certain types of conduct—physical violence, fraud, civil suits, and criminal prosecutions—fall into the Restatement's "wrongful means" category.

As explained above and alleged in the SAC at ¶¶71-88, Defendant has filed multiple lawsuits against Goode. She has lost these lawsuits. She continues to burden Goode (and all parties involved with any of the suits) and has caused Goode financial strain due to her improper use of the courts. Many companies do not wish to engage with Goode due to the lawsuits Defendant has filed. As such, tortious interference is adequately pled here.

## VII.   Attorney's Fees

In good faith and compliance with this Court's Practice Standards, Goode has revised its Complaint to address the issues Defendant has raised. In doing so, Goode has dropped claims that it could have pursued in order to narrow the issues. As evidence of its own inability to work within the system and operate in a showing of good faith, Defendant has still challenged every single one of Goode's claims. This has cost Goode dozens of hours and thousands of dollars and thus Goode should be compensated and awarded fees and sanctions under Colo. Rev. Stat. § 13-17-102. As such, Goode respectfully requests this Court award fees incurred in amending its complaints, conferring with counsel, and responding to its related Motions brought forth only as a delay tactic in order to force Goode to wait even longer before it may be justly compensated and made whole for the injuries caused by Defendant. Plaintiff can supplement its request in order to comply with the local rules regarding attorney fee requests.

## VIII.  Conclusion

Defendant has harmed Goode with its tortious conduct for years now. Defendant continues its harmful conduct and continues to harm Goode.  The Plaintiff deserves the opportunity to explore these actions further in discovery, to present evidence to a judge and jury at trial and be compensated for the harm Goode has suffered.  The Court should deny Defendant's Motion and instead award fees to Goode and sanctions against Defendant for having to respond to Defendant's groundless Motion.

Respectfully submitted this 28th day of June 2023.

_s/ Valerie A. Yanaros_
Valerie Yanaros, Esq.
State Bar No. 24075628
Yanaros Law, P.C.
8300 Douglas Ave
Suite 800
Dallas, Texas 75225
Tel.: (512) 826-7553
**ATTORNEY FOR PLAINTIFF**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28th 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.


By:   s/ Valerie Yanaros
       Valerie Yanaros