# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE, individually and,
GOODE ENTERPRISE SOLUTIONS INC.,

Plaintiffs,

v.

GAIA, INC.,
JAY WEIDNER,
BENJAMIN ZAVODNICK,
ALYSSA MONTALBANO,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH

Defendants.

----

Alyssa Chrystie Montalbano, Individually

Counter-Claimant,

v.

James Corey Goode, individually

Counter-Defendants,

David Wilcock,
THE WILCOCK SPIRITUAL HEALING AND
EMPOWERMENT FOUNDATION

Third-Party Defendants.

Montalbano files this Reply to James "Corey" Good and GOODE ENTERPRISE SOLUTIONS INC.'s ("GES") Response [#368] to Montalbano's Motion to Dismiss [#352] and Replies as follows:

## I. SUMMARY PLAINTIFFS' ARGUMENTS

In Plaintiffs' Response, section titled, "1. Introduction", Counsel argues the Motion to Dismiss ("MTD") [#352] should be denied for failing to meet Judge Domenico's Practice Standard contained at, DDD Civ. P.S. III(D) [#368 at 2-3]. Stating a Motion for Judgment should have been filed and not a MTD. Montalbano reminds the Court she is pro se and has been prejudiced for years in court by not having legal counsel to instruct her on court procedures or inform her which papers and documents are appropriate to file and at what times. Plaintiffs' counsel has construed the Motion to Dismiss ("MTD") as a Motion for Judgment on the Pleading [#368 at 4, ¶1] and Montalbano is Replying in kind to address matters alleged as being material. A Motion for Summary Judgment on the Pleading under F.R.C.P. 56, is generally made after Discovery has commenced. *Celotex Corp. v. Catrett, 106 S.Ct.* 2548, 2552–53, 477 U.S. 317, 322–23 (U.S.Dist.Col., 1986). This case's discovery has been stayed since April 26, 2021 [#182] and no Discovery performed to date. Pursuant F.R.C.P 12(c) a Motion for Judgment on the Pleading or a 12(b)(6) Motion to Dismiss [#352] may be converted to a Motion for Summary Judgment under FRCP 56. Matters outside the pleading may be considered by the court and treated as a summary judgment.

The main matters alleged by Plaintiffs as 'material' are Montalbano's:

(1) Communications with Mr. Weidner and GAIA. [#368 at 3; #217 Answer ¶112]

(2) Connection with other defendants, notably Mr. Zavodnick and Mr. Weidner, and alleged defamation. [#368 at 4, 10, 11;  #111 SAC ¶58, ¶¶87-88, ¶¶105-114; Answers ¶58, ¶¶87-88, ¶¶112-113;  #61-16 Exhibit N]

(3) Alleged conflicting affidavits. [#368 at 5]

(4) YouTube channel, Deprogrammer, and allege use of Plaintiffs Trademarks. [#368 at 8-9, 16; SAC ¶¶38-40, ¶¶87-88, ¶¶112-113; Answer ¶58, ¶¶87-88, ¶¶112-113]

(5) Electronic messages between Ms. Montalbano and Mr. Goode, alleged to qualify as 'interstate transmissions and telephone calls' for RICO. [#368 at 14; #1-12 Exhibit K]

(6) Websites and social media. Plaintiffs allege Montalbano admits to tagging with Goode's marks. [#368 at 7-13, 16, 18, 20;  SAC ¶113, Answer ¶113]

(7) Lawsuits involving Montalbano and Goode. [#368 at 22-23; SAC ¶¶71-88; Answers ¶¶71-88]

## II.     'MATERIAL FACTS' REBUTTAL

The following shows Plaintiffs alleged 'material facts' are not material and their claims against Montalbano should be dismissed with prejudice; and judgment and fees rendered in Montalbano's favor.

## **RICO**
## **Claim 2 - RICO 18 USC 1962(d) [#111 at 26-31]**

GAIA's Motion to Dismiss [#128] outlines the Required Elements of a RICO claim at pages 15-17.

Plaintiffs alleged the RICO claim was timely filed against Montalbano, claiming they discovered the 'injury' involving Montalbano in 2018 [#368 at 13]. Goode and GES originally alleged the racket began in 2015 and then changed it to 2016 to fit the statute of limitations [#352 at 7 (citing #1 ₱144; #111 ₱142)]. The timeline of the alleged racket is important to note, as it fails from a reasonable business person standard.

1. On or about June 2015 Goode stated GAIA through Mr. Weidner, Mr. Rysavy, Mr. Warkins, and Ms. Medvedich ("GAIA Defendants") approached Goode and Wilcock for a series called "Cosmic Disclosure" to be aired via GAIA's streaming network. [SAC, #111 ₱22]

2. Goode entered into the written contract with GAIA during 2016. [#111 ₱26]

3. Montalbano began watching GAIA's streaming network and Goode and Wilcock on Cosmic Disclosure around 2016. [TACC #355-1 ₱49, ₱75]

4

4. Montalbano sought employment at GAIA mid-late 2017 and met with Mr. Weidner at GAIA headquarters, September 11, 2017, and discussed the potential of a dream based series being carried at GAIA. [Answers, #217 ¶24, ¶112]  The mentioned coming 'shindig' was a GAIA subscriber event [#61-16 Exhibit N, Montalbano email ¶¶1-2]. Montalbano was not employed or contracted by GAIA.

5. Cosmic Disclosure was very profitable for GAIA and Goode for at least 3 years, into June 2018 [#111 ¶22]

6. Montalbano delivered the Pre-Litigation Affidavit Complaint ("PLAC") to Goode, Weidner, and Rysavy at GAIA headquarters, dated April 18, 2018, notifying them of copyright infringement problems and seeking relief outside of litigation. [pending TACC #355-1 at 18 ¶60 PLAC; #295-1 at 1 PLAC Certificate of Service;  #135-2 USPS certified mail receipts]

7. Montalbano opened Case 18CV50 June 25, 2018 against Goode, to stop Defamation and have declaratory relief for Intellectual Property ("IP")/Trade Secret IP. [#247-12 Original Complaint 18CV50; #355-1 ¶¶56-71]. January 29, 2020 case 18CV50 was dismissed and judgment entered August 5, 2020. [#222-4 Register Actions]

8. GAIA aired Cosmic Disclosure episodes with Goode and Wilcock in them from 2015 – March 2020 (approx. 5 years), and all during case 18CV50.

9. GAIA removed Cosmic Disclosure episode with Goode in them about March 2020, when Goode opened this lawsuit against them and its employees. [#355-1 TACC ¶23]

5

No **reasonable business owner** (GAIA and GAIA Defendants) would hire artistic talent (Goode), pay thousands (even hundreds of thousands) of dollars to promote that talent (Goode) for years and make huge profits, only to intentionally destroy that talent at the height of their career and business' profitability (June 2018). Yet, this is what Goode alleges GAIA did with Montalbano. That GAIA, Weidner, and Montalbano conspired together since '2015' for Montalbano to show up three years into their marketing plan and attempt prosecutions against Goode in 2018, with the intent of ruining GAIA's profitable show and destroying Goode's career and GAIA's reputation, stocks, or subscriber base with litigation. Goode's RICO claim against Montalbano completely fails from a reasonable business person standard.

With regard to the emails [#1-12 Exhibit K, #61-16 Exhibit N] these do not show any pattern of racketeering or rackets with other defendants.

1. **Exhibit N** (September 12, 2017 email) – This email shows Montalbano met with Mr. Weidner [on September 11, 2017 (for the purpose of employment or contracting with GAIA)] and discussed some of Montalbano's dream visions prior documented in her journals, that also included some records involving Weidner and Rysavy that were verified as accurate by Weidner. Montalbano was also still hopeful something positive might happen professionally at the coming GAIA subscriber event ("shindig"), Exhibit N ¶¶1-2.

2. **Exhibit J** (Facebook Group post) – Shows (in a highly defamatory way) that Montalbano attended the GAIA subscriber event and spoke with Mr. Rysavy about the Dream Vision based series being carried there. Upon information and belief, Goode had the person from Exhibit J stalk Montalbano at the GAIA subscriber event to inform him later about what

6

Montalbano did there. [See #355-1 ¶¶258-261 Chuck Raymond; #217 SACC ¶603 Aaron Moriarity and citing Exhibit CK. **See attached Exhibit 1** – Exhibit CK from Mesa Court Record showing Rob Vannoy and Goode promoting Moriarity on Twitter after he cyberstalked Montalbano on Facebook. [#61-15 Exhibit M, Vannoy affidavit; #61-14 Exhibit L, Vannoy affidavit] Also see TORTIOUS INTERFERENCE, *Infra*.

3. **Exhibit K** (December 26, 2018 email) – Sent to Goode during the Mesa District Civil Court case 18CV50. Goode proceeded pro se. Montalbano was also pro se and informed Goode of people she planned to subpoena for testimony and as witnesses (Daniel Liszt, Bill Ryan, Joe, and Weidner), which is proper conduct in the course of a lawsuit. See TACC ¶108 with list of names of witnesses to include those from the 2018 email: Liszt ¶108 J.; Ryan ¶108 M., ¶¶123-130; Joe ¶108 F. and Weidner ¶108 B. Goode highlighted Montalbano's line, "Everything I said I would do if you did something, you have seen me do." [#1-12 at 1] This is correct; this Court has also seen this. The e-mail also shows Montalbano has tried to settle outside of litigation with Goode, "When you are ready to negotiate a morally appropriate and proper deal with me based on the evidence, you and your proper attorney may contact me." which is also proper conduct during the course of a lawsuit. However, Goode will not negotiate outside of court. Montalbano reasonably believes Goode has never settled because it is highly profitable for him to continue with malicious litigation. [TACC Fraud Claim 1, ¶¶104-111, ¶¶196-198]

4. Plaintiffs also allege Montalbano's social media is evidence of a racket with Mr. Weidner, because Montalbano tweeted one YouTube video of Mr. Weidner's encouraging people to like, follow, and share Weidner's YouTube channel (instead of Goode's). [#111 ¶¶112-113] Montalbano preferring other people, products, or services instead of Goode's, does not comprise a plausible RICO claim.

The exhibits provided by Plaintiffs, for a RICO claim against Montalbano, do not rise to the plausibility standards seen in *Atlas Biologicals, Inc. v. Kutrubes,* Civil Action No. 15-cv-00355-CMA-KMT, at *32 (D. Colo. Sept. 23, 2019) [#368 at 8] (Companies and individuals had contractual relationships and partial ownership of the same companies and defendant took proprietary information, including trade secrets, and solicited plaintiffs client list.) or *RV Horizons, Inc. v. Smith,* Civil Action No 1:18-cv-02780-NYW (D. Colo. Nov 15, 2019) [#368 at 6, 19] (Many high level LLCs and major corporate entities were intertwined with each other and defendants used plaintiff's proprietary information including investor lists, and published a book on Amazon with proprietary information.)

Racketeering is "defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics" *Rotella v. Wood,* 528 U.S. 549, 552 (2000).

The emails, YouTube videos (see TRADEMARKS, *Infra*), and Social Media exhibits provided by Plaintiffs (see UNFAIR COMPETITION, *Infra*) show no threats of murder, kidnapping, fraud, or any other racketeering pattern. The affidavits provided by Goode's associate Robert Vannoy also fail to show racketeering (see TORTIOUS INTERFERENCE, *Infra*.). Plaintiffs RICO claim fails as a matter of law and must be dismissed with prejudice and judgment entered in favor of Montalbano.

8

**TRADEMARKS**

**Claim 3 – Trademark Infringement 15 USC 1114 and 1125(a)**

**Claim 5 – Common Law Trademark and Trade Name Infringement**

The Plaintiffs have provided numerous case laws for Trademark infringement in their Response and repeatedly and vehemently allege Montalbano infringed their marks, but have shown no material facts of actual infringement of Goode's marks. The uses cited are 'fair use' or 'nominative fair use'.

Opposing counsel misleads the Court by falsely stating Montalbano tagged YouTube videos with SBA's trademark and for [unlawful] profit [#368 at 2, 8-9].

Montalbano's YouTube channel is about her dreams, waking state events, public figures, public matters, government programs, and technology that impacts sleep states and dreams. The channel is not salacious or defamatory and has been evolving since the Answers were first filed on December 22, 2020 [#120, ¶87 (#217, Answers, ¶87-88)] due to the increase of additional people and situations occurring in waking states after already being documented in Montalbano's dream journals. See Examples at #338-3, Judges Flynn and appellate judges; #364-1, Judge Domenico complaint dismissal; #337-7 Magistrate Mix remand; #205-1, #231-2 Covid vaccines (video posted); #356-24 Ohio train wreck (video in process).

Plaintiffs allege unlawful "use" of their "SBA" trademark because they searched for "SBA" on Montalbano's YouTube channel and pulled up the following two video [#368 at 9, image]:

1. "*Exposed Corey Goode and David Wilcock's A.I. Neural Dream State Frequency Mind Control Program*" This video pulled up because of citing sources under fair use for

9

reporting, criticizing, teaching, and commenting; there is no Trademark use. (**Exhibit 2** screenshot YouTube video description citation, "Corey Goode on AI and Ascension – SBA Presents Ninety Degree Turns – Sphere Being Alliance")

2. *"PT1: Corey Goode Mental Health Claims: The CIA – Project BLUEBIRD – MKULTRA & MiLabs"* published December 22, 2019; again the result of citation of sources for reporting. (**Exhibit 3** screenshot YouTube video description citation, Ex: "Corey Goode and Bluebird (screenshot) https://SphereBeingAlliance")

The videos cited, show fair use, 17 U.S.C. § 107. Even if the videos were hashtagged with any of Goode's claimed marks [#111 ¶¶39-41] it would be nominative fair use. See *Century 21 Real Estate Corp. v. Lendingtree, Inc.,* 425 F.3d 211, 220 (C.A.3 (N.J.), 2005) (defining nominative fair use as permitting use of a mark to identify and describe a good, product, or service)

3. Plaintiffs also allege trademark infringement for Montalbano using #CoreyGoode in one Twitter post. [#368 at 11, citing SAC at ¶¶58, 113]

The use of #CoreyGoode on Twitter to publicly discuss him, his public claims, products, or services, is not trademark use pursuant, Trademarks, 15 U.S.C. § 1052(c):

> "**No trademark** by which the goods of the applicant may be distinguished from the goods of others **shall be refused registration** on the principle register on account of the its nature **unless it** - . . . (c) **Consists or comprises a name**, portrait, or signature **identifying a particular living individual** . . ." (emphasis added)

Corey Goode's name cannot be a Trademark and does not serve as a source identifier. #CoreyGoode merely facilitates categorization and searching within online social platforms for topics related to public figure Corey Goode [SAC ⁋2].

Plaintiffs' also claim Trademark infringement because search engines might pull up Montalbano's content [#368 at 9] which has no bearing on Montalbano and does not show trademark "use" by Montalbano.

Plaintiffs have not established any improper "use" of their trademarks by Montalbano under either Federal or Common Law, and their Trademark claims should be dismissed with prejudice and judgment entered in favor of Montalbano.

**UNFAIR COMPETITION**

**Claim 4 – Unfair Competition 15 USC 1125**
**Claim 6 – Common Law unfair competition**

Plaintiff allege Montalbano's "use" of their trademarks comprise 'unfair competition' and creates 'confusion' for consumers [#111 ⁋⁋166-172]. "Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers' or 'when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product." *Adams v. Grand Slam Club/Oasis,* No. 12-cv-2938-WJM-BNB, 2014 WL 103782, at *2 (D. Colo. Jan. 10, 2014) [#368 at 15]. An example of a confusing mark is seen in *Swart v. Mid-Continent Co.,* 145 Colo. 600 (Colo. 9161) [*Id.* at 20], "Held that defendants' use of 'Mid-Commercial Refrigeration Co.,' as business name causing confusion in minds of customers of 'Mid-Continent Refrigerator Co.,' constituted unfair competition."

Plaintiffs have not shown any similarities or possibility for confusion between Goode's marks ("SBA", "BLUE AVIANS", "20 AND BACK", SPHERE BEING ALLIANCE), business name ("GOODE ENTERPRISE SOLUTIONS INC"), or website ("SphereBeingAlliance"), and Montalbano's mark ("Ari Stone"), business name ("ARI STONE ART LLC"), or website ("aristoneart"). None of Goode's marks and business names are similar to Montalbano's and there is no confusion.

Because the Trademark claims fail as a matter of law and there are no similarities (confusion) of Goode and Montalbano's marks, Plaintiffs' unfair competition claim must also be dismissed with prejudice and judgment entered in favor of Montalbano.

## **VIOLATION CCPA**

**Claim 7 – violation Colorado Consumer Protection Act**

> "To prevail on an unfair trade practices claim under the Colorado Consumer Protection Act, C.R.S. § 6–1–101 *et seq.*, a plaintiff must prove the following elements: (1) the defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury." (citations omitted)

*Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1259 (D. Colo. 2014) (citing *Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998)) [#368 at 20].

Goode and GES have failed to allege any of the five elements required for violation of the CCPA against Montalbano.

In *Adams v. FedEx Ground Package Sys., Inc.,* No. 11-CV-02333-LTB-CBS, 2013 WL 1164426, at *6 (D. Colo. Mar 1, 2013) [*Id.* at 20], it states the heightened fraud pleading standard of Rule 9(b) applies to CCPA claims. For the reasons stated in Sections RICO, TRADEMARKS and UNFAIR COMPETITION, *supra,* and TORTIOUS INTERFERENCE, *infra*, Plaintiffs have shown no fraud by Montalbano and failed to plead a violation of the CCPA.

The Plaintiffs' further failed to plead a violation of the CCPA because Goode is not an actual or potential consumer of Montalbano's products, services, or goods, C.R.S.A. § 6-1-113(1)(a). Plaintiffs also have not shown how the challenged practice significantly impacts the public or potential consumers and not just Mr. Goode personally.

Failure to allege even one of the required five elements is grounds for dismissal with prejudice and entry of judgment should be granted in favor of Montalbano.

**DEFAMATION**
**Claim 10 – Slander Per Se**
**Claim 11 – Libel Per Se**

*Walters v. Linhof,* 559 F. Supp. 1231, 1234 (D. Colo. 1983) [*Id.* at 21]. Dismissing defamation claim for failure to "[S]ubstantially set forth the words alleged to be defamatory and untrue or any facts that would establish publication."

> "**I am required initially to determine whether plaintiffs are public figures**, public officials or private figures **and whether the issues involved are matters of public or general concern. If plaintiffs are public figures, plaintiffs would be required to prove publication of defamatory falsehood * "with 'actual malice'**—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." . . . ."The Supreme Court has described two ways that one might become a public figure:
>
>> **For the most part those who attain this status have assumed roles of especial prominence in the affairs of society.** Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. **More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.**
>
> *Gertz v. Welch, supra* at 345, 94 S.Ct. at 3009. *See also, DiLeo v. Koltnow,* 200 Colo. 119, 613 P.2d 318, 321 (1980)." (emphasis added)

*Walters* 1235.

Plaintiff Corey Goode admits to being a [public] media figure [SAC ℙ2] and thus has a higher burden of proof for defamation and must substantially set forth the words alleged as untrue, must also show malice, and establish publication of such.

Plaintiffs mislead the court about Montalbano's Answer at ℙ88 [#368 at 10] where Montalbano acknowledges accusing Goode of criminal acts by leaving out "(via court and affidavits)". "The litigation privilege applies regardless of the tort theory invoked, if the basis of the claim is a statement made in the course of litigation." *Patterson v. James,* 454 P.3d 345 (Colo.App., 2018) Montalbano's court statements are protected by litigation privilege. "Circuit Judge, held that: (1) MLBPA's threat of legal action by sending cease-and desist letters was made in good faith, and (2) litigation privilege applied, entitling MLBPA to immunity on libel

14

claim." *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 335 F.3d 1161 (C.A.10 (Okla.), 2003). Montalbano' stop and desist notices [PLAC, *supra*] made in good faith are protected by litigation privilege. Montalbano is further protected under U.S. Const. amend. I.; and Colorado's anti-SLAPP law, C.R.S. § 13-20-1101, protecting statements made in judicial proceedings and those made in furtherance of the exercise of constitutional right to free speech in connection with a public issue or an issue of public interest.

     Plaintiffs alleged Answer ¶88 of Montalbano's is a conflicting affidavit [#368 at 5] because Montalbano states she has read some court filings on her YouTube channel; namely the CIA court filing from Mesa Court. However, plaintiffs have not substantially set forth any specific words from that (or any other court) filing that are defamatory, untrue, do not have litigation privilege, or that establish publication for their defamation claim.

     Plaintiffs also alleged that Mr. Vannoy was a witness of alleged Defamation by Montalbano, yet nowhere in the affidavits does Vannoy provide any specific words, statements, or examples of the alleged defamation against Mr. Goode.  Vannoy only simply conclusory states he 'witnessed it', which does not comprise material facts in support of public figure Goode's defamation claim. [#61-15 Exhibit M, Vannoy affidavit; #61-14 Exhibit L 61-14, Vannoy affidavit]

Plaintiffs have failed to substantially set forth the words alleged to be defamatory and untrue or any facts that would establish publication of defamation per se or defamation per quod and have failed to meet the public figure's heightened standard requiring them to also prove malice. Because Plaintiffs have failed to substantially set forth any defamation by Montalbano, their claim must be dismissed with prejudice and judgment entered in favor of Montalbano.

## TORTIOUS INTERFERENCE

**Claim 12 – Tortious Interference with a Business Expectancy**

> "As stated earlier, to establish a claim for tortious interference with prospective business advantage, a plaintiff must show that defendant engaged in (1) improper conduct with (2) the intention to induce or cause a third party not to enter into or continue business relations with the plaintiff, and (3) defendant actually induced or caused such result. Dolton, 642 P.2d at 23 (citing Restatement [Second] of Torts § 766B) (emphasis added)."

*Nobody in Particular Presents, Inc. v. Clear Channel Communications, Inc.,* 311 F.Supp.2d 1048, 1118 (D.Colo., 2004)

Plaintiffs allege the 'civil and criminal prosecutions' between Montalbano and Goode [SAC ⁋⁋71-88] comprise tortious interference [#368 at 22-23]. As stated in DEFAMATION, *supra,* Montalbano is protected by litigation privilege. Montalbano losing claims or cases does not establish tortious interference with Goode's business contracts or prospective business contracts. Even if the lawsuits did comprise an element of tortious interference, Plaintiffs would still need to have shown that Montalbano intentionally implemented the lawsuits for the specific purpose of inducing a third party to not enter into or continue business with Plaintiffs, and that Montalbano actually induced or caused such a result. Plaintiffs have shown no fraud or intentional interference by Montalbano (see RICO, TRADEMARKS, and UNFAIR COMPETITION, *supra*).

Plaintiffs also provide the following affidavits of Robert Vannoy to support their alleged Tortious Interference:

1. **Exhibit M [#61-15] –**Robert ("Rob") Vannoy affirms he had a close friendship with Ms. Shapan (roommates) that began around fall of 2017 [*Id.* Nos. 2, 5]. Vannoy states Shapan had a close friendship with GAIA Executive Producer, Sid Goldberg [*Id.* No. 6]. Vannoy also cites Zavodnick's YouTube channel alleging defamation of Goode therein [*Id.* No. 9-15, 17] and then says it his personal opinion, "that Gaia, through Shapan, Goldberg, Jay Weidner . . . or other Gaia proxies, may be working with and supporting Zavodnick . . . ." [*Id.* No. 16]  Vannoy also admits around mid-July 2018 Wilcock and Goode had a fall out with GAIA based on Wilcock's 'resignation letter' [*Id.* No. 8] emailed to defendant Ms. Medvedich, July 1, 2018, whereby Wilcock alleged criminal and Luciferian acts against GAIA as his reason for leaving [#193 ¶¶89-117, GAIA Counterclaims on Wilcock Resignation; #121-4 at 5, Internet published Wilcock resignation letter]. Montalbano's name is not mentioned in Wilcock resignation email-letter as part of why he [or Goode] stopped working with GAIA in 2018. Vannoy also admits he is a fan of Corey Goode and David Wilcock's [Exhibit M, No. 4] and that Vannoy will not to stop being a fan, regardless to any malfeasance by these men [*Id.* No. 9-15].

Nowhere in Exhibit M does Vannoy mention Montalbano in association with GAIA, Zavodnick, Weidner, Shapan, or Goldberg, as he recounts 2015-2018; nor is Montalbano mentioned as part of Wilcock [and Goode's] reasons for resignation from GAIA. Also refer to RICO timeline, *supra.*

2. **Exhibit L [#61-14] –** Vannoy affidavit now alleging Montalbano must also be involved with GAIA, Zavodnick, and Weidner as part of some conspiracy to destroy

17

Goode's reputation [Id. No. 3]; when Montalbano's name was never mentioned in Vannoy's affidavit while recounting 2015-2018 occurrences [#61-15, Exhibit M].

Vannoy alleges at No. 6, "I have witnessed countless times Alyssa Montalbano on social media and YouTube videos outlandish claims of illegal actions purportedly done by Corey." and provides no examples of this alleged defamation.

Vannoy continues in No. 7-8 to say "these three individuals" have made outlandish accusations against Corey and that their followers stalk Corey online. But, Vannoy does not specify who "these three individuals" are, nor does he provide any examples of defamation or stalking.

At No. 9, Vannoy makes the conclusory statement that Montalbano, Zavodnick, and Weidner, have gained "many followers" on their social media from alleged stalking and harassment of Goode, but again fails to provide any examples of stalking or harassment by Montalbano or any benefits derived therefrom. Vannoy then falsely states Montalbano publicly claims marrying Goode in dreams. This is the second notable close associate of Goode's falsely claiming Montalbano told them about her private dreams when Montalbano did not [#121-21 at 6-7, Chuck Raymond defamation with Goode]. Goode publicly disclosed Montalbano's private marriage dream occurrence on Reddit about November of 2018 [#121-21at 4-5]. Montalbano never told Vannoy about the marriage dream, as Montalbano is not friends with Vannoy and has no reason to discuss a personal dream like that with him. [#121-21 and #121-19 at 1, defamation exhibits; #356-17 at 16-22 partial of Marriage Dream]

Between Vannoy's affidavits and Wilcock's resignation letter spanning 2015-2018, it is clear Wilcock [and Goode] left GAIA for reasons not related to Montalbano and Plaintiffs have failed to allege any material facts in support of any Tortious Interference by Montalbano and accordingly the claim should be dismissed with prejudice and judgment entered in favor of Montalbano.

**WHEREFORE,** for all the facts, reasons, and laws stated above all of the Plaintiffs claims fail as a matter of law, there are not material facts at issue, and all of the Plaintiffs' claims must be dismissed with prejudice and judgment entered in favor of Montalbano and Plaintiffs' counsel sanctioned for not filing in good faith.

Respectfully Submitted and All Rights Reserved,

/s/ Alyssa Chrystie Montalbano

Alyssa Chrystie Montalbano, American Citizen

2536 Rimrock Ave
Suite 400-117
Grand Junction, CO 81505
E-mail: LegalZenACM@gmail.com
Defendant, Counter-Claimant, Third-Party Plaintiff

# CERTIFICATE OF SERVICE

I certify that on this 15th day of July 2023 a copy of the foregoing REPLY was filed with the clerk of the court using the CM/ECF system and is lawfully served upon relevant parties counsels and upon appeared Defendants, through the Case Management/Electronic Case Filed (CM/ECF) court filing system (FRCP Rule 5); and upon pro se litigants Mr. David Wilcock and WILCOCK FOUNDATION via USPS first class mail appointed agent CORPORATE CAPITAL INC., Mr. Brent Carlson, 7848 W. Sahara Ave, Las Vegas, NV 89117.

/s/ Alyssa Montalbano

Alyssa Montalbano, American Citizen