

**Judge Randolph M. Hammock**
LOS ANGELES SUPERIOR COURT

Journal of Consumer Attorneys Associations for Southern California

**Advocate**

June 2022



# To relate, or not to relate? That is the question.
## COMMON MISUNDERSTANDINGS REGARDING NOTICE OF RELATED CASES

One of the frequent issues that comes up in an Unlimited Civil Independent Calendar ("IC") Court involves whether there is a "related" case to the pending case. Unfortunately, whether or not a party is required to file a "Notice of Related Case ["NORC"], or even the mechanics of filing same, is often misunderstood by the attorneys, as well as the court itself.

It is not a coincidence that on the Case Management Statement (which is for "mandatory use" per the Judicial Council of California) to be filed in every IC Court by every appearing party for the initial CMC Conference, there is a section regarding any related cases to the pending case. (See Case Management Statement ("CMS"), Paragraph 13, [Form CM-110].) I am sad to report that it appears that many attorneys simply ignore and/or misunderstand that important paragraph.

Paragraph 13 essentially acts as a reminder to all parties (and their respective counsel, if any) to take a brief moment and consider whether there is a *possibility* of any related case(s) to that particular pending case, despite whether that case was filed prior or subsequent to the filing of said case. It is also a reminder since the applicable law already creates an *affirmative duty* to all parties and their counsel to consider that possibility when they initially appear in any given case. (Cal. Rules of Court, rule 3.300 (b).) This duty also requires that such an NORC be served and filed "as soon as possible, but no later than 15 days after the facts concerning the existence of related cases become known." (Cal. Rules of Court, rule 3.300 (e).) In short, a party should not wait until submitting their CMS to inform the court of that possibility, if they already knew of the relevant facts which would give rise to the requirement of filing that NORC.

The oral responses that I receive from counsel at the CMC when I inquire about the possibility of a related case vary, but some of the most common ones are:

Journal of Consumer Attorneys Associations for Southern California

Advocate

June 2022

"That case is no longer pending or was settled." or "The other party should have filed an NORC." Or my favorite "This is a different case." (This one tends to come up where there is an underlying case, such as in a legal malpractice case. But the rule does not involve a notice of "identical" case – it is merely "related" or similar case.) In any of these situations, if I had a buzzer to indicate an incorrect response, as in a game show, I would like to use it.

Besides the actual clear and unequivocal wording of the applicable rule itself [Cal. Rules of Ct., rule 3.300], the NORC form itself offers many clues as to why those responses are incorrect. For example, as to each possible related case, there is a subsection (i) for the "Status" of case," to wit, "pending," "dismissed" "with" or "without prejudice," or "disposed of by judgment." In short, the fact that the possible related case is currently pending or not does not eliminate the requirement to file the NORC.

Indeed, the fact that that prior case may have been previously dismissed may still justify the finding by the court that those cases are, in fact, related, as one of the goals and policies of relating cases is to avoid "judge shopping." (See, e.g., *Harris v. Rojas* (App. 2 Dist. 2021) 281 Cal.Rptr.3d 452. (Filing a notice of a related case allows the trial court to promote efficiency, to avoid duplicative effort, to combat judge-shopping, and to minimize the prospect of conflicting results; the trial court system relies on this mechanism to detect and to cure the problem of parallel litigation within its jurisdiction.)

**Fundamental mistakes**

So, first and foremost, it does not matter whether the potential "related" case is currently pending or not. The fact that it existed (or currently is active) is not automatically dispositive of whether the case is related or not. Indeed, as discussed in the previous paragraph, one of the clearest examples of a related case is when a party files an action, then dismisses it without prejudice at some point, and then subsequently files the same or similar case, which gets assigned a new case number (and very likely, a new judge). An NORC is clearly required to be filed by the plaintiff, so that the judge in the earlier-filed action can determine whether the cases or related or not, utilizing the factors in CRC Rule 3.300 (a) in exercising his or her discretion. These types of situations can be deemed classic forum/judge shopping, which this rule is designed to prevent. (See also, LASC Local Rules, rule 3.2 (d) ["Improper Refiling"].)

The next fundamental mistake which often occurs is that counsel only files the required NORC *in the new case*. News flash: The new judge does not have the authority to make the decision as to whether the cases are related or not; if all of the listed cases are unlimited civil cases (or all limited civil cases), it is the judge in the *earliest*-filed case who makes the decision. (See CRC Rule 3.300 (h)(1)(A) ["Where all the cases listed in the notice are unlimited civil cases, or where all the cases listed in the notice are limited civil cases, the judge who has the earliest-filed case must determine whether the cases must be ordered related and assigned to his or her department."].)

As such, the rule requires the party to file it in *all* of the cases listed in the notice – which would include the earliest-filed case. (See, CRC Rule 3.300 (d).) Although this rule states that the NORC must be filed in "all pending cases listed in the notice," in view of subdivision (h), the only logical interpretation of this requirement is that it still must be filed in the earlier cases, whether they are "pending" or not. As discussed earlier, the form itself acknowledges that the earlier-filed cases may be "dismissed" or even already reduced to a "judgment."

Another common error is that the assumption that if the lawyer (or party in pro per) somehow subjectively believes that the cases do not meet the definition of "related case" under Rule 3.300 (a), then there is no requirement to file the NORC. This may or may not be true. The "duty to provide notice" under subsection (b) is likely triggered by an *objective* test. Are you aware of *facts* under which a reasonable judge could conclude that these cases are related, especially in view of the catch-all provisions of subsection (a)(4) [Are likely for other reasons to require substantial duplication of judicial resources if heard by different judges."]?

In short, counsel should not unilaterally make the call. If there is a reasonable possibility of a related case, you must properly and timely file an NORC, and let the appropriately designated judge under subsection (h) make that determination. Indeed, under subdivision (g), any party is allowed to file a written response as to its respective position in support or in opposition to an NORC.

(Note: Although this subdivision seems to imply that only a party who is served with an NORC may file a response within five days after service of same, I see no logical reason why the party filing the NORC cannot also state whether that party is in support or in opposition to the reviewing court to relate the case or not. The NORC could simply have been filed as a cautionary measure, as to the possibility that those cases could be related.)

In further point of fact, since the decision by the judge to relate the cases or not is purely *discretionary*, any party should be able to state its position in an attempt to persuade the reviewing court to exercise such discretion, one way or another, despite the fact that these cases do, in fact, meet the definition of a related case.

**When the judge decides *not* to relate a case**

What does a party do then, if anything, if the judge decides *not* to relate a case, when that party wants the cases related? Most parties and their attorneys simply do nothing. Indeed, I believe that most attorneys do not even realize that they may have a potential remedy in such a situation. Under subdivision (h) (D), any party who objects to a decision which *denies* the NORC can file a motion

with the presiding judge of that court (or his or her designated judge – typically the supervising judge of civil) to essentially conduct a de novo review of that particular NORC.

One must keep in mind that such a determination may be important to that party, since the cases can never be ordered to be *consolidated* for any purpose, until and unless they are initially and formally ordered "related" under CRC Rule 3.300.

In determining whether to relate any particular case or not, the reviewing judge must first determine whether the case meets the definition of a "related case" under subdivision (a), and if so, that judge can then utilize his or her discretion whether to relate the cases or not. Even though the cases may meet the definition of a related case, there may still be a good reason not to relate the case. For example, a judge recently assigned to a particular IC Court may have no personal knowledge of that case, since that case was never active or pending before him or her. Hence, there is no compelling basis to relate the new case in order to transfer that case to your courtroom for all future purposes, when that judge has no prior history or involvement in that case. Of course, that judge may want to consider whether the research attorney/law clerk assigned to that department may have prior involvement in that case or not, as that would improve judicial efficiency.

### Random assignment of IC cases

Additionally, it is well known within the LASC the designated IC cases are assigned on a random basis at the time of filing. (See LASC Local Rules, rule 3.2 (b).) Moreover, this random assignment system is also designed to assign these cases on an equal basis to each of the IC Courts at that courthouse. Some judges may be hesitant to deem cases related under the false assumption that by doing so, they will pick up an extra case to their docket. It is true by deeming a case related, that judge is adding a new case to his or her assigned docket. But the LASC's IC Court assignment system will then account for that new case taken by an NORC, and it will essentially skip a future new assignment to that courtroom in order to even out the assignment rotation. (See LASC Local Rules, rule 3.2 (a).) Hence, there is simply no true disincentive for any judge to decline a legitimate NORC. This is essentially a zero-sum situation.

A more interesting situation arises when a judge does, in fact, grant an NORC request and has the related case(s) transferred to his or her department, per the standard protocol. The parties in the related/transferred case now have an opportunity to file a Code of Civil Procedure section 170.6 challenge to that new judge (assuming there is such a peremptory challenge still available to that party) within the 15-day time period from receiving notice of that new assignment "for all purposes." It is not rare for this to occur. When such a 170.6 paper is timely filed the new judge, of course, must first rule upon it. If it is granted, the appropriate protocol is for the now-disqualified judge to either: (1) send *both* cases to the Supervising Judge of Civil, and allow that judge to determine what to do to both cases, or (2) unilaterally revoke and/or reconsider his/her previous ruling on the NORC (which was ruled upon in the case in which there was no such disqualification) and in lieu thereof, the judge could essentially "unrelate" the cases, and send the related case back to the previous courtroom, and keep the original case already assigned to him or her. In short: no harm, no foul.

Of course, in such a situation, the parties could be afforded an opportunity to be heard as to what action should be taken by either the Supervising Judge of Civil, or by the judge in the case in which there was no such qualification. In the official comments section to CRC Rule 3.300, it states: "On notice to counsel, the judge to whom the case is assigned may confer informally with the parties, and with the judge or judges to whom each related case is assigned, to determine the feasibility and desirability of joint discovery orders and other informal or formal means of coordinating proceedings in the cases."

### Don't ignore the issue

When all is said and done, the issue of related cases should not be ignored, and should be dealt with frankly and head on at the earlier stages of the case. Indeed, it should be a regular part of an attorney's checklist when they first appear in any given case. And while the issue of whether "to relate or not to relate" is certainly not as serious as Hamlet's suicidal contemplations, it still deserves serious thought and consideration by both the attorneys, as well as the judge who is assigned a certain case. After all, rules are rules, or in other words which have been loosely attributable to the Bard, himself: "Lawless are they that make their wills their laws."

*Randolph M. Hammock is a Superior Court Judge, currently sitting in an Independent Calendar ("IC") Court at the Stanley Mosk Courthouse, in which he presides over unlimited civil cases. He graduated from San Diego State University (1980) and the University of San Diego, School of Law (1983). During his almost 25 years of practicing law (primarily as a trial attorney), Judge Hammock was admitted to and actively practiced law in a total of 15 states, as well as over 20 federal district courts and courts of appeal. As such, he is likely to have had passed more bar exams than any other practicing lawyer in the United States. As a trial attorney, he appeared and tried cases in 22 separate states, as well as 54 out of the 58 counties in California. He was appointed as a Superior Court Referee in the juvenile dependency court in 2008, where he served until elected as a Judge of the Los Angeles Superior Court in 2010. He has been a member of the American Board of Trial Advocates (ABOTA) since 2000.*