IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00742-DDD-KAS

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

*Plaintiffs*,

v.

GAIA, INC., JAY WEIDNER, CLIF HIGH, BENJAMIN
ZAVODNICK, ALYSSA MONTALBANO, JIRKA
RYSAVY, BRAD WARKINS AND KIERSTEN MEDVEDICH,

*Defendants*.

---

ALYSSA CHRYSTIE MONTALBANO, individually,

*Counter-Claimant,*

v.

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

*Counter-Defendants,*


LIGHT WARRIOR LEGAL FUND, LLC;
DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
VALERIE YANAROS WILDE, ELIZABETH LORIE,
BRIAN JAMES FLYNN, WILLIAM CAMPBELL,
MATTHEW GROVE, DIANA TERRY, and
CHRISTINA GOMEZ,

*Third-Party Defendants*

---

**THIRD-PARTY DEFENDANT ELIZABETH LORIE'S RENEWED MOTION FOR SANCTIONS AGAINST ALYSSA MONTALBANO**

1

**COMES NOW** Third-Party Defendant, Elizabeth Lorie ("Lorie"), and respectfully requests this Honorable Court impose sanctions against Counterclaimant Plaintiff Alyssa Montalbano ("Montalbano") and grant Lorie her reasonable attorney's fees in defending the frivolous third-party litigation against her. In support of this Motion, Lorie states and alleges as follows:

Montalbano is a Counterclaimant Plaintiff in the above-captioned case, who named Lorie as a third-party Defendant in her almost 500 page *pro se* Answer and Counterclaims. [Doc. 184]. Montalbano asserted multiple claims against Lorie, many of which grouped Lorie into an "enterprise" Montalbano alleged existed with Lorie and other third-party defendants: (1) RICO; (2) fraudulent misrepresentation; (3) violation of the Colorado Consumer Protection Act; (4) "frauds and swindles (mail)"; (5) "frauds by wire, radio or television"; (6) "enticement into slavery human trafficking"; (7) trade secret theft/misappropriation; (8) economic espionage; (9) copyright infringement; (10) money laundering; (11) civil conspiracy; (12) extortion; (13) intentional intrusion of privacy rights; (14) intentional infliction of emotional distress; (15) negligent infliction of emotional distress; and (16) unjust enrichment. Each of the fraud-based claims, which are subject to a heightened pleading standard under federal law, were not stated against Lorie with particularity. In most instances, Montalbano made generalized references to acts and omissions by multiple third-party defendants whom she alleged comprise the "Enterprise." However, Montalbano's allegations were completely devoid of the necessary factual information to put Lorie (or the Court) on notice of the conduct with which *Lorie* was individually charged.

Generally speaking, Montalbano alleged Lorie participated in and conspired in actions which violated Montalbano's constitutional rights, without specifying which constitutional rights Lorie allegedly violated. Montalbano further alleged and accused Lorie of conspiring in a

clandestine human sex trafficking operation by way of using "mind control" tactics, and claimed Lorie engaged in extortion and witness tampering. Such allegations are disrespectful of truth and accuracy. Lorie is clearly not a state actor, and other of Montalbano's claims against Lorie allegedly arose under statutes which did not provide Montalbano with a private cause of action.

Lorie filed a Motion to Dismiss on June 23, 2021. The motion to dismiss was referred to Magistrate Judge Kristen Mix. Magistrate Judge Mix carefully considered the parties' briefs and attached exhibits, the entire case file, and appliable law before issuing a 61-page Report and Recommendation ("R&R") dismissing every single one of Montalbano's claims against Lorie **with prejudice**. Montalbano not only filed a Third-Party Complaint containing statements that Montalbano knew or reasonably should have known were false, but also filed the Third-Party Complaint without any logical purpose but to harass Lorie and the other third-party defendants who were similarly successful in obtaining dismissal of the claims asserted against them by Montalbano with prejudice. Montalbano continued to engage in conduct deserving reprimand, as she subsequently filed a 51-page Objection to the R&R (the "Objection"). [Doc. 290]. In her Objection, Montalbano sought leave to file a Third Amended Complaint, even though she had two previous opportunities to sufficiently plead her claims. Astonishingly, Montalbano began to file proposed amended claims in piecemeal fashion and without court approval.

In her Objections, Montalbano sought to relitigate some of her dismissed claims against Lorie for a *third* time "under the supervision of Court assigned counsel," [Doc. 290 at 15], based on the same facts and circumstances set forth in her prior pleadings. Her Objection raised the identical legal and factual arguments that Magistrate Mix considered and rejected. In doing so, Montalbano argues that the arguments were improperly dismissed due to Magistrate Mix's alleged bias in favor of "rich and famous artists" and "licensed attorneys" and that her claims will be

properly plead once she corrects "formatting errors." [Doc. 290 at 26, 30]. For this reason alone, one can reasonably conclude that Montalbano's Objection was undertaken in bad faith for the improper purpose to harass Lorie and to delay the inevitable dismissal of her claims by the District Court Judge. In her Objection, Montalbano notably abandoned many of the sixteen (16) claims she initially asserted against Lorie. The only claims she continued to maintain against Lorie were (1) RICO; (2) civil conspiracy; (3) fraudulent misrepresentation; (4) abuse of process; (5) negligent infliction of emotional distress; (6) unjust enrichment and (7) CCPA. Although Montalbano consented to the dismissal of her fourth, fifth, eighth, eleventh and seventeenth causes of action against the third-party defendants (including Lorie), she sought to incorporate the facts alleged in support of those claims into her RICO claim, which she argued were improperly dismissed by Magistrate Mix. [Doc. 290 at 15].

Throughout her Objection, Montalbano claimed the District Court must grant her leave to further amend her Complaint to "correct complaint formatting errors under the supervision of Court appointed counsel". She also objected to the dismissal of her first, second, third, seventh, ninth, tenth, twelfth, and twentieth causes of action "on the basis that Judge Mix failed to properly apply the Federal Rules of Evidence concerning presumptions." [Doc. 345 at 11].

On February 17, 2023, District Court Judge Daniel Domenico issued a "Order Overruling Objections and Adopting Recommendation to Dismiss Counterclaims and Third-Party Claims." [Doc. 345]. In this Order, Judge Domenico overruled Montalbano's objections to the R&R, accepted and adopted Magistrate Mix's recommendation, dismissed Montalbano's claims against Lorie (and other counterclaimants and third-party defendants), and denied Montalbano's request foe leave to further amend her claims. [Doc. 345 at p.2]. In deciding to overrule Montalbano's objections, District Judge Domenico liberally construed her pleadings. [Doc. 345 at p.5]. In his

Order, Judge Domenico disagreed with Montalbano, stating "[t]he Federal Rules of Evidence do not apply in this context. Judge Mix properly applied the applicable standard of review." (Doc. 283 at 13). [Doc. 345 at 12]. Judge Domenico also found Judge Mix properly "concluded that, even if all the facts Ms. Montalbano alleges in connection with Claims One through Three, Six, Seven, Nine, Ten, Twelve through Fifteen, and Seventeen through Twenty are true, Ms. Montalbano has not stated any claim that would entitle her to any legal remedy, with the exception of her defamation claim against Mr. Goode." [Doc. 345 at.12].

More specifically, with regards to Montalbano's RICO claim against Lorie (among others), Judge Domenico agreed with Magistrate Mix that the RICO claim was "conclusory and entirely unclear with respect to how the actions of these varied persons and entities make up any kind of enterprise." [Doc. 345 at 11, citing Doc. 283 at 24]. Judge Domenico adopted Magistrate Mix's recommendation that Montalbano's civil conspiracy claim against Lorie be dismissed for similar reasons, holding elsewhere in his opinion that "Ms. Montalbano's allegations are conclusory and do not provide a factual basis from which one can draw a reasonable inference that Mr. Goode, Goode Enterprise Solutions, Light Warrior Legal Fund, Ms. Yanaros and/or Ms. Lorie conspired with each other and/or the third-party defendant judges to accomplish an unlawful act." [Doc. 345 at 25].

Second, with regards to Montalbano's fraudulent misrepresentation claim against Lorie (among others), Judge Domenico noted this claim must be stated with particularity such that the pleading affords Lorie fair notice of Montalbano's claim and the factual ground on which it is based. The Judge found Montalbano cannot satisfy her pleading obligations under Rule 9(b) by referencing the entirety of her voluminous, 756-numbered paragraph pleading and expecting Lorie to "piece together factual averments sufficient to support each of the five elements of fraudulent

5

misrepresentation" as against her individually. [Doc. 345 at 15, citing Doc. 217 at 29-232 and Docs. 121-1 to 121-25]. The Court found Montalbano's approach to be "the antithesis of pleading with particularity as required by Rule 9(b)." [Doc. 345 at 15]. With regards to Montalbano's CCPA claim, it, like her claim against Lorie for fraudulent misrepresentation, was dismissed because Montalbano did not state the claim with particularity. Judge Domenico overruled Montalbano's objections on the grounds that Montalbano "again expects the defendants (and the Court) to hunt for and piece together allegations from the entirety of her voluminous pleading and fails to adequately place the movants on notice of the specifics of her CCPA claims." [Doc. 345 at 16].

Third, with regards to Montalbano's claim for human trafficking, which Montalbano attempts to revive by citing a Chilean law, Judge Domenico held, "[t]his is just the sort of implausible allegation that is so 'wholly insubstantial or obviously frivolous' or 'so patently without merit as to require no meaningful consideration' that it does not justify federal subject-matter jurisdiction." [Doc. 345 at 17]. Even if the Court could find Montalbano's claims regarding remote mind control to somehow be plausible, Judge Domenico found such claims would nevertheless be subject to dismissal with prejudice because Montalbano "cites to no legal authority from the United States that indicates using mind control to remotely manipulate someone into performing labor or services falls within the ambit of 18 U.S.C. §1590(a), which by its text appears to be directed at physically recruiting, providing, or obtaining a person." [Doc. 345 at 18]. In fact, as the Court noted, at least one prior federal court case involving allegations of mind control was dismissed as "simply too irredeemably bizarre to be able to state a plausible claim under *Iqbal/Twombly*." [Doc. 345 at 18, n.4].

Fourth, with regards to Montalbano's claim for trade secrets, Judge Domenico held this claim was properly dismissed by Magistrate Mix because Montalbano "has not taken reasonable

measures to maintain the secrecy of her purported trade secrets." [Doc. 345 at 19-20]. The Court highlights the fact that Montalbano's own admissions in her pleadings confirm she shared her dream journals with Mr. Goode "with the expectation that he would share the records with Mr. Wilcox and the public" and that she publicly filed an excerpt from her dream journal on at least two prior occasions without restricting access to those documents in the court record [Doc. 345 at 19-20 and n.6].

Fifth, with regards to Montalbano's copyright infringement claim, Magistrate Mix dismissed this claim on the grounds that it is preempted by the federal Copyright Act and, even if her claim was not preempted, her claim nevertheless failed because Montalbano did not allege she had a registered right in her dream journal records, and her allegations as to infringement of her registered copyright works was "conclusory." [Doc. 345 at 21]. Fundamentally, Montalbano did not object to Magistrate Mix's findings other than to claim that her copyright infringement claim was not preempted. Judge Domenico agreed with Magistrate Mix, holding "the law is clear that 'no person is entitled to any [copyright] right[s] in any…work under the common law or statutes of any state.'" [Doc. 345 at 20]. As to the other bases for dismissal in the R&R, Judge Domenico reviewed the R&R for clear error on the face of the record, for which he found none.

Sixth, with regards to Montalbano's defamation claim against Lorie, Montalbano's claim was dismissed by Magistrate Mix because Montalbano did not allege that Lorie made any defamatory statements about Montalbano. [Doc. 345 at 21]. Montalbano did not seek to overrule the R&R as to applied to her defamation claim against Lorie. As such, Judge Domenico reviewed the R&R for clear error on the face of the record, for which he found none.

Seventh, with regards to Montalbano's claim against Lorie for deprivation of civil rights against Lorie, Judge Mix dismissed this claim because Montalbano failed to plausibly allege either

7

a due process or an equal-protection violation. [Doc. 345 at 25, citing Doc. 283 at 44-47]. Montalbano did not address this pleading deficiency as it relates to Lorie in her Objection; regardless, her claim was appropriately dismissed because Lorie did not act under color of state law in her capacity as a private attorney representing Goode. [Doc. 345 at 26].

Eighth, with regards to Montalbano's claim for negligent infliction of emotional distress, Judge Domenico adopted Magistrate Mix's recommendation to dismiss this claim with prejudice because Montalbano failed to allege the requisite elements of a claim for negligent infliction of emotional distress. Of note, Montalbano did not object to Magistrate Mix's finding that her pleadings did not allege most of the elements of this claim. Montalbano's Objection claimed only that she feared for her safety. [Doc. 345 at 30].

The arguments and findings summarized above conclusively demonstrate Montalbano's arguments were not only insufficient on their face to withstand a motion to dismiss or to warrant overruling the R&R, but, more importantly for this motion, were objectively frivolous. This conclusion is buttressed by Judge Domenico's decision to deny Montalbano's three motions for leave to file a third-amended Answer, Counterclaims and Third-Party Complaint. In that portion of his opinion, Judge Domenico found "[j]ustice does not require, or even permit, further amendment of Ms. Montalbano's pleading." [Doc. 345 at 35]. Accordingly, Montalbano's actions against Lorie in this case rise to the level of sanctionable conduct. Lorie previously requested sanctions against Montalbano, which Magistrate Mix recommended be dismissed without prejudice because Lorie did not specify the sanctions she sought to have imposed against Montalbano or under what legal authority such sanctions could be imposed against Lorie. This recommendation was adopted by Judge Domenico. [Doc. 345 at 32]. Lorie now resubmits her motion for sanctions against Montalbano.

As sanctions, Lorie seeks an award of her full attorney's fees and costs under Fed. R. Civ. P. 11(b)(1). Alternatively, Lorie seeks this sanction pursuant to this Court's inherent authority to impose sanctions for attorney's fees, costs and expenses to discourage parties from engaging in further abuse of the judicial system and to compensate Lorie for having to incur the costs of defending such a frivolous suit.  Fed. R. Civ. P. 11 requires a party (or her attorneys, if represented by one) to conduct a reasonable investigation into the facts that the party believes will support her claims, and into the laws she believes will provide her with a legal basis for seeking relief from the Court. Under Rule 11, upon presentation to the Court of any paper, the party is certifying that to the best of her "knowledge, information and belief, after an inquiry reasonable under the circumstances, that:

(1) It is not being presented for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) The claims, defenses, and other legal contentions therein are warranted by existing law or a by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) The allegations and other factual contentions have evidentiary support or, if specifically so identified,  are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) The denials of factual contentions are warranted on the evidence of, if specifically so identified, are based on a lack of information or belief."

Fed. R. Civ. P. 11(b). Importantly, "[p]arties who file law suits on a *pro se* basis must comply with the provisions of Rule 11, the same as if they were lawyers." *Weatherspoon v. Miller*, 2011 U.S. Dist. LEXIS 56647, 2011 WL 2133634 *1 (D Colo. May 25, 2011); *Business Guides, Inc. v.*

*Chromatic Communications Enters. Inc.*, 498 U.S. 533, 545-555 (1991); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir. 1996). Rule 11 requires that a "pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and …not interposed for any improper purpose." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993).

Similarly, the district court's inherent power to sanction is derived from the court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 46, 111 S. Ct. at 2133; *Byrne*, 261 F.3d at 1106. Because of its very potency, the court must exercise its inherent power with restraint and discretion. *Chambers*, 111 S. Ct. at 2132. A primary aspect of that discretion is that ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Id*. at 2132–2133. One component of a court's inherent power is the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 2133.

"The key to unlocking a court's inherent power is a finding of bad faith." *Byrne*, 261 F.3d at 1106; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998); *see also Mroz*, 65 F.3d at 1575 ("Invocation of a court's inherent power requires a finding of bad faith."). Bad faith exists when the court finds that a fraud has been practiced upon it, or "that the very temple of justice has been defiled," *Chambers*, 111 S. Ct. at 2133, or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order. *Id*.

As with other types of sanctions, the award of Rule 11 sanctions involves two steps. The first step requires the district court to determine that a pleading violates Rule 11. With regard to the application of Rule 11 to *pro se* plaintiffs, this Court has previously held:

> *Pro se* parties are entitled to have their pleadings reviewed with some measure of liberal deference accorded to their status as *pro se* parties. However, this liberal deference 'does not confer a license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court documents.
>
> The focus of Rule 11 is narrow. 'It relates to the signing of a document and imposes an affirmative duty on each attorney and each party, represented *pro se*, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed.' Even though *pro se* litigants may not have the training and resources of an attorney, they nevertheless must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law.
>
> The Tenth Circuit has adopted the view that 'an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions.' By extension, the actions of *pro se* parties are required to be 'objective reasonable' as well.
>
> A good faith belief in the merit of an argument is not sufficient; the attorney's [or the party's] belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.
>
> The standard is one of reasonableness under the circumstances. Under this standard, the court must determine what a reasonable person in the *pro se* litigant's position would have done. 'Subjective good faith - - that is a pure heart but empty head - - is not defense.'

*Sieverding v. Colo. Bar Ass'n*, 02-M-1950(OES), 2003 WL 22400218, 2003 U.S. Dist. LEXIS 18469 *79-*80 (D. Colo. Oct. 14, 2003)(internal citations omitted), aff'd 126 Fed. Appx 457 (10th Cir. Apr. 22, 2005). Second, the district court must impose an appropriate sanction. *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988). Sanctions should punish present litigation abuse, deter future litigation abuse, streamline court dockets, and facilitate case management. *Merrigan v. Affiliated Bankshares of Colorado, Inc.*, 775 F. Supp. 1408, 1412-1413 (D. Colo. 1991). Both factors warranting the imposition of sanctions are present in this case.

With regards to the first step in this Court's two-step analysis, Montalbano not only failed to make a reasonable inquiry into the factual and legal bases necessary to properly allege her claims, but "had that inquiry thrust upon [her] by others more educated and knowledgeable in the law than [her], and [she] deliberately and continuously chose[] to ignore what [she had] been told." *Sieverding*, 2003 U.S. Dist. LEXIS 18469 at *81-*82. Lorie, through counsel, sent Montalbano correspondence alerting Montalbano to the fact that the Third-Party Complaint violated Rule 11. Lorie warned Montalbano she would seek the imposition of sanctions if Montalbano did not withdraw her claims against Lorie. Exhibit 1. Montalbano refused, which forced Lorie to file a motion to dismiss reiterating the pleading defects of which Lorie complained to Montalbano in Ex.1. As discussed above, Lorie's motion to dismiss was successful, and all of Montalbano's objections to the R&R were overruled.

Montalbano was further warned through motion practice by other third-party defendants of the deficiencies in her third-party complaint, but deliberately ignored all reason and continued to file voluminous pleadings unsupported by any credible evidence or argument. For example, Montalbano's Response to Lorie's motion to dismiss did not offer a rational explanation for asserting constitutional claims against a non-state actor or for asserting claims against Lorie under federal criminal codes. The R&R further clarifies that the Third-Party Complaint against Lorie was not well grounded in fact and was not warranted by existing law or a good faith argument for its extension. Magistrate Mix determined that good cause existed to deny Montalbano leave to further supplement the Third-Party Complaint. The Court held: "**Because Ms. Montalbano has already amended her pleadings,** *see Minute Order* **[various numbers], Ms. Montalbano has given the Court no reason to believe any further amendment would raise substantive issues**."

(emphasis added). This finding was reiterated by District Judge Domenico, who held justice did not require allowing Montalbano to further amend her claims.

With regard to the second step in the Court's analysis, sanctions are both necessary and appropriate in this case. Similar to the plaintiff in *Sieverding*, Montalbano is not an ignorant or naïve plaintiff. She is not a lay person whose pleadings demonstrate a misunderstanding of the law or an innocent misstatement of facts. Montalbano, like the plaintiff in *Sieverding*, is "harboring an obsession with the perceived wrongs of everyone who has had the misfortune of straying into the path of [her] pursuit of [her] misguided vision of justice." *Sieverding*, 2003 U.S. Dist. LEXIS 18469 at *87. Montalbano has demonstrated bad faith in her actions by asserting "wild accusations" and "brazenly accusing" Lorie "of every manner of crime or corruption." *Id.* at *88. The R&R and the Court's Order adopting the same support the reasonable conclusion that Montalbano's claims are so lacking in any legal or factual basis as to have been undertaken for some improper purpose. Montalbano attempts to justify her failure to properly and sufficiently plead her claims in a 51-page Objection only by repeatedly and in bad faith accusing Magistrate Mix of being "biased" and "prejudiced" against poor, *pro-se* litigants and misreading the Complaint. [Doc. 290 at 4]. This wrongful accusation constitutes further evidence of Montalbano's malice and bad faith. It is clear that Montalbano, like the plaintiffs in *Sieverding*, will not be deterred unless and until this Court imposes a substantial monetary sanction upon her.

Montalbano's actions have resulted in a significant waste of both the parties' and the Court's time and resources. As this Court is painfully aware, Montalbano has inundated the parties with frivolous, nonsensical and unnecessarily lengthy filings that not only contained irrelevant information but, more importantly, disregarded controlling case law.  At a minimum, Montalbano must be ordered, as a sanction, to pay all legal fees and costs Lorie has incurred to defend herself

against Montalbano's frivolous and baseless claims. *Sieverding*, 2003 U.S. Dist. LEXIS 18469 at *93-*94.

In determining the amount of a monetary sanction, the court must consider, *inter alia*, the reasonableness of the fees that are sought, the offender's ability to pay, and any other factors that are appropriate under the circumstances, including "the offending party's history, experience and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation and the risk of chilling the type of litigation involved…" *White v. GM Corp.* 908 F.2d 675, 684-685 (10th Cir. 1990). In her Motion seeking the appointment of counsel on her behalf [Doc. 278], Montalbano represents to the Court that she has "limited financial means" and that a $350/hour legal rate is "well beyond [her] budget." [Doc. 278 at 6, 12]. However, Montalbano has not proceeded *in forma pauperis* in this case, has disposable income, and "has paid any filing fees in full…." [Doc. 278 at 6]. Based on the above, Lorie contends Montalbano has the ability to pay. For these reasons, Lorie requests a sanction in the amount of her full attorney's fees and costs.

Should the Court grant Lorie's Motion for Sanctions and determine sanctions are due, Lorie requests the Court enter an order allowing Lorie to file an affidavit of fees and costs in accordance with the requirements of D.Colo.LCivR 54.3. Colo.LCivR 54.3(a) states, "[u]nless otherwise ordered, a motion for attorney fees shall be supported by affidavit." Thus, the rule, by its plain language, applies only to motions for attorney fees – not to motions for sanctions seeking attorney fees and costs as a sanction. Courts customarily order the filing of fee affidavits after awarding fees as a sanction. *Graymore, LLC v. Gray*, No.06-cv-00638-EWN-CBS, 2007 U.S. Dist. LEXIS 84481, 2007 WL 4062706, at *6 (D. Colo. Nov. 15, 2007)("I find Defendant's failure to support his request for fees as a sanction with an affidavit and detailed description of the basis for the fees does not render the motion unviable. Of course, the court would require such information to

14

calculate any fees owed, but it does not need the information to determine whether sanctions are due."); *O'Rourke v. Dominion Voting Sys. Inc.*, No.20-cv-03747-NRN, 2021 U.S. Dist. LEXIS 145664, 2021 WL 3400671, at *323 (D. Colo. Aug. 3, 2021); *Carlson v. Town of Mountain Vill., Colorado*, No. 17-cv-02887-PAB-STV, 2019 U.S. Dist. LEXIS 193794, 2019 WL 5819971, at *8 (D. Colo. Nov. 7, 2019). The affidavit, as required, will include a summary of relevant qualifications and experience "for each person for whom fees are claimed[.]." Colo.LCivR 54.3(b).

**WHEREFORE**, for the foregoing reasons, Third-Party Defendant Elizabeth Lorie respectfully requests this Court grant her Motion and award her reasonable attorney's fees and costs.

Respectfully submitted this 10th day of August, 2023.

        **ROBINSON & HENRY, P.C.**

        /s/ *Alicia Margaret Reinken*
        Alicia Margaret Reinken
        216 16th Street Mall, Suite 750
        Denver, Colorado 80202
        (303) 688-0944
        alicia@robinsonandhenry.com

        *Attorney for Third-Party Defendant, Elizabeth Lorie*

**CERTIFICATE OF SERVICE**

   The undersigned certifies that on this 10th day of August, 2023 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court, United States District Court for the District of Colorado, using the CM/ECF system and was served upon all parties who have entered their appearance.

              **ROBINSON & HENRY, P.C.**

       By: */s/ Alicia Margaret Reinken*