Roth v. Green, 466 F.3d 1179 (2006)
66 Fed.R.Serv.3d 611

466 F.3d 1179
United States Court of Appeals,
Tenth Circuit.

Stephen C. ROTH and Jean E. Gumeson, Plaintiffs,

v.

Michael F. GREEN; Dennis Spruell; Matt Buffington; Brooks Bennett; Hugh Richards; Danny Dufur; Jeff Coleman; Tim Rowell; Tom Halper; Mike Meuer; Ken Brackett; Sam Hager; Roy C. Lane; Jerry Martin; Joey M. Chavez; Al Bell; Sydney Duke Schirard; Dale Wood, individually and in their official capacities; City of Cortez, a public corporation; City of Durango, a public corporation; Town of Mountain Village, a public corporation; Dolores Board of County Commissioners, reads as The Board of County Commissioners for the County of Dolores, a public corporation; La Plata County Board of County Commissioners, reads as The Board of County Commissioners for the County of La Plata, a public corporation; Montezuma County, Board of County Commissioners, reads as The Board of County Commissioners for the County of Montezuma, a public corporation; Bill Owens; Raymond Slaughter, individually and in their official capacities; and unknown Doe defendants 1 through 50, Defendants–Appellees.

and

Robert J. Mulhern, Attorney–Appellant.
Stephen C. Roth and Jean E.
Gumeson, Plaintiffs–Appellants,

v.

Michael F. Green; Dennis Spruell; Matt Buffington; Brooks Bennett; Hugh Richards; Danny Dufur; Jeff Coleman; Tim Rowell; Tom Halper; Mike Meuer; Ken Brackett; Sam Hager; Roy C. Lane; Jerry Martin; Joey M. Chavez; Al Bell; Sydney Duke Schirard; Dale Wood, individually and in their official capacities; City of Cortez, a public corporation; City of Durango, a public corporation; Town of Mountain Village, a public corporation; Dolores Board of County Commissioners, reads as The Board of County Commissioners for the County of Dolores, a public corporation; La Plata County Board of County Commissioners, reads as The Board of County Commissioners for the County of La Plata, a public corporation; Montezuma County, Board of County Commissioners, reads as The Board of County Commissioners for the County of Montezuma, a public corporation; Bill Owens, individually and in his official capacity; Raymond Slaughter, individually and in his official capacity; and unknown Doe defendants 1 through 50, Defendants–Appellees.

Nos. 05–1129, 05–1272.
|
Oct. 30, 2006.

**Synopsis**
**Background:** Arrestees brought § 1983 action against municipalities and state and local officials and 50 "John Does," alleging that stop and seizure of contraband pursuant to "ruse" checkpoint violated Fourth Amendment and that defendants conspired to violate Fourth Amendment. The United States District Court for the District of Colorado, Lewis T. Babcock, J., granted defendants' motions to dismiss or for summary judgment, granted Rule 11 sanctions to defendants, and denied arrestees' motion for sanctions. The Court of Appeals, 123 Fed.Appx. 871,affirmed in part and dismissed appeal in part and granted appellate motion for award of appellate fees against arrestees under § 1988. Following awards on remand, counsel and arrestees both appealed.

**Holdings:** The Court of Appeals, Briscoe, Circuit Judge, held that:

prior appellate decision did not establish law of case barring award of Rule 11 and statutory sanctions against attorney;

district court did not abuse its discretion in imposing sanctions against attorney for filing and pursuing meritless suit;

"safe harbor" letters were sufficient to satisfy local "meet and confer" prerequisite to seeking award of sanctions;

"safe harbor" letters did not satisfy requiring that offending party be served with sanctions motion 21 days before its filing;

motion for Rule 11 sanctions was untimely when filed after complaint had been dismissed;

arrestees' ability to pay should have been considered in setting amount of § 1988 award; and

**Roth v. Green, 466 F.3d 1179 (2006)**
66 Fed.R.Serv.3d 611

considering all appellate fees incurred by defendants on sanctions appeals as well as merits appeal was permissible.

Reversed in part, vacated in part, and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

**Attorneys and Law Firms**

 *1181 Robert J. Mulhern, Telluride, Colorado, for Plaintiffs–Appellants.

 *1182 Katherine Taylor Eubank of Fowler, Schimberg & Flanagan, Denver, Colorado, (Daniel M. Fowler of Fowler, Schimberg & Flanagan; Jonathan A. Cross and Sean J. Lane of Cross Sands and Sares, Glendale, Colorado; Earl G. Rhodes, Jodie L. Behrmann and Jeffrey A. Wells of Younge & Hockensmith, Grand Junction, Colorado; David R. Brougham of Hall & Evans, Denver, Colorado; Danielle Moore, Assistant Attorney General, Colorado Attorney General's Office, Denver, Colorado; Gordon L. Vaughan of Vaughan & DeMuro, Colorado Springs, Colorado, with her on the brief), for the Defendants–Appellees.

Sean J. Lane of Cross Sands and Sares, Glendale, Colorado; Gordon L. Vaughan of Vaughan and DeMuro, Colorado Springs, Colorado, for Defendants–Appellees, City of Cortez, Dennis Spruell, Danny Dufur and Roy C. Lane.

Before BRISCOE, McCONNELL, Circuit Judges, and SILER, Circuit Judge.[*]

**Opinion**

BRISCOE, Circuit Judge.

These appeals challenge a sanction award against counsel pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, as well as a fee award against two individual plaintiffs pursuant to 42 U.S.C. § 1988. Both appeals arise out of the same ill-fated § 1983 action.

Plaintiffs Stephen Roth and Ellen Gumeson, represented by attorney Robert Mulhern, filed suit under 42 U.S.C. § 1983 against various Colorado municipalities, counties, and local and state employees, arguing that the stop and search of their car, as well as their ensuing arrest, was unconstitutional. The district court granted defendants' motions to dismiss and/or for summary judgment. Plaintiffs appealed. While the appeal was pending the district court granted defendants' motions for sanctions and fees against attorney Mulhern. Thereafter, this court affirmed the district court's decision on the merits, granted a motion by one group of defendants for attorneys fees on appeal, and remanded the case to the district court for a determination of the proper amount of fees.

In Appeal No. 05–1129, attorney Mulhern appeals the district court's award of sanctions and fees against him and in favor of defendants. In Appeal No. 05–1272, plaintiffs Roth and Gumeson appeal the fee determination made by the district court on remand. We exercise jurisdiction over both appeals pursuant to 28 U.S.C. § 1291. In Appeal No. 05–1129, we reverse the district court's order granting Rule 11 sanctions against Mulhern and remand to the district court for a determination of the proper amount of fees to be assessed against Mulhern pursuant to 28 U.S.C. § 1927. In Appeal No. 05–1272, we vacate the district court's fee award and remand for further proceedings to include the district court's consideration of the ability of Roth and Gunneson to pay whatever fee amount the court may assess against them.

I.

*Factual history*

On June 15, 2000, officers associated with the Twenty–Second Judicial Drug Task Force in Colorado set up a narcotic "ruse" checkpoint on Highway 145 just north of the town of Rico, in Dolores County, Colorado. As part of this "ruse" checkpoint, the officers placed a sign on the highway that stated a narcotics checkpoint *1183 was being conducted one mile ahead. A second sign was placed further down the highway stating that a drug dog was in use as part of the narcotics checkpoint. The statements made on the signs, however, were false. No narcotics checkpoint existed. Instead, officers were stationed in inconspicuous areas along the highway in the area of the signs watching for any illegal or suspicious activity. No stops were to be made unless officers observed or otherwise had reasonable suspicion of some type of illegal activity associated with a particular vehicle.

At approximately 4:30 p.m. on June 15, 2000, Deputy Hugh Richards of the Montezuma County Sheriff's Department was stationed between the two signs on Highway 145. Richards observed a female passenger in a blue Toyota throw an object out of the window. Based upon his observations, Richards radioed ahead and the blue Toyota was stopped for littering by task force member Dennis Spruell, a sergeant with the

© 2023 Thomson Reuters. No claim to original U.S. Government Works.    2

Cortez (Colorado) Police Department. After initially radioing Spruell, Richards retrieved the object, which turned out to be a wooden pipe with burnt residue and a screen. The pipe smelled of marijuana. Richards again radioed Spruell to advise him of what he had found. The driver of the vehicle, Stephen Roth, was advised that he had been stopped because his passenger had been observed throwing an object out the window. Roth stated that the object was a pop can. Roth was then asked if he would consent to a search of his vehicle. Roth declined to give consent. Spruell informed Roth and the passenger, Ellen Gumeson, that he suspected that marijuana contraband had been thrown from the vehicle, and thus he had reasonable suspicion that further evidence of contraband would be found in the vehicle. During the ensuing search, Spruell and Jeff Coleman, another member of the task force from the Durango (Colorado) Police Department, found a wooden marijuana pipe with burnt residue under the front driver's seat. Inside a cooler located in the back seat, officers found plastic baggies containing psilocybin mushrooms, a Schedule I controlled substance. Both Roth and Gumeson were arrested.

During the ensuing criminal proceedings in Dolores County, Roth unsuccessfully moved to suppress the evidence seized during the search of the vehicle. Gumeson subsequently pled guilty to littering. On December 11, 2001, Roth was found guilty at trial of possession of drug paraphernalia and fined $100.00. Roth appealed his conviction to the Colorado Court of Appeals (CCA), arguing that the evidence seized from his vehicle should have been suppressed because it was the fruit of an unconstitutional checkpoint employed by law enforcement officers, and because Deputy Richards could not reasonably have observed Gumeson throw anything out of the vehicle window and/or likely searched the incorrect area after observing Gumeson's actions. The CCA affirmed Roth's conviction on August 14, 2003. *People v. Roth,* 85 P.3d 571 (Colo.App.2003). In doing so, the CCA held that the use of the fictitious drug checkpoint did not violate Roth's rights under the Fourth Amendment because the stop of his car was based on the officers' individualized suspicion of unlawful activity, and the officers had probable cause to believe the car contained evidence of a crime and thus were justified in searching the car and its contents. Although Roth filed petitions for writs of certiorari with the Colorado Supreme Court and the United States Supreme Court, those petitions were denied. *Roth v. People,* No. 03SC641, 2004 WL 423074 (Colo. Mar.8, 2004), *cert. denied,* 543 U.S. 932, 125 S.Ct. 325, 160 L.Ed.2d 235 (2004).

**\*1184** *The original district court proceedings*
On June 12, 2002, while Roth's state criminal appeal was still pending, Roth and Gumeson initiated this 42 U.S.C. § 1983 action by filing a complaint in federal district court against seventy-six defendants, including various state and county officials (e.g., the governor of the State of Colorado and the heads of at least three municipal police departments whose employees participated in the narcotics task force), several Colorado municipalities, and approximately fifty "unknown Doe defendants." In their complaint, Roth and Gumeson alleged that the defendants "created, established, and executed an unconstitutional drug checkpoint on ... June 15, 2000," that ultimately resulted in Roth and Gumeson being unlawfully stopped, detained, searched and arrested. ROA, Vol. 1, Doc. 1 at 8. The complaint, which alleged four separate causes of action under § 1983 arising out of the general allegations, sought general, special and punitive damages, attorneys' fees and costs, and declaratory relief.

Defendants moved to dismiss the complaint and/or for summary judgment. Rather than responding directly to those motions, Roth and Gumeson asked the district court to stay the case "until the appellate process, including any writs," in Roth's state criminal case was "completed." ROA, Vol. 1, Doc. 46 at 1. The district court denied the motion to stay and ordered Roth and Gumeson to respond to the defendants' pending motions. *Id.,* Doc. 51. After responding to defendants' motions, Roth and Gumeson filed a motion asking the district court to stay all pretrial proceedings. *Id.,* Vol. 2, Doc. 72. That motion was granted by the magistrate judge on February 5, 2003.

On December 5, 2003, after allowing the parties to complete their briefing on the pending motions to dismiss and/or for summary judgment, the district court granted the motions and dismissed the action in its entirety. In doing so, the district court concluded: (1) it was precluded by the *Rooker–Feldman* doctrine [1] from considering Roth's claims because the identical issues were decided against Roth in his state criminal proceedings; (2) Roth was precluded under the doctrine of collateral estoppel from challenging the constitutionality of the ruse checkpoint and his stop, detention and arrest; (3) both Roth and Gumeson were precluded, pursuant to the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), from pursuing their § 1983 claims until such time, if ever, that they had successfully challenged their Colorado state convictions arising from the stop, search and

arrest; (4) the claim of civil conspiracy asserted by Roth and Gumeson under § 1983 failed as a matter of law because they did not allege any "specific facts showing any agreement or collaboration between [the] Defendants to undertake an improper, illegal, or unconstitutional activity," ROA, Vol. 3, Doc. 121 at 13; and (5) in addition to these various bases for dismissal, defendants were entitled to summary judgment because the undisputed facts established that the "ruse checkpoint" was constitutional in light of the decision in *United States v. Flynn,* 309 F.3d 736 (10th Cir.2002), which the district court concluded involved "virtually **\*1185** identical facts and [wa]s dispositive," ROA, Vol. 3, Doc. 121 at 16. Judgment was entered in the case on December 11, 2003.

Roth and Gumeson filed a notice of appeal on January 5, 2004. On that same date, Roth and Gumeson filed a motion asking the district court for permission to proceed on appeal in forma pauperis. The district court denied that motion on February 2, 2004, concluding "th[e] appeal [wa]s not taken in good faith because plaintiffs ha[d] not shown the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *Id.,* Doc. 148 at 2.

*The motions for sanctions and/or fees and costs*
In late December 2003 (after the district court entered judgment but before Roth and Gumeson filed their notice of appeal) and in early January 2004, defendants filed motions for sanctions against Robert Mulhern, the attorney for Roth and Gumeson, and/or for attorney fees and costs pursuant to 28 U.S.C. § 1927. Mulhern filed a lengthy response to those motions on January 14, 2004. According to Mulhern, he filed the complaint on June 12, 2002, out of concern "that the Statute of Limitations was about to expire on June 15, 2002...." *Id.,* Doc. 138 at 1. Mulhern argued that the case was meritorious because: (1) the "case should have been stayed, not dismissed," until the conclusion of Roth's state criminal proceedings, *id.* at 4; (2) the holding in *Heck* was not applicable "to this search and seizure case," *id.;* (3) he was not allowed to engage in discovery; (4) "all [defendants] were at least personally involved," *id.;* (5) the case "should have been analyzed using checkpoint law, not individualized suspicion," *id.;* and (6) "[t]he *Flynn* case [wa]s in conflict with decisions from not only the Supreme Court of the United States, but also a decision from the United States Court of Appeals for the Tenth Circuit, among other courts." *Id.* In addition, Mulhern argued that the defendants failed to meet and confer with him prior to filing their motions, as required by the district court's local rules, and also failed to comply with the procedures outlined in Rule 11 by providing him with copies of their motions at least twenty-one days prior to filing those motions.

On February 13, 2004, Roth and Gumeson filed a motion for sanctions pursuant to Rule 11 and/or attorney fees and costs pursuant to 28 U.S.C. § 1927 against the defendants' attorneys. The only ground offered in support of the motion was that "the defendants' attorneys did not meet and confer with the plaintiffs, through their attorney of record, prior to filing the[ir] motions [for sanctions and/or fees and costs] and did not follow the required procedure for Rule 11 sanctions." *Id.,* Doc. 156 at 2.

On June 15, 2004, the district court granted the defendants' motion for sanctions and/or fees and costs, and denied the plaintiffs' similar motion. *Id.,* Doc. 171. In its order, the district court concluded that Rule 11 sanctions were appropriate because (1) the defendants' respective letters to Mulhern satisfied Rule 11's "safe harbor" requirement, (2) Mulhern's pursuit of the lawsuit, despite numerous Rule 11 "safe harbor" warnings from defendants, "created unnecessary delay and needlessly increased the cost of this litigation," *id.* at 5, (3) the plaintiffs' claims and legal contentions "were not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," *id.* (internal quotation marks omitted), and (4) "the allegations and other factual contentions contained in Plaintiffs' claims lacked evidentiary support and would not have gained evidentiary support after further investigation or discovery." **\*1186** *Id.* Although the district court stated it "ha[d] no information on Mulhern's ability to pay sanctions," or on his "history, experience, or ability," it "consider[ed] his offense severe in terms of wasted time and wasted money," and that "despite many opportunities to change his conduct—including a failed appeal in the Colorado Court of Appeals, and the Rule 11 safe-harbor letters here—Mulhern failed to do so." *Id.* at 5–6. In short, the district court concluded that Mulhern "acted in bad faith," and thus "Rule 11 sanctions [we]re appropriate." *Id.* at 6.

The district court also concluded that "charging fees and costs personally to ... Mulhern was appropriate" under 28 U.S.C. § 1927. *Id.* "In suing twenty-six named Defendants and Does 1–50," the district court concluded, "Mulhern engaged in shotgun litigation, and ignored the realities of the Defendants' non-involvement in the circumstances applicable to his clients." *Id.* In other words, the district

**Roth v. Green, 466 F.3d 1179 (2006)**
66 Fed.R.Serv.3d 611

court concluded, "Mulhern unreasonably and vexatiously multiplied the Defendants in this case, thereby recklessly increasing the amount of attorney and paralegal time spent on litigation, and the costs associated therewith." *Id.* The district court also noted that "[d]efendants who clearly had no liability under the circumstances were forced to obtain counsel and defend against specious claims," and that "Mulhern refused to withdraw claims or dismiss various Defendants against whom claims could not be maintained." *Id.*

In light of this vexatious conduct, "coupled with the need for Rule 11 sanctions," the district court "conclude[d] that Mulhern should be personally liable for the fees and costs associated with [the] ... Defendants' defense under § 1927." *Id.* Together, these fees and costs totaled $92,044.77.

As for the plaintiffs' cross-motion for sanctions and/or fees and costs, the district court characterized it as "audacious," *id.* at 8, and concluded that by filing it "Plaintiffs ha[d] further increased the litigation costs of their fully unsubstantiated lawsuit." *Id.* at 9. The district court also rejected the plaintiffs' arguments that defendants had failed to meet and confer as required by the local rules, or to provide plaintiffs with "safe-harbor" warnings under Rule 11. *Id.*

*This court's award of fees and costs to defendants*
On February 3, 2005, this court issued an order and judgment affirming the district court's order dismissing the action on its merits, affirming the district court's order denying plaintiffs' motion for sanctions, and dismissing for lack of jurisdiction Mulhern's own appeal of the district court's order granting defendants' motions for sanctions and/or fees and costs against him.[2] *Roth v. Green,* 123 Fed.Appx. 871 (10th Cir.2005).

On February 17, 2005, one group of defendants (Dennis Spruell, Danny Dufur, Roy Lane, and the City of Cortez, Colorado) filed a motion for an award of attorney fees and costs pursuant to Fed. R.App. P. 38 and 28 U.S.C. § 1912. In their motion, these defendants asked that the fees and costs be assessed against plaintiffs' attorney, Mulhern. Mulhern filed a response to the motion on behalf of himself, as well as on behalf of Roth and Gumeson. In his response, Mulhern argued that he had a reasonable basis for pursuing the appeal, *1187 sanctioning him would effectively result in the loss of his ability to practice law, and that "Roth and ... Gumeson ... ha[d] no money and c[ould] not pay costs." Add. 10 to Aplt. Br., Resp. at 10. On March 28, 2005, this court granted the defendants' motion in part. Joint App. at 59. Rather than relying on Fed. R.App. P. 38 or § 1912, however, this court awarded costs "in the amount of $363.20 pursuant to Fed. R.App. P. 39," and, "[p]ursuant to 42 U.S.C. § 1988," "award[ed] the defendants attorney's fees on appeal, in an amount to be determined by the district court on remand." *Id.*

On remand, the defendants who prevailed on their motion for fees and costs filed a pleading and supporting documentation asking the district court to award them fees in the amount of $12,049.00. Roth and Gumeson responded, arguing in pertinent part that the requested fees were unreasonable and, as they had in their response filed with this court, that they were "paupers" who could not afford to pay any amount of fees. *Id.* at 148. On May 12, 2005, the district court issued an order granting defendants' motion and directing Roth and Gumeson to pay fees in the requested amount ($12,049.00).

II.

*Appeal No. 05–1129*
In Appeal No. 05–1129, Mulhern challenges, on various grounds, the district court's decision to award sanctions against him and in favor of all the defendants pursuant to Rule 11 and 28 U.S.C. § 1927. We review for abuse of discretion the district court's decision to impose Rule 11 sanctions against Mulhern. *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.,* 935 F.2d 1152, 1155 (10th Cir.1991). Likewise, we review a district court's award of § 1927 sanctions for an abuse of discretion. *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 265 (10th Cir.1995). Notably, this abuse of discretion standard does "not preclude [our] correction of a district court's legal errors...." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 402, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). In other words, a district court will be deemed to have abused its discretion if its decision to impose sanctions under either Rule 11 or § 1927 "rest[ed] on an erroneous view of the law...." *Id.* (internal quotation marks omitted).

  a) *Did the "law of the case" preclude the district court from issuing sanctions?*
In his first issue on appeal, Mulhern contends that this court, in deciding the first set of appeals, concluded he should not be sanctioned, thereby establishing the "law of the case" and precluding the district court from deciding the issue again.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (internal quotation marks omitted). Thus, "when a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.,* 53 F.3d 1181, 1183 (10th Cir.1995).

Applying those principles to the case at hand, the question is whether this court previously decided, as a matter of law, that Mulhern was not subject to sanctions under either Rule 11 or § 1927. After this court resolved the three prior appeals (by affirming the district court's rulings in two of those appeals and dismissing the third appeal for lack of jurisdiction), one group **1188* of defendants (Dennis Spruell, Danny Dufur, Roy Lane, and the City of Cortez, Colorado) filed a motion asking this court to assess attorney fees and costs against Mulhern pursuant to Fed. R.App. P. 38 and 28 U.S.C. § 1912. This court ultimately granted the motion in part, but instead of assessing fees and costs against Mulhern pursuant to Fed. R.App. P. 38 or § 1912, assessed fees against Roth and Gumeson pursuant to § 1988.

There are several reasons why this court's prior order did not decide the issue of Mulhern's liability for sanctions under Rule 11 or § 1927. To begin with, neither the defendants' motion nor this court's order mentioned or otherwise cited either Rule 11 or § 1927, the two authorities relied upon by the district court in sanctioning Mulhern. And for good reason. Rule 11, which "focuses only on a challenged pleading or written motion," *Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1223 (10th Cir.2006), "is generally employed in the district court, whereas Rule 38 [the rule cited in defendants' appellate motion] is used to sanction groundless appeals." *In re 60 East 80th Street Equities, Inc.,* 218 F.3d 109, 118 n. 4 (2d Cir.2000). Although § 1927 is "available to an appellate court," most appellate sanctions are imposed under Rule 38. *Id.* Second, and relatedly, this court's rejection of sanctions under Rule 38 or costs under § 1912 could have no bearing on the issue of the propriety of the district court's sanctions, both because the statutes differ in their focus, and because at issue before this court in the prior appeals was Mulhern's conduct in pursuing those appeals, whereas the question at issue before the district court in imposing sanctions was Mulhern's conduct in filing and pursuing the § 1983 claims in the district court. Third, the issue of sanctions under Fed. R.App. P. 38 is a matter of discretion. The fact that this court chose not to exercise that discretion and impose sanctions against Mulhern has no relevance to, and thus no impact on, the district court's decision to impose sanctions under Rule 11 and § 1927. *E.g., Wasko v. Moore,* 172 Fed.Appx. 791, 792 (10th Cir.2006) (affirming district court's award of Rule 11 sanctions, but denying appellee's motion for sanctions pursuant to Fed. R.App. P. 38). Fourth, and finally, this court's ruling on the motion for sanctions occurred after the district court granted the defendants' motions for sanctions, and thus could not have established the "law of the case" for purposes of the motion that was before the district court.

In sum, we conclude that this court's prior ruling on the motion for sanctions had no bearing on the district court's order sanctioning Mulhern under Rule 11.

*b) Did the § 1983 claims have merit?*
Mulhern next contends that sanctions should not have been imposed against him because the § 1983 claims asserted in the complaint had merit. More specifically, Mulhern argues that (a) "the legal contentions [we]re warranted by existing law and by non‑frivolous arguments for the reversal of existing law," including "the *Flynn* case," (b) "the allegations and other factual contentions ha[d] evidentiary support," and (c) "the claims [we]re not being presented to harass, cause unnecessary delay, or for the needless increase in the costs of the litigation in this case." Aplt. Br. at 23. In addition, Mulhern argues, the district court should have granted his request to stay the case pending the outcome of Roth's state criminal proceedings and, had the district court done so, "very little time, effort, and/or money would have been expended by the Court and/or [the defense] attorneys in this case." *Id.* at 27.

The district court noted, and we agree, that there were a host of legal impediments to Roth and Gumeson prevailing on **1189* their claims. To begin with, the majority of the defendants named in the complaint had, at best, only tangential relationships to the "ruse" checkpoint, and thus were not properly named as defendants in the complaint. For example, defendant Bill Owens, the Governor of the State of Colorado, was not alleged to have had any direct connection with, or participation in, the "ruse" checkpoint.

Even with respect to the named defendants who directly participated in the "ruse" checkpoint, it is clear that their conduct was entirely legal. Although Mulhern continues to maintain that the claims asserted in the complaint were

not controlled by our decision in *Flynn,* he is mistaken. In *Flynn,* the defendant (Mack Flynn), while driving on I–40 in Muskogee County, Oklahoma, encountered two road signs nearly identical to those encountered by plaintiffs Roth and Gumeson in this case (the first said "Drug Checkpoint 1/3 mile ahead" and the second said "Drug Dogs in Use"). The defendant, upon seeing the signs, "made an abrupt lane change and immediately took the [nearest] exit ramp" off of I–40. 309 F.3d at 737. At the top of the exit ramp, the defendant briefly stopped his car while his passenger "opened the door and dropped a large sack from the car." *Id.* Officers who were surveilling the highway examined the sack and determined it contained narcotics (it was later verified to be methamphetamine). The defendant was then stopped, placed under arrest, and charged with various federal offenses in connection with the incident. After the district court denied his motion to suppress, the defendant entered a conditional guilty plea to four drug-related offenses. On appeal, the defendant argued, in pertinent part, that his arrest was the result of "law enforcement's illegal conduct in operating a narcotics checkpoint." *Id.* at 738 (internal quotation marks omitted). We rejected that argument, concluding that "[t]he posting of signs to create a ruse does not constitute illegal police activity," and that the defendant "never reached a drug checkpoint." *Id.; see also id.* at 739 ("The creation of a ruse to cause the defendant to abandon an item is not illegal.").

If there were any doubts about the legality of the ruse utilized by defendants in this case (and it appears that, even prior to *Flynn,* the legality of such a ruse was clear), those doubts should have ceased when we issued *Flynn.* Mulhern, in turn, upon receiving notice of the *Flynn* decision (and the record indicates he was repeatedly advised of the decision by the defendants in their respective letters to him), should have voluntarily dismissed the complaint. Stated differently, it was unreasonable, and a violation of his obligations as a licensed attorney, to continue to pursue the claims after the issuance of *Flynn.* Although Mulhern now argues that a reasonable basis exists for overruling the *Flynn* decision, he fails to offer any such basis.

Mulhern's assertion that he "had" to file the complaint to avoid the running of the statute of limitations, and that, in turn, the district court had an obligation to stay the case pending the outcome of Roth's state criminal proceedings, is simply wrong. "A plaintiff may not bring a civil rights suit if a favorable result in the suit would necessarily demonstrate the invalidity of an outstanding criminal judgment against the plaintiff." *Smith v. Gonzales,* 222 F.3d 1220, 1222 (10th Cir.2000) (citing *Heck,* 512 U.S. at 487, 114 S.Ct. 2364). As correctly noted by the district court, that was precisely the situation here: by asserting that they were the victims of an unconstitutional drug checkpoint, Roth and Gumeson were effectively questioning the validity of their arrests and convictions. Thus, to recover damages based on their allegations, Roth **\*1190** and Gumeson were first obligated to " 'prove that the[ir] conviction[s] ... ha[d] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Id.* (quoting *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364). Not until they successfully did so would their § 1983 claims have arisen. *Id.* In other words, " '[b]ecause the[ir] cause[s] of action d[id] not accrue until such time, the applicable statute of limitations d[id] not begin to run until the same time.' " *Id.* (quoting *Heck,* 512 U.S. at 489–90, 114 S.Ct. 2364). Thus, Mulhern was in no way obligated to file suit against defendants, and indeed clearly should have waited until such time, if ever, as the Colorado state courts granted relief to Roth and Gumeson from their convictions.

In sum, the district court did not abuse its discretion in concluding that Mulhern violated the provisions of both Rule 11 and § 1927 in filing and pursuing the § 1983 claims on behalf of Roth and Gumeson.

*c) Did the defendants fail to meet and confer with Mulhern?*

Mulhern contends that sanctions were improperly imposed against him because the defendants failed to first "meet and confer" with him prior to filing their motions for sanctions, as required by Rule 7.1 of the district court's local rules. We review a district court's application of its local rules for abuse of discretion. *Hernandez v. George,* 793 F.2d 264, 268 (10th Cir.1986).

District of Colorado Local Rule 7.1 provides, in pertinent part, as follows:

> **A. Duty to Confer.** The court will not consider any motion, other than a motion under Fed.R.Civ.P. 12 or 56, unless counsel for the moving party or a pro se party, before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel or a pro se party to resolve the disputed matter. The moving party shall state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule.

D.C. Colo. L. Civ. R. 7.1.

In its order granting defendants' motions for sanctions, the district court rejected Mulhern's assertion that defendants failed to comply with Local Rule 7.1. Specifically, the district court noted that each set of defendants sent Mulhern a "warning or 'safe-harbor' " letter outlining the deficiencies of each claim asserted in the complaint, asking that Mulhern voluntarily dismiss the complaint, and warning that Mulhern's failure to do so would result in the filing of motions for sanctions and fees. ROA, Vol. 3, Doc.171 at 9. In the district court's view, these letters "substantially satisf[ied] ... the local rule." *Id.*

Mulhern offers four reasons why the defendants' letters should not be deemed sufficient to satisfy Rule 7.1's "meet and confer" requirement. First, he argues that if defense counsel "did meet and confer [with him], they would have stated and were required to state in their sanctions motions and/or certify their specific efforts." Aplt. Br. at 10. Second, he argues that the letters "did not say anything about Rule 7.1 A or that the letters were meet and confer letters." *Id.* Third, he argues that the letters failed to address each of the grounds ultimately asserted by defendants in their respective motions to dismiss and/or for summary judgment. Fourth, he argues that the defendants' letters were sent to him "up to eleven (11) months prior to [defendants'] filing the motions for sanctions," and thus did not meet the spirit of Rule 7.1. *Id.* at 12.

*1191 We reject Mulhern's arguments and conclude that the district court did not abuse its discretion in applying Rule 7.1. As noted, each letter advised Mulhern that, in the defendants' view, the claims asserted in the complaint were, for various reasons, meritless and should therefore be voluntarily dismissed. Further, each letter provided Mulhern with notice that, should he fail to voluntarily dismiss the complaint, defendants would move for sanctions against him. In short, each letter effectively complied with Local Rule 7.1 by attempting to seek a resolution of the issue (i.e., the frivolousness of the plaintiffs' claims) without first seeking resort to the district court's intervention. Although Mulhern complains that defendants failed to outline, in their motions, their efforts to meet and confer, he acknowledges that defendants attached to their motions copies of the letters they sent to him. In our view, the district court did not abuse its discretion in concluding that this "substantially satisfied" the requirements of Rule 7.1. Lastly, Rule 7.1 is silent with regard to precisely when the parties must meet and confer prior to the filing of a related motion. Thus, it was not a violation of Rule 7.1 for defendants to wait several months after sending their letters to Mulhern before filing their motions for sanctions (indeed, it arguably favored Mulhern by providing him with a considerable period of time in which to voluntarily dismiss the complaint).

*d) Did defendants follow the procedures outlined in Rule 11?*

Finally, Mulhern contends the district court should not have granted the defendants' motions for Rule 11 sanctions because defendants "did not serve [him] with their Rule 11 motions prior to filing the motions," and thus violated the so-called "safe harbor" provision of Rule 11. Aplt. Br. at 17. Mulhern also contends that "Rule 11 required that the motions for sanctions were to be served and filed before the conclusion of the civil rights case." *Id.* at 18.

Federal Rule of Civil Procedure 11 provides, in pertinent part, as follows:

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) **How Initiated.**

(A) **By Motion.** A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. * * *

Fed.R.Civ.P. 11(c).

The first question raised by Mulhern is whether defendants complied with the "safe harbor" provisions outlined in Rule 11(c)(1)(A). As noted, that subsection states that motions for sanctions "shall be served ... but not filed with or presented to the court unless, within 21 days after service of the motion"

**Roth v. Green, 466 F.3d 1179 (2006)**
66 Fed.R.Serv.3d 611

the challenged pleadings or claims have not been "withdrawn or appropriately corrected." Although defendants all sent Mulhern **\*1192** warning letters well in advance of filing their motions for sanctions, it is uncontroverted that they did not, as required by subsection (c)(1)(A), serve him with copies of their actual motions for sanctions twenty-one days prior to filing those motions. Indeed, it appears from the record on appeal that the motions were served on Mulhern at the same time as, or after, the motions were actually filed.

As they did in the district court, however, defendants contend that the warning letters they sent to Mulhern months in advance of filing their motions for sanctions effectively satisfied the requirements of subsection (c)(1)(A) by providing Mulhern with notice of their intent to seek sanctions and an opportunity to withdraw the complaint prior to them filing their motions. Although the district court agreed with defendants, we conclude, for the reasons discussed below, that defendants' letters were not sufficient to satisfy the requirements of subsection (c)(1)(A), and thus the district court abused its discretion in granting defendants' motions for Rule 11 sanctions.

Contrary to defendants' arguments, nothing in subsection (c)(1)(A) suggests that a letter addressed to the alleged offending party will suffice to satisfy the safe harbor requirements. Rather, the plain language of subsection (c)(1)(A) requires a copy of the actual motion for sanctions to be served on the person(s) accused of sanctionable behavior at least twenty-one days prior to the filing of that motion. This conclusion is bolstered by the Advisory Committee's Notes to the 1993 amendment to Rule 11 (which added the safe harbor provision):

> The rule provides that requests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief in another motion. *The motion for sanctions is not, however, to be filed until at least 21 days (or such other period as the court may set) after being served.* These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, *after receiving the motion,* it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. * * *
>
> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation *before proceeding to prepare and serve a Rule 11 motion.*

Fed.R.Civ.P. 11, advisory committee notes, 1993 Amendments (emphasis added). In other words, the Advisory Committee's Notes clearly suggest that warning letters, such as those sent by defendants to Mulhern, are supplemental to, and cannot be deemed an adequate substitute for, the service of the motion itself.

The reason for requiring a copy of the motion itself, rather than simply a warning letter, to be served on the allegedly offending party is clear. The safe harbor provisions were intended to "protect[ ] litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effects, formaliz [e] procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourag[e] the withdrawal of papers that violate the rule without involving the district court...." 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1337.2, at 722 (3d ed.2004). Thus, "a failure to comply with them [should] result in the rejection of the motion for sanctions...." *Id.* at 723.

**\*1193** To be sure, the Seventh Circuit has, as noted by defendants, held that a letter sent to an offending party, rather than a copy of the actual motion, can constitute substantial compliance with Rule 11(c)(1)(A). *See Nisenbaum v. Milwaukee County,* 333 F.3d 804, 808 (7th Cir.2003). We find this decision unpersuasive, however, because it contains no analysis of the language of Rule 11(c)(1)(A) or the Advisory Committee Notes, cites to no authority for its holding, and indeed is the only published circuit decision reaching such a conclusion. *See* Wright and Miller, supra, § 1337.2, at 726 (citing cases).

Mulhern also contends that the motions for sanctions should have been denied because they were not filed until after the district court had dismissed the complaint. We agree. "The addition of the safe harbor provision in the 1993 amendment [to Rule 11] dramatically changed the effect that a final judgment or the dismissal of the claim has on the possibility of a Rule 11 proceeding." Wright and Miller, *supra,* § 1337.2, at 727. "[S]ervice of a sanctions motion after the district court has dismissed the claim or entered judgment prevents giving effect to the safe harbor provision or the policies and procedural protections it provides, and it will

be rejected." Id.; see Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389 (4th Cir.2004) ("Because the rule requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted."); Tompkins v. Cyr, 202 F.3d 770, 788 (5th Cir.2000) (affirming denial of motion for Rule 11 sanctions made after completion of trial); Barber v. Miller, 146 F.3d 707, 710 (9th Cir.1998) (holding that a party cannot wait until after summary judgment to move for sanctions, even if that party informally warned the offending party about the potential of Rule 11 sanctions); Ridder v. City of Springfield, 109 F.3d 288, 297 (6th Cir.1997) (holding that "a party cannot wait until after summary judgment to move for sanctions under Rule 11"); see also AeroTech, Inc. v. Estes, 110 F.3d 1523, 1528–29 (10th Cir.1997) (concluding that Rule 11 sanctions were unavailable to defendant who moved for sanctions after plaintiff moved to voluntarily dismiss its claims against defendant).

For these reasons, we conclude the district court abused its discretion in granting defendants' motions for sanctions under Rule 11. Because, however, the district court also awarded defendants fees under § 1927, we conclude the proper course is to reverse and remand to the district court to determine the proper amount of fees and costs to be assessed under § 1927 (i.e., "the excess costs ... and attorneys' fees reasonably incurred because of" his unreasonable and vexatious conduct).

### Appeal No. 05–1272

In Appeal No. 05–1272, Roth and Gumeson challenge the district court's May 12, 2005 order directing them to pay attorney fees in the amount of $12,049.00. "We review both the court's decision to award attorney's fees and the reasonableness of the amount awarded for an abuse of discretion." Houston v. Norton, 215 F.3d 1172, 1174 (10th Cir.2000).

#### a) Inability to pay

In the first of their two arguments on appeal, Roth and Gumeson contend that the district court, in determining the reasonableness of the fee award, abused its discretion by failing to take into account their inability to pay. In support of this argument, Roth and Gumeson state that they are paupers who simply cannot afford to pay any award. Roth and Gumeson assert that the district court's fee award will effectively penalize them by forcing them "into financial ruin and bankruptcy...." Aplt. Br. at 5. Thus, they argue, **\*1194** the district court's fee award violates their due process rights.

In deciding this issue, it is necessary to begin with the statute under which the fee award was issued. As noted, the fee award originated at the conclusion of the prior set of appeals, when a group of defendants moved for costs and fees and we granted their motion in part and awarded them fees pursuant to 42 U.S.C. § 1988. Section 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b). Construing this statute, the Supreme Court has held that the prevailing party in a civil rights case "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Newman v. Piggie Park Enterp., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Although we have not addressed the issue, "[a]ll the courts of appeals which have addressed the issue have concluded that a non-prevailing plaintiff's ability to pay is not a proper factor to consider in determining *whether* to award attorneys' fees against [the plaintiff], but may be considered when determining *the amount* of the attorneys' fees to be awarded against that party."[3] Wolfe v. Perry, 412 F.3d 707, 723–24 (6th Cir.2005) (italics in original; internal quotation marks omitted); see id. (citing cases); Alizadeh v. Safeway Stores, Inc., 910 F.2d 234, 238–39 (5th Cir.1990) (holding that a party's financial condition is not a proper factor to consider in determining whether to award fees against that party, but is a factor that should be considered in fixing the amount of such an award); Miller v. Los Angeles County Bd. of Educ., 827 F.2d 617, 621 (9th Cir.1987) (holding that the amount of an award should not subject the non-prevailing "plaintiff to financial ruin"). We adopt and proceed to apply that same rule here.

Roth and Gumeson argued to the district court, prior to its determining the amount of the fee award, that they were paupers who could not afford to pay any amount of fees. Joint App. at 148 (detailing each plaintiff's monthly income and expenses). The district court, in its order establishing the amount of the fee award, rejected this argument on the grounds that the plaintiffs' ability to pay "may be a factor when determining whether to award fees—which has already been decided by the Tenth Circuit—not when assessing the proper amount of the award, which is my charge here on

Roth v. Green, 466 F.3d 1179 (2006)
66 Fed.R.Serv.3d 611

remand." *Id.* at 171. In light of the above-cited authority, however, just the opposite is true, i.e., the plaintiffs' ability to pay was not a relevant factor in determining *whether* to award fees against them, but was a relevant factor for the district court to consider in determining *the amount* of the fee award. Thus, the district court abused its discretion in failing to take into account the plaintiffs' ability to pay, and the fee award must be vacated and the case remanded for further proceedings on the fee issue.

*b) Reasonableness of amount of fee award*

In their second argument, Roth and Gumeson argue that the amount of fees **\*1195** assessed by the district court was unreasonable (and thus an abuse of discretion) because it represented the fees incurred by the defendants' attorneys in responding to all three of the prior appeals (i.e., the appeal of the dismissal of the complaint on the merits, the appeal of the sanction award against Mulhern, and the appeal of the denial of plaintiffs' cross-motion for sanctions), rather than just the fees incurred in responding to the appeal by Roth and Gumeson of the district court's dismissal of their § 1983 claims.

Roth and Gumeson asserted this same argument below. The district court rejected it, stating:

> The three appeals in this matter were consolidated for oral argument in front of the Tenth Circuit. Defendants' counsel did not separate out the time attributable to the other appeals—which related solely to my award of sanctions, fees, and costs—when preparing for oral argument. I agree with Defendants that it is reasonable to include all of the time spent preparing for the argument to the appellate court, despite the fact that the argument included other related appeals.

Joint App. at 171.

Roth and Gumeson fail to offer any rational arguments, let alone any authority, establishing that the district court abused its discretion in including in the fee award amounts related to work spent by defense counsel on all three appeals. As the relevant facts establish, all three of the prior appeals arose out of plaintiffs' filing, and ultimately the dismissal, of their § 1983 claims. This includes the two appeals that pertained to the sanctions issues, since those issues directly pertained to whether or not Mulhern had a reasonable basis for filing the claims in the first place, and for continuing to maintain those claims after receiving the various warning letters from defense counsel. Moreover, the defendants were the "prevailing party" with respect to all of those related issues, and thus appear to have been entitled to the full amount of the fees incurred pursuant to § 1988(b). Thus, the district court did not abuse its discretion in taking into account all of the fees incurred by defendants in responding to the three related appeals. *Cf. Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that fees cannot be awarded under § 1988 for "unrelated claims").

In Appeal No. 05–1129, we REVERSE the district court's order granting Rule 11 sanctions against Mulhern and in favor of defendants, and REMAND to the district court for a determination of the proper amount of fees to be assessed against Mulhern pursuant to 28 U.S.C. § 1927. In Appeal No. 05–1272, we VACATE the district court's fee award and REMAND for further proceedings to include the district court's consideration of the ability of Roth and Gumeson to pay whatever fee amount the court may assess against them.

**All Citations**

466 F.3d 1179, 66 Fed.R.Serv.3d 611

---

## Footnotes

\*    The Honorable Eugene E. Siler, Jr., Circuit Court Judge, Sixth Circuit, sitting by designation.

1    The *Rooker–Feldman* doctrine, based on two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v.*

**Roth v. Green, 466 F.3d 1179 (2006)**
66 Fed.R.Serv.3d 611

*Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), "prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis,* 546 U.S. 459, ——, 126 S.Ct. 1198, 1199, 163 L.Ed.2d 1059 (2006) (internal quotation marks omitted).

2   This court concluded it lacked jurisdiction over the district court's order granting defendants' motions for sanctions and/or fees and costs against Mulhern because, at the time of its decision, the district court had not entered an order determining the amount to be awarded to one group of defendants (the district court ultimately issued an order in that regard on February 15, 2005).

3   In response, defendants "concede that the Tenth Circuit has held that a district court should consider the plaintiff's ability to pay in determining the amount of fees." Aplee. Br. at 3. In support of this concession, defendants cite to *White v. Gen. Motors Corp.,* 908 F.2d 675 (10th Cir.1990). *White,* however, did not deal with an award of fees under § 1988, but rather with the appropriate amount of sanctions under Rule 11. Thus, *White* is not controlling.

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.