IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00742-DDD-KAS

JAMES COREY GOODE, and
GOODE ENTERPRISE SOLUTIONS, INC,

     Plaintiffs and Counter Defendants,

v.

GAIA, INC,
JAY WEIDNER,
BENJAMIN ZAVODNICK,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH,

     Defendants.

ALYSSA MONTALBANO,

     Defendant, Counter Claimant, and Third-Party Plaintiff,

v.

DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION,

     Third-Party Defendants.
_____

**RECOMMENDATION OF UNITED STATE MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on Defendant Alyssa Montalbano's ("Montalbano")

**Motion to Dismiss Second Amended Complaint [#111]** [#352] (the "Motion").[1]

_____

[1]  The District Judge permitted Defendant Montalbano to file the present Motion after the deadline to answer or otherwise respond to the Second Amended Complaint [#111], filed December 8, 2020, and she did so by the District Judge's deadline.  *See Order* [#348] at 9 n.3.

Plaintiffs filed a Response [#368] in opposition to the Motion [#352],[2] and Defendant Montalbano filed a Reply [#378]. The Motion [#352] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). The Court has reviewed these briefs, the entire case file, and the applicable law, and is fully advised in the premises.  For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#352] be **GRANTED**.

## I. Background

The primary allegations in the Second Amended Complaint [#111] concerning Defendant Montalbano are as follows.[3] Plaintiff James Corey Goode ("Goode") alleges that he "is an educational and motivational speaker, influencer, author and media figure and is well-known and respected in the Conscious Community." *Second Am. Compl.* [#111] ¶ 2. Plaintiff Goode alleges that he "has undergone years of repeated stalking and harassment by Montalbano that unfortunately, even though she has lost the case she brought against him, has been assessed attorneys fees for frivolous prosecution, and received a Report and Recommendation from a Magistrate [Judge] that she was delusional and that her case should be dismissed, still shows no sign of going away." *Id.* ¶ 71.

---

[2] In their Response [#368], Plaintiffs move the Court to award them attorney fees from Defendant Montalbano as a sanction under Colo. Rev. Stat. § 13-17-102. *Response* [#368] at 23. Pursuant to D.C.COLO.LCivR 7.1(d): "A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." Thus, Plaintiffs' request is denied without prejudice.

[3] In determining whether an operative complaint states a claim for relief, the Court views the allegations in a light most favorable to the plaintiff, as the non-moving party.  *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019).

Plaintiff Goode states that he "has had to seek a TRO/Stalking Order against Montalbano twice in the last two years due to her repeated stalking, threats, and invasion of Mr. Corey Goode's privacy." *Id.* ¶ 72. He alleges that she "has stalked Mr. Goode by incessantly and repeatedly contacting and attempting to contact him with the sole purpose of coercing him into some fictitious and fanciful relationship that she has concocted in her mind." *Id.* ¶ 73. He avers that, "[i]n retaliation to Mr. Goode's Stalking/TRO lawsuit filed on or around June 15, 2018, Montalbano opened a lawsuit in Mesa County against Mr. Goode on June 25, 2018." *Id.* ¶ 74. He alleges that 36 filings were made in less than three months and that these "filings are replete with Montalbano's fanciful ideas of being married to Mr. Goode in another dimension, having romantic meetings through astral projection, and other disturbing stories as well as a painstaking detailed review of Mr. Goode's career and personal life details." *Id.* ¶ 75.

Plaintiff Goode's counsel construed Defendant Montalbano's claims in the state court action as implicating copyright, and so Plaintiff Goode removed that action to federal court in September 2018. *Id.* ¶ 76. After removal, Defendant Montalbano amended her claims "at the suggestion of Judge Moore and after Magistrate [Judge] Gallagher recommended dismissal of the action," and the lawsuit was remanded to state court in December 2018. *Id.* ¶ 77. Plaintiff Goode states that, in the two months the case was in federal court, there were 80 docket entries and that "[o]ver 95% of the filings in both [the state and federal] cases were by Montalbano, most stricken and/or ignored by the judges due to their sheer unfounded (in legal or reason), baseless and innocuousness nature." *Id.* ¶¶ 78-79. Plaintiff Goode asserts that "[t]he amount of filings mounted after removal . . . has reached over a hundred," that "[a]ll have been sent to Mr. Goode," and that "[a]ll

have been so voluminous that they necessitated packaging in boxes and caused repeated and continuing emotional distress." *Id.* ¶¶ 80-81.

Plaintiff Goode states that, "[f]or two years now [he] has dealt with Montalbano's repeated harassment, defamation and unwanted affections and attention," and that, "after years of Montalbano's ongoing and repeated harassment, stalking, and unwanted contact and attention, Mr. Goode has reached the point where he fears an impending attack of Montalbano's intense focus resulting in harm to himself and his family." *Id.* ¶¶ 82-83. Defendant Montalbano has also "filed multiple motions against the Judge in the Mesa [County] action calling for his recusal for 'perjury' and accusing him of working with Mr. Goode and his counsel." *Id.* ¶ 86.

In addition, Plaintiff Goode alleges that Defendant Montalbano "has created a YouTube account purely for the purpose to harass, defame, threaten and discredit Mr. Goode." *Id.* ¶ 87. He states that, on this YouTube channel, she "reads aloud—for hours at a time—her voluminous, nonsensical court filings and inserts delusional commentary about her imaginary husband-and-wife or 'twin flame' relationship she has been asserting since at least 2018 exists between herself and Mr. Goode." *Id.* ¶ 88. He states that she "accuses Goode of criminal acts and links her channel to [Defendant] Zavodnick and [Defendant] Weidner's YouTube channels." *Id.*

Other allegations concerning Defendant Montalbano are somewhat sporadically provided in the Second Amended Complaint [#111]. Plaintiff Goode alleges that Defendant Montalbano and others "consistently tag Mr. Goode and use the Goode Marks in their Social Media posts—to ride off of the notoriety and reach of Mr. Goode's followers," and they "make repeated misuse of the Goode Marks while defaming and

harassing Goode—further harming Goode by spreading untruths and baseless statements while bolstering their viewership through the use of 'tagging' on various social media platforms." *Id.* ¶ 58. He states that, "[u]pon information and belief, the aforementioned malicious postings by Zavodnick, High and Montalbano contributed to Goode's blacklisting" from certain "major ufology events [and] leading ufology radio shows[.]" *Id.* ¶ 89. He also states that Defendant Montalbano is part of an enterprise whose purpose is "to accuse Goode of criminal activities through social media outlets and other wirings and use extortion . . . , harassment and any other manipulative tactic to deprive him of his livelihood." *Id.* ¶¶ 104-05. He further alleges that Defendant Montalbano uses "the hashtag '#CoreyGoode' so that she can reach the tens of thousands of people who follow Mr. Goode's hashtag," because her own "following on Twitter is one-tenth as large." *Id.* ¶ 113.

Based on these allegations, Plaintiffs asserts nine causes of action against Defendant Montalbano: (1) Claim II: Civil RICO (Racketeer Influenced and Corrupt Organizations Act) Conspiracy Pursuant to 18 U.S.C. § 1962(d), *id.* ¶¶ 141-43; (2) Claim III: Federal Trademark Infringement (Under 15 U.S.C. §§ 1114 and 1125(a)), *id.* ¶¶ 144-57; (3) Claim IV: False Designation of Origin and Federal Unfair Competition Under 15 U.S.C. § 1125, *id.* ¶¶ 158-61; (4) Claim V: Colorado Common Law Trademark and Trade Name Infringement, *id.* ¶¶ 162-65; (5) Claim VI: Colorado Common Law Unfair Competition, *id.* ¶¶ 166-72; (6) Claim VII: Colorado Consumer Protection Act, *id.* ¶¶ 173-81; (7) Claim XIII: Slander Per Se, *id.* ¶¶ 195-99; (8) Claim XIV: Libel Per Se, *id.* ¶¶ 200-04; and (9) Claim XV: Tortious Interference with a Business Expectancy, *id.* ¶¶ 205-08.

As a result, Plaintiffs seek various forms of monetary and non-monetary relief. *Id.* at 40-41.

In the present Motion [#352], Defendant Montalbano seeks dismissal of all claims asserted against her pursuant to Fed. R. Civ. P. 12(b)(6).[4] Plaintiffs state that they construe Defendant Montalbano's Motion [#352] as a motion for judgment on the pleadings under Rule 12(c) because she filed it after her Answer [#217].

In *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212 n.4 (10th Cir. 2003), the Tenth Circuit Court of Appeals stated: "If . . . the defendant submits a motion to dismiss after filing an answer, the motion should be treated as a motion for judgment on the pleadings." Here, Defendant Montalbano filed the instant Motion [#352] after she filed an Answer to the Second Amended Complaint [#184]. While "federal courts have allowed untimely motions if the defense has been previously included in the answer,"[5] Defendant Montalbano does not appear to have raised the failures-to-state-a-claim arguments in her Answer. Accordingly, the Court will construe the Motion as one filed under Rule 12(c). *See id.* (noting that "the only time limitation on Rule 12(b) motions is that they must be made 'before pleading'" and, thus, "[a] strict interpretation" of the Rule "leads to the conclusion that the district judge must deny any Rule 12(b) motion made after a responsive pleading is interposed as being too late"); *see also* Fed. R. Civ. P. 12(c) (allowing motions for judgment on the pleadings "[a]fter the pleadings are closed").

---

[4] Defendant Montalbano's Motion [#352] originally sought dismissal of all claims, even those not explicitly asserted against her. Given Plaintiffs' affirmation that Claims I, VIII, IX, and XVII are not asserted against Defendant Montalbano, *see Response* [#368] at 5, the Court does not address her arguments on those claims.

[5] *See* 5C Arthur R. Miller, et al., Federal Practice and Procedure § 1361 (3d ed. 2023 update).

Regardless, the same standard of review applies to Rule 12(b)(6) and Rule 12(c) motions. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1102 (10th Cir. 2017) (noting the same de novo standard of review applies to motions under Rules 12(b)(6) and 12(c)).

## II. Standard of Review

A Rule 12(b)(6) standard of review applies to Rule 12(c) motions. *Brokers' Choice of Am., Inc.*, 861 F.3d at 1102. Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12 (b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm Fire & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *cf. Hale v. Emporia State Univ.*, 266 F. Supp. 3d 1261, 1269 (D. Kan. 2017) (noting, "[t]he court will grant a motion for judgment on the pleadings only when the factual allegations in the complaint fail to [state a plausible claim]"). When considering Rule 12(c) motions, "the Court cannot consider any facts or allegations beyond the Complaint or Answer." *Chavez-Rodriguez v. City of Santa Fe*, No. CIV 07-633 JB/DJS, 2008 WL 5992269, at *8 (D.N.M. Oct. 17, 2008).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal . . . is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc.*, 861 F.3d at 1104-05. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III.  Analysis

### A.    Claim II: Civil RICO Conspiracy

18 U.S.C. § 1964(c) allows for a private cause of action for a RICO Act violation, i.e., a violation of 18 U.S.C. § 1962. Here, Plaintiffs assert that Defendant Montalbano violated 18 U.S.C. § 1962(d) of RICO by conspiring to violate 18 U.S.C. § 1962(c). *Second Am. Compl.* [#111] ¶¶ 141-43. These two statutory subparts provide:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Under 18 U.S.C. § 1961(1)(B), "racketeering activity" includes "any act which is indictable under" a variety of provisions of the United States Code, including, as asserted by Plaintiffs here, § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). *Second Am. Compl.* [#111] ¶ 142. "The various acts of racketeering activity described in the statute are often referred to as 'predicate acts' because they form the basis for liability

8

under RICO." *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999). The predicate act of mail fraud is comprised of a "'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses' and, in support [of this scheme or artifice], the placement of any matter in the mail for delivery by the Postal Service." *Aguilera-Valdez v. Davenport*, No. 21-cv-01209-STV, 2022 WL 4603556, at *22 (D. Colo. Sept. 29, 2022) (quoting 18 U.S.C. § 1341). The predicate act of wire fraud is comprised of a "'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [and] transmit[ ] or cause[ ] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice[.]'" *Id.* (quoting 18 U.S.C. § 1343).

"If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006). However, this does not mean that every defendant alleged to have violated § 1962(d) must also be alleged to have violated § 1962(a), (b), or (c). "Pursuant to § 1962(d), conspiracy to commit a RICO violation also constitutes a violation of the Act when a conspirator adopts the goal of furthering the enterprise, even if the conspirator does not commit a predicate act." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014). In other words, if a defendant agrees to further the enterprise of other defendants who are alleged to have violated § 1962(a), (b), or (c), then she may have violated § 1962(d). *See, e.g.*, *Gramercy Distressed Opportunity Fund II, L.P. v. Bakhmatyuk*, No. 21-CV-223-F, 2022 WL 3091501, at *19 (D. Wyo. July 7, 2022).

"A claim of conspiracy requires plaintiff [to] demonstrate direct or circumstantial evidence of a meeting of the minds or agreement of the defendants." *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1141 (D. Colo. 2013) (citation omitted). "Conspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds." *Id.* (citation and internal modification omitted). "However, conclusory allegations that defendants acted 'in concert' or 'conspired' without specific factual allegations to support such assertions are insufficient." *Id.* (citation omitted).

Here, Plaintiffs have provided no allegations to support a finding that Defendant Montalbano had a meeting of the minds with any Defendant who is alleged to have violated any substantive portion of the RICO statute, i.e., §§ 1962(a), (b), or (c). Plaintiffs' substantive RICO claim is asserted under § 1962(c) solely against Defendants Rysavy, Warkins, and Medvedich. *See Second Am. Compl.* [#111] ¶¶ 122-40. The issue of whether Plaintiffs have adequately alleged that these three Defendants violated § 1962(c) is pending before the District Judge. *See Motion to Dismiss* [#175] at 13-14. As noted, a § 1962(d) claim cannot survive without a viable claim under § 1962(a), (b), or (c), *see Tal*, 453 F.3d at 1270, and Plaintiffs have not alleged a meeting of the minds between Defendant Montalbano and Defendants Rysavy, Warkins, and/or Medvedich. Plaintiffs' assertion that the conspiracy consists of Defendants Montalbano, Weidner, and Zavodnick "working together to deprive Plaintiff of financial gain via defaming" Plaintiff Goode online, *Response* [#368] at 14-15, is insufficient where none of the allegedly conspiring Defendants are alleged to have violated a substantive provision of RICO.

Similarly, Plaintiffs' assertion that Defendant Montalbano's Answer reveals a meeting of the minds lacks merit. *See Response* [#368] at 3 (citing to *Answer* [#217] ¶

112). In Paragraph 112, Defendant Montalbano partially admitted to having a connection with Defendant Weidner on social media. However, a mere social media connection does not equate to a conspiratorial meeting of the minds under RICO. Further, Montalbano qualified her response by asserting that she sought "employment with GAIA during 2017 and met with Mr. Weidner privately on September 11, 2017 to discuss a potential Dream Vision[-]based series being carried at GAIA[,]" but "had no communication with Mr. Weidner once the business opportunity fell through and then only had [limited] communication with [Defendant] Weidner after" Plaintiffs threatened suit. *Answer* [#217] ¶ 112. This also does not equate to a conspiratorial meeting of the minds under RICO.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim II: Civil RICO Conspiracy Pursuant to 18 U.S.C. § 1962(d) be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

The Court recommends dismissal with prejudice for the following reasons. Plaintiffs have had three opportunities to adequately state this claim through the filing of three successive complaints in this matter. *See Second Am. Compl.* [#111]; *Am. Compl.* [#36]; *Compl.* [#1]. In *A & B Stores, Inc. v. Employers Mutual Casualty Co.*, No. CIV-14-1228-HE, 2015 WL 1014808 at *3 (W.D. Okla. Mar. 9, 2015), for example, the Court dismissed with prejudice a bad faith breach of contract claim in a case where, like here, the plaintiff was represented by counsel, stating that the "plaintiff was given the opportunity to amend and made minimal effort to correct the pleading deficiencies . . . . The court concludes two tries is enough."

Here, similarly, Plaintiffs are represented by counsel, have had three chances to state their RICO claim against Defendant Montalbano, and there is no indication that

allowing them a fourth chance would be anything but futile. For these reasons, the Court recommends dismissal with prejudice. *See, e.g.*, *EMASCO Ins. Co. v. C & C Grocery & Mkt., Inc.*, No. 19-cv-427-DES, 2023 WL 4086014, at *5 (E.D. Okla. June 20, 2023); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").[6]

## B.    Claim III: Federal Trademark Infringement

Plaintiffs assert that Defendant Montalbano committed federal trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a). *Second Am. Compl.* [#111] ¶¶ 144-57. Defendant Montalbano argues that Plaintiffs "have failed to allege or plead any infringement facts" against her. *Motion* [#352] at 9.

The Lanham Act protects both trademarks and service marks. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013). A trademark is "any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. A service mark is the same except that it is used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." *Id.* "Titles, character names, and other

---

[6] This same analysis applies to all other claims below for which the Court recommends dismissal with prejudice.

distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor." *Id.*

15 U.S.C. § 1114, also known as § 32 of the Lanham Act, "protects the owner of a registered mark from '[a]ny person who shall, without consent' 'use . . . any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services,' when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Alfwear, Inc. v. Mast-Jaigermeister US, Inc.*, ___ F. App'x ___, ___, No. 21-4029, 2023 WL 5765891, at *4 (10th Cir. Sept. 7, 2023) (quoting 15 U.S.C. § 1114(1)). 15 U.S.C. § 1125(a), also known as § 43(a) of the Lanham Act or the federal unfair competition law, provides, as is relevant here, "that a person who 'uses in commerce any word, term, name, symbol, or device,' that 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . shall be liable in a civil action.'" *Id.* (quoting 15 U.S.C. § 1125(a)(1)). In other words, § 32 of the Lanham Act protects registered marks and § 43(a) protects unregistered marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("Section 43(a) prohibits a broader range of practices than does § 32, which applies to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks.") (internal citation and quotation marks omitted).

"The elements of an infringement claim under § 43(a) are (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc.*, 722 F.3d at 1238 (internal citation omitted). "An infringement claim

under § 32 has nearly identical elements, except that the registration of a mark serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce[.]" *Id.* (internal citations omitted).

Given that Plaintiffs rely on the same allegations in support of their Claim III (Federal Trademark Infringement), Claim IV (False Designation of Origin and Federal Unfair Competition), Claim V (Colorado Common Law Trademark and Trade Name Infringement), and Claim VI (Colorado Common Law Unfair Competition), *see Response* [#368] at 15-19, the Court discusses them in detail here. Plaintiffs assert that they have "exclusively used [the] claimed marks/names in commerce for many years," and that "[c]onsumers only associate the various names with the services provided by [Plaintiff] Goode and thus has established enforceable and protectable trademarks in its names." *Response* [#368] at 16. In support of this statement they point to paragraph 38 of the Second Amended Complaint [#111]: "Mr. Goode had worked autonomously on print, clothing and media goods and services tied to his arbitrary, protected phrases: Blue Avians ™, 20 and Back ™, Sphere Being Alliance ® and SBA ® (the "Goode Marks"). This work was done well in advance of—and separate and apart from—his work with and for Gaia. The Goode Marks have become a source indicator of Goode's goodwill, branding and message and have, as such, acquired secondary meaning." *Id.*

Plaintiffs further assert that they have adequately described their trademarks and specified which marks are at issue. *Response* [#368] at 16. In support, they point to paragraphs 39 and 40 of the Second Amended Complaint [#111]: "Mr. Goode filed for Federal Trademark Registrations for BLUE AVIANS (Application No. 87821423), 20 AND BACK (Application No. 87821401, SPHERE BEING ALLIANCE (Application No.

87821504), and SBA (Application No. 87821495) in March of 2018," and "Mr. Goode was granted the rights to SBA ® and Sphere Being Alliance ® in November of 2018 and April of 2019, respectively." *Id.*

Plaintiffs state that Defendant Montalbano uses the names belonging to them, "and that such use of Plaintiff's trademarked names is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the services because they are false or misreading representations regarding [Defendant's] experience and relationship with Plaintiffs." *Response* [#368] at 16 (brackets in original). In support, Plaintiffs point to paragraphs 87-88 and 112-13 of the Second Amended Complaint [#111]: (1) "Most recently, Montalbano has created a YouTube account purely for the purpose to harass, defame, threaten and discredit Mr. Goode." (2) "On her YouTube channel Montalbano reads aloud—for hours at a time—her voluminous, nonsensical court filings and inserts delusional commentary about her imaginary husband-and-wife or 'twin flame' relationship she has been asserting since at least 2018 exists between herself and Mr. Goode. She accuses Goode of criminal acts and links her channel to Zavodnick and Weidner's YouTube channels." (3) "Montalbano, aka 'Ari Stone' is known to be connected to Weidner on social media (and since at least 2017 through discussions regarding a potential work relationship with Gaia), an example below: [inserting a screenshot taken from Defendant Montalbano's Twitter account on March 17, 2020]." (4) "Note, again, the 'watch, share like and subscribe' Montalbano includes after using the hashtag '#CoreyGoode' so that she can reach the tens of thousands of people who follow Mr. Goode's hashtag. Montalbano's following on Twitter is one-tenth as large." *Id.*

Here, any fair reading of Plaintiffs' Claim III, including the additional allegations cited by Plaintiffs in their Response [#368], demonstrates that only four marks are at issue here: (1) SPHERE BEING ALLIANCE ®, (2) SBA ®, (3) 20 AND BACK ™, and (4) BLUE AVIANS ™. *Second Am. Compl.* [#111] ¶¶ 38-40, 144-57. None of the allegations cited by Plaintiffs connects Defendant Montalbano even obliquely to the use of any of these four marks. *Response* [#368] at 8-9, 16. In fact, the only *potential* "mark" mentioned in these allegations is "#CoreyGoode"—which is not explicitly mentioned either in Plaintiffs' recitation of the claim, *see Second Am. Compl.* [#111] ¶¶ 144-57, or in Plaintiffs' briefing on the present Motion [#352], *see Response* [#368] at 8-10, 15-19.

Plaintiffs also allege that Defendants "High, Zavodnick, Montalbano, Weidner and Gaia consistently tag Mr. Goode and use the Goode Marks in their Social Media posts— to ride off of the notoriety and reach of Mr. Goode's followers. All four [sic] make repeated misuse of the Goode Marks while defaming and harassing Goode—further harming Goode by spreading untruths and baseless statements while bolstering their viewership through the use of 'tagging' on various social media platforms." *Second Am. Compl.* [#111] ¶ 58. They also point to Montalbano's Answer in which she admits to encouraging people to like, subscribe, and share YouTube channels and videos of interest. *See Response* [#368] at 12-13 (citing *Answer* [#217] ¶ 113). These appear to be the sole allegation and admission which directly connect Defendant Montalbano with the Goode marks. However, these are insufficient because Plaintiffs have not alleged which specific marks Defendant Montalbano purportedly infringed upon, or any details regarding when such infringements occurred or whether Defendant Montalbano used the same or similar marks "in commerce." *See 1-800 Contacts, Inc.*, 722 F.3d at 1238. Thus, the Court finds

that Plaintiffs have failed to adequately allege the second element of their federal trademark infringement claim, i.e., that Defendant Montalbano has used an identical or similar mark in commerce. *See 1-800 Contacts, Inc.*, 722 F.3d at 1242.

The Court also finds that Plaintiffs have failed to adequately allege the third element of their federal trademark infringement claim, i.e., that Defendant Montalbano's use of the Goode marks is likely to confuse consumers, i.e., Plaintiffs' followers. Courts consider six non-exhaustive factors to evaluate an alleged likelihood of confusion: (1) evidence of actual consumer confusion, (2) the competing marks' strength, (3) the alleged infringer's intent in adopting the contested mark, (4) the competing marks' degree of similarity, (5) similarities in the parties' services and marketing, and (6) the degree of care consumers are likely to exercise in purchasing the services. *Vail Assocs., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 863 (10th Cir. 2008). "[E]vidence of actual confusion in the marketplace may be the best indication of likelihood of confusion." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 864 (10th Cir. 2002). Beyond vague, conclusory allegations, Plaintiffs have alleged no facts that render a likelihood of confusion plausible. Moreover, Plaintiffs have not alleged that any of their followers were actually confused by the alleged use of the Goode marks.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim III: Federal Trademark Infringement Under 15 U.S.C. §§ 1114 and 1125(a) be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

**C.      Claim IV: False Designation of Origin and Federal Unfair Competition**

Plaintiffs assert a claim for false designation of origin and federal unfair competition in violation of 15 U.S.C. § 1125(a). *Second Am. Compl.* [#111] ¶¶ 158-61. Defendant Montalbano argues that Plaintiffs "have failed to plead any facts against Ms. Montalbano to make a claim and have only made conclusory statements and accordingly the claim should be dismissed with prejudice as no 'False Designation of Origin' has been shown." *Motion* [#352] at 9.

As noted above, 15 U.S.C. § 1125(a) is also known as § 43(a) of the Lanham Act or the federal unfair competition law. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling."). This provision, also known as the false designation provision, provides a "broader remedy" than mere trademark protection. *Id.* 15 U.S.C. § 1125(a)(1) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The United States Supreme Court has referred to claims falling under section (A) as "false association" or "false designation" claims and claims falling under section (B) as "false advertising" claims. *Lexmark Int'l, Inc. v. Statis Control Components, Inc.*, 572 U.S. 118, 122 (2014); *see also John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274,

1303 (D. Utah 2020) (identifying causes of action as "false designation" and "false advertising").

Here, Plaintiffs claim that "Defendants" have "made repeated representations about the source, origin, and nature of Defendants' products that have created the false and misleading impression that Defendants' goods or services are" created or authorized by Plaintiffs. *Second Am. Compl.* [#111] ¶ 159. Plaintiffs also assert that Defendants "have made false representations, false descriptions, and false designations of origin regarding Defendants and Defendants' good or services in violation of 15 U.S.C. § 1125(a). *Id*. ¶ 160.

A false designation of origin claim may take one of two forms: "'passing off,' where a party represents his or her *own* goods or services as someone else's or 'reverse passing off,' where a party misrepresents *someone else's* goods or services as his or her own." *John Bean Techs. Corp.*, 480 F. Supp. 3d at 1303-04 (emphases in original). Plaintiffs do not explicitly state which form of false designation of origin claim they are asserting in either the Second Amended Complaint [#111] or the Response [#368].

Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." This means that a plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citation omitted). "'To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.'" *Zoller Labs., LLC v. NBTY, Inc.* 111 F. App'x

978, 982 (10th Cir. 2004) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). Rule 9(b) applies to claims of falsity under the Lanham Act "insofar as the factual averments allege intentional or knowing misrepresentations." *Cocona, Inc. v. Singtex Indus. Co., Ltd.*, No. 14-cv-01593-MJW, 2014 WL 5072730, at *8 (D. Colo. Oct. 9, 2014). Here, Plaintiffs allege that Defendant Montalbano's conduct relating to unfair competition is "knowing, willful, and continuing" in nature. *Second Am. Compl.* [#111] ¶ 161. Thus, Rule 9(b) applies, and "[s]uch averments must be pled with particularity." *Cocona, Inc.*, 2014 WL 5072730, at *8. Further, "[t]o the extent the Lanham Act claim is based entirely on 'a unified course' of such conduct, the entire claim must be pled with particularity." *Id.*

Plaintiffs here rely on the same allegations discussed by the Court in Section III.B. above in connection with their Claim III: Federal Trademark Infringement. *See Response* [#368] at 8-10, 15-19. However, these allegations do not provide the requisite "time, place and contents of the false representation." *Schwartz*, 124 F.3d at 1252. In fact, most of Plaintiffs' allegations connecting Defendant Montalbano to instances of unfair competition in Claim IV are conclusory. To the extent that Plaintiffs rest their claim on Defendant Montalbano's use of a hashtag containing Plaintiff Goode's name, *see, e.g.*, [#111] ¶ 113, Plaintiffs have not adequately explained how Defendant Montalbano's actions falsely designate origin or falsely or misleadingly describe or represent facts to cause confusion about designation of origin or association or to falsely advertise as proscribed by 15 U.S.C. § 1125(a)(1). No reasonable person seeing Defendant Montalbano's alleged Twitter post could be confused by the use of this hashtag, given that Defendant Montalbano is simply providing a link to a YouTube video concerning litigation (or

potential litigation) between Plaintiff Goode and another defendant in this case, Defendant Jay Weidner. *See Second Am. Compl.* [#111] ¶ 113.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim IV: False Designation of Origin and Federal Unfair Competition Under 15 U.S.C. § 1125 be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

**D.      Claim V: Colorado Common Law Trademark and Trade Name Infringement**

Plaintiffs' Claim V asserts that Defendant Montalbano committed trademark and trade name infringement under Colorado common law. *Second Am. Compl.* [#111] ¶¶ 162-65. Plaintiffs state that Defendants' "unauthorized use of GES' Marks and names for [sic] in connection with the same or similar products and services infringes upon Goode's common law trademark and trade name rights." *Id.* ¶ 164.

"The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004). Thus, a plaintiff must adequately allege "(1) a protectable interest in its mark; (2) the defendant's use of that mark in commerce; and (3) the likelihood of consumer confusion." *Your True Nature, Inc. v. JF Show Store*, No. 23-cv-00107-CNS-NRN, 2023 WL 2359234, at *3 (D. Colo. Feb. 14, 2023) (citing *Donchez*, 392 F.3d at 1219).

In Colorado, a claim of unfair competition regarding a similar trade name requires a plaintiff to adequately allege "(1) its name has acquired a secondary meaning and (2) the defendant has unfairly used the name, or a simulation of it, against the plaintiff." *Your True Nature, Inc.*, 2023 WL 2359234, at *2 (citing *Gregg Homes, Inc. v. Gregg & Co.*

*Builders*, 978 P.2d 146, 147 (Colo. App. 1998)). The definition of "secondary meaning" is "the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1124 (D. Colo. 2011) (citation omitted). "[T]he use of the same or a similar name can constitute unfair competition 'if the public is likely to be deceived by its use.'" *Your True Nature, Inc.*, 2023 WL 2359234, at *2 (quoting *Gregg Homes, Inc.*, 978 P.2d at 147).

Plaintiffs here rely on the same allegations and argument discussed by the Court in Section III.B. above in connection with their Claim III: Federal Trademark Infringement. *See Response* [#368] at 8-10, 15-19. With respect to the common law trademark infringement claim, the Court finds—for the same reasons discussed in Claim III above—that Plaintiffs fail to adequately allege Defendant Montalbano's use of their marks in commerce and that any such use likely caused confusion, i.e., the second and third elements of this claim.

Regarding trade name infringement, Plaintiffs' sole allegation against Defendant Montalbano concerns her use of the hashtag #CoreyGoode on or about March 17, 2020. *Second Am. Compl.* [#111] ¶ 113. However, no reasonable person seeing this Twitter post could be deceived by its use with respect to trade name usage, given that Defendant Montalbano simply provided a link to a YouTube video concerning litigation (or potential litigation) between Plaintiff Goode and another defendant in this case, Defendant Jay Weidner. *See id.* As such, Plaintiffs have not explained how this post constitutes unfair competition as to trade names.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim V: Colorado Common Law Trademark and Trade Name Infringement be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

**E.      Claim VI: Colorado Common Law Unfair Competition**

Plaintiffs' Claim VI asserts that Defendant Montalbano engaged in unfair competition under Colorado common law. *Second Am. Compl.* [#111] ¶¶ 166-72. In support, Plaintiffs broadly allege that "Defendants" have engaged in "unauthorized and infringing use of Goode's trademarks and trade names . . . and illegally took control of Goode's content . . . to [associate with that content], . . . to benefit from [Goode's] reputation and good will . . . and to create confusion and misperception[.]" *Id.* ¶ 168.

Under Colorado common law, the tort of unfair competition protects against "copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source." *HealthONE of Denver, Inc.*, 805 F. Supp. 2d at 1123 (internal quotations and citation omitted).

Plaintiffs here rely on the same allegations discussed by the Court in Section III.B. above in connection with their Claim III: Federal Trademark Infringement. *See Response* [#368] at 8-10, 15-19. Again, Plaintiffs' allegations against Defendant Montalbano are vague and conclusory. To the extent that Plaintiffs' claim rests on Defendant Montalbano's use of #CoreyGoode, Plaintiffs fail to adequately allege that she used that hashtag as a designation of source.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim VI: Colorado Common Law Unfair Competition be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

**F.    Claim VII: Colorado Consumer Protection Act**

Plaintiffs' Claim VII asserts that Defendant Montalbano violated the Colorado Consumer Protection Act ("CCPA"). *Second Am. Compl.* [#111] ¶¶ 173-81.

A defendant engages in an unfair or deceptive trade practice under the CCPA when it, among other things, "knowingly or recklessly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; [or] knowingly or recklessly makes a false representation as to affiliation, connection, or association with or certification by another." Colo. Rev. Stat. § 6-1-105(1)(b),(c). The elements of a private cause of action under the CCPA are as follows: "(1) the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). "CCPA claims must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b)." *Hauschild GMBH & CO. KG v. FlackTek, Inc.*, No. 20-cv-02532-PAB-STV, 2022 WL 392501, at *10 (D. Colo. Feb. 9, 2022).

Here, Plaintiffs' Colorado Consumer Protect Act claim fails for the same reasons that Plaintiffs' claims for false designation and federal unfair competition (Claim IV) and

Colorado unfair competition (Claim VI) fail. In support of their CCPA claim, Plaintiffs rely on their allegations that Defendant Montalbano "consistently tag[ged] Mr. Goode and use[d] the Goode Marks in their Social Media posts—to ride off of the notoriety and reach of Mr. Goode's followers . . . . while defaming and harassing Goode—further harming Goode by spreading untruths and baseless statements[.]" *Second Am. Compl.* [#111] ¶ 58; *see also Response* [#368] at 20 (arguing, in opposition to dismissal, that "Defendant has admitted to using Goode's marks without approval in the practice of 'tagging.' This is sufficient to state a claim."). However, these allegations do not provide the requisite "time, place and contents of the false representation" underlying the unfair or deceptive trade practice. *Schwartz*, 124 F.3d at 1252. In fact, most of Plaintiffs' allegations connecting Defendant Montalbano to instances of unfair competition in Claim VII are conclusory. She is not mentioned by name in Plaintiffs' statement of the claim, *see Second Am. Compl.* [#111] at 173-81, and, although Plaintiffs are correct that the operative complaint "is to be read as a whole and not in a piecemeal fashion," *see Response* [#368] at 20, they have not adequately explained how the elements of this claim are met, and the Court's reading of the Second Amended Complaint [#111] does not inherently show that the elements have been met either.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim VII: Colorado Consumer Protection Act be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

## G.    Claim XIII: Slander Per Se

Plaintiffs' Claim XIII asserts that Defendant Montalbano committed slander per se. *Second Am. Compl.* [#111] ¶¶ 195-99. Slander is one of the two types of communication

comprising the tort of defamation. *Keohane v. Stewart*, 882 P.2d 1293, 1297 n.5 (Colo. 1994). Slander is "generally an oral communication." *Id.* "To establish an action for slander per se, the plaintiff must show: (1) the defendant made a[ ] verbal statement; (2) the statement was published to a third party; and (3) the statement defames the plaintiff's trade, business, or profession." *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 369 n.3 (Colo. 2011). The final element may also be met by "imputation of (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's . . . office; or (4) serious sexual misconduct." *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) (citations omitted).

Here, Plaintiffs base this claim on purported statements by Defendant Montalbano accusing Plaintiff Goode of criminal acts. *Second Am. Compl.* [#111] ¶ 196; *Response* [#368] at 21-22. However, Plaintiffs do not direct the Court's attention to any specific allegations supporting this claim. *See Response* [#368] at 21-22. The Court notes at least two allegations, though, appear to be related to this claim. Plaintiffs state that Defendant Montalbano "accuses Goode of criminal acts and links her [YouTube] channel to [Defendant] Zavodnick and [Defendant] Weidner's YouTube channels." *Second Am. Compl.* [#111] ¶ 88. Plaintiffs also state that she is part of an enterprise whose purpose is "to accuse Goode of criminal activities through social media outlets and other wirings and use extortion . . . , harassment and any other manipulative tactics to deprive him of his livelihood." *Id.* ¶¶ 104-06. Neither of these statements, though, provide enough detail to state a claim of slander per se. For example, Plaintiffs have not explained what criminal activities Plaintiff Goode has allegedly been accused of or described when these statements were made.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim XIII: Slander Per Se be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

### H.    Claim XIV: Libel Per Se

Plaintiffs' Claim XIV asserts that Defendant Montalbano committed libel per se. *Second Am. Compl.* [#111] ¶¶ 200-04. Libel is one of the two types of communication comprising the tort of defamation. *Keohane*, 882 P.2d at 1297 n.5. Libel is "usually a written communication." *Id.*

The elements of libel per se are: (1) a false statement in a written or other fixed medium; (2) published to a third person; (3) with reckless disregard as to the statement's truth or falsity; (4) the statement was highly offensive to a reasonable person and is defamatory as a matter of law; (5) the statement was about the plaintiff; and (6) the plaintiff sustained actual damages. *Cross v. Receivables Mgmt. Sols., Inc.*, No. 04 CV 01493 MSK PAC, 2006 WL 446083, at *5 (D. Colo. Feb. 21, 2006) (citing *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 899 n. 8 (Colo. 2002)). "With regard to the *per se* claims, a statement is defamatory as a matter of law if it imputes a criminal offense, loathsome disease, serious sexual misconduct, or another matter incompatible with the individual's business, trade, profession, or office to the subject of the statement." *Cross*, 2006 WL 446083 at *5 (citing *Denver Pub. Co.*, 54 P.3d at 899 n.8). "To support a per se claim, the statement must be defamatory on its face, without resort to extrinsic proof or innuendo." *Cross*, 2006 WL 446083, at *5 (citing *Keohane*, 882 P.2d at 1297 n.3).

Here, Plaintiffs base this claim on purported statements by Defendant Montalbano accusing Plaintiff Goode of criminal acts. *Second Am. Compl.* [#111] ¶ 201; *Response*

[#368] at 21-22. However, Plaintiffs do not direct the Court's attention to any specific allegations supporting this claim. *See Response* [#368] at 21-22. The only relevant allegations appear to be those discussed above in connection with Plaintiffs' Claim XIII: Slander Per Se. Again, these statements do not provide enough detail to state a claim of libel per se because they do not explain what criminal activities Plaintiff Goode has allegedly been accused of or described when these statements were made. In addition, it is unclear from the Second Amended Complaint whether any of the purported statements at issue were made in written form, as is required for a libel claim. *See Cross*, 2006 WL 446083, at *5.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim XIV: Libel Per Se be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

## I.      Claim XV: Tortious Interference with a Business Expectancy

Plaintiffs' Claim XV asserts that Defendant Montalbano committed tortious interference with a business expectancy. *Second Am. Compl.* [#111] ¶¶ 205-08.

"Tortious interference with business expectancy is an intentional tort actionable under Colorado law," which is applicable where someone "intentionally and improperly interfere with another's prospective contractual relation." *Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 915 (D. Colo. 2021); Restatement (Second) of Torts § 766 (1979). The tort is applicable under two separate circumstances: (1) where one induces or causes a "third person to not enter or continue the prospective relation," and (2) where one prevents "the other from acquiring or continuing the prospective relation." *Examination Bd. of Pro. Home Inspectors*, 519 F.

Supp. 3d at 915 (quoting Restatement (Second) of Torts § 766 (1979)). "Because the tort is forward looking plaintiffs need not prove the existence of an underlying contract to succeed on a tortious interference claim." *Id.* "However, they must demonstrate that the tortfeasor employed intentional and improper means to prevent a contract's formation." *Id.* (citing *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981)).

"Section 767 of the Restatement typically applies to tortious interference claims," unless those claims arise between business competitors. *Id.* Section 767 provides:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

In addition, the Court must determine whether Plaintiffs have sufficiently alleged "an inference of injury, i.e., whether the tortfeasor's wrongful conduct prevented the plaintiff from forming a contract." *Examination Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 916. "In order to qualify as a protected relationship, 'there [must be] a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope." *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp.3d 1040, 1059 (D. Colo. 2017) (quoting *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)).

For example, in *Klein v. Gryberg*, the Tenth Circuit Court of Appeals, applying Colorado law, held that prospective contracts which are too speculative cannot support a tortious interference claim. 44 F.3d 1497, 1506 (10th Cir. 1995) (stating, "a protected relationship exists only if there is a reasonable likelihood or probability that a contract

would have resulted; there must be something beyond a mere hope."). There, the plaintiff "had no ongoing relationship with any of the investors," only met with investors once, and provided no indication that "any of the prospective investors had any intent" to enter into a contract with him. *Klein*, *Id*. at 1506. The Circuit concluded that the plaintiff had not shown that there was "a reasonable probability that [the plaintiff] would have received economic benefits from the[ ] investors." *Id*.

Here, the Court finds that Plaintiffs have not alleged any non-speculative business expectancy sufficient to demonstrate an inference of injury. In the Response [#368], Plaintiffs only cite paragraphs 71-88 of the Second Amended Complaint [#111] in support of this claim, which discuss Defendant Montalbano's alleged intentional and improper actions without mentioning anything about any prospective contractual relations. *Response* [#368] at 22-23. Plaintiffs' statement of the claim in the Second Amended Complaint [#111] alleges that "Goode had a multitude of actual or prospective business contracts with the aforementioned Conferences and various entertainment agencies" and that "Defendants knew of these actual or prospective business contracts and intentionally and improperly interfered with the performance of these contracts." *Second Am. Compl.* [#111] ¶¶ 206-07. These vague statements are asserted against all Defendants, and there is no indication what might apply to Defendant Montalbano specifically. *See id.* Plaintiffs additionally state in the Response [#368] that Defendant Montalbano "continues to burden Goode . . . and has caused Goode financial strain due to her improper use of the courts" and that "[m]any companies do not wish to engage with Goode due to the lawsuits Defendant has filed." *Response* [#368] at 23. None of these statements from the Second Amended Complaint [#111] or even from the Response [#368] supports a conclusion that

there was a "reasonable probability" that Plaintiffs "would have received economic benefits" from a third party in the absence of Defendant Montalbano's actions. *See Klein*, 44 F.3d at 1506.

The situation here is akin to that in *Examination Board of Professional Home Inspectors v. International Association of Certified Home Inspectors*, 519 F. Supp. 3d at 916-17, where the plaintiff failed to identify any "individuals with whom [it] intended to contract but for [the defendant's] interference," instead simply stating that the plaintiff "saw a drop in the number of people registering to sit for the [examination] following" the defendants' comment about the exam. The court stated: "While that may be sufficient to establish an inference of injury in other contexts, it is insufficient for a tortious interference with business expectancy claim." *Examination Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 917. The court therefore held that the plaintiff's business expectancy was a "mere hope" which was inadequate to support its claim. *Id.* (quoting *Crocs, Inc.*, 248 F. Supp. 3d at 1059). Here, as well, Plaintiffs' "mere hope" of prospectively forming business contracts with unidentified third parties is insufficient.

Accordingly, the Court **recommends** that the Motion [#352] be **granted** to the extent that Plaintiffs' Claim XV: Tortious Interference with Business Expectancy be **dismissed with prejudice** to the extent asserted against Defendant Montalbano.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#352] be **GRANTED** and that Plaintiffs' claims against Defendant Montalbano be **DISMISSED with prejudice**.[7]

---

[7] Defendant Montalbano also seeks sanctions and compensation for her legal expenses and time. *Motion* [#352] at 15. However, she provides no supporting legal authority or documentation.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: November 1, 2023                      BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

Accordingly, the request is denied without prejudice and, if appropriate, may be refiled **after** the District Judge otherwise resolves the Motion [#352] and this Recommendation.