IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cv-00742-DDD-KLM

JAMES COREY GOODE; and
GOODE ENTERPRISE SOLUTIONS, INC.,

      Plaintiffs and Counter Defendants,

v.

JIRKA RYSAVY;
BRAD WARKINS; and
KIERSTEN MEDVEDICH,

      Defendants,

GAIA, INC.; and
JAY WEIDNER,

      Defendants and Counter Claimants, and

ALYSSA MONTALBANO,

      Counter Claimant.

---

## ORDER ON MOTIONS TO DISMISS

---

In their operative Second Amended Complaint, Plaintiffs and Counter Defendants James Corey Goode and Goode Enterprise Solutions, Inc. allege various claims against several defendants. This Order addresses the motions to dismiss filed by Defendants Gaia, Inc., Doc. 128; Jirka Rysavy, Brad Warkins, and Kiersten Medvedich (the "Gaia Individuals"), Doc. 175; and Jay Weidner, Doc. 129.

### BACKGROUND

The following facts are taken from the plaintiffs' operative Second Amended Complaint, Doc. 111, and must be presumed true for purposes

of the motions at issue (to the extent they are non-conclusory and do not state legal conclusions).

Mr. Goode "is an educational and motivational speaker, influencer, author and media figure and is well-known and respected in the Conscious Community." Doc. 111 ¶ 2. Goode Enterprise Solutions is a company owned by Mr. Goode and his wife, which "produces educational, spiritual, health and entertainment goods and services geared towards the Conscious Community." *Id.* ¶ 3. Goode Enterprise Solutions holds all rights and title to the intellectual property that Mr. Goode has developed.

Mr. Goode is part of the "Disclosure" movement, and he publicly shares his personal experiences involving a secret space program called "20 and Back" and angelic beings he calls the "Blue Avians." He has developed branding regarding the "Sphere Being Alliance." Mr. Goode's public dissemination of his stories attracted the attention of Defendant Gaia, Inc., a movie and television network. In June 2015, Gaia, through Mr. Weidner and the Gaia Individuals, approached Mr. Goode and his friend David Wilcock with a proposal to star on a show called "Cosmic Disclosure." The two agreed, and the show was successful. During the three years that Mr. Goode worked on Cosmic Disclosure, he generated content about his personal story that he had been sharing and developing prior to his involvement with Gaia, including content regarding the Blue Avians, 20 and Back, and the Sphere Being Alliance.

It's not clear which is in the role of P.T. Barnum here, but it's apparent there is a lucrative market for all this. Mr. Goode and Gaia entered into a series of contracts promising various forms of compensation in exchange for Mr. Goode's work on Cosmic Disclosure. Mr. Goode negotiated these contracts through Mr. Rysavy, Gaia's CEO, and through Mr. Weidner, Mr. Warkins, and Ms. Medvedich. Mr. Goode alleges that

Gaia, through Mr. Rysavy, breached those contracts by failing to pay him compensation owed, including a performance bonus, licensing royalties, and stock options. Due to harassment from Mr. Weidner (who was eventually fired after Mr. Goode reported his abusive behavior) and not being paid the compensation he was promised, Mr. Goode left Gaia after fulfilling his contract requirements.

Mr. Goode filed federal trademark applications for BLUE AVIANS, 20 AND BACK, SPHERE BEING ALLIANCE, and SBA. Trademarks were issued for SPHERE BEING ALLIANCE and SBA, but Gaia instituted opposition proceedings regarding BLUE AVIANS and 20 AND BACK. Gaia and the Gaia Individuals have continued to use 20 AND BACK in advertising and promotional materials after Mr. Goode filed his trademark application and sent them cease and desist letters. Gaia hired other people to take over Mr. Goode's role on Cosmic Disclosure who have continued to use Mr. Goode's trademarks on the show. Gaia and Mr. Weidner also used Mr. Goode's trademarks in their social-media posts, and have defamed and harassed Mr. Goode on social media.

Plaintiffs also allege that Mr. Weidner has threatened and stalked Mr. Goode and divulged Mr. Goode's private information on social media. He has also threatened Mr. Goode via email and "through videos, livestreams, and other media produced both by him and by others at his direction." *Id.* ¶ 59. Some of these threats have been violent and caused Mr. Goode to fear for his life and the life of his family. And they allege that Gaia, with the influence of the Gaia Individuals and Mr. Weidner, has blacklisted Mr. Goode from multiple ufology and Conscious Community conferences and radio shows, and Mr. Goode is no longer invited to attend as a speaker at those events.

Mr. Goode says that he has "suffered financial losses through the breach of contract with Gaia, he suffered damages from the harassment

- 3 -

and loss of reputation, losses by the abuse of his trademarks, and monetary losses by the consternation in the community that followed his loss of good will." *Id.* ¶ 121. Mr. Goode brings thirteen claims at issue in this Order: (1) RICO violations under 18 U.S.C. § 1964, against the Gaia Individuals; (2) RICO conspiracy under 18 U.S.C. § 1962(d), against Mr. Weidner; (3) federal trademark infringement under 15 U.S.C. § 1114 and 1125(a), against Gaia, the Gaia Individuals, and Mr. Weidner; (4) federal false designation of origin and unfair competition under 15 U.S.C. § 1125, against Gaia, the Gaia Individuals, and Mr. Weidner; (5) common-law trademark and trade-name infringement, against Gaia, the Gaia Individuals, and Mr. Weidner; (6) common-law unfair competition, against Gaia, the Gaia Individuals, and Mr. Weidner; (7) Colorado Consumer Protection Act violations, against Gaia, the Gaia Individuals, and Mr. Weidner; (8) breach of contract, against Gaia, the Gaia Individuals, and Mr. Weidner; (9) fraudulent misrepresentation, against Gaia and the Gaia Individuals; (10) slander per se, against Gaia, the Gaia Individuals, and Mr. Weidner; (11) libel per se, against Gaia, the Gaia Individuals, and Mr. Weidner; (12) tortious interference with a business expectancy, against Gaia, the Gaia Individuals, and Mr. Weidner; and (13) declaratory judgment of trademark validity, against Gaia.

## LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court must decide whether the facts alleged in the complaint, if true, would entitle the claimant to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court must accept the alleged facts as true and view

them in the light most favorable to the claimant.[1] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the court need not accept as true conclusory allegations that are unsupported by factual averments. *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021). The claimant's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, accepted as true, allow the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

### I.  Claim 1: RICO Violations
*The Gaia Individuals*

The plaintiffs assert that the Gaia Individuals violated the RICO statute, 18 U.S.C. § 1964. Doc. 111 ¶¶ 122-40.

To state a private RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *W. States Enters., Inc. v. Land*, No. 11-cv-00719-MSK-KLM, 2011 WL 5882181, at *3 (D. Colo. Nov. 22, 2011) (citing *Robbins v.*

---

[1]  The court typically must not look outside the pleadings when deciding a Rule 12(b)(6) motion, but it is permitted to consider documents that a complaint incorporates by reference, documents referred to in a complaint if they are central to the claims and their authenticity is undisputed, and facts of which a court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

*Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002)). The term "enterprise" is statutorily defined and includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern" requires at least two predicate acts of "racketeering activity," which is defined by statute to include violations of certain other laws. 18 U.S.C. §§ 1961(1), (5).

The predicate acts that the plaintiffs allege here are wire fraud and mail fraud. Doc. 111 ¶ 128. The predicate act of wire fraud makes it unlawful to "devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [and] transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." *Aguilera-Valdez v. Davenport*, No. 21-cv-01209-STV, 2022 WL 4603556, at *22 (D. Colo. Sept. 29, 2022) (quoting 18 U.S.C. § 1343). The predicate act of mail fraud requires a "'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses' and, in support [of this scheme or artifice], the placement of any matter in the mail for delivery by the Postal Service." *Id.* (quoting 18 U.S.C. § 1341). Federal Rule of Civil Procedure 9(b) "requires particularity in pleading RICO mail and wire fraud." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989).

The Gaia Individuals argue that the plaintiffs have not adequately pleaded any valid instances of mail or wire fraud, let alone two or more instances of such. The plaintiffs allege that "[i]n furtherance of their scheme to defraud, and with the purpose of executing their schemes to defraud, the Gaia [Individuals] herein, caused the use of the mails, and

interstate wires for the purpose of defrauding Plaintiffs of millions of dollars." Doc. 111 ¶ 130. They cite the following alleged instances:

- "Medvedich: on March 27, 2018 at 5:53 pm, knowing that Gaia had no intent on fulfilling its financial obligations to Mr. Goode, Medvedich sent an email to him demanding he appear for filming episodes of Cosmic Disclosure. Mr. Goode declined, stating that a few days' notice was not sufficient. That same day at 11:07 pm she informed him that Gaia would be moving forward with shooting scenes for [Cosmic Disclosure] with or without him, knowing Gaia was intending to use Goode's branding, Marks and message (his 'IP') through another guest . . . that was not authorized by Goode to use Goode's protected IP." *Id.* ¶ 131.

- "Warkins: on February 25, 2016 at 7:02 pm Warkins sent an email to his colleague at Gaia, Kevin Spracht, asking for information on a payment that had been sent to Goode. Goode stated he did not believe that it was the right amount. Warkins knew it was not the right amount. On February 26, 2018 at 12:38 pm Warkins replied to Goode that he had spoken with Rysavy and that the amount was correct. Both Warkins and Rysavy knew it was an underpayment. Neither remedied the payment." *Id.* ¶ 132.

- "Rysavy: On February 26, 2018 Rysavy and Warkins exchanged emails related to an underpayment to Goode that they knew was an underpayment. Rysavy was to get back to Goode personally. Over a week later, on March 5, 2018 at 10:36 pm Rysavy finally responded to Goode and 'explained' how the pay structure was to work, knowing that it was not what Goode and Gaia/Rysavy himself had agreed to." *Id.* ¶ 133.

- "While negotiating his talent contract, Mr. Goode met with the Gaia Defendants. Mr. Goode was promised various forms of compensation in exchange for his appearance on [Cosmic Disclosure] including, inter alia, $150,000.00 in stock options, a percentage of the revenue brought in by [Cosmic Disclosure] through Talent Fees, [and] fees under the 'Ambassador Program' . . . . Mr. Goode agreed to work with Gaia in exchange for these promises in addition to a monetary amount agreed to by the parties. Gaia, through Rysavy, Warkins and Medvedich, never reduced these agreements to writing although Mr. Goode requested they be memorialized in his written contract. All three Defendants through interstate emails and phone calls assured Mr. Goode that Gaia would keep its word. All three Defendants, to date, have reneged on all of these agreements." *Id.* ¶ 134.

- "The Gaia Defendants knew that the Goode Marks belonged to, and were claimed by, Goode. They intentionally caused, through interstate emails and phone calls, the Goode Marks to be used in interstate commerce through its broadcasts without Goode's approval." *Id.* ¶ 136.

The "common thread" between wire fraud and mail fraud is "the concept of 'fraud'," which to be actionable requires (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury. *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). As to Ms. Medvedich, the plaintiffs allege no false statement or misrepresentation by her in the above-cited email communications. As to Mr. Warkins and Mr. Rysavy, while the plaintiffs allege that those defendants stated that payment amounts were correct while knowing they were underpayments, the plaintiffs fail to allege that Mr. Goode was ignorant of the truth of those statements or that he relied on the statements to his detriment. The plaintiffs' broader allegation that Mr. Goode relied on various promises made by the Gaia Individuals when he agreed to work with Gaia does not meet the particularity standard of Rule 9(b), which requires a plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The plaintiffs have failed to allege any plausible fraudulent scheme that includes the above-cited emails, or any specific fraudulent misrepresentation.

Because the plaintiffs' allegations are insufficient to establish the elements of mail or wire fraud as the predicate acts, I need not address the remaining elements of a RICO claim. *W. States Enters.*, 2011

WL 5882181, at *3. The plaintiffs' RICO claim against the Gaia Individuals must be dismissed.

## II.   Claim 2: RICO Conspiracy
*Mr. Weidner*

The plaintiffs assert a conspiracy-based RICO violation against Mr. Weidner and three other defendants against whom the plaintiffs' claims have already been dismissed. Doc. 111 ¶¶ 141-43. The plaintiffs allege that these defendants conspired "to obtain [Mr.] Goode's interests in business and/or property." *Id.* ¶ 142.

The plaintiffs assert that Mr. Weidner violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). Doc. 111 ¶¶ 141-43. These two statutory subparts provide:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

As with the plaintiffs' RICO claim against the Gaia Individuals discussed above, the "racketeering activity" alleged in the RICO conspiracy claim against Mr. Weidner is mail fraud and wire fraud. Doc. 111 ¶ 142.

"Pursuant to § 1962(d), conspiracy to commit a RICO violation . . . constitutes a violation of the Act when a conspirator adopts the goal of furthering the enterprise, even if the conspirator does not commit a predicate act." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014). In other words, if a defendant agrees to further the enterprise of other defendants who are alleged to have violated Section 1962(c), then he may have violated Section 1962(d). *See, e.g., Gramercy Distressed Opportunity Fund II, L.P. v. Bakhmatyuk*, No. 21-CV-

223-F, 2022 WL 3091501, at *19 (D. Wyo. July 7, 2022). A claim of conspiracy requires plaintiff to demonstrate direct or circumstantial evidence of a meeting of the minds or agreement of the defendants. *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1141 (D. Colo. 2013). Conspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds. *Id.* But conclusory allegations that defendants acted "in concert" or "conspired" without specific factual allegations to support such assertions are insufficient. *Id.*

Mr. Weidner argues that the plaintiffs' alleged RICO conspiracy claim is entirely conclusory and fails to allege how he somehow conspired with the Gaia Individuals or the other named defendants to violate Section 1962(c). Doc. 129 at 8-10. I agree. As discussed above, the plaintiffs have failed to sufficiently plead their substantive RICO claim under Section 1962(c) against the Gaia Individuals. Even if they had sufficiently pleaded a substantive violation, the plaintiffs have provided no allegations to support a finding that Mr. Weidner had a meeting of the minds with any of the Gaia Individuals. And their assertion that the conspiracy consists of Mr. Weidner conspiring with Defendants Clif High, Alyssa Montalbano, and Benjamin Zavodnick working together to deprive Mr. Goode of pecuniary gain by disseminating defamatory videos, Doc. 153 at 7, is insufficient where none of those allegedly conspiring defendants are alleged to have violated a substantive provision of RICO.

The plaintiffs' RICO conspiracy claim against Mr. Weidner must be dismissed.

### III.   Claim 3: Federal Trademark Infringement
*Gaia, the Gaia Individuals, and Mr. Weidner*

The plaintiffs assert that the defendants committed federal trade-mark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a). Doc. 111 ¶¶ 144-57.

The Lanham Act protects both trademarks and service marks. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013). A trademark is

> any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to reg-ister on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127. A service mark is the same except that it is used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the ser-vices, even if that source is unknown." *Id.* "Titles, character names, and other distinctive features of radio or television programs may be regis-tered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor." *Id.*

15 U.S.C. § 1114, also known as Section 32 of the Lanham Act, "pro-tects the owner of a registered mark from '[a]ny person who shall, with-out consent' 'use . . . any reproduction, counterfeit, copy, or colorable im-itation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services,' when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Alfwear, Inc. v. Mast-Jaigermeister US, Inc.*, No. 21-4029, 2023 WL 5765891, at *4 (10th Cir. Sept. 7, 2023) (quoting 15 U.S.C. § 1114(1)). 15 U.S.C. § 1125(a), also known as Section 43(a) of the Lanham Act or the federal

unfair competition law, provides, as is relevant here, "that a person who 'uses in commerce any word, term, name, symbol, or device,' that 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . shall be liable in a civil action.'" *Id.* (quoting 15 U.S.C. § 1125(a)(1)). In other words, Section 32 of the Lanham Act protects registered marks, and Section 43(a) protects unregistered marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("Section 43(a) prohibits a broader range of practices than does Section 32, which applies to registered marks, but it is common ground that Section 43(a) protects qualifying unregistered trademarks." (cleaned up)).

"The elements of an infringement claim under § 43(a) are (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts*, 722 F.3d at 1238 (citation omitted). "An infringement claim under § 32 has nearly identical elements, except that the registration of a mark serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce." *Id.* (citations omitted).

The plaintiffs rely on the same allegations in support of their Claim 3 (federal trademark infringement), Claim 4 (false designation of origin and federal unfair competition), Claim 5 (Colorado common-law trademark and trade-name infringement), and Claim 6 (Colorado common-law unfair competition). *See* Doc. 152 at 6, 10-14; Doc. 185 at 4, 12; Doc. 153 at 7-11, 14-19. Those allegations are as follows:

- "As early as 2008, Mr. Goode began speaking at various events and recounting his personal experiences tied to a secret space program, which he termed the '20 and Back™' missions . . . . As a result of Mr. Goode publicly sharing his story and experiences, the 'Sphere Being Alliance®' ('SBA') branding and message and its progeny were developed by Mr. Goode. . . . Mr. Goode also

began sharing his stories and experiences involving angelic beings that he called the 'Blue Avians™.'" Doc. 111 ¶ 20.

- "[D]uring the three years that Mr. Goode was working on [Cosmic Disclosure], the content he generated included his personal story and subject matters that he had been sharing and developing prior to his involvement with Gaia, including but not limited to the Blue Avians™, 20 and Back™, and SBA® branding and message." *Id.* ¶ 23.

- "Mr. Goode had worked autonomously on print, clothing and media goods and services tied to his arbitrary, protected phrases: Blue Avians™, 20 and Back™, Sphere Being Alliance® and SBA® (the 'Goode Marks'). This work was done well in advance of—and separate and apart from—his work with and for Gaia. The Goode Marks have become a source indicator of Goode's goodwill, branding and message and have, as such, acquired secondary meaning." *Id.* ¶ 38; *see also id.* ¶ 147 ("[Goode Enterprise Solutions'] paper, clothing and educational and entertainment goods and services are marketed and sold globally . . . . [using] the marks SPHERE BEING ALLIANCE®, SBA®, 20 AND BACK™ and BLUE AVIANS™ (the 'GES Marks').").

- "The GES Marks have become, through widespread and favorable industry acceptance and recognition, an asset of substantial value symbolizing [Goode Enterprise Solutions], its quality products and services and its goodwill," and "[c]onsumers of paper, clothing and educational and entertainment goods and services in the Conscious community recognize the GES Marks as a source indicator for Goode." *Id.* ¶¶ 148-49.

- Goode Enterprise Solutions has registered marks in SBA and SPHERE BEING ALLIANCE. *Id.* ¶¶ 40, 145; Doc. 1-2.

- Goode Enterprise Solutions has common-law marks in 20 AND BACK and BLUE AVIANS. Doc. 111 ¶ 146.

- "Gaia, including through Rysavy, Warkins and Medvedich, violated the trademark application for 20 AND BACK by continuing to use Goode's protected phrase on various advertising and promotional materials . . . ." *Id.* ¶ 47.

- "Just prior to Mr. Goode's departure from Gaia and [Cosmic Disclosure], Gaia hired additional talent to take over Mr. Goode's role on the show. Individuals like Jason Rice, Emery Smith and others appeared on [Cosmic Disclosure] and . . . proceeded to use Goode's Marks protected phrases and testimony." *Id.* ¶ 48.

- In March 2018, Ms. Medvedich moved forward with shooting scenes for Cosmic Disclosure without Mr. Goode "knowing Gaia was intending to use Goode's branding, Marks and message . . . through another guest on [Cosmic Disclosure]." *Id.* ¶ 131.

- "Gaia defrauded consumers by continuing to use Mr. Goode's content and claimed marks after Mr. Goode left the show, and after it received cease and desist letters from [Goode Enterprise Solutions]." *Id.* ¶ 49.

- "Weidner and Gaia consistently tag Mr. Goode and use the Goode Marks in their Social Media posts . . . . [They] make repeated misuse of the Goode Marks . . . through the use of 'tagging' on various social media platforms." *Id.* ¶ 58.

- Mr. Weidner's YouTube channel includes a video titled "Corey Goode and the FEAR Being Alliance," which "utilizes the YouTube algorithm to link Weidner's channel . . . to Goode's" by using the "Sphere Being Alliance" mark in the summary description of the video. *Id.* ¶ 67.

- "Defendants (and/or Defendants' agents or affiliates) wrongfully and illegally made use of GES Marks by . . . asking its talent NOT including Mr. Goode but appearing on Gaia TV in a role akin to Mr. Goode's to use the GES Marks in their commentary and dialogue in Gaia-produced and/or Gaia-related content thereby causing the GES marks to be displayed prominently and in association with the Gaia (or other Defendant-related) names . . . . These activities were carried out without [Goode Enterprise Solutions'] or Mr. Goode's consent . . . ." *Id.* ¶ 151.

- "Defendants (and/or Defendants' agents or affiliates) sent existing and prospective Goode customers numerous emails and social media messages and marketing which promoted their own products or services under the GES Marks or represented that their products or services were offered under GES Marks when in fact they are not." *Id.* ¶ 153.

These allegations, while detailed, do not state a claim for federal trademark infringement. Although the complaint identifies four trademarks, it fails to sufficiently allege which mark (or marks) was used by which specific defendant (*i.e.*, Gaia, which of the Gaia Individuals, or Mr. Weidner), when that mark (or marks) was used, and in what context. The facts alleged do not support a reasonable inference that any

particular defendant used one of the marks "in commerce" or in a way that was likely to confuse consumers. *See RV Horizons, Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 WL 6052416, at *8 (D. Colo. Nov. 15, 2019) ("A plausible claim . . . must allege sufficient facts for the defendants and the court to identify the mark at issue and at least some instances of misuse."); *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1267 (D. Colo. 2009) ("[I]n order to survive a motion to dismiss, a plaintiff must plead facts sufficient to state a plausible claim that Defendant used Plaintiff's mark 'in connection with any goods or services.'").

The plaintiffs allege that Gaia and the Gaia Individuals "use[d] Goode's protected phrase[s] on various advertising and promotional materials" and used the marks and Mr. Goode's "testimony" or "message" on Cosmic Disclosure, and that Gaia "tag[ged] Mr. Goode and use[d] the Goode Marks in [its] Social Media posts." But the complaint does not provide any specific example of these alleged uses or any facts regarding the *how* the marks were used on promotional materials, on the show, or in social-media posts that would support a reasonable inference of use in commerce or consumer confusion. Simply mentioning Mr. Goode or his marks in those contexts is not enough.

As to Mr. Weidner, the only allegations are of general tagging on social media, and one specific instance where he used "Sphere Being Alliance" in the written description of one of his YouTube videos. As noted, general allegations of social-media tagging are insufficient. As to YouTube, the video in question was titled "Corey Goode and the FEAR Being Alliance"—in other words, it was a video critical of Mr. Goode. This cannot support a reasonable inference that consumers might be confused as to the source of the video or whether Mr. Goode was associated or affiliated with the video or its content. *See Utah Lighthouse*

*Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1052-53 (10th Cir. 2008) (Lanham Act is intended "to protect the ability of consumers to distinguish among competing producers," "not to prevent all unauthorized uses" or "to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view," such as "websites offer[ing] critical commentary about the trademark owner"); *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987) ("[T]he requirement of trademark law is that a likely confusion of source, sponsorship or affiliation must be proven, which is not the same thing as a 'right' not to be made fun of.").

The plaintiffs have failed to adequately allege facts to support the second or third elements of a trademark-infringement claim as to Gaia, the Gaia Individuals, or Mr. Weider, and this claim must therefore be dismissed as to those defendants.

## IV.  Claim 4: False Designation of Origin & Unfair Competition
### *Gaia, the Gaia Individuals, and Mr. Weidner*

The plaintiffs assert that the defendants committed false designation of origin and federal unfair competition in violation of 15 U.S.C. § 1125. Doc. 111 ¶¶ 158-61.

As noted above, 15 U.S.C. § 1125(a) is also known as Section 43(a) of the Lanham Act or the federal unfair-competition law. This provision is also known as the false-designation provision, and it provides a "broader remedy . . . for unfair competition through misleading advertising or labeling" that "goes beyond trademark protection." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107-108 (2014). This section provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

misleading description of fact, or false or misleading repre-
sentation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or
> to deceive as to the affiliation, connection, or association
> of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or
> commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepre-
> sents the nature, characteristics, qualities, or geo-
> graphic origin of his or her or another person's goods,
> services, or commercial activities,

shall be liable in a civil action by any person who believes
that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The Supreme Court has referred to claims falling
under subsection (A) as "false association" or "false designation" claims,
and claims falling under subsection (B) as "false advertising" claims.
*Lexmark Int'l, Inc. v. Statis Control Components, Inc.*, 572 U.S. 118, 122
(2014); *see also John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F.
Supp. 3d 1274, 1303 (D. Utah 2020) (identifying causes of action as
"false designation" and "false advertising").

A false designation of origin claim may take one of two forms: "'pass-
ing off,' where a party represents his or her *own* goods or services as
someone else's[,] or 'reverse passing off,' where a party misrepresents
*someone else*'s goods or services as his or her own." *John Bean*, 480 F.
Supp. 3d at 1303-04. The plaintiffs here appear to be asserting a "pass-
ing off" claim:

> Defendants' (and/or Defendants' agents or affiliates) made
> repeated representations about the source, origin, and na-
> ture of Defendants' products that have created the false
> and misleading impression that *Defendants' goods or ser-
> vices* are manufactured by [Goode Enterprise Solutions],
> affiliated with [Goode Enterprise Solutions], connected or
> associated with [Goode Enterprise Solutions], and/or

endorsed, controlled, or approved by [Goode Enterprise So-
lutions] when, in fact, they are not.

Doc. 111 ¶ 159 (emphasis added).

Federal Rule of Civil Procedure 9(b) requires a party to "state with
particularity the circumstances constituting fraud or mistake." As noted
above, this means that a plaintiff must "set forth the time, place and
contents of the false representation, the identity of the party making the
false statements and the consequences thereof." *Schwartz*, 124 F.3d
at 1252. "To demonstrate falsity within the meaning of the Lanham Act,
a plaintiff may show that the statement was literally false, either on its
face or by necessary implication, or that the statement was literally true
but likely to mislead or confuse consumers." *Zoller Labs., LLC v. NBTY,
Inc.*, 111 F. App'x 978, 982 (10th Cir. 2004). Rule 9(b) applies to claims
of falsity under the Lanham Act "insofar as the factual averments allege
intentional or knowing misrepresentations." *Cocona, Inc. v. Singtex In-
dus. Co., Ltd.*, No. 14-cv-01593-MJW, 2014 WL 5072730, at *8 (D. Colo.
Oct. 9, 2014). Here, the plaintiffs allege that the defendants' conduct
was "knowing, willful, and continuing" in nature. Doc. 111 ¶ 161. The
requirements of Rule 9(b) therefore apply, and the plaintiffs must plead
their allegations of falsity with particularity. *Cocona*, 2014 WL 5072730,
at *8. And, "[t]o the extent the Lanham Act claim is based entirely on 'a
unified course' of [fraudulent] conduct, the entire claim must be pled
with particularity." *Id.*

As noted above, the plaintiffs rely on the same allegations to support
both their trademark-infringement and false-designation claims. Those
allegations, which will not be repeated here, do not provide the requisite
"time, place and contents of [any] false representation." *Schwartz*, 124
F.3d at 1252. The plaintiffs' allegations are conclusory and do not con-
nect any specific defendant to any specific instance of passing off. The
complaint does not explain how the defendants' use of Mr. Goode's name

or one of the trademarked phrases on Cosmic Disclosure, in promotional materials, or in hashtags on social media, or Mr. Weidner's use of "Sphere Being Alliance" in the written description of a YouTube video critical of Mr. Goode falsely designated the origin of any goods or services in a manner that was likely to confuse or deceive consumers.

The plaintiffs have therefore failed to state a claim for false designation of origin or unfair competition, and this claim must be dismissed as to Gaia, the Gaia Individuals, and Mr. Weidner.

## V.   Claim 5: Common-Law Trademark & Trade-Name Infringement
*Gaia, the Gaia Individuals, and Mr. Weidner*

The plaintiffs assert that the defendants committed trademark and trade-name infringement under Colorado common law. Doc. 111 ¶¶ 162-65. The plaintiffs allege that "Defendants' (and/or Defendants' agents' or affiliates') unauthorized use of GES' Marks and names for in connection with the same or similar products and services infringes upon Goode's common law trademark and trade name rights." *Id.* ¶ 164.

"The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004). "Among other things, a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion." *Id.*

The plaintiffs' common-law trademark infringement claim fails for the same reasons as their federal claims, and must therefore be dismissed as to Gaia, the Gaia individuals, and Mr. Weidner.

## VI.   Claim 6: Common-Law Unfair Competition
*Gaia, the Gaia Individuals, and Mr. Weidner*

The plaintiffs assert that the defendants committed unfair competition under Colorado common law. Doc. 111 ¶¶ 166-72. They allege that:

> Defendants' (and/or Defendants' agents or affiliates) have made unauthorized and infringing use of Goode's trademarks and trade names, wrongfully and illegally took control of Goode's content causing Goode's information and favorable social media content to be associated with Defendants', clearly intending to benefit from the reputation and goodwill residing in Goode's, utilized Gaia's position as an content provider and director of [Cosmic Disclosure] to gain access to Goode's existing and prospective customers with the intent of and undertaking actions and deceptive communications to create confusion and misperception and thereby diverting their business to Gaia.
>
> . . . .
>
> Defendants' (and/or Defendants' agents or affiliates) have, or have sought to, pass off their goods as those of Defendants' by virtue of use of Goode's trademarks and trade names, leading to actual confusion on the part of the consumer.

*Id.* ¶¶ 168, 170.

Under Colorado common law, the tort of unfair competition protects against "copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source." *HealthONE of Denver, Inc.*, 805 F. Supp. 2d 1115, 1123 (D. Colo. 2011). A claim of unfair competition regarding a similar trade name requires a plaintiff to adequately allege "(1) its name has acquired a secondary meaning, and (2) the defendant has unfairly used the name, or a simulation of it, against the plaintiff." *Your True Nature, Inc. v. JFS How Store*, No. 23-cv-00107-CNS-NRN, 2023 WL 2359234, at *2 (citing *Gregg Homes, Inc. v. Gregg & Co. Builders*, 978 P.2d 146, 147 (Colo. App. 1998)). "[T]he use of the same or a similar name can constitute unfair competition 'if the public is likely to be deceived by its use.'" *Id.*

- 20 -

(quoting *Gregg Homes*, 978 P.2d at 147). "The Colorado Supreme Court has held that with respect to trademarks or trade names, the purpose [of an unfair competition claim] is to 'protect the owner of a trademark or name and the public at large from unfair competition, confusion in the public's mind and false or misleading claims.'" *HealthONE*, 805 F. Supp. 2d at 1123 (quoting *Radio Station KTLN, Inc. v. Steffen*, 346 P.2d 307, 308 (1959)).

As noted, the plaintiffs rely on the same factual allegations to support both their federal and common-law claims for trademark infringement and unfair competition. For the same reasons discussed above, the plaintiffs' complaint does not adequately allege that the defendants have used Mr. Goode's name or the plaintiffs' trademarks in a way that is likely to deceive consumers. The plaintiffs' common-law unfair-competition claim must therefore be dismissed as to Gaia, the Gaia individuals, and Mr. Weidner.

## VII.   Claim 7: Colorado Consumer Protection Act
*Gaia, the Gaia Individuals, and Mr. Weidner*

The plaintiffs assert that the defendants have violated the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105. Doc. 111 ¶¶ 173-81. They allege that:

> Defendants' (and/or Defendants' agents or affiliates) knowingly: (a) sought to pass off Defendants' products and/or services as being Goode products or otherwise affiliated with, controlled or approved by GES; (b) made false representations attributing the source, sponsorship, approval, or certification of Defendants' goods and/or services to GES; and (c) made false representations that Defendants and Defendants' goods and/or services are affiliated, connected, associated with, or certified by Goode.

*Id.* ¶ 175.

A defendant engages in an unfair or deceptive trade practice under the Colorado Consumer Protection Act when it, among other things,

> (a) Either knowingly or recklessly passes off goods, services, or property as those of another;
>
> (b) Either knowingly or recklessly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; [or]
>
> (c) Either knowingly or recklessly makes a false representation as to affiliation, connection, or association with or certification by another;

Colo. Rev. Stat. § 6-1-105(1)(a)-(c). The elements of a private cause of action under the Act are as follows: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered the injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). Claims under the Act must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Hauschild GMBH & CO. KG v. FlackTek, Inc.*, No. 20-cv-02532-PAB-STV, 2022 WL 392501, at *10 (D. Colo. Feb. 9, 2022).

The defendants argue that they have adequately pleaded this claim because they allege that "Gaia defrauded consumers by continuing to use Goode's content," and "Gaia also used bribery, witness tampering and counterfeiting to profit off of Goode's name." Doc. 152 at 14. They also argue that their allegation that "Defendants made multiple representations to, at least, the owners of various conferences that caused the owners of those conferences to cancel Goode's appearance at those conferences" supports this claim. Doc. 185 at 12. But the complaint does not provide the requisite "time, place and contents of the false

representation" underlying the alleged unfair or deceptive trade practices. *Schwartz*, 124 F.3d at 1252. The complaint does not meet the particularity requirements of Rule 9(b).

The plaintiffs' Colorado Consumer Protection Act claim must therefore be dismissed as to Gaia, the Gaia individuals, and Mr. Weidner.

## VIII.   Claim 8: Breach of Contract
### *Gaia, the Gaia Individuals, and Mr. Weidner*

The plaintiffs assert that the defendants breached Mr. Goode's contracts with Gaia. Doc. 111 ¶¶ 182-88.

The elements of a breach-of-contract claim are: (1) a valid contract existed; (2) the plaintiff performed its obligations under the agreement; (3) the defendant did not perform its obligations under the agreement; and (4) the plaintiff was damaged by the defendant's breach. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The plaintiffs' breach-of-contract allegations are as follows:

- "While negotiating his talent contract, as well as any amendments thereto and subsequent verbal agreements, Mr. Goode met with Gaia CEO, Rysavy, and/or employees and agents of Gaia, Warkins, Weidner and Medvedich." Doc. 111 ¶ 25.

- "On August 22, 2016, Gaia entered into a Talent Agreement (the '2016' Contract') with Mr. Goode, promising certain compensation for his work on Cosmic Disclosure, as well as various speaking arrangements." *Id.* ¶ 26. That contract is in the record at Doc. 194 at 8-13.

- "The parties executed an Amendment to the 2016 Contract on or about August 29, 2017, under which Gaia promised Mr. Goode additional compensation for his work on [Cosmic Disclosure] (the '2017 Amendment')." Doc. 111¶ 26. That amendment is in the record at Doc. 194 at 15-17.

- "Subsequently, Gaia entered into a verbal agreement with Plaintiff, promising to issue him stock options in exchange for Mr. Goode's agreement to continue working on [Cosmic Disclosure]." Doc. 111 ¶ 26.

- Under the August 2016 Talent Agreement, the August 2017 Amendment, and the subsequent verbal agreement, "Gaia, through Rysavy, promised Mr. Goode various forms of compensation in exchange for his appearance on Cosmic Disclosure ('CD') including, inter alia: (a) Talent Fees or a Performance Bonus and monthly reports on the revenue brought in by CD used to calculate any such performance bonus; (b) Fees under the 'Ambassador Program', (c) Licensing Royalties; and (d) $150,000.00 in stock options." *Id.* ¶ 27. Mr. Goode agreed to work with Gaia in exchange for those promises and "additional monetary amounts agreed to by the parties." *Id.*

- Mr. Goode fulfilled his contractual obligations. *Id.*

- "Gaia, through Rysavy, breached the contracting agreement by failing to pay the promised Performance Bonus and/or the fees owed under the 'Ambassador Program' in full. Further, no qualified viewing time data, which is used to calculate the performance bonus, was provided to Mr. Goode. Since Mr. Goode was not given access to the monthly revenue reports, he was unable to calculate financial losses for the bonus." *Id.* ¶ 28.

- "Gaia, through Rysavy, wholly failed to pay the Licensing Royalties owed to Mr. Goode under Section 6(E) of the 2016 Contract, which was not modified by the 2017 Amendment. Gaia licensed CD to Amazon for syndication, and pursuant to Section 6(E), Mr. Goode was entitled to a royalty payment of 20% of the television syndication licenses paid to Gaia by third parties, less expenses paid by Gaia directly related to the license. To date, Gaia has failed to pay Mr. Goode the promised royalty payments." *Id.* ¶ 29.

- "Gaia has failed and refused to issue Mr. Goode the $150,000.00 in stock options that he was promised. Based on information and belief, Gaia—through Medvedich, Warkins and Rysavy—verbally agreed to issue $150,000.00 in stock options to Mr. Goode prior to the execution of the 2017 Amendment, and subsequently ratified that agreement by promising to issue the stock options to Mr. Goode in 2018, if Mr. Goode agreed to participate in the filming of additional CD episodes through June 2018. Mr. Goode accepted the offer and fulfilled his obligations to stay on the show through June 2018. However, Mr. Goode was never issued the stock options." *Id.* ¶ 30.

- "Gaia, through Rysavy, breached the [agreements], causing financial loss to Mr. Goode in the form of unpaid performance bonuses, 'Ambassador Program' fees, royalty payments, and unissued stock options." *Id.* ¶ 31.

- "On information and belief, Weidner's job description included compliance with company policies and procedures, as did Goode's, the Gaia [Individuals] and Gaia's," and "Weidner and Gaia breached that contract by failing to adhere to company policies including but not limited to those concerning the confidentiality and use of [Goode Enterprise Solutions'] confidential and proprietary information. The Gaia [Individuals], Weidner and Gaia also breached that contract by failing to act appropriately in a work environment." *Id.* ¶¶ 184-85.

- "Weidner, the Gaia [Individuals] and Gaia further breached their contract with Goode by acting in a manner contrary to the implied duty of good faith and fair dealing." *Id.* ¶ 187.

## A. Gaia

As noted above, the plaintiffs allege that Gaia failed to pay Mr. Goode the following compensation owed under the contracts: (1) the Performance Bonus; (2) fees owed under the Ambassador Program; (3) royalties from a license to Amazon; and (4) $150,000.00 in stock options promised orally. Gaia argues that the plaintiffs' breach-of-contract claim fails because: (1) the plaintiffs' allegations regarding the Performance Bonus and Ambassador Program are conclusory because (a) the complaint does not allege "any facts regarding for what period of time payment was not made, or even an approximation of the damages suffered as a result of the purported breach," and (b) the complaint alleges "that Gaia failed to pay a performance bonus **and/or** 'Ambassador Program' fees suggesting that Plaintiffs are merely guessing as to whether there was a breach at all of either category"; (2) as to the Amazon royalties, "Plaintiffs have not alleged conditions precedent, namely that there were any license payments due after expenses"; and (3) as to the stock options, any alleged oral promises are barred in light of a merger clause in the August 2016 Talent Agreement, and in any case the plaintiffs

have failed to allege the essential terms of the oral agreement with sufficient definiteness. Doc. 128 at 19-23.

As to the Performance Bonus, the plaintiffs have stated a plausible claim for relief. The complaint identifies the contract at issue, identifies what Mr. Goode is allegedly entitled to under the contract, and alleges that he did not receive what he was promised under the contract. The August 2016 Talent Agreement states that Mr. Goode will be paid a "Talent Fee and Performance Bonus" for "all Programs produced under the terms of this Agreement." Doc. 194 at 10; *see also id.* at 16 (August 2017 amendment). The plaintiffs allege that Mr. Goode performed his obligations as an on-air talent for Gaia's programs, and that Gaia did not pay the Performance Bonus in full. That is all that is required at this stage.

As to Ambassador Program fees, however, the plaintiffs have not pleaded enough facts to state a plausible claim. The August 2016 Talent Agreement provides that Mr. Goode "will have the opportunity to act as a Gaia Ambassador," and that Gaia will pay Mr. Goode "a commission for new subscribers referred by [Mr. Goode], calculated on all subscription fees actually received by Gaia from those new subscribers." Doc. 194 at 10-11; *see also id.* at 16 (August 2017 amendment). Although the complaint alleges that Mr. Goode performed all his *obligations* under the contracts, nowhere does it allege that Mr. Goode referred any new subscribers to Gaia. The plaintiffs have not alleged facts sufficient to support a reasonable inference that Mr. Goode is owed any commission under the Ambassador Program.

As to licensing royalties, the plaintiffs have stated a plausible claim for relief. The August 2016 Talent Agreement provides that "[i]f Gaia, in its discretion, licenses any of the AV Works for television syndication to non-affiliated third parties, then Gaia will pay [Mr. Goode] a royalty

equal to twenty percent (20%) of Licensing Net Receipts." Doc. 194 at 11. The complaint alleges that Gaia licensed Cosmic Disclosure to Amazon for syndication, and that Gaia failed to pay the royalty owed. The condition precedent to a royalty is "[if] Gaia . . . licenses any of the AV Works for television syndication to non-affiliated third parties." *Id.* If that condition occurs, as the plaintiffs have alleged, then a royalty is owed. It appears to be in dispute whether the amount of Licensing Net Receipts was greater than $0, but I must view the facts alleged in the light most favorable to the plaintiffs at the motion-to-dismiss stage. Discovery may reveal that the amount of the royalty owed is $0 because there were no Licensing Net Receipts after expenses, but contrary to Gaia's argument, the existence of Licensing Net Receipts greater than zero is not a condition precedent that must be pleaded to state a claim for relief.

As to the stock options, the plaintiffs have not pleaded a plausible claim for relief because they have failed to allege sufficient facts regarding the essential terms of the oral agreement. *See Federal Lumber Co. v. Wheeler*, 643 P.2d 31, 36 (Colo. 1981) ("In order to establish the existence of a contract, the parties must agree upon all essential terms."). The plaintiffs allege that "Gaia . . . verbally agreed to issue $150,000.00 in stock options to Mr. Goode . . . if Mr. Goode agreed to participate in the filming of additional [Cosmic Disclosure] episodes through June 2018." Doc. 111 ¶ 30. But they do not allege any further details regarding the oral contract, such as the option price, the time to execute, the class of stock, or the vesting date. In order for a contract to be enforced, the essential terms must be "definite, certain, clear, and unambiguous." *Yaekle v. Andrews*, 195 P.3d 1101, 1112 (Colo. 2008). The plaintiffs here have not pleaded facts sufficient to support a reasonable inference that an enforceable contract exists. *See Tan v. Det-CO, Inc.*, No. 17-cv-01678-NYW, 2018 WL 922133, at *10 (D. Colo. Feb. 15, 2018)

(dismissing claim for breach of oral contract where complaint's allegations failed to set forth "the material terms of the agreement").

In sum, the plaintiffs have alleged a plausible claim for relief for breach of the Performance Bonus and licensing royalty provisions of the written contracts. They have failed to state a claim for breach of the Ambassador Program provisions or for breach of an oral agreement for stock options.

## B.  Gaia Individuals and Mr. Weidner

The plaintiffs' breach-of-contract claim fails as against the Gaia Individuals and Mr. Weidner because the plaintiffs have not alleged the existence of a contract between those individuals and Mr. Goode. The plaintiffs' claims for breach of the written Talent Agreement (and amendment) and the oral contract for stock options concern contracts between Gaia and Mr. Goode; nowhere does the complaint allege that the Gaia Individuals or Mr. Weidner were parties to those contracts. Similarly, the plaintiffs' conclusory allegations that the Gaia Individuals and Mr. Weidner breached their employment contracts with Gaia does not give rise to a breach-of-contract claim as between those individuals and Mr. Goode. The plaintiffs argue that the Gaia Individuals might be liable under a piercing-the-corporate-veil theory, Doc. 185 at 6-7, but the complaint pleads no facts that would support application of that theory.

The plaintiffs' breach-of-contract claim must therefore be dismissed as to the Gaia Individuals and Mr. Weidner.

## IX.  Claim 9: Fraudulent Misrepresentation
### *Gaia and the Gaia Individuals*

The plaintiffs assert that Gaia and the Gaia Individuals made fraudulent misrepresentations to Mr. Goode in relation to his contracts with Gaia. Doc. 111 ¶¶ 189-94. Specifically, they allege that "[o]n multiple

occasions Gaia and the Gaia [Individuals] made misrepresentations regarding the employment contract between Goode and Gaia that included compensation beyond what Gaia did in fact pay to Goode. . . . Gaia and the Gaia [Individuals] induced Goode to enter the [employment contracts] by relaying said misrepresentations to Goode." *Id.* ¶¶ 190, 193.

The defendants argue that the plaintiffs' fraudulent-misrepresentation claims are barred by the "economic-loss rule," Doc. 128 at 33-34; Doc. 175 at 17-18, but the plaintiffs' claims fail for another, more straightforward reason: they have not pleaded them with particularity as required by Rule 9(b). To establish fraud, a plaintiff must show (1) that the defendant made a false representation of a material fact, knowing that representation to be false; (2) that the person to whom the representation was made was ignorant of the falsity; (3) that the representation was made with the intention that it be acted upon; and (4) that the reliance resulted in damage to the plaintiff. *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). "Pursuant to Rule 9(b), the Complaint must describe the specific representations which are allegedly fraudulent, where and when the statements were made, the particular defendant who made the misrepresentations, and the falsity of the representations." *Armani v. Maxim Healthcare Servs., Inc.*, 53 F. Supp. 2d 1120, 1130 (D. Colo. 1999). The plaintiffs' complaint is completely deficient in this regard.

Accordingly, the plaintiffs' fraudulent-misrepresentation claim must be dismissed as to Gaia and the Gaia Individuals.

## X.    Claim 13: Slander Per Se
*Gaia and Mr. Weidner*[2]

The plaintiffs assert that the defendants have committed slander per se as to Mr. Goode. Doc. 111 ¶¶ 195-99.

Slander is one of the two types of communication comprising the tort of defamation. *Keohane v. Stewart*, 882 P.2d 1293, 1297 n.5 (Colo. 1994). Slander is "generally an oral communication." *Id.* To establish an action for slander per se, the plaintiff must show: (1) the defendant made a verbal statement; (2) the statement was published to a third party; and (3) the statement defames the plaintiff's trade, business, or profession. *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 369 n.3 (Colo. 2011). The third element may also be met by imputation of (a) a criminal offense; (b) a loathsome disease; (c) a matter incompatible with the individual's office; or (d) serious sexual misconduct. *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004).

Here, the plaintiffs base this claim on purported statements accusing Mr. Goode of criminal acts. Doc. 152 at 17-18; Doc. 153 at 22. The allegations in the complaint regarding criminal acts are as follows:

- "Weidner ha[s] . . . been on . . . YouTube channels to accuse Goode of criminal acts." Doc. 111 ¶ 101.

- Mr. Weidner is part of an enterprise whose purpose is "to accuse Goode of criminal activities through social media outlets and other wirings and use extortion . . . harassment and any other manipulative tactic to deprive him of his livelihood." *Id.* ¶¶ 105-06.

- "Defendants' (and/or Defendants' agents' or affiliates') made a multitude of false, spoken statements (e.g., accusing Goode of a criminal act) purporting to be facts." *Id.* ¶ 196.

---

[2]    The plaintiffs have agreed to dismiss their defamation claims against the Gaia Individuals without prejudice. Doc. 185 at 13; Doc. 185-1.

None of these statements provide enough detail to state a claim of slander per se. The plaintiffs have not alleged, for example, what criminal activities Mr. Goode has been accused of or described when these statements were made. *See Proffitt v. Cornuke*, No. 03-CV-00810JL, 2005 WL 2171860, at *2 (D. Colo. Sept. 7, 2005) (dismissing defamation claim where "[t]he allegedly defamatory statements attributed Defendants are either too vague to state a claim for defamation or, if accurately reported, are not defamatory as a matter of law").

Accordingly, the plaintiffs' slander per se claim must be dismissed as to Gaia and Mr. Weidner.

## XI.   Claim 14: Libel Per Se
### *Gaia and Mr. Weidner*[3]

The plaintiffs assert that the defendants have committed libel per se as to Mr. Goode. Doc. 111 ¶¶ 200-04.

Libel is the other of the two types of communication comprising the tort of defamation. *Keohane*, 882 P.2d at 1297 n.5. Libel is "usually a written communication." *Id.* As with their slander per se claim, the plaintiffs base their libel per se claim on purported statements accusing Mr. Goode of criminal acts. Doc. 152 at 17-18; Doc. 153 at 22. The only relevant allegations in the complaint are those discussed above in connection with the slander claim. *Compare* Doc. 111 ¶ 196 (defendants "made a multitude of false, spoken statements"), *with id.* ¶ 201 (defendants "made a multitude of false, written statements"). Again, these statements do not provide enough detail to state a claim of libel per se because the complaint does not allege what criminal activities Mr. Goode has been accused of or describe when the statements were

---

[3]   The plaintiffs have agreed to dismiss their defamation claims against the Gaia Individuals without prejudice. Doc. 185 at 13; Doc. 185-1.

made. And, it is unclear from the complaint whether any of the purported statements at issue was made in written form, as is required for a libel claim.

Accordingly, the plaintiffs' libel per se claim must be dismissed as to Gaia and Mr. Weidner.

## XII.   Claim 15: Tortious Interference with a Business Expectancy
*Gaia, the Gaia Individuals, and Mr. Weidner*

The plaintiffs assert that the defendants have committed tortious interference with a business expectancy. Doc. 111 ¶¶ 205-08. They allege that "Goode had a multitude of actual or prospective business contracts with . . . Conferences and various entertainment agencies," and "Defendants knew of these actual or prospective business contracts and intentionally and improperly interfered with the performance of these contracts." Doc. 111 ¶¶ 206-07.

"Tortious interference with business expectancy is an intentional tort actionable under Colorado law," which is applicable where someone "intentionally and improperly interfere[s] with another's prospective contractual relation." *Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 915 (D. Colo. 2021). The tort is applicable under two circumstances: (1) where one induces or causes a third person to not enter or continue the prospective relation, or (2) where one prevents the other from acquiring or continuing the prospective relation. *Id.* "Because the tort is forward looking plaintiffs need not prove the existence of an underlying contract to succeed on a tortious interference claim." *Id.* "However, they must demonstrate that the tortfeasor employed intentional and improper means to prevent a contract's formation." *Id.* (citing *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981)).

The defendants argue that the plaintiffs' allegations regarding whether the defendants used any "wrongful means" to interfere with prospective business contracts with ufology or Conscious Community conferences are too conclusory to state a plausible claim, and I agree. *See* Doc. 111 ¶¶ 89-99 (alleging Mr. Goode was "blacklisted" from conferences due to defendants' "influence"). I also find that the plaintiffs have failed to allege facts sufficient to support a reasonable inference that there was a protected prospective contractual relationship or other business expectancy. The plaintiffs' allegations do not show a "reasonable probability" that they "would have received economic benefits" from a third party in the absence of the defendants' actions. *See Klein v. Gryberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) (prospective contracts that are too speculative cannot support tortious-interference claim); *Examination Bd.*, 519 F. Supp. 3d at 916-17 (alleged business expectancy was a "mere hope").

The plaintiffs' claim for tortious interference with a business expectancy must therefore be dismissed as to Gaia, the Gaia Individuals, and Mr. Weidner.

## XIII.  Claim 17: Declaratory Judgment of Trademark Validity
### *Gaia*

The plaintiffs request a declaratory judgment to determine the validity of the 20 AND BACK and BLUE AVIANS marks. Doc. 111 ¶¶ 209-13. Gaia argues that the Court should exercise its discretion to decline jurisdiction over the plaintiffs' declaratory-judgment claim.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields

to considerations of practicality and wise judicial administration." *Id.* at 288. "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Id.* The Tenth Circuit has identified five factors district courts should consider in determining whether to exercise their discretion to hear and decide claims for declaratory judgment: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

Consideration of these factors indicates the Court should decline declaratory-judgment jurisdiction in this instance. I have dismissed the plaintiffs' trademark-infringement claims. To the extent the parties have an ongoing dispute regarding ownership or validity of the 20 AND BACK and BLUE AVIANS marks, those issues can be resolved in the ongoing opposition proceedings before the Trademark Trial and Appeal Board. The plaintiffs appear to be using their declaratory-judgment claim here as an attempt to bypass that proceeding, which is the more appropriate forum. Deciding the trademark validity issues in this forum when the trademark-infringement claims have been dismissed would serve no useful purpose, and I thus find it unnecessary to devote judicial resources to the plaintiffs' declaratory-judgment claim. *See Colur World, LLC v. Benco Dental Supply Co.*, No. CV 18-3265, 2019 WL 9100306, at *2 (E.D. Pa. Mar. 29, 2019) (TTAB proceedings are similar to a

parallel state court proceeding, the presence of which weighs heavily toward declining jurisdiction); *cf. Mut. Ben. Ins. Co. v. Lorence*, 189 F. Supp. 2d 298, 302 (D. Md. 2002) (declining jurisdiction over declaratory-judgment action in favor of pending state administrative proceedings).

The plaintiffs' declaratory-judgment claim will therefore be dismissed without prejudice.

## XIV.   Dismissal with Prejudice

The plaintiffs have had three opportunities to attempt to state their claims through the filing of successive complaints in this matter. *See* Doc. 1 (original complaint); Doc. 36 (first amended complaint); Doc. 111 (second amended complaint). Where, as here, a plaintiff has repeatedly failed to cure deficiencies in its complaint, a court may refuse further amendments and dismiss the plaintiff's claims with prejudice. *See Barnett v. Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal," and a court does "not have to address repeated 'improvements' to the complaint."); *A & B Stores, Inc. v. Empls. Mut. Cas. Co.*, No. CIV-14-1228-HE, 2015 WL 1014808, at *3 (W.D. Okla. Mar. 9, 2015) ("[T]wo tries is enough."). With the exception of the plaintiffs' defamation claims against the Gaia Individuals (which they have agreed to voluntarily dismiss) and their declaratory-judgment claim (which is dismissed on jurisdictional grounds), the dismissed claims will be dismissed with prejudice.

## CONCLUSION

It is **ORDERED** that:

Gaia, Inc.'s Motion to Dismiss, **Doc. 128**, is **GRANTED IN PART** and **DENIED IN PART**. The plaintiffs' declaratory-judgment claim against Gaia is **DISMISSED WITHOUT PREJUDICE**, and the

plaintiffs' other claims against Gaia are **DISMISSED WITH PREJUDICE**, with the exception of the breach-of-contract claim to the extent it alleges breach of the Performance Bonus and licensing royalty provisions of the written contracts;

Jay Weidner's Motion to Dismiss, **Doc. 129**, is **GRANTED**, and the plaintiffs' claims against Mr. Weidner are **DISMISSED WITH PREJUDICE**;

Jirka Rysavy, Brad Warkins, and Kiersten Medvedich's Motion to Dismiss, **Doc. 175**, is **GRANTED**. The plaintiffs' slander per se and libel per se claims against Mr. Rysavy, Mr. Warkins, and Ms. Medvedich are **DISMISSED WITHOUT PREJUDICE**, and the plaintiffs' other claims against those defendants are **DISMISSED WITH PREJUDICE**.[4]

DATED: March 31, 2024                    BY THE COURT:

~~Daniel~~ D. Domenico
United States District Judge

---

[4]   Mr. Weidner requests an award of attorney fees for being required to respond to the plaintiffs' pleadings. Doc. 129 at 2, 6, 17, 25-26. And Gaia requests sanctions against the plaintiffs and their counsel for failing to file in good faith. Doc. 158 at 19. But "[a] motion shall not be included in a response or reply to the original motion." Local Civ. R. 7.1(d). These requests are denied.