IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-742-DDD-KAS

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

Plaintiffs,

v.

GAIA, INC.,
JAY WEIDNER,
CLIF HIGH,
BENJAMIN ZAVODNICK,
ALYSSA MONTALBANO,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH,

Defendants.

-----------------

ALYSSA CHRYSTIE MONTALBANO, individually,

Counter-Claimant,

v.

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

Counter-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC;
DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
VALERIE YANAROS WILDE,
ELIZABETH LORIE,
BRIAN JAMES FLYNN,
WILLIAM CAMPBELL,
MATTHEW GROVE,

1

DIANA TERRY, and
CHRISTINA GOMEZ,

Third-Party Defendants.

---

**GAIA, INC.'S AMENDED ANSWER AND COUNTERCLAIMS TO THE SECOND AMENDED COMPLAINT OF PLAINTIFFS JAMES COREY GOODE AND GOODE ENTERPRISE SOLUTIONS, INC.**

---

Defendant Gaia, Inc. ("Gaia"), by and through its attorneys, Davis+Gilbert LLP, pursuant to Federal Rules of Civil Procedure 7(a), 13, and 15, and Colorado Revised Statute § 13-80-109, and by written consent of Plaintiffs, for its Amended Answer and Counterclaims to the Second Amended Complaint (the "Complaint") of Plaintiffs James Corey Goode and Goode Enterprise Solutions, Inc. ("GES"), denies all factual allegations contained in the headings and unnumbered paragraphs and states as follows:

1.      The allegations of paragraph 1 state legal conclusions and Plaintiffs' intent in filing the Complaint, to which no response is required.  To the extent any response is required, Gaia denies the allegations of paragraph 1.

2.      Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2.

3.      Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3.

4.      Gaia admits the allegations in paragraph 4.

5.      Gaia admits that Jirka Rysavy is the founder and Executive Chairman of Gaia.  The remaining allegations of paragraph 5 state legal conclusions, to which no response is required.  To the extent any response is required, Gaia denies the remaining allegations in paragraph 5.

6.      Gaia denies the allegations in paragraph 6.

7.      Gaia denies the allegations in paragraph 7.

8.      Gaia admits that Jay Weidner has been employed by and contracted with Gaia at various times.  Gaia denies that Weidner has a continued relationship with Gaia or that it ever had a relationship with Weidner "with the aims [sic] to further deprive Goode of its [sic] occupation and livelihood".  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 8.

9.      Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.

10.      Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10.

11.      Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11.

12.      The allegations of paragraph 12 state legal conclusions and Plaintiffs' intent in filing the Complaint, to which no response is required.  To the extent any response is required, Gaia denies the allegations of paragraph 12.

13.      The allegations of paragraph 13 state legal conclusions, to which no response is required.  To the extent any response is required, Gaia denies the allegations of paragraph 13.

14.      The allegations of paragraph 14 state legal conclusions, to which no response is required.  To the extent any response is required, Gaia admits it is organized in Colorado but lacks knowledge or information sufficient to form a belief about the truth of or denies the remaining allegations of paragraph 14.

15.     The allegations of paragraph 15 state legal conclusions, to which no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 15.

16.     The allegations of paragraph 16 state legal conclusions, to which no response is required.  To the extent any response is required, Gaia denies the allegations of paragraph 16.

17.     Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17.

18.     Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.

19.     The allegations of paragraph 19 state legal conclusions, and the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19.

20.     Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20.

21.     Gaia admits it became aware of Goode.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 21.

22.     Gaia admits that it approached Goode to appear on the series *Cosmic Disclosure*, and that he and David Wilcock appeared on that series.  Gaia further admits that the series was successful and contributed to attracting new subscribers to Gaia's platform.  Gaia denies that *Cosmic Disclosure* doubled Gaia's net worth, brought in hundreds of thousands of new subscribers, and the remaining allegations in paragraph 22.

23.     Gaia admits that Goode filmed in-person and provided testimony concerning "Blue Avians", "20 and Back", and the "Sphere Being Alliance", among other topics, while he was contractually obligated to provide his services to Gaia, resulting in 128 episodes of *Cosmic Disclosure* being produced, in total.  Gaia denies that Goode personally generated thousands of hours of content or millions of dollars in revenue.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 23.

24.     Gaia denies the allegations of paragraph 24.

25.     Gaia admits that, beginning in 2015, Rysavy and Warkins met with Goode and GES to negotiate a series of written contracts concerning, generally, Goode appearing in Gaia programs.  Gaia denies that there were any verbal agreements between Gaia and Goode or GES and the remaining allegations of paragraph 25.

26.     Gaia admits that Gaia and GES entered into a contract on or about August 22, 2016, for Goode to perform on-camera services and consult regarding pre-production of series including *Cosmic Disclosure*, as well as make efforts to promote and market the Gaia programs in which Goode appeared, in exchange for Gaia paying GES.  Gaia further admit that Gaia and GES entered into an amendment to the prior contract, dated August 18, 2017, on or about August 29, 2017, for the continued services of Goode to appear in Gaia programs (including *Cosmic Disclosure*).  Gaia further states that such contracts and any amendments thereto speak for themselves.  Gaia denies the allegations in paragraph 26 to the extent that they are inconsistent with the terms of the parties' contracts or their amendments.  Gaia further denies that it entered into any verbal agreement with Goode or GES and the remaining allegations of paragraph 26.

27.     Gaia admits that Gaia and GES and/or Goode entered into various written contracts and amendments thereto.  Gaia further states that such contracts and any amendments thereto speak for themselves.  Gaia denies the allegations in paragraph 27 to the extent that they are inconsistent with the terms of the parties' written contracts or their amendments.  Gaia further denies that it entered into any verbal agreement with Goode or GES, that it agreed to pay Goode and/or GES any amount in stock options or any additional amounts not reflected in the parties' written contracts, and the remaining allegations of paragraph 27.

28.     Gaia admits that it did not regularly provide viewing time data to Goode, and further states that it was not obligated to do so.  Gaia denies the remaining allegations in paragraph 28.

29.     Gaia denies the allegations in paragraph 29.

30.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies that Goode was promised any stock options and the remaining allegations in paragraph 30.

31.     Gaia denies that Rysavy did not keep "his word" to Goode, that he reneged on any agreements, and the remaining allegations in paragraph 31.

32.     Gaia admits that Goode worked with Weidner while filming for *Cosmic Disclosure*. Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 32.

33.     Gaia admits that, at times, Weidner admonished Goode and others to stay on topic while filming content for *Cosmic Disclosure*.  Gaia denies the remaining allegations in paragraph 33.

34.     Gaia admits that, on one occasion, Goode complained to Rysavy and Medvedich about Weidner, resulting in Weidner being removed as producer of *Cosmic Disclosure*.  Gaia denies the remaining allegations in paragraph 34.

35.     Gaia denies the allegations in paragraph 35.

36.     Gaia denies the allegations in paragraph 36.

37.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.

38.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38.

39.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.

40.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40.

41.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that it filed oppositions with the Trademark Trial and Appeal Board to the purported marks "Blue Avians" and "20 and Back" and that Goode sent demand letters to Gaia but otherwise denies the allegations in paragraph 41.

42.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia further states that its opposition filings speak for themselves.  Gaia denies the allegations in paragraph 42 to the extent that they are inconsistent with Gaia's opposition filings, and otherwise denies the allegations in paragraph 42.

43.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 43.

44.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 44.

45.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits it has filed for various trademarks both prior to and after Goode filed for trademarks.

46.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 46.

47.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 47.

48.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that other individuals, including Jason Rice and Emery Smith, have been engaged by Gaia and appeared on *Cosmic Disclosure*, but otherwise denies the allegations in paragraph 48.

49.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 49.

50.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that Goode sent purported cease-and-desist letters, but otherwise denies the allegations in paragraph 50.

51.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that Rice released a statement but denies the remaining allegations in paragraph 51.

52.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that it entered a letter agreement with Rice by which it offered to pay for Rice's defense against Goode's attacks, but otherwise denies the allegations in paragraph 52.

53.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 53.

54.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia states that any letter agreement with Rice speaks for itself.  Gaia denies the allegations in paragraph 54 to the extent that they are inconsistent with the text of the letter agreement.

55.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 55.

56.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia states that any letter from Rice speaks for itself.  Gaia denies the allegations in paragraph 56 to the extent that they are inconsistent with the text of the letter agreement.  Gaia further lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 56.

57.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia states that any letter from Rice speaks for itself.  Gaia denies the allegations in paragraph 57 to the extent that they are inconsistent with the text of the letter agreement.  Gaia further lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 57.

58.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies any allegations directed at Gaia and otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 58.

59.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 59.

60.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 60.

61.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 61.

62.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 62.

63.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 63.

64.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 64.

65.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 65.

66.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 66.

67.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is

required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 67.

68.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 68.

69.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 69.

70.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 70.

71.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 71.

72.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 72.

73.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 73.

74.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 74.

75.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 75.

76.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 76.

77.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 77.

78.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is

required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 78.

79.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79.

80.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 80.

81.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 81.

82.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 82.

83.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 83.

84.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 84.

85.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 85.

86.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 86.

87.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 87.

88.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 88.

89.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is

required, Gaia denies the allegations to the extent they concern Gaia, Rysavy, Medvedich, and/or Warkins.  Gaia further states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 89.

90.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that Goode has attended the Conscious Life Expo conference but otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 90.

91.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 91.

92.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 92.

93.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that Goode has attended the Contact in the Desert conference but otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 93.

94.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia admits that it has been a sponsor of Contact in the Desert.

95.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 95.

96.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 96.

97.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 97.

98.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98.

99.     Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 99 to the extent they concern Gaia, Rysavy,

Medvedich, and/or Warkins.  Gaia further states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 99.

100.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 100.

101.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 101.

102.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 102.

103.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 103.

104.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 104.

105.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 105.

106.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 106.

107.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 107.

108.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 108.

109.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 109.

110.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is

required, Gaia denies the allegations in paragraph 110 to the extent they concern Gaia.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 110.

111.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 111.

112.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 112 to the extent they concern Gaia.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 112.

113.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 113.

114.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies it has harassed Goode.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 114.

115.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is

required, Gaia admits that it removed content including Goode from its website around the time Plaintiffs filed this action.  Gaia denies that it took down content including Goode to harm Goode's reputation.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 115.

116.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies that it is trying to harm Goode.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 116.

117.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 117.

118.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 118.

119.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 119.

120.    Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 120 to the extent they concern Gaia, Rysavy,

Medvedich, and/or Warkins.  Gaia lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 120.

121.　Gaia states that the Court has dismissed Plaintiff's claim to which the allegations in this paragraph pertain, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 121.

## **CLAIM I**

122.　Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 121 as if fully set forth herein.

123.　Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 123.

124.　Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 124.

125.　Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 125.

126.　Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 126.

127.     Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 127.

128.     Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 128.

129.     Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 129.

130.     Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 130.

131.     Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 131.

132.     Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 132.

133.     Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 133.

134.    Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 134.

135.    Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 135.

136.    Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 136.

137.    Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 137.

138.    Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 138.

139.    Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 139.

140.    Gaia states that the Court has dismissed Claim I and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 140.

## CLAIM II

141.    Gaia states that the Court has dismissed Claim II and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 140 as if fully set forth herein.

142.    Gaia states that the Court has dismissed Claim II and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 142.

143.    Gaia states that the Court has dismissed Claim II and that this Claim was not pleaded against Gaia, and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 143.

## CLAIM III

144.    Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 143 as if fully set forth herein.

145.    Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 145.

146.    Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 146.

147.    Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 147.

148.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 148.

149.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 149.

150.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 150.

151.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 151.

152.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 152.

153.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 153.

154.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 154.

155.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 155.

156.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 156.

157.     Gaia states that the Court has dismissed Claim III and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 157.

**CLAIM IV**

158.    Gaia states that the Court has dismissed Claim IV and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 157 as if fully set forth herein.

159.    Gaia states that the Court has dismissed Claim IV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 159.

160.    Gaia states that the Court has dismissed Claim IV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 160.

161.    Gaia states that the Court has dismissed Claim IV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 161.

**CLAIM V**

162.    Gaia states that the Court has dismissed Claim V and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 161 as if fully set forth herein.

163.    Gaia states that the Court has dismissed Claim V and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 163.

164.    Gaia states that the Court has dismissed Claim V and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 164.

165.    Gaia states that the Court has dismissed Claim V and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 165.

## CLAIM VI

166.    Gaia states that the Court has dismissed Claim VI and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 165 as if fully set forth herein.

167.    Gaia states that the Court has dismissed Claim VI and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 167.

168.    Gaia states that the Court has dismissed Claim VI and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 168.

169.    Gaia states that the Court has dismissed Claim VI and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 169.

170.    Gaia states that the Court has dismissed Claim VI and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 170.

171.    Gaia states that the Court has dismissed Claim VI and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 171.

172.    Gaia states that the Court has dismissed Claim VI and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 172.

## CLAIM VII

173.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 172 as if fully set forth herein.

174.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 174.

175.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 175.

176.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 176.

177.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 177.

178.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 178.

179.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 179.

180.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 180.

181.    Gaia states that the Court has dismissed Claim VII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 181.

## CLAIM VIII

182.    Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 181 as if fully set forth herein.

183.    Gaia admits that, beginning in 2015, Goode and GES entered a series of written contracts concerning, generally, Goode appearing in Gaia programs.  Gaia further states that such contracts and any amendments thereto speak for themselves.  Gaia denies the allegations in paragraph 183 to the extent that they are inconsistent with the terms of the parties' contracts or their amendments.  Gaia further states that paragraph 183 states a legal conclusion to which no

response is required and that the Court has dismissed Claim VIII as pleaded against Jirka Rysavy, Kiersten Medvedich, Brad Warkins, and Jay Weidner.  To the extent any response is required, Gaia denies the remaining allegations in paragraph 183.

184.    Gaia denies the allegations in paragraph 184.

185.    Gaia denies the allegations in paragraph 185.

186.    Gaia denies the allegations in paragraph 186.

187.    Gaia denies the allegations in paragraph 187.

188.    Gaia denies the allegations in paragraph 188.

## **CLAIM IX**

189.    Gaia states that the Court has dismissed Claim IX and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 188 as if fully set forth herein.

190.    Gaia states that the Court has dismissed Claim IX and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 190.

191.    Gaia states that the Court has dismissed Claim IX and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 191.

192.    Gaia states that the Court has dismissed Claim IX and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 192.

193.    Gaia states that the Court has dismissed Claim IX and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 193.

194.    Gaia states that the Court has dismissed Claim IX and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 194.

## CLAIM XIII[1]

195.    Gaia states that the Court has dismissed Claim XIII and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 194 as if fully set forth herein.

196.    Gaia states that the Court has dismissed Claim XIII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 196.

197.    Gaia states that the Court has dismissed Claim XIII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 197.

198.    Gaia states that the Court has dismissed Claim XIII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 198.

199.    Gaia states that the Court has dismissed Claim XIII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 199.

## CLAIM XIV[2]

200.    Gaia states that the Court has dismissed Claim XIV and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 199 as if fully set forth herein.

201.    Gaia states that the Court has dismissed Claim XIV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 201.

202.    Gaia states that the Court has dismissed Claim XIV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 202.

---

[1] The tenth claim pleaded in the Complaint is denominated as "Claim XIII".
[2] The eleventh claim pleaded in the Complaint is denominated as "Claim XIV".

203.     Gaia states that the Court has dismissed Claim XIV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 203.

204.     Gaia states that the Court has dismissed Claim XIV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 204.

## CLAIM XV[3]

205.     Gaia states that the Court has dismissed Claim XV and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 204 as if fully set forth herein.

206.     Gaia states that the Court has dismissed Claim XV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 206.

207.     Gaia states that the Court has dismissed Claim XV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 207.

208.     Gaia states that the Court has dismissed Claim XV and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 208.

## CLAIM XVII[4]

209.     Gaia states that the Court has dismissed Claim XVII and that therefore no response is required.  To the extent any response is required, Gaia repeats and re-alleges each and every answer contained in paragraphs 1 through 208 as if fully set forth herein.

210.     There are no allegations in this paragraph and, as such, no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 210.

---

[3] The twelfth claim pleaded in the Complaint is denominated as "Claim XV".
[4] The thirteenth claim pleaded in the Complaint is denominated as "Claim XVII".

211.    Gaia states that the Court has dismissed Claim XVII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 211.

212.    Gaia states that the Court has dismissed Claim XVII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 212.

213.    Gaia states that the Court has dismissed Claim XVII and that therefore no response is required.  To the extent any response is required, Gaia denies the allegations in paragraph 213.

## DEFENSES

As further, separate defenses, without assuming the burden of proof of any such defense that would otherwise rest with Plaintiffs, Gaia asserts the following:

### FIRST DEFENSE
**(Failure to State a Claim)**

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE
**(Breach/Failure to Perform)**

Plaintiffs' claims are barred, in whole or in part, because of their own failures to perform pursuant to the terms of any contracts or agreements between the parties.

### THIRD DEFENSE
**(No Breach by Gaia)**

Plaintiffs' claims are barred, in whole or in part, because Gaia performed all duties owed pursuant to the parties' contracts or agreements, other than any duties that were prevented or excused.

### FOURTH DEFENSE
**(Lack of Damages)**

Plaintiffs did not suffer any damages, or if they did, such damages are *de minimis*.

## SIXTH DEFENSE
### (Offset or Credit)

Plaintiffs' recovery is barred or must be reduced to the extent Plaintiffs are liable to Gaia on the Counterclaims brought by Gaia and/or to the extent that Gaia paid Plaintiffs more than they were otherwise entitled to pursuant to the parties' contracts or agreements.

## SEVENTH DEFENSE
### (Unclean hands)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH DEFENSE
### (Plaintiffs' Conduct)

If Plaintiffs were injured or damaged as alleged in the Complaint, such injury or damage was caused, in whole or in part, or was contributed to, by reason of Plaintiffs' own conduct.

## NINTH DEFENSE
### (Limitation of Damages)

If Plaintiffs were injured or damaged as alleged in the Complaint, the extent of any such damages that are recoverable are subject to limitations imposed by contract or agreement.

## TENTH DEFENSE
### (Failure of Conditions Precedent)

The Complaint is barred, in whole or in part, by the failure of required conditions precedent.

Gaia reserves the right to further amend this Answer to raise and rely upon any defenses that become available or apparent during discovery or to assert further defenses as to any claims not currently pleaded, including any claims that have been dismissed by the Court or Plaintiffs.

**WHEREFORE**, Gaia denies that Plaintiffs are entitled to any of the requested relief and respectfully requests entry of judgment dismissing Plaintiffs' Complaint with prejudice and awarding to Gaia any further relief that the Court deems just and proper.

## COUNTERCLAIMS

Gaia, by and through its attorneys, Davis+Gilbert LLP, pursuant to Federal Rules of Civil Procedure 7(a) and 13, and Colorado Revised Statute § 13-80-109, for its counterclaims against Plaintiffs James Corey Goode and GES, alleges as follows:

## NATURE OF THE COUNTERCLAIMS

1.      These counterclaims are in response to Plaintiffs' claims and seek to recover damages from Plaintiffs for malicious tortious acts of defamation, as well as breach of contract, trademark infringement, tortious interference, and unjust enrichment, and to enjoin Plaintiffs from further causing harm to Gaia.

## PARTIES

2.      Defendant/Counterclaimant Gaia, Inc. ("Gaia") is a Colorado corporation with its principal place of business located at 833 W. South Boulder Road, Louisville, Colorado, 80027. Gaia is a global conscious media and community company that operates a global digital video subscription service that caters to a unique and under-served subscriber base.  Gaia is a rapidly growing company with a digital content library of over 8,000 titles available to subscribers.

3.      Upon information and belief, Plaintiff/Counter-defendant James Corey Goode is an individual living in Boulder, Colorado.

4.      Upon information and belief, Plaintiff/Counter-defendant Goode Enterprise Solutions, Inc. ("GES") is a Colorado corporation with its principal place of business located at

6525 Gunpark Dr., Unit 370 PMB 227, Boulder, Colorado, 80301.  Stacey Goode, who is, on information and belief, Goode's wife, is listed as the registered agent for GES.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court because Gaia has suffered injury as a result of Plaintiffs' commission in Colorado of tortious acts, including publishing defamatory statements about Gaia, and because the contract between Gaia and Plaintiffs was entered into and performed in Colorado.  Additionally, by filing in this Court the original and amended complaints alleging claims concerning the same subject matter as these counterclaims, Plaintiffs have consented to the jurisdiction of the Court.  Further, this Court has personal jurisdiction over Plaintiffs because, on information and belief, Goode is domiciled in this District and GES's principal place of business is in this District.  Additionally, the Court has personal jurisdiction over Plaintiffs pursuant to Colo. Rev. Stat. § 13-1-124(1)(a) and (b) because Plaintiffs transact business within the state of Colorado, and have committed tortious acts within the state of Colorado.

6.      By filing in this Court the original and amended complaints alleging claims concerning the same subject matter as these counterclaims, Plaintiffs have consented to venue in this District.  Further, venue in this District is proper under 28 U.S.C. §§ 1391(b) and (c) because, upon information and belief, Goode resides in this District, GES's principal place of business is in this District, and a substantial part of the events or omissions giving rise to Gaia's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Overview

7.      Gaia contracted with GES for Goode to appear on the show *Cosmic Disclosure* ("CD"), a relationship that lasted for approximately three years—June 2015 to August 2018.

8.      On CD, Gaia provided a platform for Goode to tell his story, which allowed Goode to gain attention and fame in the "disclosure" community.

9.      Gaia paid Goode and his company GES generously during that time, including for his appearances on CD, his relocation from Texas to Colorado, and for various planned speaking events.

10.     However, while he was still involved in appearing on CD, upon information and belief, Goode became concerned that he was running out of material and that Gaia would replace him with new talent.

11.     Rather than quietly cede the spotlight, upon information and belief, Goode began plotting to destroy Gaia and CD.

12.     For example, Goode stopped appearing for shooting dates and threatened to interfere with any filming and production of CD that involved other talent.

13.     Upon information and belief, Goode also started an online campaign to defame and harass Gaia, which involved the posting of numerous articles, petitions, and emails that made wild and false accusations about Gaia and its executives.

14.     Accordingly, due to GES and Goode's various breaches and tortious conduct, Gaia eventually terminated the then-operative contract, thereby ending the parties' business relationship.

15.     At that time, Goode and GES owed Gaia reimbursement for certain advances previously made, the total amount of which exceeded any final contract payments to which Goode and GES may have been otherwise entitled.

16.     Nevertheless, despite GES and Goode's failure to make such reimbursements and Goode's other tortious conduct, Gaia did not pursue any legal action against Plaintiffs.

17.     However, after having his contract terminated, upon information and belief, Goode continued his vendetta and smear campaign against Gaia in an attempt to steal Gaia's significant subscriber base and drive Gaia's stock price down.

18.     Goode's vendetta continued to involve him making malicious and false statements about Gaia and its executives, accusing them of reprehensible illegal and immoral activity.

19.     Upon information and belief, Goode also directed others to make additional or similar malicious and false statements in an attempt to provide corroboration to his fabrications.

20.     Upon information and belief, Goode then disseminated and amplified the publication of others' statements through a calculated scheme designed to punish Gaia for terminating its relationship with him and elevating other talent to appear on CD.

21.     Upon information and belief, Goode communicated to his friends that his defamatory statements and other actions were specifically designed to adversely impact Gaia's stock price, and he purportedly reacted with glee anytime Gaia's stock price went down.

22.     As part of his plot, Goode also misappropriated Gaia's intellectual property by posting Gaia's copyrighted materials on his own website (in multiple languages) and using Gaia's trademark to attempt to divert Gaia's customers and revenues to his own businesses.

23.     Goode's vendetta of malicious and false statements and other tortious acts reached its zenith when he filed the original complaint in this Action.

24.     Upon information and belief, the filing of the original complaint—and all subsequent filings, including the operative Complaint—are part of Goode's calculated scheme to attack Gaia's business and its professional reputation.  Goode's actions were and are, upon information and belief, intended to publicly humiliate, harass, threaten, and harm Gaia and its employees.

25.     Goode's scheme involved publishing his defamatory statements on various internet and social media sites, all of which are publicly available and have been viewed by an unknown number of third parties, including Gaia's business partners and potential customers.

26.     Goode and his acolytes have continued their attacks despite Gaia requesting on numerous occasions that Goode take down the defamatory statements, and cease and desist committing any further tortious acts.

27.     Because of Goode's actions, including filing the Complaint and pursuing the claims therein, Gaia is left with no alternative but to assert these counterclaims.

**Contracts between the Parties**

28.     In June 2015, Plaintiffs and Gaia began discussing Goode's appearance on CD.

29.     On or about June 20, 2015, Gaia contracted with GES for the services of Goode to appear in Gaia programs (including CD) (the "2015 Contract", a copy of which was previously filed as Exhibit A, Dkt. 194, 260).[5]

---

[5] Exhibits A-E to this Amended Answer and Counterclaims were previously filed with Gaia's Answer (Dkt. 194), followed by a Motion for Leave to Restrict Access pursuant to Local Civil Rule 7.2(e) (Dkt. 198).  The Court subsequently granted, in part, the Motion for Leave to Restrict

30.     Pursuant to the 2015 Contract, Goode was to perform on-camera services and consult regarding pre-production, as well as make efforts to promote and market the Gaia programs in which Goode appeared.  (Ex. A at ¶¶ 3-4).

31.     The 2015 Contract contemplated that no fewer than 52 "Programs" (approximately 30 minutes in duration) would be produced during the term.  (Ex. A at ¶ 3(A)(i)).

32.     The 2015 Contract provided that Goode's responsibilities related to performing in the Programs would include attendance and performance at rehearsals, principal photography and voice-over sessions, and any necessary "re-take" or "overdub" sessions.  (Ex. A at ¶ 3(A)(iii)).

33.     In exchange for the talent services to be provided by Goode, Gaia agreed to pay Goode a fee for appearing in the Programs plus certain expenses.  (Ex. A at ¶ 6).

34.     Gaia agreed to provide a refundable upfront advance of $20,000 for a portion of the fees due to Goode for services performed.  (Ex. A at ¶ 6(B)).

35.     The 2015 Contract was for a term of 90 days beyond the completion of Goode's agreed talent services.  (Ex. A at ¶ 2).

36.     On or about August 22, 2016, Gaia again contracted with GES for the services of Goode to appear in Gaia programs (including CD) (the "2016 Contract", a copy of which was previously filed as Exhibit B, Dkt. 194, 260).

---

Access (Dkt. 257) and the Exhibits were re-filed, publicly and with redactions, pursuant to the Court's Order (Dkt. 260).  To avoid the need to burden the Court with an identical Motion for Leave to Restrict Access, the Exhibits are not being attached again and citation is made to the versions already filed with the Court and appearing on the Docket.

37.     Pursuant to the 2016 Contract, Goode was to perform on-camera services and consult regarding pre-production, as well as make efforts to promote and market the Gaia programs in which Goode appeared.  (Ex. B at ¶¶ 3-4).

38.     The 2016 Contract left open the number of Programs that would be produced during the term, but provided that Goode was to work with Gaia in good faith to determine the number. (Ex. B at ¶ 3(A)(i)).

39.     The 2016 Contract provided that Goode's responsibilities related to performing in the Programs would include attendance and performance at rehearsals, principal photography and voice-over sessions, and any necessary "re-take" or "overdub" sessions.  (Ex. B at ¶ 3(A)(iii)).

40.     In exchange for the talent services to be provided by Goode, Gaia agreed to pay Goode a fee for appearing in the Programs.  (Ex. B at ¶ 6(B)).

41.     Additionally, Gaia agreed to pay Goode for certain expenses, a commission for referring new subscribers, and, if applicable, a royalty based on "Licensing Net Receipts" earned via television syndication.  (Ex. B at ¶ 6(C)-(E)).

42.     Gaia agreed to provide in advance a portion of the fees due to Goode for services performed upon completion of principal photography.  (Ex. B at ¶ 6(A)).

43.     The 2016 Contract was for a term of the later of one year beginning August 1, 2016, or the completion of Goode's agreed talent services.  (Ex. B at ¶ 2(A)).

44.     The 2016 Contract provided that it would automatically renew for successive one-year periods unless either party terminated earlier by notice.  (Ex. B at ¶ 2(B)).

45.     The 2016 Contract provided that Gaia could terminate the agreement and be relieved of its obligations thereunder by providing 30-days written notice of "Cause", the

definition of which includes, *inter alia*, Goode's material and persistent failure to perform his obligations pursuant to the 2016 Contract and Goode's making of malicious or defamatory comments about Gaia, the Programs, or Gaia's officers or employees.  (Ex. B at ¶ 7(K)).

46.     The 2016 Contract provided that it would be construed in accordance with the laws of the State of Colorado.  (Ex. B at ¶ 7(H)).

47.     Both the 2015 Contract and the 2016 Contract provided that Gaia would retain all rights to CD and the Programs.  (Ex. A at ¶ 7(D), (K); Ex. B at ¶ 7(G), (L)).

48.     On or about August 29, 2017, Gaia and GES agreed to amend the 2016 Contract for the continued services of Goode to appear in Gaia programs (including CD) (the "August 2017 Amendment", a copy of which was previously filed as Exhibit C, Dkt. 194, 260).

49.     The August 2017 Amendment extended the term of the 2016 Contract for an additional one year beginning September 1, 2017, and continuing through August 31, 2018.  (Ex. C at § I).

50.     The August 2017 Amendment also revised the payment of fee advances, the rate for completing production of Programs, and the commission rate for referring new subscribers.  (Ex. C at § II).

51.     The August 2017 Amendment added a subparagraph providing that Gaia would pay Goode $50,000 for appearances at two live events, and that Gaia would make an advance payment of $25,000 upon execution of the Amendment.  (Ex. C at § II).

52.     On or about August 25, 2017, Gaia made the $25,000 advance payment related to Goode's anticipated appearance at two future live events (the "Advance Event Payment").

53.     On or about November 7, 2017, Gaia and GES agreed to further amend the 2016 Contract for the continued services of Goode to appear in Gaia programs (including CD) (the "November 2017 Amendment", a copy of which was previously filed as Exhibit D, Dkt. 194, 260; collectively the November 2017 Amendment and the August 2017 Amendment are the "2017 Amendments").

54.     The November 2017 Amendment revised the paragraph regarding "Programs", but left open the number of Programs that would be produced during the term, still requiring that Goode was to work with Gaia in good faith to determine the number.  (Ex. D at § I).

55.     The November 2017 Amendment added a subparagraph providing that Gaia would reimburse Goode up to $20,000 for relocation expenses, subject to an additional agreement—the "Relocation Benefit Agreement"—made an exhibit to the November 2017 Amendment.  (Ex. D at § II).

56.     The Relocation Benefit Agreement (a copy of which was previously filed as Exhibit E, Dkt. 194, 260) between Goode and Gaia provides that Goode would have no obligation to repay the reimbursed (or directly paid) relocation costs if he remained "Under Contract" with Gaia for 36 months from the date of his relocation.  (Ex. E ¶ 2).

57.     "Under Contract" was defined as there being a fully executed agreement between Goode and Gaia, and Goode appearing in a minimum of 360 minutes of published content per quarter.  (Ex. E ¶ 1).

58.     The Relocation Benefit Agreement provided that if Goode was not "Under Contract" at any time in the 36 months after his relocation, he would repay Gaia a portion of the relocation expenses prorated to the amount of time he was "Under Contract".  (Ex. E ¶ 3).

59.     Goode agreed to repay any relocation expenses due within two weeks of no longer being "Under Contract".  (Ex. E ¶ 5).

60.     Goode further agreed that if he was obligated to repay any relocation expenses that Gaia could deduct that amount from any future payment to which he may otherwise be entitled. (Ex. E ¶ 7).

61.     Goode further agreed that in any legal action brought to enforce the terms of the Relocation Benefit Agreement that the prevailing party shall be entitled to recover the costs of such action, including attorneys' fees.  (Ex. E ¶ 8).

62.     Upon information and belief, Goode relocated from Texas to Colorado in or around November 2017.

63.     On or about December 11, 2017, Gaia reimbursed Goode $6,083.62, and on or about December 18, 2017, Gaia reimbursed Goode $4,986.00, both reimbursements made pursuant to the Relocation Benefit Agreement and the November 2017 Amendment (collectively, the combined payments of $11,069.62 are the "Relocation Payment").

64.     After executing the 2017 Amendments, Goode began to breach the terms of the 2016 Contract, including by failing on multiple occasions to appear for scheduled production dates.

65.     Indeed, after executing the November 2017 Amendment and the Relocation Benefit Agreement, Goode appeared in less than 360 minutes of published content per quarter.

66.     Additionally, upon information and belief, in 2018, Goode began to make malicious and defamatory comments about Gaia and certain Gaia officers and employees, many of which were published online (as detailed herein, infra).

67.     As a result of his actions in failing to appear for scheduled production dates and making malicious and defamatory comments, Gaia exercised its right to terminate the 2016 Contract with cause, on or about July 13, 2018, by notifying Plaintiffs in writing of such termination.

68.     Pursuant to paragraph 7(K) of the 2016 Contract, Gaia's termination thereof was effective on August 12, 2018.

69.     Because the Performance Contract was terminated as of August 12, 2018—less than 36 months after Goode's relocation—and Goode was never deemed to be "Under Contract" because of his failure to appear in a minimum of 360 minutes of published content per quarter, Goode was obligated to repay the entire Relocation Payment, consistent with the terms of the Relocation Benefit Agreement.

70.     Gaia determined that the amount due from Goode for the Relocation Payment was greater than any further amounts due to Goode pursuant to the 2016 Contract, and therefore withheld, pursuant to the Relocation Benefit Agreement, any further payments to Goode.

71.     Even taking into account any payments to which Goode otherwise may have been entitled, Goode still owes Gaia for repayment of the Relocation Payment.

72.     Gaia has made numerous demands to Goode for repayment of the amount of the Relocation Payment owed—including most recently on March 7, 2019—but Goode has refused to reimburse Gaia.

73.     Further, GES and Goode owe Gaia for repayment of the Advance Event Payment.

74.     Gaia has made numerous demands to GES for repayment of the $25,000 advance on the Live Events fees—including most recently on March 7, 2019—but GES has refused to reimburse Gaia.

75.     Both GES and Goode have refused to make payment of the amounts they each owe Gaia.

76.     Unfortunately, Gaia's termination of its contract with Goode did not mark the end of his misconduct, as thereafter Goode continued his calculated plot to threaten, harass, and defame Gaia in an attempt to get "revenge".

### Additional Background on Goode

77.     Although unknown to Gaia at the time it began doing business with him, upon information and belief, Goode has a history of "bad breakups" and fabricating information about former business partners and employers, including accusing them of illegal activities.

78.     For example, based on court records from a case filed in the District Court, Dallas County, Texas, 116th Judicial District, Cause Number DC-14-04807, upon being fired from a position with Darling International Inc. ("Darling"), in 2013, Goode fabricated a story accusing his former employer of threatening and terrorizing him.

79.     Based on court records from that case, Goode claimed in a video posted to YouTube that Darling employees had made "Terrorist Threats" to him and his family, including by placing a knife and bullet outside of Goode's home.

80.     Based on sworn affidavits submitted by two of Darling's employees, and based on the allegations of the verified complaint filed in the action, Goode's claims in the YouTube video were completely false.

81.     Based on court records from that case, after posting the video on YouTube, Goode contacted Darling by an email that included a link to the YouTube video and a threatening statement that "Darling Partners and future prospective Partners will be shocked to see/hear/read some of the behavior that has thus far been allowed to continue in this organization."

82.     Based on additional court records from that case, the court first entered a temporary restraining order against Goode enjoining him from threatening, harassing, or harming Darling and its agents, and from going within 200 yards of any of the protected parties.

83.     Based on additional court records from that case, the court then entered a temporary injunction, and finally an agreed permanent injunction, to enjoin the same behavior and continue the same protections to Darling and the protected parties.

84.     Similarly, based on court records from another case before this Court—case number 20-cv-947—Goode has accused other former business partners of various crimes, including extortion and embezzlement.

85.     Upon information and belief, including based on the false and defamatory allegations against Gaia and its employees, when a business relationship sours, Goode goes on the offensive by falsely accusing his business partners of crimes and other deplorable activities.

**Goode's Defamatory Statements about Gaia**

86.     As Goode had previously done, upon information and belief, to Darling and others, after the parties' business relationship ended, Goode engaged in a vendetta against Gaia.

87.     Upon information and belief, Goode pursued his malicious vendetta by knowingly spreading false statements about Gaia through a barrage of emails, social media, and internet postings.

88.     Upon information and belief, Goode has directly posted or been involved in creating hundreds of disparaging and often defamatory statements about Gaia and its executives.

*The David Wilcock Email—July 1, 2018*

89.     One of Goode's co-hosts on CD was David Wilcock.

90.     Upon information and belief, in late-2017 or early-2018, prior to having his contract terminated by Gaia, Goode became concerned that he was running out of material to present on CD and that Gaia would replace him with new talent.

91.     Accordingly, upon information and belief, Goode approached Wilcock and conspired with him to refuse to agree to work with any other talent on CD.

92.     However, Goode and Wilcock were not able to persuade Gaia to limit appearances on CD to the two of them, and they were asked to record episodes of CD with new talent.

93.     Upon information and belief, Goode's concern about this development led him to further conspire with Wilcock for both to end their relationship with Gaia and embark on a calculated scheme to bring down Gaia and take its customer base for their own planned platform.

94.     Upon information and belief, to that end, Goode worked with Wilcock to craft a departure email that would initially be sent to Gaia executives as one of the first phases of Goode's plot.

95.     On July 1, 2018, Wilcock sent the departure email (the "Wilcock Email") to Gaia executives Brad Warkins and Kiersten Medvedich.

96.     Beyond merely notifying Gaia of Wilcock's intent to end his relationship with Gaia, the Wilcock Email included numerous false and defamatory statements accusing Gaia and certain of its executives of illegal and immoral behavior.

97.     For example, Wilcock claimed that another Gaia show in which he was involved "is literally saying that God is Evil and Lucifer is God – who (ahem) also happens to be a reptilian alien" ("Defamatory Statement WE1").

98.     Discussing his belief about the entirely debunked "Pizzagate" conspiracy theory and apparently connecting Gaia to the purported conspiracy, Wilcock went on to say that the Gaia show *Ancient Civilizations* "went forward on the Gaia network despite my public attestations of the evidence that pedophilia, human sacrifice, cannibalism and Luciferianism are being practiced in elite circles" ("Defamatory Statement WE2").

99.     Wilcock further stated that "[t]herefore the Company was apprised at the very beginning that the *Ancient Civilizations* program was promoting Lucifer" (italics added for consistency) ("Defamatory Statement WE3").

100.    Lest there be any doubt about Wilcock's accusations against Gaia, he expressly stated that the Gaia program *Ancient Civilizations* "is Luciferian propaganda disguised as entertainment. Luciferianism is the religion of the elite globalist group I oppose. Luciferianism is commonly used as an excuse for pedophilia, human sacrifice, cannibalism and genocidal aspirations, among other very unsavory things" ("Defamatory Statement WE4").

101.    To further clarify his accusations, Wilcock stated that "[t]he ongoing promotion of Lucifer on Gaia is also an enormous corporate liability" ("Defamatory Statement WE5").

102.    Wilcock continued his denigration of Gaia by stating "I have witnessed multiple cases in which a commercial for Lucifer, I mean *Ancient Civ*, is burned into the end of my show *Cosmic Disclosure*. This is tantamount to a propaganda war against my own following, which is almost entirely Judeo-Christian. It also violates my own religious freedom, since publicly I have

made it very clear that I do not think the God of the Abrahamic religions is a 'demiurge' that is luring everyone into a soul trap, and that Lucifer is our misunderstood reptilian savior" (italics added for consistency) ("Defamatory Statement WE6").

103.    Wilcock then made allegations about Gaia's business practices, including by stating "[t]o then edit Corey Goode and me both into a show that aggressively attacks God as Evil, and Lucifer as Good, constitutes a breach of the contract I signed as an employee. This could furthermore be legitimately considered as fraud . . ." and "the lack of integrity in Gaia's verbal agreements is so high that I no longer trust anything that anyone in this company says to me unless I get it in writing" ("Defamatory Statement WE7").

104.    In short, Wilcock accused Gaia and/or its employees of being "Luciferians" engaged in or promoting "pedophilia, human sacrifice, cannibalism and genocidal aspirations."

105.    Wilcock also attacked Gaia's business practices by claiming it committed fraud and breached contracts.

106.    Defamatory Statement WE1, Defamatory Statement WE2, Defamatory Statement WE3, Defamatory Statement WE4, Defamatory Statement WE5, Defamatory Statement WE6, and, Defamatory Statement WE7 (collectively, the "Wilcock Email Defamatory Statements") are false statements of fact.

107.    In total, the Wilcock Email was thousands of words and included numerous and various allegations and diatribes.

108.    Completely shocked by the allegations in the Wilcock Email, Gaia responded to Wilcock and asked to talk to him to understand where the allegations were coming from.

109.    Wilcock was largely non-responsive to Gaia's outreach.

110.     Gaia would come to learn why, and the reason for the Wilcock Email and the Wilcock Email Defamatory Statements, because of what came next.

111.     Upon information and belief, the reprehensible allegations against Gaia in the Wilcock Email, including the Wilcock Email Defamatory Statements, were not merely for the purpose of explaining Wilcock's departure.

112.     Upon information and belief, Goode assisted in drafting the Wilcock Email and the Wilcock Email Defamatory Statements because he intended to "leak" it online as part of his plan to attack and defame Gaia.

113.     Upon information and belief, Goode published the Wilcock Email, including the Wilcock Email Defamatory Statements, by forwarding it to numerous others in the "disclosure" community and suggested that they post it online.

114.     In fact, there were postings online of the Wilcock Email itself or of videos involving people reading the Wilcock Email, including by Laura Eisenhower and others.

115.     Goode—as well as Wilcock and others who posted it—knew that the Wilcock Email Defamatory Statements were false or recklessly disregarded the falsity of the statements, and published them with malice and with the intent to cause harm to Gaia.

116.     The Wilcock Email Defamatory Statements are injurious and defamatory *per se*, in that they are specifically directed at Gaia and the defamatory meaning is apparent from the face of the statements without the aid of extrinsic proof.  The Wilcock Email Defamatory Statements accuse Gaia of promoting Lucifer and Luciferianism, and they directly injure Gaia's business and professional reputation.

117.     Additionally, the Wilcock Email Defamatory Statements caused direct damages to Gaia by encouraging Gaia's subscribers to terminate their relationship with Gaia, thus causing the loss of subscription fees.

*The Change.org Petition—June 2018*

118.     Upon information and belief, in addition to attacking Gaia from within using the Wilcock Email, Goode took his campaign public by working with his associates to draft defamatory statements about Gaia and post them on various websites.

119.     Upon information and belief, one such screed was posted on Change.org, a petition website often used for social justice initiatives.

120.     Unlike those using Change.org to gain support for social justice, upon information and belief, Goode was using the platform as part of his scheme to defame and attack Gaia.

121.     A Change.org petition posted on or before June 11, 2018, titled "Please, Cancel Your GAIA Subscription" (the "Petition") was purportedly posted by someone identifying themselves as "Team Gaia".[6]

122.     Upon information and belief, Goode, either individually or through others who he informed and directed, posted the Petition on Change.org.

123.     Moreover, Goode linked to and commented on the Petition on his own Facebook page.

124.     Included in the Petition were defamatory and otherwise tortious statements.

---

[6] The posting appeared at the following site, which is no longer active: https://www.change.org/p/please-cancel-your-gaia-subscription.

125.    For example, the Petition includes statements that Gaia's management team "lacks honesty" ("Defamatory Statement CP1") and engages in "perpetual emotional, mental, and fear-based verbal abuse, [and] inappropriate and harassing treatments" ("Defamatory Statement CP2").

126.    The statements that Gaia's management team is untruthful and abusive are false.

127.    Defamatory Statement CP1 and Defamatory Statement CP2 (collectively, the "Petition Defamatory Statements") are false statements of fact.

128.    Upon information and belief, Goode assisted in drafting the Petition and the Petition Defamatory Statements and was involved with posting the Petition online.

129.    Upon information and belief, Goode published the Petition, including the Petition Defamatory Statements, by hyperlinking to it in his social media accounts and forwarding it to numerous others in the "disclosure" community.

130.    Upon information and belief, Goode—as well as others involved in posting it—knew that the Petition Defamatory Statements were false or recklessly disregarded the falsity of the statements, and published them with malice and with the intent to cause harm to Gaia.

131.    The Petition Defamatory Statements are injurious and defamatory *per se*, in that they are specifically directed at Gaia and the defamatory meaning is apparent from the face of the statements without the aid of extrinsic proof.  The Petition Defamatory Statements state that Gaia and its management team are dishonest and abusive, and they directly injure Gaia's business and professional reputation.

132.    Beyond just including the Petition Defamatory Statements, the Petition also used such statements as the basis for an express call to action for Gaia subscribers to cancel their subscriptions.

133.    Indeed, the Petition Defamatory Statements caused direct damages to Gaia by encouraging Gaia's subscribers to terminate their relationship with Gaia, thus causing the loss of subscription fees.

134.    Upon information and belief, through the Petition, Goode interfered with the business relationship between Gaia and many of its subscribers using wrongful means, namely the assertion of false and defamatory statements about Gaia and its management team.

135.    The Petition also misappropriated at least one of Gaia's trademarks (a pictorial depiction reading "gaia seeking truth", hereinafter the "Mark").

136.    The use of the Mark in the Petition was for the purpose of competing with Gaia, as the Petition encouraged Gaia customers to cancel their subscriptions and instead direct such money to another "truth-seeking researcher, insider, or experiencer", as Goode claims to be.

*The GEM Emails – July 2018*

137.    Upon information and belief, Goode also attacked Gaia by posing as a fabricated group named "GEM".

138.    Upon information and belief, GEM was purportedly a group of current and former Gaia employees—hence the name, "Gaia Employee Movement"—leaking information about Gaia to others in the "disclosure" community.

139.    Upon information and belief, GEM's manner of operating was to "drop" information by sending emails and/or documents to those considered to be "friendly" to its purpose.

140.    One such "drop", which was eventually forwarded to Gaia employees, contained numerous false and defamatory statements about Gaia and its executives.

141.     For example, the purported "drop" stated that it was from "GEM movement=gaia employee movement" and went on to assert that "DEN Lucifer Coven = CIA front?", "Talent . . . Kept as slaves", and "Other Talent OWNED! . . . SLAVES!" (collectively, the "Defamatory GEM Statements").

142.     Upon information and belief, Goode intentionally published the Defamatory GEM Statements by acting as GEM and sending (or "dropping") the email to others in the "disclosure" community.

143.     Upon information and belief, Goode knew that the Defamatory GEM Statements were false or recklessly disregarded the falsity of the statements, and published them with malice and with the intent to cause harm to Gaia.

144.     The Defamatory GEM Statements are injurious and defamatory *per se*, in that they are specifically directed at Gaia and the defamatory meaning is apparent from the face of the statements without the aid of extrinsic proof.  The Defamatory GEM Statements state that Gaia is an illegitimate CIA front and improperly controls "talent", all of which directly injures Gaia's business and professional reputation.

*Fade to Light Blog – Late-2018*

145.     Upon information and belief, Goode also attacked Gaia by giving information to bloggers, including one named Thomas Crown who posted defamatory statements about Gaia on the website https://fadetolightblog.wordpress.com (the "FTL Blog")[7].

146.     Upon information and belief, Goode linked to and commented on the FTL Blog on his own social media accounts and/or pages.

---

[7] As of the date of filing, the blog is no longer available at that link.

147.    In a November 28, 2018, post titled "The Fall of Gaia, Inc.", the FTL Blog stated that "Gaia, Inc. employees are allegedly directly responsible for contacting the group Goode refers to as the Dark Alliance, who attacked Goode mercilessly last year through cyber and in-person harassment, stalking and doxxing in an attempt to completely destroy his reputation in the UFO community." ("Defamatory Statement FTL1").

148.    In the same post, the FTL Blog stated that the "conspiracy originated and was coordinated at the very top of Gaia leadership . . . who [] encouraged and required employees to harass and blacklist Goode from the entire UFO industry." ("Defamatory Statement FTL2").

149.    Defamatory Statement FTL1 and Defamatory Statement FTL2 (collectively, the "FTL Blog Defamatory Statements") are false statements of fact.

150.    Upon information and belief, Goode published the FTL Blog Defamatory Statements to "Thomas Crown", and may have assisted in drafting the FTL Blog and the FTL Blog Defamatory Statements.

151.    Upon information and belief, Goode—as well as others involved in posting it— knew that the FTL Blog Defamatory Statements were false or recklessly disregarded the falsity of the statements, and published them with malice and with the intent to cause harm to Gaia.

152.    The FTL Blog Defamatory Statements are injurious and defamatory *per se*, in that they are specifically directed at Gaia and the defamatory meaning is apparent from the face of the statements without the aid of extrinsic proof.  The FTL Blog Defamatory Statements state that Gaia and its management team are dishonest and abusive, and they directly injure Gaia's business and professional reputation.

*YouTube Video – March 21, 2020*

153.    Upon information and belief, Goode is one of the speakers in a video titled "Corey Goode As You Wish Talk Radio Exclusive Tell All Interview" (the "Video").

154.    Upon information and belief, the Video was recorded in or around March 2020.

155.    Upon information and belief, the Video was published on YouTube.com on March 21, 2020 (youtube.com/watch?v=FnlrSExC2Lo)[8] by James Gilliland.

*YouTube Video – Gaia Allegations*

156.    At approximately 6:08-6:24 of the Video, Goode states that "[t]hen certain executives, contractors and employees at Gaia then went on a war path and started gas lighting all of these very disturbed people that have been cyber stalking us" ("Defamatory Statement V1") .

157.    At approximately 10:48-11:05 of the Video, Goode states, "[a] lot of people, they were unable to get people to come and do new shows because everyone was figuring out that your intellectual property could get stolen.  My life story turned Gaia from $150 million company into a $300 million company.  When we left, guess what, it went right back down" ("Defamatory Statement V2").

158.    At approximately 11:13-11:15 of the Video, Goode states that "[t]he employees were encouraged to harass me as well" ("Defamatory Statement V3").

159.    At approximately 26:32-26:40 of the Video, Goode states that (referring to Gaia and others) "[e]ach of these people, if you look at them, they profess some form of Luciferian, or satanic sort of dark magical beliefs" ("Defamatory Statement V4").

---

[8] As of the date of filing, the video is no longer available on YouTube at that link.

160.     At approximately 31:00-31:21 of the Video, Goode states that (again referring to Gaia and others) "[b]ut some of these people, they're in those triggered states. They're being used as useful idiots by corporate and other people that are giving them money or encouragement to go after us.  So that is extremely irresponsible because who knows. One of these people could do something very bad" ("Defamatory Statement V5").

161.     Defamatory Statement V1, Defamatory Statement V2, Defamatory Statement V3, Defamatory Statement V4, and Defamatory Statement V5 (collectively, the "Defamatory Video Statements") are false statements of fact.

162.     Upon information and belief, Goode intentionally published the Defamatory Video Statements to Gilliland, who then published them on the internet.

163.     Upon information and belief, Goode knew that the Defamatory Video Statements were false or recklessly disregarded the falsity of the statements, and published them with malice and with the intent to cause harm to Gaia.

164.     The Defamatory Video Statements are injurious and defamatory *per se*, in that they are specifically directed at Gaia and the defamatory meaning is apparent from the face of the statements without the aid of extrinsic proof.  The Defamatory Video Statements imply that Gaia has hired people to stalk and harass Goode, that its executives worship Lucifer, and that Gaia lost $150 million upon Goode's departure, all of which directly injures Gaia's business and professional reputation.

### *Video – Wilcock Email*

165.     At approximately 5:28-5:30 of the Video, Goode refers to the Wilcock Email and states that it "spells out beautifully what went on there".

166.     Goode goes on to say, at approximately 5:32 of the Video, again referring to the Wilcock Email, "everyone should read it".

167.     Goode then says, at approximately 5:38 of the Video, "[w]e'll find it and make sure there's a link in the description" in a continued bad-faith effort to promote, publish, and publicize the Wilcock Email Defamatory Statements.

168.     The Video contains numerous other defamatory false statements about Gaia, and upon information and belief, contains other fabricated information.

*Twitter Response – August 23, 2021 (or thereabouts)*

169.     Goode's vendetta and defamatory statements continued even after this Action was commenced.

170.     A post on Twitter dated August 23, 2021, included the statements "Are [sic] Gaia to be trusted?" and "I fell back into Gaia recently, in particular Cosmic Disclosure and I'm not sure if I can trust it anymore."

171.     In response, Goode posted, "Details are in our Federal Racketeering lawsuit against Gaia. Our lead Attorney was nearly killed in a hit n run by an organized crime member recently. Very suspicious timing. Who goes to Police/Courts for help, Victims or perpetrators?"

172.     Upon information and belief, Goode intentionally published the Twitter Defamatory Statement.

173.     Upon information and belief, Goode knew that the Twitter Defamatory Statement was false or recklessly disregarded the falsity of the statement, and published it with malice and with the intent to cause harm to Gaia.

174.     The Twitter Defamatory Statement is injurious and defamatory *per se*, in that it is directed at Gaia and the defamatory meaning is apparent from the face of the statements without the aid of extrinsic proof.   The Twitter Defamatory Statement claims or implies that Gaia is responsible for a "hit n run" car accident injuring Goode's counsel, which directly injures Gaia's business and professional reputation.

175.     Upon information and belief, Goode published each of the Wilcock Email Defamatory Statements, the Defamatory Petition Statements, the Defamatory GEM Statements, the FTL Blog Defamatory Statements, the Defamatory Video Statements, and the Twitter Defamatory Statement (collectively, the "Defamatory Statements"), and caused them to be communicated and distributed widely on the internet.

176.     The various Defamatory Statements have been republished or linked to on numerous websites, including YouTube (www.youtube.com), X (formerly Twitter) (twitter.com) and Facebook (www.facebook.com), and have thus been widely disseminated to the public.

177.     Upon information and belief, in addition to publishing the Defamatory Statements directly to certain individuals, Goode linked to the Defamatory Statements through his social media pages on X/Twitter (@CoreyGoode), Facebook (CoreyGoodeOfficial), and other sites in order to further disseminate the statements therein across the internet.

178.     The entirety of each of the Defamatory Statements gives a false and defamatory impression of Gaia's business and its executives.

179.     Upon information and belief, Goode was motivated to make and promote the Defamatory Statements because of a desire to drive down Gaia's stock price.

180.    Upon information and belief, Goode communicated with friends and colleagues using the messaging application WhatsApp about his desire and efforts to impact Gaia's stock price.

181.    Gaia has been damaged by the Defamatory Statements in the operation of its business.

182.    Gaia has also been forced to incur costs to take extra security measures due to the numerous threats that Gaia has received.

183.    Gaia has been further damaged in an amount yet to be determined, including without limitation due to the loss of current and potential new customers and business partners who have been exposed to each of the Defamatory Statements.

### Goode's Other Torts

184.    Beyond making and disseminating the Defamatory Statements, Goode's scheme to "take down" Gaia including the commission of other torts.

185.    On or about October 3, 2018, Goode sent a threatening letter to Jason Rice, one of the individuals who replaced him on CD.

186.    Goode threatened that he would take "any necessary precautions"—clearly implying litigation—if Rice participated in any broadcast by Gaia that "improperly" used Goode's purported trademarks (as alleged by Goode).

187.    After receiving Goode's threatening letter, Rice ended his relationship with Gaia.

188.    Additionally, Goode posted on his personal website, https://spherebeingalliance.com, transcripts from at least 164 episodes of CD (including a number of episodes that did not include Goode), which remained on Goode's website until August 9, 2018.

189. Per the Parties' agreements, the rights to the CD transcripts were Gaia's and Goode had no right to post them on his website.

190. Upon information and belief, Goode's posting of CD transcripts on his personal website was done intentionally and in bad faith.

191. For example, Goode retained the transcripts on his website even after receiving multiple requests from Gaia and its counsel to remove the transcripts.

192. Although Goode eventually did remove the transcripts, thereafter, in or around November 2019, he posted at least one full video of a new CD episode, at the website https://spherebeingalliance.com/videos/sba/ZXLP5Q-WdR4/guide-to-non-terrestrial-beings-cosmic-disclosure-w-corey-goode-alien-species-agenda-guide/, again violating Gaia's rights.[9]

193. Goode's bad faith is further established by his later actions directing individuals to other websites where episodes or transcripts of CD were illegally uploaded.

194. For example, in a Facebook post in early-October 2021, Goode posted a link to season 2, episode 14, of CD, which had been posted on the website bitchute.com.

195. Around that same time, in response to another user asking to see "videos of Gaia that you were in", Goode posted a response writing, "COSMIC DISCLOSURE – Full Transcripts can be found online" followed by a link to the website https://pdfcoffee.com.

## FIRST CAUSE OF ACTION
## DEFAMATION

196. Gaia hereby realleges and incorporates by reference paragraphs 13, 17-21, 24-26, 76, 86-134, and 137-183 of the Counterclaims as if fully set forth herein.

---

[9] As of the date of filing, the video is no longer available on Goode's website at that link.

197.     Goode made or published each of the Defamatory Statements regarding Gaia, which are false statements of fact.

198.     Goode intentionally published each of the Defamatory Statements to an unknown number of third parties and further encouraged them to disseminate the Defamatory Statements to an even broader audience.

199.     Goode knew that each of the Defamatory Statements was false or recklessly disregarded the falsity of each statement, and published each of them with malice and with the intent to cause harm to Gaia.

200.     Each of the Defamatory Statements are injurious and defamatory *per se*, in that they are specifically directed at Gaia and the defamatory meaning is apparent from the face of the publication without the aid of extrinsic proof.  In particular, each of the Defamatory Statements impute to Gaia the commission of one or more crimes or other improprieties, and directly injure Gaia's business and professional reputation.

201.     Further, Gaia has suffered injury, including from subscribers who cancelled their subscriptions, as a result of each of the Defamatory Statements.

202.     As a result of publishing each of the Defamatory Statements with reckless disregard for their truth, Goode is liable to Gaia for presumed and actual damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

203.     Gaia hereby realleges and incorporates by reference paragraphs 7, 15, 36-52, 64-68, and 73-75 of the Counterclaims as if fully set forth herein.

204.    The 2016 Contract (as amended by the 2017 Amendments) is a valid and binding contract between Gaia and GES for the benefit of Goode.

205.    Gaia has performed all, or substantially all, of its duties and responsibilities pursuant to the 2016 Contract.

206.    Plaintiffs breached the terms of the 2016 Contract (as amended by the 2017 Amendments) by failing to repay Gaia amounts due and owing, including repayment of the Advance Event Payment.

207.    As a result of Plaintiffs' breach of the 2016 Contract, Gaia has been damaged in an amount to be determined at trial but not less than $25,000.00, plus prejudgment interest and Gaia's reasonable costs of this action, including attorneys' fees.

**THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT**

208.    Gaia hereby realleges and incorporates by reference paragraphs 7, 15, 36-50, 53-72, and 75 of the Counterclaims as if fully set forth herein.

209.    The Relocation Benefit Agreement is a valid and binding contract between Gaia and Goode.

210.    Gaia has performed all of its duties and responsibilities pursuant to the Relocation Benefit Agreement.

211.    Goode has breached the Relocation Benefit Agreement by failing to reimburse Gaia for the Relocation Payment.

212.     As a result of Goode's breach of the Relocation Benefit Agreement, Gaia has been damaged in an amount to be determined at trial, plus prejudgment interest and Gaia's reasonable costs of this action, including attorneys' fees.

## FOURTH CAUSE OF ACTION
## <u>BREACH OF CONTRACT</u>

213.     Gaia hereby realleges and incorporates by reference paragraphs 22, 47, and 188-195 of the Counterclaims as if fully set forth herein.

214.     The 2015 Contract and the 2016 Contract are valid and binding contracts between Gaia and GES for the benefit of Goode.

215.     Pursuant to the 2015 Contract and the 2016 Contract, Gaia owns the rights to CD episodes, including transcripts and recordings of such episodes.

216.     Gaia has performed all of its duties and responsibilities pursuant to the 2015 Contract and 2016 Contract.

217.     Goode breached the 2015 Contract and 2016 Contract by posting transcripts and video recordings of CD episodes on his personal website.

218.     Upon information and belief, Goode acted willfully in violating Gaia's rights in the transcripts and video of CD episodes.

219.     As a result of Goode's breach of the 2015 Contract and 2016 Contract, Gaia has been damaged in an amount to be determined at trial, plus prejudgment interest.

## FIFTH CAUSE OF ACTION
## <u>TRADEMARK INFRINGEMENT</u>

220.     Gaia hereby realleges and incorporates by reference paragraphs 22 and 135-136 of the Counterclaims as if fully set forth herein.

221.    The Mark is a valid and subsisting trademark under the Lanham Act.

222.    Gaia owns the Mark and consumers associate the Mark with Gaia.

223.    Goode's use of the Mark in the Petition likely caused confusion, or mistake, or deceived as to the affiliation, connection, or association of the Petition with Gaia, or as to the origin, sponsorship, or approval of the Petition's goods, services, or commercial activities by Gaia, all to the damage and detriment of Gaia's reputation and goodwill.

224.    Goode's use of the Mark without Gaia's consent and without causing, inducing or materially contributing to such use, constitutes direct and contributory trademark infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

225.    Upon information and belief, Goode's acts in using the Mark were done intentionally and with knowledge of Gaia's rights.

226.    As a result of this trademark infringement, Gaia has sustained damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

<h3 style="text-align:center">SIXTH CAUSE OF ACTION</h3>

<h3 style="text-align:center"><u>FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION</u></h3>

227.    Gaia hereby realleges and incorporates by reference paragraphs 22 and 135-136 of the Counterclaims as if fully set forth herein.

228.    Gaia owns the Mark and consumers associate the Mark with Gaia.

229.    Goode's use of the Mark in the Petition without Gaia's consent and/or causing, inducing or materially contributing to such use, constitutes false designation of origin and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

230.    Upon information and belief, Goode's acts in using the Mark were done intentionally and with knowledge of Gaia's rights.

231.    As a result of Goode's false designation of origin and unfair competition, Gaia has sustained damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**COMMON LAW TRADEMARK INFRINGEMENT**

232.    Gaia hereby realleges and incorporates by reference paragraphs 22 and 135-136 of the Counterclaims as if fully set forth herein.

233.    The Mark is a valid and subsisting trademark under common law.

234.    Gaia owns the Mark and consumers associate the Mark with Gaia.

235.    Goode's use of the Mark without Gaia's consent and without causing, inducing or materially contributing to such use, constitutes trademark infringement under Colorado common law.

236.    Upon information and belief, Goode's acts in using the Mark were done intentionally and with knowledge of Gaia's rights.

237.    As a result of Goode's trademark infringement, Gaia has sustained damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**EIGHTH CAUSE OF ACTION**
**COMMON LAW UNFAIR COMPETITION**

238.    Gaia hereby realleges and incorporates by reference paragraphs 22 and 135-136 of the Counterclaims as if fully set forth herein.

239.    Gaia owns the Mark and consumers associate the Mark with Gaia.

240. Goode's use of the Mark in the Petition without Gaia's consent constitutes unfair competition under Colorado common law.

241. Upon information and belief, Goode's acts in using the Mark were done intentionally and with knowledge of Gaia's rights.

242. As a result of Goode's unfair competition, Gaia has sustained damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

## NINTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE

243. Gaia hereby realleges and incorporates by reference paragraphs 132-134 and 185-187 of the Counterclaims as if fully set forth herein.

244. Goode intentionally and improperly interfered with Gaia's contractual relationship with Jason Rice.

245. Goode caused Rice to end his relationship with Gaia.

246. Goode interfered in Rice's relationship with Gaia by using wrongful means, namely the threat of civil prosecution.

247. Upon information and belief, Goode intentionally and improperly interfered with Gaia's contractual relationship with certain of its subscribers.

248. Upon information and belief, Goode's actions caused certain of Gaia's then-subscribers to terminate their relationship with Gaia.

249. Upon information and belief, Goode interfered with the subscribers' relationship with Gaia by using wrongful means, namely by making defamatory statements about Gaia.

250.     Gaia has been damaged by each of Goode's actions, including as a result of subscribers terminating their relationship with Gaia, thus causing the loss of subscription fees.

## TENTH CAUSE OF ACTION
## <u>UNJUST ENRICHMENT</u>

251.     Gaia hereby realleges and incorporates by reference paragraphs 22, 47, and 188-195 of the Counterclaims as if fully set forth herein.

252.     Gaia owns the rights to transcripts of CD episodes.

253.     Gaia owns the rights to video recordings of CD episodes.

254.     Upon information and belief, Goode received a benefit by posting transcripts and video recordings of CD episodes on his personal website.

255.     It would be unjust to allow Goode to retain the benefit he received by posting transcripts and/or video recordings of CD episodes on his personal website.

**WHEREFORE**, Gaia respectfully requests that this Court enter an order in favor of Defendant/Counterclaimant Gaia, Inc., and against Plaintiffs/Counter-defendants James Corey Goode and Goode Enterprise Solutions, Inc., as follows:

A.     Requiring Goode and GES to remove the Defamatory Statements and any materials in which they appear, in their entirety, from https://spherebeingalliance.com and any other sites to which Plaintiffs have posted the Defamatory Statements or posted a link to any materials containing the Defamatory Statements, including but not limited to twitter.com, facebook.com, and youtube.com; and, to withdraw any submissions of the Defamatory Statements, or related information made to other websites and/or applications;

B.      Requiring Goode and GES to issue a public apology for defaming Gaia, to issue a retraction in full, and to publish such apology and retraction on his personal website, https://spherebeingalliance.com, and on all other websites and social media accounts on which the Defamatory Statements were published;

C.      Enjoining Goode and GES from publishing any further defamatory statements regarding Gaia, Gaia's employees, and any other related entities;

D.      Awarding damages to Gaia and against Goode based on his defamatory statements, in an amount to be determined at trial;

E.      Awarding damages to Gaia and against Goode and GES, jointly and severally, based on their breach of contract, in an amount to be determined at trial;

F.      Awarding damages that Gaia has sustained, and profits Goode has derived, as a result of his trademark infringement, false designation of origin, unfair competition, in an amount to be determined at trial;

G.      Awarding treble damages in accordance with section 35 of the Lanham Act, 15 U.S.C. § 1117, and awarding exemplary or punitive damages as is deemed appropriate because of the willful and intentional nature of Goode's conduct;

H.      Awarding interest and costs of this action together with statutory attorneys' fees pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117;

I.      Requiring that Goode make restitution to Gaia for any unjust enrichment caused by virtue of its unlawful conduct as complained of herein;

J.      Awarding damages to Gaia and against Goode for his tortious interference with Gaia's business relationships with its talent and subscribers;

K.      Awarding pre-judgment interest, and costs and disbursements of this

Action;

L.      Awarding attorneys' fees to Gaia pursuant to the Relocation Benefit

Agreement;

M.      Awarding attorneys' fees to Gaia for the entire cost of this Action; and

N.      Providing for such other and further relief as this Court deems to be just

and proper.

## **DEMAND FOR JURY TRIAL**

Gaia demands trial by jury on all claims and issues so triable.

Dated: April 15, 2024                     **DAVIS & GILBERT LLP**


By:   _/s/ *Daniel A. Dingerson*_____
        Daniel A. Dingerson
        Ina B. Scher
        ddingerson@dglaw.com

1675 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant Gaia, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I caused a copy of the foregoing Gaia, Inc.'s Amended Answer and Counterclaims to the Second Amended Complaint of Plaintiffs James Corey Goode and Goode Enterprise Solutions, Inc., to be served via ECF on all other parties who have appeared in this matter.

        /s/ Daniel A. Dingerson
        Daniel A. Dingerson