## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-742-KLM

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

Plaintiffs,

v.

GAIA, INC.,
JAY WEIDNER,
CLIF HIGH,
BENJAMIN ZAVODNICK,
ALYSSA MONTALBANO,
JIRKA RYSAVY,
BRAD WARKINS, and
KIERSTEN MEDVEDICH,

Defendants.

-----------------

ALYSSA CHRYSTIE MONTALBANO, individually,

Counter-Claimant,

v.

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

Counter-Defendants,

LIGHT WARRIOR LEGAL FUND, LLC;
DAVID WILCOCK,
THE WILCOCK SPIRITUAL HEALING AND EMPOWERMENT FOUNDATION
VALERIE YANAROS WILDE,
ELIZABETH LORIE,
BRIAN JAMES FLYNN,
WILLIAM CAMPBELL,
MATTHEW GROVE,

DIANA TERRY, and
CHRISTINA GOMEZ,

Third-Party Defendants.

---

### STIPULATED [PROPOSED] ORDER FOR THE EXCHANGE AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION

---

**WHEREAS**, Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the forms or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

**WHEREAS**, Plaintiffs James Corey Goode and Goode Enterprise Solutions, Inc. and Defendant Gaia, Inc. (each individually, a "Party" and collectively, the "Parties") in the above-captioned case (the "Action") mutually seek to manage the time, expense, and other burdens of discovery of certain electronically stored information ("ESI"), and to better define the scope of their obligations with respect to preserving and producing such information and materials;

**WHEREAS**, the Parties are aware of the importance of cooperation and commit to cooperate in good faith to promote the "just, speedy, and inexpensive determination" of this Action, as required by Fed. R. Civ. P. 1.  The Parties agree to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).  The Parties' cooperation includes identifying the appropriate scope of eDiscovery, including limitations on the number of custodians, identification of relevant and discoverable subject matter, establishment of appropriate time periods for

eDiscovery, and development of other parameters to limit and guide preservation and eDiscovery issues;

      **NOW THEREFORE**, it is hereby **ORDERED:**

**I.**     **GENERAL PROVISIONS**

      A.    **Applicability**.  This Stipulation and Order for the Exchange and Production of Electronically Stored Information ("Stipulation") shall govern the format of production of documents and information in the Action.

      B.    **Federal and Local Rules**.  Except as specifically set forth herein, this Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the District of Colorado.

      C.    **Cooperation**.  The Parties agree to conduct discovery in a cooperative manner.  To further the application of the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C), requests for production of ESI should be reasonably targeted, clear, and specific (as is practicable).  The Parties (through counsel) agree to meet and confer, as soon as is practicable, regarding custodians to be searched and processes to be employed to collect and produce ESI.

      D.    **Production**.  Absent unusual circumstances that would make it unduly burdensome (in which case the Parties shall confer to discuss alternative production specifications), and subject to modifications as agreed by the Parties, the Parties will prepare their production documents in accordance with the agreed-upon specifications set forth below.

      E.    **Preservation**. To the extent not already done, the Parties agree to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.  The Parties shall have a continuing obligation to take reasonable and proportional steps

to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation.  If a producing Party or third party is aware of inaccessible data that is likely to contain unique, discoverable ESI, that Party or third party will identify to the requesting Party the source from which it claims the data is not reasonably accessible.

       F.     **Objections Preserved**. Nothing in this Stipulation shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other recognized and applicable privilege or immunity.  Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

## II.     PRODUCTION OF HARD COPY DOCUMENTS

       All hard copy documents will be produced in electronic form.  Where necessary and practicable, hard copy documents in color will be scanned in color to ensure full information is communicated in the scanned copy.  Scanned color documents will be provided in JPG file format.

       A.     **Identification**.  Where a document or group of documents has an identification spine, "post-it note," or any other label or marking, the information thereon shall be scanned and produced along with the remainder of the document.

       B.     **TIFFs**.  Documents shall be produced in the form of single-page, black and white, Group IV TIFFs at 300 dpi, except that any documents containing color where the color would aid in interpreting the document shall be provided in color in .jpg format.  Each TIFF image shall be named as its corresponding Bates number.  Original document orientation shall be maintained

(i.e., portrait to portrait and landscape to landscape).  TIFF image files shall be provided in a self-identified "Images" folder.

      C.    **OCR Text Files**.  Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page.  Each file shall be named with the beginning Bates number that is assigned to its corresponding document, followed by .txt.  OCR text files shall be provided in a self-identified "Text" directory.  To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions.  OCR software shall be set to the highest quality setting during processing.

      D.    **Database Load Files/Cross-Reference Files**.  Unless otherwise agreed to by the Parties, produced hard copy documents shall be provided with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters.  Concordance-compatible image and data load files (i.e., .OPT and .DAT files) shall be provided in a self-identified "Data" folder.  The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application.

      E.    **Custodian Identification**. The Parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.  Multiple custodians in the "All Custodians" field shall be separated by a semicolon.

      F.    **Coding Fields**.  Absent undue burden (in which case the Parties shall confer to discuss alternative production specifications), and to the extent such information is available, documents shall be produced with at least the following searchable information in accompanying

delimited data files:  (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian, (6) All Custodians, (7) OCRTextPath, and (8) Confidentiality.  Custodians should be identified using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name last name"; or "FLast."  A producing Party or third party shall use a uniform description of a particular custodian across productions in the Action.  Multiple custodians in the "All Custodians" field shall be separated by a semicolon.

G.    **Parent-Child Relationships**. Parent-child relationships (i.e., the association between an attachment and its parent document) shall be preserved to the extent they exist in the manner in which the documents are maintained in the ordinary course of business.  When applicable, parent emails and any of their attachments shall be produced as separate, contiguous documents.

H.    **Unitizing of Documents**.  Absent undue burden, a producing Party or third party shall, whenscanning paper documents, avoid merging distinct documents into a single record, and avoid splitting single documents into multiple records (i.e., paper documents shall be logically unitized).  To the extent practicable, hard copy documents shall be unitized using logical document determinations or "LDD."

## III.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")

A.    **Identification of Responsive Documents.**  The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner.   Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review, such as the use of

search terms, technology-assisted-review, predictive coding, etc.  The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and will meet and confer regarding any such requests.

1. **Sources.**  The Parties will meet and confer regarding custodial and non-custodial data sources likely to contain responsive information.  The Parties will identify and describe sources likely to contain responsive information that a Party asserts should not be searched (including, but not limited to, because it is not reasonably accessible) and will explain the reasons for such assertions and will then work in good faith to determine whether such sources need to be searched.  The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and will meet and confer regarding any such requests.

2. **Identification of Custodians.**   The Parties will meet and confer to identify custodians likely to possess responsive information.

3. **Easily Targeted Responsive Documents.**  Documents and categories of documents that are relevant to this Action and responsive to a Party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a Party's document management, shall be collected without the use of search terms or other agreed-upon advanced search

methodology (e.g., analytics, predictive coding, technology-assisted-review).

4.    **Search Terms.**  Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms ("search term(s)" shall mean each combined string of characters and/or operators as used on particular custodian(s) for a specific date range; for clarity, each word within a string shall not constitute a separate "search term"), the Parties shall use the process identified herein and shall meet and confer regarding any proposed deviation.    To the extent the producing Party or third party believes that the use of search terms would reduce their burden in identifying and/or producing ESI, a producing Party or third party shall provide a list of proposed search terms, which shall contain search terms that it proposes to use to identify relevant documents.  Within fourteen (14) calendar days of receipt of the proposed search terms, the requesting/receiving Party shall provide any proposed additional or modified search terms that it believes are necessary to identify responsive documents.  Within fourteen (14) calendar days of receiving additional proposed or modified search terms, the producing Party or third party will provide a search term hit list or hit report reflecting results after global de-duplication (including the number of documents that hit on each search term, the number of documents that hit on a particular search term but no other search term on the list, and the total number of documents that would

be returned by using the proposed search term list, with and without families) or advise the requesting Party why additional time is needed. The Parties shall meet and confer regarding the search term hit list or hit report within fourteen (14) calendar days of receipt of such list or report. The time frames listed in this paragraph are subject to modification by the Parties. The Parties will thereafter use best efforts to agree to a set of search terms. If disputed terms still exist at the end of the meet-and-confer process, the Parties may raise the dispute with the Court in accordance with applicable rules. The Parties retain the right to request, upon receipt of documents or other discovery, use of additional search terms. Such request shall be made sufficiently in advance of the end of fact discovery, and the Parties agree to meet and confer regarding any such request.

5. **Technology-Assisted-Review.** The Parties shall be permitted to use predictive coding/technology-assisted-review ("TAR") for the purpose of culling the documents to be reviewed or produced. The Parties shall confer on a TAR protocol should any Party decide to employ TAR (the "TAR Protocol"). Should a Party need to deviate from the TAR Protocol, such Party shall notify the requesting Party before doing so and with ample time to meet and confer in good faith regarding any such deviation. Any such meet and confer shall include the Party's and/or their counsel's e-discovery personnel. An agreed-upon set of search terms does not preclude a Party from using TAR.

6.      **Email Threading and Inclusive Review/Production.**  The Parties shall be permitted to use threading as part of their review and identification of responsive ESI.   A Party's or third party's production shall not be considered insufficient if it excludes documents that would otherwise be responsive, so long as such documents, including attachments, are fully included in produced documents.   Production of "inclusive" documents from a thread shall include all divergent instances of the thread (if each is responsive in any part not otherwise included in a produced document) and all instances in the thread that include attachments not otherwise provided in the same thread.

B.      **TIFFs**.  Documents shall be produced in the form of single-page, black and white, Group IV TIFFs at 300 dpi (.jpgs for documents with color).  Each TIFF image shall be named as its corresponding Bates number.  Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).   TIFFs shall show any and all text and images that would be visible to the reader using the native software that created the document.  For example, TIFFs of email messages shall include the BCC line.  If the image does not accurately reflect the document as it was kept in the ordinary course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options.  TIFF image files shall be provided in a self-identified "Images" folder.

C.      **System Files**.  Common system and program files as defined by the National Software Reference Library of the National Institute of Standards & Technology (which is

commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

       D.    **De-Duplication**.   A producing Party or third party is only required to produce a single copy of a responsive document, and is required to de-duplicate responsive ESI by the use of MD5 or SHA-1 hash values at the parent level.  "Near duplicate" documents shall be produced rather than removed.  The producing Party or third party need only produce a single copy of a particular ESI.  However, (1) attachments to emails shall not be eliminated from their parent emails, and (2) hard-copy documents shall not be eliminated as duplicates of responsive ESI.  In addition, each producing Party or third party shall make reasonable efforts to remove duplicate data across custodians for each produced document and to produce searchable metadata in the "All Custodians" and "Duplicate File Path" fields for each produced document sufficient for the receiving Party to identify all custodians and file paths of a particular document that were eliminated from review or production through de-duplication.  The Parties further agree to meet and confer regarding the use of deduplication methods other than by hash value, should such use be deemed necessary by a Party or third party.

       E.    **Bates Numbering**.   Each TIFF image shall be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (i.e., padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing Party or third party will so note in a cover letter or production log accompanying the production.  Bates numbers will be eight digits long, excluding the prefix.  Bates numbers will be located on the bottom right of each page.

Confidentiality designations, if any, will be located on the bottom left of each page.  Neither the Bates number nor Confidentiality designation, to the extent practicable, shall obliterate, conceal, or interfere with any information from the source document.

       F.     **Parent-Child Relationships and Non-Responsive Information**.  Parent-child relationships (i.e., the association between an attachment and its parent document) shall be preserved unless impossible to do so.  When applicable, parent emails and any of their attachments shall be produced as separate, consecutive documents.  The Parties agree that if any part of an email or its attachments is responsive, the entire family of documents will be produced, except as to any emails or attachments that may be withheld, in whole or in part, on the basis of privilege.

       G.     **Embedded Objects**.  Embedded files shall be produced as attachments to the document that contained the embedded file with the parent/child relationship preserved.  The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

       H.     **Compressed Files Types.**  Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

       I.     **Metadata Fields and Processing**.  To the extent available, the metadata and coding fields set forth in Appendix I that can be extracted from an electronic document shall be produced for that document.  For ESI other than email and e-docs that do not conform to the metadata listed in Appendix I, such as text messages, LinkedIn Messages, iMessage, Google Chat, Yammer, Slack, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced after identification of such document type and/or platform.

J.      **Time Zone**.     All ESI produced shall be normalized to Coordinated Universal Time (UTC).

K.      **Extracted Text Files**.  For each document (other than multimedia or graphic files), a document-level extracted text file shall be provided along with its corresponding TIFF image file(s) and metadata.   The file name of each extracted text file shall be identical to that of the first image page of its corresponding document, followed by .txt.  File names shall not contain any special characters or embedded spaces.  The text of native files shall be extracted directly from the native file.  However, if a document has been redacted, or if a document does not have extracted text, OCR of the document will suffice in lieu of extracted text.

L.      **Database Load Files/Cross-Reference Files**.  Unless otherwise agreed to by the Parties, each production shall include (i) a metadata file (.DAT file) using standard Concordance delimiters or carat pipe delimiters and (ii) an image load file in Opticon format (.OPT file). Concordance-compatible image and data load files (i.e., .OPT and .DAT files) shall be provided in a self-identified "Data" folder.

M.      **Native Files**.  Source code, large diagrams, documents with tracked changes, Microsoft PowerPoint, Microsoft Excel or other spreadsheet type files, and/or .csv files, documents with tracked changes, media files, and any other files that cannot be practically converted to image files shall be produced in native format ("Native Files"), unless they require redactions or unless production in native format would otherwise be impracticable.   Native Files shall be provided in a self-identified "Natives" directory.   Each Native File shall be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File.  Native Files shall be named with the

beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each Native File shall be included in the .DAT load file indicating the relative file path to each Native File on the production media. Native Files shall be produced with extracted text and applicable metadata fields as set forth in Paragraph III.I. Redacted documents may be produced in Native, or with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file, except for redacted Excel or other spreadsheet type files, which shall be redacted using a native redaction tool and produced as Native Files. Metadata fields for redacted documents (whether Native or otherwise) that would reveal privileged information may be redacted. Each producing Party or third party will (i) ensure that, prior to conversion to TIFF, hidden data from redacted Native Files is revealed and shown on the TIFF image files and (ii) ensure that redacted Native Files will be formatted so as to be readable (for example, column widths should be formatted so that numbers do not appear as "########").

N.    **Structured Data**.    To the extent responding to a discovery request requires production of ESI contained in a database, the producing Party or third party will generate and produce a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format), and the Parties will meet and confer about which data or fields are responsive to such discovery request. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included. The Parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database.

O.    **Audio and Video Files**.    Audio and video files shall be produced in native format with a corresponding single-page TIFF placeholder image containing language indicating that the

file is being produced as a Native File and a Bates number.  If it is not reasonably feasible to produce audio and video files in native format, a reasonably usable alternative format may be agreed upon by the Parties.

P.      **Requests for Other Native Files**.  Other than as specifically set forth above, a producing Party or third party need not produce documents in native format.  If good cause exists for the receiving Party to request production of certain documents in native format, the receiving Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the good-faith need for reviewing such documents in native format.  The producing Party or third party shall not unreasonably deny such requests, but may request a conferral with the requesting Party before agreeing to make any such production of Native Files.  Each document produced in response to such requests shall be produced with corresponding production number fields and a "NativeFileLink" entry in the DAT load file indicating the relative file path to each Native File on the production media and all extracted text (other than for multimedia or graphic files) and applicable metadata fields set forth in Appendix I.

Q.      **Passwords.**  For any ESI that exists in encrypted format or is password-protected, the producing Party or third party will provide the requesting Party a means to gain access to those native files (for example, by supplying passwords) to the extent that the producing Party or third party is in possession of, or has access to the password(s).

R.      **Confidentiality Designations**.      Confidentiality designations shall be made pursuant to the Stipulation and Order for the Production and Exchange of Confidential Information as agreed by the Parties.  If a producing Party or third party produces Native Files or other ESI

with a confidentiality designation in hardcopy form, it shall mark the hardcopy with the appropriate confidentiality designation. The failure of a producing Party or third party to mark such hardcopy document with the appropriate designation shall not affect such document's designation or the producing Party's or third party's rights and obligations thereto.

        S.    **Color**. Documents containing color need not be produced in color in the first instance, except that any documents containing color where the color is reasonably necessary to interpret the document shall be provided in color. However, if good cause exists for the receiving Party to request production of certain documents in color, the receiving Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the good-faith need for production in color format. The producing Party or third party shall not unreasonably deny such requests, but may request a conferral with the requesting Party before agreeing to make any such production of documents in color.

## IV.    PROCESSING OF THIRD-PARTY DOCUMENTS

        A.    A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein. For any subpoena issued prior to execution and entry of this Stipulation, the Issuing Party shall send a copy of this Stipulation within five (5) days after this Stipulation is entered by the Court.

        B.    The Issuing Party is responsible for producing to the other Parties any documents obtained pursuant to a subpoena within twenty-one (21) calendar days of receipt. If a non-party refuses to produce documents in accordance with the specifications set forth herein, the Issuing

Party has no obligation to conform the non-party's production to such specifications.  If a non-party does not include Bates numbering on its documents, the Issuing Party will add Bates numbering to the documents before producing them to the other Party using a Bates Number that indicates that the document subset was produced by a third party.

C.      Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

## V.      MISCELLANEOUS PROVISIONS

A.      This Stipulation is intended solely to address the format of document productions. Nothing in this Stipulation is intended to affect the rights of any Party to object to any requests or demand for production.     Nothing in this Stipulation shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Practice, or any other applicable law, rule, or order.

B.      The Parties agree that they may employ a categorical approach to privilege designations and privilege logs.

C.      The Parties to the Action shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation.   If a producing Party or third party, notwithstanding their good faith efforts, cannot comply with a material aspect of this Stipulation or if compliance with such material aspect would be unreasonable, such producing Party or third party shall inform the receiving Party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable.  No Party or third party may seek

relief from the Court concerning compliance with the Stipulation unless it has first conferred with the requesting Party and other Parties.

D.      Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

E.      Any application to the Court under or regarding this Stipulation shall be made pursuant to the Local Rules of the United States District Court for the District of Colorado, as well as Judge Daniel D. Domenico Individual Rules (or the individual rules or practices of any other judge or magistrate judge assigned to the Action and who would hear and/or rule on such application).

Dated: July 19, 2024

**YANAROS LAW, P.C.**

*/s/ Valerie Yanaros_____*

Valerie Yanaros, Esq.
8300 Douglas Avenue Suite 800
Dallas, Texas 75225
Telephone: (512) 826-7553
Email: valerie@yanaroslaw.com

*Attorneys for Plaintiffs James Corey Goode and Goode Enterprise Solutions Inc.*

**DAVIS+GILBERT LLP**

/s/ *Daniel A.  Dingerson*____

Daniel A. Dingerson
Angela M. Dunay
1675 Broadway
New York NY 10019
Phone: (212) 468-4800
Fax: (212) 468-4888
ddingerson@dglaw.com
adunay@dglaw.com

*Attorneys for Defendant Gaia, Inc.*

**SO ORDERED**:

_____
Hon. Daniel D. Domenico
United States District Judge

**Appendix I:  ESI Metadata Fields**

| Metadata Table | | |
|---|---|---|
| **Field Name** | **Sample Data** | **Description** |
| PRODBEG | P000000222 | First Bates number of native file document/email |
| PRODEND | P000000222 | Last Bates Number of native file document/email (single-page documents will list beginning and ending Bates number) |
| BEGATTACH | P000000222 | Beginning Bates number of parent document. |
| ENDATTACH | P000000229 | Ending Bates number of last attachment/child document |
| CUSTODIAN | Adams, John; johnadams@1776.gov | Email:  mailbox in which the file was located Native:  Individual who originated the document |
| ATTACHMENT COUNT | 2 | Total number of attachments to each email |
| PGCOUNT | 1 | Total pages of each original document/email |
| ALL CUSTODIANS | Franklin, Ben; Hancock, John, Whipple, William | When global deduplication has been employed, the custodians who had duplicates of the identical document |
| AUTHOR | Jefferson, Thomas | Author of native document (MS Word, etc.) |
| FROM | Adams, John | Email author/sender |
| TO | Hancock, John [mailto: HANCOCK@JOHNHANCOCK.com] | Recipient(s) of email separated by semicolon |
| CC | Franklin, Ben [mailto:  bennyf@1776.com] | Carbon copy recipient(s) of email |
| BCC | NA | Blind carbon copy recipient(s) of email |
| SUBJECT | Declaration w/ edits | Email:  subject line Native: document title |
| MD5/SHA1 | E4d909c290d0fb1ca068ffaddf22cbd0 | Hash code created for file in connection with deduplication |

| MEETING START DATE/TIME | 7/3/1776 3:00 PM | For calendar invites, the starting date and time. |
|---|---|---|
| MEETING END DATE/TIME | 7/4/1776 4:00PM | For calendar invites, the ending date and time. |
| DATE_SENT | 7/3/1776 | Email: date the email was sent |
| TIME_SENT | 12:59 AM | Email: time at which email was sent on date in date field |
| DATE_RECEIVED | 01/01/2020 | Email: date the email was received |
| TIME RECEIVED | 6:02 PM | Email: time at which email was received on date in date field |
| FILE_EXTEN | i.e., MSG, DOCX, PDF, etc. | File extension of email or native document |
| FILE TYPE | Email or attachment | Whether it is a parent email or attachment. |
| DATE_CREATED | 6/1/2009 | Date native document was created |
| TIME_CREATED | 7:32 AM | Time native document was created |
| DATE_MOD | 10/12/2010 | Date native document was last modified |
| TIME_MOD | 5:30 PM | Last modification time |
| TEXT LINK | D:\1969\ P000000222.txt | UNC path to text files of extracted/OCR text (unless redacted) |
| NATIVE PATH | \\Prod001\Natives\ABC0000001.xls | Path to native file |
| FILE NAME | 1d0cbe9510845fbfbe23519a8902d.mail | Filename of the original source ESI as stored by the custodian. |
| TIMEZONE | EST | Time zone of documents |
| CONFIDENTIALITY | Highly Confidential | Confidentiality designation assigned to the document. |
| REDACTED | Yes | Identifies documents that were produced with redactions. |