**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-00742-DDD-KAS

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS INC.,

Plaintiffs,

v.

GAIA, INC.,

Defendant.

---

**DEFENDANT GAIA, INC.'S MOTION TO COMPEL
THIRD-PARTY DAVID WILCOCK'S COMPLIANCE WITH SUBPOENA**

---

## <u>TABLE OF CONTENTS</u>

Page

**Introduction**..................................................................................................................... 1

**Factual Background**............................................................................................................ 2

**Argument** ........................................................................................................................... 7

   **I.**  **Legal Standards**....................................................................................................... 7

  **II.**  **Gaia's Subpoena to Wilcock was Properly Served and Any Objections Have Been
      Waived.** ................................................................................................................... 9

 **III.** **All Factors Weigh in Favor of Compelling Production.** ................................................. 9

     A.  The Documents Requests are Not Burdensome............................................ 10

     B.  The Requested Documents are Relevant....................................................... 11

     C.  Gaia has a Strong Need for the Requested Documents.................................. 12

     D.  The Breadth and Temporal Scope of the Document Requests are Proportional to the
        Needs of the Case...................................................................................... 12

    **CONCLUSION**....................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amica Mut. Ins. Co. v. Whois Privacy Prot. Serv.*, No. 12-cv-00262-REB-KLM,
    2012 WL 1657728 (D. Colo. May 11, 2012)........................................................... 8, 9
*Coomer v. Lindell,* No. 22-cv-01129-NYW-SKC,
    2023 WL 6376723 (D. Colo. Sep. 29, 2023) ................................................... 8-9, 10
*Electro-Mechanical Prods., Inc. v. Alan Lupton Assocs. Inc.*, No. 1:22-cv-00763-PAB-SBP,
    2023 U.S. Dist. LEXIS 180502 (D. Colo. Sept. 21, 2023) ........................................ 8
*S.E.C. v. Fuhlendorf*, No. 10-cv-01691-MSK-KLM,
    2010 WL 3547951 (D. Colo. Sept. 7, 2010) ....................................................... 8, 10

**Other Authorities**

Fed. R. Civ. P. 45 (d)(1), Advisory Committee Notes (1970)...................................... 8

**Rules**

Fed. R. Civ. P. 26........................................................................................... 1, 7-8, 9
Fed. R. Civ. P. 45.................................................................................................. passim

Defendant Gaia, Inc. ("Gaia"), by and through its attorneys, Davis+Gilbert LLP, hereby moves this Court for an Order, pursuant to Federal Rules of Civil Procedure 26 and 45, compelling the production of documents by David Wilcock, a third-party, in compliance with a document subpoena served upon him.  In support of this motion, Gaia states as follows:

<u>**INTRODUCTION**</u>

This motion arises out of Wilcock's refusal to satisfy his obligation to produce documents pursuant to a valid, narrowly tailored third-party subpoena, issued pursuant to Federal Rule of Civil Procedure 45.  The underlying action arises from a plot, spearheaded by Plaintiffs Corey Goode and Goode Enterprise Solutions Inc., to defame Gaia and interfere with Gaia's business. As alleged in Gaia's Amended Counterclaims (Dkt. 401) ("Counterclaims"), and confirmed through discovery, Plaintiffs involved Wilcock, at least in part, in pursuing their scheme against Gaia.

To obtain documents relevant and necessary to Gaia's Counterclaims, on December 13, 2024, Gaia effected service of a subpoena on Wilcock (the "Subpoena") (*see* Declaration of Angela Dunay ("Dunay Decl."), Exhibit ("Ex.") A).  The Subpoena had a return date of January 6, 2025 (subsequently extended, by agreement of counsel, to January 10, 2025).  However, Wilcock failed to serve any written objections to the Subpoena pursuant to Fed. R. Civ. P. 45(d)(2)(B).  While Wilcock produced two tranches of documents, on January 31 and March 4, he did so using restrictive search parameters that failed to capture all responsive and relevant documents.[1]

---

[1] Wilcock's productions can be most accurately described as a "document dump" rather than a good-faith effort to identify relevant and responsive documents.

In light of Wilcock's deficient productions and his counsel's recent representation that Wilcock will not produce additional documents and instead intends to pursue motion practice with regards to the Subpoena,[2] Gaia has no choice but to seek relief from this Court through an order compelling Wilcock's full compliance with the reasonable document search and production required by the Subpoena. All factors for determining whether to grant a motion to compel third-party production of documents pursuant to subpoena weigh in favor of compelling production, and, in any event, Wilcock has waived any objections by his failure to serve any in writing. Accordingly, Gaia respectfully requests that the Court grant this Motion and enter an order compelling Wilcock to produce all documents requested by the Subpoena.

## <u>FACTUAL BACKGROUND</u>[3]

Gaia effected service of the Subpoena on Wilcock on December 13, 2024, at his home in Nederland, Colorado. *See* Dunay Decl., Ex. B (Return of Service). Pursuant to the Subpoena, Gaia sought documents and communications concerning:

- Cosmic Disclosure ("CD") (Requests Nos. 1, 3-4, 19)

- Gaia (Requests Nos. 2, 5-9, 18, 19)

- The Wilcock Email (Requests Nos. 10-12)

- The Petition (Request No. 13)

- The Video (Request No. 14)

---

[2] Note that any motion to quash by Wilcock at this point would be untimely pursuant to Fed. R. Civ. P. 45(d)(3)(A).

[3] All capitalized terms used but not defined herein shall be defined or interpreted as they are used in the Counterclaims or the Subpoena, as applicable. Gaia assumes the Court's familiarity with the factual allegations underlying the Counterclaims.

- GEM (Request No. 15)

- The FTL Blog (Request No. 16), and

- The Defamatory Statements (Request No. 17)

(*See* Dunay Decl., Ex. A.)  Each of the Requests relate to specific allegations in the Counterclaims and were designed to elicit evidence as to the extent and scope of Plaintiffs' actions.  The Subpoena originally had a return date of January 6, 2025.

On December 23, 2024, Wilcock's counsel contacted the undersigned counsel requesting that "the subpoena be addressed in late January 2025."  Because fact discovery was, at that time, set to close on February 10, 2025, Gaia was unable to agree but offered an extension to January 10, 2025 (amounting to 28 days to respond in writing to the Subpoena).  Wilcock's counsel responded that Gaia's proposed date "would not work" and requested a conferral to discuss.[4] Wilcock's counsel and the undersigned subsequently conferred on January 3, 2025, via a remote conference during which Wilcock's counsel took the position that Wilcock would not respond to the Subpoena, and he would send a follow-up email detailing his position.  Instead, on January 9, Wilcock's counsel emailed to request another conferral; Wilcock's counsel and the undersigned counsel then met on January 10, again via a remote conference.  During this second conferral, Gaia's counsel stated that if Wilcock's position was that he would produce no documents, Gaia would be forced to make a motion to compel.  Gaia's counsel suggested that, instead, Wilcock run preliminary searches for terms identified in the Subpoena and report back on the number of hits for each search query.  Wilcock's counsel agreed to provide proposed search parameters.  Wilcock

---

[4] In initial correspondence, Wilcock's counsel refused to confer solely with Angela Dunay, an associate who is leading Gaia's discovery efforts in this matter, and insisted on a meeting with Daniel Dingerson because of communications between them on a prior matter.

did not request a further extension of time to serve objections to the Subpoena and never served any written objections (or any formal written response).

On January 15, Wilcock's counsel communicated that he had spoken with Wilcock and his IT tech regarding the Subpoena and "discussed and provided relevant search terms . . . such as, but not limited to, Cosmic Disclosure, Goode, Gaia, etc., for the IT tech to ascertain and develop search queries." However, despite what the parties had previously discussed, Wilcock's counsel did not provide a report of the actual search terms used or the number of results from applying such terms. Understanding that Wilcock's counsel and his family were affected by the Los Angeles wildfires, but after receiving no further response, Gaia followed-up on January 30 regarding the status of the search queries. Later that day, Wilcock's counsel responded by merely stating that he would produce documents the next day, January 31.

After beginning review of Wilcock's initial production, Gaia emailed Wilcock's counsel, on February 10, to understand: (i) the search parameters used to identify and collect documents; and, (ii) the platforms and accounts searched.[5]  On February 14, Wilcock's counsel responded and explained that Wilcock limited his search to "the time frame that Wilcock and Corey Goode had a

---

[5] At the same time, Gaia flagged that Wilcock had produced a non-responsive and lewd photograph and requested an explanation regarding how that photograph came to be included in the production. In response, Wilcock's counsel stated "[a]s you requested a production of information between Mr. Wilcock and Corey Goode, the included 'single' photograph was part of the exchange. As such, it was included and not removed . . . as the photograph was within the search and date range." This response, and the photograph's inclusion at all, demonstrates a clear misunderstanding of the information sought in the Subpoena and is further proof that Wilcock did not conduct his search and review of documents in good faith. Moreover, the explanation is inconsistent with later communications in which Wilcock's counsel made clear that Wilcock's production was limited in material respects based on an assessment of what documents were relevant to the action and permitted to be obtained via the Subpoena.

relationship with [Gaia], the search pertained to exchanges and communications between Wilcock and Corey Goode about the show, as well as others who emailed Wilcock in relation to their show with Gaia." Wilcock's counsel further stated that "[t]he only source that Wilcock could locate responsive information was email, Gmail[.]"

The search limitations applied by Wilcock, without conferral with or agreement by Gaia, are inappropriate in light of the full scope of the requests in the Subpoena. Goode and Wilcock's respective relationships with Gaia ended in the summer of 2018, while Plaintiffs' plot to defame Gaia only started shortly before then and continued long after Plaintiffs' relationship with Gaia ended. Furthermore, the requests in the Subpoena seek documents beyond communications just "about the show" (*i.e.,* CD). By limiting production of documents to those concerning CD, Wilcock may be intentionally or innocuously withholding documents concerning Plaintiffs' plot against Gaia.

Indeed, Wilcock's initial production did not appear to contain documents concerning all of the requests and topics from the Subpoena. Thus, on February 19, Gaia sent another email to Wilcock's counsel seeking additional detail regarding the exact search terms that were applied to Wilcock's Gmail account, the specific date range used, and whether any other limitations were applied. Gaia also asked for confirmation that Wilcock did not limit his search to his Gmail account, as Gaia had reason to believe other communication methods were used, such as text, WhatsApp, and Twitter/X messages. Receiving no response, Gaia again was forced to follow-up on February 27. Wilcock's counsel then responded to say that a substantive response was

forthcoming, but the next day notified that he was dealing with a family emergency.[6]  Wilcock's counsel ultimately did not provide a substantive response until March 4, 2025, when he explained that: (i) the search terms "'Corey Goode' combined with 'Gaia'" were used across Mr. Wilcock's Gmail account;[7] (ii) the date range 10/30/2014 to 8/28/2020 was used; and (iii) Wilcock's production was intentionally limited to "communications regarding Gaia that either mentioned Corey Goode or included him in the 'To' or 'Cc' field."  Wilcock's counsel also explained that, with regards to WhatsApp and text messages, Wilcock's iPhone was stolen on October 29, 2023, implying that he did not have access to those messages but failing to explain what attempts, if any, Wilcock made to recover those sources of information.

Wilcock's description of his search efforts further confirmed that they were insufficient to capture all documents responsive to the Subpoena, particularly because the Subpoena was not limited to communications that expressly mentioned Goode and numerous relevant topics were excluded from Wilcock's search.  Accordingly, on April 15, the undersigned again followed up with Wilcock's counsel.  Gaia noted that the terms "Corey Goode" and "Gaia" were insufficient to capture documents responsive to the Subpoena and proposed that Wilcock apply seven narrowly tailored search terms to identify additional responsive documents:

    1.      ("Cosmic Disclosure" OR "CD") AND ("Goode")

---

[6] Throughout the conferral process with Wilcock's counsel, there have been a number of reasons that Wilcock's counsel has proffered as causes for delay in providing substantive responses, including religious holidays, family emergencies, the constraints of being a sole practitioner, and the wildfires in Los Angeles.  In respect of the nature of certain of the reasons causing delay, the undersigned counsel has exercised significant restraint in pressing Wilcock's counsel for responses and in making this Motion.

[7] While Wilcock has represented that he produced all emails hitting on these terms, Gaia has identified at least two emails in Plaintiffs' production on which Wilcock was copied but that *were not* included in Wilcock's production.

2.      "Blue Eagle"
3.      Resign* w/5 (email OR Kiersten OR Medvedich OR Brad OR Warkins)
4.      "Letter of Resignation"
5.      "GEM" or "Gaia Employee Movement"
6.      "FTL" OR "Fade to Light"
7.      Change.org

Gaia further clarified that Wilcock's search should not be limited to communications only with

Goode (or expressly referencing Goode), as Gaia's documents requests seek, for the most part,

communications between Wilcock and "any Person." Gaia also offered to first review a hit report

regarding the proposed searches prior to Wilcock engaging in collection, review, and production.

After receiving no response, again, Gaia followed up on April 29, at which point Wilcock's counsel

stated that he had been consumed in family health matters. Wilcock subsequently responded on

May 6 and refused to run any additional search terms, characterizing the Subpoena as a "deep sea

fishing expedition", and objected to any further collection, review, and production of documents

based on his position as a third-party.

On May 7, Gaia noted that Wilcock did not serve objections, thus any objections Wilcock

may have had to the Subpoena were waived. Gaia further noted that Wilcock's status as a third-

party does not insulate him from being required to produce documents related to the claims and

defenses of the parties in the litigation. On May 12, Wilcock's counsel responded and foreclosed

any further conferrals, stating that his client intended to engage local Colorado counsel and pursue

motion practice in regard to the Subpoena.

<u>**ARGUMENT**</u>

**I.      Legal Standards**

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

Fed. R. Civ. P. 26(b)(1). Courts construe Rule 26 liberally. *S.E.C. v. Fuhlendorf*, No. 10-cv-01691-MSK-KLM, 2010 WL 3547951, at *3 (D. Colo. Sept. 7, 2010) ("[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party.").

Rule 45 of the Federal Rules of Civil Procedure governs document productions from third-parties by subpoena, but the scope of discovery thereunder is the same as under Rule 26. *See* Fed. R. Civ. P. 45 (d)(1), Advisory Committee Notes (1970) ("[t]he changes make it clear that the scope of discovery through a subpoena is the same as that applicable to [] other discovery rules.") While a subpoena recipient may object to the production of any part of the materials sought, such objection must be made both in writing and by the earlier of the compliance date or fourteen (14) days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B). Failure to serve timely, written objections results in waiver. *See Amica Mut. Ins. Co. v. Whois Privacy Prot. Serv.*, No. 12-cv-00262-REB-KLM, 2012 WL 1657728, at *3 (D. Colo. May 11, 2012) (holding that the third-party waived its objections where "[t]here is no dispute that [the third-party] did not object to the subpoena within the time period mandated by Rule 45.").

The party serving the subpoena may, at any time, move for compliance with the subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Electro-Mechanical Prods., Inc. v. Alan Lupton Assocs. Inc.*, No. 1:22-cv-00763-PAB-SBP, 2023 WL 6461235, at *8 (D. Colo. Sept. 21, 2023) ("Rule 45 does not set a time limit for moving to compel a subpoena; rather, it provides for such a motion '[a]t any time, on notice to the commanded person.'"). "[I]n determining whether to grant a motion to compel non-party production under Rule 45, courts consider the burden on the nonparty, relevance, the requesting party's need for the documents, the breadth of the document request, and

8

the time period covered by the request." *Coomer v. Lindell*, No. 22-cv-01129-NYW-SKC, 2023

WL 6376723, at *6 (D. Colo. Sep. 29, 2023) (quotation marks and citation omitted).

## II.     Gaia's Subpoena to Wilcock was Properly Served and Any Objections Have Been Waived.

The Subpoena was properly served on Wilcock on December 13, 2024, and complies with

Rule 45's requirements in all respects. *See* Fed. R. Civ. P. 45. At no time has Wilcock's counsel

raised any challenges to the technical sufficiency of the Subpoena or the service of such Subpoena

on Wilcock.

Despite proper service of the Subpoena, Wilcock failed to timely serve written objections.

*See* Fed. R. Civ. P. 45(d)(2). At the request of Wilcock's counsel and in respect of the holidays

and other obligations, Gaia offered an extension to respond in writing to the subpoena to January

10, 2025, yet Wilcock never served written objections to the Subpoena as required by Rule

45(d)(2)(B). Because Wilcock never served written objections to the Subpoena, he has waived

any objections thereto. *See Amica*, 2012 WL 1657728, at *3.

## III.     All Factors Weigh in Favor of Compelling Production.

Even if Wilcock had not waived entirely any objections to the Subpoena and had interposed

objections regarding the scope of the requests, those objections would not have any merit.[8] The

scope of permissible discovery is quite broad, and includes "discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). In considering

a motion to compel third-party production under Rule 45, the Court considers: "the burden on the

---

[8] Guessing at what Wilcock's objections might be only highlights the need for properly served written objections and establishes that such a requirement is not a mere technical requirement of the Federal Rules.

nonparty, relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request" *Coomer*, 2023 WL 6376723, at *6. Here, all five factors weigh in favor of compelling production (and, in any event, Wilcock has waived any arguments to the contrary).

>    A.   The Documents Requests are Not Burdensome.

First, Wilcock has done nothing to establish any demonstrable burden in fully responding to the Subpoena. "[I]t is [not] sufficient to argue that a third party unrelated to the litigation should not be subjected to the burden of complying with the subpoena. Fed. R. Civ. P. 45 contemplates that third parties may be subject to some inconvenience in responding to subpoenas. Only demonstrable undue inconveniences warrant protection." *Fuhlendorf*, 2010 WL 3547951, at *3.

Here, the Subpoena requests 19 narrowly tailored categories of documents.[9] Wilcock is an individual, and thus necessarily needs to search only his own documents, rather than multiple custodians (though because he used numerous applications and programs to communicate, he must search multiple sources). Moreover, in light of various obligations of Wilcock and his counsel, Gaia agreed to generous extensions of time to produce documents.

Furthermore, over the last five months Gaia has attempted to work cooperatively with Wilcock to help him develop reasonable yet narrow search parameters, but he has resisted those efforts. Notably, after learning that Wilcock's search parameters for potentially responsive documents were insufficient, Gaia proposed that Wilcock search only seven targeted terms across Wilcock's accounts and devices. (*See* Dunay Decl., Ex. C). Gaia further noted its willingness to

---

[9] There are 19 requests because they are narrowly tailored requests rather than "catch-all" requests which might have only required a handful of total requests.

review a hit report and confer if the number of hits was, in fact, as burdensome as Wilcock maintained they might be.[10] Wilcock rejected these offers, indicating that he would pursue motion practice rather than conduct simple searches.

Because Wilcock has not established beyond conclusory pronouncements that there is any undue burden in responding to Gaia's requests—as opposed to the incidental burden inherent to responding to any subpoena—this factor favors an order compelling compliance with the Subpoena.

### B.  The Requested Documents are Relevant.

Second, the documents Gaia seeks via the Subpoena are relevant to Gaia's claims. As alleged in the Counterclaims, "Goode approached Wilcock and conspired with him to refuse to agree to work with any other talent on CD." (Dkt. 401, ¶91). Gaia further alleged that "Goode worked with Wilcock to craft a departure email" (the "Wilcock Email"), which contained numerous false and defamatory statements accusing Gaia and certain of its executives of illegal and immoral behavior. (*Id.* at ¶¶94-107). The Wilcock Email, as alleged in the Amended Counterclaims, was subsequently forwarded by Goode himself or at Goode's instruction to numerous others in the "disclosure" community, who were encouraged to post it online. (*Id.* at ¶113).

Discovery has already revealed that Wilcock and Goode were involved in conversations regarding the Wilcock Email prior to Wilcock sending it to Gaia and its dissemination online. As alleged in the Counterclaims, Goode's actions were part of a coordinated scheme to defame and

---

[10] On this point, Wilcock's counsel has offered contradictory positions stating that the requests and proposed searches are burdensome but also that Wilcock does not have any knowledge and would not have any documents concerning at least some of the requests in the subpoena.

injure Gaia (beginning with the Wilcock Email), so it is reasonable for Gaia to inquire as to whether Goode involved Wilcock in other aspects of the scheme and/or communicated about them with Wilcock.

Accordingly, this factor also favors an order compelling compliance with the Subpoena.

### C.  Gaia has a Strong Need for the Requested Documents.

Gaia has a strong need for the requested documents.  Gaia is entitled to obtain documents from Wilcock that would refute Goode's articulated positions, as well as documents that Goode may not have produced himself (for any reason, including because they have been lost or destroyed); indeed, Wilcock's production to date includes documents not produced by Plaintiffs. Moreover, because of his relationship with Goode, Wilcock is a key witness and uniquely positioned to have highly relevant information regarding Gaia's defenses and Counterclaims, including the scope of Goode's responsibility and liability.  Further, based on discovery to date, Gaia has reason to believe that Wilcock has personal knowledge regarding Plaintiffs' actions concerning Gaia, particularly regarding the Wilcock Email.

Thus, because the documents expected to be in Wilcock's possession are critical to establishing Goode's liability and credibility, and Gaia may not be able to get them from Plaintiffs or other sources, Gaia has a strong need for the requested documents from Wilcock both for its defense against Plaintiffs' claims and in pursuing its own counterclaims.  Accordingly, this factor favors an order compelling compliance with the Subpoena.

### D.  The Breadth and Temporal Scope of the Document Requests are Proportional to the Needs of the Case.

The remaining two factors also favor an order compelling disclosure, as the requests at issue are properly tailored as to scope and duration.  The requests to Wilcock directly relate to the

allegations in the Complaint and the Counterclaims, particularly Plaintiffs' defamatory statements. Further, the requested time period is limited to the periods at issue, namely the time during which Plaintiffs and Goode were performing for Gaia and the period thereafter when Plaintiffs were engaged in their attacks on Gaia. While that time period extends to approximately 10 years, it may be that there are fewer (but not no) relevant documents from years since the Action was filed, which significantly lessens any potential burden in applying the search terms to the entire period. Gaia is willing to further compromise concerning the time period if Wilcock shows that there is a disproportionate burden or false hits for some portion of the requested period.

Even though the Requests as they are written are limited and do not impose an unreasonable burden on Wilcock, Gaia offered to further accommodate Wilcock by proposing targeted search terms. Gaia indicated that it was willing to confer further regarding a hit report if the search terms proved to be overly broad. Nevertheless, Wilcock refused to produce documents beyond his initial deficient productions or to suggest any alternative resolution. Instead, Wilcock is now stonewalling Gaia in its legitimate discovery efforts. Thus, these factors also favor an order compelling compliance with the Subpoena.

## CONCLUSION

Gaia properly served a narrowly tailored Subpoena on Wilcock and acted in a good faith, reasonable manner in attempting to work on a compromise to obtain relevant documents Gaia needs to prosecute its Counterclaims. Wilcock has refused to make a reasonable search for documents requested by the Subpoena or to produce all relevant documents identified by such a search. For the aforementioned reasons, Gaia respectfully requests that this Court enter an order granting Gaia's Motion to Compel as follows:

1. Compelling Wilcock to search for and produce to Gaia all non-privileged documents responsive to the Subpoena; and,

2. Holding Wilcock in contempt pursuant to Rule 45(g) of the Fed. R. Civ. P. for failure to obey the Subpoena and awarding Gaia its attorneys' fees as a sanction in light of a contempt finding.

Dated:  May 21, 2025
       New York, New York

**DAVIS+GILBERT LLP**

  /s/ *Daniel A. Dingerson*
   Daniel A. Dingerson
   Angela M. Dunay
   1675 Broadway
   New York, New York 10019
   (212) 468-4800
   ddingerson@dglaw.com
   adunay@dglaw.com

   *Attorneys for Defendant Gaia, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III(A)(1).

## **CERTIFICATE OF CONFERRAL**

Pursuant to D.C.Colo.LCivR 7.1(a) and Federal Rule of Civil Procedure 37, counsel for Gaia has conferred with counsel for third-party David Wilcock in good faith in an effort to secure the documents requested by Gaia's subpoena. Counsel has spent nearly five months, encompassing numerous emails and phone calls, attempting to negotiate a resolution without seeking court intervention, but, after significant delay by Wilcock and an ultimately deficient production of documents, Gaia is forced to make the present motion.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2025, I caused a copy of the foregoing Motion to Compel

Production Against Third-Party David Wilcock to be served via ECF on all other parties by filing

it on the Court's ECF system and will cause a copy to be served on third-party David Wilcock by

personal service at 1455 Ridge Road, Nederland, CO 80466, or wherever he may be found, and by

email to his counsel, Raffi A. Nahabedian.


   */s/ Angela M. Dunay*
   Angela M. Dunay