IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00742-DDD-KAS

JAMES COREY GOODE,
GOODE ENTERPRISE SOLUTIONS, INC,

Plaintiffs and Counter Defendants,

v.

GAIA, INC,

Defendant and Counter Claimant.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion for Leave to Serve Subpoena on Third Party James Gilliland via Alternative Service** (the "Motion") [#552]. The Motion was referred to the undersigned for adjudication. *See Order* [#553]. The Court has reviewed the brief and all attachments, the entire case file, and the applicable law. For the reasons set forth below, the Court **GRANTS** the Motion [#552].

## I. Background

The Court need not restate the events leading to this lawsuit's commencement; at this point, the parties are intimately familiar with the facts. In their current Motion, Defendant seeks leave of court to effectuate service of a subpoena seeking production of documents on James Gilliland, pursuant to Federal Rule of Civil Procedure 45. *Motion* [#552].

Defendant contends Mr. Gilliland may have relevant documents based on the following:

(a) "Mr. Gilliland operates the Enlightened Contact with Extraterrestrial Intelligence ("ECETI") Ranch and has a public, ongoing association with Plaintiff Corey Goode";

(b) "Mr. Gilliland appeared with Mr. Goode in a YouTube interview that became the basis for the Court's November 13, 2025, Order to Show Cause ([#530])";

(c) "Plaintiffs' own production includes communications between Mr. Gilliland and Mr. Goode that suggest Mr. Gilliland likely possesses relevant information"; and,

(d) "Plaintiffs have admitted they cannot access certain repositories of potentially responsive information, so third parties, such as Mr. Gilliland, may be the only remaining source of relevant documents."

*Id.* at 1-2.

Following multiple unsuccessful attempts to personally serve Mr. Gilliland with its subpoena, Defendant now requests leave of court to serve him through alternative means, including by email, certified mail, and physical posting of the subpoena. *Id.* at 1. Plaintiffs take no position on this Motion. *Id.* at 2.

## II. Defendant's Attempts to Serve Mr. Gilliland

"Colorado law expresses a preference for personal service, (*see* C.R.C.P. 4(e)), but allows for substitute service where (i) the party attempting service of process under section (e) is unable to accomplish service, and (ii) service by publication or email is not otherwise permitted under section (g)." *Sec. & Exch. Comm'n v. Cournoyer*, No. 24-cv-01304-MDB, 2025 WL 2401986, at *1 (D. Colo. Aug. 19, 2025). However, prior to authorizing alternative service, the Court must be "satisfied that due diligence has been used to attempt personal service." C.R.C.P. 4(f).

Here, as set forth in the Motion, Defendant utilized public records (a LexisNexis SmartLinx Person Report) and Mr. Gilliland's own business website to ascertain his

address: 172 Little Mountain Road, Trout Lake, Washington 98650-6721. (The "Trout Lake Property.") *Motion* [#552] at 3.

Before a stay was issued in this case, Defendant's process server attempted to serve Mr. Gilliland at this address on nine occasions between November 23, 2024, through May 18, 2025, at varying times and days. *Id.* at 4; *Aff. of Nonservice* [#552-2] at 2; *Aff. of Nonservice* [#552-3] at 2; *Aff. of Nonservice* [#552-4] at 2. During an attempt on November 24, 2024, the process server was told that Mr. Gilliland was in Hawaii until the spring, and on March 22, 2025, he was told that "James" would return in three weeks. *Aff. of Nonservice* [#552-2] at 2. During various other attempts during that period, the process server found a closed gate or was told that individuals present were volunteers, not residents, who would not accept service. *Aff. of Nonservice* [#552-2] at 2; *Aff. of Nonservice* [#552-3] at 2; *Aff. of Nonservice* [#552-4] at 2.

After the stay was lifted, Defendant again unsuccessfully attempted service six times, at different times of day, over four consecutive days between September 27, 2026, and September 30, 2026. *Motion* [#552] at 5; *Aff. of Nonservice* [#552-5] at 2; *Aff. of Nonservice* [#552-6] at 2. During an attempt on September 28, 2026, the process server was approached by a woman who identified herself as a neighbor and stated that Mr. Gilliland and the staff had not been at the property since the "event season" ended the previous month. *Motion* [#552] at 5, *Aff. of Nonservice* [#552-5] at 2.

Accordingly, the Court is satisfied that Defendant demonstrated the requisite level of diligence in seeking out Mr. Gilliland's address and in attempting—fifteen times—to effectuate personal service at an address believed to be his address, based on research,

comments from individuals on the property, and comments from a neighbor. Based on these extensive efforts, traditional means of service appear unviable.

### III. Request to Use Alternative Means of Service Under Rule 45

Defendant proposes three alternative means of service: (1) emailing the subpoena to Mr. Gilliland's identified personal and business email addresses three times per week for two consecutive weeks, not more than once every other day until either the two-week period elapses or Mr. Gilliland acknowledges receipt of service, (2) sending the subpoena by certified mail to the Trout Lake Property, and (3) posting the subpoena at the gate to the Trout Lake Property. *Motion* [#552] at 8. Additionally, Defendant has reason to believe that Mr. Gilliland spends part of the year in Hawaii and has located a P.O. Box, which may be associated with Mr. Gilliland. *Id.* at 6. Defendant, however, is "unable to confirm definitively that the P.O. Box is now or ever was associated with Mr. Gilliland"; yet "[it] is amenable to also sending a copy of the subpoena to that P.O. Box, if the Court believes that would enhance the service effort." *Id*. n.3.

"The language of Rule 45 does not explicitly demand personal service of a subpoena, but instead requires only that a copy be 'deliver[ed]' to the person whose attendance is sought. Such language neither strictly requires in-hand service nor prohibits alternative means of service." *E.A. Renfro & Co. v. Moran*, No. 08-cv-00732-RPM-KMT, 2008 WL 1815535, at *3 (D. Colo. Apr. 18, 2008). In this District, Rule 45 is not strictly limited to personal service in every case. *See Peterson v. Pickering*, 22-cv-00320-WJM-KLM, 2022 WL 18779895, at *3 (D. Colo. Nov. 7, 2022) (finding that "both this District's caselaw and a plain reading of Rule 45 compel the conclusion that Rule 45 does not require in-person service in every instance."); *Castle v. Nolan*, No. 20-cv-02481-DDD-

GPG, 2021 WL 12298816, at *5 (D. Colo. Dec. 3, 2021) (similar); *Renfroe*, 2008 WL 1806200, at *6 (joining other courts in concluding that "Rule 45 is not limited to hand-to-hand personal service in every case" and the rules "should not be construed as a shield for a witness who is purposefully attempting to evade service[.]"); *Moran*, 2008 WL 1815535, at *6 (same).

Because Defendant has made diligent attempts to personally serve Mr. Gilliland, the Court finds Defendant should be permitted to use alternative means of serving its subpoena. The Court must now determine whether Defendant's proposed alternative means satisfy due process by being reasonably calculated to result in Mr. Gilliland's receipt of the subpoena. *See Mullane v. Cent. Hanover Bank and Tr. Co.*, 339 U.S. 306, 314 (1950) (stating that notice must be "reasonably calculated" to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *see also Peterson*, 2022 WL 18779895, at *2 (noting that service must "be made in a manner which reasonably [e]nsures actual receipt of the subpoena.'") (quoting *Moran*, 2008 WL 1815535, at *5).

Courts have approved both email and certified mail as alternative forms of service under Rule 45. *See*, *e.g.*, *Amann v. Off. of Utah Att'y Gen.*, No. 2:18-cv-00341-JNP-DAO, 2021 WL 4949032, at *2 (D. Utah Oct. 25, 2021) (permitting email service of subpoena after unsuccessful attempts to personally serve party); *Fed. Trade Comm'n v. Zurixx, LLC*, No. 2:19-cv-00713-DAK-DAO, 2020 WL 9255400, at *2 (D. Utah Dec. 21, 2020) (approving (1) email service to an address identified by the target and in initial disclosures three times per week for two consecutive weeks, not more often than once every other day unless a written response is received acknowledging receipt of service), (2) mailing

the subpoena via certified mail to the target's residential address, and (3) hand delivering the subpoena to that residential address); *BNSF Ry. Co. v. Alere, Inc.*, No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *5-6 (S.D. Cal. May 17, 2018) (permitting service of a subpoena by certified mail).

Here, the Court finds that Defendant's proposed methods of alternative service are reasonably calculated to result in Mr. Gilliland's receipt of the subpoena.

First, Defendant seeks to serve the subpoena by email to Mr. Gilliland's "personal and business email addresses, which should reach him wherever he is, including during any period away from the [Trout Lake] Property." *Motion* [#552] at 7. Therefore, service of the subpoena to those email addresses is reasonably calculated to result in Mr. Gilliland's receipt. *See Zurixx*, 2020 WL 9255400, at *1-2 (approving email service to an address identified by the target of the subpoena and in initial disclosures).

Second and third, Defendant seeks to serve the subpoena by certified mail to Mr. Gilliland's residential and business address, while also physically posting the subpoena at the gate to that property. The record contains no indication that Mr. Gilliland no longer lives on the property; process servers have simply been told that he is away. *Aff. of Nonservice* [#552-2] at 2. Thus, Defendant argues that the property, the "publicly advertised location of his ongoing business," is "not a stale address"; therefore, certified mail will reach Mr. Gilliland whenever he collects his mail. *Motion* [#552] at 7. Additionally, posting the subpoena at the gate to the Trout Lake property, will enable "anyone coming to the property, including Mr. Gilliland," to see it. *Motion* [#552] at 7. "[S]ervice by certified mail to and posting on the door of the verified address . . . is a manner which reasonably insures [sic] actual receipt of the subpoenas." *Kriegman v. Mirrow*, No. 15-cv-01542-PAB-

NRN, 2019 WL 13094172, at *2 (D. Colo. June 17, 2019); *see also McKowen v. Harrington*, 25-cv-00708-PAB-NRN, 2025 WL 4083511, at *2 (D. Colo. June 30, 2025) (finding that "alternative service via a combination of posting and mailing is reasonably calculated to give actual notice") (quotations and citations omitted). Accordingly, the Court agrees that physically posting the subpoena at the gate, when combined with certified mail sent to the address, is reasonably calculated to result in Mr. Gilliland's receipt.

Lastly, Defendant offered to mail the subpoena to a P.O. Box in Hawaii which it believes might be affiliated with Mr. Gilliland. Given the uncertainty surrounding whether that P.O. Box belongs to Mr. Gilliland, the Court finds this additional step unnecessary.

Accordingly,

IT IS **ORDERED** that the Motion [#552] is **GRANTED**.

IT IS FURTHER **ORDERED** that Defendant may serve the subpoena upon Mr. Gilliland by completing the following steps:

(1) Emailing the subpoena to the email address believed to be controlled by Mr. Gilliland three times per week for two consecutive weeks, not more often than once every other day until either the two-week period elapses or Mr. Gilliland acknowledges receipt of service, whichever occurs first;

(2) Mailing the subpoena via certified mail to the Trout Lake Property; and

(3) Posting the subpoena at the gate of the Trout Lake Property.

IT IS FURTHER **ORDERED** that a copy of this Order shall be served with the subpoena. Service shall be effective upon completion of the foregoing steps.

Dated: November 3, 2026 BY THE COURT:



Kathryn A. Starnella
United States Magistrate Judge